UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

Genie Investments NV, Inc.,   Case No.: 3:24-bk-00496-BAJ
                              Chapter 11

                              **Expedited Hearing Requested**

        Debtor.
_____/

**UNITED STATES TRUSTEE'S EXPEDITED MOTION TO APPOINT CHAPTER 11 TRUSTEE, OR, IN THE ALTERNATIVE, APPOINT AN EXAMINER, DISMISS THIS CASE, OR CONVERT THIS CASE TO CHAPTER 7**

Mary Ida Townson, United States Trustee for Region 21 (the "United States Trustee"), by and through the undersigned counsel, moves for the appointment of a chapter 11 trustee, or, in the alternative, appoint an examiner, dismiss this case, or convert this case to chapter 7. In support, the United States Trustee states as follows.

**SUMMARY OF ARGUMENT**

The Court should not permit the debtor, Genie Investments NV, Inc. ("Debtor"), to continue as a debtor-in-possession because the Debtor conducted fraudulent schemes against small business owners. The Debtor offered its victims the prospect of loans with attractive rates and no personal guarantees. Debtor conditioned funding on the small business owners transferring money to the Debtor as prepaid interest. The Debtor then failed to fund the loans and failed to return the money. According to its own admissions, the Debtor invested the money received from the small business owners in a highly speculative scheme and lost most of the funds. The Debtor's conduct demonstrates dishonesty, incompetence, gross

mismanagement, and risks harming the Debtor's creditors further should the Debtor remain a debtor-in-possession. Consequently, the Court should order the United States Trustee to appoint a chapter 11 trustee in this case. In the alternative, the Court should appoint an examiner, dismiss this case, or convert this case to proceed under chapter 7.

## FACTUAL BACKGROUND

1. On February 21, 2024, (the "Petition Date") the Debtor, Genie Investments NV, Inc., filed a skeletal voluntary chapter 11 petition to initiate this case. (Doc. No. 1).

2. Shortly thereafter, a group of eighteen small business owners who organized themselves through social media (collectively, the "Small Business Owners"), contacted the United States Trustee. The Small Business Owners credibly allege that the Debtor is involved in a scheme of fraud. The allegations in this motion are based upon interviews with the members of the Small Business Owners and their signed statements, which are attached to this motion as Composite Exhibit A.

3. As part of its fraudulent scheme, the Debtor and a co-conspirator entity known as McMann Commercial Lending, LLC ("McMann") would offer a loan program they called the BELOC, which stands for "business expansion line of credit." This loan program was advertised as having below market interest rates and no personal guarantees – a critical allure for any small business owner.

4. The Small Business Owners approached the BELOC program with a variety of business objectives. One member of the Small Business Owners is a farmer who wished to refinance the line of credit that secures his farm.[1] Another member is a real estate agent,

---

[1] See Exhibit A, Statement of Blake Stringer.

who due to her business success, sought to put her savings to work by combining a business loan with buying an apartment building.[2] Yet another member is the owner of a technology company that develops a mental-health-oriented smartphone app, who sought to expand her business.[3] In summary, the Small Business Owners were pursuing salutary business objectives for which they needed capital.

5. Although the BELOC program appealed to the Small Business Owners, the terms of the BELOC included one less-favorable provision. The Debtor informed the Small Business Owners that, to prepay interest or for other manufactured reasons, they would need to wire money into a so-called "ICA" or interest carry account. Based upon these representations, the Small Business Owners each wired between $30,000 and $500,000 into an ICA.

6. The Debtor did not fund the loans of the Small Business Owners, despite having received their substantial payments through the ICA. Instead, the Debtor made a litany of excuses. The Debtor hid behind contractual language or blamed McMann Commercial and third-party "wholesale lenders" even though the Small Business Owners were led to believe that the Debtor itself would be the capital provider. When the Small Business Owners eventually asked for their money back, the Debtor refused. In summary, the Debtor kept the Small Business Owners' money and did not provide them with any benefit.

