**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV, INC.

        Debtor.

Case No.: 3:24-bk-00496-BAJ

Chapter 11

### CHAPTER 11 CASE MANAGEMENT SUMMARY

GENIE INVESTMENTS NV, INC. (the "Debtor"), pursuant to Local Rule 2081-1, hereby files this Chapter 11 Case Management Summary (the "Summary"). In support of this Summary, the Debtor would show:

### INTRODUCTION

The Debtor filed its petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on February 21, 2024 (the "Petition Date") as a pro se filing. Bryan K. Mickler was appointed by the Court as Chapter 11 Debtor attorney on March 8, 2024 at Doc. No. 36. An order for relief was entered for the Debtor as a Chapter 11 Debtor in Possession. There has not been a Chapter 11 Trustee appointed as of the date of this Summary but the Court has set a trial for April 9, 2024 upon the motion of the United States Trustee to Appoint a Chapter 11 Trustee. Doc. No. 20.

### CASE MANAGEMENT ITEMS

**I.   Description of the Debtor's Business**

The Debtor is the operator of a financial small business lending firm which operates in the United States through internet brokerage sales. The business was started in December of 2021 as a Nevada Corporation by David Hughes, John Cohan and Caleb Davis and has continuously operated since that time.

Genie had a history of successfully funding loans for 2+ years and of issuing all requested refunds until August of 2023 when a purported financial backer Velanos committed it's fraud against GENIE.

Genie located potential borrowers through a network of finders and brokers that, in return for bringing potential borrowers to Genie, may qualify for fees or commissions. Genie also works with so-called "white labelers" that lend directly to retail borrowers using funds that the white labelers, in turn, borrow from Genie. A white labeler generally charges its borrower a marginally higher rate than it pays to Genie for the same amount of funds. Genie funds it's lending operations by obtaining capital from "warehouse lenders/capital providers" and other sources and, in turn, lends those funds to borrowers at marginally higher rates.

Genie is owed approximately $75M by a business entity ("capital provider") with which Genie had formed a joint venture in late 2022. In late 2022, following failures by its previous

warehouse lender, Genie had sought new sources of affordable capital. At the time, Genie worked with a network of finders who introduced Genie to potential borrowers. One of those finders was Will Byrd. Upon learning that Genie wanted to find new sources of capital to lend, Byrd introduced Genie to Josh Wearmouth and Velanos in October 2022.

Wearmouth told Genie that he used capital from business partners to monetize SBLCs (Standby Letter of Credit) by buying them at a discount and then selling them at a profit. He proposed a business relationship wherein Velanos would use capital supplied by Genie to complete a series of prearranged trades of SBLCs. Wearmouth further represented that this would pose no risk to Genie's capital. Byrd, who has frequently acted as Wearmouth's spokesperson in communications with Genie, vouched for Wearmouth and supported his assertions. Wearmouth provided Genie with a draft Joint Venture Agreement (JVA) that called for Genie to contribute capital, for Velanos to use those capital contributions to trade SBLCs, and for Velanos to return the capital contributions and distribute resulting profits to Genie within 60 days.

Based on the recommendation from it's former attorney, Genie provided $9M in funding for the Velanos JVA to be invested in the SBLC venture. Unfortunately, the Velanos JVA was a scam. Genie was unable to recover it's $9M investment or any portion of the expected return. Multiple entities then filed suit against Genie and it's brokers as a result of the inability to obtain financing and for recovery of pre-paid fees. This Chapter 11 followed in order to restructure the existing unsecured debt and to attempt to continue the recovery efforts against Velanos.

A search of the Florida UCC registry reveals the following entities alleging a security interest in the Debtor's Property:

| Entity | Collateral Encumbered | Date of First Filing |
|---|---|---|
| N/A | N/A | N/A |
|  |  |  |
|  |  |  |

## II.     Location of Debtors' Operations and Whether Leased or Owned

The Debtor's main commercial property is located in Jacksonville, FL and leased by the Debtor.

## III.    Reasons for Filing Chapter 11

Chapter 11 was filed to restructure the unsecured debt of the Debtor's potential customers which provided up-front fees and payments in anticipation of loans. The Debtor was attempting to recover the $9M in lost funds from Velanos and related entities but was unable to pay for legal costs and operating expenses of the closely held business to the point that it could avoid filing Chapter 11.

IV. **List of Officers and Directors and Their Salaries and Benefits at Time of Filing and During the One Year Prior to Filing**

    David Hughes – Director/Owner  - No salary but a loan to a closely held company in the amount of $1.9 million was made in 2023;

    John Cohan – Director/Owner – No salary but a loan to a closely held company in the amount of $500,000 in 2023

V. **Debtor's Annual Gross Revenues**

    Upon information and belief, the Debtor's gross revenues for the period ended December 31, 2022 were approximately $399,195.00. 2023 gross annual revenue was approximately $2,213,147.00. 2024 gross revenue has been approximately $5.000.00 through the end of January of 2024.

VI. **Amounts Owed to Various Classes of Creditors**

    The Debtor's has no secured lenders.  Total secured debt owed is approximately $0.00.

    The Debtor's unsecured debt is currently listed as $10,679,644.00. All debts were listed as contingent, unliquidated and disputed.

VII. **General Description and Approximate Value of the Debtor's Current and Fixed Assets**

    The Debtor's assets consist primarily of the cash, accounts receivables, inventory and office furniture, fixtures and equipment secured by the secured lender. The inventory, equipment and cash and accounts receivable are believed to be worth approximately $84,626,910.00 at this time as disclosed on Schedules A/B.

VIII. **Number of Employees and Amount of Wages Owed as of Petition Date**

    As of the Petition Date, the Debtor employed 2 direct employees including the owners.

IX. **Status of Debtor's Payroll and Sales Tax Obligations**

    The Debtor does not owe money to taxing authorities for sales, payroll or income taxes.

X. **Anticipated Emergency Relief Within 14 Days of Petition Date**

    Motion to Appoint Trustee filed by the United States Trustee previously.

Submitted this __3__ day of April 2024.

                                            LAW OFFICES OF MICKLER & MICKLER, LLP

                                            By:___*/s/ Bryan K. Mickler*
                                                Bryan K. Mickler
                                           Florida Bar No. 091790
                                          5452 Arlington Expressway
                                          Jacksonville, FL 32211
                                          (904) 725-0822 / (904) 725-0855 FAX
                                          bkmickler@planlaw.com
                                          *Counsel for the Debtor*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a copy of the foregoing was furnished to the United States Trustee and all interested parties by filing a copy in the Court's CM/ECF system this _3__ day of April, 2024.

                                            _/s/ Bryan K. Mickler_____
                                            Attorney