## <u>EXHIBIT COVER SHEET</u>

<u>**Exhibit**</u>

Party Submitting:        **Mary Ida Townson, U.S. Trustee for Region 21**

Admitted:            **YES    or    NO        (circle one)**            <u>**131**</u>

Chapter 11 Debtor:    **Genie Investments NV, Inc.**

Case No.            **3:24−bk−00496−BAJ**

Nature of Hearing:    **Trial on**

**U.S. Trustee's Motion to Appoint Chapter 11
Trustee, or, in the Alternative, Appoint
Examiner, Dismiss Case, or Convert Case to
Chapter 7 (Doc. No. 20)**

**Debtor's Response Thereto (Doc. No. 34)**

**U.S. Trustee's Reply (Doc. No. 38)**

Trial Date:        **April 9, 2024, at 9:00 a.m.**

**United States Bankruptcy Court
Middle District of Florida**

**Dated:_____, 2024.**

**By: _____, Deputy Clerk**

## <u>SETTLEMENT AGREEMENT AND GENERAL RELEASE</u>

This Settlement Agreement and General Release ("**Agreement**") is made and entered into as of February 16, 2024 (the "**Effective Date**"), by and between Genie Investments ("**Genie**") and _____ ("**Client**"). Genie and Client are collectively referred to herein as the "**Parties**" or individually as a "**Party**".

**WHEREAS**, Genie and Client entered into a Business Expansion LOC Agreement (the "**BELOC Agreement**") and other related documents, pursuant to which the Parties agreed to enter into whereby the Client desired to obtain from Genie an asset backed line of credit (the "**LOC**"); and

**WHEREAS**, in order for Genie to deliver the funds of the LOC to the Client, Genie's capital provider ("**Velanos**") was obligated to deliver the funds to Genie, which never occurred (the "**Velanos Default**"); and

**WHEREAS**, Genie has initiated litigation against Velanos and other parties, regarding the Velanos Default (the "**Velanos Litigation**") in attempt to recover damages Genie has incurred related to the BELOC Agreement, in addition to other damages incurred to similar and related documents with Genie's other clients (the "**Reward**"); and

**WHEREAS**, to avoid and reduce the expense, inconvenience, distractions, and inherent uncertainties associated with the Velanos Litigation and without conceding any liability, the

1

Parties desire (1) for Genie to attempt to collect the Reward and distribute the Reward according to the terms of this Agreement and (2) to release each other from any and all claims, counterclaims, or cross-claims that have been or could be asserted against one another.

      **NOW, THEREFORE,** in consideration of the promises and the mutual covenants and agreements herein set forth, the Parties do hereby covenant and agree as follows:

1. **<u>Settlement.</u>**  The Parties hereby resolve, settle, and discharge each other from liability for all possible claims or causes of action that were asserted or could have been asserted by either Party against the other in the BELOC Agreement or other similar loan agreements between Client and Genie.

2. **<u>Force Majeure</u>**.  The Parties hereby recognize and acknowledge that the Velanos Default is a Force Majeure Event (as such term is defined in the BELOC Agreement). As a result of the foregoing, this Agreement is intended to be an act of good faith from the Parties to recover damages incurred resulting from the Velanos Default but is in no way an admission of liability or an obligation of performance of Genie under the terms of the BELOC Agreement. It is specifically understood and agreed that this Agreement is in compromise and that by reason of entering this Agreement neither Party admits any liability of any sort to the other Party with respect to the claims herein.

3.    **Consideration.**  Client hereby agrees to pay Genie a non-refundable Ten (10%) percent or less of their original payment to assist Genie fund the Velanos Litigation. In exchange for such contribution to the Velanos Litigation, Genie will pay out a portion or percentage of the Reward, if any, pursuant to the terms of a Reward schedule, substantially attached hereto as **Reward Schedule**.  The costs of the Velanos Litigation include, but are not limited to, attorney's fees, legal expenses, administrative fees, case management fees, and compensation for Genie's personnel or executives, all of which are necessitated by the efforts undertaken in the Recovery process.

4.    **Subscription Period & Reconciliation**. The Client acknowledges and fully understands that they are part of a broader collective of similarly impacted individuals, tantamount to a virtual class action, arising from Velanos' material breach of contractual obligations. It is hereby agreed that to facilitate an equitable resolution and to strengthen the litigation process against Velanos, this settlement agreement will be uniformly offered to additional clients who have also suffered due to Velanos' actions. The Client recognizes that the amount of their potential recovery under this agreement is intrinsically linked to, and directly dependent upon, the sum they contribute towards the funding of the Velanos Litigation in comparison to the total contributions from all participating clients. By entering into this agreement, the Client confirms their understanding that maximizing their recovery, and indeed the efficacy of the collective legal challenge against Velanos, is inherently tied to the scale of participation and financial support from all affected

clients. Therefore, it is in the Client's best interest to not only partake in this funding but to also encourage other affected parties to join in this concerted effort to seek just compensation for Velanos' breach. This cooperative approach is designed to not only optimize the potential recovery for each participating client but also to underscore the collective resolve in holding Velanos accountable for its actions.

