# EXHIBIT COVER SHEET

|  |  | **Exhibit** |
|---|---|---|
| Party Submitting: | **Mary Ida Townson, U.S. Trustee for Region 21** | |
| Admitted: | **YES     or     NO     (circle one)** | **141** |
| Chapter 11 Debtor: | **Genie Investments NV, Inc.** | |
| Case No. | **3:24−bk−00496−BAJ** | |
| Nature of Hearing: | **Trial on** | |
|  | **U.S. Trustee's Motion to Appoint Chapter 11 Trustee, or, in the Alternative, Appoint Examiner, Dismiss Case, or Convert Case to Chapter 7 (Doc. No. 20)** | |
|  | **Debtor's Response Thereto (Doc. No. 34)** | |
|  | **U.S. Trustee's Reply (Doc. No. 38)** | |
| Trial Date: | **April 9, 2024, at 9:00 a.m.** | |

**United States Bankruptcy Court**
**Middle District of Florida**

**Dated:_____, 2024.**

**By: _____, Deputy Clerk**

| | |
|---|---|
| From: | Michael Lanza |
| To: | Kipp Nash |
| Cc: | kipnash2@gmail.com; Larry Roche |
| Subject: | Re: Retention Agreement. |
| Date: | Tuesday, January 3, 2023 2:46:05 PM |
| Attachments: | Outlook-image.png.png<br>Outlook-image.png.png<br>Outlook-image.png.png<br>Outlook-image.png.png<br>Kipp John Nash A-Complete home inspection Retention Agreement SC.pdf |

Previous document was not PDF fillable. Here it is so you can sign digitally. Saw you called. On a conference call. Will call a little later.

**Michael J. Lanza**
**Direct** 321-295-4808
**Office** 800-616-7276
**Senior Commercial Loan Officer**
McMannCommercialLending.com
Appointment Calendar



---

**From:** Michael Lanza
**Sent:** Tuesday, January 3, 2023 1:17 PM
**To:** Kipp Nash <kipnash7@gmail.com>
**Cc:** kipnash2@gmail.com <kipnash2@gmail.com>; Larry Roche <Larry@crestarmortgage.net>
**Subject:** Retention Agreement.

This is the agreement for the Bridge loan. Please execute and return with a copy of the wire confirmation for the 20K. Once Received you will be issued your Terms Sheet, Data Management Agreement and the Bridge loan agreement. Thanks.

**Michael J. Lanza**
**Direct** 321-295-4808
**Office** 800-616-7276
**Senior Commercial Loan Officer**
McMannCommercialLending.com
Appointment Calendar

# GENIE INVESTMENTS
*Believe in your Dreams*

January 3, 2023

**Wiring Instructions**

As per your Due Diligence Fee Agreement, the Borrower must wire the necessary amount to:

**Bank Name & Address:**
Chase Bank
1515 Atlantic Boulevard
Jacksonville, Florida 32207

**Account Mailing Address:**
401 Ryland Street Suite 200-A
Reno, Nevada 89502 8

**Routing Number:** ███████

**Credit Account Number:** ███████8502

**Account Title:** Genie Investments NV

This fee for Due Diligence is 100% **non-refundable**.

**\*\*When sending the wire, please write "Due Diligence" in the Memo along with your ZOOMERAL User ID 2633"\*\***

1                                                                                          Initials: _____

## DUE DILIGENCE FEE AGREEMENT

This Due Diligence Fee Agreement (this "**Agreement**"), dated as of January 3, 2023 (the "**Effective Date**"), is entered into between A Complete Home Inspection, LLC, having an address at 110 Velsco Lane, Port Sulphur, LA 70083 ("Borrower"), and Genie Investments, having an address at P.O. Box 5886, Wilmington, Delaware 19808 ("**Company**"), and together with the Borrower, the "Parties," and each, a "Party").

WHEREAS, Borrower desires to compensate **Company** for its costs to conduct certain due diligence services ("Services") upon the terms and conditions hereinafter set forth, and **Company** is willing to perform such Services.

In consideration of the mutual covenants and agreements hereinafter set forth, the Parties agree as follows:

1. **Performance of Services**

Upon request of Company, Company agrees to the Services in connection with Borrower applying for funding.

2. **Payment**

As a material inducement to Company to commence the Services, the Borrower shall pay Company a non-accountable and non-refundable fee of Twenty Thousand Dollars ($20,000), payable prior to commencement of the Services.

Payment of the diligence fee is not a guarantee that Company will offer funding to Borrower, or that any offer will be on terms and conditions acceptable to Borrower. Assuming sufficiency of the diligence materials provided by Borrower, Company intends to offer a Bridge Loan to Borrower to cover the Interest Credit Deposit amount. The maximum cost of this Bridge Loan will be Fifteen Thousand dollars per One Hundred Thousand dollars needed ($15,000/$100,000) or Fifteen percent (15%) of the Interest Credit Deposit. This interest of this Bridge Loan is 100% non-refundable.

