UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:                                                                            Case No.: 3:24-bk-00496-BAJ

GENIE INVESTMENTS NV, INC.,                                      Chapter 11

      Debtor.
_____/

**MOTION TO APPROVE SETTLEMENT AGREEMENT
BETWEEN GENIE INVESTMENTS NV, INC
AND VELANOS PRINCIPAL CAPITAL,
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

**NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of the Court at 300 North Hogan Street, Suite 3-150, Jacksonville, FL 32202 within 14 days from the date of the attached proof of service, plus an additional 3 days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or a hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

GENIE INVESTMENTS NV, INC., Debtor in Possession ("Debtor"), through counsel and pursuant to Federal Rule of Bankruptcy Procedure 9019(a), moves to approve a settlement agreement between the Debtor and VELANOS PRINCIPAL CAPITAL ("Velanos") (collectively, the "Parties"), and states:

### *Jurisdiction and Venue*

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue of this matter is appropriate with this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### *Factual and Procedural Background*

2. The Debtor filed it's Chapter 11 case on February 21, 2024;

3. The Debtor is the operator of a loan business which operates in various jurisdictions around the United States of America.

4. Velanos is in the business of investing solicited funds in various revenue generating venues, including alleged Stand By Letters of Credit.

5. On or about October 21, 2022, Genie and Velanos (individually "Party" and collectively "the Parties") entered into a "Joint Venture Agreement" ("JVA").

6. On October 25, 2023, Genie commenced an arbitration proceeding (the "Arbitration") against Velanos with JAMS, seeking a determination that Velanos materially breached the JVA and an award of damages.

7. On February 6, 2024, Genie filed a lawsuit in the U.S. District Court for the Middle District of Florida, case number 6:24-cv-00271 (the "Florida Litigation"), in which it asserted claims related to the JVA against multiple defendants other than Genie.

8. Genie and Velanos now wish to settle their dispute and resolve both the Arbitration and the Florida Litigation according to the terms set forth below.

### *The Controversy*

9. The Debtor contends it was defrauded by Velanos in a Stand By Letter of Credit investment scheme when it invested $9,000,000.00 with Velanos pre-petition and only received

$500,000.00 from Velanos as a return on that investment. The Debtor further maintains that pursuit of judicial action against Velanos may adversely impact its ability to reorganize due to cost.

10. Velanos has agreed to settle the alleged fraud based on the below terms.

11. There are no other parties to the settlement agreement or the facts above.

### *The Compromise*

12. Effective as of May 15, 2024, the Parties reached a resolution of certain disputes related to the Velanos Joint Venture Agreement as reflected by the Settlement Agreement (the "Compromise" or "Agreement"), a true and correct copy of which is attached hereto as **Exhibit "1"**. The key terms follow.

13. Settlement Amount. Velanos shall pay Genie the total sum of Fifteen Million

14. ($15,000,000.00) dollars (the "Settlement Amount"). The Settlement Amount shall be paid to Genie in ten installments ("Installment Payments"), as follows:

> The first Installment Payment shall be completed within two (2) business days of the effective date of the Settlement Agreement, in the amount of fifty thousand dollars($50,000.00).
>
> The second Installment Payment shall be completed on or before June 30, 2024, in the amount of five hundred thousand dollars ($500,000.00).
>
> The third Installment Payment shall be completed on or before September 30, 2024, in the amount of one million dollars ($1,000,000.00).
>
> The fourth Installment Payment shall be completed on or before December 31, 2024,in the amount of two million dollars ($2,000,000.00).
>
> The fifth Installment Payment shall be completed on or before March 31, 2025, in the amount of two million dollars ($2,000,000.00).
>
> The sixth Installment Payment shall be completed on or before June 30, 2025, in the amount of two million dollars ($2,000,000.00).
>
> The seventh Installment Payment shall be completed on or before September 30, 2025,in the amount of two million dollars ($2,000,000.00).

       The eighth Installment Payment shall be completed on or before December 31, 2025, in the amount of two million dollars ($2,000,000.00).

       The ninth Installment Payment shall be completed on or before March 31, 2026, in the amount of two million dollars ($2,000,000.00).

