UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

Genie Investments NV, Inc.,             Case No.: 3:24-bk-00496-BAJ
                                                                                               Chapter 11

           Debtor.
_____/

**UNITED STATES TRUSTEE'S SECOND MOTION TO APPOINT CHAPTER 11
TRUSTEE, DISMISS CASE, OR CONVERT TO CHAPTER 7**

> NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING
>
> If you object to the relief requested in this paper you must file a response with the Clerk of Court at 300 North Hogan Street, Suite 3-150, Jacksonville, FL 32202, and serve a copy on the movant's attorney, Scott E. Bomkamp, Office of the United States Trustee, George C. Young Courthouse, 400 W. Washington Street, Suite 1100, Orlando, FL 32801 within 14 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.
>
> If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.
>
> You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

Mary Ida Townson, United States Trustee for Region 21 (the "United States Trustee"), by and through the undersigned counsel, files this Second Motion to Appoint Chapter 11 Trustee, Dismiss Case, or Convert to Chapter 7, based on the filing of the recent

report of the Examiner ("Examiner's Report"; Doc. No. 146), Maria Yip ("Examiner"). In support, the United States Trustee states as follows.

## SUMMARY OF ARGUMENT

The Examiner's Report confirms that the worst fears about Genie Investments NV, Inc. ("Debtor") and demonstrates why the appointment of a chapter 11 trustee or conversion of this case to chapter 7 is critical. First, the Examiner's Report confirms that a trustee, as an independent fiduciary, must be appointed in this case because the Debtor engaged in fraud and gross mismanagement making numerous, thinly disguised fraudulent transfers prior to filing for bankruptcy. The Examiner also concludes that appointment of a fiduciary is in the best interest of creditors because only an outside fiduciary will adequately pursue the insider transfers. Second, the Examiner's Report confirms that a trustee must be appointed because the Debtor engaged in gross mismanagement, *at a minimum*, in its dealings with Velanos Principal Capital ("Velanos"). Third, the Examiner's Report confirms that there is cause to convert this case to chapter 7 because the Debtor does not have a legitimate, going concern business and does not have a viable path out of bankruptcy without a fiduciary to pursue insider transfers. For these reasons, the Court should immediately appoint a chapter 11 trustee or convert this case to chapter 7.

## BACKGROUND

1. The United States Trustee's Expedited Motion to Appoint Chapter 11 Trustee, or, in the Alternative, Appoint an Examiner, Dismiss This Case, or Convert This Case to Chapter 7 ("First Motion"; Doc. No. 20) provides additional facts and background information related to the relief sought herein. The United States Trustee restates and

incorporates by reference herein the facts contained in the First Motion as if fully rewritten and restated at length in this motion.

2. The First Motion also discusses the appropriate standard for the appointment of a chapter 11 trustee or conversion to chapter 7, which is also incorporated into this motion by reference as if fully rewritten and restated at length.

3. On April 11, 2024, after a two-day trial, the Court granted the First Motion in part and denied the First Motion in part ordering the United States Trustee to appoint an Examiner ("Appointment Order"; Doc. No. 60). At the close of trial, the Court made clear that it would place great weight on the report of the Examiner.

4. The Appointment Order directed the Examiner to investigate the financial affairs of the Debtor with an emphasis on the following categories of conduct:

(i) the connection, if any, between the Debtor or its affiliates, and McMann Commercial Lending or its affiliates;

(ii) the alleged fraudulent agreement with Velanos;

(iii) the connection and transfers between the Debtor and any affiliates or Debtor entities; and

(iv) any transfers between the Debtor, including its directors, officers, insiders, or affiliates over the last two years.

(Doc. No. 60).

5. On April 16, 2024, the United States Trustee appointed Maria Yip as the Examiner (Doc. No. 63). On April 18, 2024, the Court approved the United States Trustee's selection of the Examiner. (Doc. No. 68).

3

6. On June 28, 2024, the Examiner filed the Examiner's Report. The Examiner's Report includes the following findings that are relevant to this motion.

7. First, the Examiner found that the Debtor transferred funds to its affiliates within the two years prior to filing. These affiliates are owned by insiders or former insiders of the Debtor including the following: (1) Zoomeral, Inc. (owned by current insiders of the Debtor, David Hughes and John Cohan); (2) Capitulum Homes (owned by Mr. Cohan); (3) Cald Holdings LLC (owned by current or former insider Caleb Davis); Genie Investments II, LLC (owned by Mr. Hughes and Mr. Cohan); Better Methods, LLC (owned by Mr. Hughes and Mr. Cohan); and Genie's Angels, LLC (non-profit established by Mr. Hughes and Mr. Cohan).

