FILED
JACKSONVILLE, FLORIDA
JAN 27 2025
CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

FILED INTAKE USBC
JAN 27 '25 PM3:47

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
Case No.: 3:24-bk-00496-BAJ
Chapter 7

IN RE:
Genie Investments NV, Inc.,
Debtor.

**COMBINED MOTION FOR SANCTIONS AND PROTECTIVE ORDER AGAINST CHAPTER 7 TRUSTEE FOR RETALIATORY CONDUCT, ABUSE OF PROCESS, AND BREACH OF FIDUCIARY DUTY**

John Michael Cohan ("John") and David Hughes ("David"), stakeholders of Genie Investments NV, Inc., along with their affiliated entities—Capitulum LLC, Better Methods LLC, Genie's Angels LLC (aka Merkton Group LLC), Zoomeral Inc., and Genie Investments II LLC (collectively, the "Affiliated Businesses")—in their capacities as Sole Trustees and Sole Beneficiaries with durable powers of attorney in place for these entities, as the entities are property of and are currently managed by the secured party GENIE INVESTMENTS TRUST, by and through their undersigned representatives, respectfully move this Honorable Court for:

1. Sanctions against Aaron Cohen, the Chapter 7 Trustee ("Trustee"), in the amount of $750,000 to be paid directly to John Michael Cohan and David Hughes personally for retaliatory conduct, abuse of process, and breach of fiduciary duties; and

2. A Protective Order prohibiting the Trustee from initiating or pursuing personal litigation or claims against the Movants and their Affiliated Businesses.

This Motion is brought pursuant to Federal Rules of Civil Procedure 26(c) and 37, as incorporated by Federal Rules of Bankruptcy Procedure 7026 and 7037, and 11 U.S.C. § 105(a).

## I. INTRODUCTION

1. Movants are compelled to bring this Motion due to the Trustee's egregious misconduct, including issuing retaliatory demand letters, failing to pursue valid claims against third parties, and interfering with Movants' lawful personal claims.

2. The Trustee's actions are unsupported by evidence and have been conclusively refuted by:
   • The massive amount of evidence submitted into the record; the Honorable Judge Burgess referred to our records as "impeccable."
   • The trial proceedings, where the allegations against the Movants and their businesses were evaluated and not found; and
   • The Examiner's Report, which found no evidence of fraudulent conduct by Movants or their Affiliated Businesses.

pg. 1

- The Declaration of Adam Walker, Esq., which confirms the transparency and legitimacy of the transactions.

3. The Trustee's baseless allegations have forced John and David to dedicate substantial time and resources to defending themselves and their businesses, disrupting their personal and professional lives.

4. Movants seek relief to address these harms, prevent further retaliation, and ensure the Trustee adheres to their fiduciary obligations in good faith.

5. The Trustee's lack of timely action regarding claims against the Warren Law Group and/or creditors that caused harm to the estate raises significant concerns about potential retaliation, failure to maximize recoveries for the estate, and breaches of fiduciary duty.

6. The Trustee's actions against our affiliated companies and the issuance of demand letters targeting us after we asserted personal claims constitute retaliatory conduct, bad faith litigation, and abuse of process.

The allegations against our affiliated companies, including Genie's Angels, Better Methods, Genie Investments II, Capitulum, and Zoomeral, are entirely without merit or legal basis. Furthermore, the claim that the Trustee can "state a prima facie case" based on the receipt of transfers is unsupported by the law and lacks factual evidence. The claims that loans to these entities were fraudulent or improper are based on incomplete or inaccurate conclusions, which we contest on multiple grounds with the Examiner's Report and the Declaration of Adam Walker, Esq.:

- Exhibit A: **Unreasonable, Unsupported & Unethical Demand Letter to Better Methods**

- Exhibit B: **Unreasonable, Unsupported & Unethical Demand Letter to Capitulum**

- Exhibit C: **Unreasonable, Unsupported & Unethical Demand Letter to Genie Investments II**

