# EXHIBIT A

Raye Elliott

Akerman LLP
401 E. Jackson Street
Suite 1700
Tampa, FL 33602-5250

D: 813 209 5013
T: 813 223 7333
F: 813 223 2837
raye.elliott@akerman.com

January 24, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**
**AND BY EMAIL TO: jmcohan@genieinvestments.com and**
**dhughes@genieinvestments.com**

Better Methods, LLC
P.O. Box 60443
Jacksonville, FL 32236

> Re:     **In re Genie Investments, NV, Inc.; United States Bankruptcy Court, Middle**
>         **District of Florida; Case No. 3:24-bk-00496-BAJ**

Dear Sirs:

As you know, I represent Aaron Cohen, Chapter 7 Trustee (the "Trustee") for the bankruptcy case filed by Genie Investments, NV, Inc. (the "Debtor") on February 21, 2024 (the "Petition Date") in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

On January 3, 2023, the Debtor entered into a Loan Agreement with Better Methods, LLC ("Better Methods") for a loan (the "Loan") of up to $500,000 by the Debtor to Better Methods. The Loan Agreement provides that the Loan will accrue interest at the rate of only .1% per year and that the Loan would be repaid in the form of one balloon payment on January 3, 2030. The Loan Agreement also grants to Better Methods the sole right to extend the term of the Loan for an additional 10 years.

According to the Chapter 11 Examiner's Report, which was based on a review of the Debtor's bank records, the Debtor transferred a net total of $130,000 (the "Transfers") to Better Methods prior to the Petition Date which may not include all amounts transferred by the Debtor to Better Methods.

There was testimony at the Chapter 7 Section 341 Meeting of Creditors that the interest rate on the Loan was in line with the IRS "friends and family rate" and was therefore a commercially reasonable loan. However, the IRS "friends and family rate", which is formally known as the Applicable Federal Rate ("AFR"), ranged from 2.22% to 3.24% during the time

Better Methods, LLC
January 24, 2025
Page 2

periods that the Transfers were made to Better Methods. The prime interest rate for the same time period ranged from 6.25% 8.5%. Clearly, Better Methods would not have been able to obtain a loan from a third party for .1% interest.

There is no evidence that the Debtor received anything in return from Better Methods in exchange for the Transfers. Given the absurdly low interest rate on the Loan of only .1%, the extended balloon payment timeframe with no intervening interest payments, and the fact that the borrower had the sole right to extend the terms of the Loan, the Loan is in actuality a fraudulent transfer from the Debtor to Better Methods.

Fraudulent transfers arise from payments or other transfers of property made by the Debtor, within four years of the filing of the bankruptcy case, while the Debtor is insolvent, and for which the Debtor received less than a reasonably equivalent value or that the Debtor made with actual intend to hinder, delay or defraud its creditors. We believe we can state a *prima facie* case against Better Methods based on the receipt of the Transfers.

However, the purpose of this letter is to make you aware of the Trustee's intentions, and to open a line of communication with you in an effort to avoid further cost and expense in the resolution of this claim. If you recognize that the Transfers Better Methods received are fraudulent transfers and wish to avoid further cost and expense, please remit the aforementioned amount by check payable to:

<div align="center">

Aaron Cohen, Chapter 7 Trustee
c/o Raye Elliott, Esq.
Akerman LLP
401 E. Jackson St., Ste. 1700
Tampa, FL 33602

</div>

If I do not receive payment for the Transfers or otherwise hear from you with respect to the Transfers within 10 days of the date of this letter, we will conclude that Better Methods will not cooperate, or that it does not have any defenses to the claim. In such event, the Trustee intends to file an adversary proceeding against Better Methods in the Bankruptcy Court as soon thereafter as is practicable, to recover the amount of the Transfers.

Nothing set forth herein is intended, nor shall it be deemed to modify, limit, release, reduce or waive any of the Trustee's rights, remedies, and privileges at law or in equity, all of which are

79688749;1

Better Methods, LLC
January 24, 2025
Page 3

specifically reserved, including but not limited to, seeking additional amounts transferred to Better Methods if evidence of such additional transfers is discovered.

Sincerely,

Raye Elliott

cc:     Aaron Cohen, Trustee

79688749;1

# EXHIBIT B

Raye Elliott

Akerman LLP
401 E. Jackson Street
Suite 1700
Tampa, FL 33602-5250

D: 813 209 5013
T: 813 223 7333
F: 813 223 2837
raye.elliott@akerman.com

January 24, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**
**AND BY EMAIL TO: jmcohan@genieinvestments.com**

Capitulum, LLC
c/o John Michael Cohan
308 Lincoln Road 2L
Brooklyn, NY 11225

       **Re:    In re Genie Investments, NV, Inc.; United States Bankruptcy Court, Middle**
               **District of Florida; Case No. 3:24-bk-00496-BAJ**

Dear Sir:

      As you know, I represent Aaron Cohen, Chapter 7 Trustee (the "Trustee") for the bankruptcy case filed by Genie Investments, NV, Inc. (the "Debtor") on February 21, 2024 (the "Petition Date") in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

      On September 5, 2022, the Debtor entered into a Loan Agreement with Capitulum, LLC ("Capitulum") for a loan (the "Loan") of up to $1.5 million by the Debtor to Capitulum. The Loan Agreement provides that the Loan will accrue interest at the rate of only .1% per year and that the Loan would be repaid in the form of one balloon payment on December 5, 2029. The Loan Agreement also grants to Capitulum the sole right to extend the term of the Loan for an additional 10 years.

