UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION
IN RE:
Genie Investments NV, Inc., Debtor.
Case No.: 3:24-bk-00496-BAJ
Chapter 7

### MOTION FOR SANCTIONS AGAINST CHAPTER 7 TRUSTEE, AKERMAN LLP, AARON COHEN, AND RAYE ELLIOTT FOR BAD FAITH LITIGATION, ABUSE OF PROCESS, SUPPRESSION OF EXCULPATORY EVIDENCE, RETALIATION, AND BREACH OF FIDUCIARY DUTY

**COMES NOW**, Movants, **John Michael Cohan** and **David Hughes**, specially appearing **pro se**. To be very clear, this is <u>not</u> an attempt by Movants to violate **Florida Local Rule 1074-1** as Movants are in their **personal capacities as individuals representing themselves, their personal property, personal interests, personal securities and personal assets**, and respectfully move this Court to impose **sanctions** against **Trustee Aaron R. Cohen, Akerman LLP,** and **Raye Curry Elliott** for engaging in bad-faith litigation, abuse of process, **suppression of exculpatory evidence, retaliation, breach of fiduciary duty,** misrepresentations made to this Court and infringement of Movants' constitutional claims/rights.

Movants bring this action solely in their individual capacities to redress the **intentional legal and financial harm inflicted upon them** by the Trustee's improper litigation tactics, which have **obstructed their independent claims, violated their constitutional rights,** and coerced them into hiring attorneys personally to defend their personal assets against an Adversary Proceeding that was strategically filed to exert pressure upon them. In support, Movants state as follows:

---

### I. INTRODUCTION & BASIS FOR SANCTIONS

1. The Trustee, Akerman LLP, Aaron R. Cohen and Raye Curry Elliott, hereinafter the "Trustee", have engaged in a pattern of bad-faith litigation designed to suppress Movants' personal claims, suppress exculpatory evidence, and coerce Movants into expending personal resources for legal counsel under improper threats.

The Trustee's misuse of procedural tactics, including stays and an Adversary proceeding, has personally harmed Movants, despite the Trustee's **full knowledge** that Movants were asserting **personal and independent claims** separate from those of the bankruptcy estate. (**Exhibit B** and **C** of the TRUSTEE'S RESPONSE TO COMBINED MOTION FOR SANCTIONS AND PROTECTIVE ORDER AGAINST CHAPTER 7 TRUSTEE FOR RETALIATORY CONDUCT, ABUSE OF PROCESS, AND BREACH OF FIDUCIARY DUTY, hereinafter referred to as "Trustee's Response", **Exhibit G** and **H** of COMBINED MOTION FOR SANCTIONS AND PROTECTIVE ORDER AGAINST CHAPTER 7 TRUSTEE FOR RETALIATORY CONDUCT, ABUSE OF PROCESS, AND BREACH OF FIDUCIARY DUTY, hereinafter referred to as "Original Motion" and **Exhibit A, B and C** of MOVANTS' BRIEF ON THE INAPPLICABILITY OF THE AUTOMATIC STAYS TO PERSONAL CLAIMS hereinafter referred to as "Brief.")

2. Despite being fully aware that Movants had independent claims against Joshua Wearmouth, Velanos, Resydency, Nordic Trust Alliance KB, Scarinci Hollenbeck, Warren Law Group, and Scott Oh, the Trustee improperly sought stays in these cases while also withholding material evidence that contradicted the Trustee's position.

   - The Trustee engaged in a pattern of misrepresentation and omission, misleading the Court about Movants' independent claims. This is a clear violation of **Florida Rules of Professional**

**Conduct, Rule 4-3.3,** which prohibits attorneys from knowingly making false statements or omitting material facts.

- The Trustee **deliberately omitted exculpatory evidence,** including **correspondence that demonstrated Movants' independent claims and financial interests.**

- The Trustee used **procedural litigation tactics, forcing Movants into hiring legal counsel**—a cost **personally incurred by Movants** to defend their personal assets, interests, property, securities and financial claims.

3. **Movants had good-faith discussions with the Trustee,** presenting their **legal basis for their personal claims** and outlining their **companies' defenses in advance. (Exhibit B and C** of the Trustee's Response and **Exhibit G and H** of the Original motion and **Exhibit C** of the Brief) Instead of engaging in a fair resolution, the Trustee **proceeded with stays and the baseless Adversary Complaint against Movants' personal claims and personal assets.**

4. The Trustee sought to improperly expand the automatic stay to include claims that are not property of the estate, directly violating *In re Thorpe Insulation Co.*, 677 F.3d 869 (9th Cir. 2012) and *In re Smart World Technologies, LLC,* 423 F.3d 166 (2d Cir. 2005).

5. The Trustee's actions violate **his fiduciary duty under** *Christensen v. Jubber (In re Christensen),* 106 F.3d 403 (10th Cir. 1997), which holds that a **trustee must act in the best interests of all stakeholders, including estate beneficiaries**—a duty that the Trustee has flagrantly disregarded.

- The **first retaliatory demand letter sent to Movants personally threatened them with sanctions if they continued pursuing their constitutional rights** against Warren Law Group. This was followed by a **barrage of back-to-back demand letters issued within a one half-hour period,** reinforcing a deliberate pattern of **intimidation and suppression of independent claims specifically targeting Movants personally.** These letters were **not standard demand notices** but were strategically crafted to obstruct Movants' independent claims by setting impossibly short deadlines that conveniently coincided with Movants' own legal deadlines. **(Exhibits A through H** of the Original Motion, **Exhibit A** of Trustee's Response and **Exhibit A, B and C** of this motion.)

- The Trustee argues that the demand letters sent to the Movants personally were not retaliatory actions but instead, a **"coincidence of timing."** However, this claim is **categorically false.**

- **The cease-and-desist demands were issued within two hours of Movants pursuing their personal constitutionally protected claims**—a direct attempt at **intimidation and suppression of Movants' personal legal rights (Exhibits A and B** of this motion).

- Additionally, **the Trustee's argument that Movants' personal claims against the Warren Law Group would deplete malpractice insurance and harm the bankruptcy estate is legally flawed.** Courts have ruled that **defense costs do not justify blocking a valid claim.** In *Buss v. Superior Court,* 16 Cal. 4th 35, 45 (1997), the California Supreme Court affirmed that **an insurer's duty to defend is contractual and separate from indemnification,** meaning policy exhaustion is not a valid excuse to preclude a legitimate claim.

- Florida law defines **abuse of process** as **using legal procedures for improper purposes.** The 10-day demand letters **conveniently obstructed Movants' 14-day demands for personal claims**—an action that **clearly deviates from industry-standard demand periods of 14 to 30 days.**

- **The Trustee's sudden personal attack of John Michael Cohan, David Hughes and their personal assets after six months of inaction further contradicts his claim of coincidence.** Courts have ruled that misuse of legal actions for **retaliation** constitutes **abuse of process** (*Miami Herald Publishing Company v. Ferre*, 636 F. Supp. 970 (S.D. Fla. 1985)). The timing of these **letters and threats of sanctions is not a coincidence—it is deliberate retaliation.**

6. Even though the Movants have not been personally sued, the Trustee's actions demonstrate a deliberate and strategic effort to litigate against them indirectly through procedural manipulation, threats, and the suppression of their personal constitutional rights. The **timing of the retaliatory demand letters**, coupled with the Trustee's immediate suppression of Movants' personal constitutional claims, reveals a **deliberate scheme of bad-faith litigation.** The Trustee strategically pursued stays and Adversary Complaint to **coerce Movants into hiring attorneys and prevent them from asserting their personal rights**, despite being informed that they were **personally pursuing independent claims.**

   - If the Trustee truly believed that Movants had no valid claims, they would not have responded with **immediate legal threats and procedural suppression tactics**—instead, he would have simply let their lawsuits proceed. Their **attempt to weaponize procedural rules to suppress Movants' constitutional rights** must not be tolerated, as the Court's concern regarding a lack of a personal lawsuit **does not negate the clear evidence of direct retaliation and suppression of legal claims.**

7. The Trustee's claim that the demand letters were not retaliatory is demonstrably false. **Their timing— a mere 2 days after Movants asserted their legal rights—proves a deliberate effort to intimidate and suppress valid claims.** Courts have long recognized that the **misuse of legal actions for retaliatory purposes constitutes abuse of process** (*Miami Herald Publishing Company v. Ferre*, 636 F. Supp. 970 (S.D. Fla. 1985)).

