**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC.,            Case No.: 3:24-bk-00496-BAJ

        Debtor.                                      Chapter 7

_____/

**TRUSTEE'S RESPONSE TO MOTION FOR SANCTIONS AGAINST CHAPTER 7 TRUSTEE, AKERMAN LLP, AARON COHEN, AND RAYE ELLIOTT FOR BAD FAITH LITIGATION, ABUSE OF PROCESS, SUPPRESSION OF EXCULPATORY EVIDENCE, RETALIATION, AND BREACH OF FIDUCIARY DUTY**

Aaron R. Cohen, Chapter 7 Trustee (the "Trustee"), by and through his undersigned counsel, files his Response to the Motion for Sanctions Against Chapter 7 Trustee, Akerman LLP, Aaron Cohen, and Raye Elliott for Bad Faith Litigation, Abuse of Process, Suppression of Exculpatory Evidence, Retaliation, and Breach of Fiduciary Duty (Doc. 322) (the "Second Sanctions Motion") filed by John Michael Cohan ("Cohan") and David Hughes ("Hughes").

There is no basis in fact or law to impose sanctions against the Trustee or his counsel. As a factual matter, the Trustee and his counsel have acted in accordance with the rules and standards for bankruptcy trustees in conducting due diligence on claims held by the estate and bringing legitimate claims against the recipients of transfers from the Debtor. As a legal matter, both the Trustee and his counsel have qualified immunity from sanctions for all acts taken within the scope of their duties which is the case here. The Second Sanctions Motion is rife with misstatements of fact and law and is, at bottom, completely meritless and frivolous.[1]

---

[1] Indeed, on March 6, 2025, Cohan and Hughes filed another motion for sanctions (their third) against the Trustee's counsel and her law firm for filing a copy of the Court's Interim Order on Motion to Enforce Automatic Stay and a notice of appearance in the Malpractice Case (as defined below). Also on March 6, 2025, Cohan and Hughes filed yet another motion for sanctions against the Trustee's attorney in the United States District Court in the malpractice action, as well as a motion to strike her notice of appearance and a motion to disqualify her as counsel to the Trustee. All these frivolous and meritless pleadings do is deplete estate assets by forcing the Trustee to prepare and file

**Factual Background**

1. Cohan and Hughes are the owners and former principals of the Debtor, with each owning 50% of the Debtor. (Debtor's Statement of Financial Affairs (Doc. 40) at p. 15).

*Loans to Insider Companies*

2. In 2022 and 2023, the Debtor entered into loan agreements with several companies owned by Cohan and Hughes including Zoomeral, Inc., Capitulum Homes, LLC, Genie Investments II, LLC, Better Methods, LLC, and Genie's Angels, LLC (collectively, the "Insider Companies") (Chapter 11 Examiner's Report at pp. 29-45). The Trustee has copies of the loan agreements and has reviewed them. Each of the loan agreements provided for an interest rate of only .1% and that the loans would be repaid in one balloon payment in seven years with the option to extend the loans given solely to the Insider Companies. According to the Chapter 11 Examiner's Report, which was based on her review of the Debtor's bank statements, the Debtor transferred over $3.6 million to the Insider Companies. (*Id.*). Given that the purported loans were made to insiders and that the loans were not commercially reasonable, the Trustee believes that the $3.6 million transferred to the Insider Companies constitute fraudulent transfers. Indeed, as the Chapter 11 Examiner's Report states,

> 230. According to my review of the Debtor's books and records, significant transfers occurred between the Debtor and related companies within two years and one year of the filing of the bankruptcy petition . . . . 231. The Debtor has classified the payments to these companies as loans in its books and records. As previously stated, the terms of the loans to these entities are far outside the ordinary course that the respective companies would obtain through traditional loans. . . . 233. It appears that potential distributions to the creditors of this estate may result from the avoidance of potential preferential transfers and potential fraudulent transfers to insiders and potential claims against professionals. Without the appointment of an independent fiduciary, it is unlikely

---

responses to the daily barrage of pleadings filed by Cohan and Hughes. In fact, a majority of the Trustee's attorney's time in recent weeks has been devoted to responding to things Cohan and Hughes have done or filed.

> that the Debtor-in-Possession can independently pursue avoidance of potential preference actions and potential fraudulent transfers against insiders to maximize recoveries for the creditors of this estate.

Chapter 11 Examiner's Report at ¶¶ 230-231, 233-234.

3. After appointment of the Trustee, the Trustee and his counsel began their review of the transfers to the Insider Companies. The Chapter 7 Section 341 Meeting of Creditors was held on September 19, 2024. The Trustee's counsel took a Rule 2004 examination of the Debtor on October 30, 2024. (Doc. 245).

