UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re:
GENIE INVESTMENTS NV INC., Debtor.
Case No.: 3:24-bk-00496-BAJ
Chapter 7



FILED INTAKE USBC
MAR 12 '25 PM 2:33

### REPLY TO TRUSTEE'S RESPONSE TO MOTION FOR SANCTIONS AGAINST CHAPTER 7 TRUSTEE, AKERMAN LLP, AARON COHEN, AND RAYE ELLIOTT FOR BAD FAITH LITIGATION, ABUSE OF PROCESS, SUPPRESSION OF EXCULPATORY EVIDENCE, RETALIATION, AND BREACH OF FIDUCIARY DUTY

**John Michael Cohan (Cohan)** and **David Hughes (Hughes)**, hereinafter "**Movants**", specially appearing pro se and submit this Reply to the Trustee's Response, exposing misrepresentations, procedural contradictions, and the Trustee's pattern of bad faith litigation.

### I. TRUSTEE'S IMMUNITY CLAIMS DO NOT PROTECT BAD FAITH CONDUCT

- **Qualified immunity does not apply to misconduct.** Trustees are only protected when acting in good faith. Here, the Trustee engaged in **suppression of evidence, selective enforcement, and retaliatory litigation.**

- **Contradictory procedural positions reveal intent to deceive.** The Trustee first claimed no discovery was needed from Movants (**Doc. 276 - Page 8 - First Paragraph**), yet now argues they lacked sufficient information before filing the Adversary Complaint (**Doc. 329 - Paragraphs 4 & 5**). These shifting positions expose misrepresentation.

1. **Trustees are not immune from liability for bad faith conduct.** The **U.S. Supreme Court** in *Mosser v. Darrow*, 341 U.S. 267, 272 (1951), held that a trustee can be **personally liable** when acting outside their fiduciary duty. Similarly, the Eleventh Circuit in *Kalikow v. Board of Trustees*, 602 F.3d 82, 92 (2010), ruled that **qualified immunity does not shield trustees engaged in intentional misconduct or acting for personal gain.** Courts have also recognized that **bad faith litigation is sanctionable,** as seen in *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996). Furthermore, under **Florida Statute § 736.1001**, trustees may be **held liable for mismanagement and fiduciary breaches.**

### II. TRUSTEE'S CONTRADICTORY STATEMENTS ON OWNERSHIP PROVE BAD FAITH LITIGATION AND BREACH OF FIDUCIARY DUTY

- The Trustee's counsel initially downplayed Movants' legal standing by referring to Movants as "mere owners and principals" when moving to impose the automatic stay.

- In other words, the Trustee's counsel initially misrepresented Movants' personal legal standing to diminish their rights under the law while simultaneously pursuing legal action that directly impacts them as individuals.

- However, in response to this Motion for Sanctions, the Trustee **contradicts their prior position,** now **acknowledging** that Movants each own **50% equity in the Debtor.**

- This contradiction is not accidental—it is a strategic attempt to **manipulate the Court's perception of Movants' legal standing depending on what serves the Trustee's litigation strategy at any given time.**

- If we were **"mere owners"** in the Trustee's prior filings, why is the Trustee now suddenly recognizing Movants' **50% equity interest?** This selective representation of facts demonstrates **clear bad faith.**

- The Trustee's shifting statements regarding Movants' equity interest have been strategically used to deny Movants' standing while simultaneously using the Adversary Complaint to suppress Movants' personal legal rights.

1. A party cannot manipulate factual narratives for strategic legal advantage. The **U.S. Supreme Court** in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), reaffirmed that factual allegations must remain consistent throughout litigation. Likewise, a trustee's fiduciary duty demands impartiality and accuracy—*In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir. 1983), held that selective misrepresentation violates these duties. Additionally, *In re Smart World Techs., LLC*, 423 F.3d 166 (2d Cir. 2005), confirms that misrepresenting a party's legal standing constitutes bad faith litigation warranting sanctions.

## III. TRUSTEE FAILS TO MEET THE BURDEN OF PROOF FOR FRAUDULENT TRANSFER CLAIMS

- **Although we are not named in the Adversary Complaint, the Trustee's decision to file without sufficient evidence is a strategic maneuver designed to suppress Movants' personal ability to litigate and defend Movants' financial interests. The Trustee filed an Adversary Complaint before confirming whether a fraudulent transfer even occurred.** Movants are responding in their individual capacities to legal actions that directly impact their personal financial interests, legal rights, and ability to protect their property. The Trustee's use of fraudulent transfer allegations—without evidence—serves to directly burden Movants personally by forcing Movants to expend time and resources defending against baseless claims that directly affect Movants personally.

- **This proves they filed a suit first and searched for evidence later**—an abuse of process and sanctionable under **Rule 11 (District Court) and Rule 9011 (Bankruptcy Court). Please see Paragraphs 4 & 5** in the Trustee's Response. **Demand letters from Trustee to Cohan, Hughes and the Insider companies were sent on the same day the subpoena went to Chase Bank, January 24, 2025.**

- **Unless Chase Bank responded with evidence that this $1.1M transfer was made by any Insider *within 10 days*, this proves that the Adversary Complaint was filed February 6, 2025 per the record without sufficient evidence to allege a fraudulent transfer claim, further proving the Adversary Complaint stems from personal retaliation against Cohan and Hughes.** If Chase Bank had responded to the Trustee with evidence, the Trustee would have included it in their Exhibits for the Adversary Complaint, but they did not because this evidence does not exist.

- **The $1.1 million was originally cited as a basis (Doc. 276 – filed 1-29-2025) for the complaint but once the facts disproved the claim (Exhibit L of Doc. 287 – filed 02-05-2025), it was later intentionally omitted from the Adversary Complaint (filed 02-06-2025).** The Trustee now relies solely on speculative language and favorable loan terms, which alone **do not constitute fraudulent transfers.**

- **The Trustee falsely claims they never received Chase Bank records,** but the record proves otherwise:

  o **We sent Chase Bank letters to the Debtor's attorney twice (Exhibits E & F).**

  o If the Trustee lacked access to these documents, the fault lies **with the Trustee or Debtor's counsel—not with Cohan, Hughes, the Debtor, or the Insider Companies.**

  o This further demonstrates **misrepresentation of the record and bad faith litigation.**

- **More importantly, this $1.1 million transfer is irrelevant to stakeholders and the Insider Companies because it was a third-party transfer.**

  o Under **11 U.S.C. § 548(a),** a third-party transfer cannot be considered fraudulent.

  o Now that the complaint's foundation has collapsed, the Trustee's refusal to withdraw it further **demonstrates an abuse of process.**

1. Fraudulent transfer claims must meet strict pleading standards. Under **Fed. R. Civ. P. 9(b)** and **Bankruptcy Rule 7009**, fraud claims require specific factual allegations, not conjecture. The burden of proof rests with the Trustee, as *In re Model Imperial, Inc.*, 250 B.R. 776, 794 (Bankr. S.D. Fla. 2000), held that a trustee must present clear evidence of fraudulent intent before pursuing a claim.

2. Additionally, third-party transfers are not fraudulent under **11 U.S.C. § 548(a)**, which requires that the debtor—not a third party—be involved. Filing lawsuits before gathering evidence is an abuse of process, as *In re Ritz*, 567 B.R. 715 (Bankr. S.D. Fla. 2017), ruled that premature adversary complaints may be sanctionable under **Bankruptcy Rule 9011** and **Fed. R. Civ. P. 11**.

3. Further, *In re TOUSA, Inc.*, 680 F.3d 1298 (11th Cir. 2012), confirms that favorable loan terms alone do not constitute fraudulent transfers if there is reasonably equivalent value, which is evident in the business plans referenced in the Trustee's own Adversary Complaint's exhibits. Finally, *In re Zedda*, 103 F.3d 1195, 1205 (5th Cir. 1997), holds that **failure to review all relevant bank records before filing a claim constitutes <u>reckless disregard for facts.</u>**

## IV. TRUSTEE'S RETALIATORY LITIGATION IS A COVER-UP FOR THEIR OWN MISCONDUCT

- **The Trustee's shifting narrative about demand letters exposes their procedural manipulation.**
  - o Initially, the Trustee claimed the **timing was purely coincidental.**
  - o Now, they present a **new, elaborate timeline to justify the Adversary Complaint.**
  - o Yet, despite this timeline shift, they <u>fail</u> to provide **any supporting evidence.**

- **Movants' timeline directly contradicts their version of events:**
  - o **Their cease-and-desist letter was issued just two hours after we pursued Movants' constitutionally protected claims.**
  - o **Their barrage of retaliatory demand letters, designed to intimidate and suppress Movants personally, directly affecting Movants' ability to defend Movants' individual rights, were sent within two days after that—all within a single 30-minute period.**
  - o The Trustee has **no evidence refuting this timeline, confirming that their demand letters were retaliatory.**
  - o If the Trustee's demand letters were genuinely part of a strategic legal process, **they should be able to provide supporting evidence.** Instead, <u>they ignored the issue entirely</u>.

- The Trustee's demand letters and Adversary Complaint were strategically timed to personally intimidate and financially burden Movants personally, creating **de facto litigation** against Movants despite not being named.

  - **Trustee's Conduct Is Unconscionable and Unlawful**
    - o It is inconceivable that a court-appointed trustee would expect this Court, creditors, or estate beneficiaries to accept that estate funds are being used to suppress Movants' constitutional rights.
    - o **Self-Enrichment & Conflict of Interest:** The Trustee drains estate funds through unnecessary legal fees while claiming 25% of what remains, prioritizing personal gain over creditor recovery.
    - o **Breach of Fiduciary Duty:** Instead of maximizing assets for creditors, the Trustee is inflating billable hours and prolonging litigation for profit.

