**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC.,                    Case No.: 3:24-bk-00496-BAJ

          Debtor.                                    Chapter 7

_____/

## TRUSTEE'S BRIEF IN SUPPORT OF MOTION TO ENFORCE AUTOMATIC STAY

      Aaron R. Cohen, Chapter 7 Trustee (the "Trustee"), by and through his undersigned counsel, pursuant to the Court's March 3, 2025 Order Scheduling Trial, submits his Brief in Support of his Motion to Enforce Automatic Stay and would show the Court as follows:

### Factual Background

      1.     The Trustee incorporates by reference the factual background in his Motion to Enforce Automatic Stay (Doc. 296) (the "Stay Motion") and adds the following additional facts.

      2.     In the Velanos Adversary Proceeding[1], the Court entered a Final Judgment in favor of the Trustee and against Velanos on March 4, 2025 confirming the arbitration award in favor of the Debtor and entering judgment in the amount of $20 million against Velanos. The Trustee served discovery in aid of execution of the judgment on Velanos on March 14, 2025.

      3.     On February 14, 2025, Cohan and Hughes filed a "Complaint for Legal Malpractice, Negligence, Breach of Fiduciary Duty, Bad Faith, Fraud, Coercion, and Extortion" in the United States District Court, Middle District of Florida, Jacksonville Division (the "District Court") against Scarinci Hollenbeck, LLC as successor in interest to Warren Law Group and Scott Oh, Case Number 3:25-cv-164-HES-MCR (the "Scarinci Action"). A copy of the complaint filed

---

[1] Capitalized terms shall have the same meaning as defined in the Stay Motion.

in the Scarinci Action is attached as **Exhibit A**. In their complaint filed in the Scarinci Action, Cohan and Hughes assert claims for legal malpractice, negligence, breach of fiduciary duty, bad faith, fraud, coercion, and extortion.

4.      On its Schedule A/B, the Debtor listed a claim for legal malpractice against Warren Law Group ("Warren Law"). (Doc. 39, p. 13). Warren Law and attorney, Scott Oh ("Oh") who was employed by Warren Law, represented the Debtor in connection with the joint venture agreement the Debtor entered into with Velanos, which resulted in the loss of $9 million by the Debtor.

5.      The Trustee was provided with a copy of the engagement agreement between the Debtor and Warren Law and also served a subpoena for the production of documents on Warren Law. (Doc. 256). A copy of the Warren Law engagement agreement is attached as **Exhibit B**.[2] Based on the engagement agreement and documents produced in response to the Trustee's subpoena, it is clear that Warren Law was engaged to represent the Debtor, and not Cohan and Hughes individually.

6.      Since his appointment, the Trustee has actively interviewed several legal malpractice attorneys in New York City to represent the Trustee for the claims held by the Debtor (and now held by the Trustee). Warren Law is located in New York and the terms of the firm's engagement agreement provide that New York law governs any disputes between the parties and that an action against the firm must be brought as an arbitration filed with the JAMS arbitration service. The Trustee has also entered into a tolling agreement with Warren Law and Oh to toll the statute of limitations for the legal malpractice claim. However, before formally retaining New York legal malpractice counsel and filing an arbitration petition, the Trustee believes that the issue

---

[2] The engagement agreement erroneously names Genie Investments, NV, LLC as the client, rather than Genie Investments, NV, Inc.

of whether or not Cohan and Hughes can pursue a separate claim against Warren Law and Oh needs to be resolved because it will impact the amount available for recovery. In summary, the Trustee has actively been pursing the Debtor's claims against Warren Law.

7.       The Scarinci Action was filed independently of the Trustee's administration of the bankruptcy estate. All of Cohan's and Hughes' claims in the Scarinci Action are based on the same harm caused by Warren Law's and Oh's legal professional negligence in their representation of the Debtor.

8.       Each count in the Scarinci Action complaint is interconnected to the same harm and thus all of the subsequent harm and injury caused by Warren Law's and Oh's professional negligence which are legal claims that belong to the bankruptcy estate and which the Trustee has the exclusive standing to pursue.

9.       Count I of the Scarinci Action complaint alleges a claim for legal malpractice and Count II alleges a claim for negligence against Warren Law and Oh. Warren Law and Oh represented the Debtor and therefore all claims for legal malpractice or negligence belong exclusively to the bankruptcy estate and only the Trustee has standing to pursue claims against Warren Law and Oh for legal malpractice and negligence.

10.      Count III of the Scarinci Action complaint alleges a claim for breach of fiduciary duty, Count IV alleges a claim for bad faith, Count V alleges a claim for fraud, Count VI alleges a claim for coercion, and Count VII alleges a claim for extortion against Warren Law and Oh. Each of the counts derives from and is a continuation of the initial harm – the Debtor and consequently the bankruptcy estate's direct loss due to Warren Law's and Oh's professional negligence.

80888766;1

## **Memorandum of Law**

No matter how Cohan and Hughes describe the claims asserted in the Velanos Lawsuit and Scarinci Action as "personal" harm inflicted upon them, the claims are clearly property of the bankruptcy estate because they derive from and flow from the harm inflicted upon the Debtor. As such, the causes of action against Velanos and Warren Law are property of the estate and Cohan's and Hughes' attempts to pursue those causes of action violate the automatic stay.

As the Trustee explained in his Stay Motion, the automatic stay imposed by Section 362 of the Bankruptcy Code applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 362 applies broadly to all property of the estate under § 541.

Without question, "property of the estate" includes choses or causes of action, like the Debtor's claims against Velanos for breach of the Settlement Agreement and claims against Warren Law and Oh for legal malpractice. Property of the estate "includes legal causes of action the debtor had against others at the commencement of the bankruptcy case." *In re Icarus Holding, LLC*, 391 F. 3d 1315, 1319 (11th Cir. 2004). *See also  In re Alipour*, 252 B.R. 230, 233 (Bankr. M.D. Fla. 2000) (explaining that the definition of property of the estate "is very broad, and includes causes of action belonging to the debtor at the commencement of the case" and holding that debtor's legal malpractice claim was property of the estate); *Matter of Educators Group Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994) (explaining that if a cause of action belongs to the estate the trustee has exclusive standing to assert the claim). "The law is quite clear that if a debtor has filed a lawsuit, or has the right to file a lawsuit, after the debtor files a Chapter 7 case, that lawsuit, or whatever rights the debtor had in that lawsuit, belongs to the debtor's Chapter 7 bankruptcy estate." *In re Douglas Asphalt Co.*, 483

4

B.R. 560, 571 (Bankr. S.D. Ga. 2012), *quoting In re Tarrant,* 349 B.R. 870, 873 (Bankr. N.D. Ala. 2006).

