## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

GENIE INVESTMENTS NV INC.,                     Case No.: 3:24-bk-00496-BAJ

           Debtor.                                     Chapter 7

_____/

### JOINT STIPULATION OF UNDISPUTED FACTS AND EXHIBITS
### REGARDING THE TRUSTEE'S MOTION TO ENFORCE AUTOMATIC STAY

Aaron R. Cohen, Chapter 7 Trustee (the "Trustee"), David Hughes ("Hughes") and John Michael Cohan ("Cohan" and together with the Trustee and Hughes, the "Parties") pursuant to the Court's March 3, 2025 Order Scheduling Trial (Doc. 317) jointly stipulate that the following facts are true, and that these facts are to be considered conclusively established for any and all purposes in this case only, without necessity of further proof, for purposes of the trial on the Trustee's Motion to Enforce Automatic Stay (Doc. 296) scheduled for June 24, 2025. The Parties also stipulate and agree that the exhibits attached to this Stipulation may be admitted into evidence without objection. This factual stipulation shall not preclude any party hereto from submitting additional factual evidence or exhibits in this case through testimony or otherwise.

1.      On February 21, 2024 (the "Petition Date"), Genie Investments NV Inc. (the "Debtor") filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, in the case styled *In re Genie Investments NV Inc.*, Case No: 3:24-bk-00496-BAJ (the "Bankruptcy Case").

2.      On August 12, 2024, the Bankruptcy Case was converted to a Chapter 7 liquidation case and the Trustee was appointed to administer the Debtor's estate (Doc. 207).

3. The principals of the Debtor are John Cohan ("Cohan") and David Hughes ("Hughes") who each own 50% of the Debtor.

4. Before the Bankruptcy Case converted to Chapter 7, on May 23, 2024 the Debtor filed a Motion to Approve Settlement Agreement Between Genie Investments NV, Inc. and Velanos Principal Capital ("Velanos"), pursuant to Federal Rule of Bankruptcy Procedure 9019 (Doc. 107) (the "Compromise Motion") which sought approval of a settlement agreement (the "Settlement Agreement") with Velanos. A copy of the Settlement Agreement is attached as **Exhibit 1**. After the Bankruptcy Case was converted to Chapter 7, the Trustee and Velanos executed an Amendment to the Settlement Agreement (the "Amendment") to substitute the Trustee in place of the Debtor for purposes of the Settlement Agreement which was filed with the Court on October 17, 2024 (Doc. 249). A copy of the Amendment is attached as **Exhibit 2**. On October 24, 2024, the Court entered an Order Granting the Compromise Motion and approving the Settlement Agreement (Doc. 257).

5. Velanos defaulted under the terms of the Settlement Agreement by failing to make the settlement payment due December 31, 2024.

6. On January 10, 2025, the Trustee filed a Complaint for Confirmation of Arbitration Award against Velanos which was designated Adversary Proceeding 3:25-ap-00007-BAJ (the "Velanos Adversary Proceeding") which sought to confirm an arbitration award entered as part of the Settlement Agreement against Velanos and entry of a judgment against Velanos. A copy of the Trustee's Complaint against Velanos is attached as **Exhibit 3**. The Court entered a Final Judgment in favor of the Trustee and against Velanos on March 4, 2025 confirming the arbitration award in favor of the Debtor and entering judgment in the amount of $20 million against Velanos. A copy of the Final Judgment is attached as **Exhibit 4**.

2

7.     On February 14, 2025, Cohan and Hughes filed a complaint against Velanos, its principal Joshua Wearmouth and others in the Circuit Court in and for Duval County (the "State Court") seeking damages for Velanos' breach of the Settlement Agreement (the "Velanos Lawsuit"). A copy of the Complaint is attached as **Exhibit 5**.

8.     On its Schedule A/B, the Debtor listed a claim for legal malpractice against Warren Law Group ("Warren Law"). Warren Law and attorney, Scott Oh ("Oh") who was employed by Warren Law, represented the Debtor in connection with the joint venture agreement the Debtor entered into with Velanos, which resulted in the loss of $9 million by the Debtor. A copy of the engagement agreement between the Debtor and Warren Law is attached as **Exhibit 6**.

9.     On February 14, 2025, Cohan and Hughes filed a Complaint for Legal Malpractice, Negligence, Breach of Fiduciary Duty, Bad Faith, Fraud, Coercion, and Extortion in the United States District Court, Middle District of Florida, Jacksonville Division (the "District Court") against Scarinci Hollenbeck, LLC as successor in interest to Warren Law Group and Scott Oh, Case Number 3:25-cv-164-HES-MCR (the "Scarinci Action"). A copy of the Complaint filed in the Scarinci Action is attached as **Exhibit 7**.

AKERMAN LLP

By: _____
Raye C. Elliott, Esq.
Florida Bar Number: 018732
Email: raye.elliott@akerman.com
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Phone: (813) 223-7333
Fax: (813) 223-2837

Attorneys for Aaron R. Cohen, Chapter 7
Trustee

_____
David Hughes

_____
John Michael Cohan   *without recourse*
                     *UCC 1-308, 1-105*

# EXHIBIT 1

DocuSign Envelope ID ECE307DC-B04C-4E79-9B71-46C15018BEDE

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Settlement Agreement") is entered into effective May 15, 2024 between (1) Genie Investments NV, a Nevada corporation ("Genie"), and (2) Velanos Principal Capital, a business entity registered in Ontario, Canada ("Velanos"), with respect to the following:

    a.  On or about October 21, 2022, Genie and Velanos (individually "Party" and collectively "the Parties") entered into a "Joint Venture Agreement" ("JVA").

    b.  On October 25, 2023, Genie commenced an arbitration proceeding (the "Arbitration") against Velanos with JAMS, seeking a determination that Velanos materially breached the JVA and an award of damages.

    c.  On February 6, 2024, Genie filed a lawsuit in the U.S. District Court for the Middle District of Florida, case number 6:24-cv-00271 (the "Florida Litigation"), in which it asserted claims related to the JVA against multiple defendants other than Genie.

    d.  Genie and Velanos now wish to settle their dispute and resolve both the Arbitration and the Florida Litigation according to the terms set forth below.

NOW, THEREFORE, in consideration of the following mutually agreed covenants and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

    1.  <u>Definitions</u>. For purposes of this Settlement Agreement, the following definitions shall apply:

    A.  "Genie" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

    B.  "Velanos" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

    C.  "Trading Account Interest" refers to Velanos' ownership interest in the account ("Trading Account") described and identified in Section 3 of this Settlement Agreement and **Exhibit B** hereto.

DocuSign Envelope ID ECE307DC-B04C-4E79-9B71-46C15018BEDE

2.  Settlement Amount. Velanos shall pay Genie the total sum of Fifteen Million ($15,000,000.00) dollars (the "Settlement Amount"). The Settlement Amount shall be paid to Genie in ten installments ("Installment Payments"), as follows:

A.  The first Installment Payment shall be completed within two (2) business days of the effective date of the Settlement Agreement, in the amount of fifty thousand dollars ($50,000.00).

B.  The second Installment Payment shall be completed on or before June 30, 2024, in the amount of five hundred thousand dollars ($500,000.00).

C.  The third Installment Payment shall be completed on or before September 30, 2024, in the amount of one million dollars ($1,000,000.00).

D.  The fourth Installment Payment shall be completed on or before December 31, 2024, in the amount of two million dollars ($2,000,000.00).

E.  The fifth Installment Payment shall be completed on or before March 31, 2025, in the amount of two million dollars ($2,000,000.00).

F.  The sixth Installment Payment shall be completed on or before June 30, 2025, in the amount of two million dollars ($2,000,000.00).

G.  The seventh Installment Payment shall be completed on or before September 30, 2025, in the amount of two million dollars ($2,000,000.00).

H.  The eighth Installment Payment shall be completed on or before December 31, 2025, in the amount of two million dollars ($2,000,000.00).

I.  The ninth Installment Payment shall be completed on or before March 31, 2026, in the amount of two million dollars ($2,000,000.00).

J.  The tenth Installment Payment shall be completed on or before June 30, 2026, in the amount of one million four hundred and fifty thousand dollars ($1,450,000.00).

Unless otherwise instructed by Genie in accordance with the requirements set forth below, Velanos shall direct all Installment Payments to the account (the "Recipient Account") identified in **Exhibit A** to this Settlement Agreement. At any time, Genie may, at its sole discretion, designate a different Recipient Account by providing Velanos with written notice identifying the alternate Recipient Account at least fifteen (15) business days before the Installment Payment's due date.

An Installment Payment will be considered completed as of the time it is received in the Recipient Account, as reflected in the records of the bank where the Recipient Account is held. An Installment Payment shall be deemed timely completed if it is received in the Recipient Account prior to 11:59 PM Central time on its due date.

3.  Confidential Trading Account Information; Immediate Disclosure of Account Documents Upon Event of Default. Concerning the Trading Account and Trading Account Interest, Velanos represents and warrants that its owner and CEO, Joshua Wearmouth, has duly executed the

DocuSign Envelope ID  ECE307DC-B04C-4E79-9B71-46C15018BEDE

affidavit attached as **Exhibit B** to this Settlement Agreement with full authority to do so. Velanos further represents and agrees that:

A. Velanos is the sole owner of the Trading Account Interest.

B. The present principal value of the Trading Account Interest is at least $5,000,000.

C. Velanos has provided  its legal counsel with unredacted copies of documentation (collectively, "Account Documents") concerning the Trading Account and the Trading Account Interest, including, but not limited to: (i) any and all agreements showing Velanos' ownership share in the Trading Account, (ii) any and all agreements governing activity in or administration of the Trading Account, (iii) statements created by or obtained from the showing all activity in the Trading Account since its formation, and (iv) such other documents as necessary to give the holder of the Account Documents all information necessary to locate the Trading Account, accurately assess the value of the Trading Account Interest, and understand any salient restrictions on the ability of the owner(s) of the Trading Account Interest to access the principal and profits therein.

D. Velanos agrees to supplement the information and documentation it has provided to its legal counsel pursuant to Section 3(C) of this Settlement Agreement either on or before the due date for each Installment Payment or more frequently, in the event of any material change the terms governing the Trading Account or of any communication from, or public statement by, the entity administering the Trading Account indicating that the Trading Account will or may be closed during the term of this Settlement Agreement.

E. Velanos authorizes and instructs its legal counsel to hold the Account Documents in trust during the term of this Settlement Agreement. Upon the occurrence of any Event of Default under this Settlement Agreement, however, Genie shall have the right to request and immediately obtain from Velanos' legal counsel all Account Documents. Notwithstanding any obligations to the contrary, Velanos authorizes and instructs its legal counsel to make immediate delivery of the Account Documents to Genie, and to provide Genie any other documents or information reasonably necessary for Genie to enforce the arbitration award and/or judicial confirmation described in Section 6 of this Settlement Agreement, upon the occurrence of any Event of Default.

F. If, during the term of this Settlement Agreement, the legal counsel identified herein ceases to represent Velanos in connection with this matter, then Velanos shall immediately: (i) engage substitute legal counsel, (ii) provide Genie written notice of the change in legal counsel and the identity of Velanos' substitute legal counsel, and (iii) authorize, instruct, and equip its substitute legal counsel to perform each of the duties described in this Section.

G. The Parties agree that failure to comply fully and timely with any portion of this Section shall result in additional damages to Genie, for which Velanos shall immediately be liable to Genie in the amount of one hundred thousand dollars ($100,000.00). This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from

3

DocuSign Envelope ID ECE307DC-B04C-4E79-9B71-46C15018BEDE

a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

4. <u>Genie's Release of Velanos</u>. Subject to the conditions set forth in this Settlement Agreement, Genie hereby releases and forever discharges Velanos from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA, including but not limited to all claims that were or could have been asserted in the Arbitration, *provided, however*:

    A. This release shall not apply to claims arising out of the enforcement of this Settlement Agreement.

    B. Genie's release of any rights, claims, causes of action, damages, liabilities or demands, whether in law or in equity, against Velanos shall be of no force and effect until the successful completion of all Installment Payments contemplated by this Settlement Agreement.

    C. Any Event of Default by Velanos shall void the release set forth in this paragraph.

5. <u>Velanos' Release of Genie</u>. Velanos hereby releases and forever discharges Genie from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits, or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA.

6. <u>Consent Award in Arbitration and Judicial Confirmation Thereof</u>. The Parties agree that, within three (3) business days of the effective date of this Settlement Agreement, they will jointly submit and request entry of a proposed Consent Award pursuant to Rule 28(c) of the Comprehensive Arbitration Rules & Procedures of JAMS Arbitrators and Arbitration Services. The Consent Award submitted by the Parties is attached as **Exhibit C** to this Settlement Agreement and, in pertinent part, states that Genie is awarded damages totaling twenty million dollars ($20,000,000.00), which amount is due and payable by Velanos within fifteen (15) calendar days of the Consent Award's entry.

    A. Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

    B. Velanos agrees not to oppose or challenge any such application by Genie for judicial confirmation of the arbitration award. Violation of this subparagraph by Velanos shall result in additional damages to Genie, for which Velanos shall be immediately liable to Genie in the amount of one million dollars ($1,000,000.00), plus interest accruing at an annual rate of nine percent (9.0%) from the date of the violation. This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of

DocuSign Envelope ID: ECE307DC-B04C-4E79-9B71-46C15018BEDE

Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

C. Genie agrees that it will not seek to collect on the arbitration award, or on any judgment confirming the arbitration award, prior to either (i) the occurrence of any Event of Default or (ii) an indication by Velanos, through either words or actions, that an Event of Default is imminent.

D. If the arbitrator in the Arbitration refuses to enter an Award that is identical or substantially identical in substance to the proposed Consent Order submitted by the Parties, then the Parties shall have seven (7) calendar days from the date on which JAMS notified the Parties of that fact to reach a mutually agreeable amendment of this Settlement Agreement. If they are unable to do so within that time, then this Settlement Agreement shall have no further force or effect.

7. <u>Dismissal of Florida Litigation</u>. No later than three (3) business days after the receipt of the second installment payment, Genie will file a Motion to Dismiss the Florida Litigation without prejudice. Velanos agrees to consent to that motion and to take no action to oppose or contest the motion or to delay the Court's action regarding it.

8. Genie agrees that it will not, prior to the occurrence or reasonable anticipation of any Event of Default by Velanos, make contact in any manner whatsoever with any person or entity whom Genie knows to be a partner, asset holder, bank officer, escrow officer, or paymaster of Velanos, with the exception of any persons or entities with whom Genie, its principals, or its representatives had a prior business relationship, for the purposes of obtaining information about or interfering with any of Velanos' existing or prospective business relationships.

9. <u>Events of Default</u>. For purposes of this Settlement Agreement, "Events of Default" include the following:

A. Failure of Velanos to make any Installment Payment when due.

B. Failure of Velanos to perform or observe any of Velanos' covenants or agreements contained in this Settlement Agreement.

C. The depletion of the principal amount of Velanos' ownership share in the Trading Account below five million dollars ($5,000,000.00) at any time before Velanos' satisfaction in full of all of the obligations imposed on it by this Settlement Agreement, regardless of whether such depletion results from any action of failure to act by Velanos or from any external factor, including trading losses, market forces, or the action or inaction of any third party or parties.

D. Failure of Velanos to comply with every aspect of Paragraph 11 ("Security Interest") of this Settlement Agreement.

5

DocuSign Envelope ID  ECE307DC-B04C-4E79-9B71-46C15018BEDE

E. The sale or other transfer by Velanos of all or any material part of its property or assets except in the usual and ordinary course of the operation of its business; or a change in the general character, or suspension of any significant part, of Velanos' business.

F. Actions by or on behalf of Velanos to: (1) make an assignment for the benefit of creditors or petition or apply to any tribunal for the appointment of a custodian, receiver, or trustee for it or a substantial part of its assets, (2) commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, (3) have any such petition or application filed or any such proceeding commenced against it that is not dismissed within thirty (30) days, (4) indicate, by any act or intentional and purposeful omission, its consent to, approval of or acquiescence in any such petition, application, proceeding or order for relief or the appointment of a custodian, receiver or trustee for it or a substantial part of its assets, or (5) suffer any such custodianship, receivership or trusteeship that continues undischarged for a period of thirty (30) days or more.

G. Entry against Velanos of a judgment or decree in excess of Fifty Thousand Dollars ($50,000) that becomes non-appealable and remains undischarged, unsatisfied by insurance or otherwise, and unstayed for more than thirty (30) days.

H. The existence of a default or an event that, with the giving of notice (1) would constitute a default, under any other indebtedness of Velanos, for borrowed money or (2) would cause (or would permit any holder of such indebtedness or trustee to cause) such indebtedness, or a portion thereof in an aggregate amount exceeding Fifty Thousand Dollars ($50,000.00), to become due prior to its stated maturity or prior to its regularly scheduled dates of payment.

I. Violation by Genie of Paragraph 8 of this Settlement Agreement.

10. <u>Default</u>. Upon the occurrence of any "Event of Default," as described in Paragraph 9 of this Settlement Agreement:

A. The entire amount of the Consent Award and any court judgment confirming that award, including all accrued post-judgment interest thereunder, and less the total amount of Installment Payments completed as of the Event of Default, shall, without any prior notice, presentment, or demand, become immediately due and payable in full.

B. Genie shall immediately have the right to take any and all legal action it deems proper to enforce the Consent Award and/or any court judgment confirming that award.

C. Genie shall immediately have the right to take any and all legal action it deems proper, including but not limited to reinstating the Florida Litigation.

D. Genie shall be entitled to recover any and reasonable attorney's fees, costs, and expenses that it reasonably incurs as a result of Velanos challenging or contesting any action taken by Genie based in furtherance of the rights created under this Paragraph, absent a ruling by a court of competent jurisdiction that Velanos' challenge or contest of such action is valid.

