UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

GENIE INVESTMENTS NV INC.,                    Case No.: 3:24-bk-00496-BAJ

          Debtor.                              Chapter 7

_____/

**TRUSTEE'S POST-TRIAL BRIEF IN SUPPORT OF HIS MOTION TO ENFORCE
AUTOMATIC STAY AND IN OPPOSITION TO MOTIONS FOR SANCTIONS**

      Aaron R. Cohen, Chapter 7 Trustee (the "Trustee"), by and through his undersigned

counsel, pursuant to the Court's instructions at the June 24, 2025 trial on the Trustee's Motion to

Enforce Automatic Stay (Doc. 296) (the "Stay Enforcement Motion"), Motion for Sanctions

Against Chapter 7 Trustee, Akerman LLP, Aaron Cohen, and Raye Elliott for Bad Faith Litigation,

Abuse of Process, Suppression of Exculpatory Evidence, Retaliation, and Breach of Fiduciary

Duty filed by John Michael Cohan ("Cohan") and David Hughes ("Hughes") (Doc. 322) (the

"Trustee Sanctions Motion"), and the Motion for Sanctions Against Attorney Raye C. Elliott &

Akerman LLP For Violation of Bankruptcy Stay and Bad Faith Litigation  also filed by Cohan and

Hughes (Doc. 325) (the "Attorney Sanctions Motion") files this Post-Trial Brief and would show

the Court as follows:

<b><u>Summary of the Evidence</u></b>

      1.    During the June 24, 2025 trial on the Stay Enforcement Motion, the Trustee

Sanctions Motion, and the Attorney Sanctions Motion, the Court heard testimony from the Trustee

and admitted five exhibits introduced by the Trustee and admitted nine exhibits introduced by

Cohan.[1] While the record speaks for itself, the following summarizes the testimony and exhibits.

### A.    Litigation Against Velanos

2.       On January 10, 2025, the Trustee filed a Complaint for Confirmation of Arbitration Award against Velanos Principal Capital ("Velanos") which was designated Adversary Proceeding 3:25-ap-00007-BAJ (the "Velanos Adversary Proceeding") seeking to confirm an arbitration award against Velanos entered as part of the Settlement Agreement between the Trustee and Velanos and entry of a judgment against Velanos. (Trustee's Ex. 1). The Court entered a Final Judgment (the "Velanos Judgment") in the Velanos Adversary Proceeding in favor of the Trustee and against Velanos on March 4, 2025, confirming the arbitration award in favor of the Debtor and entering judgment in the amount of $20 million against Velanos. (Trustee's Ex. 2).

3.       After entry of the Velanos Judgment, the Trustee domesticated the Velanos Judgment in California where Joshua Wearmouth resides. ("Tr."[2] at 12:22-25). The Trustee also served written discovery in aid of execution directed to Velanos. (Tr. 13:1-3). The Trustee conducted a bank account search for Velanos to try to locate a bank account to garnish to satisfy the Velanos Judgment, although no bank accounts were located. (Tr. 13:4-9).

4.       Prior to entry of the Velanos Judgment, after Velanos defaulted under the Settlement Agreement, the Trustee also sought turnover of certain trading account information that was being held in trust by Velanos' attorney as part of the Settlement Agreement. (Tr. 13:10-23). The Velanos attorney would not voluntarily turn over the trading account information to the

---

[1] Hughes did not attend or participate in the June 24, 2025 trial and therefore was not present to submit evidence in opposition to the Trustee's Motion to Enforce the Automatic Stay or prosecute his Motions for Sanctions. As a result, the Trustee's Motion to Enforce Automatic Stay with respect to Hughes should be summarily granted and Hughes' sanctions' motions summarily denied.

[2] The Trustee is filing contemporaneously with this Brief a partial transcript of the June 24, 2025 trial which contains only the Trustee's testimony at the trial. The partial transcript contains all of the Trustee's testimony on all Motions heard at the June 24 trial.

