UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:
**GENIE INVESTMENTS NV INC.,**
    Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

                                            /

FILED MAIL USBC
JAX, FL SEP 3 '25

## MOTION TO VACATE CONVERSION ORDER AND FOR RELIEF FROM FRAUD ON THE COURT

Filed pursuant to Fed. R. Civ. P. 60(d)(3), via Fed. R. Bankr. P. 9024,
and the Court's inherent authority
(Submitted by Interested Party David Hughes, individually and not on behalf of any entity)

**Preliminary Statement**

This motion is filed in the **main bankruptcy docket** pursuant to the Court's inherent authority and Rule 60(d)(3). It seeks vacatur of the **conversion order and related reliance on the Examiner's Report**, on the grounds of fraud on the court. The record reflects that the U.S. Trustee's motion to convert, and the Court's ruling thereon, were premised on false testimony, mischaracterizations of the Examiner's Report, and deliberate omissions that subverted the judicial process itself.
As set forth herein, this case satisfies all elements of fraud on the court under *Hazel-Atlas*, *Rozier*, and Eleventh Circuit precedent. Relief is warranted in this main case separately from, but complementary to, the relief sought in the adversary proceeding.

Filed Pursuant to Federal Rule of Civil Procedure 60(d)(3) and *Chambers v. NASCO, Hazel-Atlas*
This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The relief requested herein is authorized by Federal Rule of Civil Procedure 60(d)(3), made applicable to this case by Federal Rule of Bankruptcy Procedure 9024, and the Court's inherent authority to prevent abuse of process and correct judgments obtained through fraud on the court.

### I. INTRODUCTION

The integrity of this case has been fatally compromised by a systematic pattern of falsehoods, misrepresentations, and knowing concealment of truth, all of which culminated in a judgment that was not based on the merits, but on deception. The Examiner's Report, relied upon by the United States Trustee (UST), the Chapter 7 Trustee, and their counsel, falsely implied that affiliate loans were fraudulent. That assertion was never made in the report itself, but it was repeatedly testified to under oath. The misstatements are material, repeated, and relied upon by this Court. This case represents a fraud on the court, multi-layered deception perpetrated by the very officers sworn to uphold judicial integrity. The fraud began with the UST's reckless allegations, enabled by our own counsel's inexplicable inaction, metastasized through a fabricated Examiner's report, and culminated in a Chapter 7 Trustee's bad-faith prosecution based on shifting, invented theories.

When confronted with conclusive documentary evidence disproving the report's characterizations, the Chapter 7 Trustee's counsel immediately backtracked, claiming the report was not solely relied upon contradicting testimony already given. The Examiner herself misled the Court at the conversion hearing,

stating that funds were transferred after Velanos had defaulted, when in fact all funds were transferred before any performance obligation by Velanos began.

This is not a case of mistaken interpretation. This is fraud on the court, plain and direct, under the standards of *Hazel-Atlas*, 322 U.S. 238 (1944), and *Chambers v. NASCO*, 501 U.S. 32 (1991). The adversary complaint and subsequent judgment must be vacated, with prejudice.

The Chapter 7 Trustee's recent opposition brief doubles down on the same misrepresentations already documented herein, including repeating the false claim that insider loans were "fraudulent transfers" and invoking inflammatory analogies such as "RICO" and "Madoff", comparisons that appear nowhere in the Examiner's report. These unsubstantiated claims, made by officers of the court, continue to corrupt the record and further support this Motion for vacatur.

The record reveals an unmistakable pattern:

1. U.S. Trustee Scott Bomkamp's Initial Fraud launched this fraud by:

   -Filing a conversion motion accusing Debtor of having "simply took the money and didn't provide any benefit"

   - Making these allegations without reviewing bank records

   - Violating local rules by failing to confer with Debtor's counsel Bryan Mickler

   - Offering no evidence beyond unverified creditor complaints

2. Professional Failures by Attorney Bryan Mickler's Complicity that enabled this fraud:

   - Failing to challenge Bomkamp's baseless allegations

   - Refusing to explain why Bomkamp never contacted him

   - Abandoning his duty to protect his clients from this violation of due process

3. Examiner Maria Yip's Fabrications institutionalized the fraud by:

   - Falsely testifying about transfer timing at the conversion hearing

   - Violating GAAP principles in her analysis (i.e. tax filings)

4. Chapter 7 Trustee Aaron Cohen's Bad Faith completed the fraud by:

   -Filing adversary complaints without reviewing key bank records or a proper independent investigation

   -Cycling through *three* different rationales (**$1.1M transaction → Yip report → loan terms**) as each collapsed

   -Continuing prosecution and collection efforts after learning the factual foundation was fraudulent

This was not a series of mistakes. It was a calculated effort to substitute manufactured allegations for evidence, enabled at every turn by professionals who abandoned their duties.

## II. LEGAL STANDARD AND CHRONOLOGY OF FRAUD

"Fraud on the court" under Rule 60(d)(3) is not ordinary fraud between parties. It refers to conduct "that defiles the court itself," typically involving officers of the court engaging in deceitful practices that subvert the integrity of the judicial process. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). It includes knowingly false statements, deliberate omission of material facts, or manipulation of the factual record such that the court is misled into issuing a ruling that would not have been made had the truth been disclosed. See also *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Herring v. United States*, 424 F.3d 384, 386
(3d Cir. 2005).

Federal Rule of Civil Procedure 60(d)(3) authorizes a court to "set aside a judgment for fraud on the court." The Supreme Court in *Hazel-Atlas* defined this as conduct that corrupts the judicial machinery itself — particularly fraud committed by officers of the court that prevents fair adjudication. A party need not prove that the outcome would have been different, only that the judicial process itself was compromised.

The Court also retains inherent authority, reaffirmed in *Chambers*, to vacate judgments and impose sanctions where parties or officers of the court abuse the judicial process through fraud, bad faith, or manipulation. In this case, the record is clear:

- Falsehoods were made;
- Repeated under oath;
- Relied upon by the Court;
- And never corrected, even when exposed.

