**ORDERED.**

**Dated:  September 30, 2025**

Jason A. Burgess
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC.,                    Case No.: 3:24-bk-00496-BAJ

        Debtor.                                              Chapter 7

_____/

**ORDER GRANTING TRUSTEE'S MOTION TO ENFORCE
AUTOMATIC STAY AND DENYING WITH PREJUDICE
EQUITY HOLDERS' MOTIONS FOR SANCTIONS**

This Case came before the Court for trial on June 24, 2025, on the *Motion to Enforce Sanctions* (Doc. 296) (the "Motion to Enforce"), filed by the Chapter 7 Trustee (the "Trustee"), the *Motion for Sanctions Against the Trustee, Akerman LLP, Aaron Cohen, and Raye Elliott for Bad Faith Litigation, Abuse of Process, Suppression of Exculpatory Evidence, Retaliation, and Breach of Fiduciary Duty* (Doc. 322) (the "Sanctions Motion against Trustee"), filed by John Michael Cohan ("Mr. Cohan"), and David Hughes ("Mr. Hughes") (collectively, the "Equity Holders"), and the *Motion for Sanctions Against Raye C. Elliott & Akerman LLP for Violation of Bankruptcy Stay*

*and Bad Faith Litigation* (Doc. 325) (the "Sanctions Motion against Counsel") (collectively, the "Motions for Sanctions"), filed by the Equity Holders.  At the conclusion of the trial, the Court took the matters under advisement and directed the parties to submit post-trial briefs.[1]  For the reasons discussed herein, the Court will grant the Motion to Enforce and deny the Motions for Sanctions with prejudice.

## Background

On February 1, 2024, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.  Almost six months later, the case was converted to Chapter 7, and the Trustee was appointed to administer the estate.  The Equity Holders are the former principals of the Debtor, with each owning a 50% interest.  As described in detail below, the instant dispute arises out of a settlement agreement entered into by the Debtor, which was subsequently amended to substitute the Trustee when the case was converted, and a potential malpractice claim listed by the Debtor on its schedules against its former counsel.

### I.    Velanos Litigation & Settlement Agreement

Prior to the conversion of the case, the Debtor filed a Motion to Approve Settlement Agreement between Genie Investments, NV, Inc. and Velanos Principal Capital ("Velanos").[2]  Post-conversion, the settlement agreement was amended to substitute the Trustee in place of the Debtor.[3]  On October 24, 2024, the Court entered an Order Granting the Compromise Motion and Approving the Settlement Agreement (the "Settlement Agreement").[4]  Slightly over two months later, Velanos defaulted on the Settlement Agreement by failing to make the December 31, 2024

---

[1]  See Trustee's brief (Doc. 388), Cohan's brief (Doc. 390).

[2] Doc. 372 - Ex. 1.

[3] Doc. 372- Ex. 2.

[4]  Doc. 257.

settlement payment.   In response, the Trustee filed a Complaint of Arbitration Award against Velanos (the "Velanos Proceeding")[5] in which the Trustee sought to confirm an arbitration award which was entered as part of the Settlement Agreement against Velanos.  On March 4, 2025, the Court entered a final judgment (the "Judgment")[6] that (i) confirmed the arbitration award in favor of the Debtor, and (ii) entered a $20 million dollar judgment against Velanos.[7]

The Equity Holders then filed a complaint seeking damages for breach of the Settlement Agreement against Velanos, its principal, Joshua Wearmouth, and others (the "Velanos Action") in the Circuit Court in and for Duval County (the "State Court").[8]  The Velanos Action was brought independently of the Trustee's administration of the bankruptcy estate.  Notably, the Equity Holders' claims in the Velanos Action all arise directly out of Velanos' breach and default of the Settlement Agreement.  The Trustee maintains that he has exclusive standing to pursue such claims because each count in the Velanos Action has a direct correlation to the resulting injury Velanos caused by breaching the Settlement Agreement.[9]

## II.    The Debtor's Claims Against Warren Law

The Trustee also asserts that he has exclusive standing to pursue the potential malpractice claim listed by the Debtor on its schedules against its former counsel, Warren Law.[10]  In performing

---

[5] Adv. Pro. 3:25-ap-0007-BAJ.

