FILED INTAKE USBC
OCT 7 '25 PM2:01

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re: Genie Investments NV Inc., Debtor.
**Case No. 3:24-bk-00496**
Chapter 7

## LIMITED OBJECTION AND MOTION FOR CONTINUANCE REGARDING TRUSTEE'S PROPOSED SETTLEMENT WITH CALEB DAVIS (Doc. 427)

Comes now, the creditor, Charles Blake Stringer, appearing pro se : under Fed. R. Bankr. P. 9010(b), respectfully submits this Limited Objection and Motion for Continuance to the Trustee's Motion to Approve Compromise with Caleb Davis (Doc. 427). Mr. Stringer appears pro se temporarily and states that he is in the process of retaining counsel on his own behalf and with the majority-aligned creditor group who concur in the relief requested herein. This Objection seeks not to obstruct administration, but to ensure fairness, transparency, equal treatment of creditors, and preservation of rights pending essential discovery and accounting.

Furthermore, the undersigned respectfully submit that discovery in this case remains materially incomplete. Multiple compliance orders have been entered by this Court and remain unfulfilled by Messrs. Hughes and Cohan, who have failed to produce the documents and communications repeatedly requested by both the Trustee and the creditor group. Critical records—including financial transfers between the multiple Genie entities, correspondence surrounding the alleged assignments of loan contracts, and account-level data from banking institutions—have never been produced or placed before the Court. Until these discovery deficiencies are cured, no settlement or release can be justly considered, as the factual record is neither developed nor verified.

In addition, the principals' unilateral claims that their companies have been "dissolved" and that they are no longer liable as officers or shareholders are legally invalid and serve only to evade accountability. Under 11 U.S.C. § 362 and § 541, a debtor or its insiders may not dissolve or wind up an estate entity without prior court authorization, and any such attempt is void. These actions, coupled with the pending threats of individual bankruptcy filings to obtain dischargeability, demonstrate an ongoing effort to obscure discovery, frustrate the trustee's duties under § 704(a)(1), and hinder the creditors' lawful right to recovery.

The undersigned therefore urge this Court to withhold approval of the proposed settlement and require that all outstanding discovery, subpoenas, and compliance directives be completed in full before any further consideration of releases or compromises. As it stands, the Court and the estate are operating without a verified record of assets, transfers, or corporate continuity, leaving both the creditors and the Trustee in an untenable position of uncertainty.

1

## I. STANDING, APPEARANCE, AND INTENT TO RETAIN COUNSEL

1. **Standing.** Mr. Stringer personally filed an unobjected Proof of Claim in this case in two capacities, and therefore has standing to appear pro se as a party in interest under Fed. R. Bankr. P. 9010(b).

2. **Intent to Retain Counsel.** Mr. Stringer and the organized creditor group are actively engaging bankruptcy counsel to appear for them collectively. This filing is made to preserve rights and request a short continuance so that counsel may be retained and discovery coordinated.

3. **Purpose.** The relief requested is a modest pause and targeted disclosures so the Court can be assured any settlement is, in fact, "fair and equitable" and in the best interests of creditors.

## II. BACKGROUND (CONDENSED)

4. **Undisputed operating reality.** It is an undisputed fact—based on the docket, Examiner Maria Yip's findings, and the record—that the debtor and affiliated "Genie" entities operated without any legitimate third-party capital provider. No verified outside lender, credit facility, or institutional source funded "Genie" lending. Creditor deposits were recycled among insiders and later investors, creating the appearance of lending activity. The United States Attorney has characterized the "operation as a Ponzi-style scheme involving fraudulent transfers"** (Ex. A), and the Examiner described circular movement of investor funds among Genie entities and insiders ** (Ex. B).

5. **Record integrity concerns.** There are multiple proven discrepancies and sworn misstatements spanning the Debtor's schedules and statements since the first filing—concerning the number of affiliated entities, the origin and ownership of funds, and any supposed third-party financing. These defects undermine confidence that a settlement can be evaluated as "fair" without further discovery and factual correction.

