FILED INTAKE USBC
OCT 14 '25 PM 2:19

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

## MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER (DOC. 432)

John Michael Cohan (the "Movant" or "Third Party Individual"), hereby submits this Memorandum of Law in support of his Motion for Reconsideration of the Court's Order entered September 30, 2025 (Doc. 432) (the "Order").

INTRODUCTION

Reconsideration is warranted based on newly discovered evidence—a July 23, 2025 email from the Chapter 7 Trustee's counsel—that reveals a material contradiction in the Trustee's prior sworn testimony. This evidence directly impacts the factual premises underlying the Court's Order, particularly the assessment of the Trustee's good faith and the basis for his litigation actions. The grant of quasi-judicial immunity and the denial of the Motion for Sanctions were predicated on a record that did not include this critical evidence, constituting a manifest error of fact that must be corrected.

ARGUMENT

I. THE NEWLY DISCOVERED EVIDENCE REVEALS A MATERIAL CONTRADICTION THAT UNDERMINES THE FACTUAL BASIS FOR THE COURT'S ORDER.

The Court's ruling hinges on the Chapter 7 Trustee's credibility and good faith. The newly discovered email shatters this foundation.

A. The Chapter 7 Trustee's Sworn Testimony and His Post-Trial Email Are Irreconcilable.

[1] Prior to the Chapter 7 Trustee filing the adversary complaint, on January 29, 2025, the Trustee in Doc. 276 was "attempting to determine the disposition of over $1.1 million" and "was ready to move forward with claims against the Insider Companies."

[2] At the June 24, 2025, trial, the Chapter 7 Trustee testified under oath that his actions were based on the Examiner's Report.
Page 41, Lines 21-22: *"We had the basis from the examiner's report."*
Page 43, Lines 20-21: *"I did not dig deep into all of the bank records. I relied primarily on the Yip report."*
Page 60, Line 15: *"As soon as we read Ms. Yip's report..."*

[3] However, a post-trial email from the Chapter 7 Trustee, dated July 23, 2025, states unequivocally:

*"The Trustee did not rely entirely on the Chapter 11 Examiner's report..."* (**Exhibit III of preceding Motion for Reconsideration**)

These positions are mutually exclusive. He cannot have relied on the Report as his basis under oath, while having disclaimed that very reliance in a *post*-trial communication.

B. This Contradiction Goes to the Heart of His Good Faith and the Basis for His Litigation Campaign.

This is not a minor inconsistency. The core dispute has always been whether the Chapter 7 Trustee conducted an independent investigation or merely weaponized the Examiner's speculative conclusions. His sworn testimony was the linchpin of his defense against the sanctions motions. This email proves that testimony was, at best, recklessly misleading and, at worst, knowingly false. It reveals a fundamental lack of candor that goes to the heart of whether his litigation conduct was pursued in good faith.

C. Legal Standard: Immunity Does Not Shield Bad Faith or Fraud on the Court.

The Court's Order relies on the doctrine that trustees are immune even if they act "in error" or "maliciously." Juravin v. Fla. Bankr. Tr., No. 22-11356, 2024 WL 4677417, at 6 (11th Cir. Nov. 5, 2024). However, this protection is not absolute. Quasi-judicial immunity does not protect actions taken in the absence of good faith or that constitute a fraud on the court. In re Parker, 499 B.R. 345, 350 (Bankr. M.D. Fla. 2013) ("A bankruptcy trustee is entitled to immunity only when acting within the scope of his or her authority."); In re Jacks, 642 F.3d 1323, 1326 (11th Cir. 2011) (noting trustee immunity is "broad, but not limitless"). A trustee who provides false or materially misleading testimony to the court has stepped outside the protective sphere of his role. Cf. In re Brown, 647 B.R. 519, 528 (Bankr. M.D. Fla. 2023) (discussing the court's inherent power to sanction bad-faith conduct).

D. The Fraudulent Foundation for the Adversary Proceeding Renders it a Nullity, Necessitating Vacatur.

The newly discovered email is the capstone evidence proving the entire adversary proceeding is built upon a foundation of sand, originating from the U.S. Trustee's alleged misconduct in this case.

