FILED INTAKE USBC
OCT 14 '25 PM2:19

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

### JOHN MICHAEL COHAN'S AND DAVID HUGHES' OBJECTION TO TRUSTEE'S MOTION TO (I) COMPROMISE CLAIMS WITH CHRISTOPHER D. WARREN, P.C., WARREN LAW GROUP, PLLC, AND SCOTT OH AND (II) ENJOIN CERTAIN CLAIMS

John Michael Cohan and David Hughes (hereinafter, "Objectors"), interested third party individuals, hereby file this Objection to the Trustee's Motion to (I) Compromise Claims with Christopher D. Warren, P.C., Warren Law Group, PLLC, and Scott Oh (hereinafter "WLG Parties") and (II) Enjoin Certain Claims (Doc. 435) (the "Motion"), specifically to the portion seeking a permanent injunction (the "Bar Order") we were never properly served. Objectors do not object to the monetary settlement. However, they vigorously object to the requested Bar Order as it is overbroad, exceeds this Court's authority, and is sought under circumstances that prejudice Objectors' constitutional rights.

1. THE TRUSTEE'S FAILURE TO EFFECTUATE PROPER SERVICE DEPRIVES THE COURT OF AUTHORITY TO ADJUDICATE OBJECTORS' PERSONAL RIGHTS.
The Trustee's Motion seeks to extinguish Objectors' personal, non-derivative claims through the proposed Bar Order. Critically, Objectors were never properly served with the Motion (Doc. 435) as required by the Federal Rules of Bankruptcy Procedure. This fundamental procedural failure compounds the Motion's substantive flaws and independently precludes the Court from granting the requested relief as to Objectors. Bankruptcy Rule 9014, which governs contested matters, explicitly requires that "the motion shall be served in the manner provided for service of a summons and complaint by Rule 7004." Fed. R. Bankr. P. 9014(b). Rule 7004(b)(1) requires service upon an individual "by first class mail postage prepaid" to the individual's "dwelling house or usual place of abode or... place of employment." Objectors have not been served via any of these methods. Mere electronic filing on the docket (CM/ECF) is insufficient without an agreement to constitute service on a pro se party who is not a registered CM/ECF filer and who has not been formally served pursuant to the rules. See, e.g., In re Boricua Invs. Corp., 2017 WL 7793651, at 2 (Bankr. D.P.R. Dec. 29, 2017) (holding that a motion to approve a settlement was not properly served where served only by email on a pro se party, as "service by email is not authorized by Bankruptcy Rule 7004").

This failure is not a mere technicality. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Trustee's attempt to permanently enjoin Objectors' personal claims without providing the notice mandated by the Bankruptcy Rules is a direct violation of this core due process principle. See In re O'Callaghan, 2019 WL 2357523, at 3 (Bankr. M.D. Fla. June 4, 2019) (denying a motion for lack of proper service and noting that "due process requires adequate notice").

This lack of proper service compounds the existing issues in this case. The Court is being asked to approve a final, permanent injunction based on a motion that was not properly served upon the very parties whose constitutional rights it seeks to terminate. Granting the Bar Order under these circumstances would be a clear abuse of discretion and a denial of fundamental due process.

2. **THE TRUSTEE LACKS AUTHORITY TO RELEASE THE OBJECTORS' PERSONAL, NON-DERIVATIVE CLAIMS.**

   The Bar Order seeks to extinguish claims that are not property of the bankruptcy estate. The Objectors' claims for direct harms—such as defamation and damage to personal reputation caused by the WLG Parties' negligence—are personal to them and separate from the corporate Debtor's financial loss.

   The Supreme Court has held that a bankruptcy trustee lacks standing to assert claims on behalf of individual claimants. Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434 (1972). This principle logically extends to settling such claims. The estate "does not include causes of action that belong to the debtor's creditors [or principals] individually." In re Seven Seas Petroleum, Inc., 522 F.3d 575, 584 (5th Cir. 2008).

   The attached Engagement Letter (Exhibit A) proves the Objectors were not clients of the WLG Parties, foreclosing any argument that their claims are derivative. The Trustee is attempting to sell property he does not own.