7. The Small Business Owners suffered serious consequences resulting from

---

[2] See Exhibit A, Statement of Lea Muse.
[3] See Exhibit A, Statement of Lis Butkiewicz.

losing their money to the Debtor. One of the Small Business Owners borrowed a total of $30,000 from "Happy Money" and "Rocket Loans" under unfavorable terms to prepay the fictious interest alleged by the Debtor.[4] Another of the Small Business Owners, a farmer, had to file a personal bankruptcy case because he could not recover from the loss of $365,000 in working capital.[5] All the Small Business Owners suffered lost business opportunities.

8. The Debtor's conduct has resulted in at least one lawsuit. North Haven Lodging Partners, LLC and Willingford Lodging Partners, LLC (collectively the "Lodging Partners") filed a federal lawsuit against the Debtor.[6] The Lodging Partners allege that the Debtor and McMann offered the Lodging Partners lines of credit totaling $36,000,000. However, as a condition precedent, the Lodging Partners were required to transfer money to the Debtor for "prepayment of interest" in the amount of $3.6 million. As with the Small Business Owners, the Lodging Partners allege that the Debtor did not fund the loan and wrongfully kept the Lodging Partners' $3.6 million. Upon information and belief, the Debtor filed this bankruptcy case to obtain a stay in the Lodging Partners litigation.

9. Recently, the Debtor filed a lawsuit in the Middle District of Florida (the "Florida Fed. Lawsuit")[7] wherein the Debtor attempts to explain the disposition of the Small Business Owners' and Lodging Partners' money. In its complaint,[8] Debtor alleges that it

---

[4] See Exhibit A, Statement of Lea Muse.
[5] See Exhibit A, Statement of Blake Stringer and Case No. 24-2000-11 in the U.S. Bankruptcy Court for the Northern District of Texas.
[6] See Case No. 1:23-cv-16264 in the Northern District of Illinois, which complaint is attached hereto as Exhibit B. The Lodging Partners are not among the Small Business Owners who contacted the United States Trustee.
[7] See Case No. 6:24-cv-00271 in the U.S. District Court for the Middle District of Florida.
[8] The complaint in the Florida Fed. Case is attached hereto as See Exhibit C.

invested $9 million with an entity known as Velanos Principal Capital ("Velanos"). Velanos promised that it would purchase and trade "standby letters of credit" to increase the Debtor's initial investment of $9 million to $75 million within sixty days, which, according to Velanos, was a risk-free investment. See Exhibit C, at p. 2. Debtor claims that Velanos kept the money, except for $500,000, which was refunded to the Debtor in May 2023. Id. at 3.

## LEGAL STANDARDS

10. The presumption in chapter 11 is that a debtor will continue managing its own affairs during the duration of a case. "This presumption is based on the belief that the debtor-in-possession is most knowledgeable about, and best able to run, the debtor's business." *In re Sundale, Ltd.,* 400 B.R. 890, 899 (Bankr. S.D. Fla. 2009). "Nevertheless, in the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to ensure that the interests of creditors are served." *In re Matter of Intercat, Inc.,* 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000).

11. The Bankruptcy Code at 11 U.S.C. § 1104(a) provides two alternative grounds for appointing a trustee, one mandatory and one discretionary. Section 1104(a) states in pertinent part:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee —
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . .; or

> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate . . .

12. Subsection 1104(a)(1) is mandatory and § 1104(a)(2) is discretionary. "Once the court finds that cause exists under § 1104(a)(1), there is no discretion; an independent trustee must be appointed. Unlike subsection (a)(1), § 1104(a)(2) may well entail the exercise of a spectrum of discretionary powers and equitable considerations, including a cost-benefit analysis, to determine whether the appointment of a reorganization trustee would be in the interests of creditors, equity security holders and other interests of the estate." *In re SunCruz Casinos, LLC*, 298 B.R. 821, 828–29 (Bankr. S.D. Fla. 2003) (internal citations and quotations omitted). "Among the factors courts consider in determining whether to appoint a chapter 11 trustee under § 1104(a)(2) are: (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for the debtor's reorganization; (3) confidence, or lack thereof, of the business community and creditors in present management; and (4) the benefits derived by appointment of a trustee, balanced against the costs of appointment." *In re Keeley & Grabanski Land P'ship,* 455 B.R. 153, 164–65 (B.A.P. 8th Cir. 2011).

13. The movant bears the burden in seeking the appointment of a trustee. Although Courts disagree on what burden of proof to apply, the better view is that Courts should apply the "preponderance of the evidence" standard. Considering an analogous legal standard, the Supreme Court has held that the appropriate standard of proof in § 727 litigation was "preponderance of the evidence," notwithstanding the chapter 7 debtor's presumptive entitlement to a discharge. *Grogan v. Garner*, 498 U.S. 279 (1991). The same standard should apply to chapter 11 trustee appointments, notwithstanding the chapter 11

6

debtor's presumptive entitlement to manage its own affairs. *See Keeley*, 455 B.R. at 163 (finding that the evidentiary standard for appointment of a chapter 11 trustee should be the same as for § 727 discharge exceptions). *But see Sundale*, 400 B.R. at 899-900 (applying clear and convincing standard).

14. If the Court does not appoint a trustee, the Court may in its discretion appoint an examiner. 11 U.S.C. § 1104(c)(1). *E.g., In re Hardy*, 319 B.R. 5 (Bankr. M.D. Fla. 2004) (appointing an examiner as an alternative to a chapter 11 trustee appointment). As a further alternative, the Court may also dismiss or convert a case to chapter 7 for cause, whichever is in the best interests of creditors. 11 U.S.C. § 1112. Grounds for dismissal or conversion under § 1112 includes gross mismanagement of the estate and bad faith. 11 U.S.C. § 1112(b)(4)(B). *In re 239 Worth Ave. Corp.,* 236 B.R. 492, 495 (Bankr. S.D. Fla. 1999) (equating bad faith with "an intent to abuse the judicial process and the purposes of the reorganization process, which may include the breach of a debtor's fiduciary duty.")

## **ARGUMENT**

15. The appointment of a chapter 11 trustee is required in this case under both the mandatory and discretionary prongs of 11 U.S.C. § 1104(a). The United States Trustee addresses each prong in turn.

16. The appointment of a chapter 11 trustee is required, for cause, due to "fraud and dishonesty" or, in the alternative, "incompetence and gross mismanagement." The Debtor engaged in a pattern of promising business loans with low interest rates and no personal guarantees to induce victims, including the Small Business Owners and the Lodging Partners, to advance funds for pre-payment of interest and for other manufactured

motives. The Debtor then simply stole the Small Business Owners' and the Lodging Partners' money. These actions constitute a dishonest and fraudulent scheme mandating the appointment of a chapter 11 trustee.

17. In the alternative, the Debtor's management is at least culpable of incompetence and gross mismanagement. According to the Debtor's own allegations in the Florida Lawsuit, the Debtor paid $9 million dollars to an entity, Velanos, that promised to provide a 800% return within sixty days at zero risk. The terms offered by Velanos were obviously suspect because it is common knowledge that the sorts of investments that can yield an 800% return in sixty days (*e.g.*, cryptocurrency, options, or highly leveraged stock purchases) come with a high risk of total loss. If the Debtor indeed made this investment with Velanos, the transaction demonstrates the absence of sound, practical judgment and a high degree of recklessness particularly because the investment was made with other people's money. This incompetence and gross mismanagement require the immediate appointment of a chapter 11 trustee in this case.