5.     **Reconciliation Date.**  For the purposes of this agreement, "Reconciliation Date" is defined as the specific date marking the deadline by which all calculations relevant to all client contributions to the Velanos Litigations must be completed. This includes the accurate accounting and finalization of all contributions made towards the Velanos Litigation fund, the distribution calculations of any settlement proceeds amongst the clients, and any necessary adjustments based on the participation rate and contribution amounts of all claimants involved. The Reconciliation Date ensures all financial obligations and rights under this agreement are fully accounted for, with transparency and equity, thereby facilitating the conclusive settlement of claims as per the terms herein. It signifies the moment when the financial elements of this agreement are deemed settled, allowing for the final steps in the litigation process against Velanos and the distribution of recoveries to affected clients. All parties commit to adhering to this date for the completion of the reconciliation process, ensuring that the collective action against Velanos is conducted efficiently and justly, reflecting the cooperative spirit intended by this agreement.

6.     **Mutual Release.** In consideration of the promises set forth herein, the Parties hereby irrevocably and unconditionally release and forever waive and discharge each other, along with each other's directors, officers, owners, employees,

subsidiaries, affiliates, and legal representatives from any and all claims, complaints, causes of action, demands, damages, obligations, liabilities, losses, promises, agreements, controversies, penalties, suits, expenses, and executions of any kind or nature whatsoever, whether in law or in equity, whether known or unknown, actual or potential, that either Party asserted or could have asserted against the other.

7.    **Non-Disparagement.** Commencing on the Effective Date, each Party agrees not to, directly or indirectly, publicly (including on social media platforms such as, but not limited to, Facebook, X/Twitter, Indeed, Snapchat, GlassDoor, Google Reviews, Yelp, Instagram and TikTok) or privately, disparage any other Party or Parties or any of their officers, directors, employees, shareholders, members, agents, affiliates, practices, services, or products.  For purposes of this paragraph, however, sworn testimony in a court of law, or pursuant to a duly-issued subpoena or other valid legal process shall not be considered disparagement.

8.    **No Other Proceeding.** Genie and Client each represent that neither has filed any other action, lawsuit, proceeding, claim, charge, or complaint against the other with any court or other entity.

9.    **Cooperation Between the Parties.** Each Party shall fully cooperate with the other Party with respect to the performance of this Agreement. Each Party will provide or make available to the other Party any information and will execute, acknowledge, and deliver such further documents that may reasonably be required

in order to effectively perform this Agreement and to release all obligations and liabilities of the Parties thereunder.

10.     **Ownership of Released Matters.** The Parties each hereby represents and warrants that it is the sole and lawful owner of all rights, title, and interest in and to all claims and causes of action released in this Agreement, and each Party represents and warrants that it has not heretofore assigned or transferred, or purported to assign or transfer, any of the claims and causes of action released herein, in whole or in part, to any other person or entity.

11.     **Governing Law and Venue.** This Agreement will be governed by and interpreted in accordance with the laws of the state of Delaware, without giving effect to the principles of conflicts of law of such state. The Parties hereby agree that any action arising out of this Agreement will be brought solely in any federal or state court located within the geographic boundaries of the U.S. District Court for the Southern District of New York. Both Parties hereby submit to the exclusive jurisdiction and venue of any such court. The Parties further agree, to the extent permitted by applicable law, to waive any right to trial by jury with respect to any claim, counterclaim, or action arising from the terms of this Settlement Agreement.

12.     **Attorneys' Fees and Costs in Enforcement of the Release Agreement.** If either Party incurs any legal fees or other costs or expenses in any proceeding to enforce the terms of this Agreement or any of its rights provided hereunder, the prevailing

Party shall be entitled to recover its reasonable attorneys' fees and any court, arbitration, mediation, or other litigation expenses from the other Party.

13.    **Confidentiality**. To the fullest extent permitted by law, the Parties (and their counsel and other representatives) agree and acknowledge that the terms of this Agreement shall be kept strictly confidential and shall not be revealed to anyone not a party to this Agreement, except that a Party may make such a disclosure if required to do so (1) by court order, or (2) by any subpoena issued by a governmental or regulatory authority, provided, however, that nothing in this section shall be interpreted as contravening any whistleblower or comparable protections available to either Party under any applicable federal or state law or regulation.