3. **Term and Termination**
    a. Terms
        This Agreement shall commence as of the Effective Date and shall continue thereafter until the completion of the Services, unless sooner terminated pursuant to this section.

    b. Termination
        Company may terminate this Agreement, upon the occurrence of any of the following events:

    a. Borrower fails, in the absence of a bona fide dispute with respect to such payment, to make payment for Services on its due date, provided however, that Borrower may cure such breach by making payment within 5 days of Borrower's receipt of notice that it failed to make such payment when due;

    b. Borrower requests that Company violate any applicable law or the rules of any regulatory body having jurisdiction and Borrower does not promptly revoke such request upon Company's refusal to comply;

    c. Borrower requests that Company take any action which would result in the commission of a fraud upon any person or party and Borrower does not promptly revoke such request upon Company's refusal to comply; or

    d. Borrower requests that Company take any action that, upon the advice of counsel to Company, could subject Company to liability or material damages in a civil litigation and Borrower does not promptly revoke such request upon Company's refusal to comply).

4. **Borrower Representations**
   a. Reliance
   
   Borrower acknowledges and agrees that all materials and information Borrower provided to Company is accurate and complete, and that Company will, without independent verification, rely on it for the purpose of potentially providing funding. Company shall not assume any responsibility or have any liability for such materials or information. Borrower represents that Borrower has the right to supply such information to Company and that the supply of such information by Borrower and its use by Company for the purposes of the provision of the Services will not infringe any rights held by any third party, involve the unauthorized use of confidential information belonging to a third party or result in the breach by Borrower or Company of any law, regulation, fiduciary duty, intellectual property right or agreement.

   b. Litigation
   
   Borrower (i) is not subject to any outstanding injunction, judgment, order, decree, ruling, or charge or (ii) is not a party or is not threatened to be made a party to any action, suit, proceeding, hearing, or investigation of, in, or before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator, in each case that could be reasonably

expected to result in a material adverse change in the business, financial condition, operations, results of operations, or future prospects of Borrower.

### 5. Indemnification

Borrower shall indemnify Company against any cost, loss, expense or liability which may be suffered or incurred by Company in the proper performance of its obligations under this Agreement including, without limitation, arising from any misrepresentation, misconduct, negligence or dishonesty on the part of any third party, except to the extent that the cost, loss, expense or liability is due to the breach of this Agreement, violation of law, negligence, willful misconduct, fraud or dishonesty on the part of Company or to the extent that such liability cannot lawfully be excluded or limited.

### 6. Independent Contractor

Company's status shall be that of an independent contractor, and not that of an agent or employee of Borrower. Company shall not hold itself out as an employee or agent of Borrower except as contemplated by any other ancillary agreement.

### 7. Arbitration

Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in New Castle County, Delaware, before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures or by ADR Services pursuant to its Arbitration Rules, at the election of the party initiating the arbitration. The Party initiating a demand for Arbitration shall serve notice of such demand pursuant to the notice requirements set forth in Section 9 herein. Within three (3) banking-business days of service of any demand for arbitration, the Parties to the dispute shall work cooperatively to mutually select an agreeable arbitrator. If the Parties to the dispute are unable to reach agreement on an arbitrator, then the arbitration shall be selected pursuant to the JAMS or ADR Services arbitration selection protocol. Each side shall be entitled to propound one (1) set of requests for production of documents. The requests in each set shall not number more than twenty-five (25) and shall be limited to documents relevant to the issues to being arbitrated. Each side shall further be entitled to notice and take no more than three (3) depositions, which shall last no more than three (3) hours per deponent, including reasonable breaks and objections. No other discovery shall be permitted, except upon a showing of good cause to the arbitrator. Any disputes regarding discovery shall be submitted to and decided by the arbitrator. The prevailing party shall be entitled to an award of its reasonable costs and expenses, including but not limited to, attorneys' fees, in addition to any other available remedies. Any award rendered therein shall be final and binding on each and all of the parties thereto and their personal representatives, and judgment may be entered thereon in any court of competent jurisdiction. This clause shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. Any action or proceeding brought to interpret or enforce this agreement to arbitrate

Initials: _____

shall be governed by the laws of the State of Delaware. This agreement to arbitrate is intended by the Parties to constitute a waiver of any right to trial by jury, or the right to proceed in any state or federal court for resolution of any dispute arising in relation to the enforcement or interpretation of this Agreement, or this agreement to arbitrate.