       The tenth Installment Payment shall be completed on or before June 30, 2026, in the amount of one million four hundred and fifty thousand dollars ($1,450,000.00).

15. The Agreement includes limited releases related to the arbitration action by the Debtor against Velanos.

16. The releases are without prejudice as any default on the above settlement payment schedules.

### *Requested Relief and Applicable Law*

17. By this Motion, the Trustee seeks Court approval of the Compromise reached between the Parties, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, which authorizes a Bankruptcy Court to approve a compromise or settlement. The approval or rejection of a compromise or settlement is left to the sound discretion of the bankruptcy court, which should approve the settlement only if it is fair and equitable and in the best interest of the estate. *In re Kay*, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998) (Briskman, J.).

18. Courts have relied on a number of factors in determining whether to approve a compromise or settlement pursuant to Rule 9019(a). These factors include: (a) the probability of success in the litigation; (b) difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it (which should also include the possibility that denial of the settlement will cause depletion of estate assets); and (d) the paramount interest of the creditors and a proper deference to their reasonable views. *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), cert.

denied sub nom., *Wallace v. Justice Oaks, II, Ltd.*, 498 U.S. 959 (1990); *In re Kay*, 223 B.R. at 820.

19. The Settlement Agreement between the Debtor and Velanos is in the best interest of the estate because it will result in savings of attorneys' fees, costs and resources. The cost and risk associated with continued litigation outweigh the benefit of protracted litigation. The Debtor believes that the repayment terms are feasible and avoid the risk of having to make a lump sum payment.

20. Accordingly, Debtor submits that the settlement is within the best interest of the Debtor's estate and seeks the entry of an Order approving the Agreement.

WHEREFORE, the Debtor respectfully requests that this Court enter an order (i) approving the Agreement absent objection; (ii) directing the parties to comply with the terms of the Agreement; (iii) reserving jurisdiction to enforce the terms and conditions of the Compromise and to otherwise resolve any disputes under or pertaining to the Compromise; and (iv) providing for such other and further relief as the Court deems just and proper if an objection is filed.

Dated:  May 23, 2024.

Law Offices of Mickler & Mickler, LLP

*/s/ Bryan K. Mickler*
Bryan K. Mickler, Esquire
Florida Bar No. 091790
Attorneys for Debtor in Possession
5452 Arlington Expy.
Jacksonville, FL 32211
(904) 725.0822 / FAX: 725.0855
bkmickler@planlaw.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on May 23, 2024, a true copy of the foregoing has been sent via:

*CM/ECF to:*

*U.S. Trustee*
**United States Trustee - JAX 11**
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

All those registered to receive notice through CM/ECF and All Interested Parties listed on the attached matrix.

                                                                  */s/ Bryan K. Mickler*
                                                                  Bryan K. Mickler, Esquire

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Settlement Agreement") is entered into effective May 15, 2024 between (1) Genie Investments NV, a Nevada corporation ("Genie"), and (2) Velanos Principal Capital, a business entity registered in Ontario, Canada ("Velanos"), with respect to the following:

    a. On or about October 21, 2022, Genie and Velanos (individually "Party" and collectively "the Parties") entered into a "Joint Venture Agreement" ("JVA").

    b. On October 25, 2023, Genie commenced an arbitration proceeding (the "Arbitration") against Velanos with JAMS, seeking a determination that Velanos materially breached the JVA and an award of damages.

    c. On February 6, 2024, Genie filed a lawsuit in the U.S. District Court for the Middle District of Florida, case number 6:24-cv-00271 (the "Florida Litigation"), in which it asserted claims related to the JVA against multiple defendants other than Genie.

    d. Genie and Velanos now wish to settle their dispute and resolve both the Arbitration and the Florida Litigation according to the terms set forth below.

NOW, THEREFORE, in consideration of the following mutually agreed covenants and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

    1. <u>Definitions</u>. For purposes of this Settlement Agreement, the following definitions shall apply:

        A. "Genie" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

        B. "Velanos" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

        C. "Trading Account Interest" refers to Velanos' ownership interest in the account ("Trading Account") described and identified in Section 3 of this Settlement Agreement and **Exhibit B** hereto.