8. The Examiner found that these transfers were made "under extremely favorable terms to the borrower and far outside the ordinary course"[1] of standard business loans. These transfers were (i) made pursuant to notes that charged .1% interest, (ii) were non-recourse, (iii) contained no personal guarantees, and (iv) did not require payments except for a balloon payment after approximately 5 years extendable to 15 years at the sole discretion of the borrower. These transfers occurred in 2022 and 2023 during the same period that the Debtor was failing to fund loans to ordinary customers and, with respect to the 2023 transfers, after Velanos' initial default in December 2022. Furthermore, the express purpose of the transfers to Better Methods was asset protection. (Doc. No. 146 at 44 ¶ 188).

9. A summary of these transfer amounts are as follows. (Id. at 52 ¶ 230).

---

[1] See Doc. No. 146 at pp. 34 ¶126; 37 ¶146; 41 ¶161; 42 ¶174; 45 ¶194; 48 ¶210.

4

| (Payee) / Payor | 1-Year Period Net Amount | 2-Year Period Net Amount |
|---|---|---|
| Zoomeral Inc | $ (534,381) | $ (1,771,556) |
| Genie Investments II | (736,606) | (736,606) |
| Capitulum LLC | (77,784) | (517,410) |
| Cald Holdings LLC | (77,784) | (517,109) |
| Better Methods | (30,000) | (130,000) |
| Genies Angels | (25,000) | (25,000) |
| TOTAL | $ (1,481,556) | $ (3,697,681) |

10. The Examiner's Report concludes that "Without the appointment of an independent fiduciary, it is unlikely that the Debtor-in-Possession can independently pursue avoidance of potential preference actions and potential fraudulent transfers against insiders to maximize recoveries for the creditors of the estate." (Id. at 53 ¶ 234).

11. Second, the Examiner found that the Debtor engaged in gross mismanagement by transferring $9 million in funds to Velanos in October through December of 2022. (Id. at 54 ¶ 237). Regarding the source of these funds, the Examiner's Report noted that "[c]learly, the source of the capital contributions to Velanos totaling $9,000,000 in the October through December 2022 time frame could not have been funded from the customers payments to the Debtor but rather from the customer's ICA and Bridge Interest deposits." (Id. at 23 ¶ 78). The Examiner found that the purpose of the ICA funds was to pre-pay interest amounts on customer loans. (Id. at ¶¶ 81-82). The Examiner also found that the Debtor provided contradictory statements regarding whether ICA funds were supposed to held in trust for customers or could be utilized in the ordinary course of the

Debtor's business. (Id. at 22 ¶ 77).

12. The circumstances surrounding the Velanos transfer should have alerted the Debtor to the likelihood of fraud. "Neither Velanos nor Wearmouth were registered investment advisors and the returns promised by Velanos pursuant to the Velanos JVA were 100% in 30 days and profit participation that would have resulted in a 900% return, which should have raised a red flag." (Id. at 23 ¶ 83). The Examiner found that the Debtor continued to accept customer deposits after it knew that Velanos was in default in December 2022. (Id. at ¶ 79).

13. Third, the Examiner confirmed that the Debtor does not have a legitimate going concern business. The Debtor has never established a business arrangement with a capital provider other than the ill-fated arrangement with Velanos. (Id. at 53 ¶ 235). The Debtor used funds from larger customers (along with funds from Michael Connor's IOTA account following his indictment) to fund relatively smaller loans. (Id. at 50 ¶ 222). The Examiner also found that the reputational damage to the Debtor was likely fatal to any attempt to remold the Debtor into a legitimate business. (Id. at 51 ¶ 225).

14. Fourth, the Examiner expressed skepticism regarding the Debtor's settlement with Velanos as the basis for funding a path out of bankruptcy. Velanos defaulted on multiple settlements with the Debtor before the bankruptcy was filed. (Id. at 25 ¶ 88). Furthermore, the principals of Velanos are subject to a judgment exceeding one million dollars for a previous fraudulent enterprise, and that judgment holder may compete for any settlement

proceeds from Velanos. (Id. at 26-28 ¶¶ 89-94).[2] Finally, as of the status conference on July 8, 2024, Velanos was already in default of the current proposed settlement because it had only paid $250,000 of the total of $550,000 that would have been required by that date. (Id. at 24-25 ¶ 87).