- Exhibit D: **Unreasonable, Unsupported & Unethical Demand Letter to Genie's Angels**

- Exhibit E: **Unreasonable, Unsupported & Unethical Demand Letter to ZOOMERAL**

- Exhibit F: **Cease and Desist Letter Alleging Improper Personal Claims and Threatening Sanctions to Hughes and Cohan**, personally

- Exhibit G: **Relevant Communication with Akerman LLP** - Suppression of Information NOT under Protective Order

- Exhibit H: **Relevant Communication with Akerman LLP** – Demonstrating Bad Faith and Attempt to Dissuade Legitimate Personal Claims

- Exhibit I: **Declaration of Adam Walker, Esq.**

- Exhibit J: **Examiner's Report**

### A. Lack of Evidence Supporting Fraudulent Transfers

1. **No Evidence of Fraudulent Intent**

   - **Summary:** Fraudulent transfer claims based on actual intent require clear and convincing evidence of fraudulent intent. Courts consider specific "badges of fraud" such as insider dealings, concealment, and lack of legitimate purpose.

   - **Case Law:** In *In re TOUSA, Inc.*, 680 F.3d 1298 (11th Cir. 2012), the Court held that speculative or generalized claims of fraudulent intent are insufficient to establish liability without concrete evidence of bad faith or intent to defraud.

   - **Application:** Speculative claims of fraudulent intent, without concrete evidence, cannot establish liability. The Trustee's claims lack the required specific evidence of intent to defraud.

2. **Transparency of Transactions**

   - **Summary:** All transfers to affiliated companies were conducted transparently and documented appropriately in financial records provided to the Examiner.

   - **Case Law:** In *In re Global Outreach, S.A.*, 562 B.R. 618 (Bankr. D. Del. 2017): Fraudulent transfer claims must be supported by specific, transaction-based evidence, not speculation.

   - **Application:** Fraudulent transfer claims must rely on transaction-specific evidence, not speculation. The Trustee's generalized assertions fail this standard.

3. **No Badges of Fraud**

   - **Summary:** The Examiner's Report mentions only "potential" fraudulent transfers without identifying any badges of fraud, such as concealment, lack of consideration, or intent to hinder creditors.

   - **Case Law:** In *In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005): Transfers made for legitimate business purposes, even if to insiders, are not fraudulent absent evidence of intent to hinder creditors.

   - **Application:** Transfers for legitimate business purposes are not fraudulent absent evidence of intent to hinder creditors. This applies to our intra-company transactions.

### B. Commercial Reasonableness of Loan Terms

1. **Interest Rates and Loan Terms**

   - **Summary:** The loans extended to our affiliated entities were structured with interest rates below the Applicable Federal Rates (AFR) established by the IRS for intrafamily loans, which ranged from 2.22% to 3.24% during the relevant period. While these rates were below the AFR, they were made with legitimate business purposes and adequately documented.

- o **Case Law:** In *In re TOUSA, Inc.*, 680 F.3d 1298 (11th Cir. 2012): This case emphasizes that speculative or generalized claims of fraudulent intent, without concrete evidence, are insufficient to establish liability.
- o **Application:** Clear evidence of intent to hinder, delay, or defraud creditors is required, which the Trustee has not provided in this case.

2. **Documented Business Justifications**

    - o **Summary:** Transfers served legitimate purposes, such as operational support for facilitating real estate transactions, developing customer-facing software, providing asset protection, and creating goodwill.
    - o **Case Law:** In *In re Bay Plastics, Inc.*, 187 B.R. 315 (Bankr. C.D. Cal. 1995): Indirect benefits, such as operational support and goodwill, satisfy the "reasonably equivalent value" requirement for transfers.
    - o **Application:** Indirect benefits, such as goodwill and operational support, satisfy the "reasonably equivalent value" standard. Our transfers provided such benefits.