      According to the Chapter 11 Examiner's Report, which was based on a review of the Debtor's bank records, the Debtor transferred a net total of $517,109.87 (the "Transfers") to Capitulum from September 2022 through July 2023 which may not include all amounts transferred by the Debtor to Capitulum.

      There was testimony at the Chapter 7 Section 341 Meeting of Creditors that the interest rate on the Loan was in line with the IRS "friends and family rate" and was therefore a commercially reasonable loan. However, the IRS "friends and family rate", which is formally known as the Applicable Federal Rate ("AFR"), ranged from 2.22% to 3.24% during the time

79688200;1

Capitulum, LLC
January 24, 2025
Page 2

periods that the Transfers were made to Capitulum. The prime interest rate for the same time period ranged from 6.25% 8.5%. Clearly, Capitulum would not have been able to obtain a loan from a third party for .1% interest.

There is no evidence that the Debtor received anything in return from Capitulum in exchange for the Transfers. Given the absurdly low interest rate on the Loan of only .1%, the extended balloon payment timeframe with no intervening interest payments, and the fact that the borrower had the sole right to extend the terms of the Loan, the Loan is in actuality a fraudulent transfer from the Debtor to Capitulum.

Fraudulent transfers arise from payments or other transfers of property made by the Debtor, within four years of the filing of the bankruptcy case, while the Debtor is insolvent, and for which the Debtor received less than a reasonably equivalent value or that the Debtor made with actual intend to hinder, delay or defraud its creditors. We believe we can state a *prima facie* case against Capitulum based on the receipt of the Transfers.

However, the purpose of this letter is to make you aware of the Trustee's intentions, and to open a line of communication with you in an effort to avoid further cost and expense in the resolution of this claim. If you recognize that the Transfers Capitulum received are fraudulent transfers and wish to avoid further cost and expense, please remit the aforementioned amount by check payable to:

<div align="center">

Aaron Cohen, Chapter 7 Trustee
c/o Raye Elliott, Esq.
Akerman LLP
401 E. Jackson St., Ste. 1700
Tampa, FL 33602

</div>

If I do not receive payment for the Transfers or otherwise hear from you with respect to the Transfers within 10 days of the date of this letter, we will conclude that Capitulum will not cooperate, or that it does not have any defenses to the claim. In such event, the Trustee intends to file an adversary proceeding against Capitulum in the Bankruptcy Court as soon thereafter as is practicable, to recover the amount of the Transfers.

Nothing set forth herein is intended, nor shall it be deemed to modify, limit, release, reduce or waive any of the Trustee's rights, remedies, and privileges at law or in equity, all of which are

79688200;1

Capitulum, LLC
January 24, 2025
Page 3

specifically reserved, including but not limited to, seeking additional amounts transferred to Capitulum if evidence of such additional transfers is discovered.

Sincerely,

Raye Elliott

cc:    Aaron Cohen, Trustee

79688200;1

# EXHIBIT C

Raye Elliott

Akerman LLP
401 E. Jackson Street
Suite 1700
Tampa, FL 33602-5250

D: 813 209 5013
T: 813 223 7333
F: 813 223 2837
raye.elliott@akerman.com

January 24, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**
**AND BY EMAIL TO: jmcohan@genieinvestments.com and**
**dhughes@genieinvestments.com**

Genie Investments II, LLC
c/o its Registered Agent, Phyllis Cropper
908 E. 17th Street
Wilmington, DE 19802

     Re:    **In re Genie Investments, NV, Inc.; United States Bankruptcy Court, Middle**
           **District of Florida; Case No. 3:24-bk-00496-BAJ**

Dear Sirs:

    As you know, I represent Aaron Cohen, Chapter 7 Trustee (the "Trustee") for the bankruptcy case filed by Genie Investments, NV, Inc. (the "Debtor") on February 21, 2024 (the "Petition Date") in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

    On August 15, 2023, the Debtor entered into a Loan Agreement with Genie Investments II, LLC ("Genie II") for a loan (the "Loan") of up to $2 million by the Debtor to Genie II. The Loan Agreement provides that the Loan will accrue interest at the rate of only .1% per year and that the Loan would be repaid in the form of one balloon payment on August 15, 2030. The Loan Agreement also grants to Genie II the sole right to extend the term of the Loan for an additional 10 years.

    According to the Chapter 11 Examiner's Report, which was based on a review of the Debtor's bank records, the Debtor transferred a total of $1,244,606.44 (the "Debtor Transfers") to Genie II prior to the Petition Date which may not include all amounts transferred by the Debtor to Genie II. Additionally, it appears that certain of the Debtor's customers may have deposited funds into Genie II's bank account which were not transferred to the Debtor in the amount of $791,625 (the "Customer Transfers" and, together with the Debtor Transfers, the "Transfers").

79688525;1

Genie Investments II, LLC
January 24, 2025
Page 2

There was testimony at the Chapter 7 Section 341 Meeting of Creditors that the interest rate on the Loan was in line with the IRS "friends and family rate" and was therefore a commercially reasonable loan. However, the IRS "friends and family rate", which is formally known as the Applicable Federal Rate ("AFR"), ranged from 2.22% to 3.24% during the time periods that the Transfers were made to Genie II. The prime interest rate for the same time period ranged from 6.25% 8.5%. Clearly, Genie II would not have been able to obtain a loan from a third party for .1% interest.

There is no evidence that the Debtor received anything in return from Genie II in exchange for the Transfers. Given the absurdly low interest rate on the Loan of only .1%, the extended balloon payment timeframe with no intervening interest payments, and the fact that the borrower had the sole right to extend the terms of the Loan, the Loan is in actuality a fraudulent transfer from the Debtor to Genie II.