8. The Trustee further engaged in **procedural manipulation** by seeking a stay in the **Joshua Wearmouth case, but only sought a stay in the Warren Law Group case after Movants pointed out that no stay had been filed.** (Line 5 subsection "Prior Discussions and Repeated Distractions" in Movants' AMENDMENT TO MOTION TO STRIKE TRUSTEE'S MOTION FOR AUTOMATIC STAY AS PROCEDURALLY IMPROPER, MOTION FOR RECONSIDERATION OF ORDER GRANTING TRUSTEE'S MOTION TO STRIKE MOVANTS' MOTION TO DISMISS ADVERSARY COMPLAINT, AND REQUEST FOR ADDITIONAL SANCTIONS FOR CLEAR BREACH OF FIDUCIARY DUTY) The Trustee's inconsistent application of stays demonstrates an intent to manipulate the legal process. Notably, they failed to seek a stay in the Warren Law Group case until Movants pointed out this omission, revealing his strategy to selectively obstruct specific claims while allowing others to proceed. This demonstrates selective enforcement and an attempt to **retroactively justify an inconsistent litigation strategy.** The Trustee aggressively pursued Movants while avoiding action against more culpable parties, such as Warren Law Group, and other third parties, demonstrating a pattern of selective enforcement that violates fundamental fairness in bankruptcy proceedings.

9. **The Trustee's misrepresentations to the Court are a clear abuse of process. They deliberately withheld exculpatory evidence and misled the Court to justify an improper legal position. Further, the Trustee deliberately mischaracterized Movants as "mere principals and owners" while omitting their legally recognized status as beneficiaries of the estate, violating fiduciary obligations under** *Christensen v. Jubber (In re Christensen)*, 106 F.3d 403 (10th Cir. 1997).

   - These actions amount to **bad-faith litigation, suppression of material evidence, and intentional misrepresentation** before the Court.

- **Rewind to the 4th 341 meeting the Trustee referenced in the Trustee's Response.** The meeting date, **on September 19, 2024 — 127 days prior to their threatening demand letters— was intentionally omitted from the Trustee's Response to mislead the Court.**
- At that meeting, according to the Trustee, the Trustee had **made the decision to file an Adversary Complaint against the Movants' personal assets**—contradicting their later claim that their demand letters were unrelated.
- According to the Trustee, the Trustee **knew at that time** that he planned to bring an **Adversary Complaint against the Movants' assets,** which directly refutes their claim of "coincidence" **regarding the demand letters sent within 48 hours of Movants exercising their constitutional rights. This timeline completely refutes** their argument of "coincidence."
- The illegitimate legal basis the Trustee used to justify their actions further **proves their intent to mislead the Court. The Adversary Complaint is simply a byproduct of the Trustee's intentional bad-faith litigation against Movants personally which should procedurally strike it from the record based on established authoritative legal precedent.** ((*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980); *In re Yorkshire LLC,* 540 F.3d 328 (5th Cir. 2008); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115 (1st Cir. 1989); *In re Gorski,* 766 F.2d 723 (2d Cir. 1985); **Fed. R. Civ. P. 12(f); Fed. R. Bankr. P. 7012;** *In re Silberkraus,* 336 F.3d 864 (9th Cir. 2003))

10. **Precluding the demand letters and threat of sanctions against Movants personally, Exhibit G of Movant's** Original Motion, **validates the Trustee's bad faith.** The Trustee attempted to suppress information that was not under a protective order and impose unnecessary confidentiality restrictions, constituting a **clear violation of fiduciary duties and an abuse of discretion.**

11. The Trustee has **no legal authority to restrict access to publicly available or non-confidential material.** Such actions obstruct transparency, prevent Movants from effectively asserting their personal rights, and indicate an attempt to manipulate the bankruptcy proceedings to favor certain parties while disadvantaging others.

    - This suppression not only undermines the fundamental principles of fairness in bankruptcy but also raises concerns regarding the Trustee's true motivations in selectively withholding critical information. See *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343 (1985), *In re Thorpe Insulation Co.,* 677 F.3d 869 (9th Cir. 2012), and *In re Smart World Technologies, LLC,* 423 F.3d 166 (2d Cir. 2005).

12. Given the vast **records submitted by the Debtor in this case,** it was unreasonable for the Trustee to **assert fraud without first requesting additional information from Movants.** The omission of these details from the **Adversary Complaint** further proves that the **Trustee deliberately suppressed exculpatory evidence to manufacture a case against Movants' personal assets and pressure them into hiring legal counsel which Movants will do once it is permissible to do so.**

13. Additionally, Movants intend to file a **Motion for Leave to Participate as Interested Parties,** if required by the Court, under **Rule 24(a) of the Federal Rules of Civil Procedure,** as we have a **direct, substantial, and legally protectable interest** in these proceedings. The Trustee's actions have personally impacted us by **interfering with our constitutional rights, financial interests, and ability to pursue independent claims.** This intervention is necessary to protect Movants' personal legal interests, which are separate from the third-party entities for which Movants are **seeking and intending to hire counsel for** per **Florida Local Rule 1074-1.** Movants' personal rights as **beneficiaries** cannot be ignored or dismissed under procedural technicalities.

## II. SELECTIVE ENFORCEMENT & SUPPRESSION OF EXCULPATORY EVIDENCE

14. The Trustee deliberately withheld material evidence, including but not limited to:

- **Evidence establishing Movants' legal standing** as **beneficiaries of the estate**, not merely as "owners and principals" as falsely represented by the Trustee in court filings. (Paragraph 17 of TRUSTEE'S MOTION TO ENFORCE AUTOMATIC STAY.) This omission was a calculated attempt to strip Movants of their personal legal rights and limit their participation in these proceedings.

- **Correspondence proving the Trustee had full knowledge** of Movants' independent claims yet improperly sought stays to obstruct them. The Trustee was fully aware that Movants were asserting personal claims against Warren Law Group, Joshua Wearmouth, Velanos, Resydency, and others, yet still took legal action to delay and suppress these valid claims.

- Through the proper lens, it becomes evident that although Movants are not representing the Insider Companies in this capacity, the Trustee's actions reflect a bad faith, retaliatory, and abusive pattern. The actions include but are not limited to:

    o The Trustee **concealed evidence in the Adversary Complaint and is still concealing evidence proving that the alleged "fraudulent transfer" of $1.1 million was actually executed by Chase Bank**, and not Movants. This was the Trustee's basis to bring the Adversary Complaint in the Trustee's Response, but was conveniently omitted from their Adversary Complaint after **Exhibit L** in Movant's REPLY TO TRUSTEE'S RESPONSE TO COMBINED MOTION FOR SANCTIONS AND PROTECTIVE ORDER AGAINST CHAPTER 7 TRUSTEE FOR RETALIATORY CONDUCT, ABUSE OF PROCESS, AND BREACH OF FIDUCIARY DUTY, hereinafter referred to as "Reply", was presented.

    o The **Chase Bank records** prove that the alleged fraudulent transfer of **$1.1 million** was executed by Chase Bank itself, a third-party, not by Movants or Movants' personal assets. The Trustee knowingly omitted these records despite their direct impact on the allegations against Movants' personal assets to further injure the Movants personally.

    o Additionally, the Trustee **misrepresented the qualifications and legal experience of Movants' former attorney, Nicolas Spigner,** to justify procedural barriers against Movants. (**Exhibits M & N** of Movant's Reply.)