4. The Debtor's four bank accounts with Chase Bank were closed on August 21, 2023 and contained $1,166,478 at the time they were closed. On December 11, 2024, the Trustee's counsel requested from the Debtor's counsel documents showing the disposition of the funds in the Debtor's bank accounts at closing to determine whether the funds were transferred to Insider Companies. The Trustee wanted to determine the disposition of these funds before filing his adversary complaint against the Insider Companies. On December 13, 2024, Debtor's counsel sent bank statements for Better Methods, LLC ("Better Methods") but Trustee's counsel was unable to trace the funds from the Debtor's Chase Bank accounts to the Better Methods' accounts. On December 19, 2024, Trustee's counsel informed the Debtor's counsel that the funds in the Debtor's bank accounts could not be traced to the Better Methods' accounts with the documents provided and again requested documents showing the disposition of the Debtor's funds. On January 2, 2025, the Trustee's counsel followed up with the Debtor's counsel on this. The Debtor's attorney responded on January 14, 2025 explaining that $1.1 million had been debited by Chase Bank for a wire transfer recall made by one of the Debtor's borrowers, Linger Chu. That same day, the Trustee's counsel asked for documentation showing that the $1.1 million went to the borrower because the Debtor's Chase Bank statements only showed that the funds were debited from the

account. The Debtor's attorney never responded to that request. Given, the lack of response, the Trustee concluded that the Debtor would not or could not provide those documents and therefore issued a subpoena to Chase Bank on January 24, 2025 for records showing the disposition of the $1.1 million as well as the remaining funds in the Debtor's bank accounts. (Doc. 273).

5. During the timeframe of the Section 341 meeting of creditors, the Rule 2004 examination, and the attempts to obtain information about the funds in the Debtor's bank accounts, the Trustee held off on filing the adversary complaint against the Insider Companies knowing that, once the complaint was filed, the Debtor's principals, Hughes and Cohan, would likely stop cooperating with the Trustee's requests for information. The same day the Trustee issued the subpoena to Chase Bank, January 24, 2025, the Trustee's counsel sent demand letters to the Insider Companies for return of the transfers made by the Debtor and requested a response within 10 days. The Trustee did not receive a response to the demand letters to the Insider Companies and therefore filed his adversary complaint against them on February 6, 2025.

6. After the demand letters were sent to the Insider Companies, on January 27, 2025, Hughes and Cohan on behalf of the Insider Companies filed their Combined Motion for Sanctions and Protective Order Against Chapter 7 Trustee for Retaliatory Conduct, Abuse of Process, and Breach of Fiduciary Duty (Doc. 274) (the "First Sanctions Motion") and on January 29, 2025 their Motion to Compel Disclosure of Trustee Communications and Administrative Decisions (Doc. 277).

7. As is clear from this timeline, the Trustee did not "retaliate" against Cohan and Hughes by sending the demand letters to the Insider Companies and filing the adversary complaint against the Insider Companies. Instead, as with any litigation, the Trustee first completed his due diligence on the transfers to the Insider Companies by reviewing the Chapter 11 Examiner's Report

4

80342805;1

in detail, reviewing the Debtor's bank statements, the Insider Companies' loan documents, and requesting additional and follow-up information from the Debtor's attorney. The timing of the demand letters had nothing to do with any actions by Cohan and Hughes, but instead was determined by the fact that the Trustee concluded that no additional information regarding the disposition of the funds in the Debtor's bank accounts would be coming from the Debtor.

*Malpractice Claim*

8. On its Schedules, the Debtor listed a malpractice claim against the Warren Law Group as an asset of the bankruptcy estate. (Schedule A/B (Doc. 39) at p. 13). The Warren Law Group represented the Debtor in connection with the Debtor's joint venture agreement with Velanos Principal Capital. After the Trustee was appointed, he obtained documents related to the malpractice claim from the Debtor's attorneys. The Debtor had retained counsel, Nicholas Spigner to pursue the malpractice claim before this case was converted to Chapter 7. The Trustee and his counsel interviewed Mr. Spigner who told the Trustee that his practice was primarily focused on personal injury plaintiff's cases. In answer to the Trustee's questions, Mr. Spigner stated that he had never litigated a legal malpractice trial through to verdict before. Although admitted to the New York Bar, Mr. Spigner is located in Texas. After interviewing Mr. Spigner, the Trustee determined that the bankruptcy estate would be better served by retaining new malpractice counsel with more experience in legal malpractice cases who was located in New York, since any malpractice action would have to be brought in New York where the Warren Law Group was located and pursuant to the terms of the engagement agreement between the Warren Law Group and the Debtor. The Trustee has not misrepresented Mr. Spigner's experience as stated in the Second Sanctions Motion.