- o **No Justification, Only Retaliation:** Movants face unwarranted attacks while the Trustee offers no legitimate basis, using legal maneuvers as extortion at the estate's expense.

- o **This is not mere negligence—it is a willful abuse of fiduciary duty.** Courts have sanctioned trustees for far less. The Trustee is weaponizing their authority for personal gain, depleting estate assets, and retaliating against Movants for asserting their rights.

- **The first demand letter contained <u>personal</u> threats of sanctions that the Trustee has never substantiated.**

  - o If they had legitimate grounds for sanctions against Movants personally, **they would have certainly filed them by now.**

  - o The absence of any such filing **proves the threats were baseless and intended solely to intimidate.**

  - o **This further confirms that the demand letters were retaliatory towards Cohan and Hughes personally for pursuing constitutionally protected individual claims and not part of a good-faith legal process.**

  - o **Again, the Trustee's demand letters and Adversary Complaint were strategically timed to personally intimidate and financially burden Movants, creating de facto litigation against Movants despite not being named.**

- **The Trustee falsely claims Movants' motions are frivolous but ignores:**

  - o **Multiple sanctions motions were necessitated by their own bad faith procedural tactics and misconduct.**

  - o **The Third Sanctions Motion was filed after they violated a stay that they themselves requested.**

  - o **Their actions—not Movants' actions—created this situation.**

  - o **Providing evidence to the contrary.**

1. Retaliatory litigation constitutes an abuse of process. In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court held that courts may sanction litigation tactics designed to harass or retaliate. Trustees are bound by a fiduciary duty to act in good faith—as *In re Bennett Funding Group, Inc.*, 226 B.R. 331 (Bankr. N.D.N.Y. 1998), confirmed, any bad faith action violates this duty.

2. Moreover, trustees cannot alter their factual narrative to fit evolving legal needs. The Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), reaffirmed that factual allegations must remain consistent throughout litigation. Finally, *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999), established that fabricating legal claims and shifting litigation strategies warrant sanctions.

## V. TRUSTEE SUPPRESSES EXCULPATORY EVIDENCE

- **By suppressing exculpatory evidence, the Trustee obstructed Movants' ability to demonstrate that the fraudulent transfer claims are baseless, forcing Movants to fight an unfair legal battle at significant personal expense.**

- **The Trustee's suppression of key evidence also obstructs Movants' ability to defend themselves from retaliatory litigation that personally affects Movants' financial standing.**

- **The repeatedly mentioned Adam Walker Declaration confirms Movants' good faith and solvency.**

- The Examiner's Report, an independent report, found no fraud, no intent to defraud, no insolvency and no lack of reasonable equivalent value—only speculation.

- The $15 million Velanos settlement further demonstrated Movants' good faith and intention to recover as much funds as they could for the creditors.

- The Trustee's own Adversary Complaint exhibits confirm reasonably equivalent value.

- The Trustee has ignored fraudulent, overstated, and non-refundable creditor claims—proving selective enforcement and bias to maintain a perception that more money (more than triple) is owed when it is not to put pressure on Movants.

1. Trustees must disclose all material financial records. Fed. R. Bankr. P. 2004 allows for broad discovery, but suppression of evidence violates **due process.**

2. Trustees may not suppress records proving financial solvency. In *In re Stinson Petroleum Co.*, 506 B.R. 288 (Bankr. S.D. Tex. 2014), the court held that **withholding exculpatory financial records constitutes bad faith litigation.**

## VI. TRUSTEE'S FALSE CLAIMS REGARDING PERSONAL MALPRACTICE CLAIMS

- The Trustee **falsely claims** that **Movants' personal legal malpractice claims against Warren Law Group belong to the bankruptcy estate.**

- The Trustee is attempting to **assert control over claims that are entirely personal in nature** and have **no connection to the bankruptcy estate or its assets.**

- The **Trustee does not own, control, or have standing** over Movants' personal legal malpractice claims, which involve direct harm to **Movants as individuals, including:**

    o Legal malpractice committed by Warren Law Group and Scott Oh affecting Movants personal reputation and finances.

    o Breach of fiduciary duties and other wrongful acts affecting Movants personally, which the Trustee has no legal right to interfere with.

    o Worse yet, the Trustee admits that after interviewing 5 firms, they still have not hired counsel to pursue claims against Warren Law Group when Movants had hired counsel that was reputable, competent, economically sound, had a successful track record of suing attorneys, had legal malpractice experience and is barred in the state the estate claims would be made while aggressively pursuing insiders *without* supportive evidence. Pure insanity, nowhere near the best interest of the estate.

1. Personal claims remain distinct from the bankruptcy estate. Courts have consistently ruled that individual damages, such as reputational harm and lost personal income, do not become estate property (*In re Swift Aire Lines, Inc.*, 30 B.R. 490 (Bankr. 9th Cir. 1983)). Likewise, trustees lack authority over personal malpractice claims—*In re Baumgartner*, 57 B.R. 513 (Bankr. N.D. Ohio 1986), confirmed that malpractice claims involving personal harm do not belong to the bankruptcy estate.

2. The Trustee's interference with Movants' legal malpractice claims constitutes procedural overreach and bad faith litigation. The Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), held that abuse of process and overreaching litigation tactics warrant sanctions.

## VII. TRUSTEE'S FABRICATED TIMELINE AND CONTRADICTORY CLAIMS

- The Trustee **contradicts their own statements** regarding discovery and demand letters.

- In **Paragraph 5 (Doc. 329)** of their response, they claim they **never received a response** to their demand letters, which they use to justify filing the **Adversary Complaint on February 6, 2025.**

- In **Paragraph 12 (Doc. 329)**, they **acknowledge receiving a response** from Movants **on January 27, 2025.** The Trustee stated at the response from Movants included the same arguments as the first sanctions motion and Movants' arguments regarding the Warren Law Group. **The Trustee intentionally omits that 7 pages of the response were dedicated to defenses** for Movants' personal assets. **(Exhibit B of Doc. 276 Section 3 [Defenses start on page 25])**

- **This inconsistency is fatal to their claims**—if they received a response [which they did **(Exhibit B - Doc. 276 – Trustee's own Response)**] on January 27, then their assertion that no response was received is false.

**Contradiction Proving Bad Faith Litigation:**

- **The Trustee's own Exhibit B in their previous response (Doc. 276) contradicts their timeline.**
  - They claim no response was received.
  - Their **own filings, including their response to this request for sanctions motion, confirm** that Movants provided a **letter outlining defenses.**

- **A party cannot justify legal action on an incorrect factual basis.**
  - This contradiction proves that the **Adversary Complaint was filed under false pretenses.**
  - Courts have ruled that **filing claims based on knowingly false allegations constitutes bad faith litigation and is sanctionable.**
  - **This coupled with the Adversary Complaint's personal retaliatory nature, the Court should strike the Adversary Complaint from the record entirely as a matter of law.**

- **But-for causation** is a legal standard used to determine whether a particular action was the cause of a specific outcome. Under this test, an action is considered the cause of an outcome if, **but-for** that action, the outcome would not have occurred.
  - But-for this false assertion (that no response was received), there would be no basis to claim that Movants failed to respond, and thus, no justification to file the Adversary Complaint.
  - But-for this omission, the Adversary Complaint lacks a legal foundation.
  - But-for these conflicting judicial admissions, the complaint could not stand under basic principles of consistency in legal pleadings.
  - But-for the Trustee's false claim that no response was received, their justification for filing collapses, making the Adversary Complaint an abuse of process.
    - The **but-for causation** standard is met because the false omission (ignoring the January 27, 2025 response) was the direct and necessary cause of the Adversary Complaint being filed. Had the Trustee correctly acknowledged Movants' response, they would have had no legitimate basis to proceed with the complaint. Since their own records contradict their stated rationale, the complaint should be stricken as procedurally defective and filed in bad faith.

**Legal Basis for Striking the Adversary Complaint:**

**1. Motion to Strike Under Rule 12(f) – Personal Standing**

- **You can argue as individuals that the Trustee's complaint contains immaterial, impertinent, or scandalous allegations.**

  - **If the complaint includes misleading, false, or legally insufficient claims, you can move to strike those portions without needing to act on behalf of the companies.** The Trustee's Adversary Complaint is based on knowingly false statements, constituting bad faith litigation and an abuse of process intended to harm Movants personally (*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533 (1991); *Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991); **Fed. R. Civ. P. 11(b) & (c); 11 U.S.C. § 105(a); Florida Rules of Professional Conduct 4-3.3(a)(1)**).

  - Knowingly false statements in court filings violate procedural rules and justify sanctions (*McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851 (11th Cir. 2010); *In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985); *In re Casse*, 198 F.3d 327 (2d Cir. 1999); *Kalb v. Feuerstein*, 308 U.S. 433 (1940); *Mickens v. Taylor*, 535 U.S. 162 (2002); *United States v. Throckmorton*, 98 U.S. 61 (1878)).

  - The Trustee's filings contradict their own records, proving the Adversary Complaint was filed under false pretenses and must be procedurally stricken (*In re Weiss*, 111 F.3d 1159 (4th Cir. 1997); *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996); *Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991); 11 U.S.C. § 105(a); **Fed. R. Civ. P. 11(b) & (c); Florida Rules of Professional Conduct 4-3.3(a)(1)**).

1. False factual representations warrant sanctions. In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court held that misrepresenting facts to the court in bad faith constitutes sanctionable misconduct. Similarly, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), reaffirmed that factual allegations must remain consistent and supported by evidence.

2. Filing an Adversary Complaint under false pretenses is an abuse of process, as *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999), ruled that contradictory litigation strategies warrant sanctions. Additionally, *In re Bennett Funding Group, Inc.*, 226 B.R. 331 (Bankr. N.D.N.Y. 1998), established that fabricating timelines and misrepresenting procedural history is an abuse of fiduciary duty.