Although Cohan and Hughes insist that they are not asserting claims that belong to the Debtor because their claims are "personal" for the harm they suffered as a result of Velanos's breach of the Settlement Agreement and Warren's and Oh's legal malpractice, in reality Cohan's and Hughes' claims are "derivative" of the Debtor's claims and are not direct claims against Velanos and Warren. Cohan and Hughes do not have the rights to *directly* pursue claims arising out of Velanos's breach of the Settlement Agreement and Warren Law's legal malpractice because Cohan and Hughes did not suffer any *direct* harm. The direct harm was caused *to the Debtor* through Velanos's breach of the Settlement Agreement and Warren Law's legal malpractice. Thus, the right to pursue direct claims arising out of Velanos's breach of the Settlement Agreement and Warren Law's legal malpractice are property of the bankruptcy estate.

By contrast, Cohan and Hughes, as the owners of the Debtor, have been indirectly harmed because their harm is derived from harm to the Debtor caused by Velanos's breach of the Settlement Agreement and Warren Law's legal malpractice. Stated differently, Cohan's and Hughes' harm is dependent and flows from the breached Settlement Agreement[3] by Velanos and the legal malpractice by Warren Law and Oh. In the bankruptcy context, a debtor (or a Chapter 7 trustee) has standing to bring "derivative" claims to redress injuries to the company that indirectly harm the creditors. *In re Seven Seas Petroleum, Inc*., 522 F.3d 575, 584 (5th Cir. 2008) ("If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate and only the bankruptcy trustee has standing to pursue the claim for the estate so that all

---

[3] It is also questionable where Cohan and Hughes actually suffered any harm from Velanos's breach of the Settlement Agreement since all funds paid by Velanos under the Settlement Agreement would have been paid to the bankruptcy estate for distribution to creditors.

creditors will share in any recovery."); *Matter of Buccaneer Res., L.L.C.*, 912 F.3d 291, 293-294 (5th Cir. 2019) ("To pursue a claim on its own behalf, a creditor must show this direct injury is not dependent on injury to the estate."). Cohan and Hughes cannot make this showing.

In this case, one need look no further than Cohan's and Hughes' complaints against Velanos and Warren to see that their claims are "derivative" of harm to the Debtor. For example in the Velanos Lawsuit complaint, Cohan and Hughes assert a claim against Velanos for breach of contract for Velanos's breach of the Settlement Agreement. *See* Stay Enforcement Motion at Ex. A, p. 2. The parties to the Velanos Settlement Agreement were originally the Debtor and subsequently the Trustee. Clearly, it was the bankruptcy estate that was harmed by Velanos's breach of the Settlement Agreement and any harm suffered by Cohan and Hughes (which is questionable) is derivative of the bankruptcy estate's harm. Additionally, the Settlement Agreement is a post-petition asset of the estate since it was entered into post-petition and approved by this Court post-petition. "[A]ny interest in property that the estate acquires after the commencement of the case is property of the estate; for example, if the estate enters into a contract, after the commencement of the case, such a contract would be property of the estate." *In re Gallucci*, 931 F.2d 738 (11th Cir. 1991), *quoting* 124 Cong. Rec. 32,399 (1978). In this case, both the Settlement Agreement itself and any cause of action for breach of the Settlement Agreement are property of the estate.

Count II of the Velanos Lawsuit complaint alleges a claim for fraudulent misrepresentation based on Velanos's alleged "false and misleading statements regarding their financial capabilities and intention to honor the settlement." *Id.* at p. 3. Again, any false and misleading statements made by Velanos to induce the Debtor to enter into the Settlement Agreement were *made to the Debtor* and not to Cohan and Hughes in their individual capacities. Any harm suffered by Cohan and Hughes as a result of Velanos's false statements flows from the harm suffered by the Debtor. Finally, in

Count III of the Velanos Lawsuit complaint, Cohan and Hughes assert claims for unjust enrichment and fraudulent conveyance based on Velanos allegedly receiving financial benefits from them without providing consideration and for Velanos's alleged fraudulent transfer of assets. Once more, any unjust enrichment received by Velanos resulted from funds provided *by the Debtor* and not by Cohan and Hughes personally. Furthermore, any fraudulent transfer causes of action against Velanos or others[4] belong to the Trustee as a now judgment creditor of Velanos. Cohan and Hughes, on the other hand, did not suffer any particularized harm because *all* of the Debtor's creditors suffered when the Debtor lost the $9 million it invested with Velanos. *See, e.g., In re Madoff*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012) (holding that claims were derivative because the alleged wrongful acts had harmed every investor in the firm in the same way and for the same reason, every customer could have brought similar claims, and plaintiffs could not articulate any *particularized* harm or acts specifically directed at them).

Likewise, the claims in the complaint filed by Cohan and Hughes in the Scarinci Action arise out of the harm caused to the Debtor. Counts I and II of the Scarinci Action complaint are for legal malpractice and negligence (which are the same cause of action). *See* Exhibit A at pp. 3-4. Warren Law and Oh represented the Debtor – they did not represent Cohan and Hughes in their individual capacities. Any harm suffered by Cohan and Hughes as a result of Warren Law's and Oh's professional negligence is derivative of the harm suffered by the Debtor. Similarly, each of the remaining counts in the Scarinci Action complaint for breach of fiduciary duty, bad faith, fraud, coercion, and extortion arise out of Warren Law's and Oh's representation *of the Debtor*. *See* Exhibit

---

[4] Cohan and Hughes also named Joshua Wearmouth (the principal of Velanos), Nordic Trust Alliance KB, LLC (a company that was allegedly a bank at which Velanos, prepetition, represented it had deposited funds for the Debtor, and an unknown company by the name of Resydency as additional defendants in the Velanos Lawsuit. Any claims against these additional defendants are also property of the estate because the claims arise out of the Debtor's joint venture agreement with Velanos or a result of any fraudulent transfers made by Velanos which belong to the Trustee as judgment creditor of Velanos.

A at pp. 4-5. The engagement agreement with Warren Law clearly establishes that the firm was representing the Debtor and not Cohan and Hughes individually. Yet again, the harm caused by Warren Law and Oh was to the Debtor and not to Cohan and Hughes, individually. Additionally, Cohan and Hughes did not suffer any particularized harm different than the harm suffered by all of the Debtor's creditors resulting from Warren Law's and Oh's professional negligence. "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Educators Group Health Trust*, 25 F.3d at 1284.

The claims asserted by Cohan and Hughes in the Velanos Lawsuit and Scarinci Action are classic derivative claims. In *In re Lothian Oil, Inc*., for example, when third parties lured a debtor into transferring oil and gas assets to them, they eliminated the creditors' hopes of recovering a portion of the value of those assets. 531 F. App'x 428, 439 (5th Cir. 2013). The creditors' injury (reduced bankruptcy recovery) was derived from injury to the debtor (the loss of estate assets), so only the estate could sue the third parties. *Id.* at 439–40.