6

DocuSign Envelope ID ECE307DC-B04C-4E79-9B71-46C15018BEDE

11. <u>Security Interest</u>. As security for the prompt and full satisfaction of the outstanding balance of all sums due under this Settlement Agreement or under the Consent Award, Velanos agrees that Genie shall have, and Velanos hereby grants and pledges to Genie, a security interest in all: accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, money, insurance and insurance claims, supporting obligations, and all other personal and fixture property, whether governed by Article 9 of the Uniform Commercial Code ("UCC") or other law wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "Collateral").

    A. In addition to all rights and remedies given to Genie by this Settlement Agreement, Velanos and Genie agree that this Settlement Agreement constitutes a security agreement under the UCC, and that Genie shall have all the rights and remedies of a secured party thereunder.

    B. Velanos agrees that it shall preserve and protect Genie's security interest in the Collateral and that it shall not, without Genie's prior written consent, grant or create or permit to attach or exist any mortgage, security interest, lien, judgment, or other encumbrance of or in the Collateral or any portion thereof, other than the security interest provided for in this Settlement Agreement.

    C. Velanos agrees to provide from time to time at Genie's reasonable request such additional redacted documents or instruments, for Genie to perfect and maintain its security interest in the Collateral. Velanos consents to Genie filing or causing to be filed or recorded, such instruments, documents, or notices, including assignments, financing statements, and continuation statements as Genie may deem necessary or advisable from time to time in order to perfect, to continue perfected, and to preserve the priority of the lien and security interest in the Collateral granted pursuant to this Settlement Agreement.

12. <u>Entire Agreement; No Parol Evidence</u>. This Settlement Agreement is a complete integration of the Parties' agreement and constitutes the entire agreement between them with respect to the subject matter hereof. This Settlement Agreement supersedes any and all other oral or written communications, representations, understandings, agreements, negotiations and discussions between the Parties and their attorneys. No parol evidence shall be admissible to interpret, explain, vary, or supplement this Settlement Agreement.

13. <u>Modification and Waiver</u>. No provision of this Settlement Agreement may be changed, altered, or modified except in writing signed by the Parties. The failure of either Party to enforce any provision of this Settlement Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Settlement Agreement thereafter. No waiver of any term or right in this Settlement Agreement shall

DocuSign Envelope ID ECE307DC-B04C-4E79-9B71-46C15018BEDE

be effective unless set forth in writing and signed by an authorized representative of the waiving Party.

14. <u>Severability</u>. If any term of this Settlement Agreement is determined, either by a court of lawful jurisdiction or by the parties' mutual agreement, to be invalid, illegal, or otherwise unenforceable, then

    A. The Parties shall use all reasonable efforts to negotiate in good faith to amend the term to eliminate any such invalidity, illegality, or unenforceability to the extent practically possible, taking into full account their original intent when entering into this Agreement in the first instance, and

    B. The remaining provisions hereof shall continue in full force and effect.

15. <u>Pendency of Bankruptcy Proceedings</u>. The Parties acknowledge that this Settlement Agreement is contingent upon the approval of this Settlement Agreement and confirmation of the Genie Chapter 11 plan in case number 3:24-bk-00496-BAJ pending in the Middle District of Florida Jacksonville Division of the United States Bankruptcy Court. To the extent that there is a Trustee appointed in that bankruptcy case, the Settlement Agreement is not approved by the Court, and/or Genie's Chapter 11 Plan is not confirmed with the essential terms of this Settlement Agreement incorporated into such confirmation, then the Settlement Agreement shall be voided as to any remaining obligations by all parties.

16. <u>Choice of Law and Venue</u>. This Settlement Agreement shall be governed in all respects by the laws of the state of New York, including as to interpretation, enforceability, validity, and construction. The Parties also agree that the venue for any legal action to enforce the provisions of this Settlement Agreement, or any document executed in connection with this Settlement Agreement, shall be in the state of New York. The Parties agree they will not contest the choice of law and venue provisions in this Section.

17. <u>Construction</u>. Because this Settlement Agreement was the result of arms-length negotiations between the Parties and their respective attorneys, no party shall be considered the drafter; consequently, the rule of construction that all conflicts and ambiguities should be construed against the drafter shall not be employed in the interpretation of this Settlement Agreement.

18. <u>Attorney's Fees and Costs in Enforcement of the Agreement</u>. If either Party incurs any attorney's fees, costs, or expenses in any proceeding to enforce the terms of this Settlement Agreement or any of the rights provided hereunder, the prevailing Party shall be entitled to recover

DocuSign Envelope ID  ECE307DC-B04C-4E79-9B71-46C15018BEDE

its reasonable attorney's fees and any court, arbitration, mediation, or other litigation expenses from the other Party.

19. <u>References to Time</u>. Unless otherwise specified, references to time periods in this Settlement Agreement refer to calendar days.

20. <u>Successors and Assigns</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' successors, assigns, agents, heirs, and personal representatives.

21. <u>Third Parties</u>. This Settlement Agreement shall not confer any rights or remedies upon any third party other than the Parties to this Settlement Agreement and their respective successors, assigns, agents, heirs, and personal representatives. The Parties have not transferred, by assignment or otherwise, any of the claims released in this Settlement Agreement.

22. <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts, all of which shall be considered one instrument, and a copy or facsimile of each will be deemed an original and shall be binding when one or more counterparts have been signed by each of the parties.

23. <u>Advice of Counsel</u>. The Parties acknowledge and represent that they have read this Settlement Agreement in full and understand and voluntarily consent to each of its provisions after having had ample time and opportunity to consult with their respective attorneys concerning the Settlement Agreement. The Parties further acknowledge and represent that they are sophisticated in matters of business and have negotiated this Settlement Agreement at arms' length.

24. <u>Authority to Bind</u>. By signing below the Parties represent that the signatories are authorized to execute this Settlement Agreement on behalf of their respective business entities and that the execution and delivery of this Settlement Agreement are the duly authorized and binding acts of their respective business entities.

25. <u>Non-Disparagement</u>. The Parties hereby understand and agree that the business reputation of each Party is of paramount importance. As a material inducement to the execution of this Settlement Agreement, the Parties agree that they will not make any disparaging comments about each other which is intended to adversely affect either the conduct of the Parties' business or profession, or the Parties' business or professional reputation, which conduct shall include, but not be limited to, business defamation and/or disparagement of professional skill, judgment, and reputation for probity and thrift. This includes, but is not limited to, any disparaging comments that are made available to any third parties via the internet. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

26. <u>Confidentiality.</u> The terms of this Settlement Agreement, including but not limited to the Settlement Payment, are to be held in strict confidence and are not to be disclosed by the Parties to any person with the sole exception of: (1) the Parties' attorneys (2) the Parties' tax advisors and/or accountants, for purposes of tax reporting, regulatory reporting and/or financial planning; (3) as necessary in connection with the Parties' current or future liability insurance and/or any disclosure requirements to which the Parties are subject; (4) as necessary to enforce this Settlement Agreement; and (5) as required or otherwise permitted by law or legal process, including, but not necessarily limited to, communicating with regulatory or law-enforcement authorities, defending

DocuSign Envelope ID: ECE307DC-B04C-4E79-9B71-46C15018BEDE

legal or regulatory claims brought against either Party, or asserting legal claims not otherwise prohibited by the terms of this Settlement Agreement. The conveyance of the terms of this Settlement Agreement to third parties as referenced above or as are necessary to contact in connection with subparagraphs 1 through 3 above is conditioned upon such third parties' acceptance of the terms of this Confidentiality provision and that they accept responsibility to keep such terms confidential. Both Parties agree, that prior to such disclosure, they will advise the intended recipient of the confidentiality requirements of this Confidentiality provision and that disclosure of this Settlement Agreement's terms may subject him or her to potential legal action. It shall be considered a breach of this confidentiality provision if the Parties fail to advise any individual to whom a disclosure is made pursuant to this Confidentiality provision of the confidentiality requirements of this Confidentiality provision and if that individual communicates, publishes, publicizes or discloses confidential information to any third party or causes confidential information to be communicated, published, publicized or disclosed to any third party. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

27. <u>Notices and Legal Counsel</u>. Any notices or other communications required by or otherwise necessary to effectuate the terms of this Settlement Agreement shall be delivered to the Parties as set forth below. Each Party agrees to inform the other promptly of any changes to the information below, including any changes to its legal counsel.

> Velanos Principal Capital
> c/o Joshua Wearmouth, CEO
> 120 Adelaide Street West, Suite 2500
> Toronto, Ontario M5H 1T1
> CANADA
> jwearmouth@velanosprincipalcapital.com
>
> Legal counsel for Velanos Principal Capital
> Boddie & Associates P.C.
> c/o Corey D. Boddie
> 40 Exchange Place, suite 1800
> New York, NY 10005
> corey@boddieassoc.com
>
> Genie Investments NV
> c/o David Hughes
> 2812 Pat Tillman Drive
> Springfield, Illinois 62711
> dhughes@genieinvestments.com
>
> Legal counsel for Genie Investments:
> AW Securities Law
> c/o Adam Walker
> 4010 Pennsylvania Ave., Suite 115-10
> Kansas City, Missouri 64111
> adam@awsecuritieslaw.com

DocuSign Envelope ID: ECE307DC-B04C-4E79-9B71-46C15018BEDE

In witness whereof, the Parties hereto have executed this Settlement Agreement on the date(s) set forth below.

GENIE INVESTMENTS NV

By:   _David Hughes_
     David Hughes (May 15, 2024 10:56 CDT)
     David Hughes

Title:   Managing Member

Date:

VELANOS PRINCIPAL CAPITAL

By:   D85D494D21D149B...
     Joshua Wearmouth

Title:

     5/16/2024
Date:

11

## EXHIBIT A

## RECIPIENT ACCOUNT INFORMATION

Routing #:    043000096

Acct #:    4731874578

Bank info:    PNC BANK
500 First Avenue
Mailstop: P7-PFSC-03-W
Pittsburgh, PA 15219

—————————— **EXHIBIT B**  ——————————

## AFFIDAVIT OF JOSHUA WEARMOUTH

Joshua Wearmouth, the CEO of Velanos Principal Capital Inc., a Canadian corporation, being duly sworn, depose and say:

1.    I am Joshua Wearmouth, the CEO of Velanos Principal Capital, Inc., a Canadian corporation ("Velanos").

2.    As CEO of Velanos, I attest that I have given our attorney Corey D. Boddie all relevant, unredacted documentation concerning the Velanos account which is currently being traded on the Forex platform on May 13, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 13th day of May 2024.

Joshua Wearmouth,
CEO of Velanos Principal Capital Inc.

Sworn to before me
This 13 day of
May, 2024

COREY DELON BODDIE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02BO6282620
Qualified in New York County
My Commission Expires: May 28, 2025

**EXHIBIT C**

GENIE INVESTMENTS NV,

     Claimant,

v.                                JAMS Ref No. 5425001617

VELANOS PRINCIPAL CAPITAL, INC.,

     Respondent.

---

### JOINT MOTION FOR ENTRY OF CONSENT AWARD

Claimant Genie Investments NV (Genie) and Respondent Velanos Principal Capital (Velanos) have executed a settlement agreement intended to resolve all claims asserted in this matter. As a condition of that settlement agreement (attached to this motion as **Exhibit A**) and pursuant to Rule 28(c) of JAMS Comprehensive Arbitration Rules & Procedures, Genie and Velanos move jointly for entry of a consent award setting forth the following terms in such form and with such other terms as the arbitrator deems necessary and appropriate to effectuate the Parties' settlement agreement:

1.     On or about October 21, 2022, the Parties entered into a "Joint Venture Agreement" (JVA).

2.     On October 25, 2023, Genie commenced this proceeding, identified as JAMS Ref No. 5425001617 (the Arbitration) against Velanos, seeking both a determination that Velanos materially breached the JVA and an award of compensatory and other damages.

3.     During this Arbitration, the Parties completed the discovery permitted by the rules and scheduling order governing this Arbitration. In addition, the Parties briefed multiple motions, including a dispositive motion submitted by the Claimant.

**EXHIBIT C**

4.    Before concluding the Arbitration, the Parties reached and executed a settlement agreement intended to resolve, among other things, all claims and defenses asserted herein.

5.    As a condition of that settlement agreement, the Parties agreed to consent to an award in this Arbitration stating (a) that Velanos breached the JVA and (b) that Genie is awarded damages for that breach in the amount of twenty million dollars ($20,000,000.00).

6.    Throughout the entirety of this Arbitration, each Party has been represented by an attorney and has received legal counsel and advice concerning potential outcomes if this Arbitration were to end in a determination on the merits, whether based on a dispositive motion or full evidentiary hearing. The instant motion reflects the Parties' respective decisions to resolve the dispute at issue in this Arbitration through settlement on the terms set forth herein, rather than through a determination by the arbitrator.

7.    The damages awarded to Genie are due and payable by Velanos within fifteen (15) calendar days following entry of this award.

8.    Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

9.    Each Party shall bear one half of all fees assessed by JAMS in connection with this Arbitration, except to the extent that any fee, penalty, or other charge assessed by JAMS is the result of either Party's lateness, delay, or noncompliance with any rule or order governing this Arbitration, in which case the Party whose lateness, delay, or noncompliance resulted in a fee, penalty, or other charge shall be fully responsible for paying it.

**EXHIBIT C**

Respectfully submitted,

_____

Adam Walker
AW Securities Law
4050 Pennsylvania Ave., Suite 115-10
Kansas City, Missouri 64111

*Counsel for Genie Investments NV*

_____

Corey D. Boddie
Boddie & Associates P.C.
40 Exchange Place, suite 1800
New York, NY 10005
corey@boddieassoc.com

*Counsel for Velanos Principal Capital*

# EXHIBIT 2

Docusign Envelope ID  750BEF48-CC09-43D1-92D4-285BA291E038

## AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

THIS AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (the "Amendment") is entered into this ___ day of October, 2024 (the "Effective Date") by and between Aaron Cohen, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Genie Investments NV, Inc. (the "Debtor") and Velanos Principal Capital, a business entity registered in Ontario, Canada ("Velanos" and collectively with the Trustee, the "Parties").

WHEREAS, on February 21, 2024, (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") initiating the case styled: *In re Genie Investments NV, Inc.*, Case No: Case No. 3:24-bk-00496-BAJ (the "Bankruptcy Case").

WHEREAS, the Debtor and Velanos entered into that certain Settlement Agreement and Release of Claims (the "Existing Agreement") with an effective date of May 15, 2024 which settled certain claims the Debtor held against Velanos.

WHEREAS, on August 12, 2024 the Bankruptcy Court entered an Order Converting Case From Chapter 11 to Chapter 7 and the Trustee was appointed to administer the Debtor's estate. As a result, the Trustee now holds the Debtor's claims against Velanos.

WHEREAS, the Trustee and Velanos desire to amend the Existing Agreement to substitute the Trustee as a party to the Existing Agreement in place of the Debtor.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Amendments to the Existing Agreement. The Existing Agreement is hereby amended as follows:

      a)    The Trustee is substituted in the Existing Agreement in place of the Debtor. All references in the Existing Agreement to "Genie Investments NV, a Nevada corporation" are replaced with "Aaron Cohen, Chapter 7 Trustee for the bankruptcy estate of Genie Investments NV, Inc." and all references to "Genie" are replaced with "Trustee", with the exception of paragraphs a. b., and c on page 1 of the Existing Agreement.

      b)    Paragraph 15 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

          15. Pendency of Bankruptcy Proceedings. The Parties acknowledge that this Settlement Agreement is contingent upon the approval of this Settlement Agreement by the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") in the bankruptcy case styled *In re Genie Investments NV, Inc.*, Case No: Case No. 3:24-bk-00496-BAJ (the "Bankruptcy Case"). If the Trustee is unable to obtain Bankruptcy Court

Docusign Envelope ID  750BEF48-CC09-43D1-92D4-285BA291E038

approval of the Settlement Agreement in the form of a non-appealable and final order, the Settlement Agreement shall be voided as to any remaining obligations of the Parties, except that the Trustee is entitled to retain any part of the Settlement Amount previously paid by Velanos and the Consent Award entered pursuant to ¶ 6 of the Settlement Agreement shall remain in full force and effect.

c)   Paragraph 16 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

16. <u>Choice of Law and Venue</u>. This Settlement Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Florida applicable to contracts made and to be performed fully within the State of Florida.  The Parties consent to the jurisdiction of the Bankruptcy Court for any all disputes arising out of or resulting from this Settlement Agreement.

d)   Paragraph 26 of the Existing Agreement is hereby amended with the addition of the following sentence at the end of Paragraph 26:

"The Trustee is permitted to attach a copy of this Settlement Agreement to the motion to approve the Settlement Agreement (the "<u>Motion</u>") filed with the Bankruptcy Court and serve the Motion with attached Settlement Agreement on all persons required to receive service of the Motion pursuant to the United States Bankrtupcy Code and Federal Rules of Bankruptcy Procedure."

e)   Paragraph 27 of the Existing Agreement is hereby amended to delete the following indicated by a ~~strike-through~~ and replaced with the following indicated by an <u>underline</u>:

~~Genie Investments NV~~
~~c/o of David Hughes~~
~~2812 Pat Tillman Drive~~
~~Springfield, Illinois 627111~~
~~dhughes@genieinvestments.com~~

<u>Aaron Cohen, Chapter 7 Trustee</u>
<u>P.O. Box 4218</u>
<u>Jacksonville, FL 32201-4218</u>

~~Legal Counsel for Genie Investments:~~
~~AW Securities Law~~
~~c/o Adam Walker~~
~~4010 Pennsylvania Ave., Suite 115-110~~
~~Kansas City, Missouri 64111~~
~~adam@awsecuritieslaw.com~~

2

Docusign Envelope ID 750BEF48-CC09-43D1-92D4-285BA291E038

<u>Legal Counsel for the Trustee:</u>
<u>Raye Elliott</u>
<u>Akerman LLP</u>
<u>401 E. Jackson St., Ste. 1700</u>
<u>Tampa, FL 33602</u>
<u>raye.elliott@akerman.com</u>

f)   Exhibit A to the Existing Agreement is deleted in its entirety. Bank account information for the Trustee has previously been provided to counsel for Velanos.