Trustee because he was no longer representing Velanos and therefore, the Trustee filed a Motion to Compel Compliance with Settlement Agreement (Doc. 271; Tr. 13:18-14:1). The Velanos attorney turned over the documents he was holding but they had nothing to do with any type of trading account or any information that could be used to collect the Velanos Judgment. (Tr. 14:2-11).

5.    Since he was appointed Trustee, the Trustee has been actively pursing the Debtor's claims against Velanos. (Tr. 14:12-14).

6.    On February 14, 2025, Cohan and Hughes filed a complaint against Velanos, its principal Joshua Wearmouth and others in the Circuit Court in and for Duval County (the "Velanos Complaint") seeking damages for Velanos' breach of the Settlement Agreement, damages for fraudulent misrepresentation, and damages for unjust enrichment and fraudulent conveyance. (Trustee's Ex. 3).

**B.    Debtor's Claims Against Warren Law**

7.    On its Schedules, the Debtor listed a potential malpractice claim against Warren Law. (Doc. 39, p. 13). After being appointed, the Trustee spoke with the Debtor's attorney who told him that the Debtor had hired, or was in the process of hiring, malpractice counsel to prosecute that claim who was Nicholas Spigner from Texas. (Tr. 5:13-20). The Trustee and his attorney had a call with Attorney Spigner on August 23, 2024 to discuss the malpractice claim. (Tr. 5:21-24). Mr. Spigner told the Trustee that he had filed a demand for mediation with JAMS, as required by the Debtor's engagement agreement with Warren Law, but that no mediator had yet been appointed. (Tr. 5:25-6:9; Trustee's Ex. 4). The Trustee also questioned Mr. Spigner about his experience with legal malpractice claims and Mr. Spigner told him that he had been involved in several attorney malpractice claims but none of them had been tried to verdict. (Tr. 6:12-14). The

Trustee also asked Mr. Spigner if he would be willing to handle the malpractice case against Warren Law on a fully contingent basis but Mr. Spigner declined. (Tr. 7:4-8).

8.      At that point, the Trustee was seeking counsel to handle the legal malpractice claim against Warren Law on a fully contingent basis, because the mediation and arbitration had to be brought in New York with JAMS and the hourly rate of attorneys in New York is very very expensive. (Tr. 7:9-19). The Trustee interviewed other legal malpractice attorneys, other than Attorney Spigner, because Attorney Spigner is located in Texas and the mediation and arbitration had to take place in New York, he hoped to find someone to do it on a fully contingent basis and to find someone who had actually litigated a legal malpractice case through to verdict. (Tr. 7:20-8:5). At the Trustee's direction, his attorney interviewed four different legal malpractice attorneys in New York. (Tr. 8:6-10).

9.      The Trustee's attorney also served a subpoena for documents on Warren Law seeking all documents related to the representation of the Debtor in the Velanos transaction. (Tr. 8:11-15). Warren Law responded to the subpoena but there was no "smoking gun" in any of the discovery produced by Warren Law. (Tr. 8:16-17; 9:16).

10.     The Trustee has not yet retained legal malpractice counsel because the estimates of the fees that would be necessary to litigate the claim against Warren Law the Trustee received were $350,000 to $500,000. (Tr. 8:18-9:2). Without exception, all of the legal malpractice attorneys interviewed by the Trustee and his attorney have said that the claim would be a very difficult case to prove because it was a matter of what the Debtor claims Warren Law was hired to do versus what Warren Law says they were hired to do. (Tr. 9:9-14). Instead, the Trustee has been negotiating with Warren Law's attorneys on a settlement of the malpractice claim. (Tr. 9:3-6). The Trustee also obtained a tolling agreement from Warren Law to toll the statute of limitations for the

4

malpractice claim, while he attempts to negotiate a settlement of the claim. (Tr. 9:6-8; 22-25).

11.     Since his appointment as Trustee, the Trustee has been fully prosecuting the malpractice claim against Warren Law. (Tr. 10:1-6).