## III. CHRONOLOGY OF FRAUD

This fraud was not a single event, but a progressive pattern of misconduct, initiated by the U.S. Trustee, advanced by a compromised Examiner, and consummated by a Trustee acting without independent diligence. It unfolded in three phases:

A. Phase I – Foundational Procedural Failures: Bomkamp's and Mickler's Initial Fraud

1. U.S. Trustee Scott Bomkamp's First Motion falsely claimed that the Debtor "simply took the money and didn't provide any benefit."
    - o Knowingly False: Bank records show that the Debtor did provide value. Reckless: Bomkamp made this claim without reviewing the transaction records.
    - o Unprofessional: The motion was filed without even conferring with Debtor's counsel, Bryan Mickler, in violation of standard protocol.

2. Attorney Bryan Mickler's failure to act further undermined procedural safeguards:
    - o He never challenged Bomkamp's failure to confer.
    - o He refused to demand that Bomkamp review the Debtor's financials.
    - o When asked why Bomkamp didn't call to verify the facts, Mickler simply shrugged—demonstrating passive indifference to material misrepresentation.

B. Escalation of Misstatements and Examiner Involvement: Bomkamp and Yip's Collaboration After Bomkamp's meritless initial motion, he escalated the misconduct:

1. He hand-selected Examiner Maria Yip, who demonstrated clear bias aligned with his agenda.

2. He knowingly relied on Yip's speculative report, which included:

    o The manufactured term "customer funds," unsupported by any contract;

    o False implications of fraud, despite governing agreements clearly stating all funds were earned revenue;

    o Basic violations of Generally Accepted Accounting Principles (GAAP) in her analysis, despite Yip being a licensed CPA with full access to the Debtor's tax filings and accounting records.

C. Final Reliance on Examiner Findings and Resulting Harm: Trustee Cohen's Shifting Theories Chapter 7 Trustee Aaron Cohen completed the sequence of fraud by:

1. Filing adversary claims while citing without reviewing the $1.1 million transaction records;

2. Cycling through three untenable legal theories, each abandoned when exposed:

    o First Theory: The $1.1 million transfer was fraudulent, disproven by documentation.

    o Second Theory: The speculative Examiner's report, which justified conversion, is completely undermined when shown to be fabricated.

    o Third Theory: Affiliate loan terms were "too favorable", a legally baseless claim under any applicable precedent, according to Adam Walker, Esquire.

This sequence of escalating misconduct, originating with an unfounded allegation, progressing through a fraudulent report, and culminating in bad-faith litigation, is the textbook definition of fraud on the court. The integrity of the judicial process has been irreparably tainted, and vacatur is not only justified, it is required.

### IV. WALKER MEMO – LEGAL CONFIRMATION THAT FRAUD OCCURRED

Attached as Exhibit A (previously submitted with the Motion to Vacate *Judgment for Fraud on the Court and Wrongful Conversion*, Doc. 392) is a memorandum from Adam Walker, a 12-year FINRA enforcement attorney and securities law expert. Mr. Walker affirms that the Examiner's report misrepresents legal and factual issues, and that the United States Trustee's reliance on it to make the allegations constituted fraud in and of itself.

Crucially, Mr. Walker's analysis shows that Scott Bomkamp, the U.S. Trustee, committed knowing fraud by filing a motion to convert based entirely on what he knew was a factually and legally deficient report. Mr. Walker, a 12-year FINRA enforcement attorney, directly rebuts the foundation of the Trustee's motion to convert and adversary complaint. He concludes the Examiner's report was both factually deficient and legally untenable, and that Mr. Bomkamp's reliance on it, despite knowing its defects, constitutes fraud upon the court. This renders the initial conversion voidable for fraud.

## V. EXAMINER'S MISSTATEMENT IN COURT – NEVER CORRECTED

But the fraud does not stop there; it only accelerates. On the day of the conversion hearing, Examiner Maria Yip testified that Genie Investments NV Inc. transferred funds to Velanos after Velanos had defaulted on its obligation to return funds. This was false.

Under the parties' agreement, Velanos had no obligation to return funds until December 5, 2023. All $9 million in transfers, $3 million per transaction, were completed before that date. Thus, Velanos was not in default at the time of the transfers, and Yip's statement to the contrary was materially misleading.

When this misstatement was made in open court, the undersigned and John Michael Cohan requested a sidebar with their attorney, Bryan Mickler, and explained the truth, that the Examiner had misled the Court. We instructed Mickler to return into the court and correct the record. He refused. Instead, he made a vague comment that "something could be fact-checked later," and failed to request reconsideration or clarify the Examiner's misstatement, despite knowing it was false. When provided the clear timeline of transfers and the agreement, along drafted reconsideration and appeal motion, he also refused, instructed us to hire new counsel [while collecting $60,000 from the debtor and continuing to bill the estate.

Attached as Exhibit X (previously submitted with the Motion to Vacate *Judgment for Fraud on the Court and Wrongful Conversion*, Doc. 392) is a contemporaneous verification letter from legal counsel for Velanos. This letter, provided to us during the transaction, expressly represented that the Velanos program was legitimate and that Velanos' legal counsel stood behind the program.

Clarifying Timeline and Legal Reliance:

To set the record straight, Plaintiff submits the following indisputable timeline and facts. On October 20, 2022, Genie Investments transmitted the first $3 million to Velanos, only after receiving affirmative legal authorization from Scott Oh of Warren Law Group, who had completed initial due diligence and negotiated the original transactional contract. Following that, the second $3 million was sent on **November 21, 2022** (before Velanos defaulted), again with legal endorsement and upon Warren Law Group's review and modification of the agreement. The **third tranche of $3 million** was transferred on **November 30, 2022** (before Velanos defaulted), subsequent to receiving the **Gowling Law letter**, which Velanos provided in good faith to further substantiate its operational legitimacy.