[6] Doc. 372 – Ex. 4.

[7] The Trustee domesticated the Judgment in California (where Velanos' principal lives), served written discovery directed to Velanos, and conducted a bank account search to locate Velanos' bank accounts. However, no bank accounts were found. (Tr. at 12:22-25; 13:1-9).

[8] Trustee's Ex. 3.

[9] The counts in the Velanos Action are as follows: Count One is a breach of contract claim arising out of Velanos' breach of the Settlement Agreement; Count Two is a claim for fraudulent misrepresentation arising out of the allegedly false and misleading statements Velanos made as to its finances and ability to comply with the Settlement Agreement; and Count Three is a claim for unjust enrichment arising out of Velanos' retention of the $9 million the Debtor invested with Velanos.  Id.

[10] Doc. 39, p. 13.

his due diligence, the Trustee contacted the malpractice attorney, Mr. Spigner, the Debtor had hired prior to the case being converted to Chapter 7.[11]  At the hearing, the Trustee testified that during their conversation Mr. Spigner informed him of the following: (i) a demand for mediation, as required pursuant to the Debtor's engagement agreement with Warren Law, was filed, but a mediator had not yet been appointed, (ii) Mr. Spigner stated that while he had been involved in several attorney malpractice claims, none had been tried to verdict, and (iii) Mr. Spigner declined the Trustee's request to handle the malpractice claim on a fully contingent basis.[12]  The Trustee then proceeded to interview other legal malpractice attorneys who were located in New York, where the mediation and arbitration would take place, who were willing to take the case on a fully contingent basis, and had litigated a legal malpractice case to verdict.[13]

Additionally, the Trustee testified that he has not yet retained counsel to handle the malpractice claim because the estimates to litigate the claim ranged from $350,000 to $500,000, and the consensus of the legal malpractice attorneys he interviewed is that the claim would be a very difficult case to prove.[14]  Based on these considerations, the Trustee testified that he has opted to engage in settlement negotiations with the attorneys for Warren Law.[15]

Despite the Trustee's actions to prosecute the malpractice claim, the Equity Holders filed a "Complaint for Legal Malpractice, Negligence, Breach of Fiduciary Duty, Bad Faith, Fraud, Coercion, and Extortion" in the United States District Court, for the Middle District of Florida,

---

[11] Tr. at 5:13-20.

[12] Trustee's Ex. 4; Tr. 5:21-25; 6:1-14; 7:4-8.

[13] Tr. at 7:9-19, 7:20-8:10.

[14] Tr. at 8:18-9:2, 9:9-14.

[15] The Trustee has secured a tolling agreement from Warren Law that tolls the statute of limitations for the malpractice claim.  (Tr. at 9:6-8; 22-25).

Jacksonville Division (the "Warren Action")[16] against the successor in interest to the Warren Law Group and its attorney, Scott Oh.[17]

### III.    The Equity Holders' Motions for Sanctions

The Equity Holders maintain that sanctions should be imposed upon the Trustee based on the following: (i) the cease-and-desist letter the Trustee sent to them asserting the legal malpractice claims against Warren Law belonged to the bankruptcy estate, and (ii) the demand letters the Trustee sent to Better Methods, LLC, Capitulum, LLC, Genie Investments, LLC, Genie's Angels, LLC, and Zoomeral, Inc. (collectively, the "Insider Companies") for the recovery of transfers made by the Debtor to these companies.[18]

In response, the Trustee maintains that he sent the cease-and-desist letter to the Equity Holders as part of his statutory duty to protect property of the estate and because the Equity Holders were violating the automatic stay.[19]  With respect to the demand letters to the Insider Companies, the Trustee testified that he did so to give the companies ten (10) days to respond prior to filing an adversary proceeding.[20]  The Trustee also testified that he always intended to sue the Insider Companies for the recovery of the alleged fraudulent transfers made by the Debtor and that he had a basis for doing so based upon the Chapter 11 Examiner's Report, the loan documents with the Insider Companies, and his review of the Debtor's bank records.[21]  The Trustee adamantly maintains that every action he has taken in this case has been in furtherance of performing his

---

[16] Case No. 3:25-cv-164-HES-MCR.