6. **Common funding channel & assignments.** Funds from numerous creditors—including Mitchell Mims with Mims-IPR LLC and another Creditor Relco Industries LLC—were deposited into the very same bank account (confirmed by matching deposits in the same bank account numbers) this was an attorney's IOLTA trust account held in the name of Michael Connor Esq. To date there is no evidence as to Title/style of the account, and the full transfer path from that IOLTA trust bank account into the present debtor named in this Bankruptcy Court -Genie Investments NV Inc.,currently have not been verified on the record. The Examiner noted transfers from "other Genie entities,"** but no authenticated assignment has been produced showing that loans/claims/contracts from predecessor entities were lawfully transferred into this debtor's estate despite repeated creditor requests.      ** (This Request on the record in 2 different 341 hearings)

2

7. **Parallel litigation affecting contract enforceability.** Related contract enforceability proceedings are pending (e.g., involving Mr. Mims in Alabama State Court and Illinois Federal Bankruptcy Court, where the issue is whether the same "Genie" contracts are void (and, at minimum, breached). These outcomes will directly affect this estate's posture and whether certain instruments the Trustee relies upon are enforceable.

8. **Recent meet-and-confer & timing.** The Trustee's counsel communicated the "take-it-or-leave-it" posture regarding the Davis settlement and then relayed latest development communications on Late day Friday October 3rd - prompting this timely request for a short continuance so creditors can retain counsel and obtain necessary discovery before all creditor rights are impaired.

   *"I know you don't like **releasing** Davis and only getting $30,000 from him, but the bottom line is you can't get blood from a turnip. $30,000 is far more than we would ever be able to collect from him even if we got a judgment for the whole $517,000. And we would spent a lot of money in attorneys' fees litigating the claims against him and dealing with any bankruptcy case he files. Mr. Cohen has been a bankruptcy trustee for more than 35 years and I have been a bankruptcy trustee and creditor's attorney for over 30 years. Believe me when I tell you that both the Trustee and I have worked on hundreds of cases like this before and we both believe that this is the best we are going to do with Davis. Therefore, the Trustee will not be amending or withdrawing the Motion to Approve Compromise with Cald Holdings and Davis. You are free to file whatever objection you would like to file. But I would point out that you would simply be increasing the attorneys' fees incurred by the Trustee to defend the Motion from your objection, which reduces the amount available to distribute to creditors."* [1]

9. **Improper Wind Down.** It is Undisputed, the principals Hughes and Cohan have publicly stated and filed that they 'no longer have any companies,' claiming dissolution of entities that are now assets of this bankruptcy estate. This is not permitted by law — under 11 U.S.C. § 362 and § 541, only the trustee, with notice and court authorization, may dissolve or wind down estate entities. Any post-petition dissolution is void and undermines the Court's jurisdiction." [2]

### III. GROUNDS FOR OBJECTION

**A. The Settlement Provides No Demonstrable Net Benefit to Creditors Under Governing Standards**

10. **Rule 9019 standard.** A compromise must be "fair and equitable" and supported by evidence of benefit to the estate. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968).

---

[1] Email between Trustee's council, Raye Elliott, and Blake Stringer on Sep 18, 2025, 4:35PM
[2] David Hughes personal bankruptcy 341 hearing August 15, 2025 11:00am-4:00pm

3

11. **De minimis economics as presented.** The proposed $30,000 payment is approximately 5.8% of the $518,000 transfer at issue (about 5.8 cents on the dollar). Against the broader claims pool of out of pocket monies. (approx. $15 million), it is ~0.2% (about 0.2 cents on the dollar). The net benefit is unknown because no itemized accounting of the professional time and costs expended to obtain the $30,000 has been provided. Without netting fees and costs, the Court cannot assess benefits.

12. **Justice Oaks II / A & C Framework.** Approval of a Rule 9019 settlement requires a record showing the compromise is "fair and equitable" under TMT Trailer Ferry, as evaluated through the four-factor test adopted in this Circuit by In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990) (probability of success; difficulties in collection; complexity/expense/delay; and the paramount interest of creditors). See also In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) (same). On the present, incomplete record—absent verified assignments, while compliance orders remain unfulfilled, without itemized accounting, and with no continuing-cooperation obligations from Mr. Davis—the Court cannot responsibly weigh these factors. A short continuance and targeted production will allow the Court to apply the Justice Oaks II factors to facts rather than assumptions.