The Chapter 7 Trustee's contradictions are not an isolated error but the culmination of a foundation laid at the inception of this case. This fraud began with the Examiner's Report itself, which materially misrepresented testimony and planted a false narrative that funds were "ultimately customer funds sent to Velanos"—a characterization never made by the Movant and for which no evidentiary basis exists in the record, as all funds brought in by the company were contractually owned by the company the day they were received. The U.S. Trustee then

compounded this fraud by falsely representing in its Second Motion to Convert that the Examiner's Report had "confirmed" findings of fraud, a fabrication that was explicitly documented and debunked in the internal report of former FINRA enforcement attorney Adam Walker.

The Chapter 7 Trustee completed this sequence by building his entire adversary complaint on this knowingly tainted foundation. He then testified under oath that his actions were based on his exclusive reliance on the Examiner's Report, seeking to legitimize his campaign. His newly discovered email, disclaiming that very reliance, is not a simple inconsistency; it is the final piece of evidence revealing a coordinated lack of candor designed to mislead this Court.

A proceeding built upon such a corrupted foundation is a nullity. The adversary complaint is the fruit of a poisonous tree, sprouted from a highly speculative Examiner's Report, fertilized by the U.S. Trustee's misrepresentations, and sustained by the Chapter 7 Trustee's false testimony. This conduct constitutes a fraud on the Court, using its authority not for legitimate estate administration, but to pursue a campaign based on a fabricated narrative.

Therefore, the adversary complaint must be vacated in its entirety. To allow it to stand would be to sanction a fraud on the Court from its earliest stages. The Court's prior Order, which denied sanctions and upheld immunity based on this now-debunked testimony, is a manifest error that perpetuates this injustice. Correcting this error requires vacating the fraudulent proceeding at the heart of this dispute.

E. The Court's Application of Immunity Was a Manifest Error of Law.

The Court applied immunity based on a factual premise—that the Chapter 7 Trustee was acting within his official capacity and based on a diligent investigation—that has now been demonstrably undermined. Granting immunity without scrutinizing this evidence of bad faith was a manifest error of law. See In re Ctr. for Special Needs Tr. Admin., Inc., No. 8:24-BK-00676-RCT, 2025 WL 2409180, at 3 (Bankr. M.D. Fla. July 15, 2025) (emphasizing the trustee's role must be exercised consistent with the purposes of the Bankruptcy Code). The new email is direct evidence that the Chapter 7 Trustee's conduct fell outside the scope of protected activity, necessitating a reevaluation of the immunity defense. It also conveniently exposed the underlying fraud allegedly committed by U.S. Trustee in these proceedings.

II. THE NEWLY DISCOVERED EVIDENCE REVEALS THAT CRITICAL FACTS WERE NOT BEFORE THE COURT WHEN ITS ISSUES ITS ORDER

The Order found that the Movant's sanctions motions lacked merit. The newly discovered evidence provides a concrete basis to re-evaluate that conclusion in light of the Chapter 7 Trustee's credibility. The Chapter 7 Trustee's newly exposed lack of credibility validates these prior arguments and reveals a pattern of misconduct.

A. The Order Erred by Dismissing Evidence of Retaliatory Motive.

The Court dismissed the precise, damning chronology of events as the Movant merely "resisting requests to cooperate." **(Doc. 432, p. 8)**. The record, however, shows:

· The Movant asserted a right against Warren Law Group on [01-22-25].

· Within 48 hours, the Chapter 7 Trustee served retaliatory personal and corporate demand letters and a subpoena [01-24-25] **(Doc. 390, Exhibits 1, 2)**.

· The adversary complaint was then rushed to filing [02-06-25].

The Chapter 7 Trustee's admission under oath that letters were sent to the Movant personally confirms the action was targeted. His now-proven willingness to be untruthful lends critical credibility to the Movant's interpretation that this was a bad-faith, retaliatory campaign, not diligent administration.

B. The Order Erred by Overlooking a Pattern of Procedural Abuse and Pretext.

The Court ignored a record "rife with mistakes and errors" that demonstrate a pattern of abusive and pretextual conduct:

· Shifting Justifications for Firing Counsel **(Doc. 390, Exhibit 13)**: The Chapter 7 Trustee first claimed counsel had "no experience," then changed it to needing "more experience," admitting the "wording of the first brief was unfortunate." This is evidence of a pretextual termination of viable counsel.