3. **THE REQUESTED BAR ORDER IS AN IMPROPER AND OVERBROAD THIRD-PARTY RELEASE THAT VIOLATES CONTROLLING PRECEDENT.**

   The proposed order seeks to permanently enjoin "all non-debtor parties" from asserting "a claim" against the WLG Parties "arising out of or related to their representation of the Debtor." This language is not limited to the estate's specific legal malpractice claim. It is a blanket immunity clause designed to extinguish any potential claim Objectors may hold in their personal capacity, including for direct malpractice, breach of fiduciary duty, or other personal injuries.

   Such a non-consensual third-party release is precisely what the Supreme Court unequivocally forbade in Harrington v. Purdue Pharma L.P., 603 U.S. 204, 224 (2024). The Court held that the bankruptcy code contains no statutory authority for "nondebtor releases in a Chapter 11 plan" that discharge "claims against non-debtors without the consent of the claimants." Id. at 223. While Purdue Pharma addressed a plan of

reorganization, its core holding—that the Bankruptcy Code provides no authority for a court to extinguish the separate, personal claims of a non-debtor third party without his consent—applies with equal force here. See also In re Seaside Eng'g & Surveying, Inc., 780 F.3d 1070, 1073 (11th Cir. 2015) (noting the "longstanding principle that a bankruptcy discharge is personal to the debtor"); In re Munzenrieder Corp., 62 B.R. 1009, 1011 (Bankr. M.D. Fla. 1986) (stating that a bankruptcy court's jurisdiction is limited to matters concerning the debtor and the estate).
Objectors' consent is expressly withheld. This Court lacks the authority to approve a settlement that purports to release their personal, non-derivative claims against the WLG Parties.

4. THE OBJECTORS HAVE SUFFERED DIRECT, PERSONAL HARM SEPARATE FROM THE DEBTOR'S FINANCIAL LOSS, AS PROVEN BY CONTEMPORANEOUS EVIDENCE.

The Bar Order seeks to extinguish all claims "arising out of or related to" the WLG Parties' representation. However, the Objectors' claims are not derivative; they are for direct, personal injuries inflicted upon them as individuals, separate from the corporate Debtor. This distinction is proven by the Engagement Letter itself and uncontrovertible evidence of the harm suffered.

A. The Engagement Letter Confirms a Limited, Corporate Relationship.
The attached Engagement Letter (**Exhibit A**) is exclusively between Warren Law Group and "Genie Investments NV, LLC and Caleb Michael Davis." It explicitly defines "Client" as the corporate entity and its managing partner. Nowhere does the letter include, reference, or purport to represent John Michael Cohan or David Hughes. This conclusively forecloses any argument that the WLG Parties owed a direct duty of care to the Objectors arising from an attorney-client relationship. Any duty breached was owed to the corporate client, Genie Investments NV. The personal harms to Objectors are a direct, foreseeable consequence of that breach, creating a separate cause of action in tort.

B. Contemporary Evidence Proves Concrete, Personal Damages.
The Objectors have suffered direct and palpable injuries to their personal and professional reputations, entirely distinct from the Debtor's financial collapse. These are not theoretical claims but are evidenced by real-world consequences:

Public Defamation and Reputational Harm: A simple public internet search for "David Hughes" returns prominent results on websites like Ripoff Report (Exhibit A), which directly tie Mr. Hughes and Mr. Cohan to the Genie Investments matter, labeling them as "con men" and accusing them of participating in a "Ponzi Scheme." These are not claims against the company; they are direct, personal attacks on the Objectors' individual character and professional integrity. This reputational damage is a personal injury that

will follow them indefinitely, affecting their ability to secure financing, form partnerships, and conduct business.

Loss of Specific Business Opportunities: The direct causation between the WLG Parties' malpractice and the Objectors' personal financial loss is demonstrated by a lost business transaction. As shown in Exhibit A, a prospective business partner abruptly terminated a multi-million dollar deal with Mr. Cohan, explicitly stating, "Hard pass. Your name is publicly associated with David Hughes," and linking to a public forum discussing the McMann Commercial Lending controversy. This is not a derivative loss suffered by the estate; it is a specific, quantifiable financial loss suffered personally by John Michael Cohan and David Hughes as a direct result of the reputational fallout from the WLG Parties' actions.