18. The Court also should order the appointment of a chapter 11 trustee under § 1104(a)(2) as all the relevant factors support such an appointment. The first factor - "trustworthiness of the debtor" - weighs strongly in favor of appointing a trustee because the Debtor's management admittedly made poor investment decisions and has been credibly accused of fraud. The second factor - "the debtor's past and present performance and prospects for the debtor's reorganization" - weighs strongly in favor of appointing a trustee because the Debtor failed to fund numerous loans, admittedly lost large sums of money, and whose incompetence and reckless disregard for other people's money caused harm. The third

factor is "confidence, or lack thereof, of the business community and creditors in present management" An entire community of business owners fell victim to the Debtor's fraud, as demonstrated by composite Exhibit A, and they have no confidence in the Debtor's management. Finally, the fourth factor is "the benefits derived by appointment of a trustee, balanced against the costs of appointment." Although the value of the funds currently in the Debtor's possession is unknown, the benefits derived from appointing a trustee likely outweighs the costs of appointment. The Debtor admitted to receiving $500,000 in May 2023 and can fund its attorney's post-petition retainer. The recent implementation of subchapter V has demonstrated that chapter 11 trustees can be cost-effective and successful. For these reasons, the appointment of a trustee would be most beneficial for the estate. Thus, the Court should use its discretionary authority to appoint a chapter 11 trustee in this case.

19.     In the alternative, if the Court does not appoint a chapter 11 trustee, the Court should appoint an examiner, dismiss this case, or convert this case to chapter 7. The same discretionary factors that support appointing a chapter 11 trustee support the appointment of an examiner. Likewise, if the Court is not inclined to appoint a chapter 11 trustee, the Debtor's gross mismanagement and bad faith abuse of the bankruptcy process warrants dismissal or conversion to chapter 7.

## **CONCLUSION**

The appointment of a chapter 11 trustee is necessary to protect the integrity of the bankruptcy system. The Debtor's management engaged in a scheme to defraud and dishonestly target small business owners luring them with false promises of below market business loans with attractive rates and no personal guarantees. The promotion and

protection of small businesses is a critical component of the bankruptcy code and an entity that defrauds small business owners should not continue as a debtor-in-possession.[9]

At a minimum, the Debtor engaged in "incompetence and gross mismanagement" which requires the immediate appointment of a chapter 11 trustee. The Debtor admittedly made a highly suspect investment with money provided by third parties to whom the Debtor had outstanding obligations. This undisputed allegation was conceded by the Debtor in Court filings. The Court should immediately order the United States Trustee to appoint a chapter 11 trustee in this case, dismiss this case, convert the case to chapter 7, or appoint an examiner.

WHEREFORE, the United States Trustee moves this Court for an order directing the United States Trustee to appoint a chapter 11 trustee in this case, appoint an examiner in this case, dismiss this case, convert this case to chapter 7, or for such other relief as the Court deems appropriate.

Dated:  March 5, 2024.                    Respectfully Submitted

                                            Mary Ida Townson
                                            United States Trustee for Region 21

                                            */s/   Scott Bomkamp*
                                            Scott Bomkamp, Trial Attorney
                                            Office of the United States Trustee
                                            U.S. Department of Justice
                                            400 W. Washington St., Suite 1100
                                            Orlando, FL 32801
                                            Telephone No.:  (407) 648-6301, Ext. 150
                                            Facsimile No.:  (407) 648-6323

---

[9] The exclusion of small business owners with primarily business debt from means testing and the recent enactment of subchapter V are two examples of the bankruptcy code's promotion and protection of small business.

        Email: scott.e.bomkamp@usdoj.gov
        Indiana Bar No.: 28475-49

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was served on March 5, 2024 on all parties appearing electronically via CM/ECF, or via First Class United States mail on the following:

Genie Investments NV, Inc.
Attention: John Michael Cohan
PO Box 60443
Jacksonville, FL 32236

        /s/  Scott Bomkamp
        Scott Bomkamp, Trial Attorney