14.    **Reliance on Counsel.** The Parties each represent and warrant that they enter into this Agreement freely, that they do so having received the advice of counsel of their choosing, and that they have read and fully understood the contents and effects of this Agreement.

15.    **Severability.** If any provision or portion of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions or portions shall remain in full force and effect.

16.     **<u>Successors and Assigns</u>**. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties, whether by way of merger, consolidation, operation of law, assignment, purchase, or other acquisition.

17.     **<u>Entire Agreement.</u>** This Agreement is the entire agreement between the Parties with respect to the subject matter hereof and supersedes any prior agreement or communications between the Parties, whether written, oral, electronic, or otherwise. No change, modification, amendment, or addition of or to this Agreement shall be valid unless in writing and signed by authorized representatives of the Parties. Each Party hereto has received independent legal advice regarding this Agreement and their respective rights and obligations set forth herein. The Parties acknowledge and agree that they are not relying upon any representations or statements made by the other Party or the other Party's employees, agents, representatives, or attorneys regarding this Agreement, except to the extent such representations are expressly set forth herein.

18.     **<u>Binding Impact.</u>** This Agreement shall be binding upon the Parties and shall inure to the benefit of the Parties, as well as their respective estates, heirs, legal representatives, successors, predecessors, parent companies, subsidiaries, affiliates, owners, directors, officers, shareholders, employees, and assigns.

19.     **<u>No Negative Inferences.</u>**   The Parties specifically understand and agree that this Agreement is the product of negotiations among them, and that each Party shall be

deemed to have drafted this Agreement so as to avoid any negative inference by any court as against the drafter of this Agreement.

20.   **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which, taken together, shall constitute one and the same agreement.  This Agreement shall be deemed fully executed when each Party has received at least one counterpart executed by each other Party.

21.   **Contingent upon Recovery.** The Client acknowledges that any receivable amount, which is contingent upon Recovery, shall be subject to a pro-rated Reward less any expenses in excess of what is raised through this settlement program. This agreement ensures that the Client is fully aware of the financial implications associated with the Recovery, emphasizing the comprehensive nature of expenses covered by Genie in pursuit of the Client's claim. To be clear, Genie cannot

*(REST OF PAGE INTENTIONALLY LEFT BLANK)*

guarantee any Reward of any amount, nor the timing of any Reward. This settlement program is being provided on a best-efforts basis.

**WITNESS WHEREOF,** the Parties have affixed, or caused to be affixed, their respective signatures, effective on the day and year first set forth below.

_____

**[Your Business Name]**

Signed:    _____

By: _____

Title: _____

Date:     _____

**GENIE INVESTMENTS**

Signed:    _____

By:      John Michael Cohan

Title:    Director

Date:     _____

## Reward Schedule

Upon successful judgment or settlement of the Velanos Litigation and the Reward is collected, the Reward shall be distributed in the following distribution schedule:

**Your Reward = Your Payment (pro-rated based on your Contribution) + Your Contribution**

<u>Payment Examples</u>: Interest Credit Account, Due Diligence, and/or Bridge Interest)

**Example**:  Your Payment to Genie was = $100,000

Your Contribution  = $10,000

Your Reward = $110,000

(1)  The Reward will be paid out on a First In, First Out (FIFO) accounting principle. In other words, the first money in is the first money out. You are required to upload your time-stamped wire receipt in the ZOOMERAL messaging system.

(2)  Genie will start receiving wires Monday 02/19/2024 9:00 am.

(3)  The program's expiration date is Friday 02/23/2024 5:00 pm.

(4)  You can provide 10% or less of your total payment(s) to Genie. $5,000 secures a $55,000 first position, $110,000 secures and $100,000 first position, and so on. You will have the opportunity to place more funds after the expiration date.

(5)  Please note that after this date, the parties that participate in the program, if they wish to do so, will have the ability to participate on a larger scale and pick up any portion that another party decided not to participate in on a first come, first serve basis.

(6)  This is completely optional. If you decide not to participate, and there is a recovery, you will be paid out after those who participate if funds recovered are sufficient to do so. For those that decided not to participate, you will receive a separate settlement agreement after next week that encompasses this concept.

(7)  Distributions will be distributed by an attorney of Genie's choosing at Genie's sole discretion.

**<u>Wiring Instructions</u>**

Bank Name & Address: TD Bank, N.A., 32 Chestnut Street, P.O. Box 1377, Lewiston, Maine 04243

Account Mailing Address: P.O. Box 60443, Jacksonville, Florida 32236

Routing Number: ███████

Credit Account Number: █████████

Account Title: Genie Investments

Memo: "Velanos Litigation" with your <u>ZOOMERAL User ID</u>