### 8. Confidentiality

During the term of this Agreement, the Parties may communicate to each other certain confidential information to enable Company to perform the Services hereunder, or Company may develop confidential information for Borrower. Each Party agrees (i) to treat, and to cause its employees, agents, subcontractors and representatives, if any, to treat as secret and confidential, all such information, and (ii) except as necessary in the performance of the Services, not to disclose any such confidential information or make available any reports, recommendations or conclusions which Company may make for Borrower to any person, firm or corporation without first obtaining Company's written approval.  The foregoing shall not prohibit or restrict any party from disclosing any information:  (a) the disclosure of which is necessary to comply with any applicable laws, including, without limitation, federal or state securities laws, or any exchange listing or similar rules and regulations; (b) the disclosure of which is ordered pursuant to a subpoena or other order from a court or governmental body of competent jurisdiction; (c) such information is now, or hereafter is made, generally available to the public other than by disclosure in violation of this Agreement; (d) such information was disclosed to the disclosing Party by a third party that the disclosing Party, in good faith, believes was not bound by an obligation of confidentiality; or (vi) the Parties hereto consent to the form and content of any such disclosure. If any Party learns that disclosure of such information is sought in or by a court or governmental body of competent jurisdiction or through other means, such Party shall (1) give prompt notice to the other Party prior to making such disclosure and allow such other Party, at its expense, to undertake appropriate action to prevent disclosure of, or to obtain a protective order for, such information, (2) reasonably cooperate with such other Party in its efforts to prevent, or obtain a protective order for, such disclosure, and (3) disclose the minimum amount of information required to be disclosed.

### 9. Notices

All notices given under this Agreement, unless otherwise specified herein, must be in writing and will be effectively served by: (i) submission through the zoomeral.com portal using the Borrower's ZOOMERAL account and (ii) upon delivery or, if sent certified mail, upon the first to occur of receipt by the addressee or the expiration of ninety six (96) hours after deposit in first class certified United States mail, postage prepaid, return receipt requested, or two business days if sent by pre-paid nationally recognized overnight courier service, sent to the Party at its address set forth below, or such other address as a Party may designate from time to time by written notice given pursuant to this paragraph:

To Borrower:  A Complete Home Inspection, LLC
Attention: Kipp Nash
███████████

5                                           Initials: _____

To Company:  Genie Investments
P.O. Box 5886
Wilmington, Delaware 19808

### 10. Assignment

Borrower may not assign, subcontract or delegate all of any part of its rights or obligations hereunder without Company's prior written approval (which may be withheld or delayed in Company's sole discretion).

### 11. Binding Effect

Subject to the provisions of section 10 above, the terms of this Agreement will bind and benefit the successors and assigns of the Parties.

### 12. Waiver

No delay or omission on the part of any party hereto in exercising any right hereunder shall operate as a waiver of such right or any other right under this Agreement.

### 13. Headings

The several headings to articles, sections and subsections herein are inserted for convenience only and shall be ignored in interpreting the provisions of this Agreement.

### 14. Schedules, Attachments and Exhibits

All schedules, attachments and exhibits, if any, referred to in or attached to this Agreement are and shall be deemed to be an integral part of this Agreement as if fully set forth herein.

### 15. Amendments

This Agreement may not be modified or amended except by written agreement signed by Borrower and Company.

### 16. No Third-Party Rights

This Agreement is made entirely for the benefit of Borrower, Company, and their successors in interest (including any participants). No third person shall have any rights hereunder.

### 17. Force Majeure

No liability shall result from the delay or nonperformance of Services caused by circumstances beyond the control of Company, including without limitation Act of God, fire, flood, snowstorm, pandemic, war, acts of terrorism, government action, riot, civil disturbance, accident, inability to obtain labor, material, or equipment ("Force Majeure"). During periods of Force Majeure, Services so affected by such Force Majeure may be eliminated without liability, but this Agreement shall remain otherwise unaffected. Timely notice of Force Majeure and its expected duration shall be given by the affected party to the other, and the party whose performance is affected by a Force Majeure event will use commercially reasonable efforts to avoid, remove or

minimize the impact of such event on the performance of its obligations at the required level at the earliest possible date.

### 18. Applicable Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware and the United States.

### 19. Severability

The invalidity or unenforceability of any one or more of the provisions of this Agreement will in no way affect any other provision.

### 20. Counterparts

This Agreement may be signed in two or more counterparts, each of which shall be treated as an original but which, when taken together, shall constitute one and the same instrument. A signed facsimile or electronic copy of this Agreement shall constitute an original for all purposes.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the date first above written.

A Complete Home Inspection, LLC

_____
Kipp Nash

*Genie Investments*
Genie Investments

7                                                                                    Initials: _____

# **Exhibit A**

As agreed to in the Due Diligence Fee Agreement, Borrower agrees to provide the Company with all of the following (mark any not applicable as "N/A"):

1. Income Statement (past five years or less starting with company establishment)

2. Balance Sheets (past five years or less starting with company establishment)

3. Cash Flow Statements (past five years or less starting with company establishment)

4. Tax Returns (past five years or less starting with company establishment)

5. Net Worth Statement/s for All Equity Owners That Have A 5% Or Higher Ownership Stake

6. Business Plan Including A 2 Year Forecast/Proforma & Management Bios

7. Previous 3 Month's Business Bank Statements for All Business Bank Accounts

8. Post-Closing Balance Sheet Assuming Term Sheet Terms/Rates

9. All UCC Lien Filings & Current List of All Material Creditors

10. Articles of Incorporation and Corporate Bylaws/Operating Agreement

11. Capitalization Table of All Outstanding Stock Shares, Stock Warrants, & Stock Options

12. Documentation Related to All Registered Intellectual Property (Patents and Trademarks)

Initials: _____