2. <u>Settlement Amount</u>. Velanos shall pay Genie the total sum of Fifteen Million ($15,000,000.00) dollars (the "Settlement Amount"). The Settlement Amount shall be paid to Genie in ten installments ("Installment Payments"), as follows:

   A. The first Installment Payment shall be completed within two (2) business days of the effective date of the Settlement Agreement, in the amount of fifty thousand dollars ($50,000.00).

   B. The second Installment Payment shall be completed on or before June 30, 2024, in the amount of five hundred thousand dollars ($500,000.00).

   C. The third Installment Payment shall be completed on or before September 30, 2024, in the amount of one million dollars ($1,000,000.00).

   D. The fourth Installment Payment shall be completed on or before December 31, 2024, in the amount of two million dollars ($2,000,000.00).

   E. The fifth Installment Payment shall be completed on or before March 31, 2025, in the amount of two million dollars ($2,000,000.00).

   F. The sixth Installment Payment shall be completed on or before June 30, 2025, in the amount of two million dollars ($2,000,000.00).

   G. The seventh Installment Payment shall be completed on or before September 30, 2025, in the amount of two million dollars ($2,000,000.00).

   H. The eighth Installment Payment shall be completed on or before December 31, 2025, in the amount of two million dollars ($2,000,000.00).

   I. The ninth Installment Payment shall be completed on or before March 31, 2026, in the amount of two million dollars ($2,000,000.00).

   J. The tenth Installment Payment shall be completed on or before June 30, 2026, in the amount of one million four hundred and fifty thousand dollars ($1,450,000.00).

Unless otherwise instructed by Genie in accordance with the requirements set forth below, Velanos shall direct all Installment Payments to the account (the "Recipient Account") identified in **Exhibit A** to this Settlement Agreement. At any time, Genie may, at its sole discretion, designate a different Recipient Account by providing Velanos with written notice identifying the alternate Recipient Account at least fifteen (15) business days before the Installment Payment's due date.

An Installment Payment will be considered completed as of the time it is received in the Recipient Account, as reflected in the records of the bank where the Recipient Account is held. An Installment Payment shall be deemed timely completed if it is received in the Recipient Account prior to 11:59 PM Central time on its due date.

3. <u>Confidential Trading Account Information; Immediate Disclosure of Account Documents Upon Event of Default</u>. Concerning the Trading Account and Trading Account Interest, Velanos represents and warrants that its owner and CEO, Joshua Wearmouth, has duly executed the

affidavit attached as **Exhibit B** to this Settlement Agreement with full authority to do so. Velanos further represents and agrees that:

A. Velanos is the sole owner of the Trading Account Interest.

B. The present principal value of the Trading Account Interest is at least $5,000,000.

C. Velanos has provided its legal counsel with unredacted copies of documentation (collectively, "Account Documents") concerning the Trading Account and the Trading Account Interest, including, but not limited to: (i) any and all agreements showing Velanos' ownership share in the Trading Account, (ii) any and all agreements governing activity in or administration of the Trading Account, (iii) statements created by or obtained from the showing all activity in the Trading Account since its formation, and (iv) such other documents as necessary to give the holder of the Account Documents all information necessary to locate the Trading Account, accurately assess the value of the Trading Account Interest, and understand any salient restrictions on the ability of the owner(s) of the Trading Account Interest to access the principal and profits therein.

D. Velanos agrees to supplement the information and documentation it has provided to its legal counsel pursuant to Section 3(C) of this Settlement Agreement either on or before the due date for each Installment Payment or more frequently, in the event of any material change the terms governing the Trading Account or of any communication from, or public statement by, the entity administering the Trading Account indicating that the Trading Account will or may be closed during the term of this Settlement Agreement.

E. Velanos authorizes and instructs its legal counsel to hold the Account Documents in trust during the term of this Settlement Agreement. Upon the occurrence of any Event of Default under this Settlement Agreement, however, Genie shall have the right to request and immediately obtain from Velanos' legal counsel all Account Documents. Notwithstanding any obligations to the contrary, Velanos authorizes and instructs its legal counsel to make immediate delivery of the Account Documents to Genie, and to provide Genie any other documents or information reasonably necessary for Genie to enforce the arbitration award and/or judicial confirmation described in Section 6 of this Settlement Agreement, upon the occurrence of any Event of Default.