15. The Examiner expressed skepticism of the Debtor's ability to fund a plan based upon their existing loan portfolio. Even if taken at face value, the Debtor's loans to insiders will not become due during any period relevant to a proposed plan. According to the Examiner's analysis, the loans to non-affiliates would mostly become due after 2032, which is beyond the relevant time frame for plan repayment. (Id. at 52 ¶ 229).

## LAW AND ARGUMENT

### A. The Affiliate Transfers Constitute Fraud and Gross Mismanagement

16. The affiliate transfers cannot seriously be defended as loans in the ordinary course of business. Although the fact pattern here is unusual, Courts have the authority to look to "substance" and not the "form" of a transaction and recharacterize it as appropriate. *E.g.*, *In re Fitness Holdings International, Inc.*, 714 F.3d 1141 (9th Cir. 2013) (recharacterizing loans to a corporation as equity). When viewed collectively, the many extraordinary provisions of these transfers (e.g., .1%, non-recourse, no payments other than a balloon after 15 years, no guarantees) make clear that these are fraudulent transfers and not true loans. Even taking these transfers at face value, they are still gratuitous transfers due to the time value of money and the lack of interest.

---

[2] Although not expressly stated by the Examiner, it is apparent that the Velanos joint venture is a fraudulent scheme which raises the possibility that any proposed repayment to the Debtor's creditors would be disrupted by government action.

17. There is both direct and circumstantial evidence that these transfers are fraudulent. The direct evidence is the express purpose of the transfers to Better Methods as asset protection from the Debtor's creditors. (Doc. No. 146 at 44 ¶ 188).

18. The overwhelming circumstantial evidence of fraud is based upon application of the badges of fraud. In determining whether the circumstantial evidence supports an inference of fraudulent intent, courts should look to the existence of certain badges of fraud. *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998). The badges of fraud include the following: (a) The transfer or obligation was to an insider; (b) The debtor retained possession or control of the property transferred after the transfer; (c) The transfer or obligation was disclosed or concealed; (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) The transfer was of substantially all the debtor's assets; (f) The debtor absconded; (g) The debtor removed or concealed assets; (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred; (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. *In re Levine,* 134 F.3d 1046, 1053 (11th Cir. 1998).

19. In this case, the majority of these badges of fraud are present because the Debtor's funds were transferred (1) to insiders or affiliates; (2) while the Debtor was being sued or under threat of suit for failing to fund loans; (3) for less than the equivalent value

based on the non-market nature of the loans; and (4) in a concealed manner attempting to disguise the fraudulent transfers as loans. The Debtor transferred substantially all of its assets are based upon the cash balance in its operating report. In this case, it would appear that badges (a), (b), (c), (d), (e), (h), (i), and (j) are met with badges (f) and (k) not applicable under the circumstances of this case.

20. While there is overwhelming evidence of fraud, these transfers also constitute gross mismanagement. The Debtor showed exceptionally poor business judgment by loaning money with such lenient terms to insiders while it was struggling to make market-based loans to ordinary customers. The terms of the affiliate loans put the Debtor's funds out of reach for years at a time when they were desperately needed.

21. As set forth at length in the First Motion, the appointment of a chapter 11 trustee is mandatory under 11 U.S.C. § 1104(a)(1) upon a finding of fraud or gross mismanagement. Accordingly, the Court must appoint a chapter 11 trustee or convert this case to chapter 7 based upon the Debtor's fraudulent transfers to affiliates and/or extraordinary lack of business judgment in making below market loans.

**B. A Chapter 11 Trustee is in the Best Interest of Creditors to Pursue Insider Transfers**

22. The Examiner found that the appointment of a chapter 11 trustee or other fiduciary is in the best interest of creditors to pursue the insider transfers. (Doc. No. 146 at 53 ¶ 234). The United States Trustee agrees that insider transfers are a substantial asset of this bankruptcy estate, and the Debtor's insiders cannot be relied upon to recover transfers from their own companies. Therefore, the Court should appoint a chapter 11 trustee under 11 U.S.C. § 1104(a)(2) because appointment is in the best interests of the Debtor's creditors.