3. **Private Loan Terms Are Not Per Se Fraudulent**

    - o **Summary:** Engaging in private loans with affiliated entities, even at interest rates below the AFR, does not inherently constitute a fraudulent transfer. Fraudulent transfer claims require evidence of actual intent to hinder, delay, or defraud creditors.
    - o **Case Law:** In *In re Sharp International Corp.*, 403 F.3d 43 (2d Cir. 2005): Transfers made for legitimate business purposes, even if to insiders, are not fraudulent absent evidence of intent to hinder, delay, or defraud creditors.
    - o **Application:** Intra-company loans, even at below-market rates, are not inherently fraudulent when supported by legitimate business purposes.

## C. Timing of Transfers

1. **Transfers Predate Insolvency or Litigation Threats**

    - o **Summary:** Most of the transfers occurred before Genie faced insolvency or litigation threats, further undermining any claim of fraudulent intent.
    - o **Case Law:** In *In re Rodriguez*, 895 F.2d 725 (11th Cir. 1990): Transfers occurring in the ordinary course of business and during periods of solvency are presumed valid.
    - o **Application:** Transfers made during solvency and in the ordinary course of business are presumed valid. The Trustee's claims ignore these circumstances.

2. **Misinterpretation of ICA Payments**

    o **Summary:** The Examiner's assertion that ICA Payments were "customer funds" held in trust is directly contradicted by the BELOC Agreements, which do not impose any such obligation.

    o **Case Law:** *Land of Lincoln Goodwill Indus. v. PNC Fin. Servs. Group*, 762 F.3d 673 (7th Cir. 2014): Courts must interpret contracts as a whole and avoid construing provisions in ways that render others meaningless.

    o **Application:** Contracts must be interpreted as a whole. The Examiner's interpretation of ICA Payments contradicts the BELOC Agreements, which gave Genie Investments NV the ability to spend funds as it deemed necessary.

### D. Reasonably Equivalent Value Was Provided

Fraudulent transfer claims fail when the debtor receives reasonably equivalent value for the transfers. Each affiliated company provided substantial benefits to Genie Investments NV, which were critical to its operations and overall financial stability:

1. **Better Methods LLC and Genie Investments II LLC**

    o **Summary:** Provided asset protection and funded professional expenses, including, but not limited to, legal and accounting fees.

    o **Case Law:** In *In re Bay Plastics, Inc.*, 187 B.R. 315 (Bankr. C.D. Cal. 1995): Indirect benefits, such as operational support or reduced risk, satisfy the reasonably equivalent value standard.

    o **Application:** The funded expenses directly benefited Genie Investments NV by mitigating exposure to fraudulent claims.

2. **CAPITULUM LLC**

    o **Summary:** Contributed critical real estate investment expertise, assisting in evaluating potential projects and facilitating real estate transactions if clients defaulted.

    o **Case Law:** In *In re Rodriguez*, 895 F.2d 725 (11th Cir. 1990): Courts recognize that professional services and expertise provided in the ordinary course of business constitute value.

    o **Application:** CAPITULUM LLC's services established clear value for Genie Investments NV.

3. **ZOOMERAL Inc.**

    o **Summary:** Developed customer-facing software and marketing initiatives aimed at generating new business.

- - o **Case Law:** In *In re W.R. Grace & Co.*, 281 B.R. 852 (Bankr. D. Del. 2002): Investments in tools or initiatives that enhance a company's operational capacity are valuable.
  - o **Application:** ZOOMERAL Inc.'s contributions improved operational capacity, benefiting Genie Investments NV.

  4. **Genie's Angels LLC**

     - o **Summary:** Designed programs to assist individuals with credit card debt, indirectly benefiting Genie Investments NV through goodwill and referrals.
     - o **Case Law:** In *In re Bay Plastics, Inc.*, 187 B.R. 315 (Bankr. C.D. Cal. 1995): Goodwill and future opportunities constitute reasonably equivalent value.
     - o **Application:** These contributions validate the reasonable value provided to Genie Investments NV.