Fraudulent transfers arise from payments or other transfers of property made by the Debtor, within four years of the filing of the bankruptcy case, while the Debtor is insolvent, and for which the Debtor received less than a reasonably equivalent value or that the Debtor made with actual intend to hinder, delay or defraud its creditors. We believe we can state a *prima facie* case against Genie II based on the receipt of the Transfers.

However, the purpose of this letter is to make you aware of the Trustee's intentions, and to open a line of communication with you in an effort to avoid further cost and expense in the resolution of this claim. If you recognize that the Transfers Genie II received are fraudulent transfers and wish to avoid further cost and expense, please remit the aforementioned amount by check payable to:

<div align="center">
Aaron Cohen, Chapter 7 Trustee<br>
c/o Raye Elliott, Esq.<br>
Akerman LLP<br>
401 E. Jackson St., Ste. 1700<br>
Tampa, FL 33602
</div>

If I do not receive payment for the Transfers or otherwise hear from you with respect to the Transfers within 10 days of the date of this letter, we will conclude that Genie II will not cooperate, or that it does not have any defenses to the claim. In such event, the Trustee intends to file an adversary proceeding against Genie II in the Bankruptcy Court as soon thereafter as is practicable, to recover the amount of the Transfers.

Nothing set forth herein is intended, nor shall it be deemed to modify, limit, release, reduce or waive any of the Trustee's rights, remedies, and privileges at law or in equity, all of which are

79688525;1

Genie Investments II, LLC
January 24, 2025
Page 3

specifically reserved, including but not limited to, seeking additional amounts transferred to Genie
II if evidence of such additional transfers is discovered.

<div style="text-align:right">

Sincerely,

Raye Elliott

</div>

cc:    Aaron Cohen, Trustee

79688525;1

# EXHIBIT D

Raye Elliott

Akerman LLP
401 E. Jackson Street
Suite 1700
Tampa, FL 33602-5250

D: 813 209 5013
T: 813 223 7333
F: 813 223 2837
raye.elliott@akerman.com

January 24, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
AND BY EMAIL TO: jmcohan@genieinvestments.com and
dhughes@genieinvestments.com**

Genie's Angels, LLC n/k/a Merkton Group, LLC
c/o of its Registered Agent, Phyllis Cropper
908 E. 17th Street
Wilmington, DE 19802

      **Re:**    **In re Genie Investments, NV, Inc.; United States Bankruptcy Court, Middle
District of Florida; Case No. 3:24-bk-00496-BAJ**

Dear Sirs:

      As you know, I represent Aaron Cohen, Chapter 7 Trustee (the "Trustee") for the
bankruptcy case filed by Genie Investments, NV, Inc. (the "Debtor") on February 21, 2024 (the
"Petition Date") in the United States Bankruptcy Court for the Middle District of Florida,
Jacksonville Division.

      On June 1, 2023, the Debtor entered into a Loan Agreement with Genie's Angels, LLC
("Genie's Angels") for a loan (the "Loan") of up to $50,000 by the Debtor to Genie's Angels. The
Loan Agreement provides that the Loan will accrue interest at the rate of only .1% per year and
that the Loan would be repaid in the form of one balloon payment on June 1, 2030. The Loan
Agreement also grants to Genie's Angels the sole right to extend the term of the Loan for an
additional 10 years.

      According to the Debtor's Amended Statement of Financial Affairs, the Debtor transferred
$25,000 (the "Transfers") to Genie's Angels prior to the Petition Date which may not include all
amounts transferred by the Debtor to Genie's Angels.

      There was testimony at the Chapter 7 Section 341 Meeting of Creditors that the interest
rate on the Loan was in line with the IRS "friends and family rate" and was therefore a
commercially reasonable loan. However, the IRS "friends and family rate", which is formally
known as the Applicable Federal Rate ("AFR"), ranged from 2.22% to 3.24% during the time

Genie's Angels, LLC
January 24, 2025
Page 2

periods that the Transfers were made to Genie's Angels. The prime interest rate for the same time period ranged from 6.25% 8.5%. Clearly, Genie's Angels would not have been able to obtain a loan from a third party for .1% interest.

There is no evidence that the Debtor received anything in return from Genie's Angels in exchange for the Transfers. Given the absurdly low interest rate on the Loan of only .1%, the extended balloon payment timeframe with no intervening interest payments, and the fact that the borrower had the sole right to extend the terms of the Loan, the Loan is in actuality a fraudulent transfer from the Debtor to Genie's Angels.

Fraudulent transfers arise from payments or other transfers of property made by the Debtor, within four years of the filing of the bankruptcy case, while the Debtor is insolvent, and for which the Debtor received less than a reasonably equivalent value or that the Debtor made with actual intend to hinder, delay or defraud its creditors. We believe we can state a *prima facie* case against Genie's Angels based on the receipt of the Transfers.

However, the purpose of this letter is to make you aware of the Trustee's intentions, and to open a line of communication with you in an effort to avoid further cost and expense in the resolution of this claim. If you recognize that the Transfers Genie's Angels received are fraudulent transfers and wish to avoid further cost and expense, please remit the aforementioned amount by check payable to:

<div align="center">

Aaron Cohen, Chapter 7 Trustee
c/o Raye Elliott, Esq.
Akerman LLP
401 E. Jackson St., Ste. 1700
Tampa, FL 33602

</div>

If I do not receive payment for the Transfers or otherwise hear from you with respect to the Transfers within 10 days of the date of this letter, we will conclude that Genie's Angels will not cooperate, or that it does not have any defenses to the claim. In such event, the Trustee intends to file an adversary proceeding against Genie's Angels in the Bankruptcy Court as soon thereafter as is practicable, to recover the amount of the Transfers.