15. The Trustee's deliberate withholding of this material evidence is a clear violation of **Florida Rules of Professional Conduct, Rule 4-3.3,** which prohibits attorneys from **knowingly omitting material facts to mislead the Court.** The suppression of material facts obstructed Movants' assets' ability to present a full and fair defense while allowing the Trustee to manipulate legal procedures for his benefit.

16. Furthermore, **by suppressing key exculpatory evidence, the Trustee engaged in obstruction of justice,** as defined in *Brady v. Maryland*, 373 U.S. 83 (1963), which mandates the disclosure of exculpatory evidence to prevent the miscarriage of justice. This suppression of material evidence has **directly prejudiced Movants' personal assets,** forcing them to expend substantial resources refuting claims that are based on misrepresentations and selective omissions.

17. The **Trustee intentionally omitted all exhibits submitted with Movants' complaint against Joshua Wearmouth, Velanos, Resydency, and Nordic Trust Alliance KB,** which contained **exculpatory** and **critical evidence proving contractual breaches, and misrepresentation.** This omission is not a clerical error but a **deliberate effort to mislead the Court** and suppress material facts that support Movants' claims and defenses. (**Exhibit B** of Brief.)

18. If the Trustee's actions were legitimate, they would not have engaged in an immediate campaign of **retaliatory legal threats** against Movants. Yet, the **direct sequence of events** demonstrates a clear **pattern of coercion:**

    **January 22, 2025** – Movants exercised **constitutional rights** by pursuing personal claims. **(Exhibit A** of this motion)

    **January 22, 2025** (roughly two hours later - **Exhibit B** of this motion) – A cease and desist demand email was sent to Movants personally.

    **January 24, 2025** – After good faith discussions via email, Trustee issued **personal threats of sanctions** if Movants continued pursuing their claims.

    **Within 30 minutes (Exhibit C** of this motion)– Trustee issued **multiple back-to-back demand letters** starting with a personal demand letter, following with 5 demand letters targeting Movants, again, within a 30 minute timeframe.

    **February 2025** – Trustee manipulated procedural filings to **suppress personal claims** while misrepresenting Movants' legal standing and framing to their actions as a "coincidence." i.e. Request for an Evidentiary Hearings (Doc. 276), Motions to Strike (Doc. 282 and "Doc 5 Filed 02/19/25"), Motion to Impose Automatic Stays (Doc. 296)

19. If the **Trustee's goal** was proper estate administration, they would not have needed to **immediately suppress personal claims** with a coordinated **legal attack.** Instead, these actions **prove** that the Trustee's intent was to **coerce Movants into abandoning their rights** through procedural abuse. See *Miami Herald Publishing Co. v. Ferre*, 636 F. Supp. 970 (S.D. Fla. 1985) (holding that **retaliatory legal tactics constitute abuse of process**).

---

### III. THE TRUSTEE'S FALSE STATEMENTS & BAD FAITH LITIGATION

20. The Trustee falsely claimed that **Movants' attorney, Nicolas Spigner, lacked experience in legal malpractice cases** and was unsuitable because he was based in Texas. This false statement was made **despite clear evidence in the record proving otherwise.**

21. In reality, aforementioned **Exhibit M & N** of the Reply (Fee Agreement & Testimony of Nicolas Spigner), confirms where he is licensed to practice, his experience, and his success on behalf of clients.
    - **He is licensed to practice in New York.**
    - **He has legal malpractice experience.**
    - **He has a proven track record of successfully suing attorneys on behalf of clients**, directly contradicting the Trustee's assertion that he was inexperienced.
    - **He was economically sound,** charging a contingency-based fee and $200 per hour, making him the most reasonable and cost-effective option for the estate.

22. The Trustee's false representation constitutes **perjury under Florida Statutes § 837.02 and Title 18, U.S.C. § 1621,** which criminalize making false statements in official proceedings. *United States v. Dunnigan*, 507 U.S. 87 (1993) establishes that knowingly making false statements to mislead the court is a **serious legal violation** and **grounds for sanctions.**

23. Moreover, the Trustee's actions were **not an innocent mistake** but **a deliberate and calculated effort to mislead the Court.** Their false representations about **Movants' attorney** were designed to **block Movants' access to fair representation and further suppress their ability to challenge the**

**Trustee's improper conduct.** This constitutes a clear abuse of process and a violation of **Movants' constitutional rights to due process and access to the courts.**

24. Even though Movants have not been personally sued, despite the Trustee's legal actions making it clear that the Trustee **treating them as adversaries through procedural tactics rather than direct litigation.** This is not a case where Movants have been left untouched by litigation—the Trustee has **manufactured a situation where Movants are burdened with legal expenses, forced to defend their personal rights/assets, and prevented from pursuing their claims through improper stays and procedural suppression.**

25. Moreover, the **timing of the retaliatory demand letters**—issued just two days after Movants exercised their constitutional rights—**proves that the Trustee's bad-faith litigation tactics are designed to have the same effect as direct litigation, without formally naming Movants as defendants.** Courts have consistently recognized that abuse of legal process does not require direct litigation but can arise through **misuse of procedural mechanisms to suppress an opposing party's legal rights.** See *Miami Herald Publishing Company v. Ferre*, 636 F. Supp. 970 (S.D. Fla. 1985) (holding that **misuse of legal process for intimidation or delay constitutes abuse of process, regardless of whether an actual lawsuit has been filed against the victim**).

26. A **Trustee's duty** is not to **favor certain creditors or procedural tactics**, but to **ensure that all claims—whether estate or personal—are treated fairly under the law.** Courts have repeatedly held that **fiduciaries cannot manipulate the legal process to suppress independent claims.** See *Christensen v. Jubber (In re Christensen)*, 106 F.3d 403 (10th Cir. 1997) (holding that **trustees owe fiduciary duties to all stakeholders, including individual beneficiaries**). The Trustee's obligation is to **administer the estate impartially**, not **weaponize litigation** to obstruct personal claims through **procedural tactics and selective enforcement.**

27. **Movants' complaints explicitly state that they are pursuing their personal claims, separate from any corporate or estate claims. (Exhibit A and B** of Brief) *The Trustee's continued assertion that these claims belong to the estate demonstrates either a failure to properly review/read the complaints or a deliberate attempt to mislead the Court by mischaracterizing Movants' legal position.*

28. If the Trustee truly believed that Movants had **no valid personal claims**, they would not have resorted to **immediate legal threats and procedural suppression tactics.**

   - If the Trustee was acting in good faith, they would not have needed to **threaten sanctions against individuals for pursuing independent claims.**
   - If the Trustee's actions were legitimate, they would have allowed Movants' claims to proceed on their merits rather than resorting to intimidation.
   - If the Trustee genuinely believed that the automatic stay applied to Movants' personal claims, they would have sought to stay those claims at the outset of the bankruptcy proceedings, rather than waiting until Movants exposed the inconsistency.

The Trustee's **demand letter explicitly stated:**

> *"If you continue to pursue claims that belong to the bankruptcy estate against Warren Law Group or Scott Oh, the Trustee will file a motion for sanctions against you with the Bankruptcy Court. Please govern yourself accordingly."*

   - **Why did the Trustee follow this with a coordinated wave of demand letters issued within a one half-hour period,** all strategically timed to obstruct Movants' ability to continue their personal litigation?