9. The Trustee began to search for and interview potential malpractice counsel in New York. The Trustee also served a subpoena on the Warren Law Group in order to perform some due diligence on the malpractice claim. (Doc. 256)[2]. The Warren Law Group served its response to the subpoena on December 26, 2024 with additional documents being provided on January 8, 2025. After review of the documents from the Warren Law Group, the Trustee has contacted and interviewed five different law firms who handle legal malpractice cases in New York.

10. On January 22, 2025, the Trustee's counsel was notified by counsel for the Warren Law Group that it had received a demand letter from Cohan and Hughes demanding $4 million for their personal financial losses, "reputational damage," "emotional and professional strain", and "breach of trust" resulting from the Warren Law Group's representation of the Debtor. The Trustee's counsel immediately contacted Cohan and Hughes and informed them that the malpractice claim against the Warren Law Group was an asset of the bankruptcy estate to be administered by the Trustee and requesting that they immediately cease and desist from asserting claims for legal malpractice against the Warren Law Group. The Trustee's counsel acknowledged that Cohan and Hughes were free to assert any personal claims they hold against third parties, but that their attempt to assert personal claims against the Warren Law Group, even if unsuccessful, would adversely impact the bankruptcy estate because the firm would look to its legal malpractice insurance policy to pay defense costs, which would deplete any recovery from the same policy for the bankruptcy estate.

11. On January 24, 2025, the Trustee's counsel sent a letter to Cohan and Hughes reiterating that any claims for malpractice against the Warren Law Group belonged to the

---

[2] The Subpoena attached to Doc. 256 reflects an issue date of October 24, 2024 and a response date of November 25, 2024. After that Subpoena was served, the Trustee was informed that the wrong law firm had been served and therefore a new subpoena was issued on November 25, 2024 with a response date of December 26, 2024.

80342805;1

bankruptcy estate and could only be asserted by the Trustee and informing them that if they continued to pursue claims that belonged to the bankruptcy estate, the Trustee would file a motion for sanctions.

12. On January 27, 2025 and in response to the demand letters to the Insider Companies and the correspondence regarding the malpractice claim against Warren Law Group, the Trustee received two letters from Cohan and Hughes. The letters contained the same arguments as the First Sanctions Motion and demanded that the Trustee pay Cohan and Hughes $500,000 to "settle" claims Cohan and Hughes assert against the Trustee.

13. Before the Trustee could even respond to the January 27 letters from Cohan and Hughes, they filed the First Sanctions Motion seeking sanctions against the Trustee in the amount of $750,000 and a protective order prohibiting the Trustee from pursuing claims against the Insider Companies.

14. After the Court denied the First Sanctions Motion (Doc. 310), Cohan and Hughes have now filed the Second Sanctions Motion in their individual capacities and this time included the Trustee's counsel and her law firm. The Second Sanctions Motion also appears to assert claims against the Trustee and his counsel in their individual capacities, although the Motion is unclear on that point.

### *Cohan and Hughes' Lawsuits Against Velanos and the Warren Law Group*

15. On February 17, 2025, the Trustee learned that Cohan and Hughes had filed lawsuits against Velanos Principal Capital (the "Velanos Lawsuit"), the Warren Law Group and its attorney who represented the Debtor (the "Malpractice Lawsuit"), in addition to a number of lawsuits against certain creditors of the Debtor. On February 19, 2025, the Trustee filed a Motion

7

to Enforce Automatic Stay (Doc. 296) seeking to enforce the automatic stay with respect to the lawsuit filed against Velanos in the Duval County Circuit Court.

16. At the hearing held on the Motion to Enforce Automatic Stay on February 25, 2025, when the Court ordered briefing on the Motion and the scheduling of a trial, the Trustee's counsel made an *ore tenus* motion to include the Malpractice Lawsuit in the briefing on the Motion for purposes of judicial efficiency since the Trustee intended to file a second motion with respect to the Malpractice Lawsuit.

## **Memorandum of Law**

As detailed above, there is no basis in fact or law for the allegations and relief requested in the Second Sanctions Motion. The Trustee has a duty to pursue any and all claims held by the bankruptcy estate, including potential claims against the Insider Companies. The demand letters sent to the Insider Companies were not "retaliatory actions" by the Trustee. As detailed above, the timing of the demand letters was related to the Trustee's attempts to discern the disposition of the funds in the Debtor's bank accounts and not a retaliation for actions taken by Cohan and Hughes.

Furthermore, the claim for legal malpractice against the Warren Law Group and actions against Velanos clearly belongs to the bankruptcy estate and not Cohan and Hughes. The Warren Law Group was engaged to represent the Debtor in its transaction with Velanos – the law firm did not represent Cohan and Hughes in their individual capacities. Therefore, the legal malpractice claim belongs to the Debtor and not Cohan and Hughes. Similarly, claims against Velanos belong to the bankruptcy estate because both the joint venture agreement with Velanos and the Settlement Agreement with Velanos were entered into by the Debtor and not Cohan and Hughes individually. These issues will be briefed more fully in the briefing on the Trustee's Motion to Enforce Automatic Stay.