## VIII. TRUSTEE ADMITS TO BILLING THE ESTATE FOR THEIR OWN BAD FAITH LITIGATION

- **The Trustee admits that a majority of their recent legal fees have been incurred responding to filings made by Movants.**

- **They are billing the estate for litigation provoked by their own bad faith conduct.**

- **Billing the estate for unnecessary litigation constitutes an abuse of fiduciary duty to all beneficiaries of the estate, including creditors.**

- **Trustees are obligated to maximize creditor recoveries—not waste estate assets on retaliatory filings.**

- **This supports a request for surcharge or reduction of trustee fees.**

- **The Trustee's requests for imposition of automatic stays are directly related to the abuse of process against Movants personally as they solely needed to file them to substantiate their bad faith claims despite their illegitimacy.**

1. Trustees must act in the estate's best interest and avoid unnecessary legal expenses. In *Mosser v. Darrow*, 341 U.S. 267 (1951), the Supreme Court held that trustees must preserve estate assets, not engage in self-serving

litigation. Likewise, *In re United States Lines, Inc.*, 303 B.R. 784 (Bankr. S.D.N.Y. 2004), ruled that legal fees must be necessary and beneficial to the estate.

2. Billing the estate for bad faith litigation constitutes a breach of fiduciary duty. In *In re Smith*, 507 F.3d 64 (2d Cir. 2007), the court held that trustees cannot use estate funds for retaliatory litigation, while *In re Kitchen*, 659 F.2d 391 (4th Cir. 1981), confirmed that courts deny reimbursement for unnecessary legal expenses.

3. Trustees may be sanctioned for litigation used to harass or retaliate. The Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), established that courts can impose sanctions for bad faith litigation. Additionally, *In re Gorski*, 766 F.3d 844 (8th Cir. 2014), affirmed that trustees who engage in procedural harassment can be held personally liable.

## IX. TRUSTEE'S ACTIONS CONSTITUTE PERSONAL RETALIATION AND HARASSMENT

- **The Trustee and their counsel are deliberately engaging in targeted harassment** by ignoring direct instructions regarding correspondence and continuing to send documents to the wrong address (See **Exhibit G**).

- **This is not an accident—it is a pattern of misconduct designed to harass, intimidate, and retaliate against Movants personally.**

**How We Know This is Intentional:**

- The Trustee has **David Hughes' personal address on file but continues to send correspondence to the PO Box.**

- Conversely, they **deliberately send correspondence to Cohan's personal residence rather than Cohan's designated address, the same PO Box.**

- **This inconsistency proves intent and Cohan's concern for having Cohan's personal address listed on public filings is not misunderstood.**

- **The Trustee and their counsel have been previously notified to stop sending correspondence to Cohan's personal address, and then they intentionally did it twice (Doc. 329 & 330)** more after Cohan provided multiple alternatives.

1. Trustees cannot misuse their position for retaliation. In *In re Gorski*, 766 F.3d 844 (8th Cir. 2014), the court held that targeting individuals with procedural tactics and excessive litigation constitutes improper retaliation warranting sanctions. Likewise, *Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989), confirmed that trustees acting for personal or retaliatory reasons may be personally liable. The Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), established that bad faith litigation and retaliatory legal actions are sanctionable.

2. Sending correspondence to an individual's personal residence after explicit instructions not to constitutes harassment. Florida law prohibits such conduct—**Florida Statute § 559.72(7)** bars knowingly communicating with an individual at an unauthorized address to harass or intimidate, while **Florida Statute § 784.048** includes persistent, unwanted communication as an element of harassment. Courts have recognized that ignoring explicit instructions constitutes bad faith harassment, as seen in *Holloway v. Wachovia Bank & Co.*, 554 F. Supp. 2d 1067 (N.D. Cal. 2008).

3. Trustees and attorneys must comply with professional conduct rules prohibiting harassment. *In re Snyder*, 472 U.S. 634 (1985), held that attorneys engaging in harassment through correspondence can be sanctioned or disbarred. Additionally, **ABA Model Rule of Professional Conduct 4.4(a)** prohibits legal actions with no substantial purpose other than to burden or embarrass a third party, and **Florida Bar Rule 4-8.4(d)** bars conduct prejudicial to the administration of justice, including targeted harassment.

4. Trustees misusing their authority for personal retaliation breach their fiduciary duty. The **Uniform Trust Code (UTC) § 803** mandates impartial trust administration, while *In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir. 1983), found that trustees engaging in personal attacks, bias, or selective enforcement can be removed and held personally liable.

5. Courts have sanctioned trustees who distort records or manipulate procedure for retaliation. *In re Smart World Techs., LLC*, 423 F.3d 166 (2d Cir. 2005), ruled that manipulating procedural rules to target individuals constitutes bad faith and is sanctionable. Similarly, *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999), held that fabricating legal claims to suppress opposing parties' rights warrants sanctions.

## X. TRUSTEE AND COUNSEL ARE PERSONALLY LIABLE

- To expressly end any misunderstandings, the **Chapter 7 Trustee** is being named in both their **individual** and **official** capacities—**individually for misconduct and bad faith actions** outside the scope of their duties, and **officially for breaches of fiduciary duty, suppression of evidence, and selective enforcement**—alongside their counsel and any other individual and/or entities who participated in the procedural abuse.

- **Again, so the record is clear, <u>qualified immunity does not protect bad faith litigation</u>.**

- **Trustees and attorneys can be held personally liable for misconduct, abuse of process, and retaliation.**

- **Case law confirms liability. The Supreme Court and multiple circuit courts** hold that trustees and their counsel **may be personally liable when they exceed their authority and engage in misconduct.**

1. Trustee immunity does not extend to bad faith litigation or misconduct. The Supreme Court in *Mosser v. Darrow*, 341 U.S. 267, 272 (1951), ruled that trustees may be personally liable for intentional misconduct or reckless disregard of fiduciary duties. Similarly, *Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989), held that trustees who fail to act impartially and in good faith can face personal liability.

2. Trustees lose immunity when acting beyond their statutory authority. Under **11 U.S.C. § 323(b)**, trustees engaging in ultra vires acts are personally liable, as confirmed in *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 6 (1st Cir. 1999). Moreover, trustees' attorneys may also be personally liable, as *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993), held that trustee's counsel is the functional equivalent of the trustee when engaging in misconduct.

3. Breach of fiduciary duty removes immunity. **Florida Statute § 736.1001(1)** states that a trustee violating fiduciary duties is subject to removal and liability. Finally, the **Barton Doctrine** (*Barton v. Barbour*, 104 U.S. 126 (1881)) requires leave of the bankruptcy court to sue a trustee, but does not shield trustees from personal liability for misconduct.

## XI. REQUEST FOR RELIEF

Movants John Michael Cohan and David Hughes have suffered **direct and *personal* harm** due to the Trustee's **bad-faith litigation, abuse of process**, and **retaliatory legal maneuvers.** The Trustee's misuse of procedural tactics, including improper stays then subsequently violating them, and adversary proceedings, has forced Movants to *personally* expend significant time and *personal* financial resources on legal expenses, obstructed their independent *personal* legal claims, and suppressed exculpatory evidence that would have otherwise vindicated their *personal* positions all at the same time. So, the record is clear, Movants pursued their *personal* constitutionally protected claims and Trustee's began attacking Movants *personally* (within 2 hours) in bad faith <u>prior to</u> any Motion for Sanctions filed against the Trustee.

The Trustee engaged in **de facto litigation** against Movants *personally*—(1) weaponizing procedural tools such as demand letters containing threats of *personal* sanctions without basis, (2) adversary proceedings **without** sufficient evidence **while** suppressing exculpatory evidence, (3) *contradictive judicial admissions* (**Doc. 329 Paragraphs 5 and 12,  Doc. 276 Exhibit B**) and (4) selective enforcement of stays against Movants' *personal* claims well-documented in Movants' other filings—**not** to protect the estate, but to **coerce, intimidate,** and **financially burden** Movants *personally* into submission. Though Movants have not been directly named as defendants in formal litigation, the Trustee's calculated legal maneuvers have had the same effect as a *personal* direct lawsuit—forcing Movants into an expensive and protracted legal defense, consuming personal resources, obstructing their ability to exercise legal rights, and placing significant financial strain on them. The Adversary Complaint is inherently *personal* in nature because, if the Trustee were to obtain the judgments they seek—despite the record clearly indicating they should not—the next logical step would be to pursue Movants *personally* if the Trustee is somehow unable to recover funds from the Insider Companies for the estate. Hence, the **de facto litigation.** So, it cannot be stated that the Adversary Complaint is not *personal* in nature with or without being formally named and Movants do indeed have standing in their *personal* individual pro se capacity.

This pattern of **bankruptcy hardball**—where a trustee or fiduciary uses the bankruptcy process to aggressively suppress opposition rather than administer the estate fairly—constitutes an **abuse of process.** Courts have routinely sanctioned trustees and attorneys who engage in strategic litigation tactics designed to exhaust an opposing party's resources, suppress valid claims, and manipulate procedural rules to gain an unfair advantage. The Trustee's conduct is not a legitimate effort to protect creditors but a concerted effort to *personally* block Movants from asserting their *personal* legal rights and the exposure of the Trustee's misconduct.

Accordingly, Movants respectfully request in their individual *personal* pro se capacity that this Court impose appropriate sanctions to remedy the financial and procedural harm inflicted upon them, deter further bad-faith litigation, and uphold the integrity of the judicial process.