The Trustee has already obtained a judgment against Velanos which he is working to collect and is actively pursuing the estate's claim against Warren Law and Oh. Failing to enforce the automatic stay against Cohan's and Hughes' Velanos Lawsuit and Scarinci Action would only further deplete the funds available to the estate for its claims and, thus, the ultimate distribution to the Debtor's creditors. For example, Warren Law's malpractice insurance policy is a "wasting" policy in which defense fees and costs reduce the policy limit and amount available for recovery. If Warren Law were to have to defend suits brought by both the Trustee and Cohan and Hughes, it would deplete the malpractice insurance policy and the amount available for recovery by the Trustee

8

for the benefit of the Debtor's creditors. The automatic stay must be enforced to protect and preserve the assets of the estate for the exclusive benefit of the Debtor's creditors.

Despite Cohan's and Hughes' repeated statements that the claims they are pursing against Velanos, Warren Law, and Oh are "personal claims" that do not belong to the bankruptcy estate, the claims being asserted by Cohan and Hughes are clearly claims that belong to the Debtor as demonstrated above when detailing the complaints they filed. Cohan's and Hughes' claims to the contrary are simply misguided and stem from a fundamental misunderstanding of the law. For example, the fact that the Velanos Settlement Agreement defines "Genie" as including its "officers and directors" does not mean that Cohan and Hughes are actually parties to the Settlement Agreement with standing to sue for its breach. The only parties to the Settlement Agreement are Velanos and, first, the Debtor and subsequently the Trustee. Any cause of action for breach of the Settlement Agreement or claims against Velanos surrounding the execution of the Settlement Agreement or the underlying joint venture agreement with Velanos belong exclusively to the bankruptcy estate.

Similarly, Cohan and Hughes do not have "personal claims" against Warren Law and Oh. The Warren Law engagement agreement clearly establishes that the firm was retained to represent the Debtor – not Cohan and Hughes personally. Therefore, any claims for legal malpractice belong to the Debtor and are property of the bankruptcy estate under § 541. By pursing causes of action that belong to the bankruptcy estate, Cohan and Hughes are violating the automatic stay. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or exercise control over property of the estate." Cohan's and Hughes' claims against Velanos and Warren Law are causes of action that are property of the estate and are, therefore, subject to the automatic stay. In both cases, Cohan and Hughes are seeking recovery of the same damages as the

Trustee seeks on behalf of the Debtor. As such, Cohan and Hughes not only seek the same recovery as, but they are derived from, the Trustee's claims against Velanos and Warren Law. The complaints filed by Cohan and Hughes against Velanos and Warren Law violate the automatic stay. *See In re The Center for Special Needs Trust Administration, Inc.*, No. 8:24-bk-00676-RCT (Bank. M.D. Fla. August 5, 2024), *aff'd*, No. 8:24-cv-0192-WFJ (M.D. Fla. Feb. 19, 2025).[5]

<u>Conclusion</u>

WHEREFORE, Aaron R. Cohen, Chapter 7 Trustee, respectfully requests that the Court enter an order enforcing the automatic stay against the Velanos Lawsuit and Scarinci Action and for such other and further relief as the Court deems just and proper.

Dated:  April 11, 2025                          AKERMAN LLP

By: */s/ Raye C. Elliott*
      Raye  C. Elliott, Esq.
      Florida Bar Number: 018732
      Email: raye.elliott@akerman.com
      401 East Jackson Street, Suite 1700
      Tampa, FL 33602
      Phone:  (813) 223-7333
      Fax:  (813) 223-2837

Attorneys for Aaron R. Cohen, Chapter 7 Trustee

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 11, 2025, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record and a true and correct copy was served by electronic mail to the following who consented in writing to receive service of pleadings at the email address listed below:

John Michael Cohan                          David Hughes
iustusprocessus@outlook.com                 iustusprocessus@outlook.com


*/s/ Raye C. Elliott*
Attorney

---

[5] Copies of these opinions are attached as Exhibit C to the Stay Enforcement Motion.

80888766;1

# Exhibit A

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**JOHN MICHAEL COHAN and DAVID HUGHES,**
Plaintiffs,

v.

**SCARINCI HOLLENBECK, LLC, as successor in interest to WARREN LAW GROUP, and SCOTT OH,**

Defendants.

Case No.: ___3:25-cv-164-HES-MCR___

---

### COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BAD FAITH, FRAUD, COERCION, AND EXTORTION

Plaintiffs, **John Michael Cohan and David Hughes** (collectively, "Plaintiffs"), bring this action against **Scarinci Hollenbeck, LLC, as successor in interest to Warren Law Group, and Scott Oh** ("Defendants") for **legal malpractice, negligence, breach of fiduciary duty, bad faith, fraud, coercion, and extortion**, and allege as follows:

---

### I. PARTIES

1. **Plaintiff John Michael Cohan** is a resident of Florida and a **stakeholder** in **Genie Investments NV, Inc.**, which retained Defendants for legal services.

2. **Plaintiff David Hughes** is a resident of Illinois and a **stakeholder** in **Genie Investments NV, Inc.**, which retained Defendants for legal services.

3. **Defendant Scarinci Hollenbeck, LLC** is a law firm and the **successor entity to Warren Law Group**, following a **forward merger between the two entities**.

4. **Defendant Scott Oh** was, at all relevant times, a licensed attorney and a partner at **Warren Law Group, now part of Scarinci Hollenbeck, LLC**. It is **unknown whether Scott Oh's employment is still active**.

---

### II. JURISDICTION AND VENUE

5. This Court has **jurisdiction** pursuant to **28 U.S.C. § 1332**, as the controversy arises out of **actions conducted by Defendants that resulted in personal harm to Plaintiffs**, with one Plaintiff residing in Florida.

6. **Venue is proper** in the **Middle District of Florida, Jacksonville Division,** under **28 U.S.C. § 1391(b),** as the acts giving rise to the claims occurred in this district, and one of the Plaintiffs resides in Florida.

7. The courthouse is located at **300 North Hogan Street, Jacksonville, Florida 32202.**

---

### III. FACTUAL BACKGROUND

#### A. Personal Claims & Explicit Disclaimer

8. Plaintiffs **are not pursuing claims on behalf of Genie Investments NV, Inc.** or its bankruptcy estate.

9. Instead, this action is brought **solely for the personal financial losses, reputational harm, and emotional distress suffered by Plaintiffs** due to Defendants' misconduct.

10. Defendants' **malpractice, negligence, and fraudulent conduct** did not just harm Genie Investments NV, Inc., but also **personally harmed Plaintiffs,** who relied on Defendants for legal counsel and suffered **direct financial, reputational, and emotional damages** as a result.

#### B. Adam Walker's Findings (Exhibit A)

11. Plaintiffs submit as **Exhibit A** the **sworn declaration of Adam B. Walker,** a **12-year veteran FINRA enforcement attorney** who routinely investigated **fraudulent financial schemes**.