2.   <u>Miscellaneous.</u>

a)   This Amendment is governed by and construed in accordance with the laws of the State of Florida applicable to contracts made and to be performed fully within the State of Florida.  The Parties consent to the jurisdiction of the Bankruptcy Court for any all disputes arising out of or resulting from this Amendment.

b)   This Amendment shall inure to the benefit of and be binding upon each of the Parties and each of their respective successors and assigns.

c)   The headings in this Amendment are for reference only and do not affect the interpretation of this Amendment.

d)   This Amendment may be executed in counterparts, each of which is deemed an original, but all of which constitute one and the same agreement.

e)   This Amendment constitutes the sole and entire agreement between the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

f)   Each Party shall pay its own costs and expenses in connection with this Amendment (including the fees and expenses of its advisors, accountants, and legal counsel).

78252077,1

Docusign Envelope ID: 750BEF48-CC09-43D1-92D4-285BA291E038

IN WITNESS WHEREOF, the Parties intending to be legally bound, have duly executed and delivered this Amendment as of the Effective Date.

**VELANOS PRINCIPAL CAPITAL**

Signed by:

By: _____
0B37166A075B410

Joshua Wearmouth

Its: Chief Executive Officer

Dated: 10/17/2024

**AARON R. COHEN, CHAPTER 7 TRUSTEE**

Signed by:

Aaron R. Cohen, Trustee
7DC3FA550852434...

_____

Aaron R. Cohen, as Chapter 7 Trustee of the bankrtupcy estate of Genie Investments NV, Inc.

Dated: 10/16/2024

4

78252077;1

# EXHIBIT 3

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:

GENIE INVESTMENTS NV INC.,                    Case No.: 3:24-bk-00496-BAJ

      Debtor.                                 Chapter 7

_____/

AARON R. COHEN, Chapter 7 Trustee,
                                    Adversary Proceeding No. _____

      Plaintiff,

v.

VELANOS PRINCIPAL CAPITAL, INC.,

      Defendant.

_____/

## COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARD

Aaron R. Cohen, Chapter 7 Trustee, (the "Trustee") of the bankruptcy estate of Genie
Investments NV, Inc., by and through undersigned counsel, files his *Complaint for Confirmation
of Arbitration Award* against Velanos Principal Capital, Inc. ("Velanos") and states as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and
1334.

2.      The statutory predicate for the claim for relief is Section 9 of the Federal Arbitration
Act, 9 U.S.C. § 1, *et. seq.* (the "FAA").

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) as this is a proceeding affecting liquidation of the assets of the estate and is related to a compromise approved by this Court.

## PARTIES

5. On February 21, 2024 (the "Petition Date"), Genie Investments NV Inc. (the "Debtor") filed a Voluntary Petition for Relief (Doc. 1) under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, in the case styled *In re Genie Investments NV Inc.*, Case No: 3:24-bk-00496-BAJ (the "Bankruptcy Case").

6. On August 12, 2024, the Bankruptcy Case was converted to a Chapter 7 liquidation case and the Trustee was appointed to administer the Debtor's estate (Doc. 207).

7. Velanos is a corporation organized under the Canada Business Corporations Act with its principal place of business located at 120 Adelaide Street West, Suite 2500, Toronto ON M5H 1T1, Canada. The Court has personal jurisdiction over Velanos pursuant to Fed. R. Bankr. P. 7004(f), Fed. R. Civ. P. 4(h), and Florida Statute § 48.193.

## Factual Background

8. In late 2023, the Debtor initiated an arbitration against Velanos with JAMS (the "Arbitration") to recover damages against Velanos.

9. On May 15, 2024, the Debtor and Velanos entered into a Settlement Agreement and Release of Claims (the "Settlement Agreement") to resolve the claims in the Arbitration, a copy of which is attached hereto and incorporated herein as **Exhibit A**.

10. The Settlement Agreement provides at paragraph 6 that Velanos would consent to an award in the Arbitration in the amount of $20 million, that the Debtor could apply to any court

2

of competent jurisdiction to confirm the award and that Velanos would not oppose any application for judicial confirmation of the award.

11.    Pursuant to the Settlement Agreement, on May 28, 2024, the JAMS arbitrator entered the arbitration award in the amount of $20 million (the "Award"), a copy of which is attached hereto and incorporated herein as **Exhibit B**.

12.    Velanos has not moved to vacate, modify, or correct the Award.

13.    The Award provides at paragraph 2(c) that the Debtor could apply to any court of competent jurisdiction for confirmation of the Award and obtain a judgment against Velanos for the full amount of the Award plus post-judgment interest at the rate of nine percent.

14.    On May 23, 2024, the Debtor filed a Motion to Approve Settlement Agreement Between Genie Investments, NV, Inc. and Velanos Principal Capital (Main Case Doc. 107) which sought this Court's approval of the Settlement Agreement.

15.    After the Bankrtupcy Case was converted to Chapter 7, the Trustee and Velanos entered into an Amendment to Settlement Agreement and Release of Claims (the "Amendment") to replace the Debtor with the Trustee as the party to the Settlement Agreement, a copy of which was filed with the Court on October 17, 2024 (Main Case Doc. 249).

16.    On October 24, 2024, the Court entered its Order approving the Settlement Agreement and Amendment (Main Case Doc. 257).

17.    All conditions precedent to the filing of this action have occurred or have been waived.

## Count I

18.    The allegations contained in paragraphs 1-17 are realleged and incorporated by reference herein.

3

79502340;1

19.     Arbitration awards are subject to and governed by the FAA.

20.     Pursuant to the FAA, confirmation of an arbitration award is a streamlined process.

21.     The prevailing party in an arbitration has one year to apply to a court to confirm an arbitration award in its favor. *See* 9 U.S.C. § 9.

22.     The losing party in an arbitration must serve any motion or application to vacate, modify or correct an arbitration award within three months of the filing or delivery of the arbitration award. *See* 9 U.S.C. § 12.

23.     A party may not make a motion to vacate, modify, or correct an arbitration award after the three-month period has run, even if raised as a defense to a motion to confirm the award.

24.     Pursuant to the Settlement Agreement, Velanos agreed "not to oppose or challenge any such application by [the Debtor] for judicial confirmation of the arbitration award."

25.     The FAA provides that a "court *must* confirm an arbitration award unless it is vacated, modified, or corrected . . . ." *See* 9 U.S.C. § 9 (emphasis added).

26.     It has been more than three months since the Award was issued and Velanos has not served any motion or application to vacate, modify, or correct the Award.

27.     The Trustee seeks confirmation of the Award within one year of the date it was issued; thus, pursuant to the FAA, the Award must be confirmed.

WHEREFORE, Aaron R. Cohen as Chapter 7 Trustee respectfully requests that the Court confirm the arbitration Award, enter a judgment in the amount of $20 million against Velanos Principal Capital, Inc. and in favor of the Trustee, and for such other relief as the Court deems just.

Dated:  January 10, 2025                              AKERMAN LLP

                                                      By: */s/ Raye C. Elliott*
                                                          Raye  C. Elliott, Esq.
                                                          Florida Bar Number: 018732
                                                          Email: raye.elliott@akerman.com

4

401 East Jackson Street, Suite 1700
Tampa, FL 33602
Phone:  (813) 223-7333
Fax:  (813) 223-2837

Attorneys for Aaron R. Cohen, Chapter 7 Trustee

5

# Exhibit A

DocuSign Envelope ID: ECE207DC-B94C-4572-9B71-496152485EDF

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Settlement Agreement") is entered into effective May 15, 2024 between (1) Genie Investments NV, a Nevada corporation ("Genie"), and (2) Velanos Principal Capital, a business entity registered in Ontario, Canada ("Velanos"), with respect to the following:

    a. On or about October 21, 2022, Genie and Velanos (individually "Party" and collectively "the Parties") entered into a "Joint Venture Agreement" ("JVA").

    b. On October 25, 2023, Genie commenced an arbitration proceeding (the "Arbitration") against Velanos with JAMS, seeking a determination that Velanos materially breached the JVA and an award of damages.

    c. On February 6, 2024, Genie filed a lawsuit in the U.S. District Court for the Middle District of Florida, case number 6:24-cv-00271 (the "Florida Litigation"), in which it asserted claims related to the JVA against multiple defendants other than Genie.

    d. Genie and Velanos now wish to settle their dispute and resolve both the Arbitration and the Florida Litigation according to the terms set forth below.

NOW, THEREFORE, in consideration of the following mutually agreed covenants and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1. <u>Definitions</u>. For purposes of this Settlement Agreement, the following definitions shall apply:

    A. "Genie" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

    B. "Velanos" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

    C. "Trading Account Interest" refers to Velanos' ownership interest in the account ("Trading Account") described and identified in Section 3 of this Settlement Agreement and **Exhibit B** hereto.

1

2. <u>Settlement Amount</u>. Velanos shall pay Genie the total sum of Fifteen Million ($15,000,000.00) dollars (the "Settlement Amount"). The Settlement Amount shall be paid to Genie in ten installments ("Installment Payments"), as follows:

A.  The first Installment Payment shall be completed within two (2) business days of the effective date of the Settlement Agreement, in the amount of fifty thousand dollars ($50,000.00).

B.  The second Installment Payment shall be completed on or before June 30, 2024, in the amount of five hundred thousand dollars ($500,000.00).

C.  The third Installment Payment shall be completed on or before September 30, 2024, in the amount of one million dollars ($1,000,000.00).

D.  The fourth Installment Payment shall be completed on or before December 31, 2024, in the amount of two million dollars ($2,000,000.00).

E.  The fifth Installment Payment shall be completed on or before March 31, 2025, in the amount of two million dollars ($2,000,000.00).

F.  The sixth Installment Payment shall be completed on or before June 30, 2025, in the amount of two million dollars ($2,000,000.00).

G.  The seventh Installment Payment shall be completed on or before September 30, 2025, in the amount of two million dollars ($2,000,000.00).

H.  The eighth Installment Payment shall be completed on or before December 31, 2025, in the amount of two million dollars ($2,000,000.00).

I.  The ninth Installment Payment shall be completed on or before March 31, 2026, in the amount of two million dollars ($2,000,000.00).

J.  The tenth Installment Payment shall be completed on or before June 30, 2026, in the amount of one million four hundred and fifty thousand dollars ($1,450,000.00).

Unless otherwise instructed by Genie in accordance with the requirements set forth below, Velanos shall direct all Installment Payments to the account (the "Recipient Account") identified in **Exhibit A** to this Settlement Agreement. At any time, Genie may, at its sole discretion, designate a different Recipient Account by providing Velanos with written notice identifying the alternate Recipient Account at least fifteen (15) business days before the Installment Payment's due date.

An Installment Payment will be considered completed as of the time it is received in the Recipient Account, as reflected in the records of the bank where the Recipient Account is held. An Installment Payment shall be deemed timely completed if it is received in the Recipient Account prior to 11:59 PM Central time on its due date.

3. <u>Confidential Trading Account Information; Immediate Disclosure of Account Documents Upon Event of Default</u>. Concerning the Trading Account and Trading Account Interest, Velanos represents and warrants that its owner and CEO, Joshua Wearmouth, has duly executed the

2

affidavit attached as **Exhibit B** to this Settlement Agreement with full authority to do so. Velanos further represents and agrees that:

A. Velanos is the sole owner of the Trading Account Interest.

B. The present principal value of the Trading Account Interest is at least $5,000,000.

C. Velanos has provided its legal counsel with unredacted copies of documentation (collectively, "Account Documents") concerning the Trading Account and the Trading Account Interest, including, but not limited to: (i) any and all agreements showing Velanos' ownership share in the Trading Account, (ii) any and all agreements governing activity in or administration of the Trading Account, (iii) statements created by or obtained from the showing all activity in the Trading Account since its formation, and (iv) such other documents as necessary to give the holder of the Account Documents all information necessary to locate the Trading Account, accurately assess the value of the Trading Account Interest, and understand any salient restrictions on the ability of the owner(s) of the Trading Account Interest to access the principal and profits therein.

D. Velanos agrees to supplement the information and documentation it has provided to its legal counsel pursuant to Section 3(C) of this Settlement Agreement either on or before the due date for each Installment Payment or more frequently, in the event of any material change the terms governing the Trading Account or of any communication from, or public statement by, the entity administering the Trading Account indicating that the Trading Account will or may be closed during the term of this Settlement Agreement.

E. Velanos authorizes and instructs its legal counsel to hold the Account Documents in trust during the term of this Settlement Agreement. Upon the occurrence of any Event of Default under this Settlement Agreement, however, Genie shall have the right to request and immediately obtain from Velanos' legal counsel all Account Documents. Notwithstanding any obligations to the contrary, Velanos authorizes and instructs its legal counsel to make immediate delivery of the Account Documents to Genie, and to provide Genie any other documents or information reasonably necessary for Genie to enforce the arbitration award and/or judicial confirmation described in Section 6 of this Settlement Agreement, upon the occurrence of any Event of Default.

F. If, during the term of this Settlement Agreement, the legal counsel identified herein ceases to represent Velanos in connection with this matter, then Velanos shall immediately: (i) engage substitute legal counsel, (ii) provide Genie written notice of the change in legal counsel and the identity of Velanos' substitute legal counsel, and (iii) authorize, instruct, and equip its substitute legal counsel to perform each of the duties described in this Section.

G. The Parties agree that failure to comply fully and timely with any portion of this Section shall result in additional damages to Genie, for which Velanos shall immediately be liable to Genie in the amount of one hundred thousand dollars ($100,000.00). This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from

3

a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

4. <u>Genie's Release of Velanos</u>. Subject to the conditions set forth in this Settlement Agreement, Genie hereby releases and forever discharges Velanos from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA, including but not limited to all claims that were or could have been asserted in the Arbitration, *provided, however*:

    A. This release shall not apply to claims arising out of the enforcement of this Settlement Agreement.

    B. Genie's release of any rights, claims, causes of action, damages, liabilities or demands, whether in law or in equity, against Velanos shall be of no force and effect until the successful completion of all Installment Payments contemplated by this Settlement Agreement.

    C. Any Event of Default by Velanos shall void the release set forth in this paragraph.

5. <u>Velanos' Release of Genie</u>. Velanos hereby releases and forever discharges Genie from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits, or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA.

6. <u>Consent Award in Arbitration and Judicial Confirmation Thereof</u>. The Parties agree that, within three (3) business days of the effective date of this Settlement Agreement, they will jointly submit and request entry of a proposed Consent Award pursuant to Rule 28(c) of the Comprehensive Arbitration Rules & Procedures of JAMS Arbitrators and Arbitration Services. The Consent Award submitted by the Parties is attached as **Exhibit C** to this Settlement Agreement and, in pertinent part, states that Genie is awarded damages totaling twenty million dollars ($20,000,000.00), which amount is due and payable by Velanos within fifteen (15) calendar days of the Consent Award's entry.

    A. Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

    B. Velanos agrees not to oppose or challenge any such application by Genie for judicial confirmation of the arbitration award. Violation of this subparagraph by Velanos shall result in additional damages to Genie, for which Velanos shall be immediately liable to Genie in the amount of one million dollars ($1,000,000.00), plus interest accruing at an annual rate of nine percent (9.0%) from the date of the violation. This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of

Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

C. Genie agrees that it will not seek to collect on the arbitration award, or on any judgment confirming the arbitration award, prior to either (i) the occurrence of any Event of Default or (ii) an indication by Velanos, through either words or actions, that an Event of Default is imminent.

D. If the arbitrator in the Arbitration refuses to enter an Award that is identical or substantially identical in substance to the proposed Consent Order submitted by the Parties, then the Parties shall have seven (7) calendar days from the date on which JAMS notified the Parties of that fact to reach a mutually agreeable amendment of this Settlement Agreement. If they are unable to do so within that time, then this Settlement Agreement shall have no further force or effect.

7. <u>Dismissal of Florida Litigation</u>. No later than three (3) business days after the receipt of the second installment payment, Genie will file a Motion to Dismiss the Florida Litigation without prejudice. Velanos agrees to consent to that motion and to take no action to oppose or contest the motion or to delay the Court's action regarding it.

8. Genie agrees that it will not, prior to the occurrence or reasonable anticipation of any Event of Default by Velanos, make contact in any manner whatsoever with any person or entity whom Genie knows to be a partner, asset holder, bank officer, escrow officer, or paymaster of Velanos, with the exception of any persons or entities with whom Genie, its principals, or its representatives had a prior business relationship, for the purposes of obtaining information about or interfering with any of Velanos' existing or prospective business relationships.

9. <u>Events of Default</u>. For purposes of this Settlement Agreement, "Events of Default" include the following:

A. Failure of Velanos to make any Installment Payment when due.

B. Failure of Velanos to perform or observe any of Velanos' covenants or agreements contained in this Settlement Agreement.

C. The depletion of the principal amount of Velanos' ownership share in the Trading Account below five million dollars ($5,000,000.00) at any time before Velanos' satisfaction in full of all of the obligations imposed on it by this Settlement Agreement, regardless of whether such depletion results from any action of failure to act by Velanos or from any external factor, including trading losses, market forces, or the action or inaction of any third party or parties.

D. Failure of Velanos to comply with every aspect of Paragraph 11 ("Security Interest") of this Settlement Agreement.

E. The sale or other transfer by Velanos of all or any material part of its property or assets except in the usual and ordinary course of the operation of its business; or a change in the general character, or suspension of any significant part, of Velanos' business.