12.     On February 14, 2025, Cohan and Hughes filed a "Complaint for Legal Malpractice, Negligence, Breach of Fiduciary Duty, Bad Faith, Fraud, Coercion, and Extortion" in the United States District Court, Middle District of Florida, Jacksonville Division (the "District Court") against Scarinci Hollenbeck, LLC as successor in interest to Warren Law Group and Scott Oh, Case Number 3:25-cv-164-HES-MCR (the "Warren Law Complaint"). (Trustee's Ex. 5). In the Warren Law Complaint, Cohan and Hughes assert claims for legal malpractice, negligence, breach of fiduciary duty, bad faith, fraud, coercion, and extortion. (*Id*.).

**C.     Sanctions Motions**

13.     Cohan introduced into evidence the January 24, 2025 demand letters sent by the Trustee's attorney to Better Methods, LLC, Capitulum, LLC, Genie Investments, LLC, Genie's Angels, LLC, and Zoomeral, Inc. (collectively, the "Insider Companies") for recovery of transfers made by the Debtor to these companies (Cohan's Exs. A-E).

14.     Cohan also introduced into evidence the January 24, 2025 letter sent by the Trustee's attorney to Cohan and Hughes after learning of a demand letter they sent to Warren Law and the Warren Law attorney who had represented the Debtor in the Velanos transaction. (Cohan's Ex. F). The letter from the Trustee's attorney stated that the legal malpractice claims they were asserting against Warren Law belonged to the bankruptcy estate and that they must cease and desist asserting such claims themselves. (*Id*.)

82374697

15. Cohan introduced into evidence an email string between the Trustee's attorney and him regarding the demand letter he and Hughes sent to Warren Law and assertion of personal claims they may have against third parties. (Cohan's Ex. H).

16. The Trustee testified that the January 24, 2025 letter sent to Cohan and Hughes concerning their demand letter to Warren Law (Cohan's Ex. F) was sent to protect the bankruptcy estate's property because Cohan and Hughes were violating the automatic stay. (Tr. 22:18-23:1).

17. The Trustee also testified that the January 24, 2025 demand letters sent to the Insider Companies (Cohan's Exs. A-E) was sent because he was giving the Insider Companies 10 days to respond before filing an adversary proceeding. (Tr. 23:4-9). The Trustee testified that his sending of demand letters to the Insider Companies had nothing to do with Cohan and Hughes' asserting claims against Warren Law and that he always intended to sue the Insider Companies for recovery of the transfers made to them by the Debtor. (Tr. 26:21-27:8).

18. With respect to the malpractice claim against Warren Law, the Trustee testified that he had not yet retained legal malpractice counsel because he is attempting to negotiate a settlement privately with Warren Law without spending $300,000 or $400,000 in attorneys' fees. (Tr. 25:21-26:7).

19. The Trustee testified that his filing of the adversary proceeding against the Insider Companies had nothing to do with a $1.1 million transfer from the Debtor's Chase Bank account for which the Trustee sought information from the Debtor's attorney and, ultimately, served a subpoena on Chase Bank for the records. (Tr. 36:25-37:14). The Trustee obtained copies of the Debtor's bank records from the Chapter 11 Examiner who had been provided them by the Debtor. (Tr. 80:4-7). The bank records show that the Debtor's bank accounts had been closed in August 2023. (Tr. 80:15-18). The Debtor's bank records showed that there was a $1.1 million debit from

6

the Debtor's account before it was closed, but did not indicate where the $1.1 million went. (Tr. 80:19-22). The Trustee's attorney requested additional information concerning the $1.1 million debit from the Debtor's attorney, but he did not provide any documents showing where the $1.1 million went. (Tr. 80:23-81:5). At that point, the Trustee served a subpoena on Chase Bank to obtain records directly from Chase. (Tr. 81:6-8). The Chase Bank records showed that the $1.1 million went to a customer of the Debtor as a refund. (Tr. 81:9-12). If the Chase Bank records had shown that the $1.1 million had been transferred to one of the Insider Companies, the Trustee would have amended the complaint against the Insider Companies to include that transfer. (Tr. 37:15-17; 81:13-18). However, that $1.1 million transfer had no bearing on the Trustee's decision to pursue claims for fraudulent transfers against the Insider Companies. (Tr. 37:12-20).