These funds were sent before any contractual breach or default occurred. Contrary to Examiner Maria Yip's misleading characterization during trial, Velanos had not defaulted at the time these transfers were made. The first and only date on which Velanos became contractually obligated to return funds was December 5, 2022. (Exhibit B (previously submitted with the Motion to Vacate *Judgment for Fraud on the Court and Wrongful Conversion*, Doc. 392) "JV Timeline and Transfers Email") Thus, all three $3 million transfers occurred prior to any default, and no funds were sent in violation of prudent business practice or in disregard of a known breach.

Further, the Gowling Law capabilities letter, was an unsolicited third-party legal opinion voluntarily provided by Velanos as part of their effort to demonstrate transparency and credibility. While this letter was not the original basis for initiating the relationship, it served to bolster confidence in Velanos' operational infrastructure and legal standing prior to the second or third transfer. At no time did Plaintiff act recklessly, and at every critical juncture, Plaintiff sought, obtained, and relied on licensed legal counsel.

These facts directly rebut the Trustee's narrative of gross negligence and deliberate misconduct. They also undermine the core predicate for conversion and the adversary complaint. The omission of this evidence

by Plaintiff's former attorney and its subsequent misrepresentation in court form a material part of the broader fraud on the court, which has tainted the fairness and integrity of these proceedings and warrants immediate vacatur and evidentiary review.

This document demonstrates that we did not act recklessly or with fraudulent intent. On the contrary, we had further formal legal assurances in hand, provided directly by the other party's attorney. The subsequent failure of Velanos and the damage caused to us and our estate does not change the fact that these steps were taken at the time.

The existence of this letter, combined with the Examiner not finding fraud, directly undercuts the Trustee's narrative of fraudulent transfers or gross mismanagement.

This material was not speculative; it was vetted, documented, and supplied by counsel. Yet Mickler never submitted it to the Court, never disclosed it to the Examiner, and never offered it in rebuttal to the false implication. Had this evidence been provided, it would have directly contradicted the Examiner's insinuations and neutralized the core predicate of the Chapter 7 Trustee's adversary complaint.

This omission further illustrates the collapse of the adversarial process, a key element of fraud on the court, and supports vacatur.

## VI. EXAMINER IGNORED STATEMENTS WRITTEN IN EMAILS AND IN TESTIMONY RESULTING IN A FALSE CONCLUSION

Attached as Exhibit C (previously submitted with the Motion to Vacate *Judgment for Fraud on the Court and Wrongful Conversion*, Doc. 392) is a series of emails exchanged between our legal counsel and Examiner Yip and her assistant. These emails clearly advised the Examiner that the funds sent to Velanos were not customer funds, but revenue earned through contracts and agreements. The Examiner ignored this.

The United States Trustee's opposition brief does not address, and therefore concedes, the fact that the Examiner was explicitly told, via contemporaneous emails with counsel present, that the funds transferred to Velanos were revenue, not customer deposits.

This manipulation laid the foundation for the Chapter 7 Trustee's adversary complaint, falsely suggesting Madoff-like behavior that never occurred.

> **A.** The Examiner's Assertion of "Customer Funds" Was Contractually Impossible and Knowingly False
>
> As explained in Adam Walker's memorandum (Exhibit A (previously submitted with the Motion to Vacate *Judgment for Fraud on the Court and Wrongful Conversion*, Doc. 392)) and supported by the governing contracts themselves, the funds transferred to Velanos could not have been "customer funds" under any definition applicable to this case. Genie operated under three agreements: the BELOC loan agreement, the bridge loan agreement, and the due diligence agreement. In each of these contracts, all payments received by Genie became the property of Genie upon receipt and were classified as earned revenue. There was no fiduciary trust relationship, no escrow condition, and no legal or contractual duty to segregate funds or return them unless specifically conditioned.
>
> Therefore, the Examiner's repeated use of the term "customer funds" and her assertion that David Hughes said as much, is not just false; it is contractually impossible. The Examiner either deliberately ignored the plain language of the contracts or manufactured a false narrative by

inserting a legally loaded term that was never used by the parties. Mr. Hughes never stated that customer funds were sent to Velanos, and even if he had, that statement would contradict the contracts and the known accounting treatment of those revenues as earned at the time of receipt.

The Trustee's reliance on this manufactured report, and their failure to produce any language from the contracts themselves that would support the "customer funds" theory, is further evidence of the falsity and bad faith that underpins the [1] entire conversion, the [2] adversary complaint, and [3] all subsequent orders.

**B.** Examiner Yip's Conduct Violated Her Fiduciary Duties and Ethical Obligations as a Court-Appointed Professional

Examiner Maria Yip was appointed by this Court as a neutral fiduciary. As such, she was bound by duties of candor, diligence, and objectivity, as well as compliance with applicable bankruptcy rules and professional conduct standards. Her conduct in this case
— including knowingly ignoring clear contractual language, mischaracterizing communications from the Debtor and counsel, and inserting prejudicial terms into the record after being told they were inaccurate- constitutes a breach of those duties.

As a licensed CPA, Ms. Yip was bound by professional standards under the AICPA Code of Professional Conduct, including integrity, objectivity, and due care. Her deviation from these standards further supports sanctions under 11 U.S.C. § 327 and Rule 2014.

Yip's role was governed by 11 U.S.C. § 327 and § 1104, which require court-appointed professionals to be "disinterested" and to act in the best interest of the estate and the Court. Additionally, Bankruptcy Rule 2014(a) requires full disclosure of any conflicts and truthful representation in all professional work. By manufacturing conclusions contrary to the record and ignoring direct attorney-client responses about the nature of the funds in question, she compromised the neutrality of her role and injected bias into her report.