[17]  Scarinci Hollenbeck, LLC is the successor in interest to Warren Law Group and Scott Oh.

[18] Cohan's Exs.  A-F.

[19] Tr. at 22:18-23:1.

[20] Tr. at 23:4-9.

[21]  Tr. at 39:21-24; 40:8-11; 41:13-17; 41:23-42:4.

statutory duties as the Chapter 7 Trustee, and therefore solely within an official capacity.[22] Additionally, the Trustee testified that all actions taken by his attorney and her law firm, were carried out at his direction.

### Analysis

The first determination the Court must make is whether the Equity Holders' causes of action against Velanos and Warren Law are property of the estate, which in turn would make the Equity Holders' attempts to pursue such causes of action a violation of the automatic stay.  As set forth below, the Court finds the causes of action are clearly property of the estate, and the Equity Holders' actions violated the automatic stay.

"The bankruptcy estate is created to facilitate a centralized administration of all assets of a debtor and all claims against the debtor"[23]  Specifically,

> The purpose of bankruptcy law is to address the collective-action problem that a bankruptcy poses. When a company's liabilities exceed its ability to pay creditors, every creditor has an incentive to maximize its own recovery before other creditors deplete the pot. Without a mandatory collective system, the creditors would race to the courthouse to recover first. One or a few successful creditors could then recover substantial funds, deplete the assets, and ... leav[e] other creditors with nothing.[24]

Essentially, "[t]he bankruptcy system works to preserve a bankrupt company's limited assets and to then fairly and equitably distribute those assets among the creditors."[25]

As correctly noted by another court in this district, "[t]he tool that effects this centralization anticipated by the Bankruptcy Code is the automatic stay, as set forth in 11 U.S.C. § 362."[26]  The

---

[22] The Trustee has served as a Chapter 7 Trustee for almost three decades.

[23] In re Ctr. for Special Needs Tr. Admin., Inc., No. 8:24-BK-00676-RCT, 2025 WL 2409180, at *3 (Bankr. M.D. Fla. July 15, 2025).

[24] Harrington v. Purdue Pharma L.P.,144 S. Ct. 2071, 2090 (2024) (Kavanaugh, J., dissenting) (internal citations omitted).

[25] Id. at 2088.

[26] Special Needs Tr. Admin, 2025 WL 2409180, at *3.

application of the automatic stay is broad and applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[27]

Pursuant to 11 U.S.C. Section 541(a)(1), property of the estate is comprised of all legal or equitable interests of the debtor in property as of the inception of the case wherever located and by whomever held.[28]  Property of the estate also encompasses any cause of action that a debtor has when the case is initially filed.[29]  This means that any claims the Debtor has against Velanos and Warren Law are property of the bankruptcy estate and are protected by the automatic stay.[30]  Further, when the Case was converted from Chapter 11 to Chapter 7, the Chapter 7 Trustee, upon being appointed, assumed control of the business, resulting in the Equity Holders being "completely ousted."[31]  Indeed, the Court has already found that the Equity Holders have had no authority to act on behalf of the Debtor since the conversion of the case.[32]  As recognized by the Eleventh Circuit, a Chapter 7 trustee "stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy."[33]  In other words, "[i]f a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim."[34]

The facts are clear.  The Trustee and Velanos entered into the Settlement Agreement which Velanos breached, and the Trustee is now actively working to recover a judgment against Velanos

---

[27] 11 U.S.C. § 362(a)(3).