13. **Caleb Davis Release & Discovery Access:** Caleb Davis was the sole individual with direct access to, and control over, the multimillion-dollar bank accounts used in this scheme—estimated at more than $15 million in aggregate creditor funds.** (Yip Report) By granting Davis a broad release in exchange for only $30,000, the Trustee is effectively extinguishing the creditors' single most direct evidentiary source of tracing, intent, and control over the diverted monies. The proposed agreement, as written, **contains no continuing-cooperation clause** requiring Davis to assist the Trustee or the creditor body in future discovery or testimony. **This omission materially prejudices all creditors** by cutting off the only living witness to the financial mechanics of the fraud. The undersigned and the creditors had even communicated to the trustees counsel that we requested a suggestion of a simple change or language adapted into the settlement that was acceptable after consultation by the creditors after communication late last week to us by the prior creditor committee counsel at HOLLAND & KNIGHT. The Court should not authorize any release that fails to preserve cooperation obligations or that forecloses discovery against Davis concerning related banking institutions or intermediaries. The undersigned further request that, to the extent discovery materials have been subpoenaed from Morgan Stanley or its employees in connection with this account, the Court direct the Trustee to produce those materials (or provide access under protective order) so that the creditors may evaluate the nature and scope of those records before any release is finalized. At minimum, this matter warrants deferral until those documents are produced and reviewed. In no way does this matter need to set a further precedence on how recovery efforts will be obtained by the trustee for the estate.

## B. Mandatory Duty to Provide Itemized Accounting and Fee Disclosure (Not Optional)

14. Unfulfilled Orders to Compel / Incomplete Discovery. It is also undisputed that multiple discovery-related motions and court orders of this court remain outstanding, including prior directives requiring Debtors David Hughes and John Cohan to comply with production requests and turnover obligations. To date, neither individual has produced the full documentation, banking records, financial statements, Federal Tax filings, nor communications ordered by this Court and requested by the Trustee. Instead, the debtors have taken the route and attitude that "we have dissolved all the companies and controlled assets, so we are no longer obligated as principals of the multiple companies to provide to this court anything." In re Tri-Cran, Inc., 98 B.R. 609 (Bankr. D. Mass. 1989): any attempt to terminate a debtor's legal existence "usurps the role of the trustee and violates the stay.""Such conduct also prejudices creditors because it obstructs discovery,conceals assets, and frustrates the trustee's duties under § 704(a)(1) to collect and reduce property to money.

15. **Until those compliance deficiencies are cured, no party—including Caleb Davis—should receive the benefit of a release or settlement, because the evidentiary record remains incomplete.** Absent those materials, the Court and the creditors are effectively being asked to approve a compromise in the dark. Granting relief to one insider while others stand in open non-compliance would prejudice all creditors and risk ratifying transactions that may later prove fraudulent. Accordingly, the undersigned creditor respectfully urges that no further settlements be approved until the Court confirms full compliance with its existing discovery and production orders and the relevant evidence is properly before the Court.

16. **Statutes & Rules compel disclosure.** The Trustee must "be accountable for all property received" and "furnish information concerning the estate and the estate's administration as is requested by a party in interest." 11 U.S.C. § 704(a)(2); see also § 704(a)(9) (final report and accounting).

17. **Professional compensation disclosures.** Any professional seeking compensation from the estate must file an application with detailed statements of: services rendered, time expended, expenses incurred, and amounts requested. Fed. R. Bankr. P. 2016(a); 11 U.S.C. § 330(a)(3) (reasonableness factors, including benefit to estate).

18. **Courts enforce transparency.** The bankruptcy court has an independent duty to review fee reasonableness and cannot rubber-stamp professional compensation. In re Busy Beaver Bldg. Centers, 19 F.3d 833, 844–45 (3d Cir. 1994). See also In re McDonald Bros. Constr., 114 B.R. 989 (Bankr. N.D. Ill. 1990) (transparency and detailed records are mandatory fiduciary duties); In re Columbia Gas Sys. Inc., 33 F.3d 294, 303 (3d Cir. 1994) (estate bears only costs that demonstrably benefit creditors); In re Fibermark, Inc.,