· Contradictory Basis for Filing Suit **(Doc. 390, Exhibit 8)**: The Chapter 7 Trustee filed the adversary complaint claiming "no response" (Doc. 329), but under oath admitted he had received the "27 page letter." This was a false representation to the court to justify a filing.

· Procedural Violations **(Doc. 390, Exhibit 3)**: The Chapter 7 Trustee filed two (2) replies in violation of a clear scheduling order, then testified "We followed the trial order."

The new email, reveals a trustee comfortable with contradictory narratives, shows these were not isolated "errors" but part of a pattern of conduct that should have been considered by the Court and condemned, not rewarded.

C. The Order Erred by Failing to Acknowledge the Chapter 7 Trustee's Failure in His Core Statutory Duties.

The Court's prior assessment of the Chapter 7 Trustee's diligence was made without the benefit of evidence showing a pattern of contradictory statements, which Movant submits calls that assessment into question.:

· Failure to Investigate: The Chapter 7 Trustee admitted under oath he failed to independently review all bank records, relying instead on third-party reports.

The new email, which shows he misrepresented his reliance on the flawed Examiner's report, proves this was not diligent administration but a reckless or intentional reliance on a false foundation, harming the estate and its creditors.

## III. THE PROCEDURAL POSTURE, AS APPLIED TO THE MOVANT, RAISES SERIOUS DUE PROCESS CONCERNS THAT THE COURT'S ORDER DID NOT ADDRESS, WHICH JUSTIFIES THE MOVANT'S DEFENSIVE ACTIONS.

The Court's framing of this dispute ignores the profound constitutional due process concern at its core.

### A. The Chapter 7 Trustee's Public, Inflammatory Rhetoric Was Designed to Prejudice and Defame.

Throughout these proceedings, the Chapter 7 Trustee and his counsel invoked incendiary comparisons to "RICO" and "Bernie Madoff" without ever pleading related causes of action **(Doc. 390, Exhibit 6)**. This was not legal argument but highly prejudicial rhetoric that created a significant risk of unfair prejudice, violating the duty of candor. Model Rules of Professional Conduct 3.3(a)(1).

### B. The Procedural Posture has Created an Untenable Situation for the Movant.

The current procedural framework creates an unconscionable catch-22 that violates fundamental due process.

1. <u>The Accusation</u>: The Movant is publicly branded as criminals without charges being filed.

2. <u>The Procedural Blockade</u>: They are intentionally not named in the adversary proceeding, denying them standing to defend their personal reputations, securities and assets. The Chapter 7 Trustee confirmed this, testifying, "I don't represent you…any claim you have is derivative" **(Doc. 390, Exhibit 17)**, while simultaneously blocking all avenues to pursue those claims.

3. <u>The Threat of Sanctions</u>: When they attempt to defend themselves externally, the Court threatens them with monetary sanctions for violating the stay.

This is the ultimate due process violation. The label "Equity Holder" or "Former Owner" is used to strip them of their individual rights, while the "Bernie Madoff" rhetoric is used to justify the denial of those same rights. A party cannot be subjected to the penalties of litigation for defending against accusations they were never formally given a chance to answer. Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) ("[A] fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked."); see also In re Dorand, 95 F.4th 1355, 1363 (11th Cir. 2024) (defining property of the estate under § 541).

C. The Movant's Actions Were a Necessary and Justified Response.

The Movant's actions, which the Court now threatens to sanction, were a necessary and justified response to essentially being publicly tried as criminals by unscrupulous creditors and court appointed officials in a forum where they were barred from standing. The threat of monetary sanctions for defending one's name under these circumstances is a manifest error of law.

IV. THE CHAPTER 7 TRUSTEE'S ATTEMPT TO EXTINGUISH MOVANT'S PERSONAL CLAIMS VIA A BAR ORDER IS A CLEAR JURISDICTIONAL OVERREACH FORBIDDEN BY CONTROLLING PRECEDENT.

The Chapter 7 Trustee's pattern of overreach culminates in his attempt to use this bankruptcy to permanently enjoin the Movant from pursuing his personal, non-derivative claims against the Warren Law Group. This effort seeks to accomplish through a "Bar Order" what the law expressly forbids: the non-consensual release of third-party claims without statutory authority and beyond this Court's jurisdiction.