These personal claims for defamation, reputational damage, and lost business expectancy belong to the Objectors, not the bankruptcy estate. *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972). The Trustee is attempting to use the Bar Order to sell a release for claims he does not own and injuries the estate did not suffer.

5. THE REQUESTED BAR ORDER IS OVERBROAD, LACKS A LEGAL BASIS, AND IMPROPERLY SHIELDS LICENSED PROFESSIONALS.

The proposed Bar Order seeks to permanently enjoin "all non-debtor parties" from asserting "a claim" against the WLG Parties "arising out of or related to their representation of the Debtor." This language is not narrowly tailored but acts as a blanket immunity clause, improperly shielding these licensed professionals from full accountability for their conduct toward non-debtor parties. It would extinguish Objectors' direct, personal claims without any factual findings in the record to support such a sweeping injunction. The law disfavors such broad releases, particularly when they discharge the liabilities of non-debtor professionals without the consent of those whose rights are affected. See In re B&S Transp. Co., Inc., 2023 WL 6212388, at 4 (Bankr. M.D. Fla. Sept. 25, 2023). Furthermore, this Bar Order is integral to a misleading narrative in a parallel proceeding, perpetuating a false story of the corporate collapse by suppressing critical evidence of the very legal malpractice that caused the loss. This Court should not approve a deal that allows allegedly negligent professionals to purchase global immunity.

6. THE REQUESTED RELIEF IS CONTRARY TO THE EQUITABLE POWERS OF THE BANKRUPTCY COURT AND THE PROCESS IS TAINTED.

The extraordinary remedy of a permanent injunction is not necessary for the administration of the Chapter 7 estate, the interest of which is fully served by the monetary compromise. Enjoining Objectors' personal claims provides a windfall to the WLG Parties that exceeds what is necessary and is not integral to the settlement. A bankruptcy court's equitable powers must be exercised consistently with the Code and the

preservation of third-party rights. See In re Walker, 515 F.3d 1204, 1212 (11th Cir. 2008). Granting an injunction that extinguishes the separate claims of non-debtors without their consent and without a compelling justification would be an overreach of those powers. Moreover, the integrity of the process is in question. As detailed in the separate action, Cohan v. United States Trustee Program, et al., the U.S. Trustee, a party to this proceeding, is accused of serious misconduct. Granting a permanent Bar Order under these circumstances would reward and compound this alleged misconduct and undermine the appearance of justice. In re Walker at 1212 (a bankruptcy court must "protect the integrity of the bankruptcy process").

A stay while the estate is administered is one thing, an indefinite bar of claims against a non-debtor is another.

WHEREFORE, John Michael Cohan and David Hughes respectfully request that the Court:

Approve the monetary compromise between the Trustee and the WLG Parties.

DENY the request to enter the proposed Bar Order in the form of Exhibit B of Doc. 435.

Grant such other and further relief as the Court deems just and proper.

Dated: 10-14-2025

Respectfully submitted in Good Faith,

*[signatures]*

John Michael Cohan and David Hughes, without prejudice, without recourse, UCC 1-308, 1-103

## Certificate of Service

We hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system as per the agreement between parties. This agreement does not waive our right to proper service.

# EXHIBIT A – Engagement Agreement Between Debtor and Warren Law Group and Blatant Reputational Harm



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

October 14, 2022

**VIA E-MAIL**

Caleb Michael Davis, Managing Partner
Genie Investments NV, LLC
11064 Lothmore Rd.
Jacksonville, FL 32221
calebdavis8@gmail.com

**Re: Letter of Engagement ; Joint Venture with Velano Principal Capital, Inc.**

Dear Caleb:

Thank you for selecting the Warren Law Group ("we", "us", or the "Firm") to represent and advise Genie Investments NV, LLC and you ("You" or the "Client") with respect to the proposed joint venture with Velanos Principal Capital, Inc. ("Matter"). This engagement shall include but may not be limited to: general counsel/advice, contract/legal document preparation and or review, transaction structuring, strategic planning & asset protection, escrow/paymaster services. Please note that escrow and paymaster services may be provided under a separate engagement addendum with different terms, conditions, and fee structure which the Firm will provide for your review and approval at the appropriate time. You explicitly authorize the Firm to undertake any other matters that relate to or flow from these issues at its discretion. This engagement does not include representation in litigation or arbitration proceedings but may be included herein by separate signed addendum. This document is a privileged and confidential agreement for legal services ("Agreement") that states the terms of our representation. Please read it carefully.