F. If, during the term of this Settlement Agreement, the legal counsel identified herein ceases to represent Velanos in connection with this matter, then Velanos shall immediately: (i) engage substitute legal counsel, (ii) provide Genie written notice of the change in legal counsel and the identity of Velanos' substitute legal counsel, and (iii) authorize, instruct, and equip its substitute legal counsel to perform each of the duties described in this Section.

G. The Parties agree that failure to comply fully and timely with any portion of this Section shall result in additional damages to Genie, for which Velanos shall immediately be liable to Genie in the amount of one hundred thousand dollars ($100,000.00). This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from

a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

4. <u>Genie's Release of Velanos</u>. Subject to the conditions set forth in this Settlement Agreement, Genie hereby releases and forever discharges Velanos from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA, including but not limited to all claims that were or could have been asserted in the Arbitration, *provided, however*:

   A. This release shall not apply to claims arising out of the enforcement of this Settlement Agreement.

   B. Genie's release of any rights, claims, causes of action, damages, liabilities or demands, whether in law or in equity, against Velanos shall be of no force and effect until the successful completion of all Installment Payments contemplated by this Settlement Agreement.

   C. Any Event of Default by Velanos shall void the release set forth in this paragraph.

5. <u>Velanos' Release of Genie</u>. Velanos hereby releases and forever discharges Genie from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits, or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA.

6. <u>Consent Award in Arbitration and Judicial Confirmation Thereof</u>. The Parties agree that, within three (3) business days of the effective date of this Settlement Agreement, they will jointly submit and request entry of a proposed Consent Award pursuant to Rule 28(c) of the Comprehensive Arbitration Rules & Procedures of JAMS Arbitrators and Arbitration Services. The Consent Award submitted by the Parties is attached as **Exhibit C** to this Settlement Agreement and, in pertinent part, states that Genie is awarded damages totaling twenty million dollars ($20,000,000.00), which amount is due and payable by Velanos within fifteen (15) calendar days of the Consent Award's entry.

   A. Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

   B. Velanos agrees not to oppose or challenge any such application by Genie for judicial confirmation of the arbitration award. Violation of this subparagraph by Velanos shall result in additional damages to Genie, for which Velanos shall be immediately liable to Genie in the amount of one million dollars ($1,000,000.00), plus interest accruing at an annual rate of nine percent (9.0%) from the date of the violation. This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of

Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

C. Genie agrees that it will not seek to collect on the arbitration award, or on any judgment confirming the arbitration award, prior to either (i) the occurrence of any Event of Default or (ii) an indication by Velanos, through either words or actions, that an Event of Default is imminent.

D. If the arbitrator in the Arbitration refuses to enter an Award that is identical or substantially identical in substance to the proposed Consent Order submitted by the Parties, then the Parties shall have seven (7) calendar days from the date on which JAMS notified the Parties of that fact to reach a mutually agreeable amendment of this Settlement Agreement. If they are unable to do so within that time, then this Settlement Agreement shall have no further force or effect.

7. <u>Dismissal of Florida Litigation</u>. No later than three (3) business days after the receipt of the second installment payment, Genie will file a Motion to Dismiss the Florida Litigation without prejudice. Velanos agrees to consent to that motion and to take no action to oppose or contest the motion or to delay the Court's action regarding it.

8. Genie agrees that it will not, prior to the occurrence or reasonable anticipation of any Event of Default by Velanos, make contact in any manner whatsoever with any person or entity whom Genie knows to be a partner, asset holder, bank officer, escrow officer, or paymaster of Velanos, with the exception of any persons or entities with whom Genie, its principals, or its representatives had a prior business relationship, for the purposes of obtaining information about or interfering with any of Velanos' existing or prospective business relationships.

9. <u>Events of Default</u>. For purposes of this Settlement Agreement, "Events of Default" include the following:

A. Failure of Velanos to make any Installment Payment when due.

B. Failure of Velanos to perform or observe any of Velanos' covenants or agreements contained in this Settlement Agreement.