9

### C. The Debtor's Dealings with Velanos Demonstrates Gross Mismanagement

23. The Examiner's Report appropriately concluded that the Debtor's dealings with Velanos constitutes gross mismanagement, and this is true regardless of whether the Debtor was entitled under its contracts to deposit ICA funds (a heavily contested point in this case). Any investment that promises a 100% return within 30 days for an ultimate return of 900% should immediately raise red flags. This was confirmed at trial by the testimony of Debtor's attorney, Adam Walker, who testified that he almost immediately identified the Velanos joint venture as fraudulent. The Debtor's gross mismanagement of funds is compounded by the fact that the Debtor continued to take customer deposits after Velanos defaulted. (Doc. No. 146 at 23 ¶ 79).

24. The Examiner found that the customer's ICA funds were to be held in trust to pay customer interest. (Id. at ¶¶ 77-83). However, Mr. Hughes provided inconsistent statements on this point. (Id.). If the ICA funds were indeed to be held in trust, the misallocation of those funds also constitutes fraud.

25. As set forth in the First Motion, a chapter 11 trustee is mandatory upon a finding of gross mismanagement under 11 U.S.C. § 1104(a)(1). At a minimum, the Debtor engaged in gross mismanagement by investing its funds in a transparently fraudulent scheme and continuing to accept customer funds after the Velanos default. The Debtor's conduct constitutes fraud to the extent that the Court finds that the ICA funds were intended to be held in trust for customers.

### D. Cause Exists to Convert this Case to Chapter 7

26. Cause exists to convert this case to chapter 7 for all the foregoing reasons and

because the Debtor does not have the ability to reorganize, absent appointment of a fiduciary to pursue insider transfers. As the Examiner found, the Debtor does not have, and has never had, a third-party source of capital. The Debtor's only business consists of taking deposits from customers and using those deposits to fund loans. Of course, this business model cannot be successful because the Debtor must continuously find new customers and can only fund loans that are a small fraction of the loans that the Debtor has promised to new customers. The Debtor cannot fund a plan by operating its current business model because the Debtor does not have a legitimate business model.

27. Furthermore, cause exists to convert this case to chapter 7 because the Debtor cannot rely on the settlement with Velanos who has already defaulted on the Debtor several times including *under the current settlement with the Debtor by the Debtor's own admission.* Likewise, there is a strong probability that Velanos will be unable to make the settlement payment because the operators of Velanos are subject to a prior judgment for a prior fraud and could be shut down by the government. It is nonsensical to base the feasibility of a chapter 11 plan on the purported honesty of an entity that all parties agree has a long history of being a fraudulent actor.

28. Finally, the Debtor cannot rely on its current non-insider loan portfolio. The non-insider loans, even if they are taken at face value, will not mature for many years and most of the payments under the non-insider loans will not become due until after 2032. These loans cannot be the basis for a feasible plan of reorganization.

29. Cause exists to convert this case for the same reasons that a chapter 11 trustee must be appointed. Cause also exists to convert this case to chapter 7 based upon the Debtor's

lack of a legitimate business, the abject untrustworthiness of Velanos as the counterparty to a settlement, and the lack of near term receivables. This corresponds to a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" under 11 U.S.C. § 1112(b)(4)(A) or other cause and warrants immediate conversion of the case.

## CONCLUSION

The Examiner's Report strongly supports appointment of a chapter 11 trustee or conversion of this case to chapter 7. The payments to affiliates are fraudulent transfers that are thinly disguised as loans, the Debtor's course of dealings with Velanos demonstrates gross mismanagement, and the only way for the Debtor to pay a dividend to unsecured creditors is through the appointment of a fiduciary. The Court should immediately appoint a chapter 11 trustee or convert this case to chapter 7.

WHEREFORE, the United States Trustee moves this Court for an order directing the United States Trustee to appoint a chapter 11 trustee in this case, or alternatively convert it to chapter 7, or for such other relief as the Court deems appropriate.

Dated: July 12, 2024.

                Respectfully Submitted

                Mary Ida Townson
                United States Trustee for Region 21

                /s/ Scott Bomkamp
                Scott Bomkamp, Trial Attorney
                Office of the United States Trustee
                U.S. Department of Justice
                400 W. Washington St., Suite 1100
                Orlando, FL 32801
                Telephone No.: (407) 648-6301, Ext. 150
                Facsimile No.: (407) 648-6323
                Email: scott.e.bomkamp@usdoj.gov
                Indiana Bar No.: 28475-49

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was served on July 12, 2024 on all parties appearing electronically via CM/ECF, or via First Class United States mail on the following:

    Genie Investments NV, Inc.
    Attention: John Michael Cohan
    PO Box 60443
    Jacksonville, FL 32236

                /s/ Scott Bomkamp
                Scott Bomkamp, Trial Attorney