### E. No Evidence of Insolvency

Constructive fraud claims also require proof that the debtor was insolvent at the time of the transfers or became insolvent as a result of them:

  1. **Financial Stability Confirmed**

     - o **Summary:** Mr. Walker's Declaration highlights that Genie Investments NV remained solvent at the time of the transfers.
     - o **Case Law:** In *In re W.R. Grace & Co.*, 281 B.R. 852 (Bankr. D. Del. 2002): Insolvency must be demonstrated with concrete financial data.
     - o **Application:** The Trustee has not provided concrete financial data to establish insolvency.

  2. **Bank Statements Substantiated Transactions**

     - o **Summary:** Banking records confirm transfers were consistent with normal business operations.
     - o **Case Law:** *In re Rodriguez*, 895 F.2d 725 (11th Cir. 1990) Transfers occurring in the ordinary course of business and during periods of solvency are presumed valid, and concrete financial evidence is required to challenge such transactions.
     - o **Application:** The absence of concrete insolvency evidence undermines the Trustee's claims.

### F. Professional Malpractice as an Offset for Liability

  1. **Impact of Professional Malpractice on Liability**

     - o **Summary:** The Warren Law Group's negligence contributed to financial losses experienced by Genie Investments NV.

- o **Case Law:** In *Henderson v. Sec. Nat'l Bank*, 72 F.3d 805 (10th Cir. 1995): Damages caused by professional negligence can offset liability.
- o **Application:** The Trustee's claims must consider the impact of the Warren Law Group's malpractice which eliminates or reduces the liability against the stakeholders.

## II. FACTUAL BACKGROUND

### A. Personal Claims Against the Warren Law Group and Defamatory Creditors

7. Movants have pursued personal claims against the Warren Law Group for professional malpractice, reputational harm, and emotional distress, as well as against certain creditors that engaged in defamatory conduct against the stakeholders and the estate. These claims are distinct from the corporate claims of the bankruptcy estate and are supported by case law affirming the right to pursue personal remedies.

8. Despite the distinction between personal and estate claims, the Trustee has improperly interfered, issuing retaliatory demand letters and making baseless allegations to suppress Movants' lawful rights.

### B. Retaliatory Actions by the Trustee

9. The Trustee issued retaliatory demand letters on January 24, 2025, only three (3) days after Movants asserted their personal claims. These letters contained arbitrary and unreasonable deadlines and baseless allegations, clearly timed to harass and intimidate Movants.

10. The timing of the Trustee's assertions regarding potential claims against the Warren Law Group and the Defamatory Creditors strongly suggests retaliatory intent. The Warren Law Group's malpractice and the crippling reputational damage caused by the creditors were both known issues during earlier stages of the bankruptcy process but were not addressed until Movants pursued their personal claims. This retaliatory behavior undermines the integrity of the bankruptcy process.

11. **Evidence of Retaliation:**

    • **Five-Month Delay Followed by Abrupt Action:** The Trustee remained inactive for over 5 months, failing to pursue or investigate claims against us. It was only after we initiated personal claims against the Warren Law Group and certain creditors that the Trustee abruptly issued demand letters within days.

    • **Timing to Intimidate:** The Trustee's demands arrived immediately after we exercised our lawful rights to pursue personal claims, suggesting a calculated effort to intimidate and deter us from continuing these claims.

    • **Baseless Allegations Without Case Law:** The Trustee's demand letters lack any grounding in relevant case law or legal precedent, further indicating that they were issued to exert undue pressure rather than present legitimate claims.

- **Knowledge of Exonerating Evidence:** The Trustee knows, following a trial and the Examiner's Report, that the transfers involving our affiliated companies were not fraudulent. Despite this, the Trustee's demands emerged only after we began pursuing our legitimate personal claims.

### C. Trustee's Failure to Act in Good Faith

13. The Trustee has neglected to pursue valid claims against third parties, such as the Warren Law Group, whose malpractice caused significant harm to the estate. This failure breaches the Trustee's fiduciary duties under 11 U.S.C. § 704(a).