Nothing set forth herein is intended, nor shall it be deemed to modify, limit, release, reduce or waive any of the Trustee's rights, remedies, and privileges at law or in equity, all of which are

Genie's Angels, LLC
January 24, 2025
Page 3

specifically reserved, including but not limited to, seeking additional amounts transferred to Genie's Angels if evidence of such additional transfers is discovered.

Sincerely,

Raye Elliott

cc:    Aaron Cohen, Trustee

79688852;1

# EXHIBIT E

# akerman

Raye Elliott

Akerman LLP
401 E. Jackson Street
Suite 1700
Tampa, FL 33602-5250

D: 813 209 5013
T: 813 223 7333
F: 813 223 2837
raye.elliott@akerman.com

January 24, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**
**AND BY EMAIL TO: jmcohan@genieinvestments.com and**
**dhughes@genieinvestments.com**

Zoomeral, Inc.
c/o its Registered Agent, Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

 Re: **In re Genie Investments, NV, Inc.; United States Bankruptcy Court, Middle**
 **District of Florida; Case No. 3:24-bk-00496-BAJ**

Dear Sirs:

As you know, I represent Aaron Cohen, Chapter 7 Trustee (the "Trustee") for the
bankruptcy case filed by Genie Investments, NV, Inc. (the "Debtor") on February 21, 2024 (the
"Petition Date") in the United States Bankruptcy Court for the Middle District of Florida,
Jacksonville Division.

On September 5, 2022, the Debtor entered into a Loan Agreement with Zoomeral, Inc.
("Zoomeral") for a loan (the "Loan") of up to $3 million by the Debtor to Zoomeral. The Loan
Agreement provides that the Loan will accrue interest at the rate of only .1% per year and that the
Loan would be repaid in the form of one balloon payment on December 5, 2029. The Loan
Agreement also grants to Zoomeral the sole right to extend the term of the Loan for an additional
10 years.

According to the Chapter 11 Examiner's Report, which was based on a review of the
Debtor's bank records, the Debtor transferred a net total of $1,771,555.74 (the "Transfers") to
Zoomeral from September 2022 through July 2023 which may not include all amounts transferred
by the Debtor to Zoomeral.

There was testimony at the Chapter 7 Section 341 Meeting of Creditors that the interest
rate on the Loan was in line with the IRS "friends and family rate" and was therefore a

Zoomeral, Inc.
January 24, 2025
Page 2

---

commercially reasonable loan. However, the IRS "friends and family rate", which is formally known as the Applicable Federal Rate ("AFR"), ranged from 2.22% to 3.24% during the time periods that the Transfers were made to Zoomeral. The prime interest rate for the same time period ranged from 6.25% 8.5%. Clearly, Zoomeral would not have been able to obtain a loan from a third party for .1% interest.

There is no evidence that the Debtor received anything in return from Zoomeral in exchange for the Transfers. Given the absurdly low interest rate on the Loan of only .1%, the extended balloon payment timeframe with no intervening interest payments, and the fact that the borrower had the sole right to extend the terms of the Loan, the Loan is in actuality a fraudulent transfer from the Debtor to Zoomeral.

Fraudulent transfers arise from payments or other transfers of property made by the Debtor, within four years of the filing of the bankruptcy case, while the Debtor is insolvent, and for which the Debtor received less than a reasonably equivalent value or that the Debtor made with actual intend to hinder, delay or defraud its creditors. We believe we can state a *prima facie* case against Zoomeral based on the receipt of the Transfers.

However, the purpose of this letter is to make you aware of the Trustee's intentions, and to open a line of communication with you in an effort to avoid further cost and expense in the resolution of this claim. If you recognize that the Transfers Zoomeral received are fraudulent transfers and wish to avoid further cost and expense, please remit the aforementioned amount by check payable to:

<div align="center">

Aaron Cohen, Chapter 7 Trustee
c/o Raye Elliott, Esq.
Akerman LLP
401 E. Jackson St., Ste. 1700
Tampa, FL 33602

</div>

If I do not receive payment for the Transfers or otherwise hear from you with respect to the Transfers within 10 days of the date of this letter, we will conclude that Zoomeral will not cooperate, or that it does not have any defenses to the claim. In such event, the Trustee intends to file an adversary proceeding against Zoomeral in the Bankruptcy Court as soon thereafter as is practicable, to recover the amount of the Transfers.

Nothing set forth herein is intended, nor shall it be deemed to modify, limit, release, reduce or waive any of the Trustee's rights, remedies, and privileges at law or in equity, all of which are

Zoomeral, Inc.
January 24, 2025
Page 3

specifically reserved, including but not limited to, seeking additional amounts transferred to Zoomeral if evidence of such additional transfers is discovered.