- **Why** did the Trustee issue **immediate threats of sanctions** imminently after Movants exercised their constitutional rights?
- **Why** did the Trustee only seek an automatic stay against personal claims against Scarinci Hollenbeck, Warren Law Group and Scott Oh after Movants pointed out that no stay had been filed in those matters?
- The pattern is clear: **If Movants had remained silent, no automatic stay would have been pursued. If Movants had backed down, no sanctions would have been threatened. However, since Movants asserted their legal rights, the Trustee engaged in retaliatory legal maneuvering against Movants' personally.**
- Thus, the **sequence of events proves deliberate coercion. If** this were simply about protecting estate assets, the Trustee would have pursued the same legal arguments without the **need to lead with immediate personal threats, misrepresentations, and procedural suppression.**

---

## IV. DAMAGES & REQUESTED SANCTIONS

29. Movants have incurred **significant damages** as a direct result of the Trustee's **bad-faith litigation tactics,** including but not limited to:

    - **Increased personal financial losses** from to be paid **attorney fees paid out-of-pocket** after being forced to retain legal counsel to counteract the Trustee's improper actions.
    - **Lost time and resources** spent addressing **fraudulent claims and retaliatory motions** instead of focusing on business operations and financial stability.
    - **Damage to Movants' ability to conduct business,** as the Trustee's **deliberate suppression of personal claims** and manipulation of court proceedings have hindered their personal financial interests.
    - **Lost time from friends and family due to the Trustee's bad faith legal tactics.**

30. Movants respectfully request that the Court **impose sanctions in the amount of $1,000,000** against the **Trustee Aaron R. Cohen, Akerman LLP, and Raye Curry Elliott** for:

    - **Bad-faith litigation,** including the misuse of legal procedures to retaliate against Movants personally.
    - **Retaliation and abuse of process,** as evidenced by the pattern of coercion and legal threats against Movants personally.
    - **Suppression of exculpatory evidence and obstruction of justice,** violating both *Brady v. Maryland*, 373 U.S. 83 (1963) and **Florida Rules of Professional Conduct, Rule 4-3.3.**
    - **Breach of fiduciary duty and selective enforcement of bankruptcy laws,** demonstrated by the Trustee's refusal to act impartially.
    - Movants are personally forced to pay out-of-pocket legal fees after being coerced into hiring attorneys due to the Trustee's selective enforcement and misrepresentations. This financial burden is a direct consequence of the Trustee's bad faith litigation and procedural abuse.
    - **This amount has increased from the previous request as the Trustee has needlessly multiplied proceedings rather than acting in good faith towards a resolution.**

31. Again, when taking a look through the proper lens, the only way the Trustee can support this case is by **continuing to suppress exculpatory evidence already submitted to the Court.** The Court cannot allow this pattern of misconduct to continue. The following key exhibits prove **Movants' good faith and the Trustee's intentional suppression of material facts orchestrated to harm the Movants:**

- **Exhibit I of Movant's** Original Motion. **(Adam Walker's Declaration)** establishes **a track record of Good Faith and Solvency,** which the Trustee deliberately ignored.

- **Exhibit J of Movant's** Original Motion. **(Examiner Report)** found **no fraud, no intent to defraud, and no evidence of insolvency,** directly refuting the Trustee's claims.

- **The $15 million Velanos Settlement Agreement,** executed before the Trustee's appointment, was **accepted by the Trustee himself,** further proving **Movants' commitment to maximizing recovery for creditors. (Exhibit 1** in *Doc. 107* of this matter.)

- Furthermore, the Settlement Agreement with Velanos is conclusive evidence that Movants fulfilled their contractual obligations under **Section 13.7 of the BELOC Agreement (Exhibit O** of the Reply.)

- The **business plans submitted in the Adversary Complaint** directly contradict the **Trustee's claim that there was no reasonably equivalent value in these transactions.**

32. Yet, despite the clear record, the **Trustee refuses to acknowledge these facts because they undermine their false narrative further injuring Movants personally.**

33. The Trustee's refusal to acknowledge this evidence is **further proof of his selective enforcement and bad-faith litigation against Movants personally.**

34. The Trustee's improper legal tactics is **forcing Movants to expend significant personal resources to defend their personal assets against de facto litigation,** even though they have not been formally named in a lawsuit. This is a clear abuse of process. The Court's initial concern about a lack of a personal lawsuit does not change the fact that **Movants were targeted, harassed, and financially burdened by the Trustee's legal tactics in a way that had the same impact as direct litigation.**

- Movants are being forced to **retain legal counsel at their own expense, redirect time and energy away from their business interests and personal lives that can't be replaced, and respond to a strategically filed Adversary Complaint that the Trustee pursued in bad faith.** Courts have routinely sanctioned attorneys and trustees for engaging in bad-faith litigation that results in financial harm to opposing parties, regardless of whether they were formally sued. See *Schwartz v. Kujawa,* 530 F.2d 982 (7th Cir. 1976) (holding that fiduciaries engaging in **bad faith or procedural manipulation** can be held **personally liable for damages resulting from their misconduct).**

- The Trustee's litigation strategy has caused direct financial harm to Movants by multiplying proceedings, and for this reason, the requested **$1,000,000 in sanctions** is necessary **not only to compensate Movants for their legal expenses and damages but also to deter future abuses of process by the Trustee against the Movants and others.**

35. The Trustee is recycling arguments previously made by the United States Trustee, which have already been defeated twice. This demonstrates a continued pattern of bad-faith litigation and an attempt to relitigate issues that have already been resolved against their personal assets.

36. Movants **request immediate sanctions** against the Trustee for their **deliberate efforts to suppress material facts, obstruct justice, and retaliate against Movants for exercising their personal legal rights.**

## Conclusion

The **Trustee's pattern of misconduct, including perjury, suppression of exculpatory evidence, and abuse of process, warrants immediate Court intervention.** Courts have repeatedly ruled that **a Trustee is not immune when their misconduct includes bad faith litigation, retaliation, or obstruction of justice,** as established in:

> -*Schwartz v. Kujawa*, 530 F.2d 982 (7th Cir. 1976) (holding that fiduciaries who engage in bad faith or improper litigation tactics can be held personally liable).
> -*In re Gorski*, 766 F.2d 723 (2d Cir. 1985) (reaffirming that Trustees abusing their authority are subject to **court-imposed sanctions and damages).**

The **Trustee's actions** constitute a **pattern of coercion and procedural abuse,** which courts have routinely recognized as sanctionable misconduct. See *Schwartz v. Kujawa*, 530 F.2d 982 (7th Cir. 1976) (holding that **bad-faith procedural tactics warrant personal liability),** and *In re Gorski*, 766 F.2d 723 (2d Cir. 1985) (finding that **trustees who suppress claims through misrepresentation can be sanctioned).**

Movants understand that it's the Court's discretion to determine the sanction amount and **urges this Court to impose significant monetary and procedural sanctions** to prevent further misconduct and **uphold the integrity of the judicial process. The record is clear, and any further delay would only serve to undermine justice. We respectfully request that the Court grant the requested relief.**

---

### V. PRAYER FOR RELIEF

WHEREFORE, **Movants respectfully request that this Court:**

> - **Grant this Motion for Sanctions against Trustee Aaron R. Cohen, Akerman LLP, and Raye Curry Elliott.**
> - **Movants request $1,000,000 in sanctions, allocated as follows:**
>    > **$500,000 for retaliation and abuse of process, including the deliberate issuance of multiple retaliatory demand letters with personal threats of sanctions to suppress personal claims.**
>    > **$ 500,000 for bad faith litigation i.e. suppression of exculpatory evidence, including but not limited to, omitted bank records, suppression of information without a protective order and misrepresentations regarding Movants' legal standing as beneficiaries further injuring Movants personally .**
> - **Acknowledge the Trustee's improper selective enforcement of stays and Adversary proceeding.**
> - **Hold the Trustee accountable for unnecessarily multiplying proceedings, suppressing exculpatory evidence, violating ethical obligations and infringement of Movants' personal constitutional claims/rights.**
> - **Refer Aaron Cohen's and Raye Elliot's misconduct for investigation.**
> - **Grant any further relief that the Court deems just and proper.**

Dated: March 3, 2025
Respectfully submitted in Good Faith,

John Michael Cohan and ~~David Hughes~~, Pro Se

## List of Exhibits – Supporting Personal Harm Claims

**Exhibit A** – Warren Law Group Pursuit Email (1:05 PM, 1-22-25)

Confirms Movants' intent to pursue personal claims against Warren Law Group, demonstrating independent legal action prior to the Trustee's retaliatory response.

**Exhibit B** – Cease and Desist (3:12 PM, 1-22-25)

Directly threatens Movants with sanctions if they continue to pursue personal claims, establishing the Trustee's coercion and bad-faith suppression of legal rights.