Cohan and Hughes are prohibited from seeking sanctions against the Trustee for acts undertaken in his official capacity as bankruptcy trustee. It is black letter law that bankruptcy trustees are entitled to qualified immunity for any actions that are taken within the scope of the trustee's official duties. *See Matter of Ondova Ltd. Co.*, 914 F.3d 990, 993 (5th Cir. 2019) (holding that bankruptcy trustees are entitled to qualified immunity for actions that fall within the scope of their official duties); *In re McKenzie*, 716 F.3d 404, 413 (6th Cir. 2013) ("[A] bankruptcy trustee is ordinarily entitled to quasi-judicial (or derivative) immunity from suit by third parties for actions taken in his official capacity."); *Sierra v. Seeber*, 966 F.2d 1444 (4th Cir. 1992) (same); *In re Lickman*, 297 B.R. 162 (Bankr. M.D. Fla. 2003) (trustees have immunity for acts taken that are within the scope of their duties in administering the estate); *In re Clearwater Bay Marine Service, Inc.*, 236 B.R. 285 (Bankr. M.D. Fla. 1999) (same).

The doctrine of trustees' immunity has also been applied to motions seeking sanctions against a trustee. In *In re Solar Financial Services, Inc.*, 255 B.R. 801 (Bankr. S.D. Fla. 2000), the Chapter 7 trustee filed an accounting malpractice action against the Debtor's former accountants in state court. The accountants filed a motion for sanctions against the trustee for abandoning certain records, which the trustee felt were duplicative of other files in storage, because the accountants argued they were entitled to review the records. The motion for sanctions was removed to the bankruptcy court. After explaining the general rule that trustees are entitled to qualified judicial immunity for acts taken within their authority as an officer of the court, the court held that the doctrine applied to the accountants' motion for sanctions. The accountants had attempted to argue that its motion for sanctions was not a "suit" against the trustee and therefore the doctrine did not apply. The court rejected that argument stating that the "essence of the Barton Doctrine is to protect the trustee who is carrying out his duties to administer the case and to protect the integrity

9

of the Court." 255 B.R. at 805. Since the Trustee abandoned the records in his official capacity as trustee and followed the requisite notice requirement for abandonment of the records, the *Barton*[3] doctrine prohibited sanctions against the Trustee.

The doctrine of qualified immunity also extends to the Trustee's attorney and her law firm. *Ondova Ltd. Co.*, 914 F.3d at 994 (affirming the district court that qualified immunity extends to trustee's attorneys under a derivative theory of judicial immunity). *See also In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("We hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."); *In re Foster*, No. 12-43804-ELM, 2020 WL 6390671, at *15 (Bankr. N.D. Tex. Oct. 30, 2020), *aff'd sub nom. Matter of Foster*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023) (explaining that bankruptcy trustee's attorneys employed with court approval are also entitled to immunity from suits).

In sending demand letters to and filing an adversary proceeding against the Insider Companies, in acting to preserve the Debtor's malpractice claim and claims against Velanos as property of the estate, the Trustee and his attorney were acting in their official capacity and therefore are immune from sanctions. As detailed above, the Trustee and his counsel have not engaged in "selective enforcement" of actions, have not suppressed exculpatory evidence, have not made false statements, or engaged in bad faith litigation.

---

[3] Under the *Barton* doctrine, a litigant wishing to sue a bankruptcy trustee or his court-approved attorney, including counsel, for actions taken in their official capacity in a court other than the bankruptcy court must first seek and obtain leave to file suit from the bankruptcy court. *See Barton v. Barbour,* 104 U.S. 126, 137, 26 L.Ed. 672 (1881); *Lawrence v. Goldberg,* 573 F.3d 1265, 1269 (11th Cir. 2009).

80342805;1

WHEREFORE, Aaron R. Cohen, Chapter 7 Trustee, respectfully requests that the Court deny the Second Sanctions Motion and for such other and further relief as the Court deems just and proper.

Dated: March 7, 2025

AKERMAN LLP

By: */s/ Raye C. Elliott*
Raye C. Elliott, Esq.
Florida Bar Number: 018732
Email: raye.elliott@akerman.com
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Phone: (813) 223-7333
Fax: (813) 223-2837

Attorneys for Aaron R. Cohen, Chapter 7 Trustee

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 7, 2025, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record and by U.S. Mail and email to:

| | |
|---|---|
| John Michael Cohan | David Hughes |
| 11179 Limerick Dr. | PO Box 60443 |
| Jacksonville, FL 32256 | Jacksonville, FL 32211 |
| jmcohan@genieinvestments.com | dhughes@genieinvestments.com |

*/s/ Raye C. Elliott*
Attorney