Movants respectfully request that the Court:

1.  **Take judicial notice of Documents 20, 38, 274, 276, 287, 319, 322, 329, 330 of this matter, Docs. 1, 8, 9, 10, 12 of Case No. 3:25-ap-00011-BAJ, the reply regarding the Trustee's violation of the stay and this reply of this matter with all their accompanying exhibits and the verbal supportive arguments provided to this Court by John Michael Cohan on February 25, 2025 to make its decision on these papers without the need for a hearing or trial. Of course, the Court holds the right and may deem that it's necessary to hold a hearing or trial, however, the Trustee, nor Movants have requested one. Movants are not opposed to a hearing or trial as they would only bolster Movants' claims but view it only as a continuance of the manufactured delay of justice the Trustee has brought before this Court.**

2.  **Grant sanctions against the Trustee and counsel both in their official and individual capacities, for bad faith litigation, abuse of process, and suppression of exculpatory evidence for their deliberate litigation abuse, and any other claims the Court finds (Exhibit K), which has caused Movants personal financial harm and obstructed Movants' ability to exercise personal legal rights, in an amount the Court deems sufficient to cover Movants' personal harm and to deter the Trustee from doing this to others in the future.**

3.  **Movants reserve the right to request additional relief as necessary, including but not limited to procedural remedies addressing improper filings, undisclosed records, and any further oversight or remedial action the Court may deem appropriate to ensure compliance with professional and ethical obligations.**

4.  **Grant any other relief the court deems just and proper.**

**Dated:** March ____, 2025
**Respectfully Submitted in Good Faith,**

**John Michael Cohan and David Hughes, Pro Se**

### Exhibit List

- **Exhibit E** – First instance of Chase Bank letters sent to Debtor's counsel, Bryan Mickler, by email by Cohan, demonstrating initial efforts to clarify account matters and Screenshot for "Folder for Bryan 1" highlighting the Chase Bank Letters files sent on March 14, 2024.

- **Exhibit F** – Second instance of Chase Bank letters sent to Debtor's counsel, Bryan Mickler, by email by Cohan, an additional attempt to resolve the issue, highlighting the Chase Bank Letters files sent on May 11, 2024.

- **Exhibit G** – Evidence of the Trustee and their counsel deliberately engaging in targeted harassment by ignoring direct instructions regarding correspondence and persistently sending documents to incorrect *personal* addresses.

- **Exhibit H** – Excerpts from Adam Walker regarding U.S. Trustee's claims that were defeated twice, demonstrating both the court's rejection of the UST's arguments and how those arguments, including but not limited to, lacked a valid legal basis, demonstrating the Adversary Complaint not only stems from the Trustee's bad faith, but it also stems from fruit of the poisonous tree.

- **Exhibit I** – Section 13.7 of every agreement signed with every customer establishes that, the Debtor, Genie Investments NV, which John Michael Cohan and David Hughes each have a personal 50% equity share of, fulfilled all contractual obligations related to refunds. This provision explicitly states that all financial obligations were addressed at the corporate level, eliminating any justification for the Trustee's pursuit of separate assets personally owned by Movants. Moreover, Movants, in their professional capacity, exercised more than reasonably diligent efforts to mitigate the effects of the Force Majeure Event caused by the wholesale lender failure—including hiring counsel for due diligence prior to engagement, demand letters, arbitration, litigation, and settlement negotiations ultimately arriving at the $15MM Velanos Settlement agreement that was immediately accepted by the Trustee upon their appointment and covers all viable creditor claims. Despite this, the Trustee continues to improperly disregard corporate separateness, attempting to extend liability beyond the Debtor. This constitutes an abuse of process and a clear violation of established corporate protections, directly and indirectly harming Movants personally.

- **Exhibit J – Trustee's Selective Stipulation for Extension without Certificate of Service to all Defendants**

  This exhibit further demonstrates the Trustee's pattern of selective procedural enforcement by granting an extension only to one defendant, while failing to notify the Movants, despite their personal assets also being named as defendants in the adversary proceeding.

  The Trustee failed to email Movants per their explicit request, did not CC them, and omitted a certificate of service, reinforcing a pattern of procedural manipulation. While the filing was available via PACER, Movants were required to proactively check the docket rather than being directly informed, as they must walk-in or mail filings and are denied CM/ECF access.

  Under **Federal Rule of Bankruptcy Procedure 9019(a)**, any stipulation affecting case deadlines requires notice to all interested parties unless otherwise ordered by the court. The Trustee may argue Movants were not affected by this stipulation; however, any extension for one defendant impacts the litigation timeline and procedural fairness for all defendants, including Movants' personal assets. Courts recognize unequal procedural treatment as an abuse of process (*In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1999)). This exhibit further supports Movants' claims of bad faith litigation, selective enforcement, and procedural misconduct.

- **Exhibit K** – Summary Analysis of Trustee's Misconduct and Eight (8) Badges of Fraud Displayed By The Chapter 7 Trustee

# EXHIBIT E

| | |
|---|---|
| **From:** | John from Genie Investments |
| **To:** | Bryan Mickler; David from Genie Investments |
| **Subject:** | RE: IDI today |
| **Date:** | Thursday, March 14, 2024 3:34:00 PM |
| **Attachments:** | image001.png |
| | Folder for Bryan 1.zip |

Bryan,

As per your request, please see attached. Let us know if you need anything else or have any questions. Thank you.

Sincerely,

## John Michael Cohan
**Genie Investments, Director**

 **GENIE INVESTMENTS**

A Word of Caution to Sellers & Buyers Business is based on trust. Genie Investments (Genie) is acting solely as Consultants, Genie does not accept any liability on behalf of Sellers or Buyers or their associated Facilitators and/or Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity. DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see:
http://www.ftc.gov/privacy/glbact/glbsub1.htm
PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information.  It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.
This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.

**From:** Bryan Mickler <bkmickler@planlaw.com>
**Sent:** Thursday, March 14, 2024 2:45 PM
**To:** John from Genie Investments <jmcohan@genieinvestments.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Subject:** RE: IDI today

File Explorer window — Folder path: Windows > INetCache > ContentOutlook > 0DO7YY4F > Folder for Bryan 1 > Folder for Bryan 1

Search Folder for Bryan 1

| Name | Type | Compressed size | Password p... | Size | Ratio | Date modified |
|---|---|---|---|---|---|---|
| 2-24 1 Morgan Stanley | Adobe Acrobat Document | 22 KB | No | 42 KB | 48% | 3/14/2024 11:29 AM |
| 2-24 2 2-24 1 Morgan Stanley | Adobe Acrobat Document | 62 KB | No | 112 KB | 45% | 3/14/2024 11:39 AM |
| 2-24 3 2-24 1 Morgan Stanley | Adobe Acrobat Document | 36 KB | No | 62 KB | 42% | 3/14/2024 11:39 AM |
| 2023 Tax Extension | Adobe Acrobat Document | 35 KB | No | 27 KB | 43% | 3/14/2024 1:56 PM |
| Certificate of Liability Insurance | Adobe Acrobat Document | 123 KB | No | 146 KB | 16% | 3/14/2024 4:38 PM |
| Closing Letter WF | Adobe Acrobat Document | 84 KB | No | 62 KB | 46% | 3/12/2024 4:00 PM |
| David Hughes IL DL Back | JPEG File | 211 KB | No | 216 KB | 3% | 3/14/2024 1:27 PM |
| David Hughes IL DL Front | JPEG File | 212 KB | No | 215 KB | 2% | 3/14/2024 1:27 PM |
| Davis, Caleb Chase Closing Letter 10.24.23 | Adobe Acrobat Document | 76 KB | No | 82 KB | 6% | 1/30/2024 2:55 PM |
| Davis, Caleb Chase Closing Letter 11.7.23 | Adobe Acrobat Document | 79 KB | No | 84 KB | 6% | 11/7/2023 5:02 PM |
| Declaration of Adam B Walker (3-14-2024) | Adobe Acrobat Document | 282 KB | No | 301 KB | 7% | 3/14/2024 1:00 PM |
| Domestic Close Incorporation and Business License Nevada | Adobe Acrobat Document | 421 KB | No | 499 KB | 15% | 3/14/2024 1:13 PM |
| FILED Genie INVESTMENTS NV - Formation - California | Adobe Acrobat Document | 733 KB | No | 798 KB | 8% | 3/14/2024 1:13 PM |
| GENIE INVESTMENTS NV INC. - Formation - Utah | Adobe Acrobat Document | 1,238 KB | No | 1,539 KB | 18% | 3/14/2024 1:56 PM |
| Genie_my_input_Postmark | JPEG File | 364 KB | No | 411 KB | 12% | 3/14/2024 1:56 PM |
| John Michael Conan FL ID Front and Back | Adobe Acrobat Document | 126 KB | No | 148 KB | 15% | 8/4/2023 11:03 AM |
| Refund Examples | Adobe Acrobat Document | 123 KB | No | 157 KB | 16% | 3/13/2024 12:19 PM |

All folders are up to date.   Connected to: Microsoft Exchange

PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information. It is intended solely for the use of the ad-dressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please

Jason Houda
FW: Genie's arbitration v. Webl...
Jason  Please see attached and   3/15/2024

6:54 PM
3/7/2025

# EXHIBIT F

**From:** John from Genie Investments
**To:** bkmickler@planlaw.com
**Cc:** David from Genie Investments
**Subject:** Collection Efforts
**Date:** Saturday, May 11, 2024 2:27:00 PM
**Attachments:** image001.png
FL Complaint - Stegent & Nash.edited.docx
voicemail-10765650144.m4a
HPSCAN_20231211133722698_2023-12-11_134143472.pdf
Response re 2023-CONSC-00179116.pdf
3-8-24 - NV - High Priority - Genie Investments.pdf
Second Response to IL DOJ.pdf
HPSCAN_20240429213112078_2024-04-29_213245784.pdf
Davis, Caleb Chase Closing Letter 10.24.23.pdf
Davis, Caleb Chase Closing Letter 11.7.23.pdf
Preet Patel.docx
Screenshot 2024-04-17 141750.png

Bryan,

As per your request, regarding Collection Efforts, please see below:

1. Preet email thread below this email and attached text messages. His most recent email was this past week.
2. Stringer called most, if not everyone on our customer list and from our bank records. Our client called Caleb Davis to inform him that he received a call and that CALD Holdings received $500,000. He skipped traced business and personal names to get their phone numbers.
3. Stringer changing his website during our stay and his stay per Jason from Spiegel and Utrera. His website has been since taken down by Wix.com.
4. The organized group (creditors) have called in to the state bar association and made fraudulent complaints against our attorney firm, Spiegel and Utrera (see attached Complaint #63 [recently filed or to be filed])
5. Threating phone call (see attached voicemail)
6. The organized group encouraged the public to leave negative reviews, file law enforcement complaints about Zoomeral and its partner companies and make criminal complaints to the FBI. (Complaint #56, 57, 58)
7. The organized group made complaints to various agencies (FBI, SEC, DOJ) (see DOJ letters and responses attached), Illinois Secretary of State investigation (see attached)
8. Chase account closure (see attached letters)
9. They impersonated Texas State Judges attempting to have attempted to intimidate the firm to withdraw. (Complaint # 62)
10. Postings Online during our stay (see attached)

To send a message to this organized group, please review and request a fine/sanction against Preet Patel. Preet was warned to stop his campaign of harassment which is

causing the professional fees of Genie's to be maxed out, and now usurping the court's desire to keep expenses down thus allowing for a 100% plan. As you can see, he threatened to get the SOS involved in a previous email of his. Their intentional destructive campaign needs to be stopped.