12. Adam Walker's declaration provides **expert findings and factual evidence** that:

- **Defendants failed to conduct any meaningful due diligence** on Velanos Principal Capital;

- **Defendants ignored clear fraud warnings issued by federal regulators** (SEC, FBI, FTC, and U.S. Treasury);

- **Defendants misrepresented the SBLC transaction as "safe," despite clear fraud indicators;**

- **Defendant Oh failed to warn Plaintiffs of the substantial risk of personal financial harm.**

#### C. Defendants' Failure to Provide Competent Legal Services

11. **Plaintiffs retained Defendants for personal and financial protection** regarding a **Joint Venture Agreement (JVA)** involving **Standby Letter of Credit (SBLC) trading**.

12. **Defendant Scott Oh failed to conduct any due diligence** on **Velanos Principal Capital,** despite being hired to **ensure that Plaintiffs were not personally exposed to risk.**

13. Defendant Oh ignored multiple **red flags of fraud,** including:

- **Unrealistic profit promises** (an 800% return within weeks);

- **Lack of transparency regarding transactions;**
- **Lack of documentation or proof of prior successful deals.**

## D. Misrepresentations That Directly Harmed Plaintiffs

14. Defendant Oh **personally misrepresented** the legitimacy of the JVA, stating that **SBLC trading was "nothing safer"** and that he could **"monetize SBLCs in a day."**

15. Plaintiffs relied on these **misrepresentations,** which resulted in **personal financial exposure** and **substantial reputational harm.**

## E. Coercion and Extortion

16. **Defendant Oh demanded Plaintiffs sign an escrow agreement after funds had already been deposited, leveraging his legal position to coerce compliance.**

17. He **withheld the release of funds until the agreement was signed,** effectively **extorting** Plaintiffs into paying a **0.5% legal fee** that was never disclosed or agreed upon beforehand.

18. Defendant **prioritized personal financial gain over his ethical obligations,** leading to **direct financial losses for Plaintiffs.**

## F. Reputational and Emotional Harm

19. Plaintiffs' **personal and professional reputations** suffered due to **Defendant Oh's failure to disclose fraud risks,** associating Plaintiffs with a **fraudulent financial scheme.**

20. Plaintiffs **experienced extreme emotional distress,** including **anxiety and mental anguish,** due to **Defendants' coercion, misleading legal advice, and extortion tactics.**

---

## IV. CLAIMS FOR RELIEF

### COUNT I: LEGAL MALPRACTICE

**Legal Standard:**

Under **Florida law,** legal malpractice occurs when an attorney:

1. **Owes a duty of care to the client,**

2. **Breaches that duty through negligence,**

3. **Proximately causes damage to the client.** See **Silvestrone v. Edell, 721 So. 2d 1173 (Fla. 1998).**

**Application:**

- Defendants **owed Plaintiffs a duty of care** in providing legal counsel.

- Defendant **failed to conduct due diligence,** ignored **red flags of fraud,** and **misrepresented the safety of the SBLC transaction.**

- As a **direct result of Defendants' legal malpractice,** Plaintiffs suffered **personal financial loss and reputational damage.**

## COUNT II: NEGLIGENCE

**Legal Standard:**
Negligence under Florida law requires:

1. A **duty of care,**

2. A **breach of duty,**

3. **Causation,** and

4. **Damages.** See **Florida Statutes § 95.11(4)(a).**

**Application:**

- Defendants **failed to protect Plaintiffs** from an **obviously fraudulent financial transaction.**

- Plaintiffs **relied on Defendants' misrepresentations,** leading to **personal financial losses.**

- Defendants' negligence **directly resulted in economic harm to Plaintiffs,** independent of Genie Investments NV, Inc.

## COUNT III: BREACH OF FIDUCIARY DUTY

**Legal Standard:**
Attorneys owe clients a **fiduciary duty of loyalty, honesty, and full disclosure.** See **Matter of Cooperman, 83 N.Y.2d 465 (1994).**

**Application:**

- Defendants **prioritized their own financial gain over their duty to Plaintiffs.**

- Defendants **failed to disclose risks** and **engaged in self-serving financial demands.**

- Plaintiffs **suffered personal financial losses and reputational harm as a result.**

## COUNT IV: BAD FAITH

**Legal Standard:**
Bad faith arises when a party **intentionally acts dishonestly to benefit at another's expense.** See **Browning v. Peyton, 918 So. 2d 1071 (Fla. 2d DCA 2006).**

**Application:**

- Defendants **knowingly provided misleading legal advice** to Plaintiffs.

- Defendants **refused to disclose critical risks,** causing **financial losses.**

- Defendants **acted in bad faith by pressuring Plaintiffs into signing agreements under coercion.**

## COUNT V: FRAUD

**Legal Standard:**
Fraud requires:

1. A **false statement of material fact,**
2. **Knowledge that the statement is false,**
3. **Intent to induce reliance,**
4. **Justifiable reliance,** and
5. **Damages.** See **Butler v. Yusem, 44 So. 3d 102 (Fla. 2010).**

**Application:**

- Defendants **falsely claimed** SBLC trading was "safe" despite **knowing it was a high-risk, fraudulent investment scheme.**
- Plaintiffs **relied on these statements,** resulting in **personal financial harm.**

## COUNT VI: COERCION

**Legal Standard:**
Coercion occurs when a party **uses undue pressure or threats to influence another's decisions.** See **Fla. Stat. § 836.05** (criminal coercion).

**Application:**

- Defendant Oh **withheld the release of funds,** effectively **forcing Plaintiffs to sign an escrow agreement under duress.**
- This **coerced financial loss personally harmed Plaintiffs.**

## COUNT VII: EXTORTION

**Legal Standard:**
Extortion occurs when one **forces another to provide money or benefits under threat.** See **Florida Statutes § 836.05.**

**Application:**

- Defendant Oh **refused to return funds until Plaintiffs agreed to pay unjustified fees.**
- This **constituted extortion,** resulting in **personal financial harm to Plaintiffs.**

_____

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1. **Compensatory Damages:**
   - o **$10 million** for **personal financial losses, reputational harm, and diminished business opportunities.**

2. **Emotional Distress Damages.**

3. **Punitive Damages.**

4. **Legal Fees and Costs.**

**Dated:** 02-14-2025

**Respectfully submitted,**

**JOHN MICHAEL COHAN and DAVID HUGHES**

**UNITED STATES BANKRUPTCY COURT**

**MIDDLE DISTRICT OF FLORIDA**

**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Case No.: 3:24-bk-00496-BAJ |
| | Chapter 11 |
| GENIE INVESTMENTS NV, INC. | |
| Debtor. | |

**DECLARATION OF ADAM B. WALKER**

STATE OF MISSOURI

COUNTY OF JACKSON

The undersigned, ADAM B. WALKER, declares as follows:

1.  I, ADAM B. WALKER, am an attorney licensed to practice in Missouri. I am the owner and manager of Walker Law Office, LLC d/b/a AW Securities Law. I previously worked for more than 12 years as an enforcement lawyer for the Financial Industry Regulatory Authority (FINRA), where I routinely investigated fraudulent and potentially fraudulent investment activity.