F. Actions by or on behalf of Velanos to: (1) make an assignment for the benefit of creditors or petition or apply to any tribunal for the appointment of a custodian, receiver, or trustee for it or a substantial part of its assets, (2) commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, (3) have any such petition or application filed or any such proceeding commenced against it that is not dismissed within thirty (30) days, (4) indicate, by any act or intentional and purposeful omission, its consent to, approval of or acquiescence in any such petition, application, proceeding or order for relief or the appointment of a custodian, receiver or trustee for it or a substantial part of its assets, or (5) suffer any such custodianship, receivership or trusteeship that continues undischarged for a period of thirty (30) days or more.

G. Entry against Velanos of a judgment or decree in excess of Fifty Thousand Dollars ($50,000) that becomes non-appealable and remains undischarged, unsatisfied by insurance or otherwise, and unstayed for more than thirty (30) days.

H. The existence of a default or an event that, with the giving of notice (1) would constitute a default, under any other indebtedness of Velanos, for borrowed money or (2) would cause (or would permit any holder of such indebtedness or trustee to cause) such indebtedness, or a portion thereof in an aggregate amount exceeding Fifty Thousand Dollars ($50,000.00), to become due prior to its stated maturity or prior to its regularly scheduled dates of payment.

I. Violation by Genie of Paragraph 8 of this Settlement Agreement.

10. <u>Default</u>. Upon the occurrence of any "Event of Default," as described in Paragraph 9 of this Settlement Agreement:

A. The entire amount of the Consent Award and any court judgment confirming that award, including all accrued post-judgment interest thereunder, and less the total amount of Installment Payments completed as of the Event of Default, shall, without any prior notice, presentment, or demand, become immediately due and payable in full.

B. Genie shall immediately have the right to take any and all legal action it deems proper to enforce the Consent Award and/or any court judgment confirming that award.

C. Genie shall immediately have the right to take any and all legal action it deems proper, including but not limited to reinstating the Florida Litigation.

D. Genie shall be entitled to recover any and reasonable attorney's fees, costs, and expenses that it reasonably incurs as a result of Velanos challenging or contesting any action taken by Genie based in furtherance of the rights created under this Paragraph, absent a ruling by a court of competent jurisdiction that Velanos' challenge or contest of such action is valid.

6

11. <u>Security Interest</u>. As security for the prompt and full satisfaction of the outstanding balance of all sums due under this Settlement Agreement or under the Consent Award, Velanos agrees that Genie shall have, and Velanos hereby grants and pledges to Genie, a security interest in all: accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, money, insurance and insurance claims, supporting obligations, and all other personal and fixture property, whether governed by Article 9 of the Uniform Commercial Code ("UCC") or other law wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "Collateral").

    A. In addition to all rights and remedies given to Genie by this Settlement Agreement, Velanos and Genie agree that this Settlement Agreement constitutes a security agreement under the UCC, and that Genie shall have all the rights and remedies of a secured party thereunder.

    B. Velanos agrees that it shall preserve and protect Genie's security interest in the Collateral and that it shall not, without Genie's prior written consent, grant or create or permit to attach or exist any mortgage, security interest, lien, judgment, or other encumbrance of or in the Collateral or any portion thereof, other than the security interest provided for in this Settlement Agreement.

    C. Velanos agrees to provide from time to time at Genie's reasonable request such additional redacted documents or instruments, for Genie to perfect and maintain its security interest in the Collateral. Velanos consents to Genie filing or causing to be filed or recorded, such instruments, documents, or notices, including assignments, financing statements, and continuation statements as Genie may deem necessary or advisable from time to time in order to perfect, to continue perfected, and to preserve the priority of the lien and security interest in the Collateral granted pursuant to this Settlement Agreement.

12. <u>Entire Agreement; No Parol Evidence</u>. This Settlement Agreement is a complete integration of the Parties' agreement and constitutes the entire agreement between them with respect to the subject matter hereof. This Settlement Agreement supersedes any and all other oral or written communications, representations, understandings, agreements, negotiations and discussions between the Parties and their attorneys. No parol evidence shall be admissible to interpret, explain, vary, or supplement this Settlement Agreement.

13. <u>Modification and Waiver</u>. No provision of this Settlement Agreement may be changed, altered, or modified except in writing signed by the Parties. The failure of either Party to enforce any provision of this Settlement Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Settlement Agreement thereafter. No waiver of any term or right in this Settlement Agreement shall

be effective unless set forth in writing and signed by an authorized representative of the waiving Party.

14. <u>Severability</u>. If any term of this Settlement Agreement is determined, either by a court of lawful jurisdiction or by the parties' mutual agreement, to be invalid, illegal, or otherwise unenforceable, then

    A. The Parties shall use all reasonable efforts to negotiate in good faith to amend the term to eliminate any such invalidity, illegality, or unenforceability to the extent practically possible, taking into full account their original intent when entering into this Agreement in the first instance, and

    B. The remaining provisions hereof shall continue in full force and effect.

15. <u>Pendency of Bankruptcy Proceedings</u>. The Parties acknowledge that this Settlement Agreement is contingent upon the approval of this Settlement Agreement and confirmation of the Genie Chapter 11 plan in case number 3:24-bk-00496-BAJ pending in the Middle District of Florida Jacksonville Division of the United States Bankruptcy Court. To the extent that there is a Trustee appointed in that bankruptcy case, the Settlement Agreement is not approved by the Court, and/or Genie's Chapter 11 Plan is not confirmed with the essential terms of this Settlement Agreement incorporated into such confirmation, then the Settlement Agreement shall be voided as to any remaining obligations by all parties.

16. <u>Choice of Law and Venue</u>. This Settlement Agreement shall be governed in all respects by the laws of the state of New York, including as to interpretation, enforceability, validity, and construction. The Parties also agree that the venue for any legal action to enforce the provisions of this Settlement Agreement, or any document executed in connection with this Settlement Agreement, shall be in the state of New York. The Parties agree they will not contest the choice of law and venue provisions in this Section.

17. <u>Construction</u>. Because this Settlement Agreement was the result of arms-length negotiations between the Parties and their respective attorneys, no party shall be considered the drafter; consequently, the rule of construction that all conflicts and ambiguities should be construed against the drafter shall not be employed in the interpretation of this Settlement Agreement.

18. <u>Attorney's Fees and Costs in Enforcement of the Agreement</u>. If either Party incurs any attorney's fees, costs, or expenses in any proceeding to enforce the terms of this Settlement Agreement or any of the rights provided hereunder, the prevailing Party shall be entitled to recover

DocuSign Envelope ID: ECE7DC-B84S-4F79-9B71-166159189EDE

its reasonable attorney's fees and any court, arbitration, mediation, or other litigation expenses from the other Party.

19. <u>References to Time</u>. Unless otherwise specified, references to time periods in this Settlement Agreement refer to calendar days.

20. <u>Successors and Assigns</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' successors, assigns, agents, heirs, and personal representatives.

21. <u>Third Parties</u>. This Settlement Agreement shall not confer any rights or remedies upon any third party other than the Parties to this Settlement Agreement and their respective successors, assigns, agents, heirs, and personal representatives. The Parties have not transferred, by assignment or otherwise, any of the claims released in this Settlement Agreement.

22. <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts, all of which shall be considered one instrument, and a copy or facsimile of each will be deemed an original and shall be binding when one or more counterparts have been signed by each of the parties.

23. <u>Advice of Counsel</u>. The Parties acknowledge and represent that they have read this Settlement Agreement in full and understand and voluntarily consent to each of its provisions after having had ample time and opportunity to consult with their respective attorneys concerning the Settlement Agreement. The Parties further acknowledge and represent that they are sophisticated in matters of business and have negotiated this Settlement Agreement at arms' length.

24. <u>Authority to Bind</u>. By signing below the Parties represent that the signatories are authorized to execute this Settlement Agreement on behalf of their respective business entities and that the execution and delivery of this Settlement Agreement are the duly authorized and binding acts of their respective business entities.

25. <u>Non-Disparagement</u>. The Parties hereby understand and agree that the business reputation of each Party is of paramount importance. As a material inducement to the execution of this Settlement Agreement, the Parties agree that they will not make any disparaging comments about each other which is intended to adversely affect either the conduct of the Parties' business or profession, or the Parties' business or professional reputation, which conduct shall include, but not be limited to, business defamation and/or disparagement of professional skill, judgment, and reputation for probity and thrift. This includes, but is not limited to, any disparaging comments that are made available to any third parties via the internet. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

26. <u>Confidentiality.</u> The terms of this Settlement Agreement, including but not limited to the Settlement Payment, are to be held in strict confidence and are not to be disclosed by the Parties to any person with the sole exception of: (1) the Parties' attorneys (2) the Parties' tax advisors and/or accountants, for purposes of tax reporting, regulatory reporting and/or financial planning; (3) as necessary in connection with the Parties' current or future liability insurance and/or any disclosure requirements to which the Parties are subject; (4) as necessary to enforce this Settlement Agreement; and (5) as required or otherwise permitted by law or legal process, including, but not necessarily limited to, communicating with regulatory or law-enforcement authorities, defending

legal or regulatory claims brought against either Party, or asserting legal claims not otherwise prohibited by the terms of this Settlement Agreement.  The conveyance of the terms of this Settlement Agreement to third parties as referenced above or as are necessary to contact in connection with subparagraphs 1 through 3 above is conditioned upon such third parties' acceptance of the terms of this Confidentiality provision and that they accept responsibility to keep such terms confidential. Both Parties agree, that prior to such disclosure, they will advise the intended recipient of the confidentiality requirements of this Confidentiality provision and that disclosure of this Settlement Agreement's terms may subject him or her to potential legal action. It shall be considered a breach of this confidentiality provision if the Parties fail to advise any individual to whom a disclosure is made pursuant to this Confidentiality provision of the confidentiality requirements of this Confidentiality provision and if that individual communicates, publishes, publicizes or discloses confidential information to any third party or causes confidential information to be communicated, published, publicized or disclosed to any third party. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

27. <u>Notices and Legal Counsel</u>. Any notices or other communications required by or otherwise necessary to effectuate the terms of this Settlement Agreement shall be delivered to the Parties as set forth below. Each Party agrees to inform the other promptly of any changes to the information below, including any changes to its legal counsel.

      Velanos Principal Capital
      c/o Joshua Wearmouth, CEO
      120 Adelaide Street West, Suite 2500
      Toronto, Ontario MSH 1T1
      CANADA
      jwearmouth@velanosprincipalcapital.com

      Legal counsel for Velanos Principal Capital
      Boddie & Associates P.C.
      c/o Corey D. Boddie
      40 Exchange Place, suite 1800
      New York, NY 10005
      corey@boddieassoc.com

      Genie Investments NV
      c/o David Hughes
      2812 Pat Tillman Drive
      Springfield, Illinois 62711
      dhughes@genieinvestments.com

      Legal counsel for Genie Investments:
      AW Securities Law
      c/o Adam Walker
      4010 Pennsylvania Ave., Suite 115-10
      Kansas City, Missouri 64111
      adam@awsecuritieslaw.com

In witness whereof, the Parties hereto have executed this Settlement Agreement on the date(s) set forth below.

GENIE INVESTMENTS NV

By: _David Hughes_
David Hughes (May 15, 2024 10:58 CDT)
_____
David Hughes

Title: Managing Member
_____

Date: _____


VELANOS PRINCIPAL CAPITAL

By: _____
D85D494D21D149B...
Joshua Wearmouth

Title: _____

Date: 5/16/2024
_____

11

**<u>EXHIBIT A</u>**

**RECIPIENT ACCOUNT INFORMATION**

Routing #:    043000096

Acct #:    ██████████

Bank info:    PNC BANK
500 First Avenue
Mailstop: P7-PFSC-03-W
Pittsburgh, PA 15219

## AFFIDAVIT OF JOSHUA WEARMOUTH

Joshua Wearmouth, the CEO of Velanos Principal Capital Inc., a Canadian corporation, being duly sworn, depose and say:

1.      I am Joshua Wearmouth, the CEO of Velanos Principal Capital, Inc., a Canadian corporation ("Velanos").

2.      As CEO of Velanos, I attest that I have given our attorney Corey D. Boddie all relevant, unredacted documentation concerning the Velanos account which is currently being traded on the Forex platform on May 13, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 13th day of May 2024.

Joshua Wearmouth,
CEO of Velanos Principal Capital Inc.

Sworn to before me
This 13 day of
May , 2024

COREY DELON BODDIE
NOTARY PUBLIC. STATE OF NEW YORK
Registration No. 02BO6282620
Qualified in New York County
My Commission Expires: May 28, 2025

**EXHIBIT C**

GENIE INVESTMENTS NV,

     Claimant,

v.                            JAMS Ref No. 5425001617

VELANOS PRINCIPAL CAPITAL, INC.,

     Respondent.

---

## JOINT MOTION FOR ENTRY OF CONSENT AWARD

Claimant Genie Investments NV (Genie) and Respondent Velanos Principal Capital (Velanos) have executed a settlement agreement intended to resolve all claims asserted in this matter. As a condition of that settlement agreement (attached to this motion as **Exhibit A**) and pursuant to Rule 28(c) of JAMS Comprehensive Arbitration Rules & Procedures, Genie and Velanos move jointly for entry of a consent award setting forth the following terms in such form and with such other terms as the arbitrator deems necessary and appropriate to effectuate the Parties' settlement agreement:

1.     On or about October 21, 2022, the Parties entered into a "Joint Venture Agreement" (JVA).

2.     On October 25, 2023, Genie commenced this proceeding, identified as JAMS Ref No. 5425001617 (the Arbitration) against Velanos, seeking both a determination that Velanos materially breached the JVA and an award of compensatory and other damages.

3.     During this Arbitration, the Parties completed the discovery permitted by the rules and scheduling order governing this Arbitration. In addition, the Parties briefed multiple motions, including a dispositive motion submitted by the Claimant.

**EXHIBIT C**

4.     Before concluding the Arbitration, the Parties reached and executed a settlement agreement intended to resolve, among other things, all claims and defenses asserted herein.

5.     As a condition of that settlement agreement, the Parties agreed to consent to an award in this Arbitration stating (a) that Velanos breached the JVA and (b) that Genie is awarded damages for that breach in the amount of twenty million dollars ($20,000,000.00).

6.     Throughout the entirety of this Arbitration, each Party has been represented by an attorney and has received legal counsel and advice concerning potential outcomes if this Arbitration were to end in a determination on the merits, whether based on a dispositive motion or full evidentiary hearing. The instant motion reflects the Parties' respective decisions to resolve the dispute at issue in this Arbitration through settlement on the terms set forth herein, rather than through a determination by the arbitrator.

7.     The damages awarded to Genie are due and payable by Velanos within fifteen (15) calendar days following entry of this award.

8.     Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

9.     Each Party shall bear one half of all fees assessed by JAMS in connection with this Arbitration, except to the extent that any fee, penalty, or other charge assessed by JAMS is the result of either Party's lateness, delay, or noncompliance with any rule or order governing this Arbitration, in which case the Party whose lateness, delay, or noncompliance resulted in a fee, penalty, or other charge shall be fully responsible for paying it.

**EXHIBIT C**

Respectfully submitted,

_____

Adam Walker
AW Securities Law
4050 Pennsylvania Ave., Suite 115-10
Kansas City, Missouri 64111

*Counsel for Genie Investments NV*

_____

Corey D. Boddie
Boddie & Associates P.C.
40 Exchange Place, suite 1800
New York, NY 10005
corey@boddieassoc.com

*Counsel for Velanos Principal Capital*

# Exhibit B

JAMS ARBITRATION
REF. NO.: 5425001617

---

GENIE INVESTMENT NV,

      Claimant,

    -against-

                                 JOINT MOTION FOR
                                 ENTRY OF CONSENT
                                 AWARD

VELANOS PRINCIPAL CAPITAL,

      Respondent.

---

**ORDER 5:**

    Claimant Genie Investments NV (Genie) and Respondent Velanos Principal

Capital (Velanos), parties to an October 21, 2022, Joint Venture Agreement (JVA), have

executed a Settlement Agreement (annexed hereto as Exhibit A, inclusive of exhibits

thereto) in this October 26, 2023, arbitration, agreeing that Velanos has breached the

JVA, resolving all claims and defenses asserted in this proceeding and providing for

releases should the Settlement Agreement be finalized. See Exhibit A, annexed hereto.

As a condition of the Settlement Agreement and pursuant to Rule 28(c) of JAMS

Comprehensive Arbitration Rules & Procedures, Genie and Velanos, jointly, have

moved for entry of a Consent Award in the event of a default of the Settlement

Agreement by Velanos.

    ACCORDINGLY, the following is ORDERED:

    (1) Each Party shall bear one-half of all fees assessed by JAMS in connection

with this Arbitration, except to the extent that any fee, penalty, or other charge

assessed by JAMS is the result of either Party's lateness, delay, or noncompliance with any rule or order governing the Arbitration, in which case the Party whose lateness, delay, or noncompliance resulted in a fee, penalty, or other charge shall be fully responsible for paying it;

(2) A CONSENT AWARD, hereby, is issued providing:

(a) Velanos breached the JVA;

(b) Genie is awarded damages for that breach in the amount of twenty million dollars ($20,000,000.00);

(c) Genie, at its sole discretion, may apply to any court of competent jurisdiction for confirmation of this Consent Award and obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually; and

(d) Within fifteen (15) calendar days from the entry of the Consent Award, Velanos will pay Genie damages in the amount of twenty million dollars ($20,000,000.00).