20.    The Trustee had a basis for filing the adversary proceeding against the Insider Companies based on the Chapter 11 Examiner's report, the loan documents with the Insider Companies, and the Trustee's attorney's review of the Debtor's bank records. (Tr. 39:21-24; 40:8-11; 41:13-17; 41:23-42:4). The Trustee filed the adversary proceeding against the Insider Companies for fraudulent transfers based on the improper loans made by the Debtor to the Companies. (Tr. 54:10-12; 58:2-5).

**<u>Argument</u>**

## I.    Trustee's Motion to Enforce Automatic Stay

The evidence presented at the hearing clearly show that the Trustee has been actively prosecuting the bankruptcy estate's claims against Velanos and Warren Law since his appointment. Specifically, after Velanos defaulted under the Settlement Agreement, the Trustee filed an adversary complaint with this Court to confirm the arbitration award against Velanos and obtained a judgment against Velanos. The Trustee has been attempting to collect the judgment

7

against Velanos by serving discovery in aid of execution and searching for bank accounts owed by Velanos.

The Trustee has also been actively prosecuting the bankruptcy estate's malpractice claim against Warren Law. The Trustee served a subpoena on Warren Law to obtain documents relevant to the malpractice claim. The Trustee and his attorney interviewed several attorneys located in New York who specialize in legal malpractice claims to potentially represent the Trustee in a mediation and arbitration against Warren Law. Given the estimates of the legal fees and expenses that would be required to fully prosecute the claim through to arbitration, which were as high as $500,000, the Trustee has been engaged in settlement negotiations with Warren Law for several months to try to reach a settlement agreement for the malpractice claim. The Trustee also obtained a tolling agreement from Warren Law to toll the statute of limitations for the malpractice claim, while the parties discussed settlement of the claim. In fact, the Trustee received the latest settlement offer from Warren Law just the day before the June 24 trial. (Tr. 10:4-6).

The complaints filed by Hughes and Cohan against Velanos and Warren Law, which were admitted into evidence as Trustee's Exhibits 3 and 5, clearly show that Hughes and Cohan are attempting to make the same claims against Velanos and Warren Law that the bankruptcy estate has. Count I of the Velanos Complaint alleges a claim for breach of contract for Velanos' breach of the Settlement Agreement. The Settlement Agreement was entered into between the Trustee and Velanos. *See* Trustee's Ex. 1 at pp. 8-42 and Main Case Doc. 249. A claim for breach of the Settlement Agreement between the Trustee and Velanos belongs exclusively to the bankruptcy estate.

Count II of the Velanos Complaint alleges a claim for fraudulent misrepresentation for Velanos' allegedly making false and misleading statements regarding its financial capabilities and

8

intention to honor the Settlement Agreement. This claim for fraudulent misrepresentation derives from the same harm incurred by the Debtor and bankruptcy estate for Velanos' breach of the Settlement Agreement and is therefore derivative of the bankruptcy estate's claim against Velanos. Count III of the Velanos Complaint alleges a claim for unjust enrichment and fraudulent conveyance against Velanos and also derives from the same harm incurred by the Debtor and bankruptcy estate for Velanos' breach of the Settlement Agreement. As a result, this claim is derivative of the bankruptcy estate's claim against Velanos.

Likewise, the claims asserted by Cohan and Hughes in their complaint against Warren Law are based on the same harm caused by Warren Law's legal professional negligence in its representation of the Debtor. Count I of the Warren Law Complaint alleges a claim for legal malpractice and Count II alleges a claim for negligence against Warren Law and its attorney, Scott Oh ("Oh"). Warren Law and Oh represented the Debtor, not Hughes and Cohan individually. *See* Trustee's Ex. 4, October 14, 2022 Engagement Agreement letter from Warren Law Group to the Debtor. Therefore all claims for legal malpractice or negligence belong exclusively to the bankruptcy estate and only the Trustee has standing to pursue claims against Warren Law and Oh for legal malpractice and negligence.

Count III of the Warren Law Complaint alleges a claim for breach of fiduciary duty, Count IV alleges a claim for bad faith, Count V alleges a claim for fraud, Count VI alleges a claim for coercion, and Count VII alleges a claim for extortion against Warren Law and Oh. Each of these counts derives from and is a continuation of the initial harm – the Debtor and consequently the bankruptcy estate's direct loss due to Warren Law's and Oh's professional negligence.