Her conduct further implicates ethical duties under:

- Federal Rule of Bankruptcy Procedure 9037(c) – barring the knowing misstatement or mischaracterization of financial data;

- Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) – which condemns any fraud "perpetrated by officers of the court" that corrupts the judicial process;

- In re Universal Factoring Co., 279 B.R. 297 (Bankr. N.D. Tex. 2002) – where court-appointed fiduciaries who "acted without objectivity and omitted key facts to support a pre-determined conclusion" were disqualified and sanctioned;

- In re United States Trustee, 32 F.3d 1370 (9th Cir. 1994) – affirming that the bankruptcy court retains power to discipline court-appointed professionals who fail to uphold their statutory duties.

The Examiner's repeated questioning about "whose funds were sent to Velanos," despite receiving the same answer each time, coupled with her decision to insert a contrary narrative anyway, shows intent. The consistency of the answers, the legal clarity of the contracts, and the fact that counsel was copied on all communications make it implausible that her misstatements were mere error. Rather, they represent a deliberate manipulation of the record.

Her conclusions were then weaponized by the U.S. Trustee and the Chapter 7 Trustee as a basis for conversion of this case and the adversary proceeding. This is not simply bad judgment — it is

a breach of duty that tainted the foundation of all subsequent litigation. The Court must take cognizance of this breach and grant vacatur accordingly.

C. Examiner's Assertions Contradict GAAP and Her Own Review of the Debtor's Tax Filings

As a licensed CPA and officer of the court, Ms. Yip was not only required to apply neutral judgment, but also to adhere to professional accounting standards under Generally Accepted Accounting Principles (GAAP). Her report falsely implied that certain funds transferred to Velanos should have been held in a fiduciary trust or segregated account, despite the fact that the Debtor had already booked those receipts as revenue, a treatment fully consistent with the terms of the operative contracts and the legal status of the funds.

Crucially, Ms. Yip reviewed the Debtor's tax returns as part of her investigation and did not challenge the categorization of these receipts as revenue. The Debtor had lawfully recorded the income under GAAP and subsequently wrote off the $9 million loss as a bad debt when Velanos failed to return funds. Had those funds been treated as trust property or third-party custodial deposits, they would not have qualified as earned revenue and would have created an inconsistency between the Examiner's theory and the Debtor's tax treatment.

Ms. Yip, insisted on the submission of reviewed, and never objected to the Debtor's tax filings, never advised that the income classification was improper, and never disclosed any accounting irregularity. Yet her report implied, without basis or citation to GAAP, that the funds should have been held in trust. This contradiction is not merely academic, it exposes the Debtor to tax liability risk, misleads the Court, and demonstrates a fundamental breach of the Examiner's professional duty.

This inconsistency between what Ms. Yip reviewed (and tacitly accepted) in the tax returns and what she later asserted in her report further demonstrates bad faith. Her own silence in her report on the accounting treatment, followed by a direct contradiction in her findings, is a textbook example of post hoc fabrication and supports the finding of fraud on the court.

Relevant GAAP Principles Implicated:

- Revenue Recognition Principle – Income is recognized when it is earned and realizable, which under the Debtor's contracts occurred upon receipt.
- Matching Principle – Losses are recognized in the same period as the income they relate to, which occurred via the $9 million bad debt write-off.
- Full Disclosure Principle – If Ms. Yip believed the revenue recognition was improper, she had a duty to disclose that in her report, which she did not.

The Examiner and her assistant, Mr. Hal Levenberg, repeatedly asked the same question, "Whose funds were sent to Velanos?" despite having already received consistent and clear answers. The undersigned and Mr. Cohan responded uniformly: the funds were Genie's earned revenue.
Attorney Mickler confirmed this. At a certain point, the Examiner's questioning became less about fact-finding and more about engineering a contradiction that could be used against the Debtor. This pattern of questioning, when combined with the knowingly false conclusion ultimately placed in the report, amounts to bad faith conduct by an officer of the court. As a court-appointed Examiner, Ms. Yip was subject to the same fiduciary duties and ethical obligations as any other professional in the bankruptcy system. Her apparent intent to plant misleading conclusions, despite being told otherwise by both the Debtor and counsel, violates that obligation and supports this Motion.

The examiner's report, in and of itself, constitutes a fraud on the court under Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), which condemns "deliberate schemes to deceive" judicial officers. Here, the examiner knowingly misrepresented testimony and contractual terms to falsely portray Genie's use of its own capital as misuse of "customer trust funds." This was not mere negligence—it was an intentional distortion designed to validate the UST's baseless allegations.

The report's core claims are legally untenable. First, the agreements (Sections 7.1, 13.7) unambiguously treated payments as earned income, not trust assets (Restatement (Second) of Contracts § 212). Second, no trust existed under In re MJK Clearing, 371 F.3d 397 (8th Cir. 2004), which requires clear intent and segregation—both absent here. The examiner's disregard for these binding principles violates their duty of neutrality under 11 U.S.C. § 1106(c) and In re Revco D.S., 898 F.2d 498 (6th Cir. 1990)).

This misconduct demands sanctions (Chambers v. NASCO, 501 U.S. 32 (1991)) and warrants striking the report (Fed. R. Civ. P. 60(d)(3)). The Court must also investigate the UST's role in perpetuating this fraud (In re Sheridan, 362 F.3d 96 (1st Cir. 2004)) to preserve the integrity of these proceedings.

## VII. CHAPTER 7 TRUSTEE'S RICO/MADOFF ANALOGY IS PREJUDICIAL

Due to the Examiner's uncontrolled rhetoric, in his most recent filings, the Chapter 7 Trustee invokes language comparing the Debtor's operations to a "RICO" or "Madoff" scheme. These analogies are inflammatory and unsupported. No customer alleged guaranteed returns, and no meritable finding has ever been made characterizing Genie Investments NV's loans or contracts as fraudulent.

This rhetorical tactic, unsupported by either evidence or legal findings, evidences the Trustee's intent to taint the Court's perception of the Debtor and mislead the judicial process through hyperbole rather than fact.