[28] See In re Dorand, 95 F.4th 1355, 1363 (11th Cir. 2024).

[29] In re Melbourne Beach, LLC, 2019 WL 10734362, at *2 (Bankr. M.D. Fla. Oct. 9, 2019) (citations omitted).

[30] See In re Fundamental Long Term Care, Inc., 500 B.R. 147, 149 (Bankr. M.D. Fla. 2013) ("Bankruptcy Code § 541—as well as 28 U.S.C. § 1334—gives this Court exclusive jurisdiction over property of the estate.").

[31] Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352–53 (1985).

[32] Doc. 422.

[33] O'Halloran v. First Union Nat'l Bank of Fla., 350 F.3d 1197, 1202 (11th Cir. 2003).

[34] Mennen v. Onkyo Corp., 248 F. App'x 112, 113 (11 Cir. 2007).

based upon the breach of the Settlement Agreement.  The claims asserted by the Equity Holders are either identical to or derivative of the claims the Trustee holds against Velanos.  Simply stated, the Equity Holders are not creditors of the Debtor but former principals who filed a Motion for Court Recognition of Resignation as Debtor Representative, which the Court granted in part.

As to the Warren Action filed by the Equity Holders, the analysis is equally straightforward. The Trustee clearly has exclusive standing to pursue the potential malpractice claim listed by the Debtor on its schedules against Warren Law.   Further, the facts reflect that the Trustee covered multiple bases in performing his due diligence.  This included contacting the malpractice attorney the Debtor hired prior to the case being converted to Chapter 7, interviewing legal malpractice attorneys located in New York who were willing to take the case on a fully contingent basis, and had litigated a legal malpractice case to verdict.[35]  The Trustee also testified that because the estimates to litigate the claim ranged from $350,000 to $500,000, and the consensus of the legal malpractice attorneys he interviewed was that the claim would be a very difficult case to prove, that he opted to engage in settlement negotiations with the attorneys for Warren Law.[36]

Since the conversion of the case to Chapter 7, the Equity Holders have consistently and adamantly resisted requests to cooperate with the Trustee.  The applicable bankruptcy law dictates that the Equity Holders' actions to pursue any claims the Debtor has against Velanos and Warren Law are in direct violation of the automatic stay and are antithetic to the "centralized administration of all assets of a debtor and all claims against the debtor" as envisioned under the Bankruptcy Code.[37]

---

[35] Tr. at 5:21-25; 6:9, 6:12-14; 7:4-8; 7:9-19, 7:20-8:10.

[36]  Tr. at 8:18-9:2, 9:9-14.

[37] Special Needs Tr. Admin., 2025 WL 2409180, at *3.

### B.    The Motions for Sanctions

With respect to the Motions for Sanctions, the Court does not find even a shred of validity to the various allegations made by the Equity Holders against the Trustee or the attorney for the Trustee.  The Trustee is under a statutory duty to administer the assets of the bankruptcy estate. There is no evidence of any "retaliatory" actions taken by the Trustee against the Equity Holders. The record does, however, showcase a plethora of examples in which the Equity Holders have seemingly targeted the Trustee for simply attempting to carry out his statutory duties.  Unarguably, the Equity Holders do not agree with the Trustee's administration of the estate because, in their view, such actions are against their personal best interests.  The fact that the estate's interests diverge from the Equity Holders' interest should be no concern to the Trustee.