349 B.R. 385 (Bankr. D. Vt. 2006) (trustee's accountability includes clarity and candor to parties in interest).

19. **Unenforceable "loan" instruments listed in sworn schedules.** In addition, both creditors and the Trustee have noted that numerous—if not all—of the "loan" documents listed in the Debtor's sworn schedules are facially unenforceable: they bear no borrower signature and no natural-person signature on behalf of any Genie entity. What exists are Zoomeral portal printouts reflecting a digital rendering of a company name—not an executed agreement by an authorized individual, nor a compliant electronic signature attributable to any person. The estate has never produced a single counterpart bearing an authorized signature (wet or digital) or any authenticated assent by the "party to be charged." Proceeding to collect on such instruments—while simultaneously pursuing questionable clawbacks from creditors, which ultimately is wasting the bankruptcy resouces—exposes the estate to unequal administration and litigation risk and underscores why a continuance, assignment proof, and a document-by-document enforceability showing are required before any settlement.
*E-SIGN Act / UETA. An electronic signature is valid only if it is attributable to a person and reflects that person's intent to sign. 15 U.S.C. § 7006(5), § 7001; see also state UETA (e.g., § 2(8), § 9). A portal-generated label or corporate name without authentication to an individual does not satisfy signature/assent requirements, and where loan contracts fall within the statute of frauds, the absence of a signed writing renders them unenforceable against the party to be charged.*

20. **Application here.** While there has been communication between creditors and the Trustee's counsel, no formal, itemized accounting has been produced to creditors to date—an undisputed gap that prevents meaningful evaluation of the Davis settlement or estate solvency. Creditors request a tiered, itemized accounting showing hours, rates, task categories (depositions, document review, research, meet-and-confer, etc.), and net-to-estate after costs.

21. **Defense vs. administration segregation.** Fees incurred defending lawsuits against the Trustee/counsel personally are not properly chargeable to the estate. In re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995). The accounting must segregate estate administration from defensive and non-estate matters.

### C. Unequal Treatment, Assignment Defects, and Ongoing Harm to Recognized Creditors

22. **Unequal protection.** Some scheduled creditors with un-objected claims (e.g., Mitchell Mims) are fending off wrongful liens and false deed transfers in multiple states, incurring substantial legal fees (>$50,000), while others (other creditors) —whose funds moved through the very same bank account—have been recently targeted by the trustee for small "overpayment" clawback. With no proof of enforceable signature Contract

23. **Assignments never shown.** It remains an undisputed fact that no authenticated assignment has been produced transferring contracts/liens from predecessor Genie entities (e.g., Genie Investments LLC; Genie Investments 2 Inc.) into this debtor. The Examiner acknowledged transfers among "other Genie entities," but how those became property of this estate has never been established.

24. **Resulting risk.** Absent assignment proof, the estate risks pursuing non-estate claims and unequal administration—contrary to the Trustee's fiduciary duty under 11 U.S.C. § 704(a). See In re Markos Gurnee Partnership, 252 B.R. 712 (Bankr. N.D. Ill. 1997) (trustees must prioritize actions that maximize value for creditors, not fruitless pursuits).

25. **Contracts under review elsewhere.** Proceedings in Alabama and Illinois are testing whether the same "Genie" instruments are void (and/or breached). Those outcomes will materially affect the enforceability of instruments this estate invokes. This is precisely why a short continuance and discovery are warranted.

### D. Discovery Needs: Morgan Stanley & Banking Records

26. **What exists vs. what's needed.** Creditors understand the Trustee may have obtained limited account-opening materials from Morgan Stanley. Those have not been provided to creditors. Given the multi-layered nature of the accounts (Chase → Morgan Stanley), the use of an IOLTA trust account, and the circular flow of investor funds, additional document production and depositions (including of broker Michael Stewart and treasurer Caleb Davis) are essential to complete tracing.

27. **Why a continuance is necessary.** Courts routinely defer settlement approval when record evidence indicates a Ponzi-like structure requiring further discovery. In re Bayou Group, LLC, 439 B.R. 284 (S.D.N.Y. 2010) (Ponzi findings justify expanded discovery and preservation of third-party claims). This case squarely warrants such delay given the multiple, interlocking layers of transfers, shell entities, and mixed IOLTA/estate flows—layers that remain unresolved on the present record.

### E. Settlement Approval Must Consider Whether Professionals Benefit More Than Creditors

28. **Fairness means net benefit to creditors.** The Court must ensure a settlement benefits creditors—not primarily professionals. TMT Trailer Ferry, 390 U.S. 414; Busy Beaver, 19 F.3d at 844–45. Without a net calculation and an itemized accounting, the Court cannot conclude the proposed settlement is "fair and equitable" in the paramount interest of creditors.