A. The Supreme Court's Decision in *Purdue Pharma* Expressly Prohibits Such Non-Consensual Third-Party Releases.

The Supreme Court has unequivocally closed the door on the practice the Chapter 7 Trustee now attempts. In *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 223 (2024), the Court held that the Bankruptcy Code contains no statutory authority for "non-debtor releases in a Chapter 11 plan" that discharge "claims against non-debtors without the consent of the claimants." The Court's reasoning applies with equal, if not greater, force in this Chapter 7 context, where the statutory framework for compromising claims is even more constrained. The proposed Bar Order is precisely the type of overbroad, non-consensual release that the Supreme Court has now deemed impermissible. Movant's consent is expressly and vigorously withheld.

B. This Court Lacks Subject Matter Jurisdiction to Extinguish the Movant's Personal Claims.

The jurisdiction of the bankruptcy court is limited to matters concerning the debtor and the property of the bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). The Movant's distinct, personal claims for malpractice and breach of fiduciary duty against the debtor's former attorneys are not property of the estate. Critically, the Chapter 7 Trustee himself admitted under oath: "Because the joint venture agreement and the retainer agreement were with the Debtor, not with you and Mr. Hughes individually." **[Doc. 389, Page 31, Lines 4-6]**. This judicial admission, coupled with the fact that the legal representation agreement names only Caleb Davis as the client, proves that Movant's potential claims are entirely personal and separate from any claim the estate might hold. This Court lacks the subject matter jurisdiction to issue an order that would finally dispose of these separate, third-party claims.

C. The Chapter 7 Trustee Lacks Standing to Compromise Claims He Does Not Own.

The Chapter 7 Trustee's authority is derivative; he can only assert, settle, or release causes of action that are property of the estate. The Supreme Court's decision in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), established that a trustee lacks standing to assert claims belonging to individual creditors. By logical and necessary extension, he cannot barter away those same claims in a settlement. *See also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 211 (3d Cir. 2004) (applying *Caplin* to reject non-debtor releases). The Chapter 7 Trustee's attempt to do so via the Bar Order is an ultra vires act.

D. The Court's Equitable Powers Under § 105(a) Cannot Create Authority That the Bankruptcy Code Withholds.

The Chapter 7 Trustee cannot resort to the equitable powers of 11 U.S.C. § 105(a) to cure these fatal jurisdictional and statutory flaws. As the Supreme Court unequivocally stated in *Law v. Siegel*, 571 U.S. 415, 421 (2014), § 105(a) "does not authorize the bankruptcy court to override explicit mandates of other provisions of the Bankruptcy Code." It cannot create jurisdiction where none exists, confer standing the Trustee lacks, or sanction a practice the Supreme Court has now explicitly forbidden. *See also In re B&S Transp. Co., Inc.*, 2023 WL 6212388, at *4 (Bankr. M.D. Fla. Sept. 25, 2023)* (expressing skepticism toward third-party releases and noting they are "not favored" in this District).

E. The Bar Order is Integral to the Chapter 7 Trustee's Retaliatory and Bad-Faith Pattern of Conduct.

The request for this overbroad Bar Order is not an isolated act. It is the final piece of a coordinated strategy to insulate the Warren Law Group from accountability and permanently silence the Movant. First, the Chapter 7 Trustee used retaliatory litigation to block Movant from defending his assets. Now, he seeks a court order to permanently bar them from pursuing the very professionals whose misconduct caused the loss. This calculated effort to strip Movant of his constitutional rights to a remedy, through a bankruptcy process they have been systematically barred from contesting, is a manifest error of law that this Court must not sanction.

CONCLUSION

For the reasons stated herein, the newly discovered evidence reveals a material contradiction that necessitates reconsideration to correct a manifest error of fact. Movant respectfully requests that the Court vacate its Order (Doc. 432) and grant the relief sought in the underlying motions for sanctions, or, in the alternative, set an evidentiary hearing.

Dated: 10-14-2025

Respectfully submitted in Good Faith,

*/s/ John Michael Cohan/*

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103

### Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system as per the agreement between parties. This agreement does not waive our right to proper service.