1.      **Professional Undertaking**

The Firm has undertaken to advise you and provide you representation in the Matter. If You desire to retain the Firm for services outside the scope of the above, you and the Firm will enter into a separate Letter of Engagement for those matters. While our representation will include post-trial or arbitration motions on the Matter, this Agreement does not include re-trial or appeals on any judgment or award that may be obtained by or against You, unless we otherwise agree in a subsequent writing.

Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning various courses of action to be taken and the results that might be anticipated. You acknowledge that any such statement made by any attorney or employee of the



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 · warren.law

Firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed as a promise or guarantee, nor as an attorney opinion letter unless the words "attorney opinion letter" appear on the document.

2. **Client's Duties**

To enable us to represent You in the Matter effectively, You agree to be truthful and to cooperate fully with the Firm in all matters related to the negotiation of the Matter and preparation and presentation of Client's claims or defenses in the Matter. You agree to keep us informed of any information or developments that may come to your attention, to abide by this Agreement, to pay the Firm's statements for services on time and as set forth in this Agreement, and to keep the Firm advised of Your address, telephone number and whereabouts (if called for in the representation), as well as any potential conflicts of interest. You agree to assist the Firm by timely providing necessary information and documents. You agree to advise the Firm of any potential or actual conflicts of interest. Subject to separate agreed addendum if applicable, You also agree to appear at all legal proceedings when we deem it necessary and generally to cooperate fully with the Firm in all matters related to the preparation and presentation of Your claims and defenses, as well as continuing to pay your invoices in a timely fashion. You also represent that you have not engaged any other attorney or agreed to pay another attorney or person a contingency or success-based fee with respect to this Matter.

3. **Retainer Fee & Flat or Contingency Fee Interest**

In consideration for the Firm's services, You agree to pay our hourly rates as set forth in Schedule A annexed hereto (the "Fee"). We will require an initial retainer of **$10,000**, which we will bill against as we work on your matters. <u>The initial retainer shall be allocated into two segments: (i) joint venture transaction review and engagement for $5,000 flat fee; and (ii) ongoing representation post transaction commencement, which may include strategic planning/asset protection, tax services, and other required services which shall be billed against the remaining balance of the initial retainer until exhausted.</u> We will inform you monthly of Your remaining retainer amount, and when the retainer is nearing depletion, we may ask that You replenish the retainer, and you agree to do so. No attorney-client relationship will exist concerning this matter until this retainer has been paid, and until this engagement letter has been executed by both parties. You specifically authorize and agree that any attorney, investigator, paralegal, secretary, or another person in the Firm, or an associated counsel in another Firm, may, at our professional discretion, perform necessary services under the direction of the attorney designated as lead counsel by the Firm.

You authorize the Firm to withdraw the funds from the Firm's Attorney Trust Account to pay the Firm's fees. If the Firm receives a written objection from You within 10 days of sending



**519 8TH AVENUE, 25TH FLOOR**
**NEW YORK, NY 10018**
866.928.5838 • warren.law

Your bill, the Firm shall consider that amount in dispute and will return those escrow funds to the Attorney Trust Account until the dispute is resolved. The Firm will cease all work on your Matter until the dispute is resolved.

With respect to litigation/arbitration matters, the Firm may request additional retainer deposits within 90 days of the date set for a trial or arbitration hearing. You shall, upon the Firm's request, deposit all fees and costs the Firm reasonably expects will be incurred to prepare for and complete the trial or arbitration hearing (the "Trial Deposit"), unless You decide not to continue the representation and the Firm is able to withdraw from the engagement. If there is any remaining retainer funds in the Firm's Attorney Trust Account at the end of this engagement, and the Firm's final bill is satisfied, those funds shall be promptly refunded to You.