C. The depletion of the principal amount of Velanos' ownership share in the Trading Account below five million dollars ($5,000,000.00) at any time before Velanos' satisfaction in full of all of the obligations imposed on it by this Settlement Agreement, regardless of whether such depletion results from any action of failure to act by Velanos or from any external factor, including trading losses, market forces, or the action or inaction of any third party or parties.

D. Failure of Velanos to comply with every aspect of Paragraph 11 ("Security Interest") of this Settlement Agreement.

5

E.  The sale or other transfer by Velanos of all or any material part of its property or assets except in the usual and ordinary course of the operation of its business; or a change in the general character, or suspension of any significant part, of Velanos' business.

F.  Actions by or on behalf of Velanos to: (1) make an assignment for the benefit of creditors or petition or apply to any tribunal for the appointment of a custodian, receiver, or trustee for it or a substantial part of its assets, (2) commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, (3) have any such petition or application filed or any such proceeding commenced against it that is not dismissed within thirty (30) days, (4) indicate, by any act or intentional and purposeful omission, its consent to, approval of or acquiescence in any such petition, application, proceeding or order for relief or the appointment of a custodian, receiver or trustee for it or a substantial part of its assets, or (5) suffer any such custodianship, receivership or trusteeship that continues undischarged for a period of thirty (30) days or more.

G.  Entry against Velanos of a judgment or decree in excess of Fifty Thousand Dollars ($50,000) that becomes non-appealable and remains undischarged, unsatisfied by insurance or otherwise, and unstayed for more than thirty (30) days.

H.  The existence of a default or an event that, with the giving of notice (1) would constitute a default, under any other indebtedness of Velanos, for borrowed money or (2) would cause (or would permit any holder of such indebtedness or trustee to cause) such indebtedness, or a portion thereof in an aggregate amount exceeding Fifty Thousand Dollars ($50,000.00), to become due prior to its stated maturity or prior to its regularly scheduled dates of payment.

I.  Violation by Genie of Paragraph 8 of this Settlement Agreement.

10. <u>Default</u>. Upon the occurrence of any "Event of Default," as described in Paragraph 9 of this Settlement Agreement:

A.  The entire amount of the Consent Award and any court judgment confirming that award, including all accrued post-judgment interest thereunder, and less the total amount of Installment Payments completed as of the Event of Default, shall, without any prior notice, presentment, or demand, become immediately due and payable in full.

B.  Genie shall immediately have the right to take any and all legal action it deems proper to enforce the Consent Award and/or any court judgment confirming that award.

C.  Genie shall immediately have the right to take any and all legal action it deems proper, including but not limited to reinstating the Florida Litigation.

D.  Genie shall be entitled to recover any and reasonable attorney's fees, costs, and expenses that it reasonably incurs as a result of Velanos challenging or contesting any action taken by Genie based in furtherance of the rights created under this Paragraph, absent a ruling by a court of competent jurisdiction that Velanos' challenge or contest of such action is valid.

11. <u>Security Interest</u>. As security for the prompt and full satisfaction of the outstanding balance of all sums due under this Settlement Agreement or under the Consent Award, Velanos agrees that Genie shall have, and Velanos hereby grants and pledges to Genie, a security interest in all: accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, money, insurance and insurance claims, supporting obligations, and all other personal and fixture property, whether governed by Article 9 of the Uniform Commercial Code ("UCC") or other law wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "Collateral").

    A. In addition to all rights and remedies given to Genie by this Settlement Agreement, Velanos and Genie agree that this Settlement Agreement constitutes a security agreement under the UCC, and that Genie shall have all the rights and remedies of a secured party thereunder.

    B. Velanos agrees that it shall preserve and protect Genie's security interest in the Collateral and that it shall not, without Genie's prior written consent, grant or create or permit to attach or exist any mortgage, security interest, lien, judgment, or other encumbrance of or in the Collateral or any portion thereof, other than the security interest provided for in this Settlement Agreement.