14. The Warren Law Group's professional malpractice and the creditors that engaged in defamatory acts caused significant and demonstrable harm to Genie Investments NV and the stakeholders. Despite this, the Trustee has failed to transparently address whether the estate intends to pursue claims against these parties.

15. The damages caused by the Warren Law Group's negligence and the creditors who engaged in defamatory acts, including financial instability, regulatory scrutiny, and reputational harm, are well-documented in financial records, correspondence, and witness testimony. The Trustee's failure to act on these claims raises concerns about their ability to act impartially and in the best interest of the estate.

16. The Trustee's demand letters, issued with an arbitrary and unreasonable 10-day compliance window, further reflect an improper motive to create undue pressure rather than pursue valid estate interests.

17. **Evidence of Undue Pressure:**

    - The 10-day deadline is inconsistent with industry standards for demand letters, which often allow for 14 to 30 days for a response.

    - By setting such an unreasonable deadline and coupling it with unfounded allegations, the Trustee has escalated the situation unnecessarily and acted in bad faith.

### D. Refuting the Trustee's Baseless Claims

18. The allegations against the Affiliated Businesses are unsupported by law or factual evidence. The following points, supported by the Examiner's Report and legal precedent, demonstrate the baseless nature of the Trustee's claims:
    - Fraudulent transfer claims lack specific evidence of fraudulent intent or badges of fraud.
    - Legitimate business purposes and substantial benefits provided by Affiliated Businesses were well-documented.
    - The Warren Law Group's malpractice and creditors' defamatory acts significantly contributed to the estate's financial detriment, further underscoring the Trustee's failure to address key issues.

### E. Trustee's Pattern of Selective Enforcement

19. The Trustee has demonstrated a pattern of selective enforcement by targeting specific stakeholders, including Movants, while failing to address known issues of greater significance.

20. **Evidence of Selective Enforcement:**

- **Focus on Movants:** Despite significant claims against the Warren Law Group and creditors whose defamatory conduct harmed the estate, the Trustee's focus has remained disproportionately on Movants.

- **Neglect of Larger Claims:** The Trustee has neglected to investigate or pursue substantial claims against third parties, including creditors and malpractice cases, while exerting undue pressure on Movants.

- **Lack of Transparency:** The Trustee has failed to provide transparent reasoning for prioritizing certain claims over others, further supporting a pattern of unfair targeting.

### F. Trustee's Lack of Transparency

21. The Trustee has failed to provide transparency regarding their decisions and actions, particularly in addressing claims against the Warren Law Group and defamatory creditors.

22. **Examples of Lack of Transparency:**

- **Failure to Disclose Intentions:** The Trustee has not clarified whether they intend to pursue claims against parties that caused harm to the estate, despite repeated inquiries.

- **Ambiguity in Demand Letters:** The Trustee's demand letters lack specificity, omitting key facts and evidence that could justify their allegations.

- **Avoidance of Accountability:** The Trustee has avoided addressing evidence from the Examiner's Report and other documented findings that exonerate Movants and affiliated entities.

---

## III. LEGAL BASIS FOR RELIEF

### A. Sanctions for Retaliatory Conduct and Breach of Fiduciary Duty

The Court has the inherent authority under 11 U.S.C. § 105(a) and case law to sanction bad faith conduct and fiduciary breaches.

**Retaliatory Conduct**

- **Summary:** The Trustee's actions, including targeting Movants, constitute retaliatory conduct and a breach of fiduciary duty.

- **Retaliatory Behavior:** The Trustee issued demand letters immediately after Movants asserted their personal claims. The letters contained arbitrary deadlines, lacked legal precedent, and were clearly designed to intimidate Movants. These actions violate the principle that trustees must act impartially and avoid coercive behavior.

- **Case Law:** *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991): Trustees are required to act impartially and avoid retaliatory actions designed to coerce stakeholders.

- **Application:** The Trustee's issuance of demand letters immediately following Movants' personal claims demonstrates retaliatory intent, warranting sanctions under *Chambers* for coercive and bad faith behavior.