Sincerely,

Raye Elliott

cc:    Aaron Cohen, Trustee

79143601;1

# EXHIBIT F

# akerman

Raye Elliott

Akerman LLP
401 E. Jackson Street
Suite 1700
Tampa, FL 33602-5250

D: 813 209 5013
T: 813 223 7333
F: 813 223 2837
raye.elliott@akerman.com

January 24, 2025

**VIA E-MAIL AND U.S. MAIL**

John Michael Cohan and David Hughes
PO Box 60443
Jacksonville, FL 32236

> **Re:    Alleged Claims Against Warren Law Group and Scott Oh**

Dear Mr. Cohan and Mr. Hughes:

By letter dated January 21, 2025, you asserted claims for "professional negligence, breach of duty, and unethical conduct" against the Warren Law Group and Scott Oh. In your January 21, 2025 letter, you specifically mentioned the firm's representation of the Debtor, Genie Investments, NV, Inc. in connection with the joint venture agreement entered into with Velanos Principal Capital. As I informed you in my email sent January 22, 2025, any claims for legal malpractice or professional negligence belong to the bankruptcy estate and can only be brought by the Trustee.

While I agree that any personal claims that you hold in your individual capacities for "reputational harm" are not impacted by the bankrtupcy case, your assertion of professional negligence, breach of duty and unethical conduct in your January 21, 2025 letter to the Warren Law Group are clearly claims that belong to the bankruptcy estate. Accordingly, you must immediately cease and desist asserting any claims for professional negligence, professional malpractice, breach of trust or financial losses related to the Warren Law Group's representation of the Debtor in the transaction with Velanos.

If you continue to pursue claims that belong to the bankruptcy estate against Warren Law Group or Scott Oh, the Trustee will file a motion for sanctions against you with the Bankruptcy Court. Please govern yourself accordingly.

Sincerely,

Raye Elliott

cc:    Aaron Cohen, Trustee

akerman.com

79685798;1

# EXHIBIT G

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Cc:** | bkmickler@planlaw.com |
| **Subject:** | FW: In re Genie Investments, NV, Inc. |
| **Date:** | Thursday, January 23, 2025 3:54:49 PM |

Mr. Cohan,

Please immediately stop forwarding my email to third parties that I sent to you and Mr. Hughes stating that the bankrtupcy case does not impact personal claims you hold against others. My email to you was not intended for public dissemination.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333 | F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

**From:** Kipp Nash <kipnash7@gmail.com>
**Sent:** Thursday, January 23, 2025 11:38 AM
**To:** Elliott, Raye (Ptnr-Tpa) <raye.elliott@akerman.com>
**Subject:** Fwd: In re Genie Investments, NV, Inc.

**[External to Akerman]**

Sent from my iPhone

Begin forwarded message:

> **From:** John from Genie Investments <jmcohan@genieinvestments.com>
> **Date:** January 23, 2025 at 10:15:16 AM CST
> **To:** kipnash7@gmail.com
> **Cc:** David from Genie Investments <dhughes@genieinvestments.com>
> **Subject: FW: In re Genie Investments, NV, Inc.**

> Kipp and Kim,

> The Trustee cannot and will not interfere with our personal claims against you, as confirmed in the email thread below. Please refer to your notice for the response deadline.

> To address recent concerns, we are offering an opportunity for resolution. On a **first-come, first-serve basis**, the first party to reveal the identity of the

individuals responsible for creating fake online profiles with the intent to defame
us will not be pursued legally. The party must provide **solid evidence** to
substantiate their claim and be prepared to **testify if necessary** to ensure
accountability and transparency.

This offer aims to resolve the matter amicably and efficiently while avoiding
unnecessary legal escalation. We look forward to your timely response.

Sincerely,

<image001.png>
**John Michael Cohan**
**Genie Investments, Director**
<image002.jpg>
A Word of Caution to Sellers & Buyers Business is based on trust. Genie
Investments (Genie) is acting solely as Consultants, Genie does not accept any
liability on behalf of Sellers or Buyers or their associated Facilitators and/or
Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom
and perform full verification & due diligence on their own before going into any
opportunity.
DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States
Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and
makes no warranties or representations as to the Buyer, Seller or Transaction. All
due diligence is the responsibility of the Buyer and Seller. This E-mail letter and
the attached related documents are never to be considered a solicitation for any
purpose in any form or content. Upon receipt of these documents, the Recipient
hereby acknowledges this Disclaimer. If acknowledgment is not accepted,
Recipient must return any and all documents in their original receipted condition
to Sender. This electronic communication is covered by the Electronic
Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-
2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-
6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see:
http://www.ftc.gov/privacy/glbact/glbsub1.htm
PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or
confidential information.  It is intended solely for the use of the addressee. If you
are not the intended recipient, you are strictly prohibited from disclosing,
copying, distributing, or using any of this information. Please inform the sender if
you have received this email in error.
This email is not a solicitation or recommendation to buy, sell, or hold securities.
This email is meant for informational and educational purposes only and does not
provide investment advice.

**From:** raye.elliott@akerman.com <raye.elliott@akerman.com>
**Sent:** Wednesday, January 22, 2025 6:48 PM
**To:** John from Genie Investments <jmcohan@genieinvestments.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** bkmickler@planlaw.com
**Subject:** RE: In re Genie Investments, NV, Inc.

Mr. Cohan,

Thank you for email. I agree that any personal claims or causes of action that you and Mr. Hughes hold are not impacted by the Genie bankruptcy case. In fact, yesterday and today I have received emails from a few of the Debtors' creditors with copies of demand letters that you have sent them in your personal capacity and I have told each of them that the bankruptcy case does not impact any individual claims you may or may not hold against them.