**Exhibit C** – Timing of Demand Letters

Demonstrates the coordinated, retaliatory issuance of demand letters within a short timeframe, targeting Movants personally and their business entities immediately after they exercised their legal rights.

Personal Demand Letter (10:01 AM, 1-24-25) – Shows direct targeting of Movants personally.

ZOOMERAL Demand Letter (10:20 AM, 1-24-25) – Coerces Movants by attacking their business interests.

Capitulum Demand Letter (10:21 AM, 1-24-25) – Further pressures Movants through their businesses.

Genie Investments II Demand Letter (10:22 AM, 1-24-25) – Demonstrates the Trustee's sweeping retaliation tactics.

Better Methods Demand Letter (10:23 AM, 1-24-25) – Expands the pressure campaign to all entities linked to Movants.

Genie's Angels Demand Letter (10:23 AM, 1-24-25) – Final demand in the series, proving intent to overwhelm and suppress Movants' legal efforts.

**Exhibit D** – Affidavit of John Michael Cohan and David Hughes

Sworn testimony detailing the timeline of events, personal harm suffered, and the Trustee's direct actions to suppress Movants' legal rights through bad-faith litigation, retaliation, and coercion.

# EXHIBIT A

| From: | John from Genie Investments |
|---|---|
| To: | cwarren@sh-law.com |
| Cc: | David from Genie Investments |
| Subject: | FW: DEMAND AND PRESERVATION OF EVIDENCE LETTERS |
| Date: | Wednesday, January 22, 2025 1:05:00 PM |
| Attachments: | Warren Law Group and Scott Oh.pdf |
| | image002.png |

Dear Mr. Warren,

We are writing in connection with the merger between Warren Law Group and Scarinci Hollenbeck, which we understand was structured as a forward merger, where Warren Law Group has been fully absorbed into Scarinci Hollenbeck.

In light of this merger, it is our understanding that Scarinci Hollenbeck has assumed all assets, obligations, and liabilities of Warren Law Group, including matters arising prior to the merger. With this understanding, we are reaching out to address significant concerns related to potential malpractice, fraud, extortion, and reputational damage stemming from actions involving Warren Law Group and Scott Oh (SO).

To ensure proper handling of these matters, we are forwarding the demand and preservation letters that were previously addressed to Warren Law Group. We ask for your confirmation that Scarinci Hollenbeck, as the successor entity, will assume responsibility for these issues and respond accordingly.

Specifically, we seek your acknowledgment of the following:

1. **Malpractice and Misconduct:**
   Any potential malpractice, fraudulent actions, or extortion that occurred prior to the merger, involving attorneys from Warren Law Group, specifically Scott Oh (SO), would now fall under Scarinci Hollenbeck's liability.

2. **Reputational Damage:**
   The reputational harm caused to us as a result of these issues is a significant concern, and we trust that Scarinci Hollenbeck will take steps to address these claims appropriately.

Please confirm receipt of this message and the forwarded documents, and let us know the appropriate point of contact at Scarinci Hollenbeck to facilitate further communication on these matters. If we do not receive the appropriate contact at Scarinci Hollenbeck to facilitate further communication by Friday 01/24/2025 5pm EST, we will escalate the matter accordingly.

We appreciate your attention to this matter and look forward to your response.

Sincerely,

**John Michael Cohan**
Genie Investments, Director

 **GENIE INVESTMENTS**

A Word of Caution to Sellers & Buyers Business is based on trust. Genie Investments (Genie) is acting solely as Consultants, Genie does not accept any liability on behalf of Sellers or Buyers or their associated Facilitators and/or Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity.

DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see: http://www.ftc.gov/privacy/glbact/glbsub1.htm

PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information.  It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.

This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.

**From:** John from Genie Investments
**Sent:** Tuesday, January 21, 2025 2:38 PM
**To:** 'Scott Oh' <scott@warren.law>
**Cc:** David from Genie Investments <dhughes@genieinvestments.com>
**Subject:** DEMAND AND PRESERVATION OF EVIDENCE LETTERS

Warren Law Group and Scott Oh,

Please see the attached correspondence.

Please respond to this email within 14 days.
Thank you.

Sincerely,

**John Michael Cohan**
Genie Investments, Director

 | GENIE INVESTMENTS

A Word of Caution to Sellers & Buyers Business is based on trust. Genie Investments (Genie) is acting solely as Consultants, Genie does not accept any liability on behalf of Sellers or Buyers or their associated Facilitators and/or Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity.

DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see: http://www.ftc.gov/privacy/glbact/glbsub1.htm

PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information.  It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.

This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.

# EXHIBIT B

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Cc:** | bkmickler@planlaw.com |
| **Subject:** | In re Genie Investments, NV, Inc. |
| **Date:** | Wednesday, January 22, 2025 3:12:29 PM |
| **Attachments:** | Warren Law Group and Scott Oh.pdf |

Mr. Cohan and Mr. Hughes,

The attorney for Warren Law Group forwarded the attached letter to me that you sent to the firm asserting a claim for legal malpractice. Any claim for legal malpractice for the firm's representation of Genie Investments NV, Inc. belongs to the bankruptcy estate and can only be asserted by the Trustee. Accordingly, please immediately cease and desist with any communications or demands to the Warren Law Group or Scott Oh. Thank you.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333 | F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

vCard | Profile



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

# EXHIBIT C

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Cc:** | bkmickler@planlaw.com |
| **Subject:** | RE: In re Genie Investments, NV, Inc. |
| **Date:** | Friday, January 24, 2025 10:01:15 AM |
| **Attachments:** | image001.png |
| | 1.24.25 letter to Hughes and Cohan.pdf |

Please see attached letter.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com


**From:** John from Genie Investments <jmcohan@genieinvestments.com>
**Sent:** Thursday, January 23, 2025 11:20 AM
**To:** Elliott, Raye (Ptnr-Tpa) <raye.elliott@akerman.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** bkmickler@planlaw.com
**Subject:** RE: In re Genie Investments, NV, Inc.

**[External to Akerman]**

Ms. Elliott,

We want to reassert that we are fully committed to cooperating with the Court and the Trustee to the fullest extent throughout this process. We also thank you for your assistance and attention to these matters, as we share the goal of ensuring the bankruptcy estate is handled fairly and equitably.

In response to your concerns regarding our personal claims against the Warren Law Group and Scott Oh, we would like to provide further clarification:

**1. Basis for Personal Claims**
While the Warren Law Group was retained to represent Genie Investments NV, Inc., our personal claims are rooted in harm that is **separate and distinct from the bankruptcy estate.** Specifically, the examiner's report acknowledged reputational harm that directly impacted us as individuals. This harm is unrelated to the corporate malpractice claims belonging to the estate.

**2. Relevant Legal Precedent**
The following case law supports our position that we are entitled to pursue personal claims:

**In re Icarus Holding, LLC, 391 F.3d 1315 (11th Cir. 2004):** This case establishes a distinction between claims belonging to the bankruptcy estate and personal claims of stakeholders, affirming that individuals retain the right to pursue personal harm that is distinct from the corporate entity.

- **Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972):** The Court ruled that a trustee cannot bring claims on behalf of individuals and cannot prevent individuals from pursuing their own distinct claims.
- **Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982):** This case reaffirms the constitutional right to due process, which guarantees individuals access to the courts to seek remedies for personal harm.
- **In re Colonial Realty Co., 980 F.2d 125 (2d Cir. 1992):** Trustees must act within the limits of their authority and cannot interfere with claims that are not part of the estate.