Sincerely,

**John Michael Cohan**
**Genie Investments, Director**

 **GENIE INVESTMENTS**

A Word of Caution to Sellers & Buyers Business is based on trust. Genie Investments (Genie) is acting solely as Consultants, Genie does not accept any liability on behalf of Sellers or Buyers or their associated Facilitators and/or Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity. DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see: http://www.ftc.gov/privacy/glbact/glbsub1.htm
PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information.  It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.
This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.


**From:** David Hughes <david@zoomeral.com>
**Sent:** Wednesday, May 8, 2024 10:46 AM
**To:** John from Genie Investments <jmcohan@genieinvestments.com>
**Subject:** FW: Notice of Action



David C. Hughes II
Chief Executive Officer

david@zoomeral.com | www.zoomeral.com

A Word of Caution to Sellers & Buyers Business is based on trust. We are acting solely as Consultants, We do not accept any liability on behalf of Sellers or Buyers or their associated Facilitators and/or Intermediaries. . We advise Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity.

DISCLAIMER: Sender (david@zoomeral.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see: http://www.ftc.gov/privacy/glbact/glbsub1.htm

PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information.  It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.

This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.

**From:** Preet Patel <preet.patel@duke.edu>
**Sent:** Tuesday, May 7, 2024 11:56 AM
**To:** David Hughes <david@zoomeral.com>
**Subject:** Re: Notice of Action


You lost everything you worked so hard for because you chose to lie and cheat. Unfortunately it seems the authorities are just starting to do their work too. I would wish you well but you unfortunately deserve everything that is happening to you but I feel empathy for your family for they have to suffer the consequences of your actions.

I look forward to seeing what becomes of you. I'll be keeping an close eye from afar.


**From:** David Hughes <david@zoomeral.com>
**Sent:** Wednesday, November 8, 2023 9:01 AM

**To:** Preet Patel <preet.patel@duke.edu>
**Cc:** Shailesh Patel <harihar_inc@hotmail.com>; vinaypatel@sbmhospitality.com <vinaypatel@sbmhospitality.com>; Aditi Patel <aditi.patel@sbmhospitality.com>; Morris, Benjamin J. <BMorris@foley.com>; Adam Walker <adam@awsecuritieslaw.com>
**Subject:** Re: Notice of Action

Preet,

Our attorneys are already in contact with one another. It's not appropriate for you to contact me directly.  You should know this already though. I have copied our counsel on this reply. From here forward, again, please have your counsel notify Adam concerning all future communications/notices until this matter is resolved.

Thank You & Respectfully,

---

**From:** Preet Patel <preet.patel@duke.edu>
**Sent:** Wednesday, November 8, 2023 7:39 AM
**To:** David Hughes <david@zoomeral.com>
**Cc:** Shailesh Patel <harihar_inc@hotmail.com>; vinaypatel@sbmhospitality.com <vinaypatel@sbmhospitality.com>; Aditi Patel <aditi.patel@sbmhospitality.com>; Morris, Benjamin J. <BMorris@foley.com>
**Subject:** Notice of Action

Dear all,

We have been granted permission by our counsel to communicate the following information as we did via Zoomeral as well. The notice went without response so wanted to send directly.

Regarding the letter from our counsel sent to Genie Investment on October 31, 2023., we are prepared to initiate legal action against Genie Investment and contact appropriate government authorities if our ICA Deposit is not returned to us by 11/10/24, including but not limited to, reporting Genie and David Hughes to the Attorney General both in the state of Illinois and state of Nevada and proceeding with litigation as indicated.

Please send this to your counsel as well.

Regards,

Preet S. Patel M.D.

# EXHIBIT G

| | |
|---|---|
| **From:** | raye.elliott@akerman.com |
| **To:** | John from Genie Investments; David from Genie Investments |
| **Cc:** | aaron@arcohenlaw.com; bkmickler@planlaw.com; jennifer.meehan@akerman.com |
| **Subject:** | RE: SERVICE OF COURT DOCUMENT - Case No. 3:24-BK-00496-BAJ - In re: Genie Investments NV Inc. |
| **Date:** | Wednesday, February 5, 2025 1:26:53 PM |
| **Attachments:** | image001.png |

We have received your email.  You can email documents to me but there is no need to email pleadings you file.  I receive them when they are filed with the court via the electronic filing system.

**Raye Elliott**
Tampa: Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333| F: 813 223 2837
Jacksonville: Akerman LLP | 50 North Laura Street, Suite 3100 | Jacksonville, FL 32202
T: 904 798 3700 | F: 904 798 3730
raye.elliott@akerman.com


**From:** John from Genie Investments <jmcohan@genieinvestments.com>
**Sent:** Wednesday, February 5, 2025 11:46 AM
**To:** Meehan, Jennifer (Para-Jax) <jennifer.meehan@akerman.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** Elliott, Raye (Ptnr-Tpa) <raye.elliott@akerman.com>; aaron@arcohenlaw.com; bkmickler@planlaw.com
**Subject:** RE: SERVICE OF COURT DOCUMENT - Case No. 3:24-BK-00496-BAJ - In re: Genie Investments NV Inc.


[External to Akerman]

To whom it may concern:

[1] We received your email.

[2] Please see attached (1) **REPLY**, (2) **RESPONSE**, (3) **RECONSIDERATION** (4) **CERTIFICATE OF FILING** and for *best practices*, please **confirm receipt.**

[3] **Going forward, do *NOT* send *any* correspondence to the 11179 Limerick Drive address.** All correspondence should be by emailed to jmcohan@genieinvestments.com and dhughes@genieinvestments.com or addressed to the PO Box 60443, Jacksonville, Florida 32236.

[4] We will happily *accept service by electronic mail to the email addresses listed above* and we will provide you with return receipts at our earliest convenience.

[5] **Please confirm that Akerman LLP, Mr. Aaron Cohen and Ms. Raye Elliot will accept service by electronic mail via one or more of the following email addresses or provide an**

**email address(es) that are permitted to:**
Jennifer.mehan@akerman.com, raye.elliot@akerman.com, and/or
aaron@arcohenlaw.com.

Thank you.


Sincerely,

**John Michael Cohan**
**Genie Investments, Director**

GENIE INVESTMENTS

A Word of Caution to Sellers & Buyers Business is based on trust. Genie Investments (Genie) is acting solely as Consultants, Genie does not accept any liability on behalf of Sellers or Buyers or their associated Facilitators and/or Intermediaries. Genie advises Buyers and Sellers to take the course of wisdom and perform full verification & due diligence on their own before going into any opportunity.

DISCLAIMER: Sender (jmcohan@genieinvestments.com) is NOT a United States Securities Dealer or Broker or U.S. Investment Advisor. Sender is a Consultant and makes no warranties or representations as to the Buyer, Seller or Transaction. All due diligence is the responsibility of the Buyer and Seller. This E-mail letter and the attached related documents are never to be considered a solicitation for any purpose in any form or content. Upon receipt of these documents, the Recipient hereby acknowledges this Disclaimer. If acknowledgment is not accepted, Recipient must return any and all documents in their original receipted condition to Sender. This electronic communication is covered by the Electronic Communications Privacy Act of 1986, Codified at 18 U.S.C 1367,2510-2521,2701-2710    AS PER GRAMM-LEACH-BLILEY ACT 15 USC, SUBCHAPTER I, SEC 6801-6809 DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION. Also see: http://www.ftc.gov/privacy/glbact/glbsub1.htm

PRIVATE AND CONFIDENTIAL: This communication may contain privileged and/or confidential information.  It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing, or using any of this information. Please inform the sender if you have received this email in error.

This email is not a solicitation or recommendation to buy, sell, or hold securities. This email is meant for informational and educational purposes only and does not provide investment advice.