2.  I began representing Genie Investments in or around July 2023 at the request of one of its owners, David Hughes. I had previously done legal work for another business in which Mr. Hughes also has an ownership interest. Before July 2023 I was aware that Genie existed and that it was in the lending business, but I had no other knowledge of or involvement with Genie.

3.  In July 2023, Genie asked me to help resolve a contract dispute between it and Velanos Principal Capital. I learned that Genie and Velanos had executed a "Joint Venture Agreement" (JVA) in October 2022 and subsequently amended it three times. Through conversations with

Genie's principals and review of the JVA and its amendments, I learned the essential terms of the agreement, which were:

- Genie and Velanos agreed to form a joint venture.

- Genie agreed to contribute $9.0 million in capital to the joint venture.

- Velanos agreed to use the $9.0 million capital contribution to buy and sell standby letters of credit (SBLCs).

- Velanos agreed to distribute profits from the SBLC transactions to Genie within 60 days of Genie's capital contributions.

- The JVA, as amended, stated that Velanos would return a total of $75 million to Genie, consisting of the $9.0 million capital contribution and $66 million in profits.

4. As of July 2023, Velanos had not distributed any profits to Genie and had returned only $500,000 of its capital contributions. Velanos was, therefore, in material breach of the JVA.

5. I also learned that Genie, shortly before executing the JVA, retained an attorney, referred to herein as "SO," to represent it with respect to what was then the "proposed joint venture" between Genie and Velanos. SO was and still is a partner with an established New York-based law firm.

6. Almost immediately after talking with Genie about the Velanos transaction and reviewing the JVA, I strongly suspected that the SBLC-trading program offered by Velanos was fraudulent. With minimal research, I found numerous judicial opinions, press releases, and other materials supporting my suspicions. The U.S. Securities and Exchange Commission, Federal Bureau of Investigation, Federal Trade Commission, and U.S. Department of Treasury, in addition to other regulators and law-enforcement agencies, have in recent years issued warnings to the public about fraudulent prime-banking scams, including many involving fictitious SBLC trading.

7. On or about July 24, 2023, I spoke with SO by telephone for approximately one hour to talk, among other things, about his review of the JVA, his knowledge of and experience with

2

SBLC trading, and whether he viewed the investments as potentially fraudulent or had any other reservations about Genie entrusting its capital to Velanos for the purposes described in the JVA.

8. SO told me that he had extensive background with SBLCs, which he characterized as a legitimate investment used in "high level trade finance." He described SBLC trading as a "financing mechanism" that arose from the 1944 Bretton-Woods agreement, which created the World Bank and the International Monetary Fund.

9. SO represented that Velanos, as promised, had used the $9.0 million in capital that Genie contributed to the joint venture to make profitable SBLC trades. SO acknowledged, however, that he had never received detailed information about any SBLC transactions that Velanos supposedly made.

10. I asked SO to describe how SBLC trading could generate massive profits in a matter of weeks. His response lacked detail. He stated only that it was a "rinse and repeat" process of buying SBLCs at a discount with ensuing profitable sales already prearranged. SO also repeatedly stated that there is "just a lot of leverage that's involved" or some variation thereof.

11. I asked SO if he was aware that SBLC trading was a frequent subject of fraud alerts and enforcement actions, both civil and criminal, by the federal government; he said that he was, but contended nonetheless that what Velanos promised Genie was not fraud. When I asked him how he knew that what Velanos promised was different from the numerous and well-publicized instances of fraud involving SBLCs, he stated that Velanos had "syndicated" the funds. He added, however, that he did not know the particulars of Velanos' ostensible syndication arrangement.

12. I have conducted extensive research into SBLC and other "prime banking" scams. In doing so, I learned that certain phrases, terms, and references are common among SBLC scams. The JVA contains several such phrases and terms. Likewise, SO described SBLC trading to me as

3

"royal-family type stuff" that happens every day, although not in the United States. According to SO, the U.S. government does not want its citizens involved in SBLC trading. Such assertions are often cited by law enforcement and regulators as markers of SBLC and other varieties of prime-banking fraud.

13. The JVA contains other "red flags" of fraud. For example, Velanos promised to generate an extremely high rate of return – more than 800% – in a matter of weeks. It is also, in my professional opinion, very poorly drafted, with some passages best described as gibberish.

14. Genie terminated its representation by SO and his law firm on or around July 24, 2023. On Genie's behalf, I requested all records from SO's representation of Genie. After several weeks' delay, SO provided what he described as the complete client file. That file, which I have reviewed, contains no documentation indicating that SO:

- conducted any meaningful investigation into Velanos, its principals, or its affiliates,

- noted any red flags in the JVA or any potential that the proposed investment was fraudulent,

- advised Genie of any appreciable risk of losing all or a portion of its principal, or

- mentioned to Genie that the transaction bore similarities to a well-known and heavily publicized type of investment fraud.

15. Based on my investigation and analysis of the JVA and my research into prime-banking fraud, I believe the SBLC trading Velanos promised to conduct with Genie's money was at all times fictitious and blatantly fraudulent.

16. Based on my communications with SO and my review of the client file obtained from him, I believe that SO's review of the JVA was inadequate; that he failed to conduct an appropriate and thorough investigation of the transaction, Velanos, and/or its principals and affiliates; and that, as a result, he likely did not discharge his professional obligations to Genie. For these reasons, it

is my opinion that Genie has a colorable claim against its former lawyer and law firm for professional malpractice. I am not equipped, however, to estimate any potential recovery if Genie were to pursue such an action.

17. Although many outside observers now impugn Genie's business judgment and competence for having invested in a fraudulent enterprise, it is critical to acknowledge that Genie did so only after receiving the advice of a licensed attorney from a well-regarded law firm, which it retained specifically to guard against placing its money in an illegitimate investment. Whatever one might say with the benefit of hindsight, the proper lens for evaluating Genie's competence to manage its affairs requires consideration of its entire operating history and the fact that it sought, paid for, and relied on the assistance of legal counsel that, by all appearances, had the experience and knowledge to advise it appropriately.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 14, 2024.

Adam B. Walker

WALKER LAW OFFICE, LLC d/b/a AW SECURITIES LAW

5

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**JOHN MICHAEL COHAN and DAVID HUGHES,**
Plaintiffs,

v.

**SCARINCI HOLLENBECK, LLC, as successor in interest to WARREN LAW GROUP, and SCOTT OH,**
Defendants.

**Case No.:** _____

_____

**SUMMONS IN A CIVIL ACTION**

TO:

**SCARINCI HOLLENBECK, LLC, as successor in interest to WARREN LAW GROUP**
1100 Valley Brook Avenue
Lyndhurst, New Jersey 07071

AND

**SCOTT OH**
c/o Scarinci Hollenbeck, LLC
1100 Valley Brook Avenue
Lyndhurst, New Jersey 07071

**YOU ARE HEREBY SUMMONED** and required to serve upon **Plaintiffs** an answer to the **Complaint** which is served on you with this **Summons** within **21 days** after service (or **60 days** if you are the United States government, a United States agency, or an officer or employee of the United States). If you fail to respond, judgment by default will be entered against you for the relief demanded in the Complaint.