Dated: May 28, 2024

HON. SHIRLEY WERNER KORNREICH (ret.)
Arbitrator

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Settlement Agreement") is entered into effective May 15, 2024 between (1) Genie Investments NV, a Nevada corporation ("Genie"), and (2) Velanos Principal Capital, a business entity registered in Ontario, Canada ("Velanos"), with respect to the following:

    a. On or about October 21, 2022, Genie and Velanos (individually "Party" and collectively "the Parties") entered into a "Joint Venture Agreement" ("JVA").

    b. On October 25, 2023, Genie commenced an arbitration proceeding (the "Arbitration") against Velanos with JAMS, seeking a determination that Velanos materially breached the JVA and an award of damages.

    c. On February 6, 2024, Genie filed a lawsuit in the U.S. District Court for the Middle District of Florida, case number 6:24-cv-00271 (the "Florida Litigation"), in which it asserted claims related to the JVA against multiple defendants other than Genie.

    d. Genie and Velanos now wish to settle their dispute and resolve both the Arbitration and the Florida Litigation according to the terms set forth below.

NOW, THEREFORE, in consideration of the following mutually agreed covenants and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

    1. <u>Definitions</u>. For purposes of this Settlement Agreement, the following definitions shall apply:

    A. "Genie" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

    B. "Velanos" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

    C. "Trading Account Interest" refers to Velanos' ownership interest in the account ("Trading Account") described and identified in Section 3 of this Settlement Agreement and **Exhibit B** hereto.

1

2. <u>Settlement Amount</u>. Velanos shall pay Genie the total sum of Fifteen Million ($15,000,000.00) dollars (the "Settlement Amount"). The Settlement Amount shall be paid to Genie in ten installments ("Installment Payments"), as follows:

A. The first Installment Payment shall be completed within two (2) business days of the effective date of the Settlement Agreement, in the amount of fifty thousand dollars ($50,000.00).

B. The second Installment Payment shall be completed on or before June 30, 2024, in the amount of five hundred thousand dollars ($500,000.00).

C. The third Installment Payment shall be completed on or before September 30, 2024, in the amount of one million dollars ($1,000,000.00).

D. The fourth Installment Payment shall be completed on or before December 31, 2024, in the amount of two million dollars ($2,000,000.00).

E. The fifth Installment Payment shall be completed on or before March 31, 2025, in the amount of two million dollars ($2,000,000.00).

F. The sixth Installment Payment shall be completed on or before June 30, 2025, in the amount of two million dollars ($2,000,000.00).

G. The seventh Installment Payment shall be completed on or before September 30, 2025, in the amount of two million dollars ($2,000,000.00).

H. The eighth Installment Payment shall be completed on or before December 31, 2025, in the amount of two million dollars ($2,000,000.00).

I. The ninth Installment Payment shall be completed on or before March 31, 2026, in the amount of two million dollars ($2,000,000.00).

J. The tenth Installment Payment shall be completed on or before June 30, 2026, in the amount of one million four hundred and fifty thousand dollars ($1,450,000.00).

Unless otherwise instructed by Genie in accordance with the requirements set forth below, Velanos shall direct all Installment Payments to the account (the "Recipient Account") identified in **Exhibit A** to this Settlement Agreement. At any time, Genie may, at its sole discretion, designate a different Recipient Account by providing Velanos with written notice identifying the alternate Recipient Account at least fifteen (15) business days before the Installment Payment's due date.

An Installment Payment will be considered completed as of the time it is received in the Recipient Account, as reflected in the records of the bank where the Recipient Account is held. An Installment Payment shall be deemed timely completed if it is received in the Recipient Account prior to 11:59 PM Central time on its due date.

3. <u>Confidential Trading Account Information; Immediate Disclosure of Account Documents Upon Event of Default</u>. Concerning the Trading Account and Trading Account Interest, Velanos represents and warrants that its owner and CEO, Joshua Wearmouth, has duly executed the

affidavit attached as **Exhibit B** to this Settlement Agreement with full authority to do so. Velanos further represents and agrees that:

A.  Velanos is the sole owner of the Trading Account Interest.

B.  The present principal value of the Trading Account Interest is at least $5,000,000.

C.  Velanos has provided  its legal counsel with unredacted copies of documentation (collectively, "Account Documents") concerning the Trading Account and the Trading Account Interest, including, but not limited to: (i) any and all agreements showing Velanos' ownership share in the Trading Account, (ii) any and all agreements governing activity in or administration of the Trading Account, (iii) statements created by or obtained from the showing all activity in the Trading Account since its formation, and (iv) such other documents as necessary to give the holder of the Account Documents all information necessary to locate the Trading Account, accurately assess the value of the Trading Account Interest, and understand any salient restrictions on the ability of the owner(s) of the Trading Account Interest to access the principal and profits therein.

D.  Velanos agrees to supplement the information and documentation it has provided to its legal counsel pursuant to Section 3(C) of this Settlement Agreement either on or before the due date for each Installment Payment or more frequently, in the event of any material change the terms governing the Trading Account or of any communication from, or public statement by, the entity administering the Trading Account indicating that the Trading Account will or may be closed during the term of this Settlement Agreement.

E.  Velanos authorizes and instructs its legal counsel to hold the Account Documents in trust during the term of this Settlement Agreement. Upon the occurrence of any Event of Default under this Settlement Agreement, however, Genie shall have the right to request and immediately obtain from Velanos' legal counsel all Account Documents. Notwithstanding any obligations to the contrary, Velanos authorizes and instructs its legal counsel to make immediate delivery of the Account Documents to Genie, and to provide Genie any other documents or information reasonably necessary for Genie to enforce the arbitration award and/or judicial confirmation described in Section 6 of this Settlement Agreement, upon the occurrence of any Event of Default.

F.  If, during the term of this Settlement Agreement, the legal counsel identified herein ceases to represent Velanos in connection with this matter, then Velanos shall immediately: (i) engage substitute legal counsel, (ii) provide Genie written notice of the change in legal counsel and the identity of Velanos' substitute legal counsel, and (iii) authorize, instruct, and equip its substitute legal counsel to perform each of the duties described in this Section.

G.  The Parties agree that failure to comply fully and timely with any portion of this Section shall result in additional damages to Genie, for which Velanos shall immediately be liable to Genie in the amount of one hundred thousand dollars ($100,000.00). This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from

3

a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

4. <u>Genie's Release of Velanos</u>. Subject to the conditions set forth in this Settlement Agreement, Genie hereby releases and forever discharges Velanos from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA, including but not limited to all claims that were or could have been asserted in the Arbitration, *provided, however*:

    A. This release shall not apply to claims arising out of the enforcement of this Settlement Agreement.

    B. Genie's release of any rights, claims, causes of action, damages, liabilities or demands, whether in law or in equity, against Velanos shall be of no force and effect until the successful completion of all Installment Payments contemplated by this Settlement Agreement.

    C. Any Event of Default by Velanos shall void the release set forth in this paragraph.

5. <u>Velanos' Release of Genie</u>. Velanos hereby releases and forever discharges Genie from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits, or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA.

6. <u>Consent Award in Arbitration and Judicial Confirmation Thereof</u>. The Parties agree that, within three (3) business days of the effective date of this Settlement Agreement, they will jointly submit and request entry of a proposed Consent Award pursuant to Rule 28(c) of the Comprehensive Arbitration Rules & Procedures of JAMS Arbitrators and Arbitration Services. The Consent Award submitted by the Parties is attached as **Exhibit C** to this Settlement Agreement and, in pertinent part, states that Genie is awarded damages totaling twenty million dollars ($20,000,000.00), which amount is due and payable by Velanos within fifteen (15) calendar days of the Consent Award's entry.

    A. Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

    B. Velanos agrees not to oppose or challenge any such application by Genie for judicial confirmation of the arbitration award. Violation of this subparagraph by Velanos shall result in additional damages to Genie, for which Velanos shall be immediately liable to Genie in the amount of one million dollars ($1,000,000.00), plus interest accruing at an annual rate of nine percent (9.0%) from the date of the violation. This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of

Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

C.  Genie agrees that it will not seek to collect on the arbitration award, or on any judgment confirming the arbitration award, prior to either (i) the occurrence of any Event of Default or (ii) an indication by Velanos, through either words or actions, that an Event of Default is imminent.

D.  If the arbitrator in the Arbitration refuses to enter an Award that is identical or substantially identical in substance to the proposed Consent Order submitted by the Parties, then the Parties shall have seven (7) calendar days from the date on which JAMS notified the Parties of that fact to reach a mutually agreeable amendment of this Settlement Agreement. If they are unable to do so within that time, then this Settlement Agreement shall have no further force or effect.

7.  <u>Dismissal of Florida Litigation</u>. No later than three (3) business days after the receipt of the second installment payment, Genie will file a Motion to Dismiss the Florida Litigation without prejudice. Velanos agrees to consent to that motion and to take no action to oppose or contest the motion or to delay the Court's action regarding it.

8.  Genie agrees that it will not, prior to the occurrence or reasonable anticipation of any Event of Default by Velanos, make contact in any manner whatsoever with any person or entity whom Genie knows to be a partner, asset holder, bank officer, escrow officer, or paymaster of Velanos, with the exception of any persons or entities with whom Genie, its principals, or its representatives had a prior business relationship, for the purposes of obtaining information about or interfering with any of Velanos' existing or prospective business relationships.

9.  <u>Events of Default</u>. For purposes of this Settlement Agreement, "Events of Default" include the following:

A.  Failure of Velanos to make any Installment Payment when due.

B.  Failure of Velanos to perform or observe any of Velanos' covenants or agreements contained in this Settlement Agreement.

C.  The depletion of the principal amount of Velanos' ownership share in the Trading Account below five million dollars ($5,000,000.00) at any time before Velanos' satisfaction in full of all of the obligations imposed on it by this Settlement Agreement, regardless of whether such depletion results from any action of failure to act by Velanos or from any external factor, including trading losses, market forces, or the action or inaction of any third party or parties.

D.  Failure of Velanos to comply with every aspect of Paragraph 11 ("Security Interest") of this Settlement Agreement.

E. The sale or other transfer by Velanos of all or any material part of its property or assets except in the usual and ordinary course of the operation of its business; or a change in the general character, or suspension of any significant part, of Velanos' business.

F. Actions by or on behalf of Velanos to: (1) make an assignment for the benefit of creditors or petition or apply to any tribunal for the appointment of a custodian, receiver, or trustee for it or a substantial part of its assets, (2) commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, (3) have any such petition or application filed or any such proceeding commenced against it that is not dismissed within thirty (30) days, (4) indicate, by any act or intentional and purposeful omission, its consent to, approval of or acquiescence in any such petition, application, proceeding or order for relief or the appointment of a custodian, receiver or trustee for it or a substantial part of its assets, or (5) suffer any such custodianship, receivership or trusteeship that continues undischarged for a period of thirty (30) days or more.

G. Entry against Velanos of a judgment or decree in excess of Fifty Thousand Dollars ($50,000) that becomes non-appealable and remains undischarged, unsatisfied by insurance or otherwise, and unstayed for more than thirty (30) days.

H. The existence of a default or an event that, with the giving of notice (1) would constitute a default, under any other indebtedness of Velanos, for borrowed money or (2) would cause (or would permit any holder of such indebtedness or trustee to cause) such indebtedness, or a portion thereof in an aggregate amount exceeding Fifty Thousand Dollars ($50,000.00), to become due prior to its stated maturity or prior to its regularly scheduled dates of payment.

I. Violation by Genie of Paragraph 8 of this Settlement Agreement.

10. <u>Default</u>. Upon the occurrence of any "Event of Default," as described in Paragraph 9 of this Settlement Agreement:

A. The entire amount of the Consent Award and any court judgment confirming that award, including all accrued post-judgment interest thereunder, and less the total amount of Installment Payments completed as of the Event of Default, shall, without any prior notice, presentment, or demand, become immediately due and payable in full.

B. Genie shall immediately have the right to take any and all legal action it deems proper to enforce the Consent Award and/or any court judgment confirming that award.

C. Genie shall immediately have the right to take any and all legal action it deems proper, including but not limited to reinstating the Florida Litigation.

D. Genie shall be entitled to recover any and reasonable attorney's fees, costs, and expenses that it reasonably incurs as a result of Velanos challenging or contesting any action taken by Genie based in furtherance of the rights created under this Paragraph, absent a ruling by a court of competent jurisdiction that Velanos' challenge or contest of such action is valid.

11. <u>Security Interest</u>. As security for the prompt and full satisfaction of the outstanding balance of all sums due under this Settlement Agreement or under the Consent Award, Velanos agrees that Genie shall have, and Velanos hereby grants and pledges to Genie, a security interest in all: accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, money, insurance and insurance claims, supporting obligations, and all other personal and fixture property, whether governed by Article 9 of the Uniform Commercial Code ("UCC") or other law wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "Collateral").

    A. In addition to all rights and remedies given to Genie by this Settlement Agreement, Velanos and Genie agree that this Settlement Agreement constitutes a security agreement under the UCC, and that Genie shall have all the rights and remedies of a secured party thereunder.

    B. Velanos agrees that it shall preserve and protect Genie's security interest in the Collateral and that it shall not, without Genie's prior written consent, grant or create or permit to attach or exist any mortgage, security interest, lien, judgment, or other encumbrance of or in the Collateral or any portion thereof, other than the security interest provided for in this Settlement Agreement.

    C. Velanos agrees to provide from time to time at Genie's reasonable request such additional redacted documents or instruments, for Genie to perfect and maintain its security interest in the Collateral. Velanos consents to Genie filing or causing to be filed or recorded, such instruments, documents, or notices, including assignments, financing statements, and continuation statements as Genie may deem necessary or advisable from time to time in order to perfect, to continue perfected, and to preserve the priority of the lien and security interest in the Collateral granted pursuant to this Settlement Agreement.

12. <u>Entire Agreement; No Parol Evidence</u>. This Settlement Agreement is a complete integration of the Parties' agreement and constitutes the entire agreement between them with respect to the subject matter hereof. This Settlement Agreement supersedes any and all other oral or written communications, representations, understandings, agreements, negotiations and discussions between the Parties and their attorneys. No parol evidence shall be admissible to interpret, explain, vary, or supplement this Settlement Agreement.

13. <u>Modification and Waiver</u>. No provision of this Settlement Agreement may be changed, altered, or modified except in writing signed by the Parties. The failure of either Party to enforce any provision of this Settlement Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Settlement Agreement thereafter. No waiver of any term or right in this Settlement Agreement shall

be effective unless set forth in writing and signed by an authorized representative of the waiving Party.

14. <u>Severability</u>. If any term of this Settlement Agreement is determined, either by a court of lawful jurisdiction or by the parties' mutual agreement, to be invalid, illegal, or otherwise unenforceable, then

    A. The Parties shall use all reasonable efforts to negotiate in good faith to amend the term to eliminate any such invalidity, illegality, or unenforceability to the extent practically possible, taking into full account their original intent when entering into this Agreement in the first instance, and

    B. The remaining provisions hereof shall continue in full force and effect.

15. <u>Pendency of Bankruptcy Proceedings</u>. The Parties acknowledge that this Settlement Agreement is contingent upon the approval of this Settlement Agreement and confirmation of the Genie Chapter 11 plan in case number 3:24-bk-00496-BAJ pending in the Middle District of Florida Jacksonville Division of the United States Bankruptcy Court. To the extent that there is a Trustee appointed in that bankruptcy case, the Settlement Agreement is not approved by the Court, and/or Genie's Chapter 11 Plan is not confirmed with the essential terms of this Settlement Agreement incorporated into such confirmation, then the Settlement Agreement shall be voided as to any remaining obligations by all parties.

16. <u>Choice of Law and Venue</u>. This Settlement Agreement shall be governed in all respects by the laws of the state of New York, including as to interpretation, enforceability, validity, and construction. The Parties also agree that the venue for any legal action to enforce the provisions of this Settlement Agreement, or any document executed in connection with this Settlement Agreement, shall be in the state of New York. The Parties agree they will not contest the choice of law and venue provisions in this Section.

17. <u>Construction</u>. Because this Settlement Agreement was the result of arms-length negotiations between the Parties and their respective attorneys, no party shall be considered the drafter; consequently, the rule of construction that all conflicts and ambiguities should be construed against the drafter shall not be employed in the interpretation of this Settlement Agreement.

18. <u>Attorney's Fees and Costs in Enforcement of the Agreement</u>. If either Party incurs any attorney's fees, costs, or expenses in any proceeding to enforce the terms of this Settlement Agreement or any of the rights provided hereunder, the prevailing Party shall be entitled to recover

8

its reasonable attorney's fees and any court, arbitration, mediation, or other litigation expenses from the other Party.

19. <u>References to Time</u>. Unless otherwise specified, references to time periods in this Settlement Agreement refer to calendar days.

20. <u>Successors and Assigns</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' successors, assigns, agents, heirs, and personal representatives.

21. <u>Third Parties</u>. This Settlement Agreement shall not confer any rights or remedies upon any third party other than the Parties to this Settlement Agreement and their respective successors, assigns, agents, heirs, and personal representatives. The Parties have not transferred, by assignment or otherwise, any of the claims released in this Settlement Agreement.

22. <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts, all of which shall be considered one instrument, and a copy or facsimile of each will be deemed an original and shall be binding when one or more counterparts have been signed by each of the parties.

23. <u>Advice of Counsel</u>. The Parties acknowledge and represent that they have read this Settlement Agreement in full and understand and voluntarily consent to each of its provisions after having had ample time and opportunity to consult with their respective attorneys concerning the Settlement Agreement. The Parties further acknowledge and represent that they are sophisticated in matters of business and have negotiated this Settlement Agreement at arms' length.

24. <u>Authority to Bind</u>. By signing below the Parties represent that the signatories are authorized to execute this Settlement Agreement on behalf of their respective business entities and that the execution and delivery of this Settlement Agreement are the duly authorized and binding acts of their respective business entities.