No matter how Cohan and Hughes describe the claims asserted in the Velanos Complaint and the Warren Law Complaint as "personal" harm inflicted upon them, the claims are clearly

82374697

property of the bankruptcy estate because they derive from and flow from the harm inflicted upon the Debtor. As such, the causes of action against Velanos and Warren Law are property of the estate and Cohan's and Hughes' attempts to pursue those causes of action violate the automatic stay.

Without question, "property of the estate" includes choses or causes of action, like the Debtor's claims against Velanos for breach of the Settlement Agreement and claims against Warren Law for legal malpractice. Property of the estate "includes legal causes of action the debtor had against others at the commencement of the bankruptcy case." *In re Icarus Holding, LLC*, 391 F. 3d 1315, 1319 (11th Cir. 2004). The "bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy." *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003). Causes of action that belong to the bankruptcy estate must be pursued by the Trustee. *Mennen v. Onkyo Corp.*, 248 F. App'x 112, 113 (11th Cir. 2007) ("[i]f a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim.").

"[A] general claim that 'applies equally to all creditors' and can be brought by the debtor is the property of the bankruptcy estate. It is the general nature of a claim instead of the general nature of a debt that causes a claim to belong to a bankruptcy estate." *In re D.A.B. Constructors, Inc.*, No. 6:21-bk-04053-GER, 2024 WL 5200457 at *5 (Bankr. M.D. Fla. Dec. 6, 2024) *quoting Bond Safeguard Ins. Co. v. Wells Fargo Bank, N.A.*, 502 Fed. Appx. 867, 869 (11th Cir. 2012). In *D.A.B. Constructors*, the bankruptcy trustee filed a motion to enforce automatic stay to stop a surety company from filing a lawsuit to pursue claims that were identical to claims the trustee was pursing on behalf of the estate. After considering each of the claims asserted in the surety's complaint, the

court held that they were all derivative of the bankruptcy estate's claims and therefore granted the trustee's motion to enforce the automatic stay.

As the Eleventh Circuit explained in *Bond Safeguard Ins.*,

> If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. . . . A general claim that "applies equally to all creditors" and can be brought by the debtor is the property of the bankruptcy estate of the debtor.

*Bond Safeguard Ins.*, 502 Fed. Appx. at 869 (internal citations omitted).

Each of the claims asserted by Cohan and Hughes in the Velanos Complaint and in the Warren Law Complaint arise out of the transactions with and injury to the Debtor. The claims alleged in the Velanos Complaint **all** arise from Velanos' breach of the Settlement Agreement with the Trustee. The claims alleged in the Warren Law Complaint **all** arise from Warren Law's representation of the Debtor in the transaction with Velanos. The Trustee is already pursing these claims for the direct injury to the Debtor. Therefore, all of the claims asserted by Hughes and Cohan in the Velanos Complaint and Warren Law Complaint belong to the bankruptcy estate.

## II.    The Trustee Sanctions Motion and Attorney Sanctions Motion

The evidence presented at the hearing, including the Trustee's testimony, proves that neither he, nor his attorney, have engaged in any misconduct and that all acts undertaken by the Trustee and his attorney were taken as part of their official duties. Since filing their first sanctions motion on January 27, 2025 (Doc. 274), Cohan and Hughes have done nothing but accuse the Trustee of misconduct, bad faith, retaliating against them, breaching his fiduciary duty and abusing the bankruptcy process. In fact, nothing could be further from the truth. The Trustee has been a well-respected attorney in the Jacksonville community for 39 years and has served as a distinguished Chapter 7 bankruptcy trustee for 28 years. The Trustee has administered this bankruptcy case the