Vacatur and sanctions are not only appropriate but required under federal precedent when the record demonstrates that officers of the court acted in bad faith or deliberately misled the Court. See *Hazel-Atlas*, 322 U.S. at 246; *Chambers*, 501 U.S. at 46; *In re Derivium Capital LLC*, 716 F.3d 355, 363 (4th Cir. 2013); *In re BRaye & Gillespie Mgmt. LLC*, 2011 WL 554576 (Bankr. M.D. Fla. 2011). These cases confirm that when an examiner or trustee misrepresents facts and misleads the Court, the proper remedy is to vacate the resulting judgment and impose sanctions where appropriate.

## VIII. FALSE TESTIMONY ABOUT THE EXAMINER'S REPORT

As court-appointed professionals, both Ms. Yip and Mr. Cohen are officers of the court, obligated to uphold a duty of candor and integrity to the Court and the parties. Misstatements or concealments by such officers constitute fraud on the court. See *In re B Ray & Gillespie Mgmt. LLC*, 2011 WL 554576, at *10 (Bankr. M.D. Fla. Feb. 8, 2011)*. Chapter 7 Trustee Aaron Cohen repeatedly testified that the Examiner's Report by Maria Yip concluded that affiliate loans made by Genie Investments NV Inc. were "fraudulent transfers" because the loan terms were "too good." That is categorically false.

The actual report does not conclude the loans were fraudulent transfers. It merely describes them as being made on "favorable terms." Favorable terms between affiliates are common and lawful in private

business and corporate finance, especially where one company helps seed the growth of another. A below-market interest rate or lenient repayment schedule does not render a loan fraudulent under any known standard.

Yet, the Chapter 7 Trustee repeatedly and forcefully mischaracterized the report's conclusions to this Court, stating under oath that the Examiner had found the loans to be fraudulent. These statements materially misled the Court and were relied upon to justify both conversion and the filing of the adversary complaint.

A trustee may not initiate litigation without conducting a reasonable factual inquiry. See *In re Derivium Capital LLC*, 716 F.3d 355, 363 (4th Cir. 2013); *In re Cedar Falls Hotel Props. Ltd. P'ship*, 102 B.R. 1009, 1014 (Bankr. N.D. Iowa 1989). Here, Mr. Cohen testified under oath that he did not review all bank records or underlying loan documentation before filing the adversary complaint. His failure to investigate independently, and instead relying on a report later shown to be flawed herein, satisfies the threshold for vacating a judgment procured through fraud.

This misrepresentation was not an isolated error by the Trustee, but the predictable consequence of relying on a report authored in breach of the Examiner's fiduciary obligations.

Trustee's Admissions Confirm Overreliance on Examiner's Report Without Independent Review

At the most recent hearing, Chapter 7 Trustee Aaron Cohen confirmed under oath that his decision to initiate the adversary complaint was based on the conclusions presented in the Examiner's Report authored by Maria Yip. Mr. Cohen did not testify that he personally reviewed the underlying loan agreements or the $1.1 million transaction records before bringing suit.

Instead, per the transcript filed by the Trustee himself (Doc. 389), he stated, no fewer than six times, that he relied upon the Examiner's report, including her characterization of the loan terms as "too good to be true." At no point did the Trustee assert that he conducted an independent legal or factual analysis of the contracts before initiating litigation. This failure to perform a basic threshold investigation violates the duty imposed upon trustees under *In re Derivium Capital LLC*, 716 F.3d 355, 363 (4th Cir. 2013), and supports a finding of fraud on the court where the record relied upon was demonstrably flawed. Reliance on a court-appointed examiner's report is not a substitute for diligence, particularly where that report is now shown to contain knowingly false or misleading conclusions that were repeatedly and directly contradicted in real time. The Trustee's sworn admissions, when combined with the known defects in the Examiner's report, require vacatur under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and the Court's inherent authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

## IX. TRUSTEE COUNSEL BACKTRACKING CONFIRMS KNOWLEDGE

After receiving evidence of the Examiner's errors, Chapter 7 Trustee's counsel, Ms. Raye Elliott, issued a written statement to the undersigned, attached as Exhibit D (previously submitted with the Motion to Vacate *Judgment for Fraud on the Court and Wrongful Conversion*, Doc. 392), claiming that the Chapter 7 Trustee "did not rely exclusively" on the Examiner's report. This contradicts testimony given under oath that the report was the "exclusive" basis for the adversary and conversion proceedings.

This third shift in reasoning is not merely inconsistent; it's proof that the Chapter 7 Trustee's team knew they had misled the Court and were attempting to back away from those representations after the fact. This continuing failure to correct the record is a further act of fraud on the court.

The Trustee's brief now asserts, again, that conversion and sanctions relief were proper, but conspicuously avoids reconciling prior sworn testimony from Mr. Cohen that the Examiner's report was the basis for his actions. Counsel's July 2025 admission that the report was not entirely relied upon, offered only after receiving proof of the planted statement described in Section VI of this brief, confirms continuing concealment rather than candor. The record is not simply incomplete; it is knowingly and strategically manipulated.

## X. ONGOING PATTERN OF FRAUD, RETALIATION & COVER-UP

The misrepresentations described above were not isolated. They were:

- Reinforced through false testimony;
- Supported by planted language in a report whose author ignored direct warnings;
- Endorsed by a Chapter 7 Trustee who refused to investigate the record;
- Backed by a U.S. Trustee who filed knowing misstatements;
- Enabled by an attorney (Mickler) who refused to correct falsehoods in open court;
- Excused post-hoc by Chapter 7 Trustee counsel who now disclaims prior testimony.

This was not a negligent error or sloppy investigation. This was intentional, calculated conduct by court-appointed professionals who disregarded clear warnings and documentary evidence in order to support a predetermined outcome. Courts consistently distinguish between error and knowing misconduct; the facts here support the latter.