Moreover, the Trustee is entitled to qualified immunity because every single action the Trustee has taken has been in his official capacity as the Chapter 7 trustee for the bankruptcy estate. "As a general rule, bankruptcy trustees are entitled to qualified judicial immunity for acts taken within their authority as an officer of the court."[38]  The scope of "immunity applies even if a bankruptcy trustee acts in error, maliciously, or in excess of the appointing court's jurisdiction.[39]

It is well settled that in performing their statutory duties, bankruptcy trustees are acting solely within an official capacity.[40]  Because bankruptcy trustees are not acting in a personal capacity when administering a bankruptcy estate, they are not personally liable for action they take

---

[38] In re Solar Fin. Servs., Inc., 255 B.R. 801, 803 (Bankr. S.D. Fla. 2000); see also Royal Ins. Co. v. P.S.I. Agency, Inc. (In re Clearwater Bay Marine Service), 236 B.R. 285 (Bankr. M.D. Fla. 1999) (bankruptcy trustees have derived judicial immunity when working within the realm of their authority or pursuant to a court order).

[39] Juravin v. Fla. Bankr. Tr., No. 22-11356, 2024 WL 4677417, at *6 (11th Cir. Nov. 5, 2024); see also Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000).

[40] See Woodroffe v. Waage, No. 8:18-CV-1437-T-36, 2019 WL 4644425, at *5 (M.D. Fla. Sept. 24, 2019).

while performing their duties.[41]  Further, "trustees enjoy derived judicial immunity provided that they are acting within the scope and on authority and pursuant to an order of the court."[42] Likewise, the Trustee's attorney and her law firm, whose actions were carried out at the direction of the Trustee, are also entitled to qualified immunity.[43]

Therefore, the Trustee and the attorney for the Trustee enjoy quasi-judicial immunity, and nothing in the Sanctions Motions demonstrates that the relief sought by the Equity Holders against the Trustee or his counsel is proper because the Trustee has unequivocally acted within his official capacity while administering the estate.  Based on the Trustee's and his counsel's quasi-judicial immunity, the Court will deny the Sanctions Motions with prejudice.

## Conclusion

Since the filing of the case, the Court has spent a prolific amount of time digesting the various layers of complexity and has listened intently to all interested parties.  The Court is cognizant of the Equity Holders' position and their passion for wanting to independently prosecute the injustices they allege against Velanos and Warren Law.  The very mechanisms that make the Chapter 7 process work in the best interests of the estate, however, do not permit the Equity Holders to do so.  Therefore, the Court finds the Equity Holders' actions are in clear violation of

---

[41] In re Solar Fin. Servs., Inc., 255 B.R. 801, 805 (S.D. Fla. 2000).

[42] Clearwater Bay, 236 B.R. at 287.

[43] See Juravin, 2024 WL 4677417, at *6 (recognizing that the protection afforded to trustees "would be meaningless if it could be avoided by simply suing the Trustee's attorneys.") (quoting In re DeLorean Motor Co., 991 F.2d 1236, 1241 (6th Cir. 1993) (holding that counsel for trustee are the functional equivalent of a trustee, when "they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."); Matter of Ondova Ltd. Co., 914 F.3d 990, 993 (5th Cir. 2019) (recognizing that qualified immunity extends to the attorneys for a trustee under a derivative theory of judicial immunity); In re Foster, No. 12-43804-ELM, 2020 WL 6390671, at *15 (Bankr. N.D. Tex. Oct. 30, 2020), aff'd sub nom. Matter of Foster, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023) (bankruptcy trustee's attorneys employed with court approval were entitled to immunity from suits).

the automatic stay because the Settlement Agreement and the Warren Law claims the Trustee seeks to enforce are property of the bankruptcy estate.  Accordingly, it is

**ORDERED:**

1. The Motion to Enforce is Granted.

2. The Equity Holders' causes of action against Velanos and Warren Law are property of the estate and the pursuit of such causes of action constitute a violation of the automatic stay under 11 U.S.C. Section 362.

3. The Court will not assess monetary damages against the Equity Holders at this time but reserves the right to do so.[44]

4. The Sanctions Motions against the Trustee are Denied with Prejudice.

---

[44] See In re Micron Devices, Inc., No. 24-11215, 2025 WL 2449469, at *3 (11th Cir. Aug. 26, 2025) (recognizing that a bankruptcy court may rely on its "inherent authority" to impose sanctions against a pro se debtor).