### IV. REQUESTED ACCOUNTING (DETAILS)

29. Pursuant to 11 U.S.C. § 704(a)(2), (9); 11 U.S.C. § 330(a)(3); and Fed. R. Bankr. P. 2016(a), creditors respectfully request an order requiring, within 21 days:

7

a. A line-item accounting of all professional fees and costs to date, identifying task category (depositions, document review, research, conferences, court appearances, correspondence), hours, rates, and amounts;

b. Segregation of fees billed to (i) estate administration; (ii) defense of lawsuits naming the Trustee/counsel personally; and (iii) actions involving non-debtor entities or contracts without documented assignment;

c. A net-to-estate summary, showing gross recoveries (by source) less cumulative professional charges, with current cash on hand;

d. Production of any assignment instruments by which contracts/claims from "other Genie entities" purportedly became property of this estate—or a verified statement that none exist.

## V. PRAYER FOR RELIEF

30. For the reasons stated, Charles Blake Stringer, individually and with the majority concurrence of the organized creditor group, respectfully requests that the Court:

    (a) Continue or deny without prejudice approval of the Trustee's proposed settlement with Caleb Davis (Doc. 427), pending the accounting and limited discovery contemplated herein;

    (b) Order the accounting and fee disclosures described in Section IV (¶26);

    (c) Direct that no estate funds be used to defend non-estate litigation or matters naming the Trustee/counsel personally, consistent with Taxman Clothing;

    (d) Require the Trustee to produce assignment instruments (or verified statement of non-existence) for any contracts/claims pursued that originated with non-debtor Genie entities;

    (e) Preserve all creditor rights—including the right to seek derivative standing or limited relief from stay to coordinate civil actions—pending completion of discovery and accounting;

    (f) State that no compensation shall be awarded to any professional absent a showing that the services demonstrably benefitted the estate, pursuant to 11 U.S.C. § 330 and In re Busy Beaver Bldg. Centers, 19 F.3d 833; and

    (g) Grant such other and further relief as is just and equitable.

8

## VI. CONCLUSION

A short continuance, paired with the mandatory accounting the Code and Rules already require—will let the Court evaluate this settlement under the correct legal standards and on a complete record. It will also ensure equal treatment of similarly situated creditors, prevent unequal administration based on undocumented assignments, and avoid diminution of the estate through professional charges that exceed recovery. Creditors are not trying to obstruct; they are trying to protect rights and value while they complete counsel retention and targeted discovery.

Respectfully submitted,

/s/ Charles Blake Stringer
149 South Shore Drive
Amarillo, TX 79118
(806) 676-4888
blake.nutraacres.llc@gmail.com
Date: October 6, 2025

### Certificate of Service.

I, Charles Blake Stringer, hereby certify that on this 6th day of October, 2025, I caused a true and correct copy of the foregoing Motion to be served via the Court's CM/ECF system upon all parties of record.

Exhibit A – United States Attorney filing referencing "Ponzi-style scheme" and fraudulent transfers.

Exhibit B – Examiner Maria Yip Report excerpts describing circular movement of investor funds and transfers from "other Genie entities."

Exhibit C – Proof of Claim (Charles Blake Stringer) establishing personal standing.

**LEGAL AUTHORITIES (for the Court's convenience)**
- Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968).
- In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986).
- In re Bayou Group, LLC, 439 B.R. 284 (S.D.N.Y. 2010).
- In re Markos Gurnee Partnership, 252 B.R. 712 (Bankr. N.D. Ill. 1997).
- In re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995).
- In re Busy Beaver Bldg. Centers, 19 F.3d 833 (3d Cir. 1994).
- In re McDonald Bros. Constr., 114 B.R. 989 (Bankr. N.D. Ill. 1990).
- In re Columbia Gas Sys. Inc., 33 F.3d 294 (3d Cir. 1994).
- In re Fibermark, Inc., 349 B.R. 385 (Bankr. D. Vt. 2006).
- 11 U.S.C. §§ 704(a)(2), (a)(9), 330(a)(3); Fed. R. Bankr. P. 2016(a), 9010(b).
- In re Justice Oaks II, Ltd., 898 F.2d 1544 (11th Cir. 1990)

# Exhibit A

United States Attorney "*MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF*", *JOHN MICHAEL COHAN, Plaintiff, v. U.S. TRUSTEE PROGRAM, et al., Defendants. - Civil Action No. 1:25-cv-02009 (RDM)*

filing referencing "Ponzi-style scheme" and fraudulent transfers.