4. **Costs and Expenses**

The Firm will incur various costs and expenses in performing legal services under this Agreement. Client agrees to pay for all costs, disbursements and expenses in addition to the hourly fees. Client shall pay for all costs incurred for each engagement, either directly or to the Firm if the Firm has paid the costs. In this Agreement, "costs" mean any charge, disbursement, expense, fee, or other debt incurred by the Firm for Client's engagement. For the avoidance of doubt, "costs" are not limited to court costs and are intended only to exclude Firm's legal fees.

Costs commonly include: service of process charges; filing fees; court and deposition reporters' fees; legal research fees; translator/interpreter fees; jury fees; notary fees; deposition costs; international telephone charges; messenger and other delivery fees; postage; professional photocopying and other reproduction costs; e-discovery processing and data-hosting expenses; travel costs, airfare (business class for flights longer than 1,200 miles, or first-class if no business-class seats are available), ride-sharing or taxi services, meals, and lodging costs; investigation expenses; consultants' fees; and expert witness, professional, mediator, arbitrator and/or special master fees. Any cost above $500 will be pre-authorized by you before you are charged. The exception are any filing fees, which will be due upon filing.

Client understands that if the Client's case proceeds to court action or arbitration, the court may award attorneys' fees as well as some or all of the type of costs enumerated herein to the other party/parties. Payment of such attorneys' fees and costs shall be the sole responsibility of Client.

Separately, any order entered awarding payment of attorneys' fees and/or costs to you, or any settlement between the parties in the Matter awarding you attorneys' fees and/or costs, does not affect your obligation to pay the Firm's attorneys' fees, costs, and other charges under the terms of this Agreement. Any such amounts received by the Firm, however, will be credited against



the attorneys' fees, costs and other charges incurred by you. Client acknowledges that any such determination that fees are owed to you by another party, does not in and of itself affect the amount of the fees and costs to be paid by Client to the Firm pursuant to this Agreement.

### 5. Termination and Withdrawal

You have the right to discharge the Firm at any time. We also have the right to withdraw from this representation for any other reason for which withdrawal is authorized or required by the New York Rules of Professional Conduct of the State Bar of New York and/or applicable law. Among the circumstances under which the Firm may withdraw are: (a) with the consent of Client; (b) Client's conduct renders it unreasonably difficult for the Firm to carry out the Agreement effectively; and/or (c) Client fails to pay the Firm's fees, retainer, or costs as required by this Agreement.

Notwithstanding the discharge, the Client will remain obligated to pay the Firm at the agreed rates for all services provided prior to the discharge and to reimburse the Firm for all costs advanced. You expressly acknowledge that Client's failure to pay the Firm's invoiced amounts due in a prompt manner shall be grounds for the Firm's withdrawal from any representation(s) the Firm has undertaken of Client, and Client will not oppose any such effort to withdraw by the Firm in such a "failure to pay" situation.

Should you breach this Agreement in such a manner that we are reasonably required to withdraw or to terminate the Agreement, we will attempt to accommodate new counsel should you choose to hire new counsel, but while we may choose to do so, under no circumstances are we required to relinquish any part of the Fee earned or any Contingency Fee Interest in order to make that accommodation.

### 6. Record Retention Policy

The Firm maintains case files electronically using Clio and other software programs. During the normal course of representation, both paper and electronic files are collected. Upon the conclusion of the Matter, the Firm may retain portions of the case file pursuant to our Firm's record retention policy and any applicable confidentiality agreement or protective order. To reduce costs, the Firm recycles paper products and may discard old case files. If you want the Firm to return original client documents or send you any portion of the case file, you agree to let us know in writing within 30 days of the conclusion of the Matter. The Firm will not be responsible for file materials that you do not request in writing within 30 days and which are eventually destroyed under our record retention policy.



### 7. Option to Pay via Cryptocurrency

Please be advised that you have the option, at your sole and absolute discretion, to pay for any legal services which the Firm earns upon receipt of payment (*i.e.*, flat fees and payment on invoices for services already rendered by the Firm) with Firm Accepted Cryptocurrencies ("FACs"). Currently the only FACs are Bitcoin and Ethereum; however, the Firm reserves the right to change the FACs at any time in its sole discretion. The Firm does not hold FACs in trust for its clients in retainer to bill against on a later date. You agree that any FACs, or other funds, received by the Firm as payment for a Flat Fee or for services previously rendered are considered "earned" by the Firm upon receipt.