    C. Velanos agrees to provide from time to time at Genie's reasonable request such additional redacted documents or instruments, for Genie to perfect and maintain its security interest in the Collateral. Velanos consents to Genie filing or causing to be filed or recorded, such instruments, documents, or notices, including assignments, financing statements, and continuation statements as Genie may deem necessary or advisable from time to time in order to perfect, to continue perfected, and to preserve the priority of the lien and security interest in the Collateral granted pursuant to this Settlement Agreement.

12. <u>Entire Agreement; No Parol Evidence</u>. This Settlement Agreement is a complete integration of the Parties' agreement and constitutes the entire agreement between them with respect to the subject matter hereof. This Settlement Agreement supersedes any and all other oral or written communications, representations, understandings, agreements, negotiations and discussions between the Parties and their attorneys. No parol evidence shall be admissible to interpret, explain, vary, or supplement this Settlement Agreement.

13. <u>Modification and Waiver</u>. No provision of this Settlement Agreement may be changed, altered, or modified except in writing signed by the Parties. The failure of either Party to enforce any provision of this Settlement Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Settlement Agreement thereafter. No waiver of any term or right in this Settlement Agreement shall

be effective unless set forth in writing and signed by an authorized representative of the waiving Party.

14. <u>Severability</u>. If any term of this Settlement Agreement is determined, either by a court of lawful jurisdiction or by the parties' mutual agreement, to be invalid, illegal, or otherwise unenforceable, then

   A. The Parties shall use all reasonable efforts to negotiate in good faith to amend the term to eliminate any such invalidity, illegality, or unenforceability to the extent practically possible, taking into full account their original intent when entering into this Agreement in the first instance, and

   B. The remaining provisions hereof shall continue in full force and effect.

15. <u>Pendency of Bankruptcy Proceedings</u>. The Parties acknowledge that this Settlement Agreement is contingent upon the approval of this Settlement Agreement and confirmation of the Genie Chapter 11 plan in case number 3:24-bk-00496-BAJ pending in the Middle District of Florida Jacksonville Division of the United States Bankruptcy Court. To the extent that there is a Trustee appointed in that bankruptcy case, the Settlement Agreement is not approved by the Court, and/or Genie's Chapter 11 Plan is not confirmed with the essential terms of this Settlement Agreement incorporated into such confirmation, then the Settlement Agreement shall be voided as to any remaining obligations by all parties.

16. <u>Choice of Law and Venue</u>. This Settlement Agreement shall be governed in all respects by the laws of the state of New York, including as to interpretation, enforceability, validity, and construction. The Parties also agree that the venue for any legal action to enforce the provisions of this Settlement Agreement, or any document executed in connection with this Settlement Agreement, shall be in the state of New York. The Parties agree they will not contest the choice of law and venue provisions in this Section.

17. <u>Construction</u>. Because this Settlement Agreement was the result of arms-length negotiations between the Parties and their respective attorneys, no party shall be considered the drafter; consequently, the rule of construction that all conflicts and ambiguities should be construed against the drafter shall not be employed in the interpretation of this Settlement Agreement.

18. <u>Attorney's Fees and Costs in Enforcement of the Agreement</u>. If either Party incurs any attorney's fees, costs, or expenses in any proceeding to enforce the terms of this Settlement Agreement or any of the rights provided hereunder, the prevailing Party shall be entitled to recover

its reasonable attorney's fees and any court, arbitration, mediation, or other litigation expenses from the other Party.

19. References to Time. Unless otherwise specified, references to time periods in this Settlement Agreement refer to calendar days.

20. Successors and Assigns. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' successors, assigns, agents, heirs, and personal representatives.

21. Third Parties. This Settlement Agreement shall not confer any rights or remedies upon any third party other than the Parties to this Settlement Agreement and their respective successors, assigns, agents, heirs, and personal representatives. The Parties have not transferred, by assignment or otherwise, any of the claims released in this Settlement Agreement.

22. Counterparts. This Settlement Agreement may be executed in one or more counterparts, all of which shall be considered one instrument, and a copy or facsimile of each will be deemed an original and shall be binding when one or more counterparts have been signed by each of the parties.