**Breach of Fiduciary Duty**

- **Summary:** The Trustee's failure to act in the estate's best interest and their targeting of Movants violate fiduciary obligations.

- **Neglect and Targeting:** The Trustee failed to pursue valid claims against the Warren Law Group and creditors that defamed the estate while instead targeting Movants with unsupported allegations. The Trustee's actions have undermined the estate's interests and demonstrated partiality.

- **Case Law:** Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985): Breach of fiduciary duty includes failure to act in the estate's best interest and unfair targeting of stakeholders.

- **Application:** The Trustee's selective and retaliatory actions, including failure to pursue valid claims and targeting Movants, represent a breach of fiduciary duty necessitating judicial intervention.

### B. Protective Order to Prevent Further Harassment

**Summary:** Federal Rule of Civil Procedure 26(c) authorizes the Court to issue protective orders to protect parties from harassment, oppression, or undue burden.

**Case Law:** *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972): Trustees lack the authority to interfere with personal claims or target entities for actions unrelated to the bankruptcy estate.

**Application:** The Trustee's attempts to interfere with Movants' personal claims and issue demand letters based on unfounded allegations violate the principles established in *Caplin*. A protective order is warranted to prevent further harassment and ensure fairness.

### C. Impact of Professional Malpractice on Liability

**Summary:** The Warren Law Group's negligence contributed to financial losses experienced by Genie Investments NV.

**Case Law:** *Henderson v. Sec. Nat'l Bank*, 72 F.3d 805 (10th Cir. 1995): Damages caused by professional negligence can offset liability.

**Application:** The Trustee's claims must consider the significant financial harm caused by the Warren Law Group's malpractice, which directly contributed to the debtor's financial instability and reduced the estate's recoverable assets.

### D. Constitutional Rights and Individual Claims

**Summary:** The Trustee's interference with personal claims violates Movants' constitutional rights to due process and access to justice.

**Case Law:** *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982): Denying access to legal remedies for personal harm violates constitutional rights to due process.

**Application:** The Trustee's attempts to obstruct Movants' personal claims, including issuing baseless demand letters, infringe on their constitutional rights to pursue legal remedies for personal injuries and harm.

### E. Selective Enforcement by the Trustee

**Summary:** The Trustee's pattern of selective enforcement against Movants constitutes bad faith conduct, warranting judicial intervention.

**Case Law:** *In re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir. 2008): Trustees must exercise impartiality in claim enforcement and avoid selective or unfair targeting of specific stakeholders.

**Application:** The Trustee's conduct demonstrates a failure to impartially enforce claims by focusing on Movants while neglecting more significant claims against third parties. This selective enforcement undermines the Trustee's fiduciary duties under 11 U.S.C. § 704(a) and violates principles of fairness and impartiality as established in *AFI Holding*. Judicial intervention is necessary to ensure equitable treatment of all parties.

### F. Lack of Transparency in Trustee's Actions

**Summary:** The Trustee's failure to maintain transparency violates fiduciary obligations and undermines stakeholders' ability to respond effectively.

**Case Law:** Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985): Transparency is essential for fiduciaries to maintain trust and act in the estate's best interests.

**Application:** The Trustee's lack of transparency in pursuing claims and issuing ambiguous demand letters undermines their fiduciary duty and deprives Movants of the opportunity to address specific allegations. Judicial intervention is necessary to enforce transparency and ensure fair treatment.

---

## VII. NECESSITY FOR FINAL RESOLUTION AND RELIEF

The ongoing actions of the Trustee, Aaron Cohen and Raye Elliot, are not only baseless but are also causing unnecessary and unwarranted harm to Movants. The Trustee's continued pursuit of the same debunked claims regarding the loans between Genie Investments and the affiliated entities must come to an end. This Court has already addressed these issues multiple times, yet the Trustee persists in making claims of fraudulent nature that are unsupported by evidence and have been soundly defeated in prior proceedings.