I don't know what your legal counsel told you, but I don't see how you have a personal cause of action against the Warren Law Group and Scott Oh, since they were retained to represent Genie Investments and not you personally. My concern is that if you try to pursue a personal claim against the Warren Law Group, even if unsuccessful, the firm will look to its malpractice insurance policy to pay defense costs which will eat into the insurance policy limits that would otherwise be available to the bankruptcy estate when the Trustee pursues the malpractice claim on behalf of Genie. In that way, I am afraid that your attempting to pursue a personal claim against the Warren Law Group would adversely impact the bankruptcy estate.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

**From:** John from Genie Investments <jmcohan@genieinvestments.com>
**Sent:** Wednesday, January 22, 2025 5:05 PM
**To:** Elliott, Raye (Ptnr-Tpa) <raye.elliott@akerman.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** bkmickler@planlaw.com
**Subject:** RE: In re Genie Investments, NV, Inc.

[External to Akerman]

Ms. Elliot,

We hope this message finds you well. We are writing to clarify our intent regarding

the claims we are pursuing and to ensure that we remain cooperative and aligned with the trustee's responsibilities while also protecting our individual rights.

First, we want to reaffirm that we fully respect the trustee's authority and role in managing the claims and interests of the bankruptcy estate of Genie Investments NV, Inc. We are **not attempting to overstep this authority** or infringe upon any claims that rightly belong to the estate. Our focus is strictly on pursuing claims for the **personal harm** we have suffered, which are separate and distinct from the estate's malpractice claims.

As noted in the examiner's report, we have endured significant harm to our personal reputations. Additionally, we previously sought the trustee's assistance in addressing damaging social media posts by [Stringer], which further exacerbated this harm. These actions have caused personal damages— diminished credibility, loss of professional opportunities, and emotional distress —that are independent of the company's operations and bankruptcy estate.

After consulting with our legal counsel, we have been advised that pursuing these personal claims is appropriate and does not conflict with the trustee's exclusive authority over the estate. Our counsel has assured us that the harm we are addressing is uniquely personal and unrelated to the corporate claims. While we remain fully cooperative and respectful of the trustee's mandate, we also have a responsibility to protect ourselves and seek remedy for the harm we have individually suffered.
We deeply value the trustee's role and are committed to ensuring that our actions do not interfere with the bankruptcy proceedings. However, we respectfully request clarification on how pursuing these personal claims could be viewed as conflicting with the estate's rights, particularly given the examiner's findings about our reputational harm and the direct personal impact we have experienced.

Our intention is to work collaboratively with the trustee while safeguarding our individual rights and ensuring we can address the unique damages we have suffered. We would greatly appreciate your guidance and understanding as we navigate this matter.
Thank you for your time and attention. Please let us know if further clarification or documentation would be helpful.

**Citations:** In re Icarus Holding, LLC, 391 F.3d 1315 (11th Cir. 2004), Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972), In re Colonial Realty Co., 980 F.2d 125 (2d Cir. 1992)

Sincerely,

&lt;image001.png&gt;
**John Michael Cohan**
**Genie Investments, Director**
&lt;image002.jpg&gt;
A Word of Caution to Sellers &amp; Buyers Business is based on trust. Genie
Investments (Genie) is acting solely as Consultants, Genie does not accept any
liability on behalf of Sellers or Buyers or their associated Facilitators and/or
Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom
and perform full verification &amp; due diligence on their own before going into any
opportunity.
DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States
Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and
makes no warranties or representations as to the Buyer, Seller or Transaction. All
due diligence is the responsibility of the Buyer and Seller. This E-mail letter and
the attached related documents are never to be considered a solicitation for any
purpose in any form or content. Upon receipt of these documents, the Recipient
hereby acknowledges this Disclaimer. If acknowledgment is not accepted,
Recipient must return any and all documents in their original receipted condition
to Sender. This electronic communication is covered by the Electronic
Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-
2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-
6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see:
http://www.ftc.gov/privacy/glbact/glbsub1.htm
PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or
confidential information.  It is intended solely for the use of the addressee. If you
are not the intended recipient, you are strictly prohibited from disclosing,
copying, distributing, or using any of this information. Please inform the sender if
you have received this email in error.
This email is not a solicitation or recommendation to buy, sell, or hold securities.
This email is meant for informational and educational purposes only and does not
provide investment advice.

**From:** raye.elliott@akerman.com &lt;raye.elliott@akerman.com&gt;
**Sent:** Wednesday, January 22, 2025 3:12 PM
**To:** John from Genie Investments &lt;jmcohan@genieinvestments.com&gt;; David from
Genie Investments &lt;dhughes@genieinvestments.com&gt;
**Cc:** bkmickler@planlaw.com
**Subject:** In re Genie Investments, NV, Inc.

Mr. Cohan and Mr. Hughes,

The attorney for Warren Law Group forwarded the attached letter to me that you sent to the firm asserting a claim for legal malpractice. Any claim for legal malpractice for the firm's representation of Genie Investments NV, Inc. belongs to the bankruptcy estate and can only be asserted by the Trustee. Accordingly, please immediately cease and desist with any communications or demands to the Warren Law Group or Scott Oh. Thank you.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com


vCard | Profile


Akerman Logo

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

# EXHIBIT H

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Cc:** | bkmickler@planlaw.com |
| **Subject:** | RE: In re Genie Investments, NV, Inc. |
| **Date:** | Wednesday, January 22, 2025 6:48:37 PM |
| **Attachments:** | image001.png |

Mr. Cohan,

Thank you for email. I agree that any personal claims or causes of action that you and Mr. Hughes hold are not impacted by the Genie bankruptcy case. In fact, yesterday and today I have received emails from a few of the Debtors' creditors with copies of demand letters that you have sent them in your personal capacity and I have told each of them that the bankruptcy case does not impact any individual claims you may or may not hold against them.