### 3. Response to Potential Impact on the Bankruptcy Estate

We acknowledge your concern that pursuing our claims could impact the malpractice insurance policy available to the bankruptcy estate. However, it is important to emphasize:

- **Distinct Nature of Claims:** Our claims for reputational harm are independent of the estate's claims for corporate malpractice. The trustee does not have standing to pursue damages for personal reputational harm, as such claims do not belong to the estate.
- **Rights to Personal Redress:** Denying us the ability to pursue personal claims would violate established legal principles, including our constitutional right to access the courts.
- **Allocation of Insurance Proceeds:** The allocation of insurance funds does not override our right to seek personal redress. Courts have recognized that insurance proceeds are subject to competing claims, and our claims do not diminish the trustee's authority to pursue corporate malpractice claims on behalf of the estate.
- **Certain Considerations Favor Individuals:** Courts have recognized that **certain considerations may indirectly favor individuals, particularly in cases involving personal harm or unique vulnerabilities**. For example:
  - In **Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)**, the Court underscored the importance of access to the courts as a fundamental right, especially in cases where personal harm, such as reputational damage, affects the ability of individuals to provide for themselves and their families.
  - **In re Icarus Holding, LLC** also emphasized that harm to individuals that arises from reputational or professional damage is distinct from corporate harm and must be treated separately. These legal principles affirm that individuals have the right to seek remedies for their unique circumstances, even in cases involving a bankruptcy estate.

### Conclusion

We remain committed to working collaboratively with the Trustee and the Court. At the same time, we must protect our individual rights to pursue remedies for personal harm that is not part of the bankruptcy estate. We respectfully assert that our claims are both legally valid and distinct, and we trust that they can coexist without adversely impacting the estate.

Thank you again for your assistance, and we are available to discuss this matter further to ensure clarity and alignment.

Sincerely,

---

**John Michael Cohan**
**Genie Investments, Director**

 | GENIE INVESTMENTS

A Word of Caution to Sellers & Buyers Business is based on trust. Genie Investments (Genie) is acting solely as Consultants, Genie does not accept any liability on behalf of Sellers or Buyers or their associated Facilitators and/or Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity.
DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see: http://www.ftc.gov/privacy/glbact/glbsub1.htm
PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.
This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.

**From:** raye.elliott@akerman.com <raye.elliott@akerman.com>
**Sent:** Wednesday, January 22, 2025 6:48 PM
**To:** John from Genie Investments <jmcohan@genieinvestments.com>; David from Genie

Investments <dhughes@genieinvestments.com>
**Cc:** bkmickler@planlaw.com
**Subject:** RE: In re Genie Investments, NV, Inc.

Mr. Cohan,

Thank you for email. I agree that any personal claims or causes of action that you and Mr. Hughes hold are not impacted by the Genie bankruptcy case. In fact, yesterday and today I have received emails from a few of the Debtors' creditors with copies of demand letters that you have sent them in your personal capacity and I have told each of them that the bankruptcy case does not impact any individual claims you may or may not hold against them.

I don't know what your legal counsel told you, but I don't see how you have a personal cause of action against the Warren Law Group and Scott Oh, since they were retained to represent Genie Investments and not you personally. My concern is that if you try to pursue a personal claim against the Warren Law Group, even if unsuccessful, the firm will look to its malpractice insurance policy to pay defense costs which will eat into the insurance policy limits that would otherwise be available to the bankruptcy estate when the Trustee pursues the malpractice claim on behalf of Genie. In that way, I am afraid that your attempting to pursue a personal claim against the Warren Law Group would adversely impact the bankruptcy estate.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

**From:** John from Genie Investments <jmcohan@genieinvestments.com>
**Sent:** Wednesday, January 22, 2025 5:05 PM
**To:** Elliott, Raye (Ptnr-Tpa) <raye.elliott@akerman.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** bkmickler@planlaw.com
**Subject:** RE: In re Genie Investments, NV, Inc.

**[External to Akerman]**

Ms. Elliot,

We hope this message finds you well. We are writing to clarify our intent regarding the claims we are pursuing and to ensure that we remain cooperative and aligned with the trustee's responsibilities while also protecting our individual rights.

First, we want to reaffirm that we fully respect the trustee's authority and role in managing the

claims and interests of the bankruptcy estate of Genie Investments NV, Inc. We are **not attempting to overstep this authority** or infringe upon any claims that rightly belong to the estate. Our focus is strictly on pursuing claims for the **personal harm** we have suffered, which are separate and distinct from the estate's malpractice claims.

As noted in the examiner's report, we have endured significant harm to our personal reputations. Additionally, we previously sought the trustee's assistance in addressing damaging social media posts by [Stringer], which further exacerbated this harm. These actions have caused personal damages—diminished credibility, loss of professional opportunities, and emotional distress—that are independent of the company's operations and bankruptcy estate.

After consulting with our legal counsel, we have been advised that pursuing these personal claims is appropriate and does not conflict with the trustee's exclusive authority over the estate. Our counsel has assured us that the harm we are addressing is uniquely personal and unrelated to the corporate claims. While we remain fully cooperative and respectful of the trustee's mandate, we also have a responsibility to protect ourselves and seek remedy for the harm we have individually suffered.

We deeply value the trustee's role and are committed to ensuring that our actions do not interfere with the bankruptcy proceedings. However, we respectfully request clarification on how pursuing these personal claims could be viewed as conflicting with the estate's rights, particularly given the examiner's findings about our reputational harm and the direct personal impact we have experienced.

Our intention is to work collaboratively with the trustee while safeguarding our individual rights and ensuring we can address the unique damages we have suffered. We would greatly appreciate your guidance and understanding as we navigate this matter.

Thank you for your time and attention. Please let us know if further clarification or documentation would be helpful.

**Citations:** In re Icarus Holding, LLC, 391 F.3d 1315 (11th Cir. 2004), Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972), In re Colonial Realty Co., 980 F.2d 125 (2d Cir. 1992)

Sincerely,

**John Michael Cohan**
Genie Investments, Director

 | GENIE **INVESTMENTS**

A Word of Caution to Sellers & Buyers Business is based on trust. Genie Investments (Genie) is acting solely as Consultants, Genie does not accept any liability on behalf of Sellers or Buyers

or their associated Facilitators and/or Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity.

DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710   AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see: http://www.ftc.gov/privacy/glbact/glbsub1.htm

PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information.  It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.

This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.


**From:** raye.elliott@akerman.com <raye.elliott@akerman.com>
**Sent:** Wednesday, January 22, 2025 3:12 PM
**To:** John from Genie Investments <jmcohan@genieinvestments.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** bkmickler@planlaw.com
**Subject:** In re Genie Investments, NV, Inc.

Mr. Cohan and Mr. Hughes,

The attorney for Warren Law Group forwarded the attached letter to me that you sent to the firm asserting a claim for legal malpractice. Any claim for legal malpractice for the firm's representation of Genie Investments NV, Inc. belongs to the bankruptcy estate and can only be asserted by the Trustee. Accordingly, please immediately cease and desist with any communications or demands to the Warren Law Group or Scott Oh. Thank you.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

vCard | Profile

Akerman Logo

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Subject:** | Zoomeral, Inc. |
| **Date:** | Friday, January 24, 2025 10:20:44 AM |
| **Attachments:** | 1.24.25 letter to Zoomeral.pdf |

Please see the attached letter.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333 | F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com


vCard | Profile



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments |
| **Subject:** | Capitulum, LLC |
| **Date:** | Friday, January 24, 2025 10:21:43 AM |
| **Attachments:** | 1.24.25 letter to Capitulum.pdf |

Please see attached letter.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

vCard | Profile



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Subject:** | Genie Investments II, LLC |
| **Date:** | Friday, January 24, 2025 10:22:23 AM |
| **Attachments:** | 1.24.25 letter to Genie Investments II.pdf |

Please see attached letter.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

vCard | Profile



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Subject:** | Better Methods LLC |
| **Date:** | Friday, January 24, 2025 10:23:05 AM |
| **Attachments:** | 1.24.25 letter to Better Methods.pdf |

Please see attached letter.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333 | F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

vCard | Profile



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Subject:** | Genie"s Angels, LLC |
| **Date:** | Friday, January 24, 2025 10:23:52 AM |
| **Attachments:** | 1.24.25 letter to Genie"s Angels.pdf |

Please see attached letter.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com

vCard | Profile



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

# EXHIBIT D

**AFFIDAVIT OF JOHN MICHAEL COHAN AND DAVID HUGHES**

**IN SUPPORT OF MOTION FOR SANCTIONS**

STATE OF FLORIDA
COUNTY OF DUVAL

We, **John Michael Cohan** and **David Hughes**, being of sound mind and over the age of eighteen, swear under penalty of perjury that the following is true and correct based on our personal knowledge, belief, and direct experience with the matters stated herein.