**From:** jennifer.meehan@akerman.com <jennifer.meehan@akerman.com>
**Sent:** Thursday, January 30, 2025 5:22 PM
**To:** John from Genie Investments <jmcohan@genieinvestments.com>; David from Genie Investments <dhughes@genieinvestments.com>
**Cc:** raye.elliott@akerman.com

**Subject:** SERVICE OF COURT DOCUMENT - Case No. 3:24-BK-00496-BAJ - In re: Genie Investments NV Inc.

| | | |
|---|---|---|
| **Court** | : | United States Bankruptcy Court, Middle District of Florida, Jacksonville Division |
| **Case Number** | : | 3:24-bk-00496-BAJ |
| **Case Style** | : | In re: Genie Investments NV Inc. |
| **Document Served** | : | Motion to Strike Motion to Compel Disclosure of Trustee Communications and Administrative Decisions |
| **Sender** | : | Raye Elliott - Telephone:  (813) 223-7333 |

Akerman Logo



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

# EXHIBIT H

**Excerpts from Special Counsel, Adam Walker's DRAFT Reply Motion to UST Second Factually Unsupported Allegation of Fraud against Debtor and its Stakeholders (Exhibit 🖐)**

*(To protect attorney-client privilege, only selected excerpts are included.)*

**1. The Examiner's Report Does Not Support the UST's Allegations**

*"The UST's insistence that the Report 'confirms' key allegations from its initial motion not only shows its lack of concern for the Report's investigative and analytical rigor but also reveals its willingness to mischaracterize and embellish the Report's contents to suit its purposes. Nowhere in the 51-page Report is there any finding or conclusion that Genie engaged in fraud. The UST simply invented this 'confirmation' and attributed it to its hand-selected Examiner."*

◆ **How This Supports Our Argument:**

- **UST misrepresented the Examiner's Report** to justify its motion.

- **No fraud was found,** contrary to UST's claims.

- **The motion should be dismissed** as it is based on false premises.

**2. Genie Had No Obligation to Hold ICA Payments in Trust**

*"The BELOC Agreement, which both the Examiner and the UST ignore, makes clear that ICA Payments received by Genie were not required to be held in trust and therefore did not constitute 'customer funds.'"*

*"Because Genie was never required to hold ICA Payments in trust for customers, those payments constituted revenue realized by Genie. The possibility that ICA Payments could later become refundable does not change that. Genie is no different from a retail store or service provider that promises refunds to unsatisfied purchasers. The funds Genie received in the form of ICA Payments were its own funds, not 'customer funds,' as the Examiner asserts."*

◆ **How This Supports Our Argument:**

- **ICA Payments were revenue, not deposits,** meaning Genie had the right to use the funds.

- **The Examiner and UST ignored the BELOC Agreement,** which contradicts their claims.

- **UST's claims are legally unfounded,** and the motion should be dismissed.

### 3. The UST Failed to Engage with Relevant Contractual Provisions

*"Neither the Report nor the instant motion even feints at contract interpretation and, as such, neither offers any basis for a determination that Genie had an obligation to hold ICA Payments in trust as customer funds. That alone is grounds to deny the instant motion."*

- ◆ **How This Supports Our Argument:**
  - **UST's motion does not analyze contractual provisions,** making it legally deficient.
  - **UST failed to meet its burden of proof,** warranting dismissal.

### 4. Genie's Compliance with Section 13.7 and the Velanos Settlement

*"The BELOC Agreements openly anticipate the Lender using the ICA Payment, rather than holding it in trust. Section 13.7(a) sets forth when and under what conditions a Borrower may be due an ICA Payment refund. It states that the Lender has up to 40 days to return the ICA Payment after the Borrower properly terminates the BELOC Agreement and requests a refund of the ICA Payment. Section 13.7(c), however, states that this 40-day period is 'tolled during the pendency of a Force Majeure event,' including a wholesale lender's failure to perform its contractual obligations to Genie."*

- ◆ **How This Supports Our Argument:**
  - **Genie fully complied with Section 13.7,** contrary to UST's claims.
  - **The Velanos Settlement was a contractual requirement,** proving good faith.
  - **UST's arguments are contradicted by the actual contractual language.**

### 5. The Examiner's Report Failed to Consider Key Evidence on the Velanos Transaction

*"The Report excludes evidence that Genie had a good-faith belief, based in part on guidance and advice from a reputable law firm, that the Velanos transaction was a sound investment."*

- ◆ **How This Supports Our Argument:**
  - **Genie conducted legal due diligence before entering the Velanos transaction.**
  - **The Examiner's Report omitted critical exculpatory evidence.**
  - **UST's reliance on the Examiner's Report is flawed.**

### 6. The UST's Claims About Affiliate Loans Are Unsupported

*"The affiliate transfers identified in the Report were all made pursuant to loan agreements executed in September 2022. At that time, Genie had successfully funded dozens of loans, had never failed to*

*issue a properly requested refund of an ICA Payment, had not agreed to contribute any money to the joint venture with Velanos, and had never been sued or threatened with suit related to an alleged breach of a BELOC Agreement."*

- ◆ **How This Supports Our Argument:**
  - **Affiliate transfers were executed when Genie was solvent.**
  - **Loans were made under formal agreements, contradicting fraud claims.**
  - **The UST's timeline is inaccurate and misleading.**

---

## 7. Genie Received Reasonably Equivalent Value for the Loans

*"The UST alleges that Genie transferred funds to affiliates 'for less than the equivalent value based on the non-market nature of the loans.' The UST bases its allegation that the terms of these loans would not have been available to Genie's affiliates in the open market on the Report. For its part, the Report is devoid of any evidence regarding the terms that might have been available to the affiliate borrowers."*

- ◆ **How This Supports Our Argument:**
  - **The Examiner's Report provides no evidence that the loans were below market value.**
  - **UST failed to meet its burden of proof.**
  - **Indirect benefits from these loans provided reasonable equivalent value, as recognized in case law.**

# EXHIBIT I

**Section 13.7. <u>Default by Lender and Borrower's Sole Remedy.</u>**

(a)     Provided Borrower has fully satisfied and complied with all conditions to Advance, if Lender fails to provide the first (1st) Advance when due, pursuant to the Tranche Schedule and Section 7.1, Borrower shall have the option to terminate this Agreement and request a full refund of the ICA Payment. Upon the occurrence of such default, Borrower shall deliver written notice in the form of a notarized termination letter, a copy of which is attached hereto as **Exhibit F** ("the **Termination Letter**"), to Lender by certified mail. Upon receipt of such notice, Lender shall have forty (40) international business-banking days from the date of receipt ("**Refund Period**") within which to return the ICA Payment to Borrower.

(b)     If Lender is unable or unwilling to deliver good funds to Borrower, such failure to deliver an Advance other than the first Advance shall constitute a "Lender Default" hereunder. Upon the occurrence of a Lender Default, Borrower shall provide written notice to Lender in the form of a notarized Termination Letter to Lender by certified mail. Within forty (40) international business-banking days from the date of receipt of such notice by Lender, Borrower shall be entitled to (a) refund of the ICA Payment, minus any interest outstanding and unpaid as of the date of the Lender Default, (b) release of all security interests granted by Borrower to Lender hereunder and under the other LOC Documents, and (c) termination of Borrower's obligations to Lender hereunder with the exception of Borrower's obligation to repay to Lender the outstanding principal balance of the Promissory Note including accrued and unpaid interest thereon up to and including the date of the Lender Default, upon which date interest under the Promissory Note shall cease to accrue. Notwithstanding any other provision of this Agreement to the contrary, in no event shall Lender or its affiliates be liable to the Borrower or any other non-party Person,Borrower's subsidiaries, partners or other related entities, for any indirect, special,incidental or consequential damages, losses or expenses in connection with Borrower's oranother Person's activities related to, or otherwise by reason of, the LOC, the Advances, the Agreement or the other LOC documents.

(c)     Notwithstanding anything to the contrary in the subpart (a) above or anywhere else in this Agreement or the other LOC documents, Lender shall not be liable or responsible to the Borrower, nor be deemed to have defaulted under or breached this Agreement, for any failure or delay in funding Advances pursuant to this Agreement, when and to the extent such failure or delay is caused by or results from acts beyond Lender's control, including, without limitation, the following force majeure events ("Force Majeure Event(s)"): (i) acts of God; (ii) flood, fire, earthquake, explosion or prolonged break-down of transport, telecommunications or electric current; (iii) war (whether declared or not), armed conflict or the serious threat of the same (including but not limited to hostile attack, blockade, military embargo), hostilities, invasion, act of a foreign enemy, extensive military mobilization, civil war, riot, rebellion, revolution, military or usurped power, insurrection, civil commotion or disorder, mob violence, act of civil disobedience, act of terrorism, sabotage or piracy; (iv) plague, epidemic, pandemic, outbreaks of infectious disease or any other public health crisis, including quarantine, or other restrictions; (v) act of authority whether lawful or unlawful, compliance with any law or governmental order, rule, regulation or direction, curfew restriction, expropriation, compulsory acquisition, seizure of works, requisition,

nationalization; (vi) embargoes or blockades in effect on or after the date of this Agreement; (vii) national or regional emergency; (viii) strikes, labor stoppages or slowdowns or other industrial disturbances; (ix) failure of the Lender's wholesale lender from preforming under the terms of the agreement between the Lender and the wholesale lender. Lender shall give notice of the Force Majeure Event to the Borrower within a reasonable period from the date Lender realizes such Force Majeure Event has or will have an impact on Lender's ability to fund, stating the period of time the occurrence is expected to continue. Lender shall use reasonably diligent efforts to end the failure or delay and ensure the effects of such Force Majeure Event are minimized. Lender shall resume the performance of its obligations as soon as reasonably practicable after the removal of the cause. The cure periods provided for in subparts (a) and (b) above shall be tolled during the pendency of a Force Majeure Event.