You must file your answer or response with the **Clerk of the United States District Court for the Middle District of Florida** at the following address:

**Clerk of Court**
Bryan Simpson United States Courthouse
300 North Hogan Street
Jacksonville, Florida 32202

A copy of your response must also be served on the Plaintiffs at the following address:

| | |
|---|---|
| **John Michael Cohan and David Hughes** | **CLERK OF THE COURT** |
| PO BOX 60443 | By: _____ |
| Jacksonville, Florida 32236 | Deputy Clerk |
| Dated: **[Month] [Day], 2025** | **(Seal of the U.S. District Court)** |

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOHN MICHAEL COHAN
+ DAVID HUGHES

**DEFENDANTS**
Scarinci Hollenbeck successor to
Warren Lew Group + Scott Ph

**(b)** County of Residence of First Listed Plaintiff **Duval**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Passaic**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - | 690 Other | 423 Withdrawal | 376 Qui Tam (31 USC |
| 130 Miller Act | 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| 140 Negotiable Instrument | Liability | 367 Health Care/ | | **INTELLECTUAL** | 400 State Reapportionment |
| 150 Recovery of Overpayment | 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' | Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted | Liability | 368 Asbestos Personal | | 835 Patent - Abbreviated | 460 Deportation |
| Student Loans | 340 Marine | Injury Product | | New Drug Application | 470 Racketeer Influenced and |
| (Excludes Veterans) | 345 Marine Product | Liability | | 840 Trademark | Corrupt Organizations |
| 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | 880 Defend Trade Secrets | (15 USC 1681 or 1692) |
| of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | Act of 2016 | 485 Telephone Consumer |
| 160 Stockholders' Suits | 355 Motor Vehicle | 371 Truth in Lending | 710 Fair Labor Standards | | Protection Act |
| 190 Other Contract | Product Liability | 380 Other Personal | Act | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 195 Contract Product Liability | 360 Other Personal | Property Damage | 720 Labor/Management | 861 HIA (1395ff) | 850 Securities/Commodities/ |
| 196 Franchise | Injury | 385 Property Damage | Relations | 862 Black Lung (923) | Exchange |
| | 362 Personal Injury - | Product Liability | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| | Medical Malpractice | | 751 Family and Medical | 864 SSID Title XVI | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 790 Other Labor Litigation | | 895 Freedom of Information |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate | Income Security Act | 870 Taxes (U.S. Plaintiff | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ | Sentence | | or Defendant) | 899 Administrative Procedure |
| 245 Tort Product Liability | Accommodations | 530 General | | 871 IRS—Third Party | Act/Review or Appeal of |
| 290 All Other Real Property | 445 Amer. w/Disabilities - | 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Agency Decision |
| | Employment | **Other:** | 462 Naturalization Application | | 950 Constitutionality of |
| | 446 Amer. w/Disabilities - | 540 Mandamus & Other | 465 Other Immigration | | State Statutes |
| | Other | 550 Civil Rights | Actions | | |
| | 448 Education | 555 Prison Condition | | | |
| | | 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
+ Florida Statute § 95.11(4)(a); Florida Common Law
Brief description of cause:
Alleges professional negligence + legal malpractice resulting in personal claims

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $10,000,000.00+

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE **2/14/25**

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

# Exhibit B



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

October 14, 2022

**VIA E-MAIL**

Caleb Michael Davis, Managing Partner
Genie Investments NV, LLC
11064 Lothmore Rd.
Jacksonville, FL 32221
calebdavis8@gmail.com

<u>**Re: Letter of Engagement ; Joint Venture with Velano Principal Capital, Inc.**</u>

Dear Caleb:

Thank you for selecting the Warren Law Group ("we", "us", or the "Firm") to represent and advise Genie Investments NV, LLC and you ("You" or the "Client") with respect to the proposed joint venture with Velanos Principal Capital, Inc. ("Matter"). This engagement shall include but may not be limited to: general counsel/advice, contract/legal document preparation and or review, transaction structuring, strategic planning & asset protection, escrow/paymaster services. Please note that escrow and paymaster services may be provided under a separate engagement addendum with different terms, conditions, and fee structure which the Firm will provide for your review and approval at the appropriate time. You explicitly authorize the Firm to undertake any other matters that relate to or flow from these issues at its discretion. This engagement does not include representation in litigation or arbitration proceedings but may be included herein by separate signed addendum. This document is a privileged and confidential agreement for legal services ("Agreement") that states the terms of our representation. Please read it carefully.

1.    <u>**Professional Undertaking**</u>

The Firm has undertaken to advise you and provide you representation in the Matter. If You desire to retain the Firm for services outside the scope of the above, you and the Firm will enter into a separate Letter of Engagement for those matters. While our representation will include post-trial or arbitration motions on the Matter, this Agreement does not include re-trial or appeals on any judgment or award that may be obtained by or against You, unless we otherwise agree in a subsequent writing.

Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning various courses of action to be taken and the results that might be anticipated. You acknowledge that any such statement made by any attorney or employee of the



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

Firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed as a promise or guarantee, nor as an attorney opinion letter unless the words "attorney opinion letter" appear on the document.

## 2.    Client's Duties

To enable us to represent You in the Matter effectively, You agree to be truthful and to cooperate fully with the Firm in all matters related to the negotiation of the Matter and preparation and presentation of Client's claims or defenses in the Matter. You agree to keep us informed of any information or developments that may come to your attention, to abide by this Agreement, to pay the Firm's statements for services on time and as set forth in this Agreement, and to keep the Firm advised of Your address, telephone number and whereabouts (if called for in the representation), as well as any potential conflicts of interest. You agree to assist the Firm by timely providing necessary information and documents. You agree to advise the Firm of any potential or actual conflicts of interest.  Subject to separate agreed addendum if applicable, You also agree to appear at all legal proceedings when we deem it necessary and generally to cooperate fully with the Firm in all matters related to the preparation and presentation of Your claims and defenses, as well as continuing to pay your invoices in a timely fashion. You also represent that you have not engaged any other attorney or agreed to pay another attorney or person a contingency or success-based fee with respect to this Matter.

## 3.    Retainer Fee & Flat or Contingency Fee Interest

In consideration for the Firm's services, You agree to pay our hourly rates as set forth in Schedule A annexed hereto (the "Fee"). We will require an initial retainer of **$10,000**, which we will bill against as we work on your matters. <u>The initial retainer shall be allocated into two segments: (i) joint venture transaction review and engagement for $5,000 flat fee; and (ii) ongoing representation post transaction commencement, which may include strategic planning/asset protection, tax services, and other required services which shall be billed against the remaining balance of the initial retainer until exhausted</u>. We will inform you monthly of Your remaining retainer amount, and when the retainer is nearing depletion, we may ask that You replenish the retainer, and you agree to do so. No attorney-client relationship will exist concerning this matter until this retainer has been paid, and until this engagement letter has been executed by both parties. You specifically authorize and agree that any attorney, investigator, paralegal, secretary, or another person in the Firm, or an associated counsel in another Firm, may, at our professional discretion, perform necessary services under the direction of the attorney designated as lead counsel by the Firm.