25. <u>Non-Disparagement</u>. The Parties hereby understand and agree that the business reputation of each Party is of paramount importance. As a material inducement to the execution of this Settlement Agreement, the Parties agree that they will not make any disparaging comments about each other which is intended to adversely affect either the conduct of the Parties' business or profession, or the Parties' business or professional reputation, which conduct shall include, but not be limited to, business defamation and/or disparagement of professional skill, judgment, and reputation for probity and thrift. This includes, but is not limited to, any disparaging comments that are made available to any third parties via the internet. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

26. <u>Confidentiality.</u> The terms of this Settlement Agreement, including but not limited to the Settlement Payment, are to be held in strict confidence and are not to be disclosed by the Parties to any person with the sole exception of: (1) the Parties' attorneys (2) the Parties' tax advisors and/or accountants, for purposes of tax reporting, regulatory reporting and/or financial planning; (3) as necessary in connection with the Parties' current or future liability insurance and/or any disclosure requirements to which the Parties are subject; (4) as necessary to enforce this Settlement Agreement; and (5) as required or otherwise permitted by law or legal process, including, but not necessarily limited to, communicating with regulatory or law-enforcement authorities, defending

legal or regulatory claims brought against either Party, or asserting legal claims not otherwise prohibited by the terms of this Settlement Agreement.  The conveyance of the terms of this Settlement Agreement to third parties as referenced above or as are necessary to contact in connection with subparagraphs 1 through 3 above is conditioned upon such third parties' acceptance of the terms of this Confidentiality provision and that they accept responsibility to keep such terms confidential. Both Parties agree, that prior to such disclosure, they will advise the intended recipient of the confidentiality requirements of this Confidentiality provision and that disclosure of this Settlement Agreement's terms may subject him or her to potential legal action. It shall be considered a breach of this confidentiality provision if the Parties fail to advise any individual to whom a disclosure is made pursuant to this Confidentiality provision of the confidentiality requirements of this Confidentiality provision and if that individual communicates, publishes, publicizes or discloses confidential information to any third party or causes confidential information to be communicated, published, publicized or disclosed to any third party. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

27. <u>Notices and Legal Counsel</u>. Any notices or other communications required by or otherwise necessary to effectuate the terms of this Settlement Agreement shall be delivered to the Parties as set forth below. Each Party agrees to inform the other promptly of any changes to the information below, including any changes to its legal counsel.

> Velanos Principal Capital
> c/o Joshua Wearmouth, CEO
> 120 Adelaide Street West, Suite 2500
> Toronto, Ontario M5H 1T1
> CANADA
> jwearmouth@velanosprincipalcapital.com

> Legal counsel for Velanos Principal Capital
> Boddie & Associates P.C.
> c/o Corey D. Boddie
> 40 Exchange Place, suite 1800
> New York, NY 10005
> corey@boddieassoc.com

> Genie Investments NV
> c/o David Hughes
> 2812 Pat Tillman Drive
> Springfield, Illinois 62711
> dhughes@genieinvestments.com

> Legal counsel for Genie Investments:
> AW Securities Law
> c/o Adam Walker
> 4010 Pennsylvania Ave., Suite 115-10
> Kansas City, Missouri 64111
> adam@awsecuritieslaw.com

10

In witness whereof, the Parties hereto have executed this Settlement Agreement on the date(s) set forth below.


GENIE INVESTMENTS NV


By: _____
    *David Hughes*
    David Hughes (May 15, 2024 10:58 CDT)

    David Hughes


Title: _____
       Managing Member


Date: _____



VELANOS PRINCIPAL CAPITAL

DocuSigned by:

By: _____
    D85D494D21D149B...

    Joshua Wearmouth


Title: _____


       5/16/2024
Date: _____


11

## <u>EXHIBIT A</u>

## RECIPIENT ACCOUNT INFORMATION

Routing #:    043000096

Acct #:       ████████

Bank info:    PNC BANK
              500 First Avenue
              Mailstop: P7-PFSC-03-W
              Pittsburgh, PA 15219

**EXHIBIT B**

## AFFIDAVIT OF JOSHUA WEARMOUTH

Joshua Wearmouth, the CEO of Velanos Principal Capital Inc., a Canadian corporation, being duly sworn, depose and say:

1.  I am Joshua Wearmouth, the CEO of Velanos Principal Capital, Inc., a Canadian corporation ("Velanos").

2.  As CEO of Velanos, I attest that I have given our attorney Corey D. Boddie all relevant, unredacted documentation concerning the Velanos account which is currently being traded on the Forex platform on May 13, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 13th day of May 2024.

Joshua Wearmouth,
CEO of Velanos Principal Capital Inc.

Sworn to before me
This 13 day of
May , 2024

COREY DELON BODDIE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02BO6282620
Qualified in New York County
My Commission Expires: May 28, 2025

**EXHIBIT C**

GENIE INVESTMENTS NV,

    Claimant,

v.                                JAMS Ref No. 5425001617

VELANOS PRINCIPAL CAPITAL, INC.,

    Respondent.

---

### JOINT MOTION FOR ENTRY OF CONSENT AWARD

    Claimant Genie Investments NV (Genie) and Respondent Velanos Principal Capital (Velanos) have executed a settlement agreement intended to resolve all claims asserted in this matter. As a condition of that settlement agreement (attached to this motion as **Exhibit A**) and pursuant to Rule 28(c) of JAMS Comprehensive Arbitration Rules & Procedures, Genie and Velanos move jointly for entry of a consent award setting forth the following terms in such form and with such other terms as the arbitrator deems necessary and appropriate to effectuate the Parties' settlement agreement:

    1.    On or about October 21, 2022, the Parties entered into a "Joint Venture Agreement" (JVA).

    2.    On October 25, 2023, Genie commenced this proceeding, identified as JAMS Ref No. 5425001617 (the Arbitration) against Velanos, seeking both a determination that Velanos materially breached the JVA and an award of compensatory and other damages.

    3.    During this Arbitration, the Parties completed the discovery permitted by the rules and scheduling order governing this Arbitration. In addition, the Parties briefed multiple motions, including a dispositive motion submitted by the Claimant.

**EXHIBIT C**

4.      Before concluding the Arbitration, the Parties reached and executed a settlement agreement intended to resolve, among other things, all claims and defenses asserted herein.

5.      As a condition of that settlement agreement, the Parties agreed to consent to an award in this Arbitration stating (a) that Velanos breached the JVA and (b) that Genie is awarded damages for that breach in the amount of twenty million dollars ($20,000,000.00).

6.      Throughout the entirety of this Arbitration, each Party has been represented by an attorney and has received legal counsel and advice concerning potential outcomes if this Arbitration were to end in a determination on the merits, whether based on a dispositive motion or full evidentiary hearing. The instant motion reflects the Parties' respective decisions to resolve the dispute at issue in this Arbitration through settlement on the terms set forth herein, rather than through a determination by the arbitrator.

7.      The damages awarded to Genie are due and payable by Velanos within fifteen (15) calendar days following entry of this award.

8.      Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

9.      Each Party shall bear one half of all fees assessed by JAMS in connection with this Arbitration, except to the extent that any fee, penalty, or other charge assessed by JAMS is the result of either Party's lateness, delay, or noncompliance with any rule or order governing this Arbitration, in which case the Party whose lateness, delay, or noncompliance resulted in a fee, penalty, or other charge shall be fully responsible for paying it.

**EXHIBIT C**

Respectfully submitted,

_____

Adam Walker
AW Securities Law
4050 Pennsylvania Ave., Suite 115-10
Kansas City, Missouri 64111

*Counsel for Genie Investments NV*

_____

Corey D. Boddie
Boddie & Associates P.C.
40 Exchange Place, suite 1800
New York, NY 10005
corey@boddieassoc.com

*Counsel for Velanos Principal Capital*

# EXHIBIT 4

**ORDERED.**

**Dated:  March 04, 2025**

Jason A. Burgess
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC.,

    Debtor.

_____/

AARON R. COHEN, Chapter 7 Trustee,

    Plaintiff,

v.

VELANOS PRINCIPAL CAPITAL, INC.,

    Defendant.

_____/

Case No.: 3:24-bk-00496-BAJ

Chapter 7

Adversary No. 3:25-ap-00007-BAJ

## FINAL JUDGMENT

THIS PROCEEDING came before the Court on the Motion of Plaintiff, Aaron R. Cohen,

Chapter 7 Trustee, for a Final Default Judgment (Adv. Doc. 7).  Based upon the Default entered

by the Clerk on February 19, 2025, against Defendant, Velanos Principal Capital, Inc. ("Velanos"),

for failure to serve or file any paper in response to the Complaint for Confirmation of Arbitration Award (the "Complaint") as required by law, the Declaration of Aaron R. Cohen, Chapter 7 Trustee (the "Trustee's Declaration"), and there appearing sufficient cause, the Court hereby,

**FINDS AND ORDERS:**

1.      On January 10, 2025, the Trustee filed a one-count Complaint, whereby the Trustee sought to confirm the arbitration award in the amount of $20 million entered by the JAMS arbitrator (Adv. Doc. 1).

2.      A Summons was issued by the Clerk on January 13, 2025.

3.      A copy of the Complaint and Local Rule 7001-1 together with the Summons were served on January 21, 2025, by U.S. mail to Velanos, Attn.: Joshua Wearmouth, its Chief Executive Officer, 20101 SW Cypress Street, Newport Beach, CA 92660 and to Velanos at 4695 MacArthur Court, Suite 1100, Newport Beach, CA 92660

4.      No responsive pleading or motion has been filed by Velanos within the time specified by Rule 7012, Federal Rules of Bankruptcy Procedure, and no extension of time was sought or obtained by Velanos.

5.      On February 19, 2025, the Clerk issued a Default against Velanos.

6.      As a result of Velanos' default, each and every allegation set forth in the Complaint, which are incorporated by reference herein, is deemed admitted by the Defendant. *See*, *e.g.*, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred form contesting on appeal the facts thus established.'"); *Suntrust Bank v. Truzman*, 2010 WL 3359710, at *2 (M.D. Fla. August 6, 2010) (determining that

80188897,1

because a default was properly entered, the plaintiff was deemed to have admitted the allegations

made in plaintiff's complaint); *see also* Fed. R. Bankr. P. 7055 (making Fed. R. Civ. P. 55

applicable in adversary proceedings, which provides, in part, that when a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend, the clerk must

enter the party's default).

7.      Given the substantial, undisputed proof set forth in the Complaint, **JUDGMENT**

is hereby entered against Velanos as follows:

8.      Final Judgment is hereby entered in favor of the Trustee and against Velanos.

9.      The arbitration Award is confirmed.

10.     Plaintiff, Aaron R. Cohen, in his capacity as Chapter 7 Trustee of the bankruptcy

estate of Genie Investments NV, Inc., whose mailing address is P.O. Box 4218, Jacksonville, FL

32201-4218, shall recover from Defendant, Velanos Principal Capital, Inc., whose last known

address is Attn. Joshua Wearmouth, its Chief Executive Officer, 20101 SW Cypress Street, Newport

Beach, CA 92660, the sum of **$20,000,000.00**, that shall bear interest at the rate of nine

percent (9%), as agreed by Velanos in the Settlement Agreement for which let execution issue.

11.     The Court does not retain jurisdiction to issue post-judgment enforcement orders or

writs. Enforcement of this Judgment shall be through the appropriate state court.[1]

---

[1] Ordered modified in chambers.

80188897,1

Copies to:

Raye C. Elliott, Esq.
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
*Attorney for Plaintiff, Aaron R. Cohen,*
*Chapter 7 Trustee*

Velanos Principal Capital, Inc.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660

Velanos Principal Capital, Inc.
Attn. Joshua Wearmouth, its Chief
Executive Officer
20101 SW Cypress Street
Newport Beach, CA 92660

4

80188897,1

# EXHIBIT 5

**IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT IN AND FOR DUVAL COUNTY, FLORIDA CIVIL DIVISION**

**CASE NO.: _____**

**JOHN MICHAEL COHAN and DAVID HUGHES,**
Plaintiffs,
vs.
**JOSHUA WEARMOUTH, VELANOS, RESYDENCY and NORDIC TRUST ALLIANCE KB, LLC,**
Defendants.

---

## COMPLAINT

Plaintiffs, **JOHN MICHAEL COHAN and DAVID HUGHES**, file this Complaint against **JOSHUA WEARMOUTH, VELANOS, RESYDENCY, and NORDIC TRUST ALLIANCE KB, LLC** ("Defendants") and allege as follows:

---

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to **Fla. Stat. § 48.193**, as Defendants have conducted business in Florida, and the events giving rise to this action occurred in Duval County.

2. Venue is proper in Duval County under **Fla. Stat. § 47.011**, as the causes of action arose in this jurisdiction.

---

### PARTIES

3. Plaintiff **John Michael Cohan** is a resident of Florida.

4. Plaintiff **David Hughes** is a resident of Illinois.

5. Defendant **Joshua Wearmouth** is an individual residing at **20101 Southwest Cypress Street, Newport Beach, California 92660**.

6. Defendant **Velanos** is a business entity registered in Wyoming but conducting business in Florida.

7. Defendant **Resydency** is a business entity operating in Florida and is believed to be holding real estate assets that were purchased using funds obtained through illegal and fraudulent transfers.

8. Defendant **Nordic Trust Alliance KB, LLC** is a limited liability company operating in Florida.

---

## FACTUAL ALLEGATIONS

9. Plaintiffs entered into a **Settlement Agreement and subsequent amendments** with Defendants on **May 15, 2024**, to resolve prior disputes stemming from financial dealings between the parties.

10. Under the terms of the Settlement Agreement and its amendments, Defendants agreed to make installment payments to Plaintiffs in a timely manner.

11. Despite these clear obligations, **Defendants defaulted on their obligations**, failing to make the required payments as outlined in the Settlement Agreement and amendments.

12. Plaintiffs relied on the Defendants' representations and suffered financial harm as a result of their non-compliance.

13. **This action does not assert any business-related claims nor does it seek any relief related to Genie Investments NV or its estate claims.**

14. Plaintiffs also suffered **personal reputational harm** due to the Defendants' wrongful conduct, which resulted in financial instability and damage to their credibility.

15. Plaintiffs believe that **Resydency is holding real estate that was purchased using funds obtained through fraudulent and illegal financial transfers facilitated by the Defendants**.

16. According to the **Declaration of Adam B. Walker**, a former enforcement attorney with the Financial Industry Regulatory Authority (FINRA), the financial transactions orchestrated by Velanos included **fraudulent SBLC (Standby Letter of Credit) trading schemes**, which have been widely recognized as fraudulent by multiple U.S. government agencies.

17. The Declaration further states that Genie Investments NV was promised an **800% return on investment** through these fraudulent schemes and was misled by Velanos and its affiliates.

18. Plaintiffs allege that funds originating from these fraudulent transactions were subsequently transferred to Resydency and used to acquire real estate assets, constituting **fraudulent conveyance and unjust enrichment**.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

19. Plaintiffs reallege and incorporate paragraphs 1-18 as if fully set forth herein.

20. The Settlement Agreement and subsequent **amendments** were valid and binding contracts between Plaintiffs and Defendants.

21. Defendants **breached** the contract by failing to make payments as required, in violation of **Fla. Stat. § 672.703**.

22. As a result, Plaintiffs have suffered damages in excess of **$66,000,000**.

23. Plaintiffs demand judgment for damages, attorneys' fees, and any other relief deemed just and proper under **Fla. R. Civ. P. 1.100**.

## COUNT II – FRAUDULENT MISREPRESENTATION

24. Plaintiffs reallege and incorporate paragraphs 1-18 as if fully set forth herein.

25. Defendants made **false and misleading statements** regarding their financial capabilities and intention to honor the settlement, violating **Fla. Stat. § 817.034 (Florida Communications Fraud Act)**.

26. Plaintiffs reasonably relied on these representations to their detriment.

27. As a result of Defendants' fraudulent misrepresentations, Plaintiffs have suffered significant financial and reputational damages.

28. Plaintiffs seek **compensatory and punitive damages** in an amount to be determined at trial, pursuant to **Fla. Stat. § 768.72**.

## COUNT III – UNJUST ENRICHMENT AND FRAUDULENT CONVEYANCE

29. Plaintiffs reallege and incorporate paragraphs 1-18 as if fully set forth herein.

30. Defendants received financial benefits from Plaintiffs without providing fair consideration in return, violating the principles set forth in **Ruck Bros. Brick v. Kellogg & Kimsey, Inc., 668 So. 2d 205 (Fla. 2d DCA 1995)**.

31. Plaintiffs seek **restitution and disgorgement** of the improperly retained funds, including any real estate assets held by Resydency that were obtained through fraudulent means.

---

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1. Compensatory damages in an amount to be proven at trial greater than **$66,000,000**;

2. Punitive damages for fraudulent misrepresentation under **Fla. Stat. § 768.72**;

3. Pre- and post-judgment interest under **Fla. Stat. § 55.03**;

4. Attorneys' fees and costs pursuant to **Fla. Stat. § 57.105**;

5. A declaration that **Resydency holds real estate assets obtained through fraudulent and illegal financial transfers** and an order for their disgorgement;

6. Any other relief this Court deems just and proper.

---

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable as of right under **Fla. R. Civ. P. 1.430**.

Dated: 02-14-2025

**Respectfully submitted,**



**John Michael Cohan and David Hughes**
**Plaintiffs**

# EXHIBIT 6



**WARREN**
LAW GROUP

519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 · warren.law

October 14, 2022

<u>**VIA E-MAIL**</u>

Caleb Michael Davis, Managing Partner
Genie Investments NV, LLC
11064 Lothmore Rd.
Jacksonville, FL 32221
calebdavis8@gmail.com

<u>**Re: Letter of Engagement ; Joint Venture with Velano Principal Capital, Inc.**</u>

Dear Caleb:

Thank you for selecting the Warren Law Group ("we", "us", or the "Firm") to represent and advise Genie Investments NV, LLC and you ("You" or the "Client") with respect to the proposed joint venture with Velanos Principal Capital, Inc. ("Matter"). This engagement shall include but may not be limited to: general counsel/advice, contract/legal document preparation and or review, transaction structuring, strategic planning & asset protection, escrow/paymaster services. Please note that escrow and paymaster services may be provided under a separate engagement addendum with different terms, conditions, and fee structure which the Firm will provide for your review and approval at the appropriate time. You explicitly authorize the Firm to undertake any other matters that relate to or flow from these issues at its discretion. This engagement does not include representation in litigation or arbitration proceedings but may be included herein by separate signed addendum. This document is a privileged and confidential agreement for legal services ("Agreement") that states the terms of our representation. Please read it carefully.