11

same way that he has administered all other bankruptcy cases in his 28 years as a trustee – impartially and in the best interests of creditors. In this case, the Trustee has worked diligently to recover assets for creditors, including attempting to collect the judgment against Velanos, administer the Debtor's legal malpractice claim, and recover fraudulent transfers made by the Debtor. Underlying the hundreds of pages of pleadings they have filed containing numerous untrue accusations against the Trustee is the fact that Cohan and Hughes are upset that the Trustee sought to recover the transfers made by the Debtor to their Insider Companies and has attempted to stop them from asserting claims that belong to the estate. Tellingly, the mountains of pleadings and accusations only started after the Trustee, through his attorney, sent a cease and desist letter to Cohan and Hughes on January 24, 2025 demanding that they stop making claims against Warren Law. Their first sanctions motion followed three days later. Also underlying the numerous pleadings they have filed is the simple fact that Cohan and Hughes fundamentally do not understand the bankruptcy or legal process. The Trustee has a duty to administer all assets of the bankruptcy estate, including claims for fraudulent transfers. The Trustee is not "targeting" or "retaliating" against Cohan and Hughes. He is doing his job as a bankruptcy trustee. Period.

The Trustee Sanctions Motion seeks sanctions against the Trustee and his attorney for: (1) filing the Motion to Enforce Automatic Stay to stop Cohan and Hughes from asserting personal claims against Velanos and Warren Law; (2) sending a cease and desist letter to Cohan and Hughes demanding that they cease their claims against Warren Law, prior to filing the Motion to Enforce Automatic Stay (3) allegedly omitting "exculpatory evidence"[3] demonstrating Cohan's and Hughes' "independent claims and financial interests"; (4) forcing Cohan and Hughes to hire legal counsel to

---

[3] What that "exculpatory evidence" is has never been presented, either in the Trustee Sanctions Motion or at the June 24 trial.

defend their personal assets and interests; and (5) concealing evidence that the $1.1 million debit from the Debtor's Chase Bank account was not a fraudulent transfer.

First, filing the Motion to Enforce Automatic Stay was an official act of the Trustee and was not done in bad faith; instead the Motion was filed to protect estate assets. Likewise, sending the cease and desist letter to Cohan and Hughes was an official act by the Trustee and was not done in bad faith; again, the letter was sent to protect estate assets. Next, the Trustee has never omitted "exculpatory evidence" from the Court regarding Hughes and Cohan's claims and financial interests and no evidence was presented at the hearing to prove otherwise. Additionally, the Trustee did not "force" Cohan and Hughes to hire legal counsel to defend their personal interests. It was, in fact, this Court who entered an order in the adversary proceeding against the Insider Companies requiring the Insider Companies to only appear and be heard through counsel pursuant to this Court's Local Rules.

Furthermore, the Trustee testified that the adversary proceeding against the Insider Companies was brought because the loan documents between the Debtors and the Insider Companies did not contain commercially reasonable terms and his attorney's review of the Debtor's bank records confirmed the transfers from the Debtor to the Insider Companies. The Trustee made clear, repeatedly, in his testimony that the $1.1 million debit from the Debtor's bank account that he investigated was **not** the basis for the adversary proceeding against the Insider Companies. More importantly, this Court has already entered a Final Judgment against the Insider Companies finding that the transfers from the Debtor to the Insider Companies were fraudulent transfers. *See* Adv. Pro. No. 3:25-ap-00011-BAJ, Adv. Doc. 42. Filing the adversary proceeding against the Insider Companies was not misconduct by the Trustee and was an official act by the Trustee.

Likewise, sending demand letters to the Insider Companies prior to filing the adversary proceeding against them was not misconduct and was an official act of the Trustee. It is a normal

course of business for a trustee to send a demand letter to the target of a fraudulent transfer claim, prior to filing a lawsuit against it. In this case, as detailed extensively in other pleadings filed with the Court in the Insider Companies' adversary proceeding, Hughes and Cohan are the sole officers and directors of the Insider Companies and therefore all of the demand letters were sent to them, in their capacity as officers or directors of the Companies.