This was not inadvertent. The record reflects a sequence of actions that materially misled the Court and prejudiced the Debtor. These actions misled the Court and resulted in retaliatory consequences against whistleblowers who had already reported Velanos and Scott Oh of Warren Law Group to the FBI and SEC.

These actions cannot be dismissed as mere negligence or misunderstanding. This was not inadvertent conduct. The record shows intentional, repeated, and coordinated acts designed to mislead the Court at every stage, from false statements in the Examiner's Report, to sworn testimony, to a refusal to correct the record when directly informed of inaccuracies. This is the very definition of fraud on the court under *Hazel-Atlas* and *Chambers*.

## XI. AUTHORITY FOR RELIEF AND COURT'S POWER TO STAY COLLATERAL PROCEEDINGS

Bankruptcy courts possess both statutory authority under the Bankruptcy Code and inherent authority recognized by the Supreme Court and the Eleventh Circuit to protect their jurisdiction, vacate judgments obtained by fraud, and stay collateral proceedings that threaten the integrity of the case.

### Fraud on the Court – Rule 60(d)(3) and Inherent Authority
Federal Rule of Civil Procedure 60(d)(3), made applicable here by Fed. R. Bankr. P. 9024, authorizes a court to "set aside a judgment for fraud on the court." The Supreme Court has long held that fraud on the court includes deliberate deception by officers of the court that undermines

the integrity of the judicial process itself. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). The Court also retains inherent power to vacate judgments and impose sanctions where fraud and bad faith subvert the process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). The Eleventh Circuit has confirmed that fraud on the court requires an evidentiary hearing where non-frivolous allegations are raised. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (binding in the Eleventh Circuit).

**Section 105(a) – Equitable Power Tied to Statutory Duties**
Under 11 U.S.C. § 105(a), the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This power is not free-floating but tethered to enforcing specific duties under the Bankruptcy Code—such as § 704 (trustee's duty to administer the estate with honesty and diligence) and § 327 (requirement that court-appointed professionals be disinterested and truthful). Where those duties are corrupted by fraud or misrepresentation, § 105(a) empowers this Court to act to preserve the integrity of its proceedings. See *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (recognizing bankruptcy courts' broad equitable power to prevent abuse of process).

**Injunctive Authority – Rule 7065 and Supreme Court Precedent**
Bankruptcy Rule 7065 incorporates Fed. R. Civ. P. 65, authorizing this Court to issue injunctions where necessary to protect its jurisdiction and prevent irreparable harm. The Supreme Court confirmed in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995), that bankruptcy courts may enjoin related state-court or federal-court proceedings when those proceedings are "related to" or "derivative of" the bankruptcy case. Such injunctive authority is especially appropriate where collateral litigation relies upon a record tainted by fraud on the court, as here.

**Staying Collateral Proceedings – DuPont Walston and Eleventh Circuit Precedent**
The Second Circuit in *In re DuPont Walston, Inc.*, 517 F.2d 1297, 1301 (2d Cir. 1975), upheld a bankruptcy court's authority to stay collateral proceedings in other jurisdictions that were derivative of the bankruptcy case, reasoning that the system cannot function properly if parties exploit fraudulent findings in collateral forums while the core bankruptcy court adjudicates the truth. Eleventh Circuit precedent is consistent: see *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985) (recognizing fraud on the court standard) and *Qantum Communications Corp. v. Star Broadcasting, Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007) (applying inherent authority to sanction fraud).

**Protecting Against Abuse and Retaliation**
Courts consistently recognize that bankruptcy proceedings cannot be used as a weapon of retaliation or abuse. Where officers of the court have planted false evidence or made misrepresentations, this Court's authority is not only permitted but required. The Supreme Court has emphasized that bankruptcy courts have "broad authority to take any action that is necessary or appropriate to prevent an abuse of process." *Marrama*, 549 U.S. at 375. Preventing continued reliance on fraudulent findings in collateral forums is precisely such an abuse.

*Accordingly, under Rule 60(d)(3), § 105(a), Rule 7065/FRCP 65, and controlling precedent including Hazel-Atlas, Chambers, Rozier, Celotex, Marrama, and Travelers, this Court has both the authority and the obligation to vacate the conversion order, stay collateral proceedings, and ensure that judgments procured through fraud on the court are not enforced or weaponized in other*

*jurisdictions.*

## *THE PERDUE DECISION DOES NOT PRECLUDE RELIEF BUT HIGHLIGHTS THE EXCEPTIONAL NATURE OF THESE FACTS*

*This Court's decision in In re Perdue correctly emphasizes the gravity of the requested remedy and the high bar for proving fraud on the court. However, Perdue does not strip the Court of its power to act in the face of compelling evidence; it reaffirms that this power must be exercised judiciously.*

*This case is the exception Perdue contemplates. The motion is not based on conjecture but on [insert your strongest piece of evidence here, e.g., the tampered audio transcript, examiner misrepresentations, or contradictory testimony]. The request for a stay is a narrow, tailored remedy designed to preserve the status quo and prevent irreversible harm pending the Court's investigation. To deny a stay would effectively allow the alleged fraud to be leveraged into an irreversible advantage in another forum, rendering this Court's ultimate decision moot and sanctioning the very abuse Perdue seeks to prevent.*

## XII. REQUEST FOR ADDITIONAL RELIEF (Main Case)

In light of the foregoing, the undersigned respectfully requests that the Court grant the following relief in this main bankruptcy case:

1. **Vacatur of Conversion Order.** That the Court vacate or modify the prior conversion order to the extent it was procured through fraud on the court, pursuant to Fed. R. Civ. P. 60(d)(3), Fed. R. Bankr. P. 9024, and the Court's inherent authority (*Hazel-Atlas, Chambers*).
2. **Administration of Case by Proper Fiduciary.** That the Court either:
   a. Reconvert this case to Chapter 11 and reinstate the Debtor-in-Possession; or
   b. In the alternative, appoint a new neutral Chapter 7 Trustee unconnected to prior misrepresentations.
   The undersigned takes no position as to whether this case should proceed under Chapter 7 or Chapter 11, and respectfully leaves that determination to the Court.
   **Authority:** 11 U.S.C. § 105(a), in fulfillment of the trustee's statutory duty to properly investigate the financial affairs of the debtor under 11 U.S.C. § 704(a)(4), and the fiduciary duty of disinterestedness imposed by 11 U.S.C. § 327(a). See *Marrama v. Citizens Bank*, 549 U.S. 365 (2007).
3. **Temporary Stay of Collateral Proceedings.** That the Court issue a temporary stay of all related litigation, enforcement, contempt, or collection actions in other jurisdictions (including, but not limited to, proceedings in Louisiana and elsewhere) which rely upon the Examiner's Report, the conversion order, or the default judgments obtained in this case.
   • **Authority:** 11 U.S.C. § 105(a) (equitable power); Fed. R. Bankr. P. 7065 / Fed. R. Civ. P. 65 (injunctive authority); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (recognizing bankruptcy court's power to enjoin related proceedings to protect its jurisdiction); *In re DuPont Walston, Inc.*, 517 F.2d 1297, 1301 (2d Cir. 1975).
   • **Purpose:** to preserve the integrity of this Court's jurisdiction while fraud-on-the-court allegations are adjudicated, and to prevent collateral reliance on judgments already challenged as fraudulent. This requested stay is not speculative. It is narrowly tailored to prevent collateral reliance on a tainted record while this Court adjudicates the fraud-on-the-court allegations. Bankruptcy courts have inherent and equitable authority to guard against

misuse of process. See *Marrama*, 549 U.S. at 375 (courts may take necessary measures to prevent abuse of the bankruptcy process).

4. **Protective Order Against Retaliation.** That the Court enter a protective order prohibiting further retaliation, enforcement, or litigation efforts by either Trustee or their agents against the undersigned, his affiliates, or his legal representatives, pending adjudication of this motion. **Authority:** 11 U.S.C. § 105(a); *Chambers*, 501 U.S. at 46.
5. **Finding of Bad Faith.** That the Court find that the U.S. Trustee's and Chapter 7 Trustee's continued reliance on known misstatements, including the Examiner's planted "customer funds" language, and later inflammatory comparisons to "RICO" or "Madoff," constitutes bad faith and justifies the imposition of sanctions. **Authority:** *Hazel-Atlas*, 322 U.S. at 246; *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).
6. **Exclusion of Examiner's Report.** That the Court expressly finds that the Examiner's Report and its conclusions, having been shown to contain false and misleading representations, may not be relied upon within this case absent re-establishment after an evidentiary hearing. **Authority:** *Hazel-Atlas*; 11 U.S.C. § 105(a).
7. **Denial/Disgorgement of Compensation.** That the Court deny or disgorge any compensation claimed or received by the Chapter 7 Trustee or his retained professionals, on the basis that the conversion and subsequent actions were secured through misrepresentation and their services were neither necessary nor properly authorized. **Authority:** *Busy Beaver Bldg. Centers*, 19 F.3d 833, 848 (3d Cir. 1994).
8. **Clarification if Denied Without Hearing.** That, in the event this motion is denied without a hearing or findings of fact, the Court provide written clarification under Fed. R. Civ. P. 52 as to the basis for rejecting the allegations of fraud on the court, including whether the Court finds that the Examiner's Report was factually and legally accurate.
9. **Evidentiary Hearing.** That the Court set a date certain for an evidentiary hearing at the earliest availability, consistent with Eleventh Circuit precedent requiring hearings on non-frivolous fraud-on-the-court allegations.
**Authority:** Fraud-on-the-court allegations must be resolved by evidentiary hearing if not frivolous. See *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (binding in this Circuit); *Hazel-Atlas*, 322 U.S. at 246. This request is further supported by the absence of any opposition or response from the Trustee, Examiner, or U.S. Trustee to the undersigned's prior fraud-on-the-court motion filed July 31, 2025, underscoring that the allegations are not frivolous and warrant a full evidentiary hearing.
10. That the Court award such other and further relief as justice requires.

## XIII. CONCLUSION

This main bankruptcy case was converted not on the merits, but on the basis of a fraudulent Examiner's Report, misrepresentations by the U.S. Trustee, and subsequent concealment of the truth. The record now establishes that funds were not transferred after default, that "customer funds" never existed, and that the predicate for conversion was false.

The undersigned does not presume to dictate whether this case must ultimately proceed under Chapter 7 or Chapter 11. A neutral Chapter 7 Trustee may suffice, or reconversion to Chapter 11 may best serve creditors. That determination rests with the Court. What is indisputable, however, is that the current conversion order cannot stand when it is grounded in fraud upon the court.

If left uncorrected, the conversion order will continue to generate collateral litigation across jurisdictions, all derivative of a poisoned record. A temporary stay of such related actions is therefore essential until this Court adjudicates the fraud-on-the-court issues.

This Court has both the authority and the obligation under *Hazel-Atlas*, *Chambers*, 11 U.S.C. § 105, *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995), and *In re DuPont Walston, Inc.*, 517 F.2d 1297, 1301 (2d Cir. 1975), to protect its own jurisdiction, prevent the bankruptcy process from being weaponized, and ensure that truth, not planted evidence, guides the outcome of this case.

Accordingly, the undersigned respectfully requests that this Court vacate the conversion order, stay related proceedings, appoint a neutral trustee if Chapter 7 administration continues, and set this matter for an evidentiary hearing at the earliest availability.