*"According to the U.S. Trustee, prior to filing for bankruptcy, Genie Investments transferred millions of dollars in funds to insider affiliates owned by Plaintiff and transferred additional funds to a fraudulent enterprise that operated in a manner similar to a Ponzi Scheme."*

*MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF, JOHN MICHAEL COHAN, Plaintiff, v. U.S. TRUSTEE PROGRAM, et al., Defendants. - Civil Action No. 25-2009 (RDM)*

# Exhibit B

Examiner Maria Yip Report excerpts describing circular movement of investor funds and transfers from "other Genie entities."

**#233**
It appears that potential distributions for the creditors of this estate may result from the avoidance of potential preferential transfers and potential fraudulent transfers to insiders and potential claims against professionals.
(Examiner Report - Case 3:24-bk-00496-BAJ-Doc 146-Filed 06/28/24-Page 53 of 74)

12

# Exhibit C

Proof of Claim (Charles Blake Stringer) establishing personal standing.

**Middle District of Florida**
**Claims Register**

3:24-bk-00496-BAJ Genie Investments NV Inc. Converted 08/12/2024

Judge: Jason A. Burgess     Chapter: 7
Office: Jacksonville        Last Date to file claims: 12/12/2024
Trustee: Aaron R. Cohen     Last Date to file (Govt):

| Creditor: (30881178) History<br>Charles Blake Stringer/Nutra-AcresLLC<br>149 South Shore Drive<br>Amarillo, TX 79118 | Claim No: 5<br>Original Filed Date: 04/14/2024<br>Original Entered Date: 04/14/2024<br>Last Amendment Filed: 07/15/2024<br>Last Amendment Entered: 07/15/2024 | Status:<br>Filed by: CR<br>Entered by: CP<br>Modified: |
|---|---|---|

Amount claimed: $14247760.00

History:
| Details | 5-1 | 04/14/2024 Claim #5 filed by Charles Blake Stringer/Nutra-AcresLLC, Amount claimed: $400000.00 (Auto-Claim Filer) |
| Details | 5-2 | 06/04/2024 Amended Claim #5 filed by Charles Blake Stringer/Nutra-AcresLLC, Amount claimed: $14247750.00 (Tonya) |
| Details | 5-3 | 07/15/2024 Amended Claim #5 filed by Charles Blake Stringer/Nutra-AcresLLC, Amount claimed: $14247750.00 (Cathy) |

Description: (5-3) To Add Supplemental Documents to the Contract
Remarks:

**Claims Register Summary**

Case Name: Genie Investments NV Inc.
Case Number: 3:24-bk-00496-BAJ
Chapter: 7
Date Filed: 02/21/2024
Total Number Of Claims: 1

| Total Amount Claimed* | $14247750.00 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims



# Cover Sheet

Date __10/6/25__          Number of pages __14__ (including cover page)

## To:

Name: Bryan Simpson US Court House

~~Company~~ 300 North ~~Federal~~ Hogan St.

~~Telephone~~ Jacksonville, FL 32202

Fax _____

## From:

Name: Blake Stringer

Company: Nutra-Acres LLC

Telephone: 806-676-4888

Comments: (Case # 3:24-bk-00496)


*4900*
Fax - Local Send


*4901*
Fax - Domestic Send


*4902*
Fax - International Send

fedex.com 1.800.GoFedEx 1.800.463.3339

© 2023 FedEx. All rights reserved. Products, services and hours vary by location. 622.OP03.001          2188309R

Align top of FedEx® shipping label here.

ORIGIN ID:CHIA (806) 676-4888
CHARLES BLAKE STRINGER
149 SOUTH SHORE DR
AMARILLO, TX 79118
UNITED STATES US

SHIP DATE: 06OCT25
ACTWGT: 0.25 LB
CAD: 6570165/ROSA2650

TO **BRYAN SIMPSON**
**US COURT HOUSE**
**300 NORTH HOGAN ST**
**STE 3–150**
**JACKSONVILLE FL 32202**
(806) 676-4888                REF:
INV:
PO:                           DEPT:

TRK# 8849 3411 2265

TUE – 07 OCT 5:00P
STANDARD OVERNIGHT

XX NIPA

32202
FL-US   JAX

FedEx Express