If you wish to use FACs to pay your retainer for our services, you agree that the Firm will, as soon as practicable, exchange the FACs it receives from you into U.S. dollars ("Fiat") and you will be credited the amount of Fiat received by the Firm after its processing costs. The Firm will provide you with a statement as soon as practicable after it receives the Fiat detailing the exchange used, exchange rate, costs, and received Fiat value. Please be advised that the value of any cryptocurrency, including FACs, can change rapidly based upon market conditions. Please make sure to take that into consideration in making your decision. We require that a test transfer be completed and confirmed by the Client and the Firm. After that confirmation, the Client agrees to transfer FAC at a specific time requested by the Firm as to be sure to convert the FACs into Fiat as quickly as possible to avoid unnecessary market risk.

If you do choose to pay the Firm in Accepted Cryptocurrencies, you agree to transfer the applicable cryptocurrency into the Firm's designated cryptocurrency wallet from a cryptocurrency wallet over which you have sole ownership and control. You also represent and warrant to the Firm that any cryptocurrencies you send to the Firm are of non-criminal origin and are free and clear of liens or other encumbrances.

For more information about your rights related to the use of cryptocurrencies for the payment of legal services, please see (as applicable) NYCBA formal opinion 2019-5[1], D.C. Bar Ethics Opinion 378[2], and/or the CA Committee on Professional Responsibility and Conduct discussion regarding unpublished opinion 21-0007[3]. The Firm reserves the right to change its payment policies and procedures at any time, upon written notice, based on any changes in the prevailing interpretation of the applicable Rules of Professional Conduct pertaining to the same.

### 8. Integration, Choice of Law, Rules of Professional Conduct

---

[1] https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/formal-opinion-2019-5-requiring-cryptocurrency-in-payment-for-legal-services
[2] https://dcbar.org/For-Lawyers/Legal-Ethics/Ethics-Opinions-210-Present/Ethics-Opinion-378
[3] https://board.calbar.ca.gov/docs/agendaItem/Public/agendaitem1000028381.pdf

the Firm ~~or any of its employees~~, and representations or promises other than those contained in writing in this Agreement. To avoid any misunderstanding over the terms of this representation, this Agreement shall not be modified or waived in any respect except in writing signed by both parties.

This Agreement shall be construed under and in accordance with the laws of the state of New York, excluding any conflicts of law, rule or principle that might otherwise refer to the substantive law of another jurisdiction.

It is our intention to follow the New York Rules of Professional Conduct.[4] If, despite that intent and endeavor, any part of this Agreement shall for any reason be found to be unenforceable, the parties agree that: all other portions shall nevertheless remain valid and enforceable; and a provision most similar to the stricken provision but otherwise complying with applicable law shall be substituted.

### 9. Mediation and Arbitration

The Firm is required by New York law to inform You that in the unlikely event of a disagreement with respect to legal fees, Part 137 of the Rules of the Chief Administrator of the New York Courts ("Part 137") provides that certain fee disputes are subject to arbitration at Client's option. The Firm will provide You with a copy of the Rule upon request. Information may also be obtained at www.courts.state.ny.us/admin/feedispute/index.shtml.

If any dispute ("Dispute") arises between You and the Firm, including, but not limited to, disputes over billing, fees, malpractice, fraud-based claims, breach of professional duties (including fiduciary duty), or any other complaints, and if the Dispute cannot be settled through negotiation (or for fee disputes under Part 137), then the parties agree to try in good faith to settle the Dispute promptly by mediation administered by the New York, New York branch of the Judicial Arbitration and Mediation Service ("JAMS") within 60 days after either party sends written notice of its intent to mediate. The cost of mediation shall be borne equally by the parties.

If the Dispute cannot be settled by mediation, the Dispute shall be settled by arbitration. The arbitration must: (a) be administered by the Judicial Arbitration and Mediation Service ("JAMS"); (b) occur in New York, NY; (c) be governed, for purposes of procedure, by the JAMS' Comprehensive Arbitration Rules and Procedures in effect at the time the parties executed the

---

[4] Available at https://nysba.org/app/uploads/2020/02/NEW-YORK-RULES-OF-PROFESSIONAL-CONDUCT.pdf



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

This Agreement represents the entire Agreement between us. In entering this Agreement,



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

Agreement, the Federal Arbitration Act (9 U.S.C. §§ 1–16), and for substantive purposes, the laws of the State of New York; and (d) occur no later than 60 days after either party sends written notice that it believes the parties' private negotiations have reached an impasse, or as soon thereafter as the selected arbitrator is available.