23. Advice of Counsel. The Parties acknowledge and represent that they have read this Settlement Agreement in full and understand and voluntarily consent to each of its provisions after having had ample time and opportunity to consult with their respective attorneys concerning the Settlement Agreement. The Parties further acknowledge and represent that they are sophisticated in matters of business and have negotiated this Settlement Agreement at arms' length.

24. Authority to Bind. By signing below the Parties represent that the signatories are authorized to execute this Settlement Agreement on behalf of their respective business entities and that the execution and delivery of this Settlement Agreement are the duly authorized and binding acts of their respective business entities.

25. Non-Disparagement. The Parties hereby understand and agree that the business reputation of each Party is of paramount importance. As a material inducement to the execution of this Settlement Agreement, the Parties agree that they will not make any disparaging comments about each other which is intended to adversely affect either the conduct of the Parties' business or profession, or the Parties' business or professional reputation, which conduct shall include, but not be limited to, business defamation and/or disparagement of professional skill, judgment, and reputation for probity and thrift. This includes, but is not limited to, any disparaging comments that are made available to any third parties via the internet. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

26. Confidentiality. The terms of this Settlement Agreement, including but not limited to the Settlement Payment, are to be held in strict confidence and are not to be disclosed by the Parties to any person with the sole exception of: (1) the Parties' attorneys (2) the Parties' tax advisors and/or accountants, for purposes of tax reporting, regulatory reporting and/or financial planning; (3) as necessary in connection with the Parties' current or future liability insurance and/or any disclosure requirements to which the Parties are subject; (4) as necessary to enforce this Settlement Agreement; and (5) as required or otherwise permitted by law or legal process, including, but not necessarily limited to, communicating with regulatory or law-enforcement authorities, defending

legal or regulatory claims brought against either Party, or asserting legal claims not otherwise prohibited by the terms of this Settlement Agreement. The conveyance of the terms of this Settlement Agreement to third parties as referenced above or as are necessary to contact in connection with subparagraphs 1 through 3 above is conditioned upon such third parties' acceptance of the terms of this Confidentiality provision and that they accept responsibility to keep such terms confidential. Both Parties agree, that prior to such disclosure, they will advise the intended recipient of the confidentiality requirements of this Confidentiality provision and that disclosure of this Settlement Agreement's terms may subject him or her to potential legal action. It shall be considered a breach of this confidentiality provision if the Parties fail to advise any individual to whom a disclosure is made pursuant to this Confidentiality provision of the confidentiality requirements of this Confidentiality provision and if that individual communicates, publishes, publicizes or discloses confidential information to any third party or causes confidential information to be communicated, published, publicized or disclosed to any third party. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

27. <u>Notices and Legal Counsel</u>. Any notices or other communications required by or otherwise necessary to effectuate the terms of this Settlement Agreement shall be delivered to the Parties as set forth below. Each Party agrees to inform the other promptly of any changes to the information below, including any changes to its legal counsel.

>Velanos Principal Capital
>c/o Joshua Wearmouth, CEO
>120 Adelaide Street West, Suite 2500
>Toronto, Ontario M5H 1T1
>CANADA
>jwearmouth@velanosprincipalcapital.com

>Legal counsel for Velanos Principal Capital
>Boddie & Associates P.C.
>c/o Corey D. Boddie
>40 Exchange Place, suite 1800
>New York, NY 10005
>corey@boddieassoc.com

>Genie Investments NV
>c/o David Hughes
>2812 Pat Tillman Drive
>Springfield, Illinois 62711
>dhughes@genieinvestments.com

>Legal counsel for Genie Investments:
>AW Securities Law
>c/o Adam Walker
>4010 Pennsylvania Ave., Suite 115-10
>Kansas City, Missouri 64111
>adam@awsecuritieslaw.com

In witness whereof, the Parties hereto have executed this Settlement Agreement on the date(s) set forth below.

GENIE INVESTMENTS NV

By: _____David Hughes_____
David Hughes (May 15, 2024 10:58 CDT)
David Hughes

Title: Managing Member

Date: _____

VELANOS PRINCIPAL CAPITAL

By: DocuSigned by:
[signature]
D85D494D21D149B...
Joshua Wearmouth

Title: _____

Date: 5/16/2024