### 1. History of Baseless Claims by the U.S. Trustee

• The U.S. Trustee initially argued that the loans were fraudulent transfers during the trial to determine whether Movants would retain debtor-in-possession status. After a thorough review of

the evidence, this Honorable Court concluded that the loans were legitimate, and Movants were allowed to remain as debtors in possession.

• The U.S. Trustee again argued at the time of conversion that these transactions were not loans. Despite their repeated claims, they failed to provide any credible evidence to support their assertions, and this argument was once more rejected.

### 2. Maria Yip's Examiner Report

• The Examiner, Maria Yip, conducted an extensive review of the financial transactions in question. Her report did not classify the loans as fraudulent transfers. In fact, the report affirmed that the transactions were loans. The Examiner's only speculative statement was that it might be in the best interest of creditors to convert the case to Chapter 7 to avoid any potential future concerns—not because the loans were improper.

### 3. Trustee's Recycled Arguments

• Despite the Court's prior rulings and the findings of the Examiner, Trustee now continues to assert the same baseless claims that these loans were not legitimate. He knows these claims to be inaccurate and without merit.

• Instead of accepting the evidence presented, the Trustee is choosing to recycle arguments that have already been defeated. This is not only an abuse of the bankruptcy process, but also an egregious waste of time and resources.

### 4. Impact on Movants

• The Trustee's actions have forced Movants to dedicate their time and resources to defending against the same baseless claims over and over again. Rather than being able to focus on productive efforts to benefit the bankruptcy estate, Movants are effectively working full-time to counter the Trustee's false and repetitive assertions.

• The Trustee's conduct has caused significant financial and emotional strain on Movants, detracting from their ability to rebuild their businesses and move forward.

This pattern of behavior must come to an end. Movants should not be forced to repeatedly defend against the same unfounded allegations, particularly when those allegations have already been soundly defeated in court. The Trustee's conduct demonstrates a complete disregard for the prior rulings of this Honorable Court and the findings of the Examiner.

### IV. REQUEST FOR RELIEF

WHEREFORE, Movants respectfully request that this Honorable Court:

1. Impose sanctions against the Trustee in the amount of **$750,000** to be paid personally to John Michael Cohan and David Hughes for the harm caused by the Trustee's actions;

2. Issue a Protective Order as outlined above to safeguard Movants and their Affiliated Businesses from further harassment and retaliation;

3. Direct the Trustee to provide a transparent accounting of their actions, including decisions regarding claims against the Warren Law Group and other relevant parties;

4. Grant such other and further relief as the Court deems just and proper.

---

**Dated:** January 27, 2025

**Respectfully Submitted,**

**John Michael Cohan and David Hughes**
**Stakeholders of GENIE INVESTMENTS NV INC.**
**Sole Trustees & Sole Beneficiaries of GENIE INVESTMENTS TRUST**
**Authorized Representatives, without prejudice and without recourse,**
**Movants, Pro Se, In Rem, Corpus Juris, Quasi In Rem, In personam, Under Fiduciary Duty, FS 736.0816, UTC 801-817, UPAA 203 & 207, 11 USC 541, UCC §9-109, UCC §9-503, UCC §9-607, UCC §9-615, UCC §9-202, Restatement (Third) of Trusts 70 & 85, Dodge v. Ford Motor Co. (1919), Hodel v. Irving, 481 U.S. 704 (1987), C.E. Pope Equity Trust v. United States, 818 F.2d 696 (9th Cir. 1987)**

---

**CC VIA EMAIL:**
Aaron Cohen, Chapter 7 Trustee
Raye Elliott
Tampa: Akerman LLP
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
aaron@arcohenlaw.com; raye.elliott@akerman.com

Bryan K. Mickler, Attorney for the Debtor
Law Offices of Mickler & Mickler, LLP
5452 Arlington Expy.
Jacksonville, Florida 32211
bkmickler@planlaw.com

*EXHIBITS A - J ARE ENCLOSED WITH THIS MOTION HEREINAFTER and PROPOSED ORDER THEREAFTER.*