I don't know what your legal counsel told you, but I don't see how you have a personal cause of action against the Warren Law Group and Scott Oh, since they were retained to represent Genie Investments and not you personally. My concern is that if you try to pursue a personal claim against the Warren Law Group, even if unsuccessful, the firm will look to its malpractice insurance policy to pay defense costs which will eat into the insurance policy limits that would otherwise be available to the bankruptcy estate when the Trustee pursues the malpractice claim on behalf of Genie. In that way, I am afraid that your attempting to pursue a personal claim against the Warren Law Group would adversely impact the bankruptcy estate.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

**From:** John from Genie Investments <jmcohan@genieinvestments.com>
**Sent:** Wednesday, January 22, 2025 5:05 PM
**To:** Elliott, Raye (Ptnr-Tpa) <raye.elliott@akerman.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** bkmickler@planlaw.com
**Subject:** RE: In re Genie Investments, NV, Inc.

**[External to Akerman]**

Ms. Elliot,

We hope this message finds you well. We are writing to clarify our intent regarding the claims we are pursuing and to ensure that we remain cooperative and aligned with the trustee's responsibilities while also protecting our individual rights.

First, we want to reaffirm that we fully respect the trustee's authority and role in managing the claims and interests of the bankruptcy estate of Genie Investments NV, Inc. We are **not attempting to overstep this authority** or infringe upon any claims that rightly belong to the estate. Our focus is strictly on pursuing claims for the **personal harm** we have suffered, which are separate and distinct from the estate's malpractice claims.

As noted in the examiner's report, we have endured significant harm to our personal reputations. Additionally, we previously sought the trustee's assistance in addressing damaging social media posts by [Stringer], which further exacerbated this harm. These actions have caused personal damages—diminished credibility, loss of professional opportunities, and emotional distress—that are independent of the company's operations and bankruptcy estate.

After consulting with our legal counsel, we have been advised that pursuing these personal claims is appropriate and does not conflict with the trustee's exclusive authority over the estate. Our counsel has assured us that the harm we are addressing is uniquely personal and unrelated to the corporate claims. While we remain fully cooperative and respectful of the trustee's mandate, we also have a responsibility to protect ourselves and seek remedy for the harm we have individually suffered.

We deeply value the trustee's role and are committed to ensuring that our actions do not interfere with the bankruptcy proceedings. However, we respectfully request clarification on how pursuing these personal claims could be viewed as conflicting with the estate's rights, particularly given the examiner's findings about our reputational harm and the direct personal impact we have experienced.

Our intention is to work collaboratively with the trustee while safeguarding our individual rights and ensuring we can address the unique damages we have suffered. We would greatly appreciate your guidance and understanding as we navigate this matter.
Thank you for your time and attention. Please let us know if further clarification or documentation would be helpful.

**Citations:** In re Icarus Holding, LLC, 391 F.3d 1315 (11th Cir. 2004), Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972), In re Colonial Realty Co., 980 F.2d 125 (2d Cir. 1992)

Sincerely,

**John Michael Cohan**
Genie Investments, Director

 GENIE INVESTMENTS

A Word of Caution to Sellers & Buyers Business is based on trust. Genie Investments (Genie) is

acting solely as Consultants, Genie does not accept any liability on behalf of Sellers or Buyers or their associated Facilitators and/or Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity.

DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see: http://www.ftc.gov/privacy/glbact/glbsub1.htm

PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information.  It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.

This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.

**From:** raye.elliott@akerman.com <raye.elliott@akerman.com>
**Sent:** Wednesday, January 22, 2025 3:12 PM
**To:** John from Genie Investments <jmcohan@genieinvestments.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** bkmickler@planlaw.com
**Subject:** In re Genie Investments, NV, Inc.

Mr. Cohan and Mr. Hughes,

The attorney for Warren Law Group forwarded the attached letter to me that you sent to the firm asserting a claim for legal malpractice. Any claim for legal malpractice for the firm's representation of Genie Investments NV, Inc. belongs to the bankruptcy estate and can only be asserted by the Trustee. Accordingly, please immediately cease and desist with any communications or demands to the Warren Law Group or Scott Oh. Thank you.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730

raye.elliott@akerman.com

vCard | Profile



Akerman Logo

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

# EXHIBIT I

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:

GENIE INVESTMENTS NV, INC.

     Debtor.

Case No.: 3:24-bk-00496-BAJ

Chapter 11

## DECLARATION OF ADAM B. WALKER

STATE OF MISSOURI

COUNTY OF JACKSON

The undersigned, ADAM B. WALKER, declares as follows:

1. I, ADAM B. WALKER, am an attorney licensed to practice in Missouri. I am the owner and manager of Walker Law Office, LLC d/b/a AW Securities Law. I previously worked for more than 12 years as an enforcement lawyer for the Financial Industry Regulatory Authority (FINRA), where I routinely investigated fraudulent and potentially fraudulent investment activity.

2. I began representing Genie Investments in or around July 2023 at the request of one of its owners, David Hughes. I had previously done legal work for another business in which Mr. Hughes also has an ownership interest. Before July 2023 I was aware that Genie existed and that it was in the lending business, but I had no other knowledge of or involvement with Genie.

3. In July 2023, Genie asked me to help resolve a contract dispute between it and Velanos Principal Capital. I learned that Genie and Velanos had executed a "Joint Venture Agreement" (JVA) in October 2022 and subsequently amended it three times. Through conversations with

Genie's principals and review of the JVA and its amendments, I learned the essential terms of the agreement, which were:

- Genie and Velanos agreed to form a joint venture.