---

### I. INTRODUCTION

1. We submit this affidavit in support of our **personal Motion for Sanctions** against **Trustee Aaron R. Cohen, Akerman LLP, and Raye Elliott** for their deliberate misconduct, including **bad-faith litigation, abuse of process, retaliation, and unlawful suppression of our personal claims.**

2. The Trustee's **intentional acts of coercion and procedural abuse** have inflicted severe **financial harm, emotional distress, reputational damage, and significant time loss,** affecting our ability to conduct business and exercise our constitutional rights.

---

### II. TIMELINE OF RETALIATORY ACTIONS

3. On **January 22, 2025,** we submitted a **proposed settlement agreement** to Warren Law Group regarding our **personal claims for professional negligence, reputational damage, and financial harm** caused by their legal malpractice.

4. **Within two hours, the Trustee issued a cease-and-desist letter** regarding our pursuit of our individual constitutionally protected claims.

5. This demand was made in **retaliation for exercising our legal rights** and was designed to **coerce us into abandoning our valid personal claims.**

6. The Trustee's actions **misrepresented our claims as estate property** despite clear legal precedent confirming our **right to pursue individual damages separate from the bankruptcy estate.**

7. On **January 24, 2025,** the Trustee escalated their retaliatory conduct by sending **six separate demand letters within a 30-minute window,** a deliberate attempt to overwhelm and intimidate us.

8. The Trustee's **threat was immediate and direct retaliation** against us for **exercising our legal rights** to pursue **damages for harm suffered personally,** which has no connection to the bankruptcy estate.

9. The Trustee further stated that **our personal claims could reduce the estate's recovery,** implying that they intended to use his position as a trustee **to block us from recovering damages in order to benefit the estate at our expense.**

10. We responded to the Trustee, **asserting that our claims are personal in nature, based on harm to us as individuals, and not subject to estate control.**

11. **Despite making serious threats, the Trustee failed to follow through,** demonstrating that their letter had **no legal basis and was purely retaliatory, designed to intimidate us into surrendering our constitutional rights.**

12. These letters had **no legal merit** and were part of a **coordinated effort to obstruct our access to justice** and force us into unnecessary legal defense.

---

## III. EMOTIONAL DISTRESS AND SIGNIFICANT TIME LOSS

9. The Trustee's **improper legal maneuvers** have caused us **severe emotional distress, anxiety, and financial hardship,** including:

   - o **Mental and emotional strain** from being subjected to threats of legal sanctions.

   - o **Constant fear and uncertainty** about our ability to defend ourselves due to the Trustee's abuse of power.

   - o **Disruption of our professional and personal lives,** causing losing precious time with family, exhaustion, sleepless nights, and severe stress.

   - o **Damage to our ability to conduct business,** as we have been forced to divert extensive time and resources toward counteracting these retaliatory tactics.

10. As a result of these **deliberate efforts to suppress our legal rights,** we have suffered **immeasurable loss of time,** including:

   - **As of 3-3-2025, over 200 hours has been spent between us responding to baseless legal filings, demand letters, and procedural roadblocks. (attached as Exhibit 1)**

   - **Time away from our businesses, families, and personal obligations,** leading to **financial setbacks and professional instability.**

   - **Lost opportunities to engage in income-generating activities** due to our forced focus on legal defense.

---

## IV. REPUTATIONAL DAMAGE & FINANCIAL LOSS

11. The trustee has falsely accused our personal assets of **fraud and fraudulent transfers** in **open court proceedings,** which are **public record and available online.** These statements have further **damaged our reputations, credibility, and ability to conduct business.**

12. As a direct result of these false statements, we received an **email from creditors (attached as Exhibit 2)** addressed to us personally stating they were prepared to take action against us personally **due to the trustee's accusations.**

13. These **public misrepresentations** have caused:

   - **Irreparable harm to our professional reputations,** as potential business associates and clients have become unwilling to work with us.

- **Increased financial distress,** as creditors are using the trustee's false allegations as a basis to escalate claims against us.

- **Severe emotional distress,** knowing that our personal assets and names have been publicly linked to fraudulent activity **without evidence or due process.**

14. The trustee's **reckless and defamatory statements** were intended to cause us harm, as demonstrated by their **immediate and tangible impact** on our financial standing.

15. **Our personal reputations are separate from any business entity and are constitutionally protected under the law**

16. The Trustee, as a court-appointed fiduciary, **has no authority to interfere with or obstruct our personal claims,** yet they chose to do so **to intimidate, coerce, and retaliate against us.**

---

## V. BREACH OF FIDUCIARY DUTY AND ABUSE OF PROCESS

13. The Trustee's conduct constitutes a **gross violation of fiduciary duties,** including:

- **Misrepresenting the nature of our claims** to the Court and opposing parties.

- **Suppressing material exculpatory evidence,** including financial records that disprove their allegations.

- **Engaging in selective enforcement,** weaponizing procedural rules to silence and intimidate us while failing to hold others accountable.

14. The Trustee knowingly acted in **bad faith,** as demonstrated by:

- **Failing to provide any merit-able legal authority** justifying their interference in our personal claims.

- **Refusing to correct false statements** made to the Court regarding our legal standing.

- **Orchestrating a retaliatory legal strategy** designed solely to continuously burden us with legal expenses and procedural hurdles.

15. The Trustee's actions constitute **abuse of process and bad faith litigation** because they misused his position to **retaliate against individuals exercising their rights.**

16. Their actions violate **our due process rights** by attempting to obstruct our ability to seek personal redress in a court of law.

17. **The Trustee's fiduciary duty is to the estate, not to suppress legitimate third-party claims for the benefit of the estate.** Their interference **breaches their duty as a Trustee** under federal bankruptcy law.

18. **The Trustee falsely suggested that our personal claims would take away from estate recoveries, when in reality, if the insurance company combines estate and personal claims into a single payout, we have a legal right to our portion of any settlement.**

19. The Trustee's failure to ensure that **the Warren Law Group's liability insurance treats estate claims and personal claims separately** further demonstrates his bad faith intent.

---

## VI. REQUEST FOR SANCTIONS

20. We formally request that the Court impose **severe monetary sanctions** against the Trustee, Akerman LLP, and Raye Elliott in the amount of **$1,000,000**, to reflect:

- **The financial losses we have suffered** due to their retaliatory actions.

- **The emotional and reputational harm caused** by their suppression of our personal claims.

- **The need to deter future misconduct ("bankruptcy hardball") by court-appointed trustees** who abuse their power.

21. The Trustee's actions were **not a matter of legal oversight—they were intentional, retaliatory, and designed to obstruct our access to justice.**

22. We urge the Court to **send a clear message that abuse of process and bad-faith litigation tactics will not be tolerated** in bankruptcy proceedings.

---

## VII. CONCLUSION

23. The Trustee knowingly engaged in **retaliation, coercion, and suppression of our constitutional rights** to seek redress for personal harm.

24. His **bad-faith litigation tactics** warrant significant judicial intervention and immediate sanctions to prevent further injustice.

25. This Court has the authority to hold him **accountable for these violations,** and we respectfully request the **imposition of substantial sanctions** to remedy the harm caused.

We swear in Good Faith under **penalty of perjury under the laws of the United States** that the foregoing is true and correct to the best of our knowledge and belief.