Section 13.8 **Binding Arbitration.** Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Delaware, before one (1) arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures or by ADR Services pursuant to its Arbitration Rules, at the election of the party initiating the arbitration. The Party initiating a demand for arbitration shall serve notice of such demand pursuant to the notice requirements set forth in Section 14.5 herein. Within three (3) banking-business days of service of any demand for arbitration, the Parties to the dispute shall work cooperatively to mutually select an agreeable arbitrator. If the Parties to the dispute are unable to reach agreement on an arbitrator, then the arbitration shall be selected pursuant to the JAMS or ADR Services arbitration selection protocol. Each side shall be entitled to propound one (1) set of requests for production of documents. The requests in each set shall not number more than twenty-five (25) and shall be limited to documents relevant to the issues to be arbitrated. Each side shall further be entitled to notice and take no more than three (3) depositions, which shall last no more than three (3) hours per deponent, including reasonable breaks and objections. No other discovery shall be permitted, except upon a showing of good cause to the arbitrator. Anydisputes regarding discovery shall be submitted to and decided by the arbitrator. The prevailing party shall be entitled to an award of its reasonable costs and expenses, including but not limited to, attorneys' fees, in addition to any other available remedies. Any award rendered therein shall be final and binding on each and all of the parties thereto and their personal representatives, and judgment may be entered thereon in any court of competent jurisdiction. This clause shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriatejurisdiction. Any action or proceeding brought to interpret or enforce this agreement to arbitrate shall be governed by the laws of the State of Delaware. This agreement to arbitrate is intended bythe Parties to constitute a waiver of any right to trial by jury, or the right to proceed in any state orfederal court for resolution of any dispute arising in relation to the enforcement or interpretation of this Agreement, this agreement to arbitrate, or any of the LOC Documents.

## ARTICLE 14
## GENERAL PROVISIONS

Section 14.1. **Disclaimer of Liability.** Lender has no liability or obligation in connection with the Project except to make Advances under the LOC as agreed under the terms of the LOC

# EXHIBIT J

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:

GENIE INVESTMENTS NV INC.,                          Case No.: 3:24-bk-00496-BAJ

      Debtor.                                       Chapter 7

_____/

AARON R. COHEN, Chapter 7 Trustee,

      Plaintiff,                                   Adversary Pro. No. 3:25-ap-00011-BAJ

v.

ZOOMERAL, INC., a Delaware corporation,
CAPITULUM, LLC, a New York limited liability
company, CALD HOLDINGS, LLC, a Florida
limited liability company, GENIE
INVESTMENTS II, LLC, a Delaware limited
liability company, BETTER METHODS, LLC, a
Wyoming limited liability company, and GENIE'S
ANGELS, LLC n/k/a MERKTON GROUP, LLC,
a Delaware limited liability company,

      Defendants.

_____/

## STIPULATION EXTENDING TIME FOR
## DEFENDANT TO RESPOND TO COMPLAINT

Pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedure and Local Rule 9071-

Plaintiff, Aaron R. Cohen, Chapter 7 Trustee (the "Trustee"), and Defendant, Cald Holdings, LLC,

hereby stipulate that the time within which Defendant, Cald Holdings, LLC, may file an answer

or otherwise move with respect to the Trustee's Complaint to Avoid and Recover Fraudulent

Transfers of Property (Adv. Doc. 1) is hereby extended through and including March 31, 2025.

80383953;1

IT IS SO STIPULATED this 7th day of March, 2025.

AKERMAN LLP

By: /s/ Raye C. Elliott
    Raye  C. Elliott, Esq.
    Florida Bar Number: 018732
    Email: raye.elliott@akerman.com
    401 East Jackson Street, Suite 1700
    Tampa, FL 33602
    Phone:  (813) 223-7333
    Fax:  (813) 223-2837

Attorneys for Aaron R. Cohen, Chapter 7
Trustee

McCONNELL LAW GROUP, P.A.

By: /s/ Jerrett M. McConnell
    Jerrett M. McConnell, Esq.
    Florida Bar Number: 244960
    Email: jmcconnell@mcconnelllawgroup.com
    6100 Greenland Rd., Unit 603
    Jacksonville, FL 32258-2453
    Phone:  (904) 570-9180

Attorneys for Defendant, Cald Holdings,
LLC, a Florida limited liability company

*Filer's Attestation: Pursuant to Local Rule
1001-2(g)(3) regarding signatures, Raye C.
Elliott attests that concurrence in the filing of
this paper has been obtained*

80383953;1

# EXHIBIT K

## Summary Analysis of Trustee's Misconduct

**I. Bad Faith Litigation** - Bad faith litigation occurs when legal action is pursued without merit to harass, delay, or increase costs **(28 U.S.C. § 1927; Fed. R. Civ. P. 11; Bankruptcy Rule 9011)**. Courts sanction trustees for frivolous claims, factual misrepresentation, or procedural misconduct (*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996)).

1. **Unjustified Targeting of Movants** – The Trustee initiated adversary proceedings against Movants' assets without reviewing financial records, showing reckless disregard for due process (*In re Model Imperial, Inc., 250 B.R. 776, 794 (Bankr. S.D. Fla. 2000)*).

2. **Contradictory Filings** – The Trustee's inconsistent statements in Docs. 276 & 329 manipulate legal outcomes, violating **Rule 11(b)** (*McDonald v. Emory Healthcare Eye Ctr.*, 391 F. App'x 851 (11th Cir. 2010)).

3. **Misrepresentation & Omission of Financial Records** – The Trustee knowingly withheld exculpatory evidence, violating **Rule 9011**, and issued baseless legal threats against Movants (*In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996)).

4. **Intentional Misstatements in Doc. 329** – The Trustee falsely claimed no response was received to justify adversary proceedings, later admitting receipt. Courts recognize such misrepresentations as bad faith (*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

5. **Fruit of the Poisonous Tree – Recycled and Defeated Arguments** – The Trustee is improperly reusing allegations that the U.S. Trustee already raised twice and lost. These allegations were found to be **without merit** yet are being repackaged to justify continued harassment of Movants. Any evidence or claims derived from these **previously defeated allegations** should be deemed inadmissible, as courts reject litigation that stems from a legally defective foundation (*Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000)). This further supports that the Trustee's actions are not grounded in estate administration but rather a deliberate campaign of bad faith litigation.

6. **Suits are a Lack of Benefit to the Estate** – The Trustee may be "*cutting off his nose to spite his face.*" After the case was converted from Chapter 11 to Chapter 7, Hughes provided testimony detailing the **severe financial** and **reputational damage** inflicted upon the Insider Companies. Hughes specifically addressed how **Kristin Stegent and certain other individuals deliberately engaged in a social media smear campaign**, causing irreparable harm to the Insider Companies. As an example, Hughes emphasized that **ZOOMERAL's revenue plummeted from $600,000 in one year to just $10,000**, *directly* due to **organized online defamation, slander, and libelous attacks by certain creditors**. Hughes and Cohan are now faced with a decision of whether or not to personally provide capital to the Insider Companies for attorneys that have standing to represent the companies. This being said, even if the Trustee were successful in receiving judgments on the Insider Companies, the benefit for the estate is not there. The cost benefit does not exist for estate funds to be spent on pursuing unrecoverable judgements. Additionally, there is no benefit to Cohan or Hughes to pour additional capital into the companies that have endured and continue to endure destruction by the creditors and the Trustee themselves. The Trustee, fully being aware of the financial status ignores this entirely in attempt to conceal their misconduct.

**II. Abuse of Process** - Abuse of process occurs when legal proceedings are misused for coercion, extortion, or harassment (*Tully v. Barada*, 536 So. 2d 1330 (Fla. Dist. Ct. App. 1989)).

1. **Procedural Manipulation** – The Trustee initially disclaimed discovery needs from Movants, then reversed course to justify litigation, burdening Movants personally (*In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1999)).

2. **Overreach into Personal Assets** – The Trustee improperly attempted to extend estate control over personally owned assets (*In re Gorski*, 766 F.3d 844 (8th Cir. 2014)).

**Summary Analysis of Trustee's Misconduct**

3. **Weaponizing Litigation** – The Trustee issued unfounded threats, forced costly litigation, and ignored exculpatory evidence, amounting to coercion (*Board of Education v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397 (1975)).

4. **Contradictory Statements Indicating Abuse** – The Trustee's claim of no response, contradicted by later admission, confirms intentional procedural misconduct (*Board of Education v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397 (1975)).

5. **Publicizing Movants' Personal Information in Retaliation** – The Trustee continued to send correspondence to incorrect addresses and deliberately disclosed Movants' personal addresses in public court filings, despite explicit instructions to refrain. Courts recognize such acts as harassment and improper use of legal process to intimidate and retaliate (*Tully v. Barada*, 536 So. 2d 1330 (Fla. Dist. Ct. App. 1989)).

**III. Retaliation** - Retaliation occurs when a party suffers adverse action for exercising legal rights, requiring (1) protected conduct, (2) adverse action, and (3) a causal link (**42 U.S.C. § 1983**; *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).

1. **Immediate Retaliation** – Within two hours of Movants asserting their constitutionally protected rights, the Trustee sent cease-and-desist demands. Two days later, they issued a personal retaliatory demand letter along with five others targeting Movants' personal assets—all within thirty (30) minutes. Only ten (10) days later, they filed adversary proceedings claiming fraudulent transfers without reviewing the bank records. Initially claiming coincidence, the Trustee later fabricated an unverified timeline—without evidence—to justify their actions. This strongly satisfies the "but-for causation" standard (*Nassar*, 570 U.S. 338 (2013)).

2. **Legal Threats to Intimidate** – The Trustee issued demand letters with baseless sanction threats and intentionally did not follow through, showing intent to deter legal challenges via de facto litigation (*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

**IV. Breach of Fiduciary Duty** A trustee owes a fiduciary duty of loyalty, impartiality, and care. Breach occurs when a trustee acts in bad faith, mismanages estate assets, or harms estate beneficiaries (*Mosser v. Darrow*, 341 U.S. 267 (1951)).

1. **Estate Funds Used for Retaliation** – The Trustee incurred excessive legal fees responding to disputes arising from their own misconduct, violating fiduciary obligations (*In re United States Lines, Inc.*, 303 B.R. 784 (Bankr. S.D.N.Y. 2004)).