You authorize the Firm to withdraw the funds from the Firm's Attorney Trust Account to pay the Firm's fees. If the Firm receives a written objection from You within 10 days of sending



Your bill, the Firm shall consider that amount in dispute and will return those escrow funds to the Attorney Trust Account until the dispute is resolved. The Firm will cease all work on your Matter until the dispute is resolved.

With respect to litigation/arbitration matters, the Firm may request additional retainer deposits within 90 days of the date set for a trial or arbitration hearing. You shall, upon the Firm's request, deposit all fees and costs the Firm reasonably expects will be incurred to prepare for and complete the trial or arbitration hearing (the "Trial Deposit"), unless You decide not to continue the representation and the Firm is able to withdraw from the engagement. If there is any remaining retainer funds in the Firm's Attorney Trust Account at the end of this engagement, and the Firm's final bill is satisfied, those funds shall be promptly refunded to You.

### 4.    Costs and Expenses

The Firm will incur various costs and expenses in performing legal services under this Agreement. Client agrees to pay for all costs, disbursements and expenses in addition to the hourly fees. Client shall pay for all costs incurred for each engagement, either directly or to the Firm if the Firm has paid the costs. In this Agreement, "costs" mean any charge, disbursement, expense, fee, or other debt incurred by the Firm for Client's engagement. For the avoidance of doubt, "costs" are not limited to court costs and are intended only to exclude Firm's legal fees.

Costs commonly include: service of process charges; filing fees; court and deposition reporters' fees; legal research fees; translator/interpreter fees; jury fees; notary fees; deposition costs; international telephone charges; messenger and other delivery fees; postage; professional photocopying and other reproduction costs; e-discovery processing and data-hosting expenses; travel costs, airfare (business class for flights longer than 1,200 miles, or first-class if no business-class seats are available), ride-sharing or taxi services, meals, and lodging costs; investigation expenses; consultants' fees; and expert witness, professional, mediator, arbitrator and/or special master fees. Any cost above $500 will be pre-authorized by you before you are charged. The exception are any filing fees, which will be due upon filing.

Client understands that if the Client's case proceeds to court action or arbitration, the court may award attorneys' fees as well as some or all of the type of costs enumerated herein to the other party/parties. Payment of such attorneys' fees and costs shall be the sole responsibility of Client.

Separately, any order entered awarding payment of attorneys' fees and/or costs to you, or any settlement between the parties in the Matter awarding you attorneys' fees and/or costs, does not affect your obligation to pay the Firm's attorneys' fees, costs, and other charges under the terms of this Agreement. Any such amounts received by the Firm, however, will be credited against



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

the attorneys' fees, costs and other charges incurred by you. Client acknowledges that any such determination that fees are owed to you by another party, does not in and of itself affect the amount of the fees and costs to be paid by Client to the Firm pursuant to this Agreement.

### 5.    Termination and Withdrawal

You have the right to discharge the Firm at any time. We also have the right to withdraw from this representation for any other reason for which withdrawal is authorized or required by the New York Rules of Professional Conduct of the State Bar of New York and/or applicable law. Among the circumstances under which the Firm may withdraw are: (a) with the consent of Client; (b) Client's conduct renders it unreasonably difficult for the Firm to carry out the Agreement effectively; and/or (c) Client fails to pay the Firm's fees, retainer, or costs as required by this Agreement.

Notwithstanding the discharge, the Client will remain obligated to pay the Firm at the agreed rates for all services provided prior to the discharge and to reimburse the Firm for all costs advanced. You expressly acknowledge that Client's failure to pay the Firm's invoiced amounts due in a prompt manner shall be grounds for the Firm's withdrawal from any representation(s) the Firm has undertaken of Client, and Client will not oppose any such effort to withdraw by the Firm in such a "failure to pay" situation.

Should you breach this Agreement in such a manner that we are reasonably required to withdraw or to terminate the Agreement, we will attempt to accommodate new counsel should you choose to hire new counsel, but while we may choose to do so, under no circumstances are we required to relinquish any part of the Fee earned or any Contingency Fee Interest in order to make that accommodation.

### 6.    Record Retention Policy

The Firm maintains case files electronically using Clio and other software programs. During the normal course of representation, both paper and electronic files are collected. Upon the conclusion of the Matter, the Firm may retain portions of the case file pursuant to our Firm's record retention policy and any applicable confidentiality agreement or protective order. To reduce costs, the Firm recycles paper products and may discard old case files. If you want the Firm to return original client documents or send you any portion of the case file, you agree to let us know in writing within 30 days of the conclusion of the Matter. The Firm will not be responsible for file materials that you do not request in writing within 30 days and which are eventually destroyed under our record retention policy.



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

### 7.    Option to Pay via Cryptocurrency

Please be advised that you have the option, at your sole and absolute discretion, to pay for any legal services which the Firm earns upon receipt of payment (*i.e.*, flat fees and payment on invoices for services already rendered by the Firm) with Firm Accepted Cryptocurrencies ("FACs"). Currently the only FACs are Bitcoin and Ethereum; however, the Firm reserves the right to change the FACs at any time in its sole discretion. The Firm does not hold FACs in trust for its clients in retainer to bill against on a later date. You agree that any FACs, or other funds, received by the Firm as payment for a Flat Fee or for services previously rendered are considered "earned" by the Firm upon receipt.

If you wish to use FACs to pay your retainer for our services, you agree that the Firm will, as soon as practicable, exchange the FACs it receives from you into U.S. dollars ("Fiat") and you will be credited the amount of Fiat received by the Firm after its processing costs. The Firm will provide you with a statement as soon as practicable after it receives the Fiat detailing the exchange used, exchange rate, costs, and received Fiat value. Please be advised that the value of any cryptocurrency, including FACs, can change rapidly based upon market conditions. Please make sure to take that into consideration in making your decision. We require that a test transfer be completed and confirmed by the Client and the Firm. After that confirmation, the Client agrees to transfer FAC at a specific time requested by the Firm as to be sure to convert the FACs into Fiat as quickly as possible to avoid unnecessary market risk.

If you do choose to pay the Firm in Accepted Cryptocurrencies, you agree to transfer the applicable cryptocurrency into the Firm's designated cryptocurrency wallet from a cryptocurrency wallet over which you have sole ownership and control. You also represent and warrant to the Firm that any cryptocurrencies you send to the Firm are of non-criminal origin and are free and clear of liens or other encumbrances.

For more information about your rights related to the use of cryptocurrencies for the payment of legal services, please see (as applicable) NYCBA formal opinion 2019-5[1], D.C. Bar Ethics Opinion 378[2], and/or the CA Committee on Professional Responsibility and Conduct discussion regarding unpublished opinion 21-0007[3]. The Firm reserves the right to change its payment policies and procedures at any time, upon written notice, based on any changes in the prevailing interpretation of the applicable Rules of Professional Conduct pertaining to the same.