1.      <u>**Professional Undertaking**</u>

The Firm has undertaken to advise you and provide you representation in the Matter. If You desire to retain the Firm for services outside the scope of the above, you and the Firm will enter into a separate Letter of Engagement for those matters. While our representation will include post-trial or arbitration motions on the Matter, this Agreement does not include re-trial or appeals on any judgment or award that may be obtained by or against You, unless we otherwise agree in a subsequent writing.

Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning various courses of action to be taken and the results that might be anticipated. You acknowledge that any such statement made by any attorney or employee of the



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 · warren.law

Firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed as a promise or guarantee, nor as an attorney opinion letter unless the words "attorney opinion letter" appear on the document.

2. **Client's Duties**

To enable us to represent You in the Matter effectively, You agree to be truthful and to cooperate fully with the Firm in all matters related to the negotiation of the Matter and preparation and presentation of Client's claims or defenses in the Matter. You agree to keep us informed of any information or developments that may come to your attention, to abide by this Agreement, to pay the Firm's statements for services on time and as set forth in this Agreement, and to keep the Firm advised of Your address, telephone number and whereabouts (if called for in the representation), as well as any potential conflicts of interest. You agree to assist the Firm by timely providing necessary information and documents. You agree to advise the Firm of any potential or actual conflicts of interest.  Subject to separate agreed addendum if applicable, You also agree to appear at all legal proceedings when we deem it necessary and generally to cooperate fully with the Firm in all matters related to the preparation and presentation of Your claims and defenses, as well as continuing to pay your invoices in a timely fashion. You also represent that you have not engaged any other attorney or agreed to pay another attorney or person a contingency or success-based fee with respect to this Matter.

3. **Retainer Fee & Flat or Contingency Fee Interest**

In consideration for the Firm's services, You agree to pay our hourly rates as set forth in Schedule A annexed hereto (the "Fee"). We will require an initial retainer of **$10,000**, which we will bill against as we work on your matters. The initial retainer shall be allocated into two segments: (i) joint venture transaction review and engagement for $5,000 flat fee; and (ii) ongoing representation post transaction commencement, which may include strategic planning/asset protection, tax services, and other required services which shall be billed against the remaining balance of the initial retainer until exhausted. We will inform you monthly of Your remaining retainer amount, and when the retainer is nearing depletion, we may ask that You replenish the retainer, and you agree to do so. No attorney-client relationship will exist concerning this matter until this retainer has been paid, and until this engagement letter has been executed by both parties. You specifically authorize and agree that any attorney, investigator, paralegal, secretary, or another person in the Firm, or an associated counsel in another Firm, may, at our professional discretion, perform necessary services under the direction of the attorney designated as lead counsel by the Firm.

You authorize the Firm to withdraw the funds from the Firm's Attorney Trust Account to pay the Firm's fees. If the Firm receives a written objection from You within 10 days of sending



Your bill, the Firm shall consider that amount in dispute and will return those escrow funds to the Attorney Trust Account until the dispute is resolved. The Firm will cease all work on your Matter until the dispute is resolved.

With respect to litigation/arbitration matters, the Firm may request additional retainer deposits within 90 days of the date set for a trial or arbitration hearing. You shall, upon the Firm's request, deposit all fees and costs the Firm reasonably expects will be incurred to prepare for and complete the trial or arbitration hearing (the "Trial Deposit"), unless You decide not to continue the representation and the Firm is able to withdraw from the engagement. If there is any remaining retainer funds in the Firm's Attorney Trust Account at the end of this engagement, and the Firm's final bill is satisfied, those funds shall be promptly refunded to You.

### 4.    Costs and Expenses

The Firm will incur various costs and expenses in performing legal services under this Agreement. Client agrees to pay for all costs, disbursements and expenses in addition to the hourly fees. Client shall pay for all costs incurred for each engagement, either directly or to the Firm if the Firm has paid the costs. In this Agreement, "costs" mean any charge, disbursement, expense, fee, or other debt incurred by the Firm for Client's engagement. For the avoidance of doubt, "costs" are not limited to court costs and are intended only to exclude Firm's legal fees.

Costs commonly include: service of process charges; filing fees; court and deposition reporters' fees; legal research fees; translator/interpreter fees; jury fees; notary fees; deposition costs; international telephone charges; messenger and other delivery fees; postage; professional photocopying and other reproduction costs; e-discovery processing and data-hosting expenses; travel costs, airfare (business class for flights longer than 1,200 miles, or first-class if no business-class seats are available), ride-sharing or taxi services, meals, and lodging costs; investigation expenses; consultants' fees; and expert witness, professional, mediator, arbitrator and/or special master fees. Any cost above $500 will be pre-authorized by you before you are charged. The exception are any filing fees, which will be due upon filing.

Client understands that if the Client's case proceeds to court action or arbitration, the court may award attorneys' fees as well as some or all of the type of costs enumerated herein to the other party/parties. Payment of such attorneys' fees and costs shall be the sole responsibility of Client.

Separately, any order entered awarding payment of attorneys' fees and/or costs to you, or any settlement between the parties in the Matter awarding you attorneys' fees and/or costs, does not affect your obligation to pay the Firm's attorneys' fees, costs, and other charges under the terms of this Agreement. Any such amounts received by the Firm, however, will be credited against



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 · warren.law

the attorneys' fees, costs and other charges incurred by you. Client acknowledges that any such determination that fees are owed to you by another party, does not in and of itself affect the amount of the fees and costs to be paid by Client to the Firm pursuant to this Agreement.

### 5.    <u>Termination and Withdrawal</u>

You have the right to discharge the Firm at any time. We also have the right to withdraw from this representation for any other reason for which withdrawal is authorized or required by the New York Rules of Professional Conduct of the State Bar of New York and/or applicable law. Among the circumstances under which the Firm may withdraw are: (a) with the consent of Client; (b) Client's conduct renders it unreasonably difficult for the Firm to carry out the Agreement effectively; and/or (c) Client fails to pay the Firm's fees, retainer, or costs as required by this Agreement.

Notwithstanding the discharge, the Client will remain obligated to pay the Firm at the agreed rates for all services provided prior to the discharge and to reimburse the Firm for all costs advanced. You expressly acknowledge that Client's failure to pay the Firm's invoiced amounts due in a prompt manner shall be grounds for the Firm's withdrawal from any representation(s) the Firm has undertaken of Client, and Client will not oppose any such effort to withdraw by the Firm in such a "failure to pay" situation.

Should you breach this Agreement in such a manner that we are reasonably required to withdraw or to terminate the Agreement, we will attempt to accommodate new counsel should you choose to hire new counsel, but while we may choose to do so, under no circumstances are we required to relinquish any part of the Fee earned or any Contingency Fee Interest in order to make that accommodation.

### 6.    <u>Record Retention Policy</u>

The Firm maintains case files electronically using Clio and other software programs. During the normal course of representation, both paper and electronic files are collected. Upon the conclusion of the Matter, the Firm may retain portions of the case file pursuant to our Firm's record retention policy and any applicable confidentiality agreement or protective order. To reduce costs, the Firm recycles paper products and may discard old case files. If you want the Firm to return original client documents or send you any portion of the case file, you agree to let us know in writing within 30 days of the conclusion of the Matter. The Firm will not be responsible for file materials that you do not request in writing within 30 days and which are eventually destroyed under our record retention policy.



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 · warren.law

### 7.    Option to Pay via Cryptocurrency

Please be advised that you have the option, at your sole and absolute discretion, to pay for any legal services which the Firm earns upon receipt of payment (*i.e.*, flat fees and payment on invoices for services already rendered by the Firm) with Firm Accepted Cryptocurrencies ("FACs"). Currently the only FACs are Bitcoin and Ethereum; however, the Firm reserves the right to change the FACs at any time in its sole discretion. The Firm does not hold FACs in trust for its clients in retainer to bill against on a later date. You agree that any FACs, or other funds, received by the Firm as payment for a Flat Fee or for services previously rendered are considered "earned" by the Firm upon receipt.

If you wish to use FACs to pay your retainer for our services, you agree that the Firm will, as soon as practicable, exchange the FACs it receives from you into U.S. dollars ("Fiat") and you will be credited the amount of Fiat received by the Firm after its processing costs. The Firm will provide you with a statement as soon as practicable after it receives the Fiat detailing the exchange used, exchange rate, costs, and received Fiat value. Please be advised that the value of any cryptocurrency, including FACs, can change rapidly based upon market conditions. Please make sure to take that into consideration in making your decision. We require that a test transfer be completed and confirmed by the Client and the Firm. After that confirmation, the Client agrees to transfer FAC at a specific time requested by the Firm as to be sure to convert the FACs into Fiat as quickly as possible to avoid unnecessary market risk.

If you do choose to pay the Firm in Accepted Cryptocurrencies, you agree to transfer the applicable cryptocurrency into the Firm's designated cryptocurrency wallet from a cryptocurrency wallet over which you have sole ownership and control. You also represent and warrant to the Firm that any cryptocurrencies you send to the Firm are of non-criminal origin and are free and clear of liens or other encumbrances.

For more information about your rights related to the use of cryptocurrencies for the payment of legal services, please see (as applicable) NYCBA formal opinion 2019-5[1], D.C. Bar Ethics Opinion 378[2], and/or the CA Committee on Professional Responsibility and Conduct discussion regarding unpublished opinion 21-0007[3]. The Firm reserves the right to change its payment policies and procedures at any time, upon written notice, based on any changes in the prevailing interpretation of the applicable Rules of Professional Conduct pertaining to the same.

### 8.    Integration, Choice of Law, Rules of Professional Conduct

---

[1] https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/formal-opinion-2019-5-requiring-cryptocurrency-in-payment-for-legal-services
[2] https://dcbar.org/For-Lawyers/Legal-Ethics/Ethics-Opinions-210-Present/Ethics-Opinion-378
[3] https://board.calbar.ca.gov/docs/agendaItem/Public/agendaitem1000028381.pdf



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

This Agreement represents the entire Agreement between us. In entering this Agreement, the Firm has not made, and you are not relying upon, any representations or promises other than those contained in writing in this Agreement. To avoid any misunderstanding over the terms of this representation, this Agreement shall not be modified or waived in any respect except in writing signed by both parties.

This Agreement shall be construed under and in accordance with the laws of the state of New York, excluding any conflicts of law, rule or principle that might otherwise refer to the substantive law of another jurisdiction.

It is our intention to follow the New York Rules of Professional Conduct.[4] If, despite that intent and endeavor, any part of this Agreement shall for any reason be found to be unenforceable, the parties agree that: all other portions shall nevertheless remain valid and enforceable; and a provision most similar to the stricken provision but otherwise complying with applicable law shall be substituted.

### 9.    Mediation and Arbitration

The Firm is required by New York law to inform You that in the unlikely event of a disagreement with respect to legal fees, Part 137 of the Rules of the Chief Administrator of the New York Courts ("Part 137") provides that certain fee disputes are subject to arbitration at Client's option. The Firm will provide You with a copy of the Rule upon request. Information may also be obtained at www.courts.state.ny.us/admin/feedispute/index.shtml.

If any dispute ("Dispute") arises between You and the Firm, including, but not limited to, disputes over billing, fees, malpractice, fraud-based claims, breach of professional duties (including fiduciary duty), or any other complaints, and if the Dispute cannot be settled through negotiation (or for fee disputes under Part 137), then the parties agree to try in good faith to settle the Dispute promptly by mediation administered by the New York, New York branch of the Judicial Arbitration and Mediation Service ("JAMS") within 60 days after either party sends written notice of its intent to mediate. The cost of mediation shall be borne equally by the parties.

If the Dispute cannot be settled by mediation, the Dispute shall be settled by arbitration. The arbitration must: (a) be administered by the Judicial Arbitration and Mediation Service ("JAMS"); (b) occur in New York, NY; (c) be governed, for purposes of procedure, by the JAMS' Comprehensive Arbitration Rules and Procedures in effect at the time the parties executed the

---

[4] Available at https://nysba.org/app/uploads/2020/02/NEW-YORK-RULES-OF-PROFESSIONAL-CONDUCT.pdf



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 · warren.law

Agreement, the Federal Arbitration Act (9 U.S.C. §§ 1–16), and for substantive purposes, the laws of the State of New York; and (d) occur no later than 60 days after either party sends written notice that it believes the parties' private negotiations have reached an impasse, or as soon thereafter as the selected arbitrator is available.

A written, reasoned opinion must accompany any award issued by the arbitrator. The opinion must state that the Firm, the Client, or neither party prevailed. If the arbitrator determines that one party prevailed, the arbitrator shall award to the prevailing party its legal expenses reasonably incurred related to the claims made in the arbitration. The parties shall maintain the confidential nature of the arbitration proceeding and the award, including the hearing, except as necessary (1) to prepare for or conduct the hearing on the merits; (2) to challenge or enforce an award; or (3) to comply with any law or government order.

The Parties adopt and agree to implement the JAMS Optional Arbitration Appeal Procedure (as it exists on the effective date of this Agreement) with respect to any final award in an arbitration arising out of or related to this Agreement. Judgment on the arbitration award may be entered in any court having jurisdiction. Client and the Firm confirm that they have read and understand the forgoing paragraph, and voluntarily agree to binding arbitration.

## 10.    **Judgment Lien**

You agree that, in the event that the Firm obtains a monetary award for You as part of this Matter, or any matters that flow from it, any outstanding amounts owed under the Firm's invoices by You will be immediately payable out of such monetary award. This monetary award includes *any* affirmative recovery on your behalf as part of the Matter, including, but not limited to, actual damages, punitive damages, attorneys' fees, or costs. You are therefore advised of the consequence of not paying any invoices when the Firm obtains a money judgment or other relief on Your behalf.

[ Signature Page to Follow ]



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 · warren.law

If the foregoing correctly reflects your understanding of the terms and conditions of our representation, please indicate your acceptance by executing this letter in the space provided below and returning it to the Firm, as well as making the required retainer payments.

For future retainer or bill payments, please forward payment to the Firm's client trust account at the address below. Please contact us if you wish to pay by another method, such as credit card. In the event of a credit card payment, a 3% service charge will be incurred and added to the charged amount.

**Bank Name:** Signature Bank

**Bank Address:** 565 Fifth Avenue, 12th Floor, New York, NY 10017

**ABA #:** ▮▮▮▮▮▮▮

**Account Name:** Warren Law Group (IOLA)

**Account Number:** ▮▮▮▮▮▮▮

**SWIFT Code:** ▮▮▮▮▮▮

Very truly yours,

**WARREN LAW GROUP**

*/s/ Christopher D. Warren*

Christopher D. Warren

Caleb Michael Davis, on behalf of Genie Investments NV, LLC, requests representation in accordance with the terms outlined above:

By: _____

Caleb Michael Davis, LLC



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 · warren.law

## SCHEDULE A – HOURLY RATES[5]

| Legal Professional | Hourly Rate |
|---|---|
|  |  |
| Partners |  |
| Christopher Warren | $825 |
| David Rosenfield | $675 |
| Jon-Jorge Aras | $650 |
| Paul Share | $650 |
| Scott Oh | $650 |
| Tom McCabe | $675 |
| John Keenan | $650 |
|  |  |
| Associates |  |
| Brittany Hulbert* | $450 |
| Jorge Marquez | $450 |
| David Szalyga | $450 |
| Other Associates | $450 |
|  |  |
| Of Counsel |  |
| Todd Kulkin | $600 |
| Carol Williams | $550 |
| Dan Alper | $550 |
| Dan Kolber | $550 |
| Dan Podhaskie | $550 |
| Jorge Salva | $550 |

[5] Hourly rates are subject to change on the anniversary of this engagement and each year subsequent by no more than 10% to keep pace with cost-of-living adjustments and inflation.

*Pending Admission



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

| | |
|---|---|
| Max Travis | $550 |
| C.A. Morrison | $550 |
| Stephen Reich | $550 |
| Other Of Counsel | $550 |
| | |
| Paraprofessionals | |
| Law Clerks | $250 |
| Paralegals | $175 |
| Interns | $125 |

# EXHIBIT 7

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**JOHN MICHAEL COHAN and DAVID HUGHES,**
Plaintiffs,

v.

**SCARINCI HOLLENBECK, LLC, as successor in interest to WARREN LAW GROUP, and SCOTT OH,**
Defendants.

**Case No.:** ___3:25-cu-164-HES-MCR___

### COMPLAINT FOR LEGAL MALPRACTICE, NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BAD FAITH, FRAUD, COERCION, AND EXTORTION

Plaintiffs, **John Michael Cohan and David Hughes** (collectively, "Plaintiffs"), bring this action against **Scarinci Hollenbeck, LLC, as successor in interest to Warren Law Group, and Scott Oh** ("Defendants") for **legal malpractice, negligence, breach of fiduciary duty, bad faith, fraud, coercion, and extortion**, and allege as follows:

### I. PARTIES

1. **Plaintiff John Michael Cohan** is a resident of Florida and a **stakeholder** in **Genie Investments NV, Inc.,** which retained Defendants for legal services.

2. **Plaintiff David Hughes** is a resident of Illinois and a **stakeholder** in **Genie Investments NV, Inc.,** which retained Defendants for legal services.

3. **Defendant Scarinci Hollenbeck, LLC** is a law firm and the **successor entity to Warren Law Group,** following a **forward merger between the two entities**.