As a matter of law, Cohan and Hughes are prohibited from seeking sanctions against the Trustee for acts undertaken in his official capacity as bankruptcy trustee. It is black letter law that bankruptcy trustees are entitled to qualified immunity for any actions that are taken within the scope of the trustee's official duties. *See Matter of Ondova Ltd. Co.*, 914 F.3d 990, 993 (5th Cir. 2019) (holding that bankruptcy trustees are entitled to qualified immunity for actions that fall within the scope of their official duties); *In re McKenzie*, 716 F.3d 404, 413 (6th Cir. 2013) ("[A] bankruptcy trustee is ordinarily entitled to quasi-judicial (or derivative) immunity from suit by third parties for actions taken in his official capacity."); *Sierra v. Seeber*, 966 F.2d 1444 (4th Cir. 1992) (same); *In re Lickman*, 297 B.R. 162 (Bankr. M.D. Fla. 2003) (trustees have immunity for acts taken that are within the scope of their duties in administering the estate); *In re Clearwater Bay Marine Service, Inc.*, 236 B.R. 285 (Bankr. M.D. Fla. 1999) (same). The doctrine of trustees' immunity has also been applied to motions seeking sanctions against a trustee. *See In re Solar Financial Services, Inc.*, 255 B.R. 801 (Bankr. S.D. Fla. 2000). Each of the Trustee's acts complained of by Hughes and Cohan were acts taken in his official capacity as a Chapter 7 trustee. As a result, the Trustee is entitled to qualified immunity from sanctions for those acts.

The doctrine of qualified immunity also extends to the Trustee's attorney and her law firm. *Ondova Ltd. Co.*, 914 F.3d at 994 (affirming the district court that qualified immunity extends to trustee's attorneys under a derivative theory of judicial immunity). *See also In re DeLorean Motor*

82374697

*Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("We hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."); *In re Foster*, No. 12-43804-ELM, 2020 WL 6390671, at *15 (Bankr. N.D. Tex. Oct. 30, 2020), *aff'd sub nom. Matter of Foster*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023) (explaining that bankruptcy trustee's attorneys employed with court approval are also entitled to immunity from suits). The Trustee testified that all actions of the Trustee's attorney were taken at his direction. As a result, the Trustee's attorney and her law firm are entitled to qualified immunity from sanctions for those acts.

The basis for Cohan's and Hughes' Attorney Sanctions Motion was the filing of a notice of appearance in the lawsuit filed by Cohan and Hughes against Warren Law. Cohan did not present any evidence at the June 24 hearing on this issue. Additionally, filing a notice of appearance in a lawsuit which the Trustee believed violated the automatic stay is an official act of the Trustee and the Trustee's attorney filed the notice of appearance at the direction of the Trustee. Therefore, the Trustee's attorney and her law firm are entitled to qualified immunity from sanctions for filing the notice of appearance.

Cohan did not present any evidence proving that any act of the Trustee or his attorney was undertaken outside of the scope of their official duties as bankruptcy trustee and attorney for the bankruptcy trustee. Accordingly, both the Trustee and the Trustee's attorney are entitled to qualified immunity from sanctions. Notably, Cohan did not present any evidence at the hearing that the Trustee's acts or his attorney's acts were taken in bad faith or for any reason other than carrying out the Trustee's statutory duties. Neither the Trustee nor his attorney have done anything wrong in this case. Therefore, both the Trustee Sanctions Motion and Attorney Sanctions Motion must be denied.

82374697

Dated:  July 25, 2025                    AKERMAN LLP

                                         By: */s/ Raye C. Elliott*
                                             Raye  C. Elliott, Esq.
                                             Florida Bar Number: 018732
                                             Email: raye.elliott@akerman.com
                                             401 East Jackson Street, Suite 1700
                                             Tampa, FL 33602
                                             Phone:  (813) 223-7333
                                             Fax:  (813) 223-2837

                                         Attorneys for Aaron R. Cohen, Chapter 7 Trustee


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 25, 2025, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record and a true and correct copy was served by electronic mail to the following who consented in writing to receive service of pleadings at the email address listed below:

John Michael Cohan                          David Hughes
iustusprocessus@outlook.com                 davidchoatehughes@gmail.com

and by U.S. mail to:

David Hughes
2812 Pat Tillman Drive
Springfield, IL 62711


                                         */s/ Raye C. Elliott*
                                         Attorney

82374697