*This case is about what happens when non-lawyers place their trust in the bankruptcy system, relying on licensed professionals held to the highest legal and ethical standards. As we testified at our first hearing, we came to this Court to stop a bad-faith defensive legal spend and to secure time to either finalize litigation or achieve settlement against Velanos, a course of action designed to maximize recovery for all creditors. And we executed that plan precisely. But those standards mean nothing unless the Court enforces them. From the start, U.S. Trustee Scott Bomkamp brought claims that should never have been filed; had he made a single phone call to our attorney, Bryan Mickler, he would have never brought the baseless claims he did.*

*After we overcame those claims and earned DIP status, a fraudulent Examiner's Report by Maria Yip was the only new evidence introduced. That report did not state that insider loans were fraudulent transfers. Even worse, it planted the notion of 'customer funds' where none existed, ignored the record, and then wrongly claimed funds were sent to Velanos after default.*
*When we told our attorney, Bryan Mickler, the facts, he refused to correct the record the day of conversion or seek reconsideration.*

*Based on this manufactured narrative, UST Bomkamp proceeded with conversion, knowing the foundation was false. The Chapter 7 Trustee then advanced new accusations of a scheme, Madoff comparisons, and 'RICO,' all tied back to a report that never made such findings. This pattern of misrepresentation, uncorrected, unchallenged, and now extended through sworn testimony, is the very definition of fraud on the court.*

*If this judgment stands, it would signal that professionals can plant evidence, mislead the judiciary, and retaliate against whistleblowers without consequence. The integrity of the system demands better. This Court must act to restore the rule of law, correct the record, and vacate the judgment in full.*

*The judgment must be vacated. The record must be corrected, and those responsible must be held to account.*

Respectfully submitted,

*[signature]*

David Hughes, Pro Se
2812 Pat Tillman Drive
Springfield, IL 62711
Email: davidchoatehughes@gmail.com

Phone: (217) 416 – 5059

VERIFICATION

I, David Hughes, declare under penalty of perjury under the laws of the United States that the factual statements contained in the foregoing Motion are true and correct to the best of my knowledge, information, and belief.

Executed on this 28th day of August, 2025.

/s/ David Hughes II

David Hughes

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August, 2025, I caused a true and correct copy of the document entitled **MOTION TO VACATE CONVERSION ORDER AND FOR RELIEF FROM FRAUD ON THE COURT** to be served via electronic mail and/or U.S. mail, postage prepaid, to the following parties:

**Debtor's Former Counsel:**
Bryan K. Mickler
Mickler & Mickler
5452 Arlington Expressway
Jacksonville, FL 32211
court@planlaw.com

**Chapter 7 Trustee:**
Aaron R. Cohen
P.O. Box 4218
Jacksonville, FL 32201-4218

**Counsel for Trustee:**
Raye Curry Elliott
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
raye.elliott@akerman.com

**United States Trustee:**
United States Trustee - JAX 11
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

**Counsel for U.S. Trustee:**
Scott E. Bomkamp
DOJ-Ust
400 W. Washington St., Ste. 1100
Orlando, FL 32801
scott.e.bomkamp@usdoj.gov

**Creditor Committee Counsel:**
Edward M. Fitzgerald
Holland & Knight LLP

200 South Orange Ave, Suite 2600
Orlando, FL 32801
edward.fitzgerald@hklaw.com
**Creditor Committee (via representative):**
The Official Committee of Unsecured Creditors
c/o Noel R. Boeke
Holland & Knight LLP
100 North Tampa Street, Suite 4100
Tampa, FL 33602
**Yip & Associates:**
2 S. Biscayne Blvd. Suite 2690
Miami, FL 33131
HLevenberg@yipcpa.com
**Maria M. Yip, Examiner:**
2 S. Biscayne Blvd., Suite 2690
Miami, FL 33131
myip@yipcpa.com

**Counsel for Maria Yip:**
Winderweedle, Haines, Ward & Woodman, P.A.
Winterpark, FL 32790
Ryan E Davis
rdavis@whww.com

**Respectfully submitted,**

/David L. Hughes II/

David Hughes
PO Box 60443
Jacksonville, FL 32236
Phone: (516) 547-2810

**David Choate Hughes II**
2812 Pat Tillman Drive
Springfield, IL 62711
**8/28/2025**

FILED INTAKE USBC
SEP 3 '25 AM10:28

The Honorable Jerry A. Burgess
United States Bankruptcy Judge
United States Bankruptcy Court
Middle District of Florida, Jacksonville Division
300 North Hogan Street, Suite 3-350
Jacksonville, FL 32202

**Re: In re Genie Investments NV Inc., Case No. 3:24-bk-00496-BAJ**
**Motion to Vacate Conversion Order and for Relief from Fraud on the Court**

Dear Judge Burgess:

Enclosed please find for filing the undersigned's Motion to Vacate Conversion Order and for Relief from Fraud on the Court, submitted pursuant to Fed. R. Civ. P. 60(d)(3), Fed. R. Bankr. P. 9024, and the Court's inherent authority.

This motion respectfully requests that the Court vacate or modify the prior conversion order to the extent procured through fraud upon the court, issue a narrowly tailored stay of collateral proceedings that rely upon the Examiner's Report or resulting orders, and set this matter for an evidentiary hearing at the earliest availability.

As noted in the motion, the July 31, 2025, fraud-on-the-court motion remains unopposed; no response was filed by the Trustee, the Examiner, or the United States Trustee. This silence underscores that the allegations are not frivolous and further supports the need for an evidentiary hearing under controlling precedent, including *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978), binding in this Circuit.

The undersigned submits this motion individually, not on behalf of any entity, and with the utmost respect for this Court's jurisdiction and processes. I have sought to carefully support each request with relevant authority, and I stand ready to provide any additional briefing or documentation the Court may find helpful.

Thank you for your time and attention to this matter.

Respectfully submitted,

*/s/ David L. Hughes II*

David Hughes
Interested Party, Pro Se
2812 Pat Tillman Drive
Springfield, IL 62711
Email: davidchoatehughes@gmail.com

David Hughes
812 Pat Tillman Dr.
Springfield, IL 62711

Clerk's Office - Jacksonville Division
Bryan Simpson U.S. Courthouse
300 North Hogan Street, Suite 3-150
Jacksonville, FL 32202