A written, reasoned opinion must accompany any award issued by the arbitrator. The opinion must state that the Firm, the Client, or neither party prevailed. If the arbitrator determines that one party prevailed, the arbitrator shall award to the prevailing party its legal expenses reasonably incurred related to the claims made in the arbitration. The parties shall maintain the confidential nature of the arbitration proceeding and the award, including the hearing, except as necessary (1) to prepare for or conduct the hearing on the merits; (2) to challenge or enforce an award; or (3) to comply with any law or government order.

The Parties adopt and agree to implement the JAMS Optional Arbitration Appeal Procedure (as it exists on the effective date of this Agreement) with respect to any final award in an arbitration arising out of or related to this Agreement. Judgment on the arbitration award may be entered in any court having jurisdiction. Client and the Firm confirm that they have read and understand the forgoing paragraph, and voluntarily agree to binding arbitration.

### 10.    Judgment Lien

You agree that, in the event that the Firm obtains a monetary award for You as part of this Matter, or any matters that flow from it, any outstanding amounts owed under the Firm's invoices by You will be immediately payable out of such monetary award. This monetary award includes *any* affirmative recovery on your behalf as part of the Matter, including, but not limited to, actual damages, punitive damages, attorneys' fees, or costs. You are therefore advised of the consequence of not paying any invoices when the Firm obtains a money judgment or other relief on Your behalf.

[ Signature Page to Follow ]



**519 8TH AVENUE, 25TH FLOOR**
**NEW YORK, NY 10018**
866.928.5838 • warren.law

If the foregoing correctly reflects your understanding of the terms and conditions of our representation, please indicate your acceptance by executing this letter in the space provided below and returning it to the Firm, as well as making the required retainer payments.

For future retainer or bill payments, please forward payment to the Firm's client trust account at the address below. Please contact us if you wish to pay by another method, such as credit card. In the event of a credit card payment, a 3% service charge will be incurred and added to the charged amount.

**Bank Name:** Signature Bank

**Bank Address:** 565 Fifth Avenue, 12th Floor, New York, NY 10017

**ABA #:** 026013576

**Account Name:** Warren Law Group (IOLA)

**Account Number:** 1504601990

**SWIFT Code:** SIGNUS33

Very truly yours,

**WARREN LAW GROUP**

*/s/ Christopher D. Warren*

Christopher D. Warren

Caleb Michael Davis, on behalf of Genie Investments NV, LLC, requests representation in accordance with the terms outlined above:

By: _____

Caleb Michael Davis, LLC



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

## SCHEDULE A – HOURLY RATES[5]

| Legal Professional | Hourly Rate |
|---|---|
| | |
| Partners | |
| Christopher Warren | $825 |
| David Rosenfield | $675 |
| Jon-Jorge Aras | $650 |
| Paul Share | $650 |
| Scott Oh | $650 |
| Tom McCabe | $675 |
| John Keenan | $650 |
| | |
| Associates | |
| Brittany Hulbert* | $450 |
| Jorge Marquez | $450 |
| David Szalyga | $450 |
| Other Associates | $450 |
| | |
| Of Counsel | |
| Todd Kulkin | $600 |
| Carol Williams | $550 |
| Dan Alper | $550 |
| Dan Kolber | $550 |
| Dan Podhaskie | $550 |
| Jorge Salva | $550 |

---

[5] Hourly rates are subject to change on the anniversary of this engagement and each year subsequent by no more than 10% to keep pace with cost-of-living adjustments and inflation.

*Pending Admission



519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
866.928.5838 • warren.law

| | |
|---|---|
| Max Travis | $550 |
| C.A. Morrison | $550 |
| Stephen Reich | $550 |
| Other Of Counsel | $550 |
| | |
| Paraprofessionals | |
| Law Clerks | $250 |
| Paralegals | $175 |
| Interns | $125 |