- Genie agreed to contribute $9.0 million in capital to the joint venture.

- Velanos agreed to use the $9.0 million capital contribution to buy and sell standby letters of credit (SBLCs).

- Velanos agreed to distribute profits from the SBLC transactions to Genie within 60 days of Genie's capital contributions.

- The JVA, as amended, stated that Velanos would return a total of $75 million to Genie, consisting of the $9.0 million capital contribution and $66 million in profits.

4. As of July 2023, Velanos had not distributed any profits to Genie and had returned only $500,000 of its capital contributions. Velanos was, therefore, in material breach of the JVA.

5. I also learned that Genie, shortly before executing the JVA, retained an attorney, referred to herein as "SO," to represent it with respect to what was then the "proposed joint venture" between Genie and Velanos. SO was and still is a partner with an established New York-based law firm.

6. Almost immediately after talking with Genie about the Velanos transaction and reviewing the JVA, I strongly suspected that the SBLC-trading program offered by Velanos was fraudulent. With minimal research, I found numerous judicial opinions, press releases, and other materials supporting my suspicions. The U.S. Securities and Exchange Commission, Federal Bureau of Investigation, Federal Trade Commission, and U.S. Department of Treasury, in addition to other regulators and law-enforcement agencies, have in recent years issued warnings to the public about fraudulent prime-banking scams, including many involving fictitious SBLC trading.

7. On or about July 24, 2023, I spoke with SO by telephone for approximately one hour to talk, among other things, about his review of the JVA, his knowledge of and experience with

2

SBLC trading, and whether he viewed the investments as potentially fraudulent or had any other reservations about Genie entrusting its capital to Velanos for the purposes described in the JVA.

8.  SO told me that he had extensive background with SBLCs, which he characterized as a legitimate investment used in "high level trade finance." He described SBLC trading as a "financing mechanism" that arose from the 1944 Bretton-Woods agreement, which created the World Bank and the International Monetary Fund.

9.  SO represented that Velanos, as promised, had used the $9.0 million in capital that Genie contributed to the joint venture to make profitable SBLC trades. SO acknowledged, however, that he had never received detailed information about any SBLC transactions that Velanos supposedly made.

10. I asked SO to describe how SBLC trading could generate massive profits in a matter of weeks. His response lacked detail. He stated only that it was a "rinse and repeat" process of buying SBLCs at a discount with ensuing profitable sales already prearranged. SO also repeatedly stated that there is "just a lot of leverage that's involved" or some variation thereof.

11. I asked SO if he was aware that SBLC trading was a frequent subject of fraud alerts and enforcement actions, both civil and criminal, by the federal government; he said that he was, but contended nonetheless that what Velanos promised Genie was not fraud. When I asked him how he knew that what Velanos promised was different from the numerous and well-publicized instances of fraud involving SBLCs, he stated that Velanos had "syndicated" the funds. He added, however, that he did not know the particulars of Velanos' ostensible syndication arrangement.

12. I have conducted extensive research into SBLC and other "prime banking" scams. In doing so, I learned that certain phrases, terms, and references are common among SBLC scams. The JVA contains several such phrases and terms. Likewise, SO described SBLC trading to me as

"royal-family type stuff" that happens every day, although not in the United States. According to SO, the U.S. government does not want its citizens involved in SBLC trading. Such assertions are often cited by law enforcement and regulators as markers of SBLC and other varieties of prime-banking fraud.

13. The JVA contains other "red flags" of fraud. For example, Velanos promised to generate an extremely high rate of return – more than 800% – in a matter of weeks. It is also, in my professional opinion, very poorly drafted, with some passages best described as gibberish.

14. Genie terminated its representation by SO and his law firm on or around July 24, 2023. On Genie's behalf, I requested all records from SO's representation of Genie. After several weeks' delay, SO provided what he described as the complete client file. That file, which I have reviewed, contains no documentation indicating that SO:

- conducted any meaningful investigation into Velanos, its principals, or its affiliates,

- noted any red flags in the JVA or any potential that the proposed investment was fraudulent,

- advised Genie of any appreciable risk of losing all or a portion of its principal, or

- mentioned to Genie that the transaction bore similarities to a well-known and heavily publicized type of investment fraud.

15. Based on my investigation and analysis of the JVA and my research into prime-banking fraud, I believe the SBLC trading Velanos promised to conduct with Genie's money was at all times fictitious and blatantly fraudulent.

16. Based on my communications with SO and my review of the client file obtained from him, I believe that SO's review of the JVA was inadequate; that he failed to conduct an appropriate and thorough investigation of the transaction, Velanos, and/or its principals and affiliates; and that, as a result, he likely did not discharge his professional obligations to Genie. For these reasons, it

4

is my opinion that Genie has a colorable claim against its former lawyer and law firm for professional malpractice. I am not equipped, however, to estimate any potential recovery if Genie were to pursue such an action.

17. Although many outside observers now impugn Genie's business judgment and competence for having invested in a fraudulent enterprise, it is critical to acknowledge that Genie did so only after receiving the advice of a licensed attorney from a well-regarded law firm, which it retained specifically to guard against placing its money in an illegitimate investment. Whatever one might say with the benefit of hindsight, the proper lens for evaluating Genie's competence to manage its affairs requires consideration of its entire operating history and the fact that it sought, paid for, and relied on the assistance of legal counsel that, by all appearances, had the experience and knowledge to advise it appropriately.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 14, 2024.

Adam B. Walker

WALKER LAW OFFICE, LLC d/b/a AW
SECURITIES LAW

5