**Executed on this 3rd day of March, 2025.**

SIGNATURES

John Michael Cohan, Pro Se

David Hughes

**David Hughes, Pro Se, Electronically Executed**

# EXHIBIT 1

**Ch. 7 Trustee Litigation Timecard:
John Michael Cohan**

| Date | Hours Worked |
|---|---|
| 2025-01-22 | 1.4 |
| 2025-01-23 | 3.2 |
| 2025-01-24 | 2.7 |
| 2025-01-26 | 6.1 |
| 2025-01-29 | 5.2 |
| 2025-02-01 | 3.8 |
| 2025-02-03 | 4.9 |
| 2025-02-06 | 2.3 |
| 2025-02-08 | 5.7 |
| 2025-02-11 | 4.5 |
| 2025-02-13 | 3.1 |
| 2025-02-16 | 6.0 |
| 2025-02-19 | 3.4 |
| 2025-02-22 | 5.0 |
| 2025-02-24 | 6.0 |
| 2025-02-25 | 1.8 |
| 2025-02-27 | 4.8 |
| 2025-03-01 | 5.3 |
| 2025-03-03 | 4.1 |
| **TOTAL** | **109.6 Hours** |

**Ch. 7 Trustee Litigation Timecard:
David Hughes**

| Date | Hours Worked |
|---|---|
| 2025-01-22 | 1.2 |
| 2025-01-23 | 2.9 |
| 2025-01-24 | 3.5 |
| 2025-01-26 | 2.1 |
| 2025-01-29 | 5.3 |
| 2025-02-01 | 4.1 |
| 2025-02-03 | 3.4 |
| 2025-02-06 | 1.8 |
| 2025-02-08 | 4.8 |
| 2025-02-11 | 2.7 |
| 2025-02-13 | 3.3 |
| 2025-02-16 | 4.4 |
| 2025-02-19 | 2.9 |
| 2025-02-22 | 4.2 |
| 2025-02-24 | 6.0 |
| 2025-02-25 | 1.9 |
| 2025-02-27 | 5.0 |
| 2025-03-01 | 3.0 |
| 2025-03-03 | 4.6 |
| **TOTAL** | **94.2 Hours** |

## Final Calculation

- **John Michael Cohan Total Hours: 109.6**
- **David Hughes Total Hours: 94.2**
- **Total Hours Combined: 203.8**
- **Hourly Rate: $1,000**
- **Total Value: $203,800**

The hourly rate of **$1,000 per hour** reflects a **reasonable and conservative estimate** of the value of time lost due to the Trustee's actions. As executives of multiple companies, our time is highly valuable, and this rate is actually **below what could have been justified** given our roles,

responsibilities, and industry standards. In many professional settings, executive-level compensation far exceeds this amount.

**Supporting Data:**

- A **2023 Equilar study** found that **median CEO compensation in S&P 500 companies was $16.3 million annually**, equating to approximately **$5,216 per hour** assuming a 60-hour workweek.
- The **Economic Policy Institute (EPI)** reports that **CEOs earn 344 times more than the average worker**, placing many executive salaries at over **$21 million per year.**
- **Major, Lindsey & Africa's 2024 legal industry report** found that **U.S. law firm partners now bill an average of $1,114 per hour**, with some exceeding **$2,500 per hour.**
- Top management consultants at firms like **McKinsey and Boston Consulting Group** regularly bill **$1,000–$5,000 per hour** for their expertise.

Given these benchmarks, the **$1,000 per hour rate is not only reasonable, but conservative** compared to compensation for executives, attorneys, and consultants handling high-level financial and legal matters.

# EXHIBIT 2

**From:** Genie Victims
**To:** John from Genie Investments; David from Genie Investments
**Subject:** Cease and Desist: Genie Creditors
**Date:** Tuesday, February 18, 2025 4:00:20 PM

Genie Creditors

**February 18, 2025**

Mr. David Hughes
Mr. John Michael Cohen
PO Box 60443
Jacksonville, FL 32236

**Re: Breach of Contract, Breach of Fiduciary Duty, Fraud, Malicious Intent, Harassment, and Additional Damages**

Mr. Hughes and Mr. Cohen,

We are writing in direct response to your frivolous and unfounded Demand Letters, which we firmly believe is part of a calculated and malicious scheme aimed at damaging our reputations, causing unnecessary distress, with continued attempts to defraud victims through your longstanding financial scheme. Your reckless actions and deceitful conduct left your victims no choice but to advise you that, should you persist in your baseless and unmerited pursuit of legal actions, we will file a counterclaim against both of you personally as well as all assets under your control for the following:

1. **Breach of Contract**
   You have willfully and knowingly breached the terms of our contractual agreements. Despite repeated warnings and reasonable efforts to resolve this matter amicably, you have egregiously failed to fulfill your financial 'obligations' to victims (as stated in a recorded conversation with Mr. Hughes), causing significant harm to both personal and professional reputations. Your deliberate misconduct is evidenced by multiple recorded conversations and voice mails between victims and Mr. Hughes as well as hours of recorded conversations with various brokers where they are affirming your willful intent to breach your contractual duties and defraud many in your financial schemes.

2. **Breach of Fiduciary Duty**
   As individuals entrusted with specific fiduciary responsibilities towards us, you have grossly neglected your duties, acting in a manner that is not only reckless but in direct violation of the trust placed in you and your company. Your failure to act in good faith has caused substantial financial and emotional damages to your victims. Your conduct reflects a complete disregard for your obligations and has further exacerbated the harm inflicted.

3. **Fraud and Intent to Defraud**
   The overwhelming evidence we have demonstrates that your actions were not merely negligent, but wholly deliberately fraudulent in nature. Your years long pattern of

deceitful conduct was designed with a clear intent to defraud business owners for your own financial gain. This intent is substantiated by a lawsuit filed against you by the Chapter 7 Trustees' attorney, detailing your fraudulent activities, including illicit insider loans to all of your various shell companies. The direct consequences of your fraudulent actions have led to irreparable damage, including lost business opportunities and a severe state of financial instability.

4. **Pain and Suffering**

   The malicious actions and deceptive practices you have engaged in have caused us severe emotional distress. The continuous mental anguish, stress, and psychological harm inflicted by your behavior has severely disrupted both personal and professional lives of your victims.

5. **Loss of Business and Opportunities**

   As a direct result of your deliberate actions, we have suffered the loss of significant business opportunities, lucrative contracts, and strategic partnerships. These losses, directly attributable to your fraudulent intent and breach of contract, have irreversibly impacted our livelihood and professional standing.

6. **Malicious Intent**

   It is evident that your actions were not mere misunderstandings or errors in judgment. Rather, your behavior has been consistently and willfully malicious and designed to cause maximum harm. Your blatant and longstanding disregard for honesty and integrity throughout this matter is clear, as you have defrauded more than fifty victims over 5 years, none of whom have received the funds contractually owed to them, nor have any victims been made whole.

7. **Harassment**

   In addition to the aforementioned breaches, your conduct has escalated to harassment. Your threatening letter and unwelcome communications, are deemed harassment, intentionally aimed at disrupting both professional and personal lives of victims. This is wholly unacceptable and will not be tolerated. It seems that the only business Genie has been in would include: 1-solicitation of new business under the guise of having the ability to fund loans, when not one loan over the course of 5 years was ever funded. 2-continually harassing and threatening the victims of your financial crimes into silence so as to continue to defraud additional business owners 3-requesting additional payments to ensure victims are 'first in line' to recoup money (Letter dated October 2023) 4-sending out baseless demand letters for more money from your victims 5-suing victims

**Legal Action and Remedies**

Given the egregiousness of your actions, we are ready to pursue the following remedies should you file a claim:

- Full compensation for all financial losses incurred, including lost business, lost opportunities, and consequential damages.
- Compensation for the emotional distress, pain and suffering, and mental anguish caused by your actions.

- Immediate cessation of all harassment and unwarranted communication.
- Punitive damages sufficient to deter any future wrongful conduct.
- Any other remedy the Court deems appropriate.

We strongly advise that you reconsider your position, cease any further unwarranted legal filings, and take immediate responsibility for the damages you have caused. Should you fail to act appropriately and swiftly, we will ensure that this matter is pursued with unrelenting vigor through the legal system. We have begun to take every available step to protect our interests and will not hesitate to use the full force of the law to hold you accountable.

Should you choose to ignore the gravity of this matter, rest assured that we will pursue all avenues available to secure justice.

Sincerely,
Genie Creditors