2. **Misrepresenting Movants' Standing** – The Trustee inconsistently characterized Movants to deny them legal standing, then reversed stance to justify their contradictive litigation strategy (*In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir. 1983)).

3. **Suppressing Exculpatory Evidence** – The Trustee withheld financial records proving Movants' innocence, warranting sanctions or removal (*Mosser v. Darrow*, 341 U.S. 267 (1951)).

4. **Intentional Misrepresentation** – The Trustee's contradictory claims in Doc. 329 constitute deliberate deception, violating fiduciary duties (*Mosser v. Darrow*, 341 U.S. 267 (1951)).

5. **Punitive Litigation** – The Trustee's adversary proceedings imposed financial burdens without legitimate estate objectives, constituting retaliation (*In re Gorski*, 766 F.3d 844 (8th Cir. 2014)).

# EIGHT (8) BADGES OF FRAUD DISPLAYED BY THE CHAPTER 7 TRUSTEE

## 1. Lack of Consideration for Actions Taken

- The Trustee pursued adversary proceedings and legal threats **without any legitimate estate purpose**, failing to demonstrate how these actions benefitted creditors or the estate (*In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983)).

- This indicates the **misuse of legal proceedings for personal or retaliatory motives** rather than for estate administration.

## 2. Family, Insider, or Special Relationships Between Parties

- The Trustee engaged in **selective enforcement** by **treating similarly situated parties differently**:

    o Movants were **personally targeted** while actions against other **entities were stalled (Warren Law Group)** from adversary actions. The Trustee fired competent, experienced, economically sound counsel, barred in the state where the claims would be made–First, the Trustee said counsel had no legal malpractice experience, now the Trustee is changing the narrative again to fit their contradictive litigation strategy saying counsel should have had more experience (**Doc. 276 – Paragraph 7 and Doc. 329 – Paragraph 8**)). They then "contacted" and "interviewed" 5 firms and have been in the "process of selecting an attorney" since **01-29-2025**. To at least **03-07-2025**, the date of the Trustee's most recent response, **37 days** from their response, the Trustee admits to still not having hired counsel to pursue Warren Law Group and Scott Oh for the legal malpractice claims. [In the same breath, (**Case No. 3:25-ap-00011-BAJ - Doc. 12 – Filed March 10, 2025**) the Trustee would agree to an extension if Movants hired counsel and respond for their **5 companies in a 21-day period** from the date of the filing. So, according to the Trustee, Movants should operate at a pace much quicker than they should be expected to. They've had over 3 months to contact, interview and select counsel, *still* have *not* and are expecting Movants to do the same and file a response in a mere 3 weeks.]

    o The Trustee's strategy, whether by design or consequence, is to divert scrutiny away from certain entities, while disproportionately focusing on Movants. Simultaneously (and successfully in the form of temporary stays), the Trustee began blocking Movants from personal constitutionally protected claims almost immediately within 2 hours from Movants commencement of asserting their rights. Within 48 hours, Movants received baseless personal threats for sanctions. Then the Trustee, 10 days later, filed the Adversary Complaint (**Case No. 3:25-ap-00011-BAJ - Doc. 1 – Filed February 6, 2025**) containing fraudulent transfer claims prior to looking at **ALL** of the Bank Records being reviewed, a reckless and complete disregard of the facts (**Chase Bank Subpoena - Doc. 273 – Dated 01-24-2025**) despite good faith discussions and timely responses (**Doc. 276 - Exhibit B, Doc. 322 – Exhibit C**) and the exculpatory evidence, **Exhibit L (Doc. 287)** emerging on **February 5, 2025**. Since this document emerged, the Trustee intentionally omitted the $1.1MM fraudulent transfer claims from the Adversary Complaint entirely when they originally used it as their basis for pursuing Insiders, once again, fitting their contradictory and fraudulent litigation strategy.

    o The Trustee **stipulated extensions independently (Case No. 3:25-ap-00011-BAJ - Doc. 10 – Case No. 3:25-ap-00011-BAJ)** for certain defendants while aggressively litigating against Movants, intentionally failed to notice the other interested defendants (Movants) in the matter of this action and intentionally omitted a Certificate of Service to disguise their conduct.

- Courts recognize **preferential treatment of parties** as a sign of fraudulent intent (*In re Roco Corp.*, 701 F.2d 978 (1st Cir. 1983)).

## 3. Retention of Control Over Property or Assets

- The Trustee attempted to **extend control over non-estate assets** through adversary proceedings, even where clear **corporate separateness** existed. (Section 13.7 of every agreement Genie Investments NV Inc. executed with its corporate customers)

# EIGHT (8) BADGES OF FRAUD DISPLAYED BY THE CHAPTER 7 TRUSTEE

- This overreach **exceeded the Trustee's authority** and was intended to coerce Movants personally rather than maximize estate recovery (*In re Gorski*, 766 F.3d 844 (8th Cir. 2014)).

### 4. Financial Distress or Litigation Against Targeted Parties

- The Trustee strategically increased legal pressure on Movants **only after** they asserted their rights, forcing them into costly litigation.

- Courts have found that targeting financially strained parties as a means of coercion is a sign of **fraudulent legal abuse** (*Tully v. Barada*, 536 So. 2d 1330 (Fla. Dist. Ct. App. 1989)).

### 5. Concealment or Misrepresentation of Key Facts

- The Trustee **omitted financial records** that disproved claims against Movants, violating **Bankruptcy Rule 9011**.

- The Trustee's filings **contained contradictory statements**, including:

    o **First, claiming no discovery was needed from Movants.**

    o **Later, claiming a lack of information justified further action (i.e. Chase Bank subpoena (Doc. 273) – 127 days after the Trustee was "ready to move forward with claims against Insiders" after "attempting to determine the disposition of $1.1MM," "coincidently" the same day the Trustee sent out the demand letters to Movants personally (Doc. 276 - Paragraphs 5 & 13), and now holds an elaborate but contradictory timeline (Doc. 276 - Exhibit B, Doc. 329 – Paragraphs 5 & 12).**

    o **"Fruit of the Poisonous Tree" Doctrine** – The Trustee's entire adversary proceeding is built on defective legal foundations, including recycled arguments the U.S. Trustee already used and lost on twice. Courts reject attempts to relitigate settled matters under the guise of new claims, particularly when they are used for harassment or retaliation (*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

- Courts hold that **intentional misrepresentation** to justify legal actions is a badge of fraud (*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

### 6. Secret or Hasty Transactions

- The Trustee's rapid issuance of **cease-and-desist letters, demand notices, and adversary proceedings**—within *hours* and *days* of Movants asserting their constitutionally protected rights—demonstrates **reactionary legal maneuvers** rather than strategic estate administration.

- Courts recognize **hasty, unexplained legal actions** as indicators of fraud (*In re Model Imperial, Inc.*, 250 B.R. 776 (Bankr. S.D. Fla. 2000)).

### 7. Retaliatory or Suspicious Timing of Actions

- The Trustee escalated litigation **immediately after** Movants asserted their rights:

    o Cease-and-desist orders issued **within 2 hours** of Movants asserting their rights.

    o Demand letters containing baseless personal demands followed **within 2 days**, adversary proceedings **within 10**, despite good faith discussions and timely responses (Doc. 276 - Exhibit B, Doc. 322 – Exhibit C).

# EIGHT (8) BADGES OF FRAUD DISPLAYED BY THE CHAPTER 7 TRUSTEE

- o After initially dismissing the timing as a "coincidence," the Trustee later **fabricated a timeline** of planning <u>without providing evidence</u>.

- Courts recognize **sudden retaliatory legal actions** as a badge of fraud (*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).

### 8. Inconsistencies in Statements and Legal Justifications

- The Trustee's **shifting explanations** for targeting Movants contradict official records:

  - o First claiming **"coincidental timing"** of legal threats.

  - o Later **manufacturing an unverified timeline** to justify the adversary proceedings.

  - o Failing to produce **any documentation** proving pre-planned actions other than a subpoena that was filed the same day the personal threatening demand letters were sent to Insiders.

  - o Requesting a stay and then *intentionally* violating it.

  - o The Trustee states they **"never"** received a response to their demands, so they filed the Adversary Complaint, then **later in the same filing, admits they received a response** from Movants to their demands prior to filing the complaint.

  - o First, they did not need discovery from Movants, now they say they filed a subpoena to Chase Bank the same day their retaliatory demands were sent to Movants, **proving they filed first and looked for evidence later**.

  - o **Recycling Arguments** – The Trustee is reusing the same baseless allegations that the U.S. Trustee already attempted twice and lost both times. By doing so, the Trustee is knowingly pushing a narrative that has already been deemed meritless, further evidencing an abusive litigation strategy meant to harass Movants rather than pursue legitimate estate recovery.

  - o **"Fruit of the Poisonous Tree" Doctrine** – Since the Trustee's legal theories are based on previously failed claims, any evidence or arguments derived from those same defective premises should be discredited. Courts have long held that arguments built upon legally defective foundations cannot be repurposed to justify further legal action (*Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000)).

- Courts hold that **inconsistent justifications** indicate **intentional fraud or bad faith litigation** (*Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000)).

**CONCLUSION**: The Trustee's actions inarguably demonstrate **8 out of the 8** most common **badges of fraud**, collectively proving that their litigation strategy was **not legitimate estate administration**, but an **abuse of power intended to retaliate against and financially burden Movants personally**. Courts have routinely sanctioned trustees for such misconduct, recognizing it as **fraudulent legal abuse warranting judicial intervention** (*In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983); *In re Roco Corp.*, 701 F.2d 978 (1st Cir. 1983), *Mosser v. Darrow*, 341 U.S. 267 (1951); *In re Rainbow Magazine*, Inc., 77 F.3d 278 (9th Cir. 1996)).

**Even 2 or 3 badges are enough to raise presumptions of fraud, and courts rarely require more than 5-6 to take action.**