### 8.    Integration, Choice of Law, Rules of Professional Conduct

---

[1] https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/formal-opinion-2019-5-requiring-cryptocurrency-in-payment-for-legal-services
[2] https://dcbar.org/For-Lawyers/Legal-Ethics/Ethics-Opinions-210-Present/Ethics-Opinion-378
[3] https://board.calbar.ca.gov/docs/agendaItem/Public/agendaitem1000028381.pdf



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

This Agreement represents the entire Agreement between us. In entering this Agreement, the Firm has not made, and you are not relying upon, any representations or promises other than those contained in writing in this Agreement. To avoid any misunderstanding over the terms of this representation, this Agreement shall not be modified or waived in any respect except in writing signed by both parties.

This Agreement shall be construed under and in accordance with the laws of the state of New York, excluding any conflicts of law, rule or principle that might otherwise refer to the substantive law of another jurisdiction.

It is our intention to follow the New York Rules of Professional Conduct.[4] If, despite that intent and endeavor, any part of this Agreement shall for any reason be found to be unenforceable, the parties agree that: all other portions shall nevertheless remain valid and enforceable; and a provision most similar to the stricken provision but otherwise complying with applicable law shall be substituted.

### 9. Mediation and Arbitration

The Firm is required by New York law to inform You that in the unlikely event of a disagreement with respect to legal fees, Part 137 of the Rules of the Chief Administrator of the New York Courts ("Part 137") provides that certain fee disputes are subject to arbitration at Client's option. The Firm will provide You with a copy of the Rule upon request. Information may also be obtained at www.courts.state.ny.us/admin/feedispute/index.shtml.

If any dispute ("Dispute") arises between You and the Firm, including, but not limited to, disputes over billing, fees, malpractice, fraud-based claims, breach of professional duties (including fiduciary duty), or any other complaints, and if the Dispute cannot be settled through negotiation (or for fee disputes under Part 137), then the parties agree to try in good faith to settle the Dispute promptly by mediation administered by the New York, New York branch of the Judicial Arbitration and Mediation Service ("JAMS") within 60 days after either party sends written notice of its intent to mediate. The cost of mediation shall be borne equally by the parties.

If the Dispute cannot be settled by mediation, the Dispute shall be settled by arbitration. The arbitration must: (a) be administered by the Judicial Arbitration and Mediation Service ("JAMS"); (b) occur in New York, NY; (c) be governed, for purposes of procedure, by the JAMS' Comprehensive Arbitration Rules and Procedures in effect at the time the parties executed the

---

[4] Available at https://nysba.org/app/uploads/2020/02/NEW-YORK-RULES-OF-PROFESSIONAL-CONDUCT.pdf



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

Agreement, the Federal Arbitration Act (9 U.S.C. §§ 1–16), and for substantive purposes, the laws of the State of New York; and (d) occur no later than 60 days after either party sends written notice that it believes the parties' private negotiations have reached an impasse, or as soon thereafter as the selected arbitrator is available.

A written, reasoned opinion must accompany any award issued by the arbitrator. The opinion must state that the Firm, the Client, or neither party prevailed. If the arbitrator determines that one party prevailed, the arbitrator shall award to the prevailing party its legal expenses reasonably incurred related to the claims made in the arbitration. The parties shall maintain the confidential nature of the arbitration proceeding and the award, including the hearing, except as necessary (1) to prepare for or conduct the hearing on the merits; (2) to challenge or enforce an award; or (3) to comply with any law or government order.

The Parties adopt and agree to implement the JAMS Optional Arbitration Appeal Procedure (as it exists on the effective date of this Agreement) with respect to any final award in an arbitration arising out of or related to this Agreement. Judgment on the arbitration award may be entered in any court having jurisdiction. Client and the Firm confirm that they have read and understand the forgoing paragraph, and voluntarily agree to binding arbitration.

## 10.    <u>Judgment Lien</u>

You agree that, in the event that the Firm obtains a monetary award for You as part of this Matter, or any matters that flow from it, any outstanding amounts owed under the Firm's invoices by You will be immediately payable out of such monetary award. This monetary award includes *any* affirmative recovery on your behalf as part of the Matter, including, but not limited to, actual damages, punitive damages, attorneys' fees, or costs. You are therefore advised of the consequence of not paying any invoices when the Firm obtains a money judgment or other relief on Your behalf.

[ Signature Page to Follow ]



**519 8TH AVENUE, 25TH FLOOR**
**NEW YORK, NY 10018**
**866.928.5838 • warren.law**

If the foregoing correctly reflects your understanding of the terms and conditions of our representation, please indicate your acceptance by executing this letter in the space provided below and returning it to the Firm, as well as making the required retainer payments.

For future retainer or bill payments, please forward payment to the Firm's client trust account at the address below. Please contact us if you wish to pay by another method, such as credit card. In the event of a credit card payment, a 3% service charge will be incurred and added to the charged amount.

**Bank Name:** Signature Bank

**Bank Address:** 565 Fifth Avenue, 12th Floor, New York, NY 10017

**ABA #:** █████████

**Account Name:** Warren Law Group (IOLA)

**Account Number:** █████████

**SWIFT Code:** █████████

Very truly yours,

**WARREN LAW GROUP**

*/s/ Christopher D. Warren*

Christopher D. Warren

Caleb Michael Davis, on behalf of Genie Investments NV, LLC, requests representation in accordance with the terms outlined above:

By: _____

Caleb Michael Davis, LLC



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

### SCHEDULE A – HOURLY RATES[5]

| Legal Professional | Hourly Rate |
|---|---|
|  |  |
| Partners |  |
| Christopher Warren | $825 |
| David Rosenfield | $675 |
| Jon-Jorge Aras | $650 |
| Paul Share | $650 |
| Scott Oh | $650 |
| Tom McCabe | $675 |
| John Keenan | $650 |
|  |  |
| Associates |  |
| Brittany Hulbert* | $450 |
| Jorge Marquez | $450 |
| David Szalyga | $450 |
| Other Associates | $450 |
|  |  |
| Of Counsel |  |
| Todd Kulkin | $600 |
| Carol Williams | $550 |
| Dan Alper | $550 |
| Dan Kolber | $550 |
| Dan Podhaskie | $550 |
| Jorge Salva | $550 |

[5] Hourly rates are subject to change on the anniversary of this engagement and each year subsequent by no more than 10% to keep pace with cost-of-living adjustments and inflation.

*Pending Admission



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

| Max Travis | $550 |
|---|---|
| C.A. Morrison | $550 |
| Stephen Reich | $550 |
| Other Of Counsel | $550 |
|  |  |
| Paraprofessionals |  |
| Law Clerks | $250 |
| Paralegals | $175 |
| Interns | $125 |