4. **Defendant Scott Oh** was, at all relevant times, a licensed attorney and a partner at **Warren Law Group, now part of Scarinci Hollenbeck, LLC. It is unknown whether Scott Oh's employment is still active**.

### II. JURISDICTION AND VENUE

5. This Court has **jurisdiction** pursuant to **28 U.S.C. § 1332,** as the controversy arises out of **actions conducted by Defendants that resulted in personal harm to Plaintiffs**, with one Plaintiff residing in Florida.

6. **Venue is proper** in the **Middle District of Florida, Jacksonville Division,** under **28 U.S.C. § 1391(b),** as the acts giving rise to the claims occurred in this district, and one of the Plaintiffs resides in Florida.

7. The courthouse is located at **300 North Hogan Street, Jacksonville, Florida 32202**.

---

### III. FACTUAL BACKGROUND

**A. Personal Claims & Explicit Disclaimer**

8. Plaintiffs **are not pursuing claims on behalf of Genie Investments NV, Inc.** or its bankruptcy estate.

9. Instead, this action is brought **solely for the personal financial losses, reputational harm, and emotional distress suffered by Plaintiffs** due to Defendants' misconduct.

10. Defendants' **malpractice, negligence, and fraudulent conduct** did not just harm Genie Investments NV, Inc., but also **personally harmed Plaintiffs,** who relied on Defendants for legal counsel and suffered **direct financial, reputational, and emotional damages** as a result.

**B. Adam Walker's Findings (Exhibit A)**

11. Plaintiffs submit as **Exhibit A** the **sworn declaration of Adam B. Walker,** a **12-year veteran FINRA enforcement attorney** who routinely investigated **fraudulent financial schemes**.

12. Adam Walker's declaration provides **expert findings and factual evidence** that:

- **Defendants failed to conduct any meaningful due diligence** on Velanos Principal Capital;

- **Defendants ignored clear fraud warnings issued by federal regulators** (SEC, FBI, FTC, and U.S. Treasury);

- **Defendants misrepresented the SBLC transaction as "safe," despite clear fraud indicators;**

- **Defendant Oh failed to warn Plaintiffs of the substantial risk of personal financial harm.**

**C. Defendants' Failure to Provide Competent Legal Services**

11. **Plaintiffs retained Defendants for personal and financial protection** regarding a **Joint Venture Agreement (JVA)** involving **Standby Letter of Credit (SBLC) trading**.

12. **Defendant Scott Oh failed to conduct any due diligence** on **Velanos Principal Capital,** despite being hired to **ensure that Plaintiffs were not personally exposed to risk**.

13. Defendant Oh ignored multiple **red flags of fraud,** including:

- **Unrealistic profit promises** (an 800% return within weeks);

- Lack of transparency regarding transactions;
- Lack of documentation or proof of prior successful deals.

**D. Misrepresentations That Directly Harmed Plaintiffs**

14. Defendant Oh **personally misrepresented** the legitimacy of the JVA, stating that **SBLC trading was "nothing safer"** and that he could **"monetize SBLCs in a day."**

15. Plaintiffs relied on these **misrepresentations,** which resulted in **personal financial exposure** and **substantial reputational harm.**

**E. Coercion and Extortion**

16. **Defendant Oh demanded Plaintiffs sign an escrow agreement after funds had already been deposited, leveraging his legal position to coerce compliance.**

17. He **withheld the release of funds until the agreement was signed,** effectively **extorting** Plaintiffs into paying a **0.5% legal fee** that was never disclosed or agreed upon beforehand.

18. Defendant **prioritized personal financial gain over his ethical obligations,** leading to **direct financial losses for Plaintiffs.**

**F. Reputational and Emotional Harm**

19. Plaintiffs' **personal and professional reputations** suffered due to **Defendant Oh's failure to disclose fraud risks,** associating Plaintiffs with a **fraudulent financial scheme.**

20. Plaintiffs **experienced extreme emotional distress,** including **anxiety and mental anguish,** due to **Defendants' coercion, misleading legal advice, and extortion tactics.**

---

### IV. CLAIMS FOR RELIEF

**COUNT I: LEGAL MALPRACTICE**

**Legal Standard:**
Under **Florida law,** legal malpractice occurs when an attorney:

1. **Owes a duty of care to the client,**
2. **Breaches that duty through negligence,**
3. **Proximately causes damage to the client.** See **Silvestrone v. Edell, 721 So. 2d 1173 (Fla. 1998).**

**Application:**

- Defendants **owed Plaintiffs a duty of care** in providing legal counsel.
- Defendant **failed to conduct due diligence,** ignored **red flags of fraud,** and **misrepresented the safety of the SBLC transaction.**

- As a **direct result of Defendants' legal malpractice,** Plaintiffs suffered **personal financial loss and reputational damage.**

## COUNT II: NEGLIGENCE

**Legal Standard:**
Negligence under Florida law requires:

1. A **duty of care,**
2. A **breach of duty,**
3. **Causation,** and
4. **Damages.** See **Florida Statutes § 95.11(4)(a).**

**Application:**

- Defendants **failed to protect Plaintiffs** from an **obviously fraudulent financial transaction.**
- Plaintiffs **relied on Defendants' misrepresentations,** leading to **personal financial losses.**
- Defendants' negligence **directly resulted in economic harm to Plaintiffs,** independent of Genie Investments NV, Inc.

## COUNT III: BREACH OF FIDUCIARY DUTY

**Legal Standard:**
Attorneys owe clients a **fiduciary duty of loyalty, honesty, and full disclosure.** See **Matter of Cooperman, 83 N.Y.2d 465 (1994).**

**Application:**

- Defendants **prioritized their own financial gain over their duty to Plaintiffs.**
- Defendants **failed to disclose risks** and **engaged in self-serving financial demands.**
- Plaintiffs **suffered personal financial losses and reputational harm as a result.**

## COUNT IV: BAD FAITH

**Legal Standard:**
Bad faith arises when a party **intentionally acts dishonestly to benefit at another's expense.** See **Browning v. Peyton, 918 So. 2d 1071 (Fla. 2d DCA 2006).**

**Application:**

- Defendants **knowingly provided misleading legal advice** to Plaintiffs.
- Defendants **refused to disclose critical risks,** causing **financial losses.**

- Defendants **acted in bad faith by pressuring Plaintiffs into signing agreements under coercion.**

## COUNT V: FRAUD

**Legal Standard:**
Fraud requires:

1. A **false statement of material fact,**

2. **Knowledge that the statement is false,**

3. **Intent to induce reliance,**

4. **Justifiable reliance,** and

5. **Damages.** See **Butler v. Yusem, 44 So. 3d 102 (Fla. 2010).**

**Application:**

- Defendants **falsely claimed** SBLC trading was "safe" despite **knowing it was a high-risk, fraudulent investment scheme.**

- Plaintiffs **relied on these statements,** resulting in **personal financial harm.**

## COUNT VI: COERCION

**Legal Standard:**
Coercion occurs when a party **uses undue pressure or threats to influence another's decisions.** See **Fla. Stat. § 836.05** (criminal coercion).

**Application:**

- Defendant Oh **withheld the release of funds,** effectively **forcing Plaintiffs to sign an escrow agreement under duress.**

- This **coerced financial loss personally harmed Plaintiffs.**

## COUNT VII: EXTORTION

**Legal Standard:**
Extortion occurs when one **forces another to provide money or benefits under threat.** See **Florida Statutes § 836.05.**

**Application:**

- Defendant Oh **refused to return funds until Plaintiffs agreed to pay unjustified fees.**

- This **constituted extortion,** resulting in **personal financial harm to Plaintiffs.**

---

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1. **Compensatory Damages:**

   o **$10 million** for **personal financial losses, reputational harm, and diminished business opportunities.**

2. **Emotional Distress Damages.**

3. **Punitive Damages.**

4. **Legal Fees and Costs.**

**Dated:** 02-14-2025

**Respectfully submitted,**

**JOHN MICHAEL COHAN and DAVID HUGHES**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

Case No.: 3:24-bk-00496-BAJ

Chapter 11

GENIE INVESTMENTS NV, INC.

Debtor.

## DECLARATION OF ADAM B. WALKER

STATE OF MISSOURI

COUNTY OF JACKSON

The undersigned, ADAM B. WALKER, declares as follows:

1. I, ADAM B. WALKER, am an attorney licensed to practice in Missouri. I am the owner and manager of Walker Law Office, LLC d/b/a AW Securities Law. I previously worked for more than 12 years as an enforcement lawyer for the Financial Industry Regulatory Authority (FINRA), where I routinely investigated fraudulent and potentially fraudulent investment activity.

2. I began representing Genie Investments in or around July 2023 at the request of one of its owners, David Hughes. I had previously done legal work for another business in which Mr. Hughes also has an ownership interest. Before July 2023 I was aware that Genie existed and that it was in the lending business, but I had no other knowledge of or involvement with Genie.

3. In July 2023, Genie asked me to help resolve a contract dispute between it and Velanos Principal Capital. I learned that Genie and Velanos had executed a "Joint Venture Agreement" (JVA) in October 2022 and subsequently amended it three times. Through conversations with

Genie's principals and review of the JVA and its amendments, I learned the essential terms of the agreement, which were:

- Genie and Velanos agreed to form a joint venture.

- Genie agreed to contribute $9.0 million in capital to the joint venture.

- Velanos agreed to use the $9.0 million capital contribution to buy and sell standby letters of credit (SBLCs).

- Velanos agreed to distribute profits from the SBLC transactions to Genie within 60 days of Genie's capital contributions.

- The JVA, as amended, stated that Velanos would return a total of $75 million to Genie, consisting of the $9.0 million capital contribution and $66 million in profits.

4. As of July 2023, Velanos had not distributed any profits to Genie and had returned only $500,000 of its capital contributions. Velanos was, therefore, in material breach of the JVA.

5. I also learned that Genie, shortly before executing the JVA, retained an attorney, referred to herein as "SO," to represent it with respect to what was then the "proposed joint venture" between Genie and Velanos. SO was and still is a partner with an established New York-based law firm.

6. Almost immediately after talking with Genie about the Velanos transaction and reviewing the JVA, I strongly suspected that the SBLC-trading program offered by Velanos was fraudulent. With minimal research, I found numerous judicial opinions, press releases, and other materials supporting my suspicions. The U.S. Securities and Exchange Commission, Federal Bureau of Investigation, Federal Trade Commission, and U.S. Department of Treasury, in addition to other regulators and law-enforcement agencies, have in recent years issued warnings to the public about fraudulent prime-banking scams, including many involving fictitious SBLC trading.

7. On or about July 24, 2023, I spoke with SO by telephone for approximately one hour to talk, among other things, about his review of the JVA, his knowledge of and experience with

2

SBLC trading, and whether he viewed the investments as potentially fraudulent or had any other reservations about Genie entrusting its capital to Velanos for the purposes described in the JVA.

8. SO told me that he had extensive background with SBLCs, which he characterized as a legitimate investment used in "high level trade finance." He described SBLC trading as a "financing mechanism" that arose from the 1944 Bretton-Woods agreement, which created the World Bank and the International Monetary Fund.

9. SO represented that Velanos, as promised, had used the $9.0 million in capital that Genie contributed to the joint venture to make profitable SBLC trades. SO acknowledged, however, that he had never received detailed information about any SBLC transactions that Velanos supposedly made.

10. I asked SO to describe how SBLC trading could generate massive profits in a matter of weeks. His response lacked detail. He stated only that it was a "rinse and repeat" process of buying SBLCs at a discount with ensuing profitable sales already prearranged. SO also repeatedly stated that there is "just a lot of leverage that's involved" or some variation thereof.

11. I asked SO if he was aware that SBLC trading was a frequent subject of fraud alerts and enforcement actions, both civil and criminal, by the federal government; he said that he was, but contended nonetheless that what Velanos promised Genie was not fraud. When I asked him how he knew that what Velanos promised was different from the numerous and well-publicized instances of fraud involving SBLCs, he stated that Velanos had "syndicated" the funds. He added, however, that he did not know the particulars of Velanos' ostensible syndication arrangement.

12. I have conducted extensive research into SBLC and other "prime banking" scams. In doing so, I learned that certain phrases, terms, and references are common among SBLC scams. The JVA contains several such phrases and terms. Likewise, SO described SBLC trading to me as

3

"royal-family type stuff" that happens every day, although not in the United States. According to SO, the U.S. government does not want its citizens involved in SBLC trading. Such assertions are often cited by law enforcement and regulators as markers of SBLC and other varieties of prime-banking fraud.

13. The JVA contains other "red flags" of fraud. For example, Velanos promised to generate an extremely high rate of return – more than 800% – in a matter of weeks. It is also, in my professional opinion, very poorly drafted, with some passages best described as gibberish.

14. Genie terminated its representation by SO and his law firm on or around July 24, 2023. On Genie's behalf, I requested all records from SO's representation of Genie. After several weeks' delay, SO provided what he described as the complete client file. That file, which I have reviewed, contains no documentation indicating that SO:

- conducted any meaningful investigation into Velanos, its principals, or its affiliates,

- noted any red flags in the JVA or any potential that the proposed investment was fraudulent,

- advised Genie of any appreciable risk of losing all or a portion of its principal, or

- mentioned to Genie that the transaction bore similarities to a well-known and heavily publicized type of investment fraud.

15. Based on my investigation and analysis of the JVA and my research into prime-banking fraud, I believe the SBLC trading Velanos promised to conduct with Genie's money was at all times fictitious and blatantly fraudulent.

16. Based on my communications with SO and my review of the client file obtained from him, I believe that SO's review of the JVA was inadequate; that he failed to conduct an appropriate and thorough investigation of the transaction, Velanos, and/or its principals and affiliates; and that, as a result, he likely did not discharge his professional obligations to Genie. For these reasons, it

4

is my opinion that Genie has a colorable claim against its former lawyer and law firm for professional malpractice. I am not equipped, however, to estimate any potential recovery if Genie were to pursue such an action.

17. Although many outside observers now impugn Genie's business judgment and competence for having invested in a fraudulent enterprise, it is critical to acknowledge that Genie did so only after receiving the advice of a licensed attorney from a well-regarded law firm, which it retained specifically to guard against placing its money in an illegitimate investment. Whatever one might say with the benefit of hindsight, the proper lens for evaluating Genie's competence to manage its affairs requires consideration of its entire operating history and the fact that it sought, paid for, and relied on the assistance of legal counsel that, by all appearances, had the experience and knowledge to advise it appropriately.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 14, 2024.

Adam B. Walker

WALKER LAW OFFICE, LLC d/b/a AW SECURITIES LAW

5

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**JOHN MICHAEL COHAN and DAVID HUGHES,**
Plaintiffs,

v.

**SCARINCI HOLLENBECK, LLC, as successor in interest to WARREN LAW GROUP, and SCOTT OH,**
Defendants.

**Case No.: _____**

_____

**SUMMONS IN A CIVIL ACTION**

TO:
**SCARINCI HOLLENBECK, LLC, as successor in interest to WARREN LAW GROUP**
1100 Valley Brook Avenue
Lyndhurst, New Jersey 07071

AND

**SCOTT OH**
c/o Scarinci Hollenbeck, LLC
1100 Valley Brook Avenue
Lyndhurst, New Jersey 07071

**YOU ARE HEREBY SUMMONED** and required to serve upon **Plaintiffs** an answer to the **Complaint** which is served on you with this **Summons** within **21 days** after service (or **60 days** if you are the United States government, a United States agency, or an officer or employee of the United States). If you fail to respond, judgment by default will be entered against you for the relief demanded in the Complaint.

You must file your answer or response with the **Clerk of the United States District Court for the Middle District of Florida** at the following address:

**Clerk of Court**
Bryan Simpson United States Courthouse
300 North Hogan Street
Jacksonville, Florida 32202

A copy of your response must also be served on the Plaintiffs at the following address:

| | |
|---|---|
| **John Michael Cohan and David Hughes** | **CLERK OF THE COURT** |
| PO BOX 60443 | By: _____ |
| Jacksonville, Florida 32236 | Deputy Clerk |
| Dated: **[Month] [Day], 2025** | **(Seal of the U.S. District Court)** |

JS 44 (Rev. 03/24)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

John Michael Cohan + David Hughes

**DEFENDANTS**

Scarinci Hollenbeck successor to Warren Law Group + Scott Oh

**(b)** County of Residence of First Listed Plaintiff   Duval
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Passaic
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [X] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & / [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | **LABOR** | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / [ ] 368 Asbestos Personal | [ ] 710 Fair Labor Standards Act | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine / Injury Product | [ ] 720 Labor/Management | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability / Liability | Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle / [ ] 370 Other Fraud | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | Product Liability / [ ] 371 Truth in Lending | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 360 Other Personal / [ ] 380 Other Personal | [ ] 791 Employee Retirement | [ ] 862 Black Lung (923) | [X] 890 Other Statutory Actions |
| | Injury / Property Damage | Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | [ ] 362 Personal Injury - / [ ] 385 Property Damage | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | Medical Malpractice / Product Liability | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | **CIVIL RIGHTS** / **PRISONER PETITIONS** | **IMMIGRATION** | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 462 Naturalization Application | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 441 Voting / [ ] 463 Alien Detainee | [ ] 465 Other Immigration Actions | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | | |
| [ ] 290 All Other Real Property | [ ] 443 Housing/ Accommodations / [ ] 530 General | | | |
| | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | | | |
| | [ ] 446 Amer. w/Disabilities - Other / **Other:** | | | |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | | | |
| | / [ ] 550 Civil Rights | | | |
| | / [ ] 555 Prison Condition | | | |
| | / [ ] 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Florida Statute § 95.11(4)(a) + Florida Common Law

Brief description of cause:
P alleges professional negligence + legal malpractice, resulting in personal claims

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ $10,000,000.00 +
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions.)*   JUDGE ___   DOCKET NUMBER ___

DATE  2/14/25     SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**