FILED
JACKSONVILLE, FLORIDA

NOV 18 2025

CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
per Rule 5005
SM

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7
District Case No.: _____

## MOTION FOR DISTRICT COURT REVIEW OF BANKRUPTCY COURT DENIAL OF IN FORMA PAUPERIS STATUS

<u>Cover Statement / Introductory Paragraph</u>

Movant respectfully submits this motion for leave to proceed In Forma Pauperis ("IFP") on appeal from the Bankruptcy Court's denial of IFP status. Under Federal Rule of Bankruptcy Procedure 8003(f), a timely notice of appeal vests jurisdiction in this Court, and failure to take any other step in the bankruptcy court does not affect the validity of the appeal. Because the Bankruptcy Court denied IFP applications without any findings of fact or conclusions of law, the order is facially defective and cannot be complied with or reviewed there. This Court has authority to review the denial de novo and grant IFP status, ensuring that Appellant's statutory right to proceed without prepayment of fees is preserved. Movant therefore invokes this Court's immediate jurisdiction and respectfully requests that it review and reverse the Bankruptcy Court's denial.

The record contains evidence of significant procedural irregularities, including altered docket entries, missing or incomplete filings, and law enforcement documentation reflecting probable cause of criminal activity during the § 341 meetings. These irregularities have the effect of obstructing Appellant's access to the courts and complicating appellate review. The Bankruptcy Court's unexplained denials of in forma pauperis status, when viewed in conjunction with the record discrepancies, demonstrate a pattern that may materially impede Appellant's ability to exercise appellate rights. Appellant respectfully requests that the District Court consider these documented irregularities in conjunction with his motion, as they provide important context for ensuring meaningful access to the appellate process.

<u>Background</u>

a. Appellant filed two (2) IFP motions in the Bankruptcy Court:

o Exhibit 1: First denial — "The Court having considered the record, the Motion for Leave to Appeal in Forma Pauperis is Denied."

o Exhibit 2: Second denial — "The Court having considered the record, the Motion for Leave to Appeal in Forma Pauperis is Denied ."

b. These orders contain no findings of fact or law and provide no reasoning for the denial. They demonstrate abuse of discretion and a denial of Appellant's access to the courts.

c. Appellant's financial situation is documented in Exhibit 4, the IFP motion demonstrating:

    o Receipt of public assistance (food stamps)

    o Less than $400 in available funds which have since reduced.

    o Imminent risk of losing primary home to foreclosure

d. These appeals are interrelated to a legal malpractice action filed in this District Court (Case No. 3:25-cv-00164-HES-MCR), which was stayed by the Chapter 7 Trustee, and to docket tampering covering up criminal activity that occurred during the 341 meetings (Case No. 3:24-bk-00496-BAJ), in which the Jacksonville Sheriff's Office found probable cause that a crime occurred, and the Florida State Attorney's Office issued a warrant confirming that a neutral lawyer found a crime had taken place.

e. The altered documents in the docket demonstrate multiple forms of misconduct, including:

    o Legal malpractice by parties involved

    o The United States Trustee inventing confirmations of fraud that did not exist in the examiner report

    o Police reports showing probable cause of criminal activity

    o Other evidence of serious procedural misconduct and retaliatory obstruction

f. The repeated denials of IFP status demonstrate a pattern of abuse, denial of court access, and retaliatory conduct, including docket tampering, as documented in Exhibit 3 (Doc. 477, 182 pages). This exhibit contains the full record of the original motions filed and received by the Chapter 7 Trustee's Council through PACER and the altered versions that currently appear on the docket.

g. The District Court need only review this exhibit and the bare orders "The Court having considered the record, the Motion for Leave to Appeal in Forma Pauperis is Denied." to see the pattern of abuse and obstruction. A court cannot reasonably rely upon an altered or incomplete docket; if the record cannot be corrected and the alteration is material and prejudicial, it constitutes a fraud on the court, and vacatur of the resulting orders is warranted. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-45 (1944); see also *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986) (inherent power to manage court affairs); *In re Walker*, 515 F.3d 1204, 1211-12 (11th Cir. 2008) (vacatur warranted due to a failure to provide a complete and accurate record)."

Legal Standard

• Under 28 U.S.C. § 1915 and Fed. R. Bankr. P. 8003(a)(3) & (f), the District Court has authority to review the Bankruptcy Court's denials of IFP status.

• Denials without findings constitute abuse of discretion. *Coppedge v. United States*, 369 U.S. 438, 446 (1962); *Clark v. Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990)

• Repeated, unexplained denials that impede appellate review constitute denial of court access.

Reasons for Granting IFP

Appellant demonstrates:

- Receipt of public assistance (food stamps), as shown in Exhibit 4;
- Imminent risk of losing primary residence to foreclosure, as shown in Exhibit4;
- Less than $400 in available funds, as shown in Exhibit 4;
- Denial of court access due to repeated, unexplained denials, and docket tampering documented in Exhibit 3 (Doc. 477, 182 pages);
- Evidence of retaliatory appearance, procedural obstruction, and misconduct in the altered documents demonstrating legal malpractice and fabricated confirmations of fraud;
- Police reports confirming probable cause of criminal activity and the issuance of a warrant by the Florida State Attorney's Office.
- The record shows undisputed indigency, procedural abuse, and compelling evidence of misconduct, meriting IFP status.

Relief Requested

Appellant respectfully requests that this Court:

i. REVERSE all Bankruptcy Court denials of IFP status;

ii. GRANT Appellant leave to proceed In Forma Pauperis in the underlying appeals;

iii. DIRECT the Clerk to docket these appeals immediately without payment of filing fees and provide a briefing schedule;

iv. Take notice of the pattern of abuse, denial of court access, procedural obstruction, retaliatory appearance, legal malpractice, fabricated fraud confirmations, and criminal misconduct, particularly the docket tampering documented in Exhibit 3 (Doc. 477, 182 pages), and ensure further obstruction is prevented; and

v. Grant such other relief as the Court deems just and proper.

Attachments

• Exhibit 1 – First Bankruptcy Court denial

• Exhibit 2 – Second Bankruptcy Court

• Exhibit 3 – Original 182-page Doc. 477 filed in Case No. 3:24-bk-00496-BAJ showing original filings versus altered docket entries

• Exhibit 4 – 11-12-25 IFP filing reflecting Appellant's financial situation

Conclusion

The Bankruptcy Court's failure to provide any rationale is, in itself, a reversible abuse of discretion. The Court's silence suggests it may be relying on an extraneous Order to Show Cause as an unstated justification. However, an 'unstated reason' is no reason at all for the purposes of appellate review. This Court should not speculate or create post-hoc rationalizations for the Bankruptcy Court's decision. The IFP denial order is facially deficient and must be reversed. To hold otherwise would allow a bankruptcy court to block any indigent appellant from appealing simply by issuing a vague denial, effectively nullifying the right to appeal for those who cannot pay.

The very purpose of the appellate process is to provide a check on a bankruptcy court's discretionary decisions, particularly when that discretion is exercised without explanation to the detriment of an indigent party. The Bankruptcy Court's order is a classic example of a ruling that requires appellate oversight. It denies a fundamental access right—the ability to appeal—based on an unreviewable, unexplained rationale. This Court should fulfill its role as a check on the bankruptcy court and reverse the IFP denial, thereby allowing the appeal to proceed on its merits and ensuring that the Appellant is not railroaded by a procedural dead end.

The Order denies IFP status without a single finding of fact or conclusion of law. A court may deny in forma pauperis only after making an explicit determination either that the applicant is not indigent or that the appeal is frivolous or taken in bad faith. 28 U.S.C. § 1915(a)(3); *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948); *Coppedge v. United States*, 369 U.S. 438, 446 (1962). A conclusory denial with no articulated basis is reversible error because appellate review is impossible. The Bankruptcy Court's statement in its denial orders that it 'may file written findings at a later date' (Exhibits 1 and 2) does not satisfy the statutory and due process requirement that findings must accompany the denial to make it reviewable. See, e.g., *Coppedge*, 369 U.S. at 446 (noting the duty to make a finding of frivolousness); *Clark*, 915 F.2d at 639 (holding a district court's denial must "be supported by a statement of reasons"). A promise of potential future reasoning is functionally equivalent to no reasoning at all at the time of the ruling.

This Court should not countenance the Appellees' inevitable attempts to minimize the proven, systemic docket tampering as "clerical error" or "harmless." The suppression of evidence was neither. It was a surgical, repeated, and targeted removal of the most material and exculpatory

exhibits—the police report and expert memorandum exposing the U.S. Trustee's misconduct—across multiple docket entries, while benign exhibits remained. A "glitch" does not consciously break a logical filing sequence to purge specific files; this was a deliberate curation of the record to conceal a verified crime. This constitutes a structural, constitutional error that vitiates the entire proceeding, as no appellate review can be meaningful when the foundational record is itself a demonstrated fraud. Any assertion that this error was not preserved is meritless; the act of tampering is a continuing violation, and the incontrovertible proof—provided by the Chapter 7 Trustee's own counsel—crystallized the issue. To ignore this evidence would be to endorse the clandestine alteration of the judicial record by its official custodians.

**To date, according to the District Court Clerk's office, no transmittals of appeals have been sent "upstairs" (9th floor – District) from "downstairs" (3rd floor – Bankruptcy).**

Dated: 11-17-2025

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103

iustusprocessus@outlook.com

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system, US Mail, and/or email.

# EXHIBIT 1

[jiffyordnh] [Bench Order No Hearing +]

**ORDERED.**

**Dated:  October 30, 2025**

Jason A. Burgess
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

In re:                                                          Case No. 3:24−bk−00496−BAJ
                                                               Chapter 7

Genie Investments NV Inc.

_____Debtor*_____/

**ORDER DENYING MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

THIS CASE came on for consideration without a hearing of the **Motion for Leave to Appeal in Forma Pauperis** (Doc. **460** ), filed by **Interested Party John−Michael Cohan and David Hughes** (the "Movants").

The Court having considered the record, the Motion for Leave to Appeal in Forma Pauperis is Denied.

The Movants shall have seven (7) days from the date of this Order to pay the appeal filing fee.

The Court in its discretion may file written findings of facts and conclusions of law at a later date.

Service Instructions:

The Clerk's office is directed to serve a copy of this order on interested non−CM/ECF users.

*All references to "Debtor" shall include and refer to both of the debtors in a case filed jointly by two individuals.

# EXHIBIT 2

[jiffyordnh] [Bench Order No Hearing +]

**ORDERED.**

**Dated:  November 13, 2025**

Jason A. Burgess
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 3:24−bk−00496−BAJ
                                                          Chapter 7

Genie Investments NV Inc.

_____Debtor*_____/

### ORDER DENYING MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS

THIS CASE came on for consideration without a hearing of the **Motion for Leave to Appeal in Forma Pauperis** (Doc. 479 ), filed by **Interested Party John−Michael Cohan (the "Movant")** .

The Court having considered the record, the Motion for Leave to Appeal in Forma Pauperis is Denied .

The Movant shall have seven (7) days from the date of this Order to pay the appeal filing fee.

The Court in its discretion may file written findings of facts and conclusions of law at a later date.

Service Instructions:

The Clerk's office is directed to serve a copy of this order on interested non−CM/ECF users.

*All references to "Debtor" shall include and refer to both of the debtors in a case filed jointly by two individuals.

# EXHIBIT 3

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

## NOTICE OF SYSTEMIC DOCKET TAMPERING, EX PARTE COMMUNICATION, AND COMPROMISE OF JUDICIAL INTEGRITY

Interested Party, John Michael Cohan ("Interested Party"), hereby files this Notice to document for the record a pattern of misconduct that has irrevocably compromised the integrity of this proceeding. To prevent further discrepancies, this Notice and its exhibits have been paginated by the filer as "001 to 182" throughout in the bottom right hand corner of each page.

## 1. EVIDENCE OF SYSTEMIC DOCKET TAMPERING PROVEN BY TRUSTEE'S COUNSEL

The official docket is not an accurate record. The Interested Party has obtained from counsel for the Chapter 7 Trustee the original, unaltered versions of Doc 406 and Doc 470. A side-by-side comparison of these originals and the current, altered versions on the public docket—provided as EXHIBIT AA—confirms the post-filing removal of at least five material exhibits, without any motion, hearing, or court order.

The missing exhibits from Docket 470, which are central to this case and related litigation, are:

- Exhibit I (Originally Part of Exhibit C of Docket 406): The Jacksonville Sheriff's Office Incident Report documenting probable cause for a violation of a court order during the §341 meeting.

- Exhibit II: Audio Waveform analysis of the spliced and altered official audio recording of the §341 meeting on April 17, 2025.

- Exhibit III: Evidence that the U.S. Trustee used the federal government shutdown as a shield to avoid service of process in a related federal lawsuit.

- Exhibit IV: Sworn affidavit from an eyewitness confirming the U.S. Trustee was notified of an active restraining order and knowingly allowed the restrained party to participate in the §341 meeting.

- Exhibit V: Declaration from a 12-year former FINRA attorney stating the U.S. Trustee "invented confirmations of fraud" that did not exist in the Examiner's Report.

The originals, as confirmed by Trustee counsel, are attached as EXHIBIT DD (email from Trustee's counsel confirming receipt of originals from PACER).

This post-filing alteration of the official record without judicial authorization violates the Court's ministerial duty to maintain a complete and unaltered record under 28 U.S.C. § 753 and constitutes a fundamental breach of due process. See *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999) ("The record on appeal consists of 'the original papers and exhibits filed in the district court.' ... An appellate court cannot consider what is not in the record."); *In re F.A. Potts & Co., Inc.*, 807 F.2d 1121, 1125 (3d Cir. 1986) (A record on appeal must be "sufficient to permit a meaningful review.").

## 2. CONCEALMENT OF EVIDENCE OF A VERIFIED CRIME

The suppression of Exhibit I/Exhibit C is particularly egregious. This police report, filed as 406-3 by the Clerk's office, formed the basis for a finding of probable cause that has now resulted in a signed arrest warrant from the Florida State Attorney's Office. The removal of this evidence from the docket constitutes the concealment of a verified crime.

This concealment created a corrupted record that actively misled and prejudiced against the Interested Party. The police report was surgically removed from its original filing, Docket 406, as documented in Docket 470 and 474 (EXHIBIT CC). The official docket (Docket 406) as of today, 11-12-2025, clearly shows the sequence 406-1, 406-2, 406-4, 406-5, 406-6, proving the logical sequence was broken to specifically target and remove the law enforcement report (406-3). Operating under the reasonable assumption that the court's docket was intact, the Interested Party was misled into filing Docket 428, which incorporated the by-then-altered Docket 406. This chain of events proves the docket tampering is not a single isolated act, but a deliberate, continuing process that prejudices the Interested Party's ability to litigate.

The knowing concealment of evidence material to the proceedings, particularly evidence of criminal conduct, is a grave abuse of the judicial process that undermines the integrity of the entire case. See *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (establishing that the suppression of evidence favorable to a party violates due process); *United States v. Bagley*, 473 U.S. 667, 678 (1985) (extending *Brady* to the suppression of evidence affecting the credibility of a witness).

## 3. ATTEMPTED OFF-THE-RECORD INTIMIDATION

On November 5, 2025, following the Interested Party's efforts to document this tampering on November 4, 2025, he received a voicemail from Court staff attempting to initiate an unrecorded, ex parte discussion, stating it was "imperative" he call back. The Interested Party rightly declined to engage in such off-the-record communications, which undermine the principle of a transparent record. A screenshot of the missed call and voicemail transcript are attached as EXHIBIT BB.

Such *ex parte* communications are strictly prohibited and create an appearance of impropriety that erodes public confidence in the judiciary. See *Code of Conduct for U.S. Judges*, Canon 3(A)(4) ("A judge should neither initiate nor consider ex parte communications on the merits of a pending or impending matter."); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 313 (3d Cir. 2004) ("Ex parte proceedings are generally disfavored because they run the risk of denying interested parties notice and an opportunity to be heard.").

## 4. THE RECORD IS CORRUPTED, UNRELIABLE FOR APPEAL, AND DEMONSTRATES A COVER-UP ATTEMPT

The combination of:

(i) secret docket alterations [without notice, order or motion] to conceal evidence of a crime and professional misconduct,
(ii) the concealment of a verified crime, and
(iii) attempted off-the-record coercion

demonstrates a fundamental breakdown of due process. The official record is irredeemably corrupted and unreliable for appellate review, as the full scope of missing exhibits cannot be known. Based on the established facts, the only reasonable conclusion is a deliberate effort to hide the fact that crimes were committed during these proceedings and subsequently removed from the official record to taint the record on appeal.

The cumulative effect of this misconduct has rendered the proceedings fundamentally unfair. When the record is so compromised that meaningful appellate review is impossible, the only remedy is to vacate the tainted orders. *Bonner v. Henderson*, 147 F.2d 459, 461 (5th Cir. 1945) ("It is a fundamental rule that an appellate court cannot review proceedings not incorporated in the record."). Furthermore, this pattern of conduct would cause a reasonable observer to question the Court's impartiality, warranting judicial disqualification under 28 U.S.C. § 455(a). *Liteky v. United States*, 510 U.S. 540, 548 (1994).

This Notice serves to document this breakdown for the record and preserves the Interested Party's evidentiary position for appeal or oversight review. This full Notice is being preserved in the Washington D.C. matter, 25-cv-2009, as Document 34.

Dated: 11-12-2025

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103

iustusprocessus@outlook.com

## Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system.

EXHIBITS:

- EXHIBIT AA: Side-by-side comparison of originals vs. current docket.

- EXHIBIT BB: Screenshot and transcript of voicemail from Court staff.

- EXHIBIT CC: Doc. 474

- EXHIBIT DD: Trustee's email confirming receipt of the originals from PACER.

# EXHIBIT AA

# Doc. 406
# Original Filing from
# Chapter 7 Trustee's Counsel

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

FILED INTAKE USBC
AUG 21 '25 PM 2:59

## MOTION FOR JUDICIAL NOTICE OF BANKRUPTCY COURT FRAUD, JUDICIAL NOTICE OF "*FINRA*" REPORT AND NOTICE OF DEFAULTS FILED

Pursuant to Federal Rule of Evidence 201 and Federal Rule of Civil Procedure 55(a), Movant moves this Court to:

1. Take judicial notice of fraud and misconduct in the related bankruptcy case (In re Genie Investments NV Inc., Case No. 3:24-bk-00496-BAJ); and

2. Take judicial notice of the default request entered against Defendant United States Trustee (UST) Scott Bomkamp for failure to respond to allegations of fraud, retaliation, and obstruction of justice.

I. JUDICIAL NOTICE OF BANKRUPTCY COURT FRAUD

The Court should take notice of the following incontrovertible facts:

A. The Examiner's Report Was Fraudulent

1. Fabricated Contract Terms

   - Invented nonexistent terms like "ICA reserves" and "ICA deposits" ("*FINRA*" Report)

   - Ignored the actual BELOC Agreement terms permitting Genie to use "ICA Payments" as revenue.

2. Ignored Critical Evidence

   - The Examiner failed to interview Scott Oh, Genie's attorney who approved the Velanos joint venture.

   - Omitted evidence that affiliate loans were legitimate business transactions.

B. U.S. Trustee's Bad-Faith Reliance on the Report

1. Knowingly Misrepresented Findings

   - Claimed the Examiner "confirmed fraud" when no such finding existed.

2. Retaliatory Timeline

- Filed second conversion motion after Plaintiff asserted legal rights tied to allegations.

3. Violated Due Process

   - Alteration of 341 meeting audio to conceal misconduct

Legal Basis: Brady violations, obstruction of justice (18 U.S.C. §§ 1503, 1512).


C. Law Enforcement Verification of Misconduct

1. Pending Criminal Complaint

   - The Jacksonville Sheriff's Office (Complaint No. 2025-0471040) has confirmed the validity of Plaintiff's allegations regarding the 341 meetings' misconduct.

   - Sergeant Yarber explicitly stated a warrant will be requested suggesting:

   - The U.S. Trustee allowed unlawful conduct during the third 341 meeting after being informed in person of the restraining order after trial.

   - The transcript alteration constitutes potential evidence tampering and obstruction of justice

2. Judicial Notice Requested

   - This Court should take notice that:

   - A law enforcement agency has independently corroborated Movant's claims regarding the violation.

   - The U.S. Trustee's misconduct extends beyond civil fraud into criminal investigation territory (obstruction, witness intimidation).

Legal Basis: FRE 201(b)(2) (facts "capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned").


D. Pursuant to Fla. Stat. § 90.202(6) and Federal Rule of Evidence 201(b)(2), Movant supplements the record with the following official law enforcement actions corroborating fraud upon this Court:

1. Substantiated Violation of Florida Injunction

The Jacksonville Sheriff's Office (JSO) Incident Report No. 2025-0471040 (attached) establishes:

   - Probable cause exists for arrest of Freedom under:

   - Fla. Stat. § 741.31(4)(a) (knowing violation of domestic violence injunction)

- Fla. Stat. § 843.02 (obstruction by unauthorized bankruptcy participation)

- Trustee Bomkamp received actual notice of the active injunction (April 9, 2024 in person, in court, with witnesses) yet:

  - Permitted Freedom's unlawful telephonic participation (April 17, 2024 341 meeting)

  - Violated Fla. Stat. § 741.31(8) (duty to enforce injunctions)


## 2. Witness Corroboration

The sworn affidavit of Mr. David Hughes confirms:

- Firsthand observation of Freedom's voice participation

- Trustee's refusal to terminate the violator's presence call despite objection

- Violation of Fla. R. Jud. Admin 2.420 (court record integrity)


## 3. Judicial Duty Under Florida Law

This Court must now:

1. Preserve all evidence under Fla. Stat. § 90.404(2)(c) (pattern of misconduct)

2. Refer Trustee misconduct to The Florida Bar (Rule Reg. Fla. Bar 3-7.2)


## II. DEFENDANT'S DEFAULT AND PATTERN OF MISCONDUCT

### 1. Failure to Respond

- Three (3) out of four (4) were properly served, yet the default was denied after hours on procedural grounds the same day, underscoring the *consistent inconsistent* application of procedural requirements throughout multiple forums. The two (2) named defendants, including the licensed professional UST Scott Bomkamp, were properly served via certified mail and have not answered the Complaint despite the proper service.


### 2. Judicial Notice of Parallel Misconduct

- The same U.S. Trustee:
  - Knowingly allowed the violation of a restraining order during Movant's 341 meeting.
  - Altered official audios to conceal evidence.
  - Relied on flawed reports in bankruptcy court.

3. Evidence of Bad Faith

- Attached: Former FINRA attorney's report (Exhibit A), official audios to conceal evidence and shield himself from liability (Exhibit B). Jacksonville Sheriff's Office (JSO) and State Attorney's Office Investigation (Exhibit C).

Legal Basis: Fed. R. Civ. P. 55(a) (default for failure to plead).


III. *NOTICE OF DEFAULT AND DEMAND FOR MINISTERIAL ACTION: This notice is filed to document the failure of Judge Jason L. Calhoun (3:25-cv-00643) and United States Trustee Scott Bomkamp (3:25-cv-02009) to respond to lawfully submitted filings, resulting in pending clerk and judicial defaults. Under governing procedural and ethical rules, their non-responsiveness warrants ministerial judicial intervention. This notice demands immediate corrective action or, alternatively, seeks judicial acknowledgment of default to permit further remedies, including motions for reconsideration, sanctions, or appellate review as appropriate.*


IV. RELIEF REQUESTED

1. Take Judicial Notice of Exhibits A-B-C-D-E under FRE 201 and within 48 hours set an evidentiary hearing on the unaddressed matters.

2. Judicial Notice of Entry of Default Request against United States Trustee Scott Bomkamp.

3. Referral to DOJ for investigation of:

   - Obstruction of justice (18 U.S.C. § 1503).

   - Witness intimidation (18 U.S.C. § 1512).


CONCLUSION

The UST fraud in the bankruptcy case directly corroborates Movant's claims here. The JOS and SOA investigations demonstrate merit, and judicial notice is required to prevent further obstruction by any governmental party.


The United States Trustee cannot escape this record. If they decline to answer, the allegations stand admitted as true by default. If they attempt to answer falsely, they expose themselves to perjury against clear, objective evidence. Either path confirms the misconduct: silence is admission, and contradiction is self-incrimination. The Court cannot permit these allegations to be ignored without creating an appellate record of concealment.

**Washington, D.C. District Court:**

Fed. R. Civ. P. 55(a), LCvR 83.23, 28 U.S.C. § 351, 28 U.S.C. § 455, 28 U.S.C. § 586, Fed. R. Bankr. P. 9024

**Northern District of Alabama Federal Court:**

Fed. R. Civ. P. 55(a), 28 U.S.C. § 455, 28 U.S.C. § 1361, 28 U.S.C. § 351, AL ND L.R. 83.1(e), 28 U.S.C. § 586(a)(3), 28 U.S.C. § 144, 28 U.S.C. § 451, 5th Amendment U.S. Constitution, Fed. R. Civ. P. 60(b)

**Florida Middle District Bankruptcy Court:**

Fed. R. Bankr. P. 7055, 11 U.S.C. § 105(a), 28 U.S.C. § 157(e), 28 U.S.C. § 586(a)(3), Fed. R. Bankr. P. 9011

**Cross-Venue (Judicial/Trustee Accountability):**

28 U.S.C. §§ 351–364, Code of Conduct for U.S. Judges Canon 3, U.S. Constitution Fifth Amendment

**Additional Remedies [but not limited to] (Mandamus):**

28 U.S.C. § 1361 (Mandamus)

Dated: 08-21-2025

Respectfully submitted in Good Faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103

**Certificate of Service**

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system.

# EXHIBIT A

 **Outlook**

**Rough draft -- opposition to US Trustee's 2d motion**

From Adam Walker <adam@awsecuritieslaw.com>

Date Fri 7/19/2024 6:09 PM

To   David from Genie Investments <dhughes@genieinvestments.com>; John from Genie Investments
     <jmcohan@genieinvestments.com>

📎 1 attachment (42 KB)
Opp UST's 2d Motion Appt Trustee.docx

Attached is the current draft opposition to the US Trustee's motion. It's far from complete -- needs to
be bulked up in places and I'll add much more polish to it. This lets you see where I'm heading with it
and how I see it coming together.

Let me know if you have concerns, questions, suggestions, etc.


Adam Walker
AW Securities Law
www.awsecuritieslaw.com
(816) 226-6476

On March 5, 2024, the U.S. Trustee (UST) filed a motion seeking various forms of relief, including appointment of a Chapter 11 trustee. In that motion, the UST asserted that Genie was a fraudulent enterprise that "simply stole" money from its customers and other ostensible creditors and invested $9.0 million of "other people's money" in an "obviously suspect" transaction. *See* Doc. 20 ¶¶ 16-17. The UST based these allegations solely on the statements of 18 small-business owners. Following a hearing on the motion, the Court granted only the request to appoint an Examiner. The UST subsequently selected and appointed an Examiner. After a lengthy investigation, the Examiner issued a Report. According to the UST, the Examiner's Report[1] ("Report") fully supports the UST's earlier allegations. Nothing could be further from the truth.

Insisting that the Report corroborates its entrenched position reveals much more about the UST than about Genie. For starters, it demonstrates that the UST has failed to review the Report with a critical eye. Had it done so, it would have realized that the Report is rife with inaccuracies, unsupported conclusions, and omissions of material and pertinent evidence. Among other things, the Report inaccurately reports fundamental aspects of Genie's business. It states falsely, for example, that Genie required a borrower seeking a Business Expansion Line of Credit ("BELOC") to enter a separate Due Diligence Agreement,[2] and that, "In some instances, borrowers paid McMann [Commercial Lending] an upfront initial application fee related to a loan with Genie NV."[3]

The Report contains numerous other errors, many of them attributable to the Examiner's decision to ignore foundational documents (e.g., contracts) and other evidence that would be crucial to any reasonable analysis. As a result, the Report persistently mischaracterizes Genie's operating history, revenues, management, the terms of its relationships with borrowers and business partners, and its future

---

[1]    Doc. 146.

[2]    Report ¶ [ ]. In fact, Genie only required borrowers who sought bridge loans to complete the Due Diligence Agreement, which is evident upon even a cursory review of the relevant contracts.

[3]    Report ¶ [ ]. This never happened. Any borrower who paid fees of any kind to McMann did not have a BELOC Agreement with Genie but was presumably in a lender-borrower relationship with McMann.

prospects. This taints the entire Report and undermines the instant motion, in which the UST cherry-picks snippets that support its existing positions without bothering to determine whether those passages are supported by evidence or analysis.

The UST's insistence that the Report "confirms" key allegations from its initial motion not only shows its lack of concern for the Report's investigative and analytical rigor, but also reveals its willingness to mischaracterize and embellish the Report's contents to suit its purposes. This is most notable in connection with the UST's allegations of fraud. At the very outset of its motion, the UST brazenly claims that the Report "confirms" that a trustee "must be appointed in this case because the Debtor engaged in fraud and gross mismanagement..."[4] But nowhere in the 51-page Report is there any finding or conclusion that Genie engaged in fraud. The UST simply invented this "confirmation" and attributed it to its hand-selected Examiner.

> ### 1. *The BELOC Agreement, which both the Examiner and the UST ignore, makes clear that ICA Payments received by Genie were not required to be held in trust and therefore did not constitute "customer funds."*

Much of the Report proceeds from a false premise: that Genie was required to hold ICA Payments in trust for the borrowers who paid them. It is indisputable that the BELOC Agreement between Genie and its borrowers governs what ICA Payments are and how they are treated. The Report, however, offers no analysis of the relevant portions of the BELOC Agreement. It never acknowledges, for example, that the BELOC Agreement does not require or even suggest that ICA Payments will be held in escrow or in trust. The Report does, however, reference an email from McMann's principal, a demand letter from McMann's law firm, and an affidavit from one borrower as support for the Examiner's conclusion that ICA Payments remained "customer funds" after their receipt by Genie.[5] It should go without saying that the opinions of interested parties are insufficient, standing alone, to override the unambiguous language of

---

[4]    Second Motion, at 2.

[5]    Report ¶¶ 81, 39, 82.

a written contract. As already noted, however, the Report simply ignores the actual contract language. Worse yet, the Report attempts to support its flawed premise by inventing and repeating improper terminology – i.e., "ICA reserves" and "ICA deposits"[6] – despite the fact that those terms do not appear anywhere in the BELOC Agreement in connection with ICA Payments.

This shoddy methodology results in a fatally flawed Report. Because Genie was never required to hold ICA Payments in trust for customers, those payments constituted revenue realized by Genie. The possibility that ICA Payments could later become refundable does not change that. In this way, Genie is no different from a retail store or service provider that promises refunds to unsatisfied purchasers. Nordstrom and Wal-Mart do not have to set aside money received from customers until all opportunity for a refund has passed and neither did Genie. Thus, the funds Genie received in the form of ICA Payments were its own funds, not "customer funds," as the Examiner asserts.

The UST displays a similar lack of interest in engaging with the relevant source material. Its motion contains this bewildering passage:

> The Examiner *found* that the purpose of the ICA funds was to pre-pay interest amounts on customer loans. The Examiner also *found* that the Debtor provided contradictory statements regarding whether ICA funds were supposed to held in trust for customers or could be utilized in the ordinary course of the Debtor's business.[7]

The "purpose" of ICA Payments[8] is not, however, a question of fact for the Examiner to "find," but a matter of contract interpretation. Statements by any person, whether a party to the BELOC Agreement or not, cannot change its intrinsic meaning.[9]

---

[6]    *E.g.,* Report ¶¶ 25, 29, 39, 77, 79, 80.

[7]    Second Mot., at 5-6 (¶ 11) (emphases added).

[8]    The term "ICA funds" is a misnomer – that phrase never appears in the BELOC Agreement – and presumably refers to "ICA Payments."

[9]    Further, the UST mischaracterizes both the Report and the testimony cited therein when it refers to Genie's statements as "contradictory."

Neither the Report nor the instant motion even feints at contract interpretation and, as such, neither offers any basis for a determination that Genie had an obligation to hold ICA Payments in trust as customer funds. That alone is grounds to deny the instant motion. Nonetheless, a brief discussion of the relevant contract provisions dispels the faulty premise that ICA Payments were to be held in trust and that they therefore constituted "customer funds."

Regarding the ICA Payments, the BELOC Agreements only require the Lender to create an Interest Credit Account "on the books and records of the Lender," note "a credit equal to the ICA Payment" in the Interest Credit Account, use the Interest Credit Account to satisfy interest payments as they become due, and refund ICA Payments if and when specified preconditions are satisfied.[10] The BELOC Agreement does not restrict how the Lender may use ICA Payment funds between their receipt and a potential termination by the Borrower. As such, the Lender has no obligation to hold those funds in trust.

Further, the BELOC Agreements openly anticipate the Lender using the ICA Payment, rather than holding it in trust. Section 13.7(a) sets forth when and under what conditions a Borrower may be due an ICA Payment refund. It states that the Lender has up to 40 days to return the ICA Payment after the Borrower properly terminates the BELOC Agreement and requests a refund of the ICA Payment. Section 13.7(c), however, states that this 40-day period is "tolled during the pendency of a Force Majeure event" and defines as one such event the "failure of the Lender's wholesale lender from performing [sic] under the terms of the agreement between the Lender and the wholesale lender." This tolling provision protects the Lender in the event of illiquidity caused by certain occurrences beyond its control, including the failure of a wholesale lender to perform its contractual obligations. If the BELOC Agreement required the Lender to hold ICA Payments in trust, then there would be no need to protect the Lender against a wholesale lender's failure to perform. But the BELOC Agreements clearly anticipated a situation where

---

[10]     BELOC Agmt. §§ 1.1, 3.5 13.7.

the Lender's ability to refund ICA Payments depends on a wholesale lender performing its contractual obligations to the Lender. Otherwise, the tolling provision in section 13.7(c) would be superfluous.

Courts applying Illinois law "look to the contract as a whole" and "attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Land of Lincoln Goodwill Indus. v. PNC Fin. Servs. Group*, 762 F.3d 673, 679 (7th Cir. 2014) (citations omitted). The interpretation the UST urges on the Court – that the BELOC Agreements require the Lender to hold the ICA Payments in trust and untouched – not only has no affirmative basis in the contracts' language but also ignores the provisions of Section 13.7(c) discussed above.

[add conclusion]

### 2. *The Report excludes evidence that Genie had a good-faith belief, based in part on guidance and advice from a reputable law firm, that the Velanos transaction was a sound investment.*

In October 2022, Genie received an offer to enter into a joint venture with Velanos Principal Capital (Velanos). The proposal called for Genie to provide $3.0 million in capital that Velanos, the joint venture's manager, would use to purchase and sell standby letters of credit (SBLCs) at a substantial profit. Before deciding whether to accept the offer, Genie engaged Scott Oh, a lawyer with Warren Law Group (WLG), to perform due diligence on the proposed deal, advise Genie on risks associated with it, and, if necessary, review and revise the joint-venture agreement. According to his firm's website, Oh was an experienced attorney who "often advise[d] and facilitate[d] his clients in identifying, analyzing, and structuring...private placement opportunities, joint ventures, and other private capital transactions, conventional/unconventional asset-based credit facilities, credit enhancements, and corporate debt transactions." Oh advised Genie that SBLC trading was legitimate and that he was familiar with at least one person for whom Velanos and/or its CEO syndicated. Oh notably did not warn Genie either that the promised returns were too good to be true or that SBLC trading was a frequent vehicle for financial fraud.

Oh represented Genie from October 2022 to July 2023. During that time, he regularly consulted with Genie about the joint venture, reviewed multiple amendments to the Joint Venture Agreement, and communicated frequently with Velanos on Genie's behalf. At no time did Oh express to Genie any

concern that the joint venture was fraudulent. In late 2022, when Genie twice increased its capital contribution to the joint venture to a total of $9.0 million, Oh did not advise Genie against doing so. And when Velanos failed to make the payments required under the Joint Venture Agreement, Oh never told Genie that Velanos' various excuses were of questionable validity.

Although the Report states that the Examiner reviewed WLG's bank records, it does not appear that the Examiner interviewed Oh or WLG regarding the substance of Oh's work for Genie. The Report castigates Genie for entering into the joint venture with Velanos. "Neither Velanos nor Wearmouth were registered investment advisors and the returns promised by Velanos pursuant to the Velanos JVA were 100% in 30 days and profit participation that would have resulted in a 900% return, which should have raised a red flag."[11] The Report gives no consideration to the fact that Genie sought out and hired a professional to apprise it of risks and concerns raised by the joint venture. Oh claimed to have a history of helping clients "joint ventures," "conventional/unconventional asset-based credit facilities," and other transactions, which suggests he was an appropriate choice for the job. The Report nonetheless concludes that Genie's decision to enter the joint venture constitutes "gross mismanagement." In doing so, it discounts the effect on Genie of obtaining what it believed to be competent legal guidance from a partner with a reputable law firm.

The UST not only seizes on this conclusion, but expands on it, stating that "Debtor engaged in gross mismanagement, *at a minimum*, in its dealings with Velanos..."[12]

---

[11]     Report ¶ 83.

[12]     Second Mot., at 2.

**3.**  *The UST cannot meet its burden of demonstrating that Genie's loans to affiliated entities constituted either fraud or gross mismanagement.*

The UST's motion brands loans from Genie to six affiliated entities as "fraudulent transfers and not true loans."[13] The UST alleges, almost in passing, direct evidence of fraudulent intent in the transfers from Genie to its affiliate, Better Methods. This allegation falls well short of the movant's burden of proof ad, moreover, misstates the Report's findings. According to the UST, "The direct evidence is the express purpose of the transfers to Better Methods as asset protection from the Debtor's creditors."[14] As support for this allegation, the UST cites paragraph 188 of the Examiner's Report, which states, in its entirety, "According to [John Michael] Cohan, Better Methods is an asset management company set up to protect the Debtor's assets and the assets of the Debtor's clients." The "express purpose" alleged by the UST as direct evidence of fraud is itself a fraud, fabricated by the UST and unsupported by any evidence in the Report or elsewhere in the record of this case.

The UST also asks the Court to find circumstantial evidence of fraudulent intent. The UST recites the "badges of fraud" often employed by Federal Courts of Appeals in determining, for purposes of 11 U.S.C. § 548, whether a debtor "intended to hinder, delay, or defraud" creditors. The UST's motion only addresses some of those factors, however, and does so in an extremely cursory fashion. It states, for example:

- The transfers at issue occurred "while the Debtor was being sued or was under threat of suit for failing to fund loans."[15]

- Genie received "less than the equivalent value based on the non-market nature of the loans."[16]

- The funds were transferred "in a concealed manner attempting to disguise the fraudulent transfers as loans."[17]

---

[13]    Second Mot. ¶ 16.
[14]    Second Mot. ¶ 17.
[15]    Second Mot. ¶ 19.
[16]    Second Mot. ¶ 19.
[17]    Second Mot. ¶ 19.

The UST does not even bother to cite the Report or any other evidence for these claims. That alone should doom the Motion, as unsupported, conclusory statements cannot establish fraud. But because the UST also urges the Court to find that the loans to affiliates constituted "gross mismanagement," a proper analysis of the factors referenced in the motion is warranted.

### The timing of Genie's transfers to affiliates does not support a finding of constructive fraud.

The UST asserts that "Debtor's funds were transferred (1) to insiders or affiliates; (2) while the Debtor was being sued or under threat of suit for failing to fund loans…"[18] This is flatly and blatantly false, and it reveals the UST's unwillingness to grapple with inconvenient facts.

The affiliate transfers identified in the Report were all made pursuant to loan agreements executed in September 2022. At that time, Genie had successfully funded dozens of loans, had never failed to issue a properly requested refund of an ICA Payment, had not agreed to contribute any money to the joint venture with Velanos, and had never been sued or threatened with suit related to an alleged breach of a BELOC Agreement.

The Report provides details about each of these transfers, which happened piecemeal over the course of many months, with nearly all of them taking place between September 2022 and July 2023.[19] What these schedules show is that Genie's transfers to affiliated entities generally took place before Genie was insolvent or had any reason to believe that it would become insolvent, and before any putative creditor had sued Genie or threatened suit against it.[20]

With respect to Genie's transfers to its affiliate, Zoomeral, Inc., the Report shows that the net total transferred by Genie to Zoomeral in that period – through roughly 60 separate transactions – was $1,771,555.74. Of these transactions, 14 occurred before Genie entered the joint venture with Velanos.

---

[18]    Second Mot. ¶ 19.

[19]    Report, Exh. 4 (showing approximately 60 separate transfers from Genie to Zoomeral, Inc., between September 12, 2022, and July 28, 2023); Report ¶¶ 147, 159 (showing more than 25 transfers apiece from Genie to Capitulum Homes and Cald Holdings between September 2022 and July 2023).

[20]    Genie received its first threat of legal action regarding an ICA Payment refund in [October?] 2023.

Another 20 occurred before Velanos was late making any payments due under the Joint Venture Agreement.

Further, as discussed above, Genie had a good-faith belief until at least July 2023 that it would shortly receive a payment of at least $9.5 million from Velanos pursuant to the Joint Venture Agreement. Considering that the vast majority of the affiliate transfers at issue occurred before that time, the evidence clearly shows that few, if any, of those transfers occurred when Genie was insolvent or had reason to believe it would soon become insolvent.

### Genie received reasonably equivalent value for the affiliate transfers

The UST alleges that Genie transferred funds to affiliates "for less than the equivalent value based on the non-market nature of the loans."[21] By "non-market nature," the UST refers to the low interest rate, the absence of personal guarantees, the absence of a periodic-payment requirement, and the borrowers' option to extend the loan term for 10 years. The UST bases its allegation that the terms of these loans would not have been available to Genie's affiliates in the open market on the Report. For its part, the Report is devoid of any evidence regarding the terms that might have been available to the affiliate borrowers.

The UST fails to note that each of the loans at issue requires repayment in full of the loan's principal amount. The loans are not forgivable. Moreover, even assuming that the loan terms were more favorable than the affiliate borrowers would likely have found elsewhere, this fact alone cannot prove that Genie received less than "reasonably equivalent value" in exchange for the money lent. When evaluating the value received in exchange for allegedly fraudulent transfers, Courts recognize various "indirect" benefits – i.e., benefits that may not be easily

---

[21]     Second Motion ¶ 19.

reduced to a specific dollar value. Here, the indirect benefits of the affiliate loans are real and were shared with the Examiner.

Zoomeral, Inc., was the affiliate that received the largest amount of loans from Genie. Zoomeral built and operated the software platform that Genie and its borrowers used for communication, record management, and _____. In 2022-23, the Zoomeral platform was an integral part of Genie's business, and both Genie and Zoomeral expected that improvements to Zoomeral's systems would benefit both companies. Genie loaned money to Zoomeral so that it could hire developers to improve the software platform, establish a relationship with one or more payment processors, and create a marketing campaign to attract more potential borrowers. Genie reasonably expected its loan to Zoomeral to result in more business for Genie.

Better Methods

Capitulum

Cald

Case law research:

- "All of the authorities agree that the appointment of a trustee under § 1104 is an extraordinary remedy. Therefore, the evidence to support the appointment of a trustee must be clear and convincing." In re Tyler, 18 B.R. 574, 577 (S.D. Fla. 1982)

- Standard of proof: clear and convincing evidence that appointment of trustee is warranted

- Strong presumption that DIP shall remain in control of its business while in bankruptcy

- Court must "weigh the benefits that would be derived by the appointment of a Trustee against the expense of the appointment." *General Oil Distributors*, 42 Bankr. 402, at 409 (Bankr. E.D. N.Y. 1984).

- As a general rule, . . . a trustee will not be appointed where affiliate transactions are called into question, unless the movant can demonstrate that the transactions were improper, detrimental to the debtor estate, or were actually fraudulent." Norton Bankruptcy Law & Practice § 53.04; *See also General Oil Distributors*, supra, 42 Bankr. at 402; *All Sun Juices*, 34 Bankr. 162 (Bankr. M.D. Fla. 1983).

- Bankruptcy Court order appointing a trustee constitutes a final order that is immediately appealable to 11th Circuit

- "…it now appears the appointment of a trustee, saddling the estate with the expense of a appointed trustee and additional counsel, and the removal of the Garbaczes from management may well seriously handicap the Debtor's efforts to maintain its customer base and operating income." *In re Waterworks, Inc.*, 538 B.R. 445, 465-66 (Bankr. N.D. Ill. 2015)

# EXHIBIT B

# EXHIBIT C

| COHAN JOHN M<br>**PLAINTIFF** | **VS** | EKUTA PEACE A<br>**DEFENDANT** | ***SUPERIOR COURT OF NEW JERSEY***<br>***Chancery Division-Family Part***<br>**CIVIL ACTION ORDER** | | |
|---|---|---|---|---|---|
| ☐Obligor   ☒Obligee | | ☒Obligor   ☐Obligee | **COUNTY:**  CAMDEN COUNTY<br>**DOCKET #:**  FD-04-000180-22<br>**CS#:**  CS91596095A | | |

| HEARING DATE<br>10/25/2021 | WELFARE / U.I.F.S.A. # | |
|---|---|---|
| With appearance by: ☒PL  ☐Atty for PL _____ | ☒DEF  ☒Atty for DEF  DAWN BLAKELY HARPER ESQ | |
| ☐IV-D Atty | ☐County Probation Division | |

This matter having been opened to the court by: ☒Plaintiff  ☐Defendant  ☐County Welfare Agency  ☐Probation Division  ☐Family Division for an ORDER for: ☐Paternity  ☐Support  ☐Visitation  ☒Custody  ☐Enforcement  ☐Modification / Increase / Decrease  ☐Termination / Continuation  ☐Status Review

1.  State with Continuing Exclusive Jurisdiction: NEW JERSEY

| | CHILD'S NAME | BIRTH DATE | | CHILD'S NAME | BIRTH DATE |
|---|---|---|---|---|---|
| **2A.** | Fi███ A█████ | 05/20/2021 | **2E.** | | |
| **2B.** | | | **2F.** | | |
| **2C.** | | | **2G.** | | |
| **2D.** | | | **2H.** | | |

3.  ☐  PATERNITY of child(ren) (# above) _____ is hereby established and an ORDER of paternity is hereby entered.

4.  ☐  A Certificate of Parentage has been filed for child(ren) # _____ above.

5.  ☐  IT IS HEREBY ORDERED THAT: The obligor shall pay support to the New Jersey Family Support Payment Center in the amount of:

| | | | | | payable | | effective | |
|---|---|---|---|---|---|---|---|---|
| Child Support | + | Spousal Support | + | Arrears Payment | = Total | Frequency | | Date |

NOTE: Child support is subject to a biennial cost-of-living adjustment in accordance with R. 5:6B

| 6. | ☐ | Child Support Guidelines Order  ☐Deviation reason: |
|---|---|---|
| 6A. | ☐ | Worksheet attached. |

7.  ☐  Support order shall be administered and enforced by the Probation Division in the county of Venue, **CAMDEN COUNTY**.

8.  ☐  ARREARS calculated at establishment hearing are based upon amounts and effective date noted above and total  $ _____

9.  ☐  ARREARS indicated in the records of the Probation Division, are $ _____ as of 10/25/2021

10.  ☐  GROSS WEEKLY INCOMES of the parties, as defined by the Child Support Guidelines, upon which this ORDER is based:  OBLIGEE $ _____  OBLIGOR $ _____

11.  ☐  INCOME WITHHOLDING is hereby ORDERED on current and future income sources, including:
Name of income source: _____     Address of income source: _____

OBLIGOR SHALL, however, make payments AT ANY TIME that the full amount of support and arrears is not withheld.

12.  ☐  Medical Support coverage as available at reasonable cost shall be provided for the
☐ child(ren)  ☐ spouse, by   Obligor ☐   Obligee ☐   Both ☐
The parties shall pay unreimbursable health care expenses of the child(ren) which exceed $250.00 per child per year as follows:
_____ % Obligor     _____ % Obligee
**Pursuant to R 5:6A the obligee shall be responsible for the first $250.00 per child per year.**
If coverage is available, Medical Insurance I.D. card(s) as proof of coverage for the child(ren)/spouse shall be provided immediately upon availability to the Probation Division by the:   ☐ Obligee   ☐ Obligor

| 12A. | ☐ | Insurance currently provided by a non-party: _____ |
|---|---|---|
| 12B. | ☐ | Health insurance benefits are to be paid directly to the health care provider by the insurer. |

13.  ☐  GENETIC TESTING to assist the court in determining paternity of the child(ren)(# _____ ) is hereby ORDERED. The county welfare agency or the foreign jurisdiction in the county of residence of the child shall bear the cost of said testing, without prejudice to final allocation of said costs. If defendant is later adjudicated the father of said child(ren), defendant shall reimburse the welfare agency for the costs of said tests, and pay child support retroactive to _____

| 13A. | ☐ | Issues of reimbursement reserved. | 13B.☐ | Issue of retroactive order reserved. |
|---|---|---|---|---|

2734-01-01-0004779-0002-001545



CS526,81376318



| DOCKET# | FD-04-000180-22 | CS# CS915960096A | HEARING DATE | 10/25/2021 | PAGE 2 OF 2 |

| | | |
|---|---|---|
| 14. | ☐ | This matter is hereby RELISTED for a hearing on _____ before _____. A copy of this ORDER shall serve as the summons for the hearings. No further notice for appearance shall be given. Failure to appear may result in a default order, bench warrant, or dismissal. Reason for relist: |
| 15. | ☐ | AN EMPLOYMENT SEARCH MUST BE CONDUCTED BY THE OBLIGOR. Written records of at least # ____ employment contacts per week must be presented to the Probation Division. If employed, proof of income and the full name and address of employer must be provided immediately to the Probation Division. |
| 16. | ☐ | SERVICE upon which this order is based:                                      ☐ Diligent Inquiry |
| | | Personal Service   ☐ Certified Mail:          ☐ Refused              ☐ Regular Mail (not returned) |
| | | Date:          ☐ Signed by: _____    ☐ Returned Unclaimed   ☐ Other: |
| 17. | ☐ | A BENCH WARRANT for the arrest of the obligor is hereby ORDERED. The obligor was properly served with notice for court appearance on _____, and failed to appear. (Service noted above). An amount of $_____ shall be required for release. |
| | ☐ | THE OBLIGOR IS HEREBY INCARCERATED in the _____ County Jail until the obligor pays $ _____ or until further notice of this court. The obligor was found to be not indigent and had the ability to pay the support order for reasons indicated below. |
| 18. | ☐ | EFFECTIVE _____ FUTURE MISSED PAYMENT(S) numbering _____ or more may result in the issuance of a warrant, without further notice. |
| 19. | ☐ | A LUMP SUM PAYMENT OF $_____ must be made by the obligor by _____, or a bench warrant may be issued without further notice. |
| 20. | ☐ | This complaint / motion is hereby DISMISSED: (reason) _____ |
| 21. | ☐ | Order of Support is hereby TERMINATED effective _____, as _____, Arrears accrued prior to effective date, if any, shall be paid at the rate and frequency noted on page number one of this ORDER. |
| 22. | ☐ | THIS ORDER IS ENTERED BY DEFAULT. The ☐ obligor ☐ obligee was properly served to appear for a hearing on _____ and failed to appear.       22A ☐ Affidavit of Non-Military Service is filed. |
| 23. | ☒ | It is further ORDERED: John Cohan shall continue to have sole legal custody of the minor child, A▮▮▮▮▮ (dob: 05-20-2021). The minor child shall not be removed from the State of New Jersey.DCP&P shall be immediately notified to investigate this matter. At DCP&P's recommendation, the parenting time for Peace Ekuta is suspended until further Order of this Court and until an appropriate parenting time supervisor is designated. |

EXCEPT AS PROVIDED HEREIN, ALL PRIOR ORDERS OF THE COURT REMAIN IN FULL FORCE AND EFFECT.

I hereby declare that I understand all provisions of this ORDER recommended by a Hearing Officer and I waive my right to an immediate appeal to a Superior Court Judge.

PLAINTIFF                                        DEFENDANT
ATTORNEY FOR PLAINTIFF                           ATTORNEY FOR DEFENDANT

| | | |
|---|---|---|
| 24. | ☐ | INTAKE CONFERENCE BY AUTHORIZED COURT STAFF: PROBATION PREPARED CHILD SUPPORT ORDER |
| 25. | | The parties request the termination of all Title IV-D services and consent to direct payment of support. They are advised that all monitoring, collection, enforcement and location services available under Title IV-D of the Social Security Act are no longer in effect. I understand I may reapply for Title IV-D services. |

_____ obligee                              _____ obligor

| | | |
|---|---|---|
| 26. | ☐ | Copies provided at hearing to ☐ obligee ☐ obligor  26A. ☐ Copies to be mailed to ☐ obligee ☐ obligor |

TAKE NOTICE THAT THE ATTACHED NEW JERSEY UNIFORM SUPPORT NOTICES ARE INCORPORATED INTO THIS ORDER BY REFERENCE AND ARE BINDING ON ALL PARTIES.

So Recommended to the Court by the Hearing Officer:
Date                        H.O.                        Signature

So Ordered by the Court:
Date 10/25/2021        Judge SHERRI SCHWEITZER                        J.S.C.

_Sherri Schweitzer_
Signature



| COHAN JOHN M<br>PLAINTIFF | VS | EKUTA PEACE A<br>DEFENDANT | SUPERIOR COURT OF NEW JERSEY<br>Chancery Division-Family Part<br>CIVIL ACTION ORDER |
|---|---|---|---|
| ☐ Obligor  ☒ Obligee | | ☒ Obligor  ☐ Obligee | COUNTY:   CAMDEN COUNTY |
| **HEARING DATE**<br>04/28/2023 | | **WELFARE / U.I.F.S.A. #** | DOCKET #:   FD-04-000160-22<br>CS#:   CS91596096A |

With appearance by: ☒ PL   ☒ Atty for PL   LOUIS G GUZZO   ☐ DEF   ☐ Atty for DEF

☐ IV-D Atty   ☐ County Probation Division

This matter having been opened to the court by: ☒ Plaintiff ☐ Defendant ☐ County Welfare Agency ☐ Probation Division ☐ Family Division
for an ORDER for: ☐ Paternity ☐ Support ☒ Visitation ☒ Custody ☐ Enforcement ☐ Modification / Increase / Decrease
☐ Termination / Continuation ☐ Status Review

**1.**   State with Continuing Exclusive Jurisdiction: NEW JERSEY

| | CHILD'S NAME | BIRTH DATE | | CHILD'S NAME | BIRTHDATE |
|---|---|---|---|---|---|
| 2A. | FREEDOM AURA | 05/20/2021 | 2E. | | |
| 2B. | | | 2F. | | |
| 2C. | | | 2G. | | |
| 2D. | | | 2H. | | |

**3.**   ☐   PATERNITY of child(ren) (# above) _____ is hereby established and an ORDER of paternity is hereby entered.

**4.**   ☐   A Certificate of Parentage has been filed for child(ren) # _____ above.

**5.**   ☐   IT IS HEREBY ORDERED THAT: The obligor shall pay support to the New Jersey Family Support Payment Center in the amount of:

| | | | | | | payable | | effective | |
|---|---|---|---|---|---|---|---|---|---|
| Child Support | + | Spousal Support | + | Arrears Payment | = | Total | | Frequency | Date |

NOTE: Child support is subject to a biennial cost-of-living adjustment in accordance with R. 5:6B

| 6. | ☐ | Child Support Guidelines Order   ☐ Deviation reason: |
|---|---|---|
| 6A. | ☐ | Worksheet attached. |
| 7. | ☐ | Support order shall be administered and enforced by the Probation Division in the county of Venue, CAMDEN COUNTY. |
| 8. | ☐ | ARREARS calculated at establishment hearing are based upon amounts and effective date noted above and total<br>$ |
| 9. | ☐ | ARREARS indicated in the records of the Probation Division, are $ _____ as of 04/28/2023 |
| 10. | ☐ | GROSS WEEKLY INCOMES of the parties, as defined by the Child Support Guidelines, upon which this ORDER is based:<br>OBLIGEE $ _____     OBLIGOR $ _____ |
| 11. | ☐ | INCOME WITHHOLDING is hereby ORDERED on current and future income sources, including:<br>Name of income source:                          Address of income source:<br><br>OBLIGOR SHALL, however, make payments AT ANY TIME that the full amount of support and arrears is not withheld. |
| 12. | ☐ | Medical Support coverage as available at reasonable cost shall be provided for the<br>☐ child(ren) ☐ spouse, by   Obligor ☐   Obligee ☐   Both ☐<br>The parties shall pay unreimbursable health care expenses of the child(ren) which exceed $250.00 per child per year as follows:<br>_____ % Obligor                          _____ % Obligee<br>Pursuant to R 5:6A the obligee shall be responsible for the first $250.00 per child per year.<br>If coverage is available, Medical Insurance I.D. card(s) as proof of coverage for the child(ren)/spouse shall be provided immediately upon availability to the Probation Division by the:<br>☐ Obligee                  ☐ Obligor |
| 12A. | ☐ | Insurance currently provided by a non-party: |
| 12B. | ☐ | Health insurance benefits are to be paid directly to the health care provider by the insuror. |
| 13. | ☐ | GENETIC TESTING to assist the court in determining paternity of the child(ren) (#_____) is hereby ORDERED. The county welfare agency or the foreign jurisdiction in the county of residence of the child shall bear the cost of said testing, without prejudice to final allocation of said costs. If defendant is later adjudicated the father of said child(ren), defendant shall reimburse the welfare agency for the costs of said tests, and pay child support retroactive to _____ |
| 13A. | ☐ | Issues of reimbursement reserved. | 13B. ☐ Issue of retroactive order reserved. |



CS526.89243348

DOCKET # FD-04-000180-22 | CS# CS01886090A | HEARING DATE 04/26/2023 | PAGE 2 OF 2

| 14. | ☐ | This matter is hereby RELISTED for a hearing on _____ before _____. A copy of this ORDER shall serve as the summons for the hearings. No further notice for appearance shall be given. Failure to appear may result in a default order, bench warrant, or dismissal. Reason for relist: |
| 15. | ☐ | AN EMPLOYMENT SEARCH MUST BE CONDUCTED BY THE OBLIGOR. Written records of at least # _____ employment contacts per week must be presented to the Probation Division. If employed, proof of income and the full name and address of employer must be provided immediately to the Probation Division. |
| 16. | ☐ | SERVICE upon which this order is based:  ☐ Diligent Inquiry<br>Personal Service  ☐ Certified Mail:  ☐ Refused  ☐ Regular Mail (not returned)<br>Date:  ☐ Signed by: _____  ☐ Returned Unclaimed  ☐ Other: |
| 17. | ☐ | A BENCH WARRANT for the arrest of the obligor is hereby ORDERED. The obligor was properly served with notice for court appearance on _____ and failed to appear. (Service noted above.) An amount of $_____ shall be required for release. |
|  | ☐ | THE OBLIGOR IS HEREBY INCARCERATED in the _____ County Jail until the obligor pays $_____ or until further notice of this court. The obligor was found to be not indigent and had the ability to pay the support order for reasons indicated below. |
| 18. | ☐ | EFFECTIVE _____ FUTURE MISSED PAYMENT(S) numbering _____ or more may result in the issuance of a warrant, without further notice. |
| 19. | ☐ | A LUMP SUM PAYMENT OF $_____ must be made by the obligor by _____, or a bench warrant may be issued without further notice. |
| 20. | ☐ | This complaint / motion is hereby DISMISSED: (reason) _____ |
| 21. | ☐ | Order of Support is hereby TERMINATED effective _____, as _____. Arrears accrued prior to effective date, if any, shall be paid at the rate and frequency noted on page number one of this ORDER. |
| 22. | ☐ | THIS ORDER IS ENTERED BY DEFAULT. The ☐ obligor ☐ obligee was properly served to appear for a hearing on _____ and failed to appear.   22A ☐ Affidavit of Non-Military Service is filed. |
| 23. | ☒ | It is further ORDERED: THIS MATTER having come before the Court on April 26, 2023; Plaintiff/Father, Mr. John Cohan, appearing and represented by Mr. Lou Guzzo, Esq.; Defendant/Mother, Ms. Peace Ekuta (A/K/A Peace Freedom), not appearing despite having proper notice of these proceedings; and the Court having read the parties' certifications and having heard the testimony of the Plaintiff; and for good cause shown: IT IS on this 26th day of April 2023,1. For the reasons stated on the record, Plaintiff/Father, Mr. John M. Cohan's, request to relocate with the minor child is hereby GRANTED.2. Defendant/Mother, Ms. Peace Ekuta, is permitted to have Facetime visits with the minor child. Facetime visits shall be supervised at all times, sight and sound, by maternal grandfather, Mr. Jethro Ekuta, or another individual approved by Plaintiff/Father, Mr. Cohan.3. Should Defendant/Mother, Ms. Peace Ekuta, obtain mental health treatment and provide proof of same to the Court upon filing of the appropriate Motion, with a recommendation from a licensed therapist that Ms. Ekuta having unsupervised parenting time would not pose a threat to the child, the Court shall consider that request.4. Plaintiff/Father, Mr. John Cohan, retains SOLE legal and physical custody of the minor child, Aura Freedom (DOB: 05/20/2021). |
|  |  | **EXCEPT AS PROVIDED HEREIN, ALL PRIOR ORDERS OF THE COURT REMAIN IN FULL FORCE AND EFFECT.** |
|  |  | I hereby declare that I understand all provisions of this ORDER recommended by a Hearing Officer and I waive my right to an immediate appeal to a Superior Court Judge. |
|  |  | PLAINTIFF                                                    DEFENDANT<br>ATTORNEY FOR PLAINTIFF                        ATTORNEY FOR DEFENDANT |
| 24. | ☐ | INTAKE CONFERENCE BY AUTHORIZED COURT STAFF:<br>☐ PROBATION PREPARED CHILD SUPPORT ORDER |
| 25. | ☐ | The parties request the termination of all Title IV-D services and consent to direct payment of support. They are advised that all monitoring, collection, enforcement and location services available under Title IV-D of the Social Security Act are no longer in effect. I understand I may reapply for Title IV-D services. |
|  |  | obligee                                                          obligor |
| 26. | ☐ | Copies provided at hearing to ☐ obligee ☐ obligor   26A ☒ Copies to be mailed to ☒ obligee ☒ obligor |
|  |  | TAKE NOTICE THAT THE ATTACHED NEW JERSEY UNIFORM SUPPORT NOTICES ARE INCORPORATED INTO THIS ORDER BY REFERENCE AND ARE BINDING ON ALL PARTIES. |
|  |  | So Recommended to the Court by the Hearing Officer:<br>Date:                            H.O.                            Signature |
|  |  | So Ordered by the Court:<br>Date 04/26/2023                    Judge LINDA EYNON                    J.S.C.<br>*Linda W. Eynon*<br>Signature |





P-0851
Rev. 02/2022

**Foreign Order of Protection Affidavit**

Jacksonville Sheriff's Office

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

Petitioner _John Michael Cohen_

vs.

Respondent _Peace Ayelo Ekete_

### Foreign Order of Protection Affidavit

Pursuant to 741.315, Florida Statutes, [Name of affiant] personally appeared and being duly sworn states the following:

1. My name is _John Michael Cohen_ . I am of sound mind and over the age of eighteen.

2. Further, I am a protected person who has presented a certified copy of a foreign order of protection to the Office of the Sheriff and requests that the same be registered in the injunction registry. The foreign order of protection is from the State of _New Jersey_, in the court _____, with case number _FD-04-190-22_ . The foreign order is currently in effect as written and has not been superseded by any other order.

   _V-04-02494_

3. The foreign order of protection was issued on _3-3-22_ .

4. To the best of my knowledge (choose one):

   _____ respondent was served with the order of protection because I was present at time of service;

   _____ respondent told me that he or she was served;

   _____ another named person told me respondent was served; or,

   _____ respondent told me that he or she knows of the content of the order and date of the return hearing.

I hereby certify under penalty of perjury, that I have read the foregoing and that the statements and facts in this order are true and correct to the best of my knowledge and belief.

_5-29-25_                              _Dismiss 411 without prejudice 1-308, 1-1_
**Date**                               **Signature**

                                       Affiant (print name): _John Michael Cohen_
                                       **Agency:** Jacksonville Sheriff's Office

Sworn to and signed before me this _29_ day of _May_, 20_25_ by the aforementioned Affiant [__] who is personally known to me or [X] who has produced _John M. Cohen_ as identification.

Signature: _____  #73983

                                       [__] Judge or [X] Police Officer or [__] Notary

_Maurice Greene_ (Printed Name)

Page 1 of 1

Page 1 of 4

**State of New Jersey**

# Prevention of Domestic Violence Act

**CAMDEN** County, Superior Court, Chancery Division, Family Part

[✓] **Final Restraining Order (FRO)**    [ ] **Amended Final Restraining Order**

| Docket Number FV-04-002494-22 | Plaintiff's Date of Birth 07/05/1989 | Defendant's Sex F | Defendant's Race BLACK |
|---|---|---|---|
| In the Matter of Plaintiff COHAN JOHN M | Defendant's Social Security Number XXX-XX-3105 | Date of Birth 01/15/1993 | Height 5_07 | Weight 120 |
| Defendant FREEDOM PEACE M | | Eye Color BROWN | Hair Color BROWN |
| Home Phone Number ********* | Work Phone Number ********* | Distinguishing Features (Scars, Facial Hair, Etc.) | |
| Home Address *** CONFIDENTIAL *** | | Driver's License Number E49656206151934 | |
| Work Address *** CONFIDENTIAL *** | | State | Driver's License Expiration Date |

The Court having considered plaintiff's Complaint dated    02/10/2022    seeking an ORDER under the Prevention of Domestic Violence Act, having established jurisdiction over the subject matter and the parties pursuant to N.J.S.A. 2C:25-17 et seq, and having found that defendant has committed an act of domestic violence, and all other statutory requirements having been satisfied:

It is on this **03** day of **March** **2022**, ORDERED that:

| Sought | Granted | Part I—Relief |
|---|---|---|

**DEFENDANT:**

1. [✓] [✓] You are prohibited against future acts of domestic violence.

2. [✓] [✓] You are barred from the following locations:
   - [✓] Residence(s) of Plaintiff    [✓] Place(s) of employment of Plaintiff
   - [ ] Other

3. You are prohibited from having <u>any</u> oral, written, personal, electronic, or other form of contact or communication with:
   - [✓] [✓] Plaintiff
   - [ ] [ ] Other(s) (List names & relationship to Plaintiff):

4. You are prohibited from making or causing anyone else to make harassing communications to:
   - [✓] [✓] Plaintiff
   - [ ] [ ] Other(s) (Same as above or list names & relationship to Plaintiff):

5. You are prohibited from stalking, following, or threatening to harm, to stalk or to follow:
   - [✓] [✓] Plaintiff
   - [ ] [ ] Other(s) (Same as above or list names & relationship to Plaintiff):

6. You must pay emergent monetary relief (describe amount and method):
   - [ ] [ ] Plaintiff: $ _____    Effective: _____
   - [ ] [ ] Dependent: $ _____    Effective: _____

7. [ ] [ ] Other appropriate relief:
   Defendant (including substance abuse, mental health or other evaluations and subsequent treatment):

8. [✓] [✓] Psychiatric evaluation:
   DEF MUST COMPLETE PSYCHIATRIC EVALUATION AND DCP&P EVALUATION BEFORE APPLYING FOR UNSUPERVISED PT

9. [ ] [ ] Intake monitoring of conditions and restraints (specify):

**NOTICE TO DEFENDANT:** A violation of any of the provisions listed in this order may constitute either civil or criminal contempt pursuant to N.J.S.A. 2C:25-30 and may result in your arrest, prosecution, and possible incarceration, as well as an imposition of a fine or jail sentence. Only a court can modify any of the terms or conditions of this court order.

Revised 4/2017, CN: 10211 (DVFRO)

Prevention of Domestic Violence Act
Page 2 of 4

| ☑ Final Restraining Order (FRO) | ☐ Amended Final Restraining Order | FV-04-002494-22 |
|---|---|---|

| Sought | Granted | Part I – Relief continued |
|---|---|---|

**DEFENDANT:**

10. ☑ | ☑ | **PROHIBITIONS AGAINST POSSESSION OF WEAPONS:** You are prohibited from possessing any and all fire-arms or other weapons and must immediately surrender these firearms, weapons, permits to carry, applications to purchase firearms and firearms purchaser ID card to the officer serving this court Order. Failure to do so can result in your arrest and incarceration.

Other Weapon(s) (describe)   NONE PERMITTED

**PLAINTIFF:**

11. ☑ | ☑ | You are granted exclusive possession of (residence or alternate housing, list address only if specifically known to defendant):

111 RICH AVE, BERLIN NJ 08009

12. ☑ | ☑ | Plaintiff is granted temporary custody of (specify name(s)):
AURA FREEDOM PURSUANT TO FD-04-180-22

13. ☐ | ☐ | Other appropriate relief:
Plaintiff (describe)

Child(ren) (describe)

**LAW ENFORCEMENT OFFICER**

You are to accompany to scene, residence, shared place of business, other (indicate address, time, duration & purpose):

☐ | ☐ | Plaintiff:

☐ | ☐ | Defendant:

**WARRANT TO SEARCH FOR AND TO SEIZE WEAPONS FOR SAFEKEEPING**

☐ | To any law enforcement officer having jurisdiction – this Order shall serve as a warrant to search for and seize any issued permit to carry a firearm, application to purchase a firearm and firearms purchaser identification card issued to the defendant and the following firearm(s) or weapon(s).

1. You are hereby commanded to search the premises for the above described weapons and/or permits to carry a firearm, application to purchase a firearm and firearms purchaser ID card and to serve a copy of this Order upon the person at the premises or location described as:

2. You are hereby ordered in the event you seize any of the above described weapons, to give a receipt for the property so seized to the person from whom they were taken or in whose possession they were found, or in the absence of such person to have a copy of this Order together with such receipt in or upon the said structure from which the property was taken.

3. You are to execute this Order immediately or as soon thereafter as is practicable.
☐ Anytime   ☐ Other: _____

4. You are further ordered, after the execution of this Order, to promptly provide the Court with a written inventory of the property seized per this Order.

---

**NOTICE TO DEFENDANT:** A violation of any of the provisions listed in this order may constitute either civil or criminal contempt pursuant to *N.J.S.A.* 2C:25-30 and may result in your arrest, prosecution, and possible incarceration, as well as an imposition of a fine or jail sentence. Only a court can modify any of the terms or conditions of this court order.

Revised: 4/2017, CN: 10211 (DVFRO)

**Prevention of Domestic Violence Act**

Page 3 of 4

| ☑ **Final Restraining Order (FRO)** | ☐ **Amended Final Restraining Order** | **FV-04-002494-22** |
|---|---|---|

| Sought | Granted | Part II – Relief |
|---|---|---|

**DEFENDANT:**

| # | Sought | Granted | |
|---|---|---|---|
| 1. | ☐ | ☐ | You acknowledge parentage of: _____ |
| 2. | ☐ | ☐ | You must submit to genetic testing: _____ |
| 3. | ☐ | ☑ | No parenting time (visitation) until further order; |
| 4. | ☐ | ☐ | Parenting time (visitation) pursuant to (prior FV, FM, or FD Order) # _____ is suspended, a hearing is scheduled for: _____ |
| 5. | ☑ | ☑ | Parenting time (visitation) is ordered as follows: (specify drop-off and pick-up times and locations, participation of or supervision by designated third party): PURSUANT TO FD-04-180-22, DEF SHALL ENJOY SUPERVISED PARENTING TIME BY DEF'S FATHER, JETHRO EKUTA; PARENTING TIME TO BE ARRANGED BETWEEN PLA AND DEF'S FATHER |
| 6. | ☐ | ☐ | Risk assessment ordered (specify by whom): _____ Return Date: _____ |
| 7. | ☐ | ☐ | You must provide compensation as follows: (Appropriate notices have been attached as part of this Order): |
| | ☐ | ☐ | Emergent support – Plaintiff: $_____ |
| | ☐ | ☐ | Emergent support – Dependent(s): $_____ |
| | | ☐ | Interim support - Plaintiff: $_____ |
| | | ☐ | Interim support – Dependent(s): $_____ |
| | ☐ | ☐ | Ongoing Plaintiff support: $_____ Effective: _____ |
| | | | Paid via income withholding through the: _____ Probation Div. _____ |
| | ☐ | ☐ | Other: _____ |
| | ☐ | ☐ | Ongoing child support: $_____ Effective: _____ |
| | | | Paid via income withholding through the: _____ Probation Div. _____ |
| | ☐ | ☐ | Other: _____ |
| 8. | ☐ | ☐ | Medical coverage for plaintiff: _____ |
| 9. | ☐ | ☐ | Medical coverage for dependent(s): _____ |
| 10. | ☐ | ☐ | Compensatory damages to plaintiff: $_____ |
| 11. | ☐ | ☐ | Punitive damages (describe): $_____ |
| 12. | ☐ | ☐ | You must pay compensation to (specify third party and/or VCCO, and describe): |
| 13. | ☐ | ☐ | You must participate in a batterers' intervention program (specify): |
| 14. | ☐ | ☐ | You must make ☐ rent ☐ mortgage payments (specify amount(s) due date(s) and payment manner): |
| 15. | ☐ | ☐ | Defendant is granted temporary possession of the following personal property (describe): |
| 16. | ☐ | ☐ | Defendant is granted temporary custody of (specify name(s)): |

☑ You must submit to fingerprinting and other identification procedures as required by law pursuant to *N.J.S.A.* 53:1-15.

☐ You must pay a civil penalty of $_____ ($50.00 to $500.00 per *N.J.S.A.* 2C:25-29) to: _____ within _____ days. You will be charged a $2.00 transaction fee for each payment or partial payment that you make.

☑ Waived due to extreme financial hardship because: PER JUDGE'S ORDER _____

| Sought | Granted | |
|---|---|---|

**PLAINTIFF:**

| 17. | ☐ | ☐ | Plaintiff is granted temporary possession of the following personal property (describe): |
|---|---|---|---|

**NOTICE TO DEFENDANT:** A violation of any of the provisions listed in this order may constitute either civil or criminal contempt pursuant to *N.J.S.A.* 2C:25-30 and may result in your arrest, prosecution, and possible incarceration, as well as an imposition of a fine or jail sentence. Only a court can modify any of the terms or conditions of this court order.

Revised: 4/2017, CN: 10211 (DVFRO)

Prevention of Domestic Violence Act                                      Page 4 of 4

| ☑ Final Restraining Order (FRO) | ☐ Amended Final Restraining Order | FV-04-002494-22 |

**Comments:**
THE DEFENDANT WAS PRESENT AT THE TIME THE FRO/AFRO WAS ISSUED ON 03/03/2022

**Addendum:**

This Order is to become effective immediately and shall remain in effect until further Order of the Superior Court, Chancery Division, Family Part.

| 03/03/2022    10:26 AM | s/ LINDA W. EYNON |
| Date | Honorable |

## All Law Enforcement Officers Will Serve and Fully Enforce This Order.
## The Plaintiff Shall Not Be Arrested for a Violation of This Restraining Order.

- This Final Restraining Order Was Issued After Defendant Was Provided with Notice and the Opportunity to Be Heard and Should Be Given Full Faith and Credit Pursuant to the Violence Against Women Act of 1991, Sec. 40221, Codified at 18 U.S.C.A. S2265(A) and S2266.

- If Ordered, Sufficient Grounds Have Been Found By This Court for the Search and Seizure of Firearms and Other Weapons as Indicated in This Court Order.

- Defendant Shall Not Be Permitted to Possess any Weapon, ID Card or Purchase Permit While This Order Is in Effect, or for Two Years, Whichever Is Greater.

### Notice to Plaintiff and Defendant

**IMPORTANT:** The parties cannot themselves change the terms of this Order on their own. This Order may only be changed or dismissed by the Family Court. The named defendant cannot have any contact with the plaintiff without permission of the court. If you wish to change the terms of this Order and/or you resume living together, you must appear before this court for a rehearing.

### Notice to Defendant

A violation of any of the provisions listed in this Order or a failure to comply with the directive to surrender all weapons, firearm permits, application or identification cards may constitute criminal contempt pursuant to N.J.S.A. 2C:29-9(b), and may also constitute violations of other state and federal laws which can result in your arrest and/or criminal prosecution. This may result in a jail sentence.

### Return of Service

| ☑ Plaintiff was given a copy of the Order by: | | |
| SERVED IN COURT B.SMITH | 10:28 AM  03/03/2022 | CAMDEN COUNTY FAMILY COURT |
| Print Name | Time and Date | Signature / Badge Number / Department |

| ☑ I hereby certify that I served the within Order by delivering a copy to the defendant personally: | | |
| SERVED IN COURT B.SMITH | 10:26 AM  03/03/2022 | CAMDEN COUNTY FAMILY COURT |
| Print Name | Time and Date | Signature / Badge Number / Department |

| ☐ I hereby certify that I served the within Order by use of substituted service as follows: | | |
| | | |
| Print Name | Time and Date | Signature / Badge Number / Department |

| ☐ Defendant could not be served (explain): | | |
| | | |
| Print Name | Time and Date | Signature / Badge Number / Department |

♿  The Courthouse is accessible to those with disabilities.  Please notify the Court if you require assistance.  ♿

Distribution:  Family Part,    Plaintiff,    Defendant,    Sheriff,    Other

Revised: 4/2017, CN: 10211 (DVFRO)

Case 3:24-bk-00496-BAJ   Doc 490   Filed 11/18/25   Page 47 of 206
Case 3:24-bk-00496-BAJ   Doc 406-3   Filed 08/21/25   Page 11 of 25
Case 3:25-cv-00643-WWB-PDB   Document 14   Filed 07/10/25   Page 1 of 4 PageID 558

United States District Court
Middle District of Florida
Jacksonville Division

JOHN MICHAEL COHAN,

    *Plaintiff,*

v.                                              NO. 3:25-cv-643-WWB-PDB

JUDGE JASON L. CALHOUN ET AL.,

    *Defendants.*

---

## Order

The plaintiff moves for leave to place his address under seal and for a protective order "preventing public disclosure of said address." Doc. 8. As the grounds for the motion, he represents these facts:

> The undersigned has been the subject of stalking, harassment, and intimidation directly tied to information obtained from public U.S. Middle District court dockets. An individual against whom a restraining order (from the State of New Jersey and a Foreign order of Protection recorded with the Jacksonville Sheriff's Office ...) has been issued has already appeared—uninvited and telephonically—at several federal courthouse proceedings ... after monitoring public filings. This presents a credible and ongoing threat to the safety of the undersigned and their minor child.

Doc. 8 at 1 (error in original).

The plaintiff includes with the motion a copy of the foreign order of protection affidavit, an email from a law firm regarding a copy of the final restraining order, and a copy of the final restraining order issued in New

Case 3:24-bk-00496-BAJ    Doc 490    Filed 11/18/25    Page 48 of 206
Case 3:24-bk-00496-BAJ    Doc 406-3    Filed 08/21/25    Page 12 of 25
Case 3:25-cv-00643-WWB-PDB    Document 14    Filed 07/10/25    Page 2 of 4 PageID 559

Jersey. Doc. 8-1. He also moves for leave to file the issued summonses under seal because they contain his address. Doc. 12.

Under Local Rule 1.11(b), a motion to seal must establish that filing the item is necessary; that sealing the item is necessary; and that using redaction, a pseudonym, or a means other than sealing is unavailable or unsatisfactory; must include a legal memorandum; and must propose a duration for the seal.

In determining whether a paper should be sealed, a court's discretion is guided by the presumption of public access. *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013). The presumption applies to any papers invoking judicial resolution on the merits. *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63–64 (11th Cir. 2013).

The presumption is not absolute; a court must consider the nature and character of the information and balance the public's right of access against a party's interest in confidentiality. *Perez-Guerrero*, 717 F.3d at 1235. The balancing depends on the facts and circumstances. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). Factors may include whether allowing public access would impair court functions or harm legitimate privacy interests, the degree and likelihood of injury if the documents are made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less restrictive alternative to sealing. *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

If the presumption does not apply, the court conducts an ordinary good-cause analysis. *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355–56 (11th Cir. 1987).

Case 3:24-bk-00496-BAJ    Doc 490    Filed 11/18/25    Page 49 of 206
Case 3:24-bk-00496-BAJ    Doc 406-3    Filed 08/21/25    Page 13 of 25
Case 3:25-cv-00643-WWB-PDB    Document 14    Filed 07/10/25    Page 3 of 4 PageID 560

Rule 5.2, Federal Rules of Civil Procedure, protects privacy:

(a) REDACTED FILINGS. Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:

(1) the last four digits of the social-security number and taxpayer-identification number;

(2) the year of the individual's birth;

(3) the minor's initials; and

(4) the last four digits of the financial-account number.

Fed. R. Civ. P. 5.2(a). "For good cause, the court may by order in a case: (1) require redaction of additional information; or (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court." Fed. R. Civ. P. 5.2(e).

Because the papers do not invoke judicial resolution on the merits, the good-cause standard applies. Considering the plaintiff's alleged safety concerns, the plaintiff shows good cause. The motion for leave to file the plaintiff's address under seal and for a protective order, Doc. 8, is **granted** to the extent that the clerk is directed to redact the plaintiff's mailing address from the motion and leave the address off the public docket. Because the plaintiff does not request sealing the motion itself, after redacting the plaintiff's address, the clerk must unseal the motion, Doc. 8. The motion for leave to file the issued summonses under seal, Doc. 12, is **granted** to the extent that the clerk's office is directed to redact the plaintiff's address from the issued summonses, Doc. 12-1, unseal the summonses, and file the summonses as separate docket entries. The plaintiff is responsible for redacting his address

3

Case 3:24-bk-00496-BAJ    Doc 490    Filed 11/18/25    Page 50 of 206
Case 3:24-bk-00496-BAJ    Doc 406-3    Filed 08/21/25    Page 14 of 25
Case 3:25-cv-00643-WWB-PDB    Document 14    Filed 07/10/25    Page 4 of 4 PageID 561

from any future filings. To comply with Rule 11(a), Federal Rules of Civil Procedure, he must file an unredacted version under seal and a redacted version on the public docket.

For future motions, the plaintiff must comply with the typography requirements in Local Rule 1.08, as supplemented by the standing order entered on January 13, 2021, available on the Court's website, https://www.flmd.uscourts.gov/sites/flmd/files/documents/flmd-berger-standing-order-on-revised-local-rules-6-21-mc-3-orl-78.pdf. *See also* Doc. 4 at 1 (directing the plaintiff to comply with the standing order); Doc. 5 (same).

**Ordered** in Jacksonville, Florida, on July 10, 2025.

*Patricia D. Barksdale*
Patricia D. Barksdale
*United States Magistrate Judge*

c:    John Michael Cohan

4

040

## AFFIDAVIT OF WITNESS—PROOF OF SERVICE TO U.S. TRUSTEE

**TO WHOM IT MAY CONCERN:**

I, David C. Hughes, declare under penalty of perjury as follows:

On April 9, 2024, at the Jacksonville federal courthouse, I personally witnessed my business partner, John M. Cohan, showed a copy of his Order of Protection to Mr. Bomkamp, the United States Trustee assigned to our bankruptcy matter. The Order of Protection involved Mr. Cohan's former partner, Peace, whom he had previously identified to Mr. Bomkamp during an earlier proceeding as a party who should not be permitted access to future calls or meetings.

Mr. Cohan clearly instructed Mr. Bomkamp to ensure that Peace would not be present on any future conference calls or 341 proceedings due to legitimate safety concerns for himself and his daughter.

However, during a subsequent 341 meeting held on or about April 17, 2024, I personally heard that John, was very upset that Peace was again present on the call, and Mr. Cohan once more brought this to Mr. Bomkamp's attention. Despite prior notice, her presence didn't appear to be restricted by Mr. Bomkamp.

There is no question in my mind that Mr. Cohan acted responsibly and in good faith, and that he has legitimate fears for the safety of himself and his child. It is deeply concerning and perplexing that Mr. Bomkamp failed to ensure that a person subject to a valid court-issued protective order was not excluded from subsequent proceedings.

I swear that the above statements are true and accurate to the best of my knowledge and belief, under penalty of perjury under the laws of the United States and the State of Florida.

Respectfully submitted,

David C. Hughes
2812 Pat Tillman Drive
Springfield, IL 62711
Email: davidchoatehughes@gmail.com

Dated: 5/9/2025

041

### _Your Case Information_

**Law Enforcement Agency:**    Jacksonville Sheriff's Office (JSO)
**Emergency:**    9-1-1 *(TTY Services Available)*
**JSO's Non-Emergency:**    (904) 630-0500
**JSO's Victim Advocates:**    (904) 630-1764
**JSO's General Information:**    (904) 630-7600

**Case Number:** 25 - 471040  @ 471178

**Date of Report:**    08/16    , 2025

**Incident Type:**    Written Threats to Kill
Violation of Injunction

**Officer's Name / I.D. Number:** P.T. Burke #81350

**VINE Pin Number:**    _____

Victim Information & Notification Everyday (VINE) – www.vinelink.com
*VINE provides custody status and criminal case information.*
*Registration is required for this service*
Toll-Free VINE Line:    1-877-VINE-4-FL / 1-877-846-3435
TTY: 1-866-847-1298

*Sgt Yarber 1pm "we will apply for a warrant to be issued."*

### _Local Resources_

**Certified Rape Crisis Center:** The Women's Center of Jacksonville
*(Rape Recovery Team)*
thewcj.org | 5644 Colcord Avenue, Jacksonville, FL 32211
Phone: (904) 722-3000 | 24-Hour Rape Crisis Hotline: (904) 721-7273

**Domestic Violence Center: Hubbard House**
hubbardhouse.org | 24-Hour hotline: (904) 354-3114 or
1-800-500-1119 | TTY: (904) 354-3958

**First Coast Crime Stoppers:** 1-866-845-TIPS (8477)
*More resources available on pages 16-18.*

3

 **Jacksonville Sheriff's Office**
**Incident (Offense)**

**Sheriff T.K. Waters**

**2025-0471040**

## Route To
Groups:
People:

---

## Incident Information
**Incident Location**
**1425 CHAFFEE RD S**
**JACKSONVILLE, FL 32221**
Sub-sector: **T2**    TAZ: **544**
Location Type:   **ONLINE**
Primary Weapon Used:   **THREAT / INTIMIDATION**
School Name:

Day/Date/Time Reported:    **Saturday, 08/16/2025 09:19**
Day/Date/Time Incident From: **Friday, 08/15/2025 17:28**  To: **Friday, 08/15/2025 17:28**
Is this a Corrections Information Report?: **NO**

School Number:

Incident Occurred:  **Outside Location**   Incident Occurred in the Parking Lot at this Location?: **NO**
**Miscellaneous**
Drug Activity:    **NOT APPLICABLE**         Drug Type:    **NOT APPLICABLE**         # of Offenses: 1
                                                                                        # of Victims: 1
MCI Case:    **YES**      Follow-up By: **Patrol**                                       # of Suspects: 1
Was Hate Crime Involved?: **NO**    Dating Violence Involved?: **NO**    Is Offense(s) Related to Domestic Violence?: **NO**
If not Domestic Violence, Is it Domestic Related?: **NO**    Any Children under 18 Involved as a Victim?: **NO**
**NIBIN Leads**

**Associated CCR Numbers**

---

## Offense(s)
#1    Statute #: **741.31(4)(A)**         Degree: **M1**    UCR Code: **9000**    Attempt Code: **Committed**
**VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE**
Criminal Activity Type:

---

## Victim #1 - COHAN, JOHN MICHAEL
Did victim invoke right to prevent the disclosure of personal info (Marsy's Law)?: **NO**
**Demographics**
Race: **WHITE**         Sex: **MALE**         Date of Birth: **07/05/1989**
Ethnicity: **NOT OF HISPANIC ORIGIN**
Primary Language: **English**  Secondary Language: **NOT APPLICABLE**
Age: **36**              Height (inches): **5'10"**          Weight (lbs): **170**
Hair Style: **NAPPY / UNKEMPT**   Hair Color: **BROWN**        Hair Length: **LONG**
Build: **THIN**              Eye Color: **BLUE**             Facial Hair: **BEARD**
Complexion: **PALE**   Voice: **NORMAL**
Clothing/Description:
**Contact Information**
Home Phone #:              Bus. Phone #:                Ext.:            Alt. Phone #:
Cell Phone #:    **(516) 547-2810**    Cell Phone Provider:
Email Address:
**Primary Identification**
Type of ID Given: **DRIVERS LICENSE**         ID: **C500███████**         Issuing State: **FLORIDA**
**Home Address**         **Mailing Address**         **Alternate Address**
███████████████
**JACKSONVILLE, FL ███**
Sub-sector: **T4** · TAZ: **456**
**Employment/School**
Employer:    **UK**                 Occupation: **UK**
School Last Attended:
**Alternate Contact Information**
Home Phone #:              Bus. Phone #:                Ext.:
Cell Phone #:              Cell Phone Provider:
Email Address:
**Other Information**
Residence Type: **CITY**     Residence Status: **RESIDENT**

---

## Incident (Offense)   2025-0471040 (Continued)

Drugs Involved?: **NO**     Alcohol Involved?: **NO**     Computer Involved?: **NO**   Mode of Travel: **FOOT**
Victim Type: **ADULT**   Injury Extent: **NONE**   Injury Type: **NOT APPLICABLE**
Hospital Victim Taken To: **NOT APPLICABLE**   Sexual Battery Type:

**Life Saving Measures**
Used?: **NO**     Type:                    Narcan Administered By:              Narcan Outcome:

**Weapon(s) Involved**
  Weapon(s):  **THREAT / INTIMIDATION**
**Victim Relationship to Offender(s):**
  Relationship:  **CHILD IN COMMON**   To:  Suspect (01) - FREEDOM, PEACE M
**Related Offenses**
    <unset>

---

### Suspect #1 - FREEDOM, PEACE M

**Demographics**
  Race: **BLACK**          Sex: **FEMALE**     Date of Birth: **01/15/1993**
  Ethnicity: **UNKNOWN**
  Primary Language: **English**   Secondary Language: **NOT APPLICABLE**
  Age: **32**               Height (inches): **5'05" to 5'06"**      Weight (lbs): **130 to 140**
  Hair Style:             Hair Color: **BLACK**            Hair Length:
  Build:                  Eye Color: **BROWN**             Facial Hair:
  Complexion: **DARK**   Voice: **UNKNOWN**
  Clothing/Description:  **UK**
  Place of Birth:  **UNKNOWN, UNKNOWN**
  Nicknames:
  Aliases:  **PEACE EKUTA**

**Distinguishing Marks (Scars, Marks, and Tattoos)**

**Contact Information**
  Home Phone #:            Bus. Phone #:              Ext.:            Alt. Phone #:
  Cell Phone #:  **UK**       Cell Phone Provider:
  Email Address:
**Primary Identification**
  Type of ID Given:  **DRIVERS LICENSE**        ID:  **204____**              Issuing State:  **DELAWARE**
Home Address              Mailing Address                Alternate Address

**Employment/School**
  Employer:  **UK**                     Occupation:  **UK**
  School Last Attended:
**CEW (Conducted Electric Weapon)**
  ECD Usage:
  RTR Written Related to This Incident?:  **NO**      RTR Incident Year:            RTR Incident #:
**Other Information**
  Drugs Involved?: **UNKNOWN**  Alcohol Involved?: **UNKNOWN**  Computer Involved?: **UNKNOWN**
  Mode of Travel: **UNKNOWN**   Juvenile?: **UNKNOWN**   Confessed?: **NO**
  Arrested?: **At Large**   Were Miranda Rights Given?: **NO**   Jail # Type: **NA**   Jail Booking #:
**Related Offenses**
    <unset>
**Life Saving Measures**
  Used?: **NO**     Type:                Narcan Administered By:            Narcan Outcome:

---

### Property #1 - Documents/ Personal or Business

  Quantity: **1**      Status: **NONE**
  Turned in at:  **NOT APPLICABLE**
  Manufacturer:                          Model:
  Serial Number:                         Color:
  Description:  **Copies of screenshots, injunction, and miscellaneous documents**
  Related Charge:  **#01: 741.31(4)(A) - VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE**
  Value Stolen or Damaged:          Value Recovered:          Victim/Complaint Signed Signature Card:  **N/A**
  Was Property Recovered From Vehicle?:  **NO**   Vehicle Property Recovered From:
**Property Owner:**

### JACKSONVILLE SHERIFF'S OFFICE
  Bus. Contact Name:  **P.T. BURKE ( #81350 )**   Bus. Contact Phone #:  **(904) 630-0500**   Ext.:

---

## Incident (Offense)   2025-0471040 (Continued)

**Received From:**
Victim (01) - COHAN, JOHN MICHAEL

### Additional Information

On 08/16/2025 at 0954, I responded to the Chaffee Public Library (1425 Chaffee Rd S) in reference to written threats to kill (CCR #25-471040) and a violation of injunction (this CCR). Upon arrival, I made contact with the victim, Mr. Cohan.

Note: Cohan and the suspect (Peace Freedom) were in an intimate relationship for 10 years and share a child ▮▮▮▮▮▮▮ together. Cohan has a foreign (New Jersey) Injunction (#FV-04-002494-22), which has been entered into Florida (#16-2025-AO-156901-FXXX-MA).

Cohan advised that on 04/09/2024 and 04/17/2024, Freedom telephonically (voice only) called in to his company's Federal Bankruptcy 341 hearing, knowing the injunction has been active since 03/03/2022. Cohan stated Freedom was not invited to the hearing, nor was she a part of the company. However, the hearing details were publicly available and the Federal Trustee (Mr. Bonkamp) allowed Freedom to remain in the hearing and ask questions. According to Cohan, Bonkamp was notified of the active injunction and still allowed Freedom to remain. Cohan stated Freedom never identified herself by her real name and he did not see her, but due to their long shared history he recognized her voice immediately.

When speaking to Sgt. P. Yarber #5134, Cohan advised during the bankruptcy hearings Freedom spoke directly to him.

Cohan also provided a typed "Affidavit to Witness Statement" from a Mr. Hughes, who corroborates his account of the violation of injunction during the bankruptcy hearings.

Cohan further advised that between 05/2025-06/29/2025, Freedom "poked" him on Pi KSY cryptocurrency app, which sends him notifications to "keep mining" for cryptocurrency. The app allows users in the same crypto mining circle to send fellow miners reminders to continue mining, but no actual talking/typing occurs. Cohan advised he was unable to remove Freedom from his group and he did not leave the group because he would lose all of his money/ crypto if he did.

It should be noted, Freedom's current location and contact information is unknown. Freedom's last police contact was in 2024 in Virginia, and her most recent driver's license is out of Delaware.

Because Cohan can reasonably identify Freedom's voice due to their history, Probable Cause exists to seek an arrest warrant for Freedom for violating the injunction.

The copies of the provided documents (property 1) were placed in the property room.

Case not cleared. Pending SAO disposition.

### Additional Question(s)

**Body Worn Camera Footage**

| 01 | Is there Body Worn Camera (BWC) footage for incident?: | YES |
|----|---------------------------------------------------------|-----|

**Risk Protection Order**

| | | |
|----|---------------------------------------------------------|-----|
| 01 | Subject poses a significant danger of causing personal injury to himself/herself or others: | NO |
| 02 | Subject owns, has care, custody or control of, or has the ability to purchase, possess, or receive firearm(s) and/or ammunition: | |
| 03 | Subject was involved in a recent act or threat of violence against himself/herself or others, whether or not such violence involved a firearm: | |
| 04 | Subject has made a threat of violence in the past 12 months against himself/herself or others: | |
| 05 | Subject is seriously mentally ill or has recurring mental health issues: | |
| 06 | Subject was a respondent of, or violated, a previous/existing injunction related to domestic, dating, sexual, or repeat violence and/or stalking: | |
| 07 | The subject has previously been issued an RPO: | |
| 08 | Subject has previously violated the provisions of an RPO: | |
| 09 | Subject has been convicted of, had adjudication withheld on, or pled nolo contendere to, a crime constituting domestic violence in any state: | |
| 10 | Subject has used, or threatened to use, against himself/herself or others, any weapons or physical force: | |
| 11 | Subject has unlawfully or recklessly used, displayed, or brandished a firearm: | |
| 12 | Subject has stalked another person: | |
| 13 | Subject has been arrested for, convicted of, had adjudication withheld, or pled nolo contendere to a crime or threat of violence in any other state: | |
| 14 | Is evidence to demonstrate the abuse of controlled substances or alcohol by the subject: | |
| 15 | Is evidence to demonstrate the subject has recently acquired firearm(s) or ammunition: | |
| 16 | Is there any other relevant information provided by a family/household member concerning the subject. (If yes, place information into the narrative): | |

**Investigative Resource Use**

## Incident (Offense)    2025-0471040 (Continued)

| | | |
|---|---|---|
| 1 | Use of LPR assisted in investigation?: | NO |
| 2 | Use of NIBN assisted in investigation?: | NO |
| 3 | Use of RTCC assisted in investigation?: | NO |

### Misc Information

Clearance Status: **CASE NOT CLEARED**    Clearance Code: **NOT APPLICABLE**    Date Case Was Cleared:

Case Not Cleared Type: **PENDING STATE ATTORNEY'S OFFICE DISP?**    Number of Cases Cleared:

Is there additional information included on a continuation report?: **NO**    Are there other Pertinent Reports?: **NO**

Did this incident qualify as a "Cargo Theft"?:

Is this a "TeleServ" report?: **NO**    Was victim provided options to obtain rights card?:

Option provided to victim?:

In your opinion is there significant reason to believe that the crime can be solved by a patrol follow-up investigation?:

Neighborhood Canvass Conducted?:

**Case Card Information Left with:  Person**

Victim (01) – COHAN, JOHN MICHAEL

**Handouts**

#1:   Case Information Card

**Bias Motivation(s)**

### Investigation Time #1

Hour(s): **03**    Minute(s): **00**    Cost Amount: **$144.72**

### Signature

**Signature(s)**

Reporting Officer #1:   **P.T. BURKE ( #81350 )**    Division: **PATROL**    Section/Unit: **ZONE 5**

Reporting Officer #2:   **N/A**    Division:    Section/Unit:

Report submitted on:   **08/16/2025 11:59**

Report Reviewer:   **P.G. YARBER II ( #5134 )**    Status: **Approved**

Report approved on:   **08/16/2025 17:11**



| **Jacksonville Sheriff's Office** | **Sheriff T.K. Waters** |
|---|---|
| **Incident (Offense)** | |
| **2025-0471178** | |

## Route To
*Groups:*
*People:*

## Incident Information
**Incident Location**
**1425 CHAFFEE RD S**
**JACKSONVILLE, FL 32221**

| | |
|---|---|
| *Day/Date/Time Reported:* | **Saturday, 08/16/2025 10:48** |
| *Day/Date/Time Incident From:* | **Friday, 08/15/2025 17:28  To:  Friday, 08/15/2025 17:28** |
| *Is this a Corrections Information Report?:* | **NO** |

*Sub-sector:* **T2**   *TAZ:* **544**
*Location Type:* **ONLINE**
*Primary Weapon Used:* **THREAT / INTIMIDATION**
*School Name:*                                              *School Number:*
*Incident Occurred:* **Outside Location**   *Incident Occurred in the Parking Lot at this Location?:* **NO**
**Miscellaneous**

| | | | |
|---|---|---|---|
| *Drug Activity:* **NOT APPLICABLE** | *Drug Type:* **NOT APPLICABLE** | | *# of Offenses:* **1** |
| | | | *# of Victims:* **1** |
| *MCI Case:* **NO** | *Follow-up By:* | *Is Offense(s) Related to Domestic Violence?:* **NO** | *# of Suspects:* **1** |
| *Was Hate Crime Involved?:* **NO** | *Dating Violence Involved?:* **NO** | | |
| *If not Domestic Violence, is it Domestic Related?:* **NO** | *Any Children under 18 Involved as a Victim?:* **NO** | | |

**NIBIN Leads**

**Associated CCR Numbers**

## Offense(s)

**#1**  *Statute #:* **836.10(1)**   *Degree:* **F2**   *UCR Code:* **130C**   *Attempt Code:* **Committed**
     **SEND WRITTEN THREAT TO KILL**
     *Criminal Activity Type:* **None/Unknown**

## Victim #1 - COHAN, JOHN MICHAEL
*Did victim invoke right to prevent the disclosure of personal info (Marsy's Law)?:* **NO**
**Demographics**

| | | |
|---|---|---|
| *Race:* **WHITE** | *Sex:* **MALE** | *Date of Birth:* **07/05/1989** |
| *Ethnicity:* **NOT OF HISPANIC ORIGIN** | | |
| *Primary Language:* **English**  *Secondary Language:* **NOT APPLICABLE** | | |
| *Age:* **36** | *Height (Inches):* **5'10"** | *Weight (lbs):* **170** |
| *Hair Style:* **NAPPY / UNKEMPT** | *Hair Color:* **BROWN** | *Hair Length:* **LONG** |
| *Build:* **THIN** | *Eye Color:* **BLUE** | *Facial Hair:* **BEARD** |
| *Complexion:* **PALE**  *Voice:* **NORMAL** | | |
| *Clothing/Description:* | | |

**Contact Information**

| | | | |
|---|---|---|---|
| *Home Phone #:* | *Bus. Phone #:* | *Ext.:* | *Alt. Phone #:* |
| *Cell Phone #:* **(516) 547-2810** | *Cell Phone Provider:* | | |
| *Email Address:* | | | |

**Primary Identification**
*Type of ID Given:* **DRIVERS LICENSE**          *ID:* **C500██████**          *Issuing State:* **FLORIDA**
**Home Address**                    **Mailing Address**                    **Alternate Address**
████████████
**JACKSONVILLE, FL ████**
*Sub-sector:* **T4**   *TAZ:* **456**
**Employment/School**

| | |
|---|---|
| *Employer:* **UK** | *Occupation:* **UK** |
| *School Last Attended:* | |

**Alternate Contact Information**

| | | |
|---|---|---|
| *Home Phone #:* | *Bus. Phone #:* | *Ext.:* |
| *Cell Phone #:* | *Cell Phone Provider:* | |
| *Email Address:* | | |

**Other Information**
*Residence Type:* **CITY**     *Residence Status:* **RESIDENT**

## Incident (Offense)   2025-0471178 (Continued)

**Drugs Involved?:** NO     **Alcohol Involved?:** NO     *Computer Involved?:* NO   **Mode of Travel:** UNKNOWN
**Victim Type:** ADULT   *Injury Extent:* NONE   *Injury Type:* NOT APPLICABLE
*Hospital Victim Taken To:* NOT APPLICABLE   *Sexual Battery Type:*

**Life Saving Measures**
*Used?:* NO     *Type:*                   *Narcan Administered By:*                   *Narcan Outcome:*
**Weapon(s) Involved**
   *Weapon(s):* THREAT / INTIMIDATION
**Victim Relationship to Offender(s):**
   *Relationship:* RELATIONSHIP UNKNOWN   *To:* Suspect (01) - UNKNOWN, UNKNOWN UNKNOWN
**Related Offenses**
   **#01: 836.10(1) - SEND WRITTEN THREAT TO KILL.**

## Suspect #1 - UNKNOWN, UNKNOWN UNKNOWN

**Demographics**
   *Race:* UNKNOWN          *Sex:* UNKNOWN     *Date of Birth:*
   *Ethnicity:* UNKNOWN
   *Primary Language:*   *Secondary Language:*
   *Age:*                *Height (inches):*                 *Weight (lbs):*
   *Hair Style:*          *Hair Color:* UNKNOWN          *Hair Length:*
   *Build:*              *Eye Color:* UNKNOWN           *Facial Hair:*
   *Complexion:* UNKNOWN   *Voice:* UNKNOWN
   *Clothing/Description:* UK
   *Place of Birth:* UNKNOWN
   *Nicknames:*
   *Aliases:*

**Distinguishing Marks (Scars, Marks, and Tattoos)**

**Contact Information**
   *Home Phone #:*            *Bus. Phone #:*                *Ext.:*            *Alt. Phone #:*
   *Cell Phone #:*   (904) 877-8022   *Cell Phone Provider:*
   *Email Address:*
**Primary Identification**
   *Type of ID Given:* NONE                *ID:*                          *Issuing State:*
**Home Address**              **Mailing Address**                **Alternate Address**

**Employment/School**
   *Employer:*   UK                      *Occupation:* UK
   *School Last Attended:*
**CEW (Conducted Electric Weapon)**
   *ECD Usage:*
   *RTR Written Related to This Incident?:* NO   *RTR Incident Year:*          *RTR Incident #:*
**Other Information**
   *Drugs Involved?:* UNKNOWN   *Alcohol Involved?:* UNKNOWN   *Computer Involved?:* UNKNOWN
   *Mode of Travel:* UNKNOWN   *Juvenile?:* UNKNOWN   *Confessed?:* NO
   *Arrested?:* At Large   *Were Miranda Rights Given?:* NO   *Jail # Type:* NA   *Jail Booking #:*
**Related Offenses**
   **#01: 836.10(1) - SEND WRITTEN THREAT TO KILL.**
**Life Saving Measures**
*Used?:* NO     *Type:*                   *Narcan Administered By:*                   *Narcan Outcome:*

## Subject #1 - FREEDOM, PEACE M

**Demographics**
   *Race:* BLACK            *Sex:* FEMALE     *Date of Birth:* 01/15/1993
   *Ethnicity:* UNKNOWN
   *Primary Language:* English   *Secondary Language:* NOT APPLICABLE
   *Age:* 32                *Height (inches):* 5'05" to 5'06"     *Weight (lbs):* 130 to 140
   *Hair Style:*          *Hair Color:* BLACK          *Hair Length:*
   *Build:* THIN          *Eye Color:* BROWN           *Facial Hair:* NONE
   *Complexion:* DARK   *Voice:* UNKNOWN
   *Clothing/Description:* UK
   *Place of Birth:* UNKNOWN, UNKNOWN
   *Nicknames:*
   *Aliases:* PEACE EKUTA

## Incident (Offense)   2025-0471178 (Continued)

**Distinguishing Marks (Scars, Marks, and Tattoos)**

**Contact Information**
Home Phone #:                          Bus. Phone #:                          Ext.:                          Alt. Phone #:
Cell Phone #:   **UK**                Cell Phone Provider:
Email Address:

**Primary Identification**
Type of ID Given:   **DRIVERS LICENSE**          ID:   2▒▒▒▒▒          Issuing State:   **DELAWARE**
Home Address                          Mailing Address                          Alternate Address

**Employment/School**
Employer:   **UK**                                    Occupation:   **UK**
School Last Attended:
ECD Usage:
RTR Written Related to This Incident?:   **NO**     RTR Incident Year:               RTR Incident #:
Drugs Involved?:   **UNKNOWN**          Alcohol Involved?:   **UNKNOWN**          Computer Involved?:   **UNKNOWN**
**Related Offenses**
      #01: 836.10(1) - SEND WRITTEN THREAT TO KILL
**Life Saving Measures**
Used?:   **NO**     Type:                          Narcan Administered By:                          Narcan Outcome:

### Property #1 – Documents/ Personal or Business
Quantity: 1          Status:   **NONE**
Turned in at:   **NOT APPLICABLE**
Manufacturer:                                              Model:
Serial Number:                                             Color:
Description:   **Copies of texts**
Related Charge:   **#01: 836.10(1) - SEND WRITTEN THREAT TO KILL**

Value Stolen or Damaged:                     Value Recovered:                          Victim/Complaint Signed Signature Card:   **N/A**
Was Property Recovered From Vehicle?:   **NO**     Vehicle Property Recovered From:   .
**Property Owner:**

### JACKSONVILLE SHERIFF'S OFFICE
Bus. Contact Name:   **P.T. BURKE ( #81350 )**     Bus. Contact Phone #:   **(904) 630-0500**   Ext.:
**Received From:**
   Victim (01) – COHAN, JOHN MICHAEL

### Additional Information
On 08/16/2025 at 0954, I responded to the Chaffee Public Library (1425 Chaffee Rd S) in reference to written threats to kill (this CCR) and a violation of injunction (CCR #25-471178). Upon arrival, I made contact with the victim, Mr. Cohan.

Note: Cohan and the subject (Peace Freedom) were in an intimate relationship for 10 years and share a child (Aura Freedom) together. Cohan has a foreign (New Jersey) injunction (#FV-04-002494-22), which has been entered into Florida (#16-2025-AO-156901-FXXX-MA).

Cohan advised yesterday (08/15/2025) he received threatening texts from phone number 904-877-8022. Excerpts of the text reads: "I will fucking KILL YOU." "You're gonna get knocked the fuck out..." "You're a dead man walking."

Cohan believes the sender of the texts is Freedom. However, a LInX and Simple Search of the phone number revealed the number is not registered to anyone.

It should be noted, Freedom's current location and contact information is unknown. Freedom's last police contact was in 2024 in Virginia, and her most recent driver's license is out of Delaware.

At this time, the suspect is unknown.

The copies of the texts (property 1) were placed in the property room.

Case suspended. Unable to identify suspect.

### Additional Question(s)
**Body Worn Camera Footage**
01   Is there Body Worn Camera (BWC) footage for incident?:                          **YES**

## Incident (Offense)    2025-0471178 (Continued)

**Risk Protection Order**

| | | |
|---|---|---|
| 01 | Subject poses a significant danger of causing personal injury to himself/herself or others: | NO |
| 02 | Subject owns, has care, custody or control of, or has the ability to purchase, possess, or receive firearm(s) and/or ammunition: | |
| 03 | Subject was involved in a recent act or threat of violence against himself/herself or others, whether or not such violence involved a firearm: | |
| 04 | Subject has made a threat of violence in the past 12 months against himself/herself or others: | |
| 05 | Subject is seriously mentally ill or has recurring mental health issues: | |
| 06 | Subject was a respondent of, or violated, a previous/existing injunction related to domestic, dating, sexual, or repeat violence and/or stalking: | |
| 07 | The subject has previously been issued an RPO: | |
| 08 | Subject has previously violated the provisions of an RPO: | |
| 09 | Subject has been convicted of, had adjudication withheld on, or pled nolo contendere to, a crime constituting domestic violence in any state: | |
| 10 | Subject has used, or threatened to use, against himself/herself or others, any weapons or physical force: | |
| 11 | Subject has unlawfully or recklessly used, displayed, or brandished a firearm: | |
| 12 | Subject has stalked another person: | |
| 13 | Subject has been arrested for, convicted of, had adjudication withheld, or pled nolo contendere to a crime or threat of violence in any other state: | |
| 14 | Is evidence to demonstrate the abuse of controlled substances or alcohol by the subject: | |
| 15 | Is evidence to demonstrate the subject has recently acquired firearm(s) or ammunition: | |
| 16 | Is there any other relevant information provided by a family/household member concerning the subject. (If yes, place information into the narrative): | |

**Investigative Resource Use**

| | | |
|---|---|---|
| 1 | Use of LPR assisted in investigation?: | NO |
| 2 | Use of NIBN assisted in investigation?: | NO |
| 3 | Use of RTCC assisted in investigation?: | NO |

## Misc Information

Clearance Status: **CASE SUSPENDED**          Clearance Code: **NOT APPLICABLE**     Date Case Was Cleared:
Suspended Type: **SUSPENDED (UNABLE TO IDENTIFY SUSPECT)**                                   Number of Cases Cleared:
Is there additional information included on a continuation report?: NO          Are there other Pertinent Reports?: NO
Did this incident qualify as a "Cargo Theft"?: N/A
Is this a "TeleServ" report?: NO          Was victim provided options to obtain rights card?:
Option provided to victim?:
In your opinion is there significant reason to believe that the crime can be solved by a patrol follow-up investigation?:
Neighborhood Canvass Conducted?:

**Case Card Information Left with: Person**
  Victim (01) - COHAN, JOHN MICHAEL
**Handouts**
  #1: **Case Information Card**
**Bias Motivation(s)**

## Investigation Time #1

Hour(s): **01**          Minute(s): **00**          Cost Amount: **$48.24**

## Signature

**Signature(s)**
Reporting Officer #1:   **P.T. BURKE ( #81350 )**          Division: **PATROL**          Section/Unit: **ZONE 5**
Reporting Officer #2:   **N/A**                                       Division:                       Section/Unit:
Report submitted on:    **08/16/2025 11:49**
Report Reviewer:        **P.G. YARBER II ( #5134 )**        Status: **Approved**
Report approved on:     **08/16/2025 14:12**

---

John Michael Cohen
516 547 2810
For Body Cam
Audio 8-16-24

Request Number
P477706
Public Records Unit
904-630.2209 option 4

**Welcome To Jacksonville**
Display Ticket For Proof Of Purchase
EXPIRE TIME

# 2025-08-18
# 1:32 pm

Fee Paid
$1.00

ENTRY 12:32 pm 2025-08-18
Location: J010

MASTERCARD
****4532

# EXHIBIT D

Case 3:24-bk-00496-BAJ    Doc 490    Filed 11/18/25    Page 63 of 206
Case 3:24-bk-00496-BAJ    Doc 406-4    Filed 08/21/25    Page 2 of 2

Case 3:24-bk-00496-BAJ    Doc 342    Filed 03/26/25    Page 3 of 5

to the Federal Bankruptcy VIP Report, liquidation did in fact take place of the first Genie entity. This would mean they committed alter-ego again, reviving a dissolved entity, making a claim against me and my assets. It looks as though they are claiming a lien in chronological order after I started with these banks and ignoring the termination date of 12/5/2022, which would make the banks in fact 1st position, especially on the collateralized assets I have mortgages on these properties with them on and should not exist in front of my lenders at all. Also found in the VIP Report, these guys somehow got my money along with several other creditor victims' money out of IOLTA Trust Account without the knowledge of us creditors, which is a direct violation of the contract on the use of the ICA account, resulting in breach of contract on their end, converted it into the new Genie alter-ego company, Genie Investments NV, which is now bankrupt. After meeting with the Probate Judge for Chilton County, Jason Calhoun, Judge Calhoun filed the attached FBI victim letter with the Alabama Seretary of State as a notice that they were under investigation for fraudulent activity and that was all he could do at the moment. Why these 12 parcels were chosen out of the many I own, I do not know the answer to that. They didn't even have the parcels Amerifirst has stake in correct. Joel has contacted the bank's attorney and preparing to protect the bank's interest in the 4 properties Cohan is making a claim against.

Yesterday morning, March 22, 2025, two tenants called to inform me of the letter they received from them, stating deed of transfer has occurred and that they were to wire their rent directly to the provided bank account listed on the letter, even offering a generous discount for sending rent their way instead of me, the actual landlord. A new business is listed in this letter as Tenant First Homes with a Springfield, IL address. Coincidentally that is where David Hughes lives. No names are signed to the document. Perhaps this is yet another alter-ego company they have created and even more fraudulent documentation they have produced. I will attach both letters as well for your records. I have notified all tenants leasing at the 12 parcels listed on the letter they sent to Amerifirst. In my notice to my tenants this morning I stated: "I have discovered I am a victim of a scam that I am fighting. One of my tenants called me this morning saying they received a letter that deed had been transferred and where you should start sending rent. I have NOT sold anything! Let me know if you get the letter and I'll collect it for my attorney, the FBI, and whatever bank is associated with your house. Thank you". Now my tenants are involved after more falsified documentation has been produced by them and creating undue stress to them and their future housing.

I fully expect them to contact the 2 remaining banks I have business relationships with in trying to see what they can capitalize on. Central State Bank has interest in 2 of the 12 properties and the remaining are properties I own are free and clear.

# EXHIBIT E

055

# Nassau Community College

under the supervision of the

## State University of New York

Upon recommendation of the Faculty and by virtue of the authority vested in them
the Trustees of the College have Awarded

### John Michael Cohan

the certificate in

### Paralegal Studies

with all the rights and privileges pertaining thereto and in witness whereof the seal
of the College and the signatures of its officers are hereunto affixed
this twenty-ninth day of August, two thousand and fourteen.



Acting President



Chairman, Board of Trustees

056



This is to Certify That

**John Cohan**

has complied with all the requirements for, and has been inducted into

## Phi Theta Kappa

### Honor Society

In witness of which we have caused the great seal of this Society to be hereto affixed and inscribed our signatures.



*Executive Director and CEO*

**March 31, 2014**

*Date*

*Carol Farber*

*Chapter Advisor*

**Omicron Sigma**

*Chapter*





**NASSAU COMMUNITY COLLEGE**

OFFICE OF DEAN OF STUDENTS
Dean of Students
Academic/Student Services

One Education Drive
Garden City, NY 11530-6793

Tel   516.572.7376
Fax  516.572.0059

www.ncc.edu
June 10, 2014

John Cohan
19 Cheshire Ave
Syosset, NY 11791-5097

Dear John Cohan:

On behalf of the Board of Trustees, the Administration and the Faculty of Nassau Community College, in recognition of your excellent academic achievement, we are pleased to include your name on the Full-Time Dean's List for the spring 2014 semester. The outstanding quality of your work is not only a great credit to you, but also serves as a fine example and inspiration to your fellow students.

As you move forward with your goals, we hope that you continue to exemplify the Nassau Community College motto, "Where success starts...and continues."

Congratulations on your accomplishment.

Sincerely,

*Charmian M. Smith*

Charmian M. Smith
Dean of Students

WHERE SUCCESS STARTS...AND CONTINUES
Nassau Community College is a unit of The State University of New York sponsored by Nassau County

057

# Doc. 406
# Altered Document on the
# Docket as 11-12-2025

8:04



CM/ECF    Query    Reports ▾    Utilities ▾    Help    Log Out

**Document Selection Menu**

Multiple Documents

Select the document(s) you wish to view.

| Part | Description | Pages | Size |
|------|-------------|-------|------|
| ☑ 1 | Main Document | 5 pages | 199.05 KB |
| ☑ 2 | A | 13 pages | 490.26 KB |
| ☑ 3 | B | 2 pages | 40.59 KB |
| ☑ 4 | D | 2 pages | 77.51 KB |
| ☑ 5 | E | 4 pages | 132.40 KB |
| View Selected | or    Download Selected | 26 Pages | 939.81 KB |



ecf.flmb.uscourts.gov

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

FILED INTAKE USBC
AUG 21 '25 PM2:59

## MOTION FOR JUDICIAL NOTICE OF BANKRUPTCY COURT FRAUD, JUDICIAL NOTICE OF "*FINRA*" REPORT AND NOTICE OF DEFAULTS FILED

Pursuant to Federal Rule of Evidence 201 and Federal Rule of Civil Procedure 55(a), Movant moves this Court to:

1. Take judicial notice of fraud and misconduct in the related bankruptcy case (In re Genie Investments NV Inc., Case No. 3:24-bk-00496-BAJ); and

2. Take judicial notice of the default request entered against Defendant United States Trustee (UST) Scott Bomkamp for failure to respond to allegations of fraud, retaliation, and obstruction of justice.

I. JUDICIAL NOTICE OF BANKRUPTCY COURT FRAUD

The Court should take notice of the following incontrovertible facts:

A. The Examiner's Report Was Fraudulent

1. Fabricated Contract Terms

   - Invented nonexistent terms like "ICA reserves" and "ICA deposits" ("*FINRA*" Report)

   - Ignored the actual BELOC Agreement terms permitting Genie to use "ICA Payments" as revenue.

2. Ignored Critical Evidence

   - The Examiner failed to interview Scott Oh, Genie's attorney who approved the Velanos joint venture.

   - Omitted evidence that affiliate loans were legitimate business transactions.

B. U.S. Trustee's Bad-Faith Reliance on the Report

1. Knowingly Misrepresented Findings

   - Claimed the Examiner "confirmed fraud" when no such finding existed.

2. Retaliatory Timeline

060

- Filed second conversion motion after Plaintiff asserted legal rights tied to allegations.

3. Violated Due Process

- Alteration of 341 meeting audio to conceal misconduct

Legal Basis: Brady violations, obstruction of justice (18 U.S.C. §§ 1503, 1512).


C. Law Enforcement Verification of Misconduct

1. Pending Criminal Complaint

- The Jacksonville Sheriff's Office (Complaint No. 2025-0471040) has confirmed the validity of Plaintiff's allegations regarding the 341 meetings' misconduct.

- Sergeant Yarber explicitly stated a warrant will be requested suggesting:

- The U.S. Trustee allowed unlawful conduct during the third 341 meeting after being informed in person of the restraining order after trial.

- The transcript alteration constitutes potential evidence tampering and obstruction of justice

2. Judicial Notice Requested

- This Court should take notice that:

- A law enforcement agency has independently corroborated Movant's claims regarding the violation.

- The U.S. Trustee's misconduct extends beyond civil fraud into criminal investigation territory (obstruction, witness intimidation).

Legal Basis: FRE 201(b)(2) (facts "capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned").


D. Pursuant to Fla. Stat. § 90.202(6) and Federal Rule of Evidence 201(b)(2), Movant supplements the record with the following official law enforcement actions corroborating fraud upon this Court:

1. Substantiated Violation of Florida Injunction

The Jacksonville Sheriff's Office (JSO) Incident Report No. 2025-0471040 (attached) establishes:

- Probable cause exists for arrest of Freedom under:

- Fla. Stat. § 741.31(4)(a) (knowing violation of domestic violence injunction)

- Fla. Stat. § 843.02 (obstruction by unauthorized bankruptcy participation)

- Trustee Bomkamp received actual notice of the active injunction (April 9, 2024 in person, in court, with witnesses) yet:

  - Permitted Freedom's unlawful telephonic participation (April 17, 2024 341 meeting)

  - Violated Fla. Stat. § 741.31(8) (duty to enforce injunctions)


## 2. Witness Corroboration

The sworn affidavit of Mr. David Hughes confirms:

- Firsthand observation of Freedom's voice participation

- Trustee's refusal to terminate the violator's presence call despite objection

- Violation of Fla. R. Jud. Admin 2.420 (court record integrity)


## 3. Judicial Duty Under Florida Law

This Court must now:

1. Preserve all evidence under Fla. Stat. § 90.404(2)(c) (pattern of misconduct)

2. Refer Trustee misconduct to The Florida Bar (Rule Reg. Fla. Bar 3-7.2)


## II. DEFENDANT'S DEFAULT AND PATTERN OF MISCONDUCT

### 1. Failure to Respond

- Three (3) out of four (4) were properly served, yet the default was denied after hours on procedural grounds the same day, underscoring the *consistent inconsistent* application of procedural requirements throughout multiple forums. The two (2) named defendants, including the licensed professional UST Scott Bomkamp, were properly served via certified mail and have not answered the Complaint despite the proper service.

### 2. Judicial Notice of Parallel Misconduct

- The same U.S. Trustee:
  - Knowingly allowed the violation of a restraining order during Movant's 341 meeting.
  - Altered official audios to conceal evidence.
  - Relied on flawed reports in bankruptcy court.

3. Evidence of Bad Faith

 - Attached: Former FINRA attorney's report (Exhibit A), official audios to conceal evidence and shield himself from liability (Exhibit B). Jacksonville Sheriff's Office (JSO) and State Attorney's Office Investigation (Exhibit C).

Legal Basis: Fed. R. Civ. P. 55(a) (default for failure to plead).


III. *NOTICE OF DEFAULT AND DEMAND FOR MINISTERIAL ACTION: This notice is filed to document the failure of Judge Jason L. Calhoun (3:25-cv-00643) and United States Trustee Scott Bomkamp (3:25-cv-02009) to respond to lawfully submitted filings, resulting in pending clerk and judicial defaults. Under governing procedural and ethical rules, their non-responsiveness warrants ministerial judicial intervention. This notice demands immediate corrective action or, alternatively, seeks judicial acknowledgment of default to permit further remedies, including motions for reconsideration, sanctions, or appellate review as appropriate.*


IV. RELIEF REQUESTED

1. Take Judicial Notice of Exhibits A-B-C-D-E under FRE 201 and within 48 hours set an evidentiary hearing on the unaddressed matters.

2. Judicial Notice of Entry of Default Request against United States Trustee Scott Bomkamp.

3. Referral to DOJ for investigation of:

 - Obstruction of justice (18 U.S.C. § 1503).

 - Witness intimidation (18 U.S.C. § 1512).


CONCLUSION

The UST fraud in the bankruptcy case directly corroborates Movant's claims here. The JOS and SOA investigations demonstrate merit, and judicial notice is required to prevent further obstruction by any governmental party.


The United States Trustee cannot escape this record. If they decline to answer, the allegations stand admitted as true by default. If they attempt to answer falsely, they expose themselves to perjury against clear, objective evidence. Either path confirms the misconduct: silence is admission, and contradiction is self-incrimination. The Court cannot permit these allegations to be ignored without creating an appellate record of concealment.

**Washington, D.C. District Court:**

Fed. R. Civ. P. 55(a), LCvR 83.23, 28 U.S.C. § 351, 28 U.S.C. § 455, 28 U.S.C. § 586, Fed. R. Bankr. P. 9024

**Northern District of Alabama Federal Court:**
Fed. R. Civ. P. 55(a), 28 U.S.C. § 455, 28 U.S.C. § 1361, 28 U.S.C. § 351, AL ND L.R. 83.1(e), 28 U.S.C. § 586(a)(3), 28 U.S.C. § 144, 28 U.S.C. § 451, 5th Amendment U.S. Constitution, Fed. R. Civ. P. 60(b)

**Florida Middle District Bankruptcy Court:**

Fed. R. Bankr. P. 7055, 11 U.S.C. § 105(a), 28 U.S.C. § 157(e), 28 U.S.C. § 586(a)(3), Fed. R. Bankr. P. 9011

**Cross-Venue (Judicial/Trustee Accountability):**

28 U.S.C. §§ 351–364, Code of Conduct for U.S. Judges Canon 3, U.S. Constitution Fifth Amendment

**Additional Remedies [but not limited to] (Mandamus):**

28 U.S.C. § 1361 (Mandamus)

Dated: 08-21-2025

Respectfully submitted in Good Faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system.

# EXHIBIT A

 **Outlook**

**Rough draft -- opposition to US Trustee's 2d motion**

From Adam Walker <adam@awsecuritieslaw.com>

Date Fri 7/19/2024 6:09 PM

To     David from Genie Investments <dhughes@genieinvestments.com>; John from Genie Investments
       <jmcohan@genieinvestments.com>

📎 1 attachment (42 KB)
Opp UST's 2d Motion Appt Trustee.docx

Attached is the current draft opposition to the US Trustee's motion. It's far from complete -- needs to
be bulked up in places and I'll add much more polish to it. This lets you see where I'm heading with it
and how I see it coming together.

Let me know if you have concerns, questions, suggestions, etc.


Adam Walker
AW Securities Law
www.awsecuritieslaw.com
(816) 226-6476

On March 5, 2024, the U.S. Trustee (UST) filed a motion seeking various forms of relief, including appointment of a Chapter 11 trustee. In that motion, the UST asserted that Genie was a fraudulent enterprise that "simply stole" money from its customers and other ostensible creditors and invested $9.0 million of "other people's money" in an "obviously suspect" transaction. *See* Doc. 20 ¶¶ 16-17. The UST based these allegations solely on the statements of 18 small-business owners. Following a hearing on the motion, the Court granted only the request to appoint an Examiner. The UST subsequently selected and appointed an Examiner. After a lengthy investigation, the Examiner issued a Report. According to the UST, the Examiner's Report[1] ("Report") fully supports the UST's earlier allegations. Nothing could be further from the truth.

Insisting that the Report corroborates its entrenched position reveals much more about the UST than about Genie. For starters, it demonstrates that the UST has failed to review the Report with a critical eye. Had it done so, it would have realized that the Report is rife with inaccuracies, unsupported conclusions, and omissions of material and pertinent evidence. Among other things, the Report inaccurately reports fundamental aspects of Genie's business. It states falsely, for example, that Genie required a borrower seeking a Business Expansion Line of Credit ("BELOC") to enter a separate Due Diligence Agreement,[2] and that, "In some instances, borrowers paid McMann [Commercial Lending] an upfront initial application fee related to a loan with Genie NV."[3]

The Report contains numerous other errors, many of them attributable to the Examiner's decision to ignore foundational documents (e.g., contracts) and other evidence that would be crucial to any reasonable analysis. As a result, the Report persistently mischaracterizes Genie's operating history, revenues, management, the terms of its relationships with borrowers and business partners, and its future

---

[1]     Doc. 146.

[2]     Report ¶ __. In fact, Genie only required borrowers who sought bridge loans to complete the Due Diligence Agreement, which is evident upon even a cursory review of the relevant contracts.

[3]     Report ¶ __. This never happened. Any borrower who paid fees of any kind to McMann did not have a BELOC Agreement with Genie but was presumably in a lender-borrower relationship with McMann.

prospects. This taints the entire Report and undermines the instant motion, in which the UST cherry-picks snippets that support its existing positions without bothering to determine whether those passages are supported by evidence or analysis.

The UST's insistence that the Report "confirms" key allegations from its initial motion not only shows its lack of concern for the Report's investigative and analytical rigor, but also reveals its willingness to mischaracterize and embellish the Report's contents to suit its purposes. This is most notable in connection with the UST's allegations of fraud. At the very outset of its motion, the UST brazenly claims that the Report "confirms" that a trustee "must be appointed in this case because the Debtor engaged in fraud and gross mismanagement..."[4] But nowhere in the 51-page Report is there any finding or conclusion that Genie engaged in fraud. The UST simply invented this "confirmation" and attributed it to its hand-selected Examiner.

1. *The BELOC Agreement, which both the Examiner and the UST ignore, makes clear that ICA Payments received by Genie were not required to be held in trust and therefore did not constitute "customer funds."*

Much of the Report proceeds from a false premise: that Genie was required to hold ICA Payments in trust for the borrowers who paid them. It is indisputable that the BELOC Agreement between Genie and its borrowers governs what ICA Payments are and how they are treated. The Report, however, offers no analysis of the relevant portions of the BELOC Agreement. It never acknowledges, for example, that the BELOC Agreement does not require or even suggest that ICA Payments will be held in escrow or in trust. The Report does, however, reference an email from McMann's principal, a demand letter from McMann's law firm, and an affidavit from one borrower as support for the Examiner's conclusion that ICA Payments remained "customer funds" after their receipt by Genie.[5] It should go without saying that the opinions of interested parties are insufficient, standing alone, to override the unambiguous language of

---

[4]    Second Motion, at 2.
[5]    Report ¶¶ 81, 39, 82.

a written contract. As already noted, however, the Report simply ignores the actual contract language. Worse yet, the Report attempts to support its flawed premise by inventing and repeating improper terminology – i.e., "ICA reserves" and "ICA deposits"[6] – despite the fact that those terms do not appear anywhere in the BELOC Agreement in connection with ICA Payments.

This shoddy methodology results in a fatally flawed Report. Because Genie was never required to hold ICA Payments in trust for customers, those payments constituted revenue realized by Genie. The possibility that ICA Payments could later become refundable does not change that. In this way, Genie is no different from a retail store or service provider that promises refunds to unsatisfied purchasers. Nordstrom and Wal-Mart do not have to set aside money received from customers until all opportunity for a refund has passed and neither did Genie. Thus, the funds Genie received in the form of ICA Payments were its own funds, not "customer funds," as the Examiner asserts.

The UST displays a similar lack of interest in engaging with the relevant source material. Its motion contains this bewildering passage:

> The Examiner *found* that the purpose of the ICA funds was to pre-pay interest amounts on customer loans. The Examiner also *found* that the Debtor provided contradictory statements regarding whether ICA funds were supposed to held in trust for customers or could be utilized in the ordinary course of the Debtor's business.[7]

The "purpose" of ICA Payments[8] is not, however, a question of fact for the Examiner to "find," but a matter of contract interpretation. Statements by any person, whether a party to the BELOC Agreement or not, cannot change its intrinsic meaning.[9]

---

[6]    *E.g.*, Report ¶¶ 25, 29, 39, 77, 79, 80.

[7]    Second Mot., at 5-6 (¶ 11) (emphases added).

[8]    The term "ICA funds" is a misnomer – that phrase never appears in the BELOC Agreement – and presumably refers to "ICA Payments."

[9]    Further, the UST mischaracterizes both the Report and the testimony cited therein when it refers to Genie's statements as "contradictory."

Neither the Report nor the instant motion even feints at contract interpretation and, as such, neither offers any basis for a determination that Genie had an obligation to hold ICA Payments in trust as customer funds. That alone is grounds to deny the instant motion. Nonetheless, a brief discussion of the relevant contract provisions dispels the faulty premise that ICA Payments were to be held in trust and that they therefore constituted "customer funds."

Regarding the ICA Payments, the BELOC Agreements only require the Lender to create an Interest Credit Account "on the books and records of the Lender," note "a credit equal to the ICA Payment" in the Interest Credit Account, use the Interest Credit Account to satisfy interest payments as they become due, and refund ICA Payments if and when specified preconditions are satisfied.[10] The BELOC Agreement does not restrict how the Lender may use ICA Payment funds between their receipt and a potential termination by the Borrower. As such, the Lender has no obligation to hold those funds in trust.

Further, the BELOC Agreements openly anticipate the Lender using the ICA Payment, rather than holding it in trust. Section 13.7(a) sets forth when and under what conditions a Borrower may be due an ICA Payment refund. It states that the Lender has up to 40 days to return the ICA Payment after the Borrower properly terminates the BELOC Agreement and requests a refund of the ICA Payment. Section 13.7(c), however, states that this 40-day period is "tolled during the pendency of a Force Majeure event" and defines as one such event the "failure of the Lender's wholesale lender from performing [sic] under the terms of the agreement between the Lender and the wholesale lender." This tolling provision protects the Lender in the event of illiquidity caused by certain occurrences beyond its control, including the failure of a wholesale lender to perform its contractual obligations. If the BELOC Agreement required the Lender to hold ICA Payments in trust, then there would be no need to protect the Lender against a wholesale lender's failure to perform. But the BELOC Agreements clearly anticipated a situation where

---

[10]     BELOC Agmt. §§ 1.1, 3.5 13.7.

the Lender's ability to refund ICA Payments depends on a wholesale lender performing its contractual obligations to the Lender. Otherwise, the tolling provision in section 13.7(c) would be superfluous.

Courts applying Illinois law "look to the contract as a whole" and "attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Land of Lincoln Goodwill Indus. v. PNC Fin. Servs. Group*, 762 F.3d 673, 679 (7th Cir. 2014) (citations omitted). The interpretation the UST urges on the Court – that the BELOC Agreements require the Lender to hold the ICA Payments in trust and untouched – not only has no affirmative basis in the contracts' language but also ignores the provisions of Section 13.7(c) discussed above.

[add conclusion]

> ## 2. *The Report excludes evidence that Genie had a good-faith belief, based in part on guidance and advice from a reputable law firm, that the Velanos transaction was a sound investment.*

In October 2022, Genie received an offer to enter into a joint venture with Velanos Principal Capital (Velanos). The proposal called for Genie to provide $3.0 million in capital that Velanos, the joint venture's manager, would use to purchase and sell standby letters of credit (SBLCs) at a substantial profit. Before deciding whether to accept the offer, Genie engaged Scott Oh, a lawyer with Warren Law Group (WLG), to perform due diligence on the proposed deal, advise Genie on risks associated with it, and, if necessary, review and revise the joint-venture agreement. According to his firm's website, Oh was an experienced attorney who "often advise[d] and facilitate[d] his clients in identifying, analyzing, and structuring…private placement opportunities, joint ventures, and other private capital transactions, conventional/unconventional asset-based credit facilities, credit enhancements, and corporate debt transactions." Oh advised Genie that SBLC trading was legitimate and that he was familiar with at least one person for whom Velanos and/or its CEO syndicated. Oh notably did not warn Genie either that the promised returns were too good to be true or that SBLC trading was a frequent vehicle for financial fraud.

Oh represented Genie from October 2022 to July 2023. During that time, he regularly consulted with Genie about the joint venture, reviewed multiple amendments to the Joint Venture Agreement, and communicated frequently with Velanos on Genie's behalf. At no time did Oh express to Genie any

concern that the joint venture was fraudulent. In late 2022, when Genie twice increased its capital contribution to the joint venture to a total of $9.0 million, Oh did not advise Genie against doing so. And when Velanos failed to make the payments required under the Joint Venture Agreement, Oh never told Genie that Velanos' various excuses were of questionable validity.

Although the Report states that the Examiner reviewed WLG's bank records, it does not appear that the Examiner interviewed Oh or WLG regarding the substance of Oh's work for Genie. The Report castigates Genie for entering into the joint venture with Velanos. "Neither Velanos nor Wearmouth were registered investment advisors and the returns promised by Velanos pursuant to the Velanos JVA were 100% in 30 days and profit participation that would have resulted in a 900% return, which should have raised a red flag."[11] The Report gives no consideration to the fact that Genie sought out and hired a professional to apprise it of risks and concerns raised by the joint venture. Oh claimed to have a history of helping clients "joint ventures," "conventional/unconventional asset-based credit facilities," and other transactions, which suggests he was an appropriate choice for the job. The Report nonetheless concludes that Genie's decision to enter the joint venture constitutes "gross mismanagement." In doing so, it discounts the effect on Genie of obtaining what it believed to be competent legal guidance from a partner with a reputable law firm.

The UST not only seizes on this conclusion, but expands on it, stating that "Debtor engaged in gross mismanagement, *at a minimum*, in its dealings with Velanos..."[12]

---

[11]    Report ¶ 83.
[12]    Second Mot., at 2.

### 3. *The UST cannot meet its burden of demonstrating that Genie's loans to affiliated entities constituted either fraud or gross mismanagement.*

The UST's motion brands loans from Genie to six affiliated entities as "fraudulent transfers and not true loans."[13] The UST alleges, almost in passing, direct evidence of fraudulent intent in the transfers from Genie to its affiliate, Better Methods. This allegation falls well short of the movant's burden of proof ad, moreover, misstates the Report's findings. According to the UST, "The direct evidence is the express purpose of the transfers to Better Methods as asset protection from the Debtor's creditors."[14] As support for this allegation, the UST cites paragraph 188 of the Examiner's Report, which states, in its entirety, "According to [John Michael] Cohan, Better Methods is an asset management company set up to protect the Debtor's assets and the assets of the Debtor's clients." The "express purpose" alleged by the UST as direct evidence of fraud is itself a fraud, fabricated by the UST and unsupported by any evidence in the Report or elsewhere in the record of this case.

The UST also asks the Court to find circumstantial evidence of fraudulent intent. The UST recites the "badges of fraud" often employed by Federal Courts of Appeals in determining, for purposes of 11 U.S.C. § 548, whether a debtor "intended to hinder, delay, or defraud" creditors. The UST's motion only addresses some of those factors, however, and does so in an extremely cursory fashion. It states, for example:

- The transfers at issue occurred "while the Debtor was being sued or was under threat of suit for failing to fund loans."[15]

- Genie received "less than the equivalent value based on the non-market nature of the loans."[16]

- The funds were transferred "in a concealed manner attempting to disguise the fraudulent transfers as loans."[17]

---

[13]    Second Mot. ¶ 16.

[14]    Second Mot. ¶ 17.

[15]    Second Mot. ¶ 19.

[16]    Second Mot. ¶ 19.

[17]    Second Mot. ¶ 19.

The UST does not even bother to cite the Report or any other evidence for these claims. That alone should doom the Motion, as unsupported, conclusory statements cannot establish fraud. But because the UST also urges the Court to find that the loans to affiliates constituted "gross mismanagement," a proper analysis of the factors referenced in the motion is warranted.

> ### The timing of Genie's transfers to affiliates does not support a finding of constructive fraud.

The UST asserts that "Debtor's funds were transferred (1) to insiders or affiliates; (2) while the Debtor was being sued or under threat of suit for failing to fund loans..."[18] This is flatly and blatantly false, and it reveals the UST's unwillingness to grapple with inconvenient facts.

The affiliate transfers identified in the Report were all made pursuant to loan agreements executed in September 2022. At that time, Genie had successfully funded dozens of loans, had never failed to issue a properly requested refund of an ICA Payment, had not agreed to contribute any money to the joint venture with Velanos, and had never been sued or threatened with suit related to an alleged breach of a BELOC Agreement.

The Report provides details about each of these transfers, which happened piecemeal over the course of many months, with nearly all of them taking place between September 2022 and July 2023.[19] What these schedules show is that Genie's transfers to affiliated entities generally took place before Genie was insolvent or had any reason to believe that it would become insolvent, and before any putative creditor had sued Genie or threatened suit against it.[20]

With respect to Genie's transfers to its affiliate, Zoomeral, Inc., the Report shows that the net total transferred by Genie to Zoomeral in that period – through roughly 60 separate transactions – was $1,771,555.74. Of these transactions, 14 occurred before Genie entered the joint venture with Velanos.

---

[18]    Second Mot. ¶ 19.

[19]    Report, Exh. 4 (showing approximately 60 separate transfers from Genie to Zoomeral, Inc., between September 12, 2022, and July 28, 2023); Report ¶¶ 147, 159 (showing more than 25 transfers apiece from Genie to Capitulum Homes and Cald Holdings between September 2022 and July 2023).

[20]    Genie received its first threat of legal action regarding an ICA Payment refund in [October?] 2023.

Another 20 occurred before Velanos was late making any payments due under the Joint Venture Agreement.

Further, as discussed above, Genie had a good-faith belief until at least July 2023 that it would shortly receive a payment of at least $9.5 million from Velanos pursuant to the Joint Venture Agreement. Considering that the vast majority of the affiliate transfers at issue occurred before that time, the evidence clearly shows that few, if any, of those transfers occurred when Genie was insolvent or had reason to believe it would soon become insolvent.

<u>Genie received reasonably equivalent value for the affiliate transfers</u>

The UST alleges that Genie transferred funds to affiliates "for less than the equivalent value based on the non-market nature of the loans."[21] By "non-market nature," the UST refers to the low interest rate, the absence of personal guarantees, the absence of a periodic-payment requirement, and the borrowers' option to extend the loan term for 10 years. The UST bases its allegation that the terms of these loans would not have been available to Genie's affiliates in the open market on the Report. For its part, the Report is devoid of any evidence regarding the terms that might have been available to the affiliate borrowers.

The UST fails to note that each of the loans at issue requires repayment in full of the loan's principal amount. The loans are not forgivable. Moreover, even assuming that the loan terms were more favorable than the affiliate borrowers would likely have found elsewhere, this fact alone cannot prove that Genie received less than "reasonably equivalent value" in exchange for the money lent. When evaluating the value received in exchange for allegedly fraudulent transfers, Courts recognize various "indirect" benefits – i.e., benefits that may not be easily

---

[21]    Second Motion ¶ 19.

reduced to a specific dollar value. Here, the indirect benefits of the affiliate loans are real and were shared with the Examiner.

Zoomeral, Inc., was the affiliate that received the largest amount of loans from Genie. Zoomeral built and operated the software platform that Genie and its borrowers used for communication, record management, and _____. In 2022-23, the Zoomeral platform was an integral part of Genie's business, and both Genie and Zoomeral expected that improvements to Zoomeral's systems would benefit both companies. Genie loaned money to Zoomeral so that it could hire developers to improve the software platform, establish a relationship with one or more payment processors, and create a marketing campaign to attract more potential borrowers. Genie reasonably expected its loan to Zoomeral to result in more business for Genie.

Better Methods

Capitulum

Cald

Case law research:

- "All of the authorities agree that the appointment of a trustee under § 1104 is an extraordinary remedy. Therefore, the evidence to support the appointment of a trustee must be clear and convincing." In re Tyler, 18 B.R. 574, 577 (S.D. Fla. 1982)

- Standard of proof: clear and convincing evidence that appointment of trustee is warranted

- Strong presumption that DIP shall remain in control of its business while in bankruptcy

- Court must "weigh the benefits that would be derived by the appointment of a Trustee against the expense of the appointment." *General Oil Distributors*, 42 Bankr. 402, at 409 (Bankr. E.D. N.Y. 1984).

- As a general rule, . . . a trustee will not be appointed where affiliate transactions are called into question, unless the movant can demonstrate that the transactions were improper, detrimental to the debtor estate, or were actually fraudulent." Norton Bankruptcy Law & Practice § 53.04; *See also General Oil Distributors*, supra, 42 Bankr. at 402; *All Sun Juices*, 34 Bankr. 162 (Bankr. M.D. Fla. 1983).

- Bankruptcy Court order appointing a trustee constitutes a final order that is immediately appealable to 11th Circuit

- "...it now appears the appointment of a trustee, saddling the estate with the expense of a appointed trustee and additional counsel, and the removal of the Garbaczes from management may well seriously handicap the Debtor's efforts to maintain its customer base and operating income." *In re Waterworks, Inc.*, 538 B.R. 445, 465-66 (Bankr. N.D. Ill. 2015)

# EXHIBIT B

# EXHIBIT D

Case 3:24-bk-00496-BAJ    Doc 490    Filed 11/18/25    Page 91 of 206
Case 3:24-bk-00496-BAJ    Doc 406-4    Filed 08/21/25    Page 2 of 2

Case 3:24-bk-00496-BAJ    Doc 342    Filed 03/26/25    Page 3 of 5

to the Federal Bankruptcy VIP Report, liquidation did in fact take place of the first Genie entity. This would mean they committed alter-ego again, reviving a dissolved entity, making a claim against me and my assets. It looks as though they are claiming a lien in chronological order after I started with these banks and ignoring the termination date of 12/5/2022, which would make the banks in fact 1st position, especially on the collateralized assets I have mortgages on these properties with them on and should not exist in front of my lenders at all. Also found in the VIP Report, these guys somehow got my money along with several other creditor victims' money out of IOLTA Trust Account without the knowledge of us creditors, which is a direct violation of the contract on the use of the ICA account, resulting in breach of contract on their end, converted it into the new Genie alter-ego company, Genie Investments NV, which is now bankrupt. After meeting with the Probate Judge for Chilton County, Jason Calhoun, Judge Calhoun filed the attached FBI victim letter with the Alabama Secretary of State as a notice that they were under investigation for fraudulent activity and that was all he could do at the moment. Why these 12 parcels were chosen out of the many I own, I do not know the answer to that. They didn't even have the parcels Amerifirst has stake in correct. Joel has contacted the bank's attorney and preparing to protect the bank's interest in the 4 properties Cohan is making a claim against.

Yesterday morning, March 22, 2025, two tenants called to inform me of the letter they received from them, stating deed of transfer has occurred and that they were to wire their rent directly to the provided bank account listed on the letter, even offering a generous discount for sending rent their way instead of me, the actual landlord. A new business is listed in this letter as Tenant First Homes with a Springfield, IL address. Coincidentally that is where David Hughes lives. No names are signed to the document. Perhaps this is yet another alter-ego company they have created and even more fraudulent documentation they have produced. I will attach both letters as well for your records. I have notified all tenants leasing at the 12 parcels listed on the letter they sent to Amerifirst. In my notice to my tenants this morning I stated: "I have discovered I am a victim of a scam that I am fighting. One of my tenants called me this morning saying they received a letter that deed had been transferred and where you should start sending rent. I have NOT sold anything! Let me know if you get the letter and I'll collect it for my attorney, the FBI, and whatever bank is associated with your house. Thank you". Now my tenants are involved after more falsified documentation has been produced by them and creating undue stress to them and their future housing.

I fully expect them to contact the 2 remaining banks I have business relationships with in trying to see what they can capitalize on. Central State Bank has interest in 2 of the 12 properties and the remaining are properties I own are free and clear.

# EXHIBIT E

083

# Nassau Community College

### under the supervision of the

## State University of New York

Upon recommendation of the Faculty and by virtue of the authority vested in them the Trustees of the College have Awarded

## John Michael Cohan

the certificate in

## Paralegal Studies

with all the rights and privileges pertaining thereto and in witness whereof the seal of the College and the signatures of its officers are hereunto affixed this twenty-ninth day of August, two thousand and fourteen.



Acting President



Chairman, Board of Trustees



This is to Certify That

**John Cohan**

has complied with all the requirements for, and has been inducted into

**Phi Theta Kappa**

Honor Society

In witness of which we have caused the great seal of this Society to be hereto affixed and inscribed our signatures.

_Executive Director and CEO_

**March 31, 2014**

_Date_

_Carol Farber_
Chapter Advisor

**Omicron Sigma**
Chapter



084



**NASSAU COMMUNITY COLLEGE**

OFFICE OF DEAN OF STUDENTS
Dean of Students
Academic/Student Services

One Education Drive
Garden City, NY 11530-6793

Tel  516.572.7376
Fax  516.572.0059
www.ncc.edu    June 10, 2014

John Cohan
19 Cheshire Ave
Syosset, NY 11791-5097

Dear John Cohan:

On behalf of the Board of Trustees, the Administration and the Faculty of Nassau Community College, in recognition of your excellent academic achievement, we are pleased to include your name on the Full-Time Dean's List for the spring 2014 semester. The outstanding quality of your work is not only a great credit to you, but also serves as a fine example and inspiration to your fellow students.

As you move forward with your goals, we hope that you continue to exemplify the Nassau Community College motto, "Where success starts...and continues."

Congratulations on your accomplishment.

Sincerely,

*Charmian M. Smith*

Charmian M. Smith
Dean of Students

WHERE SUCCESS STARTS...AND CONTINUES
Nassau Community College is a unit of The State University of New York sponsored by Nassau County

# Doc. 470
# Original Filing from
# Chapter 7 Trustee's Counsel

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED INTAKE USBC
NOV 4 '25 PM 3:05

In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

## NOTICE OF MISSING EXHIBIT FROM DOCKET RECORD

Interested Party, John Michael Cohan, gives notice to the Court and all interested parties that a
material filing in this case is incomplete on the public docket. This notice is submitted to
preserve the integrity of the record and to document the omission.

1. On August 21, 2025, Interested Party filed pending Doc. 406, titled "Motion for Judicial
   Notice of Bankruptcy Court Fraud." Attached to that motion were multiple exhibits,
   including **Exhibit C** (attached as **Exhibit I** herein), a copy of the Jacksonville Sheriff's
   Office Incident Report No. 2025-0471040 (the "JSO Report").

2. The JSO Report documents that the Jacksonville Sheriff's Office determined there was
   probable cause that a violation of a Florida domestic-violence restraining order occurred
   during the 341 meeting (Fla. Stat. § 741.31(4)(a); 18 U.S.C. § 2265). The report was
   obtained through official channels and confirms that law enforcement is aware of the
   violation.

3. On September 22, 2025, Interested Party filed Doc. 428, titled "Notice of Lack of
   Response / Notice of Unopposed Motion," which incorporated the same Motion and all
   exhibits by reference.

4. Upon learning about it, on November 4, 2025, Interested Party immediately went to the
   courthouse and filed it with the Clerk, as this is an urgent matter that needs to be
   addressed and is being ignored. The Interested Party discovered that **Exhibit C** is no
   longer available as part of either Docket No. 406 or Docket No. 428 on the CM/ECF
   system.

5. This pattern of concealment is further evidenced by a separate, critical piece of evidence:
   the original audio recording of the April 17, 2024, §341 meeting has been altered. A
   screenshot reveals that the official recording filed with the bankruptcy court
   (attached hereto as **Exhibit II**) has been spliced and edited to remove portions of the
   proceeding. This alteration directly shields the U.S. Trustee from liability by concealing
   the full context of the interactions and the specific misconduct that occurred, which is the
   subject of the JSO Report and the subsequent lawsuit. The act of altering an official court
   record is a grave violation of procedural integrity and underscores the lengths to which
   the Defendant, the United States Trustee Scott Bomkamp, will go to suppress evidence of
   his wrongdoing.

087

6. The Interested Party has not received any notice, order, or communication from the Court directing that the exhibit be sealed, stricken, or removed. No explanation appears on the docket.

7. The Interested Party does not know who removed the exhibit — whether it was a Judge, a Clerk acting at a Judge's direction, a Clerk acting at the United States Trustee's direction, or some other party — and the Interested Party has received no explanation.

8. The removal of **Exhibit C (Exhibit I)** comes after the Jacksonville Sheriff's Office has confirmed probable cause that a violation of the restraining order occurred during the 341 meeting on April 17, 2024, and after a lawsuit was filed in June 2025 (25-CV-2009). The United States Trustee, who is currently overseeing this case, was made aware of these prior violations at the prior § 341 meetings after the April 9th, 2025 trial, with Debtor's Counsel present when such notice was provided, and knowingly allowed them to occur in disregard of applicable rules and laws governing such conduct, including the Code of Federal Regulations (11 U.S.C. § 307). The original restraining order was issued in New Jersey (N.J. Stat. § 2C:25-30) and was thereafter registered/enforced in Florida (Fla. Stat. § 741.315), which requires that foreign orders be enforced as if issued by a Florida court. This removal, coming after repeated notices, demonstrates an attempt to conceal the violation and serves as a silent admission that the violation occurred. Not only does this misconduct affect the Interested Party and his rights, but it also impacts a four-year-old child, of whom the Court is well-aware, heightening the seriousness of the matter. To date, in connection with the lawsuit, he has avoided service and is seemingly using the government shutdown as a shield to protect himself from being served. **(Exhibit III)** The Interested Party submits this notice, along with communications with the relevant supervisory authorities and David Hughes' affidavit **(Exhibit IV)** supporting these facts, to make clear that these matters are on record and that the integrity of the filings cannot be ignored or suppressed. This is gross, grotesque, and disgusting professional misconduct (18 U.S.C. § 2265).

9. The exhibit remains a central and material piece of evidence, forming part of the factual basis for the Interested Party's filings and for any subsequent appellate review.

10. The repetition of such an omission cannot reasonably be attributed to clerical error and instead reflects a concerning pattern consistent with the Interested Party's prior allegations of misconduct, bad faith, the potential fraud on the bankruptcy court and the silence of all parties involved in this matter. These issues directly relate to the ongoing actions of the United States Trustee, whose arguments were made without the benefit of any examiner's report or factual findings. The Interested Party notes that even the internal memorandum regarding the United States Trustee's Second Motion to Convert and the flawed Examiner's Report prepared by Adam Walker **(Exhibit V)** contradicts the assertions made by the United States Trustee, as it contains no confirmation of the alleged fraud that the United States

Trustee and the Chapter 7 Trustee represented to the Court. Furthermore, the United States Trustee's second motion to convert this case appears to have been filed in retaliation against the Interested Party prior to the conversion indicating its wrongful nature. This pattern and repeated concealment further supports the narrative of a corrupted process.

11. The Interested Party attaches additional exhibits documenting the United States Trustee's ongoing CFR violations, (5 C.F.R. § 2635.502) communications with supervisory authorities in Washington, D.C., and the live docket for the civil case 25-CV-2009 (**Exhibit VI**). These exhibits demonstrate the ongoing misconduct and corroborate the matters discussed herein. This is referenced in PLAINTIFF'S NOTICE OF NON-OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE (DOC. 22) AND REQUEST FOR JUDICIAL NOTICE filed in the Washington, DC matter, herein attached as **Exhibit VII**. A subsequent notice referring to this notice is being simultaneously submitted into the Washington, DC matter as Document 33 for added collateral protection against further alterations of this bankruptcy docket.

12. The very act of suppressing **Exhibit C** from the docket without explanation is indicative of a consciousness of guilt and a recognition that the United States Trustee's conduct cannot be justified under the law. A party acting in accordance with federal ethics regulations, the Bankruptcy Code, and this Court's rules would have no need to conceal a law enforcement report from the record, certainly not in secret. Their position should be defensible on the merits through argument, not through the manipulation of the docket to hide unfavorable evidence. This suppression is a tacit admission that the facts contained within the exhibit are both true and fatal to their position.

This notice is submitted to document the omission for the record and to ensure that all parties and the reviewing Court are aware of the discrepancy in the case file.

Supporting References:

- Fla. Stat. § 741.31(4)(a) – violation of domestic violence injunctions
- Fla. Stat. § 741.315 – recognition of foreign protective orders in Florida
- 18 U.S.C. § 2265 – federal full faith and credit for protective orders
- N.J. Stat. § 2C:25 30 – New Jersey domestic violence orders enforcement
- 11 U.S.C. § 307 – duties of the U.S. Trustee to oversee bankruptcy system integrity
- 5 C.F.R. § 2635.502 – requires federal employee disqualification when impartiality could be questioned due to a personal relationship
- Middle District of Florida, Local Rule 9013-1 – governing filing of motions, exhibits, and record completeness

**To avoid further discrepancies and ambiguity, this document has a total of seven (7) exhibits and fifty-two (52) pages.**

Dated: 11-04-2025

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

### Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following
documents by the CM/ECF system.

# EXHIBIT I

# EXHIBIT C

## *Your Case Information*

| | |
|---|---|
| Law Enforcement Agency: | Jacksonville Sheriff's Office (JSO) |
| Emergency: | 9-1-1 *(TTY Services Available)* |
| JSO's Non-Emergency: | (904) 630-0500 |
| JSO's Victim Advocates: | (904) 630-1764 |
| JSO's General Information: | (904) 630-7600 |

Case Number: 2 5 - 471040   47117 *(handwritten)*

Date of Report: 08/16 , 20 25

Incident Type: Written Threats to Kill
Violation of Injunction

Officer's Name / I.D. Number: P.T. Burke #81350

**VINE Pin Number:** _____

Victim Information & Notification Everyday (VINE) - www.vinelink.com
*VINE provides custody status and criminal case information.*
*Registration is required for this service*

| Toll-Free VINE Line: | 1-877-VINE-4-FL / 1-877-846-3435 |
|---|---|
| | TTY: 1-866-847-1298 |

*(handwritten: Sgt Yarbor 1pm "we will apply for a warrant to be issued.")*

## *Local Resources*

*(handwritten left margin notes)*

**Certified Rape Crisis Center: The Women's Center of Jacksonville** *(Rape Recovery Team)*
thewcj.org | 5644 Colcord Avenue, Jacksonville, FL 32211
Phone: (904) 722-3000 | 24-Hour Rape Crisis Hotline: (904) 721-7273

**Domestic Violence Center: Hubbard House**
hubbardhouse.org | 24-Hour hotline: (904) 354-3114 or
1-800-500-1119 | TTY: (904) 354-3958

**First Coast Crime Stoppers:** 1-866-845-TIPS (8477)

*More resources available on pages 16-18.*

3

| Jacksonville Sheriff's Office Incident (Offense) 2025-0471040 | Sheriff T.K. Waters |
|---|---|

## Route To
Groups:
People:

## Incident Information

**Incident Location**

**1425 CHAFFEE RD S**
**JACKSONVILLE, FL 32221**
Sub-sector: **T2**   TAZ: **544**
Location Type: **ONLINE**
Primary Weapon Used: **THREAT / INTIMIDATION**
School Name:
Incident Occurred: **Outside Location**

Day/Date/Time Reported: **Saturday, 08/16/2025 09:19**
Day/Date/Time Incident From: **Friday, 08/15/2025 17:28**  To: **Friday, 08/15/2025 17:28**
Is this a Corrections Information Report?: **NO**

School Number:
Incident Occurred in the Parking Lot at this Location?: **NO**

**Miscellaneous**

Drug Activity: **NOT APPLICABLE**        Drug Type: **NOT APPLICABLE**

MCI Case: **YES**                    Follow-up By: **Patrol**
Was Hate Crime Involved?: **NO**   Dating Violence Involved?: **NO**   Is Offense(s) Related to Domestic Violence?: **NO**
If not Domestic Violence, is it Domestic Related?: **NO**        Any Children under 18 Involved as a Victim?: **NO**

# of Offenses: 1
# of Victims: 1
# of Suspects: 1

**NIBIN Leads**

**Associated CCR Numbers**

## Offense(s)

**#1**  Statute #: **741.31(4)(A)**        Degree: **M1**   UCR Code: **9000**  Attempt Code: **Committed**
**VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE**
Criminal Activity Type:

## Victim #1 - COHAN, JOHN MICHAEL

Did victim invoke right to prevent the disclosure of personal info (Marsy's Law)?: **NO**

**Demographics**
Race: **WHITE**        Sex: **MALE**        Date of Birth: **07/05/1989**
Ethnicity: **NOT OF HISPANIC ORIGIN**
Primary Language: **English**  Secondary Language: **NOT APPLICABLE**
Age: **36**        Height (inches): **5'10"**        Weight (lbs): **170**
Hair Style: **NAPPY / UNKEMPT**   Hair Color: **BROWN**        Hair Length: **LONG**
Build: **THIN**        Eye Color: **BLUE**        Facial Hair: **BEARD**
Complexion: **PALE**   Voice: **NORMAL**
Clothing/Description:

**Contact Information**
Home Phone #:        Bus. Phone #:        Ext.:        Alt. Phone #:
Cell Phone #:   **(516) 547-2810**   Cell Phone Provider:
Email Address:

**Primary Identification**
Type of ID Given: **DRIVERS LICENSE**        ID: **C500~~████████~~**        Issuing State: **FLORIDA**
Home Address        Mailing Address        Alternate Address
~~████████████~~
**JACKSONVILLE, FL** ~~████~~
Sub-sector: **T4**   TAZ: **456**

**Employment/School**
Employer:   **UK**        Occupation: **UK**
School Last Attended:

**Alternate Contact Information**
Home Phone #:        Bus. Phone #:        Ext.:
Cell Phone #:        Cell Phone Provider:
Email Address:

**Other Information**
Residence Type: **CITY**        Residence Status: **RESIDENT**

## Incident (Offense)    2025-0471040 (Continued)

Drugs Involved?: **NO**        Alcohol Involved?: **NO**        Computer Involved?: **NO**    Mode of Travel:  **FOOT**
Victim Type:  **ADULT**    Injury Extent:  **NONE**    Injury Type:  **NOT APPLICABLE**
Hospital Victim Taken to:  **NOT APPLICABLE**    Sexual Battery Type:

**Life Saving Measures**
Used?: **NO**        Type:                    Narcan Administered By:                    Narcan Outcome:

**Weapon(s) Involved**
   Weapon(s):  **THREAT / INTIMIDATION**
**Victim Relationship to Offender(s):**
   Relationship:  **CHILD IN COMMON**    To:  **Suspect (01) - FREEDOM, PEACE M**
**Related Offenses**
   <unset>

---

## Suspect #1 - FREEDOM, PEACE M

**Demographics**
   Race:  **BLACK**        Sex: **FEMALE**        Date of Birth: **01/15/1993**
   Ethnicity: **UNKNOWN**
   Primary Language:  **English**    Secondary Language: **NOT APPLICABLE**
   Age: **32**            Height (Inches):  **5'05" to 5'06"**        Weight (lbs): **130 to 140**
   Hair Style:                Hair Color: **BLACK**            Hair Length:
   Build:                Eye Color: **BROWN**            Facial Hair:
   Complexion: **DARK**    Voice: **UNKNOWN**
   Clothing/Description:  **UK**
   Place of Birth:  **UNKNOWN, UNKNOWN**
   Nicknames:
   Aliases:  **PEACE EKUTA**

**Distinguishing Marks (Scars, Marks, and Tattoos)**

**Contact Information**
   Home Phone #:            Bus. Phone #:                Ext.:            Alt. Phone #:
   Cell Phone #:  **UK**        Cell Phone Provider:
   Email Address:
**Primary Identification**
   Type of ID Given:  **DRIVERS LICENSE**            ID:  **204____**            Issuing State:  **DELAWARE**
   Home Address            Mailing Address            Alternate Address

**Employment/School**
   Employer:  **UK**                Occupation:  **UK**
   School Last Attended:
**CEW (Conducted Electric Weapon)**
   ECD Usage:
   RTR Written Related to This Incident?: **NO**    RTR Incident Year:            RTR Incident #:
**Other Information**
   Drugs Involved?: **UNKNOWN**    Alcohol Involved?: **UNKNOWN**    Computer Involved?: **UNKNOWN**
   Mode of Travel: **UNKNOWN**    Juvenile?: **UNKNOWN**    Confessed?: **NO**
   Arrested?: **At Large**    Were Miranda Rights Given?: **NO**    Jail # Type: **NA**    Jail Booking #:
**Related Offenses**
   <unset>
**Life Saving Measures**
   Used?: **NO**        Type:                Narcan Administered By:                Narcan Outcome:

---

## Property #1 - Documents/ Personal or Business
   Quantity: 1        Status: **NONE**
   Turned in at:  **NOT APPLICABLE**
   Manufacturer:                        Model:
   Serial Number:                        Color:
   Description:  **Copies of screenshots, injunction, and miscellaneous documents**
   Related Charge:  **#01: 741.31(4)(A) - VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE**
   Value Stolen or Damaged:            Value Recovered:            Victim/Complaint Signed Signature Card:  **N/A**
   Was Property Recovered From Vehicle?: **NO**    Vehicle Property Recovered From:
**Property Owner:**

### JACKSONVILLE SHERIFF'S OFFICE
   Bus. Contact Name:  **P.T. BURKE  (#81350 )**    Bus. Contact Phone #:  **(904) 630-0500**    Ext.:

---

## Incident (Offense)    2025-0471040 (Continued)

Received From:
  Victim (01) - COHAN, JOHN MICHAEL

### Additional Information

On 08/16/2025 at 0954, I responded to the Chaffee Public Library (1425 Chaffee Rd S) in reference to written threats to kill (CCR #25-471040) and a violation of injunction (this CCR). Upon arrival, I made contact with the victim, Mr. Cohan.

Note: Cohan and the suspect (Peace Freedom) were in an intimate relationship for 10 years and share a child (████████████) together. Cohan has a foreign (New Jersey) injunction (#FV-04-002494-22), which has been entered into Florida (#16-2025-AO-156901-FXXX-MA).

Cohan advised that on 04/09/2024 and 04/17/2024, Freedom telephonically (voice only) called in to his company's Federal Bankruptcy 341 hearing, knowing the injunction has been active since 03/03/2022. Cohan stated Freedom was not invited to the hearing, nor was she a part of the company. However, the hearing details were publicly available and the Federal Trustee (Mr. Bonkamp) allowed Freedom to remain in the hearing and to speak during the hearing and ask questions. According to Cohan, Bonkamp was notified of the active injunction and still allowed Freedom to remain. Cohan stated Freedom never identified herself by her real name but he did not see her, but due to their long shared history he recognized her voice immediately.

When speaking to Sgt. P. Yarber #5134, Cohan advised during the bankruptcy hearings Freedom spoke directly to him.

Cohan also provided a typed "Affidavit to Witness Statement" from a Mr. Hughes, who corroborates his account of the violation of injunction during the bankruptcy hearings.

Cohan further advised that between 05/2025-06/29/2025, Freedom "poked" him on PI KSY cryptocurrency app, which sends him notifications to "keep mining" for cryptocurrency. The app allows users in the same crypto mining circle to send fellow miners reminders to continue mining, but no actual talking/ typing occurs. Cohan advised he was unable to remove Freedom from his group and he did not leave the group because he would lose all of his money/ crypto if he did.

It should be noted, Freedom's current location and contact information is unknown. Freedom's last police contact was in 2024 in Virginia, and her most recent driver's license is out of Delaware.

Because Cohan can reasonably identify Freedom's voice due to their history, Probable Cause exists to seek an arrest warrant for Freedom for violating the injunction.

The copies of the provided documents (property 1) were placed in the property room.

Case not cleared. Pending SAO disposition.

### Additional Question(s)

**Body Worn Camera Footage**

| | | |
|---|---|---|
| 01 | Is there Body Worn Camera (BWC) footage for incident?: | YES |

**Risk Protection Order**

| | | |
|---|---|---|
| 01 | Subject poses a significant danger of causing personal injury to himself/herself or others: | NO |
| 02 | Subject owns, has care, custody or control of, or has the ability to purchase, possess, or receive firearm(s) and/or ammunition: | |
| 03 | Subject was involved in a recent act or threat of violence against himself/herself or others, whether or not such violence involved a firearm: | |
| 04 | Subject has made a threat of violence in the past 12 months against himself/herself or others: | |
| 05 | Subject is seriously mentally ill or has recurring mental health issues: | |
| 06 | Subject was a respondent of, or violated, a previous/existing injunction related to domestic, dating, sexual, or repeat violence and/or stalking: | |
| 07 | The subject has previously been issued an RPO: | |
| 08 | Subject has previously violated the provisions of an RPO: | |
| 09 | Subject has been convicted of, had adjudication withheld on, or pled nolo contendere to, a crime constituting domestic violence in any state: | |
| 10 | Subject has used, or threatened to use, against himself/herself or others, any weapons or physical force: | |
| 11 | Subject has unlawfully or recklessly used, displayed, or brandished a firearm: | |
| 12 | Subject has stalked another person: | |
| 13 | Subject has been arrested for, convicted of, had adjudication withheld, or pled nolo contendere to a crime or threat of violence in any other state: | |
| 14 | Is evidence to demonstrate the abuse of controlled substances or alcohol by the subject: | |
| 15 | Is evidence to demonstrate the subject has recently acquired firearm(s) or ammunition: | |
| 16 | Is there any other relevant information provided by a family/household member concerning the subject. (If yes, place information into the narrative): | |

**Investigative Resource Use**

## Incident (Offense)   2025-0471040 (Continued)

| | | |
|---|---|---|
| 1 | Use of LPR assisted in investigation?: | NO |
| 2 | Use of NIBN assisted in investigation?: | NO |
| 3 | Use of RTCC assisted in investigation?: | NO |

### Misc Information

Clearance Status:  **CASE NOT CLEARED**          Clearance Code:  **NOT APPLICABLE**     Date Case Was Cleared:

Case Not Cleared Type:  **PENDING STATE ATTORNEY'S OFFICE DISP?**               Number of Cases Cleared:

Is there additional information included on a continuation report?: **NO**      Are there other Pertinent Reports?: **NO**

Did this Incident qualify as a "Cargo Theft"?:

Is this a "TeleServ" report?: **NO**          Was victim provided options to obtain rights card?:

Option provided to victim?:

In your opinion is there significant reason to believe that the crime can be solved by a patrol follow-up investigation?:

Neighborhood Canvass Conducted?:

**Case Card Information Left with:  Person**

  Victim (01) - COHAN, JOHN MICHAEL

**Handouts**

  #1:  Case Information Card

**Bias Motivation(s)**

### Investigation Time #1

Hour(s):  **03**          Minute(s):  **00**          Cost Amount:  **$144.72**

### Signature

**Signature(s)**

| | | |
|---|---|---|
| Reporting Officer #1: | **P.T. BURKE ( #81350 )** | Division: **PATROL**    Section/Unit: **ZONE 5** |
| Reporting Officer #2: | **N/A** | Division:    Section/Unit: |
| Report submitted on: | **08/16/2025 11:59** | |
| Report Reviewer: | **P.G. YARBER II ( #5134 )** | Status: **Approved** |
| Report approved on: | **08/16/2025 17:11** | |

# EXHIBIT II

# EXHIBIT III

**2:24**

10/6/25 2:20 PM EDT

### Service Attempted: **Scott Bomkamp** on

10/6/2025 2:20 PM EDT

Address: 400 W Washington St Ste 1100, Orlando, FL

32801-2210

I spoke with an individual who identified themselves as the leila. She advised me that she doesn't know when Scott bomkamp is it going to be able to accept the documents because there is a federal shutdown right now and he's not in the office and she doesn't know when he will return

Server:  Sakina Reese

📷 (2)    ◎

GPS Coordinates: 28.544217, -81.384113

10/3/25 4:26 PM EDT

### Documents Received: Process server received documents for **Scott Bomkamp**.

10/3/25 3:18 PM EDT

### Service for Scott Bomkamp  been reactivated

I can assist you with your question.

10/2/25 12:21 P

### Message from ⟨SH⟩ Sara Hess 

**12:06**

# Tracking Results | USPS Edit Name



**UST Scott Bomkamp**
**Summons & Complaint**
9589071052700098818799

**Delivered:**
ORLANDO, FL 32801 on July
21, 2025 at 1:46 pm

## Additional Information

Your item was delivered to the front desk, reception area, or
mail room at 1:46 pm on July 21, 2025 in ORLANDO, FL
32801.

## Get Text and Email Updates

## Tracking History

**July 21, 2025**
**1:46 pm**
Delivered, Front Desk/Reception/Mail Room,
ORLANDO, FL 32801

**July 21, 2025**
**6:53 am**
Out for Delivery,
ORLANDO, FL 32801

**July 21, 2025**
**6:42 am**
Arrived at Post Office,
ORLANDO, FL 32805

**July 21, 2025**
**4:32 am**
Departed USPS Regional Facility,

# EXHIBIT IV

## AFFIDAVIT OF WITNESS — PROOF OF SERVICE TO U.S. TRUSTEE

**TO WHOM IT MAY CONCERN:**

I, David C. Hughes, declare under penalty of perjury as follows:

On April 9, 2024, at the Jacksonville federal courthouse, I personally witnessed my business partner, John M. Cohan, showed a copy of his **Order of Protection** to Mr. Bomkamp, the United States Trustee assigned to our bankruptcy matter. The Order of Protection involved Mr. Cohan's former partner, Peace, whom he had previously identified to Mr. Bomkamp during an earlier proceeding as a party who should not be permitted access to future calls or meetings.

Mr. Cohan clearly instructed Mr. Bomkamp to ensure that Peace would not be present on any future conference calls or 341 proceedings due to legitimate safety concerns for himself and his daughter.

However, during a subsequent 341 meeting held on or about April 17, 2024, I personally heard that John, was very upset that Peace was again present on the call, and Mr. Cohan once more brought this to Mr. Bomkamp's attention. Despite prior notice, her presence didn't appear to be restricted by Mr. Bomkamp.

There is no question in my mind that Mr. Cohan acted responsibly and in good faith, and that he has legitimate fears for the safety of himself and his child. It is deeply concerning and perplexing that Mr. Bomkamp failed to ensure that a person subject to a valid court-issued protective order was not excluded from subsequent proceedings.

I swear that the above statements are true and accurate to the best of my knowledge and belief, under penalty of perjury under the laws of the United States and the State of Florida.

Respectfully submitted,

David C. Hughes
2812 Pat Tillman Drive
Springfield, IL 62711
Email: davidchoatehughes@gmail.com

Dated: 5/9/2025

104

# EXHIBIT V

 Outlook

**Rough draft -- opposition to US Trustee's 2d motion**

From Adam Walker <adam@awsecuritieslaw.com>
Date Fri 7/19/2024 6:09 PM
To   David from Genie Investments <dhughes@genieinvestments.com>; John from Genie Investments
     <jmcohan@genieinvestments.com>

📎 1 attachment (42 KB)
Opp UST's 2d Motion Appt Trustee.docx

Attached is the current draft opposition to the US Trustee's motion. It's far from complete -- needs to
be bulked up in places and I'll add much more polish to it. This lets you see where I'm heading with it
and how I see it coming together.

Let me know if you have concerns, questions, suggestions, etc.

Adam Walker
AW Securities Law
www.awsecuritieslaw.com
(816) 226-6476

On March 5, 2024, the U.S. Trustee (UST) filed a motion seeking various forms of relief, including appointment of a Chapter 11 trustee. In that motion, the UST asserted that Genie was a fraudulent enterprise that "simply stole" money from its customers and other ostensible creditors and invested $9.0 million of "other people's money" in an "obviously suspect" transaction. *See* Doc. 20 ¶¶ 16-17. The UST based these allegations solely on the statements of 18 small-business owners. Following a hearing on the motion, the Court granted only the request to appoint an Examiner. The UST subsequently selected and appointed an Examiner. After a lengthy investigation, the Examiner issued a Report. According to the UST, the Examiner's Report[1] ("Report") fully supports the UST's earlier allegations. Nothing could be further from the truth.

Insisting that the Report corroborates its entrenched position reveals much more about the UST than about Genie. For starters, it demonstrates that the UST has failed to review the Report with a critical eye. Had it done so, it would have realized that the Report is rife with inaccuracies, unsupported conclusions, and omissions of material and pertinent evidence. Among other things, the Report inaccurately reports fundamental aspects of Genie's business. It states falsely, for example, that Genie required a borrower seeking a Business Expansion Line of Credit ("BELOC") to enter a separate Due Diligence Agreement,[2] and that, "In some instances, borrowers paid McMann [Commercial Lending] an upfront initial application fee related to a loan with Genie NV."[3]

The Report contains numerous other errors, many of them attributable to the Examiner's decision to ignore foundational documents (e.g., contracts) and other evidence that would be crucial to any reasonable analysis. As a result, the Report persistently mischaracterizes Genie's operating history, revenues, management, the terms of its relationships with borrowers and business partners, and its future

---

[1]    Doc. 146.

[2]    Report ¶ __. In fact, Genie only required borrowers who sought bridge loans to complete the Due Diligence Agreement, which is evident upon even a cursory review of the relevant contracts.

[3]    Report ¶ __. This never happened. Any borrower who paid fees of any kind to McMann did not have a BELOC Agreement with Genie but was presumably in a lender-borrower relationship with McMann.

prospects. This taints the entire Report and undermines the instant motion, in which the UST cherry-picks snippets that support its existing positions without bothering to determine whether those passages are supported by evidence or analysis.

The UST's insistence that the Report "confirms" key allegations from its initial motion not only shows its lack of concern for the Report's investigative and analytical rigor, but also reveals its willingness to mischaracterize and embellish the Report's contents to suit its purposes. This is most notable in connection with the UST's allegations of fraud. At the very outset of its motion, the UST brazenly claims that the Report "confirms" that a trustee "must be appointed in this case because the Debtor engaged in fraud and gross mismanagement..."[4] But nowhere in the 51-page Report is there any finding or conclusion that Genie engaged in fraud. The UST simply invented this "confirmation" and attributed it to its hand-selected Examiner.

**I.    *The BELOC Agreement, which both the Examiner and the UST ignore, makes clear that ICA Payments received by Genie were not required to be held in trust and therefore did not constitute "customer funds."***

Much of the Report proceeds from a false premise: that Genie was required to hold ICA Payments in trust for the borrowers who paid them. It is indisputable that the BELOC Agreement between Genie and its borrowers governs what ICA Payments are and how they are treated. The Report, however, offers no analysis of the relevant portions of the BELOC Agreement. It never acknowledges, for example, that the BELOC Agreement does not require or even suggest that ICA Payments will be held in escrow or in trust. The Report does, however, reference an email from McMann's principal, a demand letter from McMann's law firm, and an affidavit from one borrower as support for the Examiner's conclusion that ICA Payments remained "customer funds" after their receipt by Genie.[5] It should go without saying that the opinions of interested parties are insufficient, standing alone, to override the unambiguous language of

---

4    Second Motion, at 2.
5    Report ¶¶ 81, 39, 82.

a written contract. As already noted, however, the Report simply ignores the actual contract language. Worse yet, the Report attempts to support its flawed premise by inventing and repeating improper terminology – i.e., "ICA reserves" and "ICA deposits"[6] – despite the fact that those terms do not appear anywhere in the BELOC Agreement in connection with ICA Payments.

This shoddy methodology results in a fatally flawed Report. Because Genie was never required to hold ICA Payments in trust for customers, those payments constituted revenue realized by Genie. The possibility that ICA Payments could later become refundable does not change that. In this way, Genie is no different from a retail store or service provider that promises refunds to unsatisfied purchasers. Nordstrom and Wal-Mart do not have to set aside money received from customers until all opportunity for a refund has passed and neither did Genie. Thus, the funds Genie received in the form of ICA Payments were its own funds, not "customer funds," as the Examiner asserts.

The UST displays a similar lack of interest in engaging with the relevant source material. Its motion contains this bewildering passage:

> The Examiner *found* that the purpose of the ICA funds was to pre-pay interest amounts on customer loans. The Examiner also *found* that the Debtor provided contradictory statements regarding whether ICA funds were supposed to held in trust for customers or could be utilized in the ordinary course of the Debtor's business.[7]

The "purpose" of ICA Payments[8] is not, however, a question of fact for the Examiner to "find," but a matter of contract interpretation. Statements by any person, whether a party to the BELOC Agreement or not, cannot change its intrinsic meaning.[9]

---

[6]     *E.g.*, Report ¶¶ 25, 29, 39, 77, 79, 80.

[7]     Second Mot., at 5-6 (¶ 11) (emphases added).

[8]     The term "ICA funds" is a misnomer – that phrase never appears in the BELOC Agreement – and presumably refers to "ICA Payments."

[9]     Further, the UST mischaracterizes both the Report and the testimony cited therein when it refers to Genie's statements as "contradictory."

Neither the Report nor the instant motion even feints at contract interpretation and, as such, neither offers any basis for a determination that Genie had an obligation to hold ICA Payments in trust as customer funds. That alone is grounds to deny the instant motion. Nonetheless, a brief discussion of the relevant contract provisions dispels the faulty premise that ICA Payments were to be held in trust and that they therefore constituted "customer funds."

Regarding the ICA Payments, the BELOC Agreements only require the Lender to create an Interest Credit Account "on the books and records of the Lender," note "a credit equal to the ICA Payment" in the Interest Credit Account, use the Interest Credit Account to satisfy interest payments as they become due, and refund ICA Payments if and when specified preconditions are satisfied.[10] The BELOC Agreement does not restrict how the Lender may use ICA Payment funds between their receipt and a potential termination by the Borrower. As such, the Lender has no obligation to hold those funds in trust.

Further, the BELOC Agreements openly anticipate the Lender using the ICA Payment, rather than holding it in trust. Section 13.7(a) sets forth when and under what conditions a Borrower may be due an ICA Payment refund. It states that the Lender has up to 40 days to return the ICA Payment after the Borrower properly terminates the BELOC Agreement and requests a refund of the ICA Payment. Section 13.7(c), however, states that this 40-day period is "tolled during the pendency of a Force Majeure event" and defines as one such event the "failure of the Lender's wholesale lender from performing [sic] under the terms of the agreement between the Lender and the wholesale lender." This tolling provision protects the Lender in the event of illiquidity caused by certain occurrences beyond its control, including the failure of a wholesale lender to perform its contractual obligations. If the BELOC Agreement required the Lender to hold ICA Payments in trust, then there would be no need to protect the Lender against a wholesale lender's failure to perform. But the BELOC Agreements clearly anticipated a situation where

---

[10]    BELOC Agmt. §§ 1.1, 3.5 13.7.

the Lender's ability to refund ICA Payments depends on a wholesale lender performing its contractual obligations to the Lender. Otherwise, the tolling provision in section 13.7(c) would be superfluous.

Courts applying Illinois law "look to the contract as a whole" and "attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Land of Lincoln Goodwill Indus. v. PNC Fin. Servs. Group*, 762 F.3d 673, 679 (7th Cir. 2014) (citations omitted). The interpretation the UST urges on the Court – that the BELOC Agreements require the Lender to hold the ICA Payments in trust and untouched – not only has no affirmative basis in the contracts' language but also ignores the provisions of Section 13.7(c) discussed above.

[add conclusion]

> 2. *The Report excludes evidence that Genie had a good-faith belief, based in part on guidance and advice from a reputable law firm, that the Velanos transaction was a sound investment.*

In October 2022, Genie received an offer to enter into a joint venture with Velanos Principal Capital (Velanos). The proposal called for Genie to provide $3.0 million in capital that Velanos, the joint venture's manager, would use to purchase and sell standby letters of credit (SBLCs) at a substantial profit. Before deciding whether to accept the offer, Genie engaged Scott Oh, a lawyer with Warren Law Group (WLG), to perform due diligence on the proposed deal, advise Genie on risks associated with it, and, if necessary, review and revise the joint-venture agreement. According to his firm's website, Oh was an experienced attorney who "often advise[d] and facilitate[d] his clients in identifying, analyzing, and structuring…private placement opportunities, joint ventures, and other private capital transactions, conventional/unconventional asset-based credit facilities, credit enhancements, and corporate debt transactions." Oh advised Genie that SBLC trading was legitimate and that he was familiar with at least one person for whom Velanos and/or its CEO syndicated. Oh notably did not warn Genie either that the promised returns were too good to be true or that SBLC trading was a frequent vehicle for financial fraud.

Oh represented Genie from October 2022 to July 2023. During that time, he regularly consulted with Genie about the joint venture, reviewed multiple amendments to the Joint Venture Agreement, and communicated frequently with Velanos on Genie's behalf. At no time did Oh express to Genie any

concern that the joint venture was fraudulent. In late 2022, when Genie twice increased its capital contribution to the joint venture to a total of $9.0 million, Oh did not advise Genie against doing so. And when Velanos failed to make the payments required under the Joint Venture Agreement, Oh never told Genie that Velanos' various excuses were of questionable validity.

Although the Report states that the Examiner reviewed WLG's bank records, it does not appear that the Examiner interviewed Oh or WLG regarding the substance of Oh's work for Genie. The Report castigates Genie for entering into the joint venture with Velanos. "Neither Velanos nor Wearmouth were registered investment advisors and the returns promised by Velanos pursuant to the Velanos JVA were 100% in 30 days and profit participation that would have resulted in a 900% return, which should have raised a red flag."[11] The Report gives no consideration to the fact that Genie sought out and hired a professional to apprise it of risks and concerns raised by the joint venture. Oh claimed to have a history of helping clients "joint ventures," "conventional/unconventional asset-based credit facilities," and other transactions, which suggests he was an appropriate choice for the job. The Report nonetheless concludes that Genie's decision to enter the joint venture constitutes "gross mismanagement." In doing so, it discounts the effect on Genie of obtaining what it believed to be competent legal guidance from a partner with a reputable law firm.

The UST not only seizes on this conclusion, but expands on it, stating that "Debtor engaged in gross mismanagement, *at a minimum,* in its dealings with Velanos..."[12]

---

[11]    Report ¶ 83.
[12]    Second Mot., at 2.

### 3. *The UST cannot meet its burden of demonstrating that Genie's loans to affiliated entities constituted either fraud or gross mismanagement.*

The UST's motion brands loans from Genie to six affiliated entities as "fraudulent transfers and not true loans."[13] The UST alleges, almost in passing, direct evidence of fraudulent intent in the transfers from Genie to its affiliate, Better Methods. This allegation falls well short of the movant's burden of proof ad, moreover, misstates the Report's findings. According to the UST, "The direct evidence is the express purpose of the transfers to Better Methods as asset protection from the Debtor's creditors."[14] As support for this allegation, the UST cites paragraph 188 of the Examiner's Report, which states, in its entirety, "According to [John Michael] Cohan, Better Methods is an asset management company set up to protect the Debtor's assets and the assets of the Debtor's clients." The "express purpose" alleged by the UST as direct evidence of fraud is itself a fraud, fabricated by the UST and unsupported by any evidence in the Report or elsewhere in the record of this case.

The UST also asks the Court to find circumstantial evidence of fraudulent intent. The UST recites the "badges of fraud" often employed by Federal Courts of Appeals in determining, for purposes of 11 U.S.C. § 548, whether a debtor "intended to hinder, delay, or defraud" creditors. The UST's motion only addresses some of those factors, however, and does so in an extremely cursory fashion. It states, for example:

- The transfers at issue occurred "while the Debtor was being sued or was under threat of suit for failing to fund loans."[15]

- Genie received "less than the equivalent value based on the non-market nature of the loans."[16]

- The funds were transferred "in a concealed manner attempting to disguise the fraudulent transfers as loans."[17]

---

[13]    Second Mot. ¶ 16.
[14]    Second Mot. ¶ 17.
[15]    Second Mot. ¶ 19.
[16]    Second Mot. ¶ 19.
[17]    Second Mot. ¶ 19.

The UST does not even bother to cite the Report or any other evidence for these claims. That alone should doom the Motion, as unsupported, conclusory statements cannot establish fraud. But because the UST also urges the Court to find that the loans to affiliates constituted "gross mismanagement," a proper analysis of the factors referenced in the motion is warranted.

### The timing of Genie's transfers to affiliates does not support a finding of constructive fraud.

The UST asserts that "Debtor's funds were transferred (1) to insiders or affiliates; (2) while the Debtor was being sued or under threat of suit for failing to fund loans..."[18] This is flatly and blatantly false, and it reveals the UST's unwillingness to grapple with inconvenient facts.

The affiliate transfers identified in the Report were all made pursuant to loan agreements executed in September 2022. At that time, Genie had successfully funded dozens of loans, had never failed to issue a properly requested refund of an ICA Payment, had not agreed to contribute any money to the joint venture with Velanos, and had never been sued or threatened with suit related to an alleged breach of a BELOC Agreement.

The Report provides details about each of these transfers, which happened piecemeal over the course of many months, with nearly all of them taking place between September 2022 and July 2023.[19] What these schedules show is that Genie's transfers to affiliated entities generally took place before Genie was insolvent or had any reason to believe that it would become insolvent, and before any putative creditor had sued Genie or threatened suit against it.[20]

With respect to Genie's transfers to its affiliate, Zoomeral, Inc., the Report shows that the net total transferred by Genie to Zoomeral in that period – through roughly 60 separate transactions – was $1,771,555.74. Of these transactions, 14 occurred before Genie entered the joint venture with Velanos.

---

[18]    ' Second Mot. ¶ 19.

[19]    Report, Exh. 4 (showing approximately 60 separate transfers from Genie to Zoomeral, Inc., between September 12, 2022, and July 28, 2023); Report ¶¶ 147, 159 (showing more than 25 transfers apiece from Genie to Capitulum Homes and Cald Holdings between September 2022 and July 2023).

[20]    Genie received its first threat of legal action regarding an ICA Payment refund in [October?] 2023.

Another 20 occurred before Velanos was late making any payments due under the Joint Venture Agreement.

Further, as discussed above, Genie had a good-faith belief until at least July 2023 that it would shortly receive a payment of at least $9.5 million from Velanos pursuant to the Joint Venture Agreement. Considering that the vast majority of the affiliate transfers at issue occurred before that time, the evidence clearly shows that few, if any, of those transfers occurred when Genie was insolvent or had reason to believe it would soon become insolvent.

### Genie received reasonably equivalent value for the affiliate transfers

The UST alleges that Genie transferred funds to affiliates "for less than the equivalent value based on the non-market nature of the loans."[21] By "non-market nature," the UST refers to the low interest rate, the absence of personal guarantees, the absence of a periodic-payment requirement, and the borrowers' option to extend the loan term for 10 years. The UST bases its allegation that the terms of these loans would not have been available to Genie's affiliates in the open market on the Report. For its part, the Report is devoid of any evidence regarding the terms that might have been available to the affiliate borrowers.

The UST fails to note that each of the loans at issue requires repayment in full of the loan's principal amount. The loans are not forgivable. Moreover, even assuming that the loan terms were more favorable than the affiliate borrowers would likely have found elsewhere, this fact alone cannot prove that Genie received less than "reasonably equivalent value" in exchange for the money lent. When evaluating the value received in exchange for allegedly fraudulent transfers, Courts recognize various "indirect" benefits – i.e., benefits that may not be easily

---

[21]    Second Motion ¶ 19.

reduced to a specific dollar value. Here, the indirect benefits of the affiliate loans are real and were shared with the Examiner.

Zoomeral, Inc., was the affiliate that received the largest amount of loans from Genie. Zoomeral built and operated the software platform that Genie and its borrowers used for communication, record management, and _____. In 2022-23, the Zoomeral platform was an integral part of Genie's business, and both Genie and Zoomeral expected that improvements to Zoomeral's systems would benefit both companies. Genie loaned money to Zoomeral so that it could hire developers to improve the software platform, establish a relationship with one or more payment processors, and create a marketing campaign to attract more potential borrowers. Genie reasonably expected its loan to Zoomeral to result in more business for Genie.

Better Methods

Capitulum

Cald

Case law research:

- "All of the authorities agree that the appointment of a trustee under § 1104 is an extraordinary remedy. Therefore, the evidence to support the appointment of a trustee must be clear and convincing." In re Tyler, 18 B.R. 574, 577 (S.D. Fla. 1982)

- Standard of proof: clear and convincing evidence that appointment of trustee is warranted

- Strong presumption that DIP shall remain in control of its business while in bankruptcy

- Court must "weigh the benefits that would be derived by the appointment of a Trustee against the expense of the appointment." *General Oil Distributors*, 42 Bankr. 402, at 409 (Bankr. E.D. N.Y. 1984).

- "As a general rule, . . . a trustee will not be appointed where affiliate transactions are called into question, unless the movant can demonstrate that the transactions were improper, detrimental to the debtor estate, or were actually fraudulent." Norton Bankruptcy Law & Practice § 53.04; *See also General Oil Distributors*, supra, 42 Bankr. at 402; *All Sun Juices*, 34 Bankr. 162 (Bankr. M.D. Fla. 1983).

- Bankruptcy Court order appointing a trustee constitutes a final order that is immediately appealable to 11th Circuit

- "…it now appears the appointment of a trustee, saddling the estate with the expense of a appointed trustee and additional counsel, and the removal of the Garbaczes from management may well seriously handicap the Debtor's efforts to maintain its customer base and operating income." *In re Waterworks, Inc.*, 538 B.R. 445, 465-66 (Bankr. N.D. Ill. 2015)

# EXHIBIT VI

**Query**   **Reports ▾**   **Utilities ▾**   **Help**   **Log Out**

E-NTC,JURY,PROSE-NP,TYPE-F

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:25-cv-02009-RDM

COHAN v. UNITED STATES TRUSTEE PROGRAM et al
Assigned to: Judge Randolph D. Moss
Cause: 42:1983 Civil Rights Act

Date Filed: 06/26/2025
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

JOHN MICHAEL COHAN                 represented by   **JOHN MICHAEL COHAN**
Email: iustusprocessus@outlook.com
PRO SE

V.

**Defendant**

UNITED STATES TRUSTEE              represented by   **Anna Davis Walker**
PROGRAM                                            DOJ-USAO
*TERMINATED: 10/09/2025*                            Civil Division
601 D Street, NW
Washington, DC 20530
(202) 252-2544
Email: Anna.Walker@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

SCOTT BOMKAMP                      represented by   **Anna Davis Walker**
*Unites States Trustee; in his Individual*          (See above for address)
*Capacity*                                          *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

JOHN AND JANE DOES 1-100

| Date Filed | # | Docket Text |
|------------|---|-------------|

| 06/26/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405, receipt number 209862) with Jury Demand filed by JOHN MICHAEL COHAN. (Attachments: # 1 Civil Cover Sheet # 2 Exhibit Address Under Seal) (zdp) (Entered: 07/07/2025) |
| --- | --- | --- |
| 06/26/2025 | | SUMMONS Not Issued as to All Defendants (zdp) (Entered: 07/07/2025) |
| 07/09/2025 | 2 | STANDING ORDER: The parties are hereby ORDERED to comply with the directives set forth in the attached Standing Order. See document for details. Signed by Judge Randolph D. Moss on 7/9/2025. (lcrdm3) (Entered: 07/09/2025) |
| 07/14/2025 | 3 | REQUEST FOR SUMMONS TO ISSUE filed by JOHN MICHAEL COHAN. (zdp) (Entered: 07/16/2025) |
| 07/16/2025 | 4 | SUMMONS (4) Issued as to SCOTT BOMKAMP, UNITED STATES TRUSTEE PROGRAM, U.S. Attorney and U.S. Attorney General (E-Mailed Summons to Plaintiff) (Attachments: # 1 Notice and Consent)(zdp) Modified docket text on 7/16/2025 (zdp). (Entered: 07/16/2025) |
| 07/17/2025 | 5 | NEW Pro Se Consent To Receive Notices of Electronic Filing by JOHN MICHAEL COHAN (zdp) (Entered: 07/22/2025) |
| 07/17/2025 | 6 | AFFIDAVIT OF MAILING re 1 Complaint by JOHN MICHAEL COHAN. (zdp) (Entered: 07/22/2025) |
| 07/25/2025 | 7 | NOTICE OF U.S. Trustee's Fabricated Fraud Allegations by JOHN MICHAEL COHAN (zdp) (Entered: 07/25/2025) |
| 07/28/2025 | 8 | NOTICE OF Filing Corrected Exhibit by JOHN MICHAEL COHAN re 1 Complaint (zdp) (Entered: 07/28/2025) |
| 08/11/2025 | 9 | MOTION for Entry of Default by JOHN MICHAEL COHAN. (zdp) (Entered: 08/12/2025) |
| 08/11/2025 | 10 | MILITARY AFFIDAVIT re 9 MOTION for Entry of Default by JOHN MICHAEL COHAN. (zdp) Modified docket text on 8/12/2025 (zdp). (Entered: 08/12/2025) |
| 08/18/2025 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. SCOTT BOMKAMP served on 7/21/2025; UNITED STATES TRUSTEE PROGRAM served on 7/21/2025 (znmw) (Entered: 08/19/2025) |
| 08/18/2025 | 12 | MOTION for Entry of Default by JOHN MICHAEL COHAN. (znmw) (Entered: 08/19/2025) |
| 08/18/2025 | 13 | ERRATA of Signed Copy by JOHN MICHAEL COHAN re 11 Summons Returned Executed as to Federal Defendant. (znmw) (Entered: 08/19/2025) |
| 08/19/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's first and second motions for entry of default, Dkt. 9 , Dkt. 12 , it is hereby ORDERED that the motions are DENIED. Plaintiff is advised that he may not move for a default judgment until |

| | | the Defendants are properly served and the required time after service has elapsed. *See* Fed. R. Civ. P. 12(a)(2). Signed by Judge Randolph D. Moss on 8/19/2025. (lcrdm3) (Entered: 08/19/2025) |
|---|---|---|
| 08/20/2025 | 14 | REQUEST FOR SUMMONS TO ISSUE filed by JOHN MICHAEL COHAN. (znmw) (Entered: 08/20/2025) |
| 08/20/2025 | 15 | SUMMONS (1) Reissued Electronically as to U.S. Attorney General. (znmw) (Entered: 08/20/2025) |
| 08/21/2025 | 16 | MOTION to Take Judicial Notice by JOHN MICHAEL COHAN. (Attachments: # 1 Exhibits)(znmw) (Entered: 08/21/2025) |
| 08/21/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's motion to take judicial notice, Dkt. 16 , it is hereby ORDERED that the motion is DENIED. Plaintiff's motion is improper as there is no pending motion that might require the Court to take judicial notice of any fact. Although Plaintiff cites Fed. R. Civ. P. 55, which deals with default judgments, the Court has already explained in its minute order issued August 19, 2025, that Plaintiff may not move for a default judgment until Defendants are properly served and the required time after service has elapsed. Plaintiff is directed not to file any further substantive motions until he has effected service and the time for Defendants to respond to the complaint has run. *See* Fed. R. Civ. P. 12(a)(2). Signed by Judge Randolph D. Moss on 08/21/2025. (lcrdm3) (Entered: 08/21/2025) |
| 09/17/2025 | 19 | NOTICE of Stipulation of 30-Day Extension by JOHN MICHAEL COHAN (znmw) (Entered: 09/20/2025) |
| 09/19/2025 | 17 | NOTICE *of Westfall Certification* by SCOTT BOMKAMP, UNITED STATES TRUSTEE PROGRAM (Attachments: # 1 Westfall Certification, # 2 Certificate of Service)(Walker, Anna) (Entered: 09/19/2025) |
| 09/19/2025 | 18 | MOTION to Dismiss by SCOTT BOMKAMP, UNITED STATES TRUSTEE PROGRAM. (Attachments: # 1 Declaration of Larry Wahlquist, # 2 Text of Proposed Order, # 3 Certificate of Service)(Walker, Anna) (Entered: 09/19/2025) |
| 09/22/2025 | 20 | FOX/NEAL ORDER: Plaintiff is hereby ORDERED to respond to Defendant's Motion to Dismiss, Dkt. 18 , on or before October 20, 2025. See document for details. Signed by Judge Randolph D. Moss on 9/22/2025. (lcrdm3) (Entered: 09/22/2025) |
| 09/22/2025 | 21 | MOTION for Extension of Time to Effectuate Service by JOHN MICHAEL COHAN. (znmw) (Entered: 09/23/2025) |
| 09/22/2025 | 22 | MOTION for Order to Show Cause, MOTION for Other Appropriate Relief by JOHN MICHAEL COHAN. (znmw) (Entered: 09/23/2025) |
| 09/22/2025 | 23 | MOTION for Extension of Time to File Response/Reply as to 18 MOTION to |

| | | |
|---|---|---|
| | | Dismiss by JOHN MICHAEL COHAN. (znmw) (Entered: 09/23/2025) |
| 09/22/2025 | 24 | MOTION to Defer Ruling re 18 MOTION to Dismiss by JOHN MICHAEL COHAN. (znmw) (Entered: 09/23/2025) |
| 09/25/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's motion for extension of time to file response, Dkt. 23 , it is hereby ORDERED that the motion is GRANTED. Plaintiff shall respond to Defendants' Motion to Dismiss, Dkt. 18 , on or before October 24, 2025. Upon consideration of Plaintiff's motion for extension of time to effectuate service, Dkt. 21 , it is hereby ORDERED that the motion is GRANTED. Plaintiff shall properly effectuate service on Defendants on or before October 24, 2025. Upon consideration of Plaintiff's motion to defer ruling on the Motion to Dismiss, Dkt. 24 , it is hereby ORDERED that the motion is DENIED as premature. Plaintiff is advised that the Court will not consider ruling on the Motion to Dismiss until it has been fully briefed. Signed by Judge Randolph D. Moss on 9/25/2025. (lcrdm3) (Entered: 09/25/2025) |
| 09/26/2025 | 25 | REQUEST FOR SUMMONS TO ISSUE filed by JOHN MICHAEL COHAN. (znmw) (Entered: 09/29/2025) |
| 09/29/2025 | 26 | SUMMONS (1) Reissued Electronically as to SCOTT BOMKAMP (znmw) (Entered: 09/29/2025) |
| 09/30/2025 | 27 | MOTION for Leave to File Amended Complaint by JOHN MICHAEL COHAN. (znmw) (Entered: 10/01/2025) |
| 10/02/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's motion for leave to file amended complaint, Dkt. 27 , it is hereby ORDERED that the motion is DENIED as moot. Plaintiff may file an amended complaint as of right any time on or before October 10, 2025. See Fed. R. Civ. P. 15(a)(1)(B). Plaintiff is advised that, if he does not file an amended complaint by that date, he will have to renew his motion for leave to amend. Signed by Judge Randolph D. Moss on 10/2/2025. (lcrdm3) (Entered: 10/02/2025) |
| 10/06/2025 | 28 | MOTION to Permit Alternative Service by JOHN MICHAEL COHAN. (znmw) (Entered: 10/07/2025) |
| 10/09/2025 | 29 | AMENDED COMPLAINT against SCOTT BOMKAMP, JOHN AND JANE DOES 1-100 with Jury Demand filed by JOHN MICHAEL COHAN.(znmw) (Entered: 10/14/2025) |
| 10/14/2025 | | MINUTE ORDER: In light of the filing of Plaintiff's amended complaint, Dkt. 29 , it is hereby ORDERED that Defendant's Motion to Dismiss, Dkt. 18 , is DENIED as moot. Signed by Judge Randolph D. Moss on 10/14/2025. (lcrdm3) (Entered: 10/14/2025) |
| 10/14/2025 | 30 | NOTICE to the Court by JOHN MICHAEL COHAN re 29 Amended Complaint (znmw) (Entered: 10/15/2025) |

| 10/17/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's motion for order to show cause, Dkt. 22 , it is hereby ORDERED that the motion is DENIED without prejudice. To the extent that the motion seeks relief from the United States Trustee Program, the motion is moot as the Trustee Program was removed as a defendant in this case in Plaintiff's amended complaint, Dkt. 29 . To the extent that the motion seeks relief from Defendant Scott Bomkamp in his individual capacity, the motion is premature as Mr. Bomkamp has not yet been served. Upon consideration of Plaintiff's motion to permit alternative service, Dkt. 28 , it is hereby ORDERED that the motion is GRANTED in part. The deadline for Plaintiff to properly effectuate service on Defendants is extended to 14 days after the end of the ongoing lapse of appropriations. Plaintiff, however, remains responsible for effecting service in the manner prescribed in Rule 4. Signed by Judge Randolph D. Moss on 10/17/2025. (lcrdm3) (Entered: 10/17/2025) |
| 10/17/2025 | 31 | NOTICE of Non-Opposition by JOHN MICHAEL COHAN re 22 MOTION for Order to Show Cause, MOTION for Other Appropriate Relief. (znmw) (Entered: 10/20/2025) |
| 10/17/2025 | 32 | MOTION for Extension of Time to Effect Service by JOHN MICHAEL COHAN. (znmw) (Entered: 10/20/2025) |
| 10/21/2025 | | MINUTE ORDER: Upon consideration of plaintiff's motion for extension of time to effect service, Dkt. 32 , it is hereby ORDERED that the motion is GRANTED. The Court has already twice extended the deadline for service in this case, most recently giving Plaintiff until 14 days after the end of the ongoing lapse of appropriations. That deadline is now further extended, at Plaintiff's request, to 60 days following the end of the current lapse of appropriations. Plaintiff is cautioned that no further requests to extend the deadline will be considered absent compelling circumstances. Signed by Judge Randolph D. Moss on 10/21/2025. (lcrdm3) (Entered: 10/21/2025) |

**PACER Service Center**

**Transaction Receipt**

| 11/04/2025 13:33:37 | | | |
|---|---|---|---|
| PACER Login: | auramayfreedom | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:25-cv-02009-RDM |
| Billable Pages: | 4 | Cost: | 0.40 |

# EXHIBIT VII

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
JOHN MICHAEL COHAN, living,
Plaintiff,
v.
UNITED STATES TRUSTEE PROGRAM,
UNITES STATES TRUSTEE SCOTT BOMKAMP, in his individual capacity,
JOHN AND JANE DOES 1-100,
Defendants.
Case No. 25-cv-2009


**PLAINTIFF'S NOTICE OF NON-OPPOSITION TO MOTION FOR ORDER TO SHOW
CAUSE (DOC. 22) AND REQUEST FOR JUDICIAL NOTICE**

Plaintiff John Michael Cohan respectfully submits this Notice of Non-Opposition regarding his
previously filed Motion for an Order to Show Cause (Doc. 22, filed 09-22-2025). For the reasons
stated below, Plaintiff also requests the Court take judicial notice of Defendant Bomkamp's
strategic non-response.

1. The Motion was filed and served prior to the recent lapse in federal appropriations and the
   subsequent government shutdown affecting the Department of Justice.

2. As of the date of this Notice, the Motion remains unopposed. Plaintiff has confirmed that
   the assigned government attorney for the Defendant is furloughed and unable to respond.
   See Email from AUSA Anna Walker, Oct. 9, 2025 (attached as **Exhibit A**). Furthermore,
   Plaintiff's attempts to seek administrative guidance from Deputy Chief Heather Graham-
   Oliver have been unavailing. See Email Correspondence with Deputy Chief Graham-
   Oliver, Oct. 9, 2025 (attached as **Exhibit B**).

3. This non-response is a strategic choice, not an unavoidable consequence of the
   furlough. Defendant Bomkamp has been on clear notice of this dispute and the specific
   allegations since at least September 11, 2025, when Plaintiff first raised the ethical
   violation of 5 C.F.R. § 2635.502. This timeline is confirmed by a subsequent email chain,
   the relevant portion of which is attached as **Exhibit C**. In her September 19, 2025
   response—three (3) days before the Motion for Order to Show Cause was filed and eleven
   (11) days before the government shutdown—his then-assigned government attorney,
   AUSA Anna Walker, confirmed that she had provided Mr. Bomkamp with legal advice
   regarding making *"informed choices about their options"* that *"must empower the client"*
   and is *"necessarily confidential."* Plaintiff agrees with the confidentiality aspect, however,
   her preceding sentences confirm the subject matter as in what this advice was in relation
   to: *"Your email below asks me to give specific advice to counsel for the U.S. Trustee as to
   his role in your corporate bankruptcy case. I have no role in that bankruptcy case or over*

*the U.S. Trustee's role in that bankruptcy case.*" This communication—wherein a government attorney provided personal legal advice to a government employee about a lawsuit against him in his individual capacity—is the very conduct alleged in the pending Motion. Defendant and his counsel thus had clear notice and a full opportunity to address these serious ethical concerns well in advance of both the Motion's filing and the shutdown. Defendant's current silence, therefore, follows over a month of active engagement and legal preparation, and represents a deliberate choice not to rectify the known conflict.

3. Crucially, a government furlough suspends an employee's official duties; it does not suspend their personal capacity or their ability to make personal decisions. Defendant Scott Bomkamp is a licensed attorney who is well aware of this lawsuit, as evidenced by his staff's refusal of service and his counsel's pre-shutdown communications. His current silence, while procedurally attributable to the shutdown, is a de facto decision not to respond. He possesses the personal capacity and knowledge to secure representation or seek leave to file a response *pro se* if he so chose. His failure to do so should be viewed as a strategic choice, not an unavoidable incapacity.

4. The Court retains its inherent authority to manage its docket during a lapse in appropriations. See *In re Buerk*, 665 F.2d 291, 292 (D.C. Cir. 1981) (per curiam). Plaintiff respectfully submits that the serious questions of ethical conduct and potential conflicts of interest under 5 C.F.R. § 2635.502 raised in the pending Motion are of a nature that may warrant the Court's attention in due course, irrespective of the current shutdown.

WHEREFORE, Plaintiff respectfully:

a. NOTIFIES the Court that the Motion for Order to Show Cause (Doc. 22) is unopposed;

b. REQUESTS the Court take judicial notice of Defendant Bomkamp's failure to respond, considering his personal capacity and awareness of this action; and

c. REQUESTS that the Court hold the Motion in readiness for its consideration immediately upon the formal effectuation of service and the restoration of appropriations, or earlier if the Court in its sound discretion deems it necessary to address the weighty issues presented.

**[This section was intentionally left blank.]**

Dated: 10-17-2025

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on 10-17-2025, I served a true and correct copy of this document upon the
Defendant(s), by placing the documents in the United States mail and/or email.

# EXHIBIT A

 Outlook

---

**RE: Urgent Matter Requiring Your Attention: In re Genie Investments NV, Inc. & Attorney Scott Bomkamp**

---

**From** Graham-Oliver, Heather (USADC) <Heather.Graham-Oliver@usdoj.gov>
**Date** Thu 10/9/2025 11:16 AM
**To**    Debitus Processus <iustusprocessus@outlook.com>

📎 2 attachments (130 KB)
Standing Order 2025.pdf; Signed Bankruptcy GO 25-02(10-1-2025).pdf;

Hello Mr. Cohan:

Hope you are well.  Please be advised that the government is shut down and the attorney assigned to your case in District Court has been furloughed. Please see the attached standing order of the District Court that applies to the current state of affairs and lack of appropriation.  FYI only, I am also including the standing order for the Bankruptcy Court.

Best regards,

Heather Graham-Oliver
Deputy Chief
United States Attorneys' Office-Civil Division
601 D Street NW
Washington, D.C. 20530

---

**From:** Debitus Processus <iustusprocessus@outlook.com>
**Sent:** Thursday, October 9, 2025 10:17 AM
**To:** Graham-Oliver, Heather (USADC) <Heather.Graham-Oliver@usdoj.gov>
**Subject:** [EXTERNAL] Urgent Matter Requiring Your Attention: In re Genie Investments NV, Inc. & Attorney Scott Bomkamp

Dear Deputy Chief Oliver,

I am writing to bring a critical procedural and ethical issue to your attention, following an automated response from the attorney for Scott Bomkamp indicating he is furloughed due to the lapse in appropriations.

I am the principal in the corporate Chapter 11 bankruptcy (Genie Investments NV, Inc., 24-bk-496) There is also a related, pending Bivens action (Cohan v. Bomkamp, 25-cv-2009) against Mr. Bomkamp in his personal capacity.

The furlough notice creates an untenable situation for the bankruptcy case. The docket still lists Mr. Bomkamp as the active Trial Attorney, but he is now officially unable to work or respond. A motion for an order to show cause of why Bomkamp should not recuse himself was pending and ignored prior to any federal shutdown prolonging this injustice. This leaves the case in a state of legal limbo, which is unfair to the court and the estate.

Furthermore, his continued presence on the case—while he is personally sued by myself personally—creates a clear conflict under 5 C.F.R. § 2635.502.

# EXHIBIT B

 Outlook

**Inquiry Regarding Your Continued Role in Bankruptcy Case [24-bk-496] Amidst Pending Personal Litigation**

From Debitus Processus <iustusprocessus@outlook.com>
Date Thu 10/9/2025 9:04 AM
To    scott.e.bomkamp@usdoj.gov <scott.e.bomkamp@usdoj.gov>
Cc    Walker, Anna (USADC) <anna.walker@usdoj.gov>
Bcc   David Choate <davidchoatehughes@gmail.com>

Dear Mr. Bomkamp,

I am writing to you as the Trial Attorney for the U.S. Trustee Program overseeing the Chapter 11 bankruptcy case of Genie Investments NV, Inc. (Case No.: [24-bk-496]).

This communication is necessary because, despite the pending personal lawsuit against you in your individual capacity in Cohan v. Bomkamp (Case No.: [25-cv-2009]), you have not recused yourself from the bankruptcy matter. A Motion for Order to Show Cause regarding your recusal remains pending in the DC action.

Given your ongoing official involvement, I require clarification on several administrative and procedural matters central to the bankruptcy case:

a. Official Record of §341 Meeting: Pursuant to the allegations in the pending Bivens complaint, I must formally request that the U.S. Trustee Program take all necessary steps to preserve and certify the complete, unaltered original audio recording of the §341 meeting held on April 17, 2024, along with all associated metadata, as this is now a key piece of evidence in active federal litigation.
b. Communication Protocol: Please confirm that, given your active role in the bankruptcy and your status as a defendant in my personal lawsuit, direct communication with you on bankruptcy matters remains the appropriate channel. If your role has changed or should be changed, please so state.

Your prompt response to these reasonable, case-related inquiries is requested. As your continued oversight of this bankruptcy while being sued personally by its principal creates a clear conflict under 5 C.F.R. § 2635.502, your actions—or lack thereof—in responding to these official inquiries will be highly relevant to the court's assessment of your impartiality and your motives in both proceedings.

Thank you for your attention to this matter.

John Michael Cohan

To resolve this efficiently and protect the integrity of the proceeding, I believe the simplest administrative solution is to formally recuse Mr. Bomkamp and appoint a new attorney to the case.

This would immediately resolve the conflict-of-interest issue and ensure the bankruptcy can proceed without being hampered by the furlough. I would need to speak with my business partner prior to any approval, but we would be happy to accept any new, conflict-free attorney that is appointed to oversee the matter.

Thank you for your leadership in handling this. I am available to provide any further information you may need. Please confirm receipt at your earliest convenience.

Respectfully,

John Michael Cohan

---

**From:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Sent:** Thursday, October 9, 2025 9:04 AM
**To:** Debitus Processus <iustusprocessus@outlook.com>
**Subject:** Automatic reply: Inquiry Regarding Your Continued Role in Bankruptcy Case [24-bk-496] Amidst Pending Personal Litigation

*As of October 1, 2025, the Department of Justice, including the U.S. Attorney's Office for D.C., is experiencing a lapse in appropriations. Due to that lapse, I am currently furloughed and unable to respond to your email until appropriations are restored. If you need immediate assistance, please contact Deputy Chief Heather Graham-Oliver at* Heather.Graham-Oliver@usdoj.gov.

# EXHIBIT C

**WA**   Walker, Anna (USADC)<Anna.Walker@usdoj.gov>

To: You             Fri 9/19/2025 4:34 PM

⚑ Flagged

Mr. Cohan,

Thank you for your email. Your email below asks me to give specific advice to counsel for the U.S. Trustee as to his role in your corporate bankruptcy case. I have no role in that bankruptcy case or over the U.S. Trustee's role in that bankruptcy case. However, any advice given to a client not only must empower the client to make informed choices about their options but is necessarily confidential.

Best,
Anna

. . . .

| Thank you for your response. | Thank you very much for your response. | I understand. Thank you. |

↩ Reply     ↪ Forward

 Outlook

**Re: Cohan v. United States Trustee Program**

From Debitus Processus <iustusprocessus@outlook.com>
Date Thu 9/11/2025 5:42 PM
To    Walker, Anna (USADC) <Anna.Walker@usdoj.gov>

Ms. Walker,

Thank you for your response.

I must note that your email did not address the serious ethical conflict and demand for recusal I raised concerning the main defendant. As you are aware, under 5 C.F.R. § 2635.502, a federal employee is required to disqualify himself from any particular matter where his impartiality could be questioned due to a personal relationship or affiliation. This is unequivocally triggered where, as here, I have active, parallel litigation pending against him personally.

His ethical and legal obligation to recuse is unilateral and self-executing. His continued participation in this matter, while he is a defendant in a separate case I brought against him, is a clear violation of federal ethics regulations and my Fifth Amendment right to due process. This isn't negotiable and I reiterate my demand for his immediate recusal for the record.

While my ability to bring this before the Florida Court is temporarily limited, please be advised that this demand is ongoing. I will be compelled to address this violation through all available channels, including a formal motion to the Court at the earliest opportunity and a complaint to the Department of Justice Office of Professional Responsibility, should he not comply with his mandatory ethical duties.

What I gather from your response is that your clients not willing to negotiate over the extension, but your clients are willing to negotiate in general, so in the spirit of good faith, I am not opposed to the extension to October 22, 2025.

Let's set up a time next week to confer. Please propose some days and times later in the week. Thank you.

John

---

From: Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
Sent: Thursday, September 11, 2025 4:58 PM
To: Debitus Processus <iustusprocessus@outlook.com>
Subject: Re: Cohan v. United States Trustee Program

Mr. Cohan,

I'm not sure what position you are asking me for. We are also not interested in negotiating over this straight forward extension request. Please let me know whether you are opposed to the named Defendants' request for an extension of time in this case to respond to the Complaint by Oct. 22. If you are opposed, we will note that for the record.

Best,
Anna

---

From: Debitus Processus <iustusprocessus@outlook.com>
Sent: Thursday, September 11, 2025 12:58:31 PM

135

**To:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Subject:** [EXTERNAL] Re: Cohan v. United States Trustee Program

Ms. Walker,

Thanks for your response. I am attempting to work with the opposition in good faith. Prior to me confirming my position, in regards to the bankruptcy matter and Mr. Bomkamp's recusal, what is your clients' position?

John

---

**From:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Sent:** Thursday, September 11, 2025 12:54 PM
**To:** Debitus Processus <iustusprocessus@outlook.com>
**Subject:** RE: Cohan v. United States Trustee Program

Hi Mr. Cohan,

No, we will not agree to opening discovery in this case in exchange for your consent to our motion to seek a thirty-day extension of time to respond to the Complaint in this case. We will simply file a motion with the Court, instead, seeking a thirty-day extension of time and note that you are opposed to the motion. Please clarify that this is the position I should include for you in the motion to extend.

Thank you for your understanding and clarification.

Best,
Anna

Anna D. Walker
Assistant United States Attorney
Civil Division
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
Phone:  (202) 252-2544
anna.walker@usdoj.gov

---

**From:** Debitus Processus <iustusprocessus@outlook.com>
**Sent:** Thursday, September 11, 2025 12:46 PM
**To:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Subject:** [EXTERNAL] Re: Cohan v. United States Trustee Program

Dear Ms. Walker,


Thanks for your reply, I appreciate your assistance. I am willing to stipulate a 30-day extension provided that we also agree to open the discovery process at this time. Specifically, I would like to begin serving interrogatories, requests for production, and requests for admission so that the matter can move forward efficiently and on a fair timeline.

I also want to note for the record that Mr. Bomkamp is still overseeing a corporate bankruptcy case of mine. This situation is absolutely untenable and needs to be rectified immediately, as his continued involvement increases liability for him personally and further complicates these proceedings. This would be a great beginning to moving towards a mutual resolution.

Please let me know if you think your client would be agreeable to this approach. If so, I will prepare a stipulation reflecting both the extension, the commencement of discovery and

136

*"without admitting fault,"* a notification of Mr. Bomkamp's intended immediate voluntary recusal from the underlying bankruptcy matter [as it is only proper].

I am available for a call this afternoon between 2 and 4 Eastern today or same time tomorrow if you would like some time to speak with your clients.


Respectfully,


John Michael Cohan

---

**From:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Sent:** Thursday, September 11, 2025 10:39 AM
**To:** Debitus Processus <iustusprocessus@outlook.com>
**Subject:** RE: Cohan v. United States Trustee Program

Hello Mr. Cohan,

I'm happy to have an introductory meet and confer with you. I do not have any settlement authority, but if you wish to convey a demand, I will convey it to my clients. We believe a short extension to October 22, 2025, is reasonable. I'm happy to discuss this later today or tomorrow, please let me know what time works best for you for a quick call.

Best,
Anna

Anna D. Walker
Assistant United States Attorney
Civil Division
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
Phone: (202) 252-2544
anna.walker@usdoj.gov

---

**From:** Debitus Processus <iustusprocessus@outlook.com>
**Sent:** Wednesday, September 10, 2025 6:00 PM
**To:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Subject:** [EXTERNAL] Re: Cohan v. United States Trustee Program

Ms. Walker,

I acknowledge receipt of your request for a 30-day extension to respond to the Complaint. According to my calendar, the date the response is due is the 23rd. While I am prepared to proceed on the existing schedule, I may consider a short extension only if it does not delay the proceedings or prejudice my ability to move forward. As you are aware, the actions of the Defendant have already caused significant disruption and harm to me personally, and any further delay exacerbates that impact.

I am also happy to jump on a conference call with you to discuss a potential settlement at your earliest convenience. If not a settlement discussion, at least a short meet and greet to get acquainted. I think with a little bit of ingenuity and good faith from all parties, we could arrive at a solution where we and the U.S. Government can win as there are many underlying and moving pieces related to this matter. I don't expect a gold medal, but I do expect common sense, lawfulness, civility, and good faith resolutions.

Please advise promptly as to how much time you will actually require and whether you are willing to meet for a short conference, so that we can ensure the matter proceeds efficiently.

John Michael Cohan

Get Outlook for iOS

---

**From:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Sent:** Wednesday, September 10, 2025 5:26:19 PM
**To:** Iustusprocessus@outlook.Com <Iustusprocessus@outlook.Com>
**Subject:** Cohan v. United States Trustee Program

Mr. Cohan,

Good afternoon. I was recently assigned this case and am reaching out to confer on a motion for leave to allow Defendants time until October 22, 2025, to respond to the Complaint. The timing for the named Defendants to respond to the Complaint is unclear but it appears that Defendants' answer may be due September 22, 2025. Defendants are therefore requesting a thirty-day extension of time to respond to the Complaint.

Please let me know your position as to this request at your earliest convenience.

Best,
Anna

Anna D. Walker
Assistant United States Attorney
Civil Division
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
Phone:  (202) 252-2544
anna.walker@usdoj.gov

# Doc. 470 Altered Document on the Docket as 11-12-2025

8:34

CM/ECF    Query    Reports ⌄    Utilities ⌄    Help    Log Out

## Document Selection Menu

Multiple Documents

Select the document(s) you wish to view.

| Part | | Description | Pages | Size |
|---|---|---|---|---|
| ☑ | 1 | Main Document | 4 pages | 206.58 KB |
| ☑ | 2 | Exhibit | 21 pages | 821.56 KB |

View Selected  or  Download Selected          25 Pages          1.03 MB

ecf.flmb.uscourts.gov

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

FILED INTAKE USBC
NOV 4 '25 PM3:05

## NOTICE OF MISSING EXHIBIT FROM DOCKET RECORD

Interested Party, John Michael Cohan, gives notice to the Court and all interested parties that a
material filing in this case is incomplete on the public docket. This notice is submitted to
preserve the integrity of the record and to document the omission.

1. On August 21, 2025, Interested Party filed pending Doc. 406, titled "Motion for Judicial
   Notice of Bankruptcy Court Fraud." Attached to that motion were multiple exhibits,
   including **Exhibit C** (attached as **Exhibit I** herein), a copy of the Jacksonville Sheriff's
   Office Incident Report No. 2025-0471040 (the "JSO Report").

2. The JSO Report documents that the Jacksonville Sheriff's Office determined there was
   probable cause that a violation of a Florida domestic-violence restraining order occurred
   during the 341 meeting (Fla. Stat. § 741.31(4)(a); 18 U.S.C. § 2265). The report was
   obtained through official channels and confirms that law enforcement is aware of the
   violation.

3. On September 22, 2025, Interested Party filed Doc. 428, titled "Notice of Lack of
   Response / Notice of Unopposed Motion," which incorporated the same Motion and all
   exhibits by reference.

4. Upon learning about it, on November 4, 2025, Interested Party immediately went to the
   courthouse and filed it with the Clerk, as this is an urgent matter that needs to be
   addressed and is being ignored. The Interested Party discovered that **Exhibit C** is no
   longer available as part of either Docket No. 406 or Docket No. 428 on the CM/ECF
   system.

5. This pattern of concealment is further evidenced by a separate, critical piece of evidence:
   the original audio recording of the April 17, 2024, §341 meeting has been altered. A
   screenshot reveals that the official recording filed with the bankruptcy court
   (attached hereto as **Exhibit II**) has been spliced and edited to remove portions of the
   proceeding. This alteration directly shields the U.S. Trustee from liability by concealing
   the full context of the interactions and the specific misconduct that occurred, which is the
   subject of the JSO Report and the subsequent lawsuit. The act of altering an official court
   record is a grave violation of procedural integrity and underscores the lengths to which
   the Defendant, the United States Trustee Scott Bomkamp, will go to suppress evidence of
   his wrongdoing.

6. The Interested Party has not received any notice, order, or communication from the Court directing that the exhibit be sealed, stricken, or removed. No explanation appears on the docket.

7. The Interested Party does not know who removed the exhibit — whether it was a Judge, a Clerk acting at a Judge's direction, a Clerk acting at the United States Trustee's direction, or some other party — and the Interested Party has received no explanation.

8. The removal of **Exhibit C (Exhibit I)** comes after the Jacksonville Sheriff's Office has confirmed probable cause that a violation of the restraining order occurred during the 341 meeting on April 17, 2024, and after a lawsuit was filed in June 2025 (25-CV-2009). The United States Trustee, who is currently overseeing this case, was made aware of these prior violations at the prior § 341 meetings after the April 9th, 2025 trial, with Debtor's Counsel present when such notice was provided, and knowingly allowed them to occur in disregard of applicable rules and laws governing such conduct, including the Code of Federal Regulations (11 U.S.C. § 307). The original restraining order was issued in New Jersey (N.J. Stat. § 2C:25-30) and was thereafter registered/enforced in Florida (Fla. Stat. § 741.315), which requires that foreign orders be enforced as if issued by a Florida court. This removal, coming after repeated notices, demonstrates an attempt to conceal the violation and serves as a silent admission that the violation occurred. Not only does this misconduct affect the Interested Party and his rights, but it also impacts a four-year-old child, of whom the Court is well-aware, heightening the seriousness of the matter. To date, in connection with the lawsuit, he has avoided service and is seemingly using the government shutdown as a shield to protect himself from being served. **(Exhibit III)** The Interested Party submits this notice, along with communications with the relevant supervisory authorities and David Hughes' affidavit **(Exhibit IV)** supporting these facts, to make clear that these matters are on record and that the integrity of the filings cannot be ignored or suppressed. This is gross, grotesque, and disgusting professional misconduct (18 U.S.C. § 2265).

9. The exhibit remains a central and material piece of evidence, forming part of the factual basis for the Interested Party's filings and for any subsequent appellate review.

10. The repetition of such an omission cannot reasonably be attributed to clerical error and instead reflects a concerning pattern consistent with the Interested Party's prior allegations of misconduct, bad faith, the potential fraud on the bankruptcy court and the silence of all parties involved in this matter. These issues directly relate to the ongoing actions of the United States Trustee, whose arguments were made without the benefit of any examiner's report or factual findings. The Interested Party notes that even the internal memorandum regarding the United States Trustee's Second Motion to Convert and the flawed Examiner's Report prepared by Adam Walker **(Exhibit V)** contradicts the assertions made by the United States Trustee, as it contains no confirmation of the alleged fraud that the United States

Trustee and the Chapter 7 Trustee represented to the Court. Furthermore, the United States Trustee's second motion to convert this case appears to have been filed in retaliation against the Interested Party prior to the conversion indicating its wrongful nature. This pattern and repeated concealment further supports the narrative of a corrupted process.

11. The Interested Party attaches additional exhibits documenting the United States Trustee's ongoing CFR violations, (5 C.F.R. § 2635.502) communications with supervisory authorities in Washington, D.C., and the live docket for the civil case 25-CV-2009 (**Exhibit VI**). These exhibits demonstrate the ongoing misconduct and corroborate the matters discussed herein. This is referenced in PLAINTIFF'S NOTICE OF NON-OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE (DOC. 22) AND REQUEST FOR JUDICIAL NOTICE filed in the Washington, DC matter, herein attached as **Exhibit VII**. A subsequent notice referring to this notice is being simultaneously submitted into the Washington, DC matter as Document 33 for added collateral protection against further alterations of this bankruptcy docket.

12. The very act of suppressing **Exhibit C** from the docket without explanation is indicative of a consciousness of guilt and a recognition that the United States Trustee's conduct cannot be justified under the law. A party acting in accordance with federal ethics regulations, the Bankruptcy Code, and this Court's rules would have no need to conceal a law enforcement report from the record, certainly not in secret. Their position should be defensible on the merits through argument, not through the manipulation of the docket to hide unfavorable evidence. This suppression is a tacit admission that the facts contained within the exhibit are both true and fatal to their position.

This notice is submitted to document the omission for the record and to ensure that all parties and the reviewing Court are aware of the discrepancy in the case file.

Supporting References:

• Fla. Stat. § 741.31(4)(a) – violation of domestic violence injunctions
• Fla. Stat. § 741.315 – recognition of foreign protective orders in Florida
• 18 U.S.C. § 2265 – federal full faith and credit for protective orders
• N.J. Stat. § 2C:25 30 – New Jersey domestic violence orders enforcement
• 11 U.S.C. § 307 – duties of the U.S. Trustee to oversee bankruptcy system integrity
• 5 C.F.R. § 2635.502 – requires federal employee disqualification when impartiality could be questioned due to a personal relationship
• Middle District of Florida, Local Rule 9013-1 – governing filing of motions, exhibits, and record completeness

**To avoid further discrepancies and ambiguity, this document has a total of seven (7) exhibits and fifty-two (52) pages.**

Dated: 11-04-2025

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

### Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following
documents by the CM/ECF system.

# EXHIBIT VI

**Query**   **Reports** ▾   **Utilities** ▾   **Help**   **Log Out**

E-NTC,JURY,PROSE-NP,TYPE-F

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:25-cv-02009-RDM

COHAN v. UNITED STATES TRUSTEE PROGRAM et al
Assigned to: Judge Randolph D. Moss
Cause: 42:1983 Civil Rights Act

Date Filed: 06/26/2025
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff
**JOHN MICHAEL COHAN**

represented by **JOHN MICHAEL COHAN**
Email: iustusprocessus@outlook.com
PRO SE

V.

### Defendant
**UNITED STATES TRUSTEE PROGRAM**
*TERMINATED: 10/09/2025*

represented by **Anna Davis Walker**
DOJ-USAO
Civil Division
601 D Street, NW
Washington, DC 20530
(202) 252-2544
Email: Anna.Walker@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Defendant
**SCOTT BOMKAMP**
*Unites States Trustee; in his Individual Capacity*

represented by **Anna Davis Walker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Defendant
**JOHN AND JANE DOES 1-100**

| Date Filed | # | Docket Text |
|---|---|---|

| 06/26/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405, receipt number 209862) with Jury Demand filed by JOHN MICHAEL COHAN. (Attachments: # 1 Civil Cover Sheet # 2 Exhibit Address Under Seal) (zdp) (Entered: 07/07/2025) |
| --- | --- | --- |
| 06/26/2025 | | SUMMONS Not Issued as to All Defendants (zdp) (Entered: 07/07/2025) |
| 07/09/2025 | 2 | STANDING ORDER: The parties are hereby ORDERED to comply with the directives set forth in the attached Standing Order. See document for details. Signed by Judge Randolph D. Moss on 7/9/2025. (lcrdm3) (Entered: 07/09/2025) |
| 07/14/2025 | 3 | REQUEST FOR SUMMONS TO ISSUE filed by JOHN MICHAEL COHAN. (zdp) (Entered: 07/16/2025) |
| 07/16/2025 | 4 | SUMMONS (4) Issued as to SCOTT BOMKAMP, UNITED STATES TRUSTEE PROGRAM, U.S. Attorney and U.S. Attorney General (E-Mailed Summons to Plaintiff) (Attachments: # 1 Notice and Consent)(zdp) Modified docket text on 7/16/2025 (zdp). (Entered: 07/16/2025) |
| 07/17/2025 | 5 | NEW Pro Se Consent To Receive Notices of Electronic Filing by JOHN MICHAEL COHAN (zdp) (Entered: 07/22/2025) |
| 07/17/2025 | 6 | AFFIDAVIT OF MAILING re 1 Complaint by JOHN MICHAEL COHAN. (zdp) (Entered: 07/22/2025) |
| 07/25/2025 | 7 | NOTICE OF U.S. Trustee's Fabricated Fraud Allegations by JOHN MICHAEL COHAN (zdp) (Entered: 07/25/2025) |
| 07/28/2025 | 8 | NOTICE OF Filing Corrected Exhibit by JOHN MICHAEL COHAN re 1 Complaint (zdp) (Entered: 07/28/2025) |
| 08/11/2025 | 9 | MOTION for Entry of Default by JOHN MICHAEL COHAN. (zdp) (Entered: 08/12/2025) |
| 08/11/2025 | 10 | MILITARY AFFIDAVIT re 9 MOTION for Entry of Default by JOHN MICHAEL COHAN. (zdp) Modified docket text on 8/12/2025 (zdp). (Entered: 08/12/2025) |
| 08/18/2025 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. SCOTT BOMKAMP served on 7/21/2025; UNITED STATES TRUSTEE PROGRAM served on 7/21/2025 (znmw) (Entered: 08/19/2025) |
| 08/18/2025 | 12 | MOTION for Entry of Default by JOHN MICHAEL COHAN. (znmw) (Entered: 08/19/2025) |
| 08/18/2025 | 13 | ERRATA of Signed Copy by JOHN MICHAEL COHAN re 11 Summons Returned Executed as to Federal Defendant. (znmw) (Entered: 08/19/2025) |
| 08/19/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's first and second motions for entry of default, Dkt. 9 , Dkt. 12 , it is hereby ORDERED that the motions are DENIED. Plaintiff is advised that he may not move for a default judgment until |

| | | |
|---|---|---|
| | | the Defendants are properly served and the required time after service has elapsed. *See* Fed. R. Civ. P. 12(a)(2). Signed by Judge Randolph D. Moss on 8/19/2025. (lcrdm3) (Entered: 08/19/2025) |
| 08/20/2025 | 14 | REQUEST FOR SUMMONS TO ISSUE filed by JOHN MICHAEL COHAN. (znmw) (Entered: 08/20/2025) |
| 08/20/2025 | 15 | SUMMONS (1) Reissued Electronically as to U.S. Attorney General. (znmw) (Entered: 08/20/2025) |
| 08/21/2025 | 16 | MOTION to Take Judicial Notice by JOHN MICHAEL COHAN. (Attachments: # 1 Exhibits)(znmw) (Entered: 08/21/2025) |
| 08/21/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's motion to take judicial notice, Dkt. 16 , it is hereby ORDERED that the motion is DENIED. Plaintiff's motion is improper as there is no pending motion that might require the Court to take judicial notice of any fact. Although Plaintiff cites Fed. R. Civ. P. 55, which deals with default judgments, the Court has already explained in its minute order issued August 19, 2025, that Plaintiff may not move for a default judgment until Defendants are properly served and the required time after service has elapsed. Plaintiff is directed not to file any further substantive motions until he has effected service and the time for Defendants to respond to the complaint has run. *See* Fed. R. Civ. P. 12(a)(2). Signed by Judge Randolph D. Moss on 08/21/2025. (lcrdm3) (Entered: 08/21/2025) |
| 09/17/2025 | 19 | NOTICE of Stipulation of 30-Day Extension by JOHN MICHAEL COHAN (znmw) (Entered: 09/20/2025) |
| 09/19/2025 | 17 | NOTICE *of Westfall Certification* by SCOTT BOMKAMP, UNITED STATES TRUSTEE PROGRAM (Attachments: # 1 Westfall Certification, # 2 Certificate of Service)(Walker, Anna) (Entered: 09/19/2025) |
| 09/19/2025 | 18 | MOTION to Dismiss by SCOTT BOMKAMP, UNITED STATES TRUSTEE PROGRAM. (Attachments: # 1 Declaration of Larry Wahlquist, # 2 Text of Proposed Order, # 3 Certificate of Service)(Walker, Anna) (Entered: 09/19/2025) |
| 09/22/2025 | 20 | FOX/NEAL ORDER: Plaintiff is hereby ORDERED to respond to Defendant's Motion to Dismiss, Dkt. 18 , on or before October 20, 2025. See document for details. Signed by Judge Randolph D. Moss on 9/22/2025. (lcrdm3) (Entered: 09/22/2025) |
| 09/22/2025 | 21 | MOTION for Extension of Time to Effectuate Service by JOHN MICHAEL COHAN. (znmw) (Entered: 09/23/2025) |
| 09/22/2025 | 22 | MOTION for Order to Show Cause, MOTION for Other Appropriate Relief by JOHN MICHAEL COHAN. (znmw) (Entered: 09/23/2025) |
| 09/22/2025 | 23 | MOTION for Extension of Time to File Response/Reply as to 18 MOTION to |

| | | |
|---|---|---|
| | | Dismiss by JOHN MICHAEL COHAN. (znmw) (Entered: 09/23/2025) |
| 09/22/2025 | 24 | MOTION to Defer Ruling re 18 MOTION to Dismiss by JOHN MICHAEL COHAN. (znmw) (Entered: 09/23/2025) |
| 09/25/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's motion for extension of time to file response, Dkt. 23 , it is hereby ORDERED that the motion is GRANTED. Plaintiff shall respond to Defendants' Motion to Dismiss, Dkt. 18 , on or before October 24, 2025. Upon consideration of Plaintiff's motion for extension of time to effectuate service, Dkt. 21 , it is hereby ORDERED that the motion is GRANTED. Plaintiff shall properly effectuate service on Defendants on or before October 24, 2025. Upon consideration of Plaintiff's motion to defer ruling on the Motion to Dismiss, Dkt. 24 , it is hereby ORDERED that the motion is DENIED as premature. Plaintiff is advised that the Court will not consider ruling on the Motion to Dismiss until it has been fully briefed. Signed by Judge Randolph D. Moss on 9/25/2025. (lcrdm3) (Entered: 09/25/2025) |
| 09/26/2025 | 25 | REQUEST FOR SUMMONS TO ISSUE filed by JOHN MICHAEL COHAN. (znmw) (Entered: 09/29/2025) |
| 09/29/2025 | 26 | SUMMONS (1) Reissued Electronically as to SCOTT BOMKAMP (znmw) (Entered: 09/29/2025) |
| 09/30/2025 | 27 | MOTION for Leave to File Amended Complaint by JOHN MICHAEL COHAN. (znmw) (Entered: 10/01/2025) |
| 10/02/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's motion for leave to file amended complaint, Dkt. 27 , it is hereby ORDERED that the motion is DENIED as moot. Plaintiff may file an amended complaint as of right any time on or before October 10, 2025. See Fed. R. Civ. P. 15(a)(1)(B). Plaintiff is advised that, if he does not file an amended complaint by that date, he will have to renew his motion for leave to amend. Signed by Judge Randolph D. Moss on 10/2/2025. (lcrdm3) (Entered: 10/02/2025) |
| 10/06/2025 | 28 | MOTION to Permit Alternative Service by JOHN MICHAEL COHAN. (znmw) (Entered: 10/07/2025) |
| 10/09/2025 | 29 | AMENDED COMPLAINT against SCOTT BOMKAMP, JOHN AND JANE DOES 1-100 with Jury Demand filed by JOHN MICHAEL COHAN.(znmw) (Entered: 10/14/2025) |
| 10/14/2025 | | MINUTE ORDER: In light of the filing of Plaintiff's amended complaint, Dkt. 29 , it is hereby ORDERED that Defendant's Motion to Dismiss, Dkt. 18 , is DENIED as moot. Signed by Judge Randolph D. Moss on 10/14/2025. (lcrdm3) (Entered: 10/14/2025) |
| 10/14/2025 | 30 | NOTICE to the Court by JOHN MICHAEL COHAN re 29 Amended Complaint (znmw) (Entered: 10/15/2025) |

| 10/17/2025 | | MINUTE ORDER: Upon consideration of Plaintiff's motion for order to show cause, Dkt. 22 , it is hereby ORDERED that the motion is DENIED without prejudice. To the extent that the motion seeks relief from the United States Trustee Program, the motion is moot as the Trustee Program was removed as a defendant in this case in Plaintiff's amended complaint, Dkt. 29 . To the extent that the motion seeks relief from Defendant Scott Bomkamp in his individual capacity, the motion is premature as Mr. Bomkamp has not yet been served.<br><br>Upon consideration of Plaintiff's motion to permit alternative service, Dkt. 28 , it is hereby ORDERED that the motion is GRANTED in part. The deadline for Plaintiff to properly effectuate service on Defendants is extended to 14 days after the end of the ongoing lapse of appropriations. Plaintiff, however, remains responsible for effecting service in the manner prescribed in Rule 4. Signed by Judge Randolph D. Moss on 10/17/2025. (lcrdm3) (Entered: 10/17/2025) |
| 10/17/2025 | 31 | NOTICE of Non-Opposition by JOHN MICHAEL COHAN re 22 MOTION for Order to Show Cause, MOTION for Other Appropriate Relief. (znmw) (Entered: 10/20/2025) |
| 10/17/2025 | 32 | MOTION for Extension of Time to Effect Service by JOHN MICHAEL COHAN. (znmw) (Entered: 10/20/2025) |
| 10/21/2025 | | MINUTE ORDER: Upon consideration of plaintiff's motion for extension of time to effect service, Dkt. 32 , it is hereby ORDERED that the motion is GRANTED. The Court has already twice extended the deadline for service in this case, most recently giving Plaintiff until 14 days after the end of the ongoing lapse of appropriations. That deadline is now further extended, at Plaintiff's request, to 60 days following the end of the current lapse of appropriations. Plaintiff is cautioned that no further requests to extend the deadline will be considered absent compelling circumstances. Signed by Judge Randolph D. Moss on 10/21/2025. (lcrdm3) (Entered: 10/21/2025) |

**PACER Service Center**

**Transaction Receipt**

11/04/2025 13:33:37

| PACER Login: | auramayfreedom | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:25-cv-02009-RDM |
| Billable Pages: | 4 | Cost: | 0.40 |

# EXHIBIT VII

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
JOHN MICHAEL COHAN, living,
Plaintiff,
v.
UNITED STATES TRUSTEE PROGRAM,
UNITES STATES TRUSTEE SCOTT BOMKAMP, in his individual capacity,
JOHN AND JANE DOES 1-100,
Defendants.
Case No. 25-cv-2009

## PLAINTIFF'S NOTICE OF NON-OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE (DOC. 22) AND REQUEST FOR JUDICIAL NOTICE

Plaintiff John Michael Cohan respectfully submits this Notice of Non-Opposition regarding his previously filed Motion for an Order to Show Cause (Doc. 22, filed 09-22-2025). For the reasons stated below, Plaintiff also requests the Court take judicial notice of Defendant Bomkamp's strategic non-response.

1. The Motion was filed and served prior to the recent lapse in federal appropriations and the subsequent government shutdown affecting the Department of Justice.

2. As of the date of this Notice, the Motion remains unopposed. Plaintiff has confirmed that the assigned government attorney for the Defendant is furloughed and unable to respond. See Email from AUSA Anna Walker, Oct. 9, 2025 (attached as **Exhibit A**). Furthermore, Plaintiff's attempts to seek administrative guidance from Deputy Chief Heather Graham-Oliver have been unavailing. See Email Correspondence with Deputy Chief Graham-Oliver, Oct. 9, 2025 (attached as **Exhibit B**).

3. This non-response is a strategic choice, not an unavoidable consequence of the furlough. Defendant Bomkamp has been on clear notice of this dispute and the specific allegations since at least September 11, 2025, when Plaintiff first raised the ethical violation of 5 C.F.R. § 2635.502. This timeline is confirmed by a subsequent email chain, the relevant portion of which is attached as **Exhibit C**. In her September 19, 2025 response—three (3) days before the Motion for Order to Show Cause was filed and eleven (11) days before the government shutdown—his then-assigned government attorney, AUSA Anna Walker, confirmed that she had provided Mr. Bomkamp with legal advice regarding making *"informed choices about their options"* that *"must empower the client"* and is *"necessarily confidential."* Plaintiff agrees with the confidentiality aspect, however, her preceding sentences confirm the subject matter as in what this advice was in relation to: *"Your email below asks me to give specific advice to counsel for the U.S. Trustee as to his role in your corporate bankruptcy case. I have no role in that bankruptcy case or over*

*the U.S. Trustee's role in that bankruptcy case."* This communication—wherein a government attorney provided personal legal advice to a government employee about a lawsuit against him in his individual capacity—is the very conduct alleged in the pending Motion. Defendant and his counsel thus had clear notice and a full opportunity to address these serious ethical concerns well in advance of both the Motion's filing and the shutdown. Defendant's current silence, therefore, follows over a month of active engagement and legal preparation, and represents a deliberate choice not to rectify the known conflict.

3.  Crucially, a government furlough suspends an employee's official duties; it does not suspend their personal capacity or their ability to make personal decisions. Defendant Scott Bomkamp is a licensed attorney who is well aware of this lawsuit, as evidenced by his staff's refusal of service and his counsel's pre-shutdown communications. His current silence, while procedurally attributable to the shutdown, is a de facto decision not to respond. He possesses the personal capacity and knowledge to secure representation or seek leave to file a response *pro se* if he so chose. His failure to do so should be viewed as a strategic choice, not an unavoidable incapacity.

4.  The Court retains its inherent authority to manage its docket during a lapse in appropriations. See *In re Buerk*, 665 F.2d 291, 292 (D.C. Cir. 1981) (per curiam). Plaintiff respectfully submits that the serious questions of ethical conduct and potential conflicts of interest under 5 C.F.R. § 2635.502 raised in the pending Motion are of a nature that may warrant the Court's attention in due course, irrespective of the current shutdown.

WHEREFORE, Plaintiff respectfully:

a. NOTIFIES the Court that the Motion for Order to Show Cause (Doc. 22) is unopposed;

b. REQUESTS the Court take judicial notice of Defendant Bomkamp's failure to respond, considering his personal capacity and awareness of this action; and

c. REQUESTS that the Court hold the Motion in readiness for its consideration immediately upon the formal effectuation of service and the restoration of appropriations, or earlier if the Court in its sound discretion deems it necessary to address the weighty issues presented.

**[This section was intentionally left blank.]**

Dated: 10-17-2025

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on 10-17-2025, I served a true and correct copy of this document upon the Defendant(s), by placing the documents in the United States mail and/or email.

# EXHIBIT A

 Outlook

---

**RE: Urgent Matter Requiring Your Attention: In re Genie Investments NV, Inc. & Attorney Scott Bomkamp**

---

**From** Graham-Oliver, Heather (USADC) <Heather.Graham-Oliver@usdoj.gov>
**Date** Thu 10/9/2025 11:16 AM
**To** Debitus Processus <iustusprocessus@outlook.com>

📎 2 attachments (130 KB)
Standing Order 2025.pdf; Signed Bankruptcy GO 25-02(10-1-2025).pdf;

Hello Mr. Cohan:

Hope you are well. Please be advised that the government is shut down and the attorney assigned to your case in District Court has been furloughed. Please see the attached standing order of the District Court that applies to the current state of affairs and lack of appropriation.  FYI only, I am also including the standing order for the Bankruptcy Court.

Best regards,

Heather Graham-Oliver
Deputy Chief
United States Attorneys' Office-Civil Division
601 D Street NW
Washington, D.C. 20530

**From:** Debitus Processus <iustusprocessus@outlook.com>
**Sent:** Thursday, October 9, 2025 10:17 AM
**To:** Graham-Oliver, Heather (USADC) <Heather.Graham-Oliver@usdoj.gov>
**Subject:** [EXTERNAL] Urgent Matter Requiring Your Attention: In re Genie Investments NV, Inc. & Attorney Scott Bomkamp

Dear Deputy Chief Oliver,

I am writing to bring a critical procedural and ethical issue to your attention, following an automated response from the attorney for Scott Bomkamp indicating he is furloughed due to the lapse in appropriations.

I am the principal in the corporate Chapter 11 bankruptcy (Genie Investments NV, Inc., 24-bk-496) There is also a related, pending Bivens action (Cohan v. Bomkamp, 25-cv-2009) against Mr. Bomkamp in his personal capacity.

The furlough notice creates an untenable situation for the bankruptcy case. The docket still lists Mr. Bomkamp as the active Trial Attorney, but he is now officially unable to work or respond. A motion for an order to show cause of why Bomkamp should not recuse himself was pending and ignored prior to any federal shutdown prolonging this injustice. This leaves the case in a state of legal limbo, which is unfair to the court and the estate.

Furthermore, his continued presence on the case—while he is personally sued by myself personally—creates a clear conflict under 5 C.F.R. § 2635.502.

# EXHIBIT B

 Outlook

**Inquiry Regarding Your Continued Role in Bankruptcy Case [24-bk-496] Amidst Pending Personal Litigation**

**From** Debitus Processus <iustusprocessus@outlook.com>
**Date** Thu 10/9/2025 9:04 AM
**To** scott.e.bomkamp@usdoj.gov <scott.e.bomkamp@usdoj.gov>
**Cc** Walker, Anna (USADC) <anna.walker@usdoj.gov>
**Bcc** David Choate <davidchoatehughes@gmail.com>

Dear Mr. Bomkamp,

I am writing to you as the Trial Attorney for the U.S. Trustee Program overseeing the Chapter 11 bankruptcy case of Genie Investments NV, Inc. (Case No.: [24-bk-496]).

This communication is necessary because, despite the pending personal lawsuit against you in your individual capacity in Cohan v. Bomkamp (Case No.: [25-cv-2009]), you have not recused yourself from the bankruptcy matter. A Motion for Order to Show Cause regarding your recusal remains pending in the DC action.

Given your ongoing official involvement, I require clarification on several administrative and procedural matters central to the bankruptcy case:

a. Official Record of §341 Meeting: Pursuant to the allegations in the pending Bivens complaint, I must formally request that the U.S. Trustee Program take all necessary steps to preserve and certify the complete, unaltered original audio recording of the §341 meeting held on April 17, 2024, along with all associated metadata, as this is now a key piece of evidence in active federal litigation.
b. Communication Protocol: Please confirm that, given your active role in the bankruptcy and your status as a defendant in my personal lawsuit, direct communication with you on bankruptcy matters remains the appropriate channel. If your role has changed or should be changed, please so state.

Your prompt response to these reasonable, case-related inquiries is requested. As your continued oversight of this bankruptcy while being sued personally by its principal creates a clear conflict under 5 C.F.R. § 2635.502, your actions—or lack thereof—in responding to these official inquiries will be highly relevant to the court's assessment of your impartiality and your motives in both proceedings.

Thank you for your attention to this matter.

John Michael Cohan

To resolve this efficiently and protect the integrity of the proceeding, I believe the simplest administrative solution is to formally recuse Mr. Bomkamp and appoint a new attorney to the case.

This would immediately resolve the conflict-of-interest issue and ensure the bankruptcy can proceed without being hampered by the furlough. I would need to speak with my business partner prior to any approval, but we would be happy to accept any new, conflict-free attorney that is appointed to oversee the matter.

Thank you for your leadership in handling this. I am available to provide any further information you may need. Please confirm receipt at your earliest convenience.

Respectfully,

John Michael Cohan

---

**From:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Sent:** Thursday, October 9, 2025 9:04 AM
**To:** Debitus Processus <iustusprocessus@outlook.com>
**Subject:** Automatic reply: Inquiry Regarding Your Continued Role in Bankruptcy Case [24-bk-496] Amidst Pending Personal Litigation


*As of October 1, 2025, the Department of Justice, including the U.S. Attorney's Office for D.C., is experiencing a lapse in appropriations. Due to that lapse, I am currently furloughed and unable to respond to your email until appropriations are restored. If you need immediate assistance, please contact Deputy Chief Heather Graham-Oliver at* Heather.Graham-Oliver@usdoj.gov.

# EXHIBIT C

WA    Walker, Anna (USADC)<Anna.Walker@usdoj.gov>

To: You    Fri 9/19/2025 4:34 PM

🏳 Flagged

Mr. Cohan,

Thank you for your email. Your email below asks me to give specific advice to counsel for the U.S. Trustee as to his role in your corporate bankruptcy case. I have no role in that bankruptcy case or over the U.S. Trustee's role in that bankruptcy case. However, any advice given to a client not only must empower the client to make informed choices about their options but is necessarily confidential.

Best,
Anna

. . . .

| Thank you for your response. | Thank you very much for your response. | I understand. Thank you. |

↩ Reply    ↪ Forward

 Outlook

**Re: Cohan v. United States Trustee Program**

From Debitus Processus <iustusprocessus@outlook.com>
Date Thu 9/11/2025 5:42 PM
To    Walker, Anna (USADC) <Anna.Walker@usdoj.gov>

Ms. Walker,

Thank you for your response.

I must note that your email did not address the serious ethical conflict and demand for recusal I raised concerning the main defendant. As you are aware, under 5 C.F.R. § 2635.502, a federal employee is required to disqualify himself from any particular matter where his impartiality could be questioned due to a personal relationship or affiliation. This is unequivocally triggered where, as here, I have active, parallel litigation pending against him personally.

His ethical and legal obligation to recuse is unilateral and self-executing. His continued participation in this matter, while he is a defendant in a separate case I brought against him, is a clear violation of federal ethics regulations and my Fifth Amendment right to due process. This isn't negotiable and I reiterate my demand for his immediate recusal for the record.

While my ability to bring this before the Florida Court is temporarily limited, please be advised that this demand is ongoing. I will be compelled to address this violation through all available channels, including a formal motion to the Court at the earliest opportunity and a complaint to the Department of Justice Office of Professional Responsibility, should he not comply with his mandatory ethical duties.

What I gather from your response is that your clients not willing to negotiate over the extension, but your clients are willing to negotiate in general, so in the spirit of good faith, I am not opposed to the extension to October 22, 2025.

Let's set up a time next week to confer. Please propose some days and times later in the week. Thank you.

John

---

From: Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
Sent: Thursday, September 11, 2025 4:58 PM
To: Debitus Processus <iustusprocessus@outlook.com>
Subject: Re: Cohan v. United States Trustee Program

Mr. Cohan,

I'm not sure what position you are asking me for. We are also not interested in negotiating over this straight forward extension request. Please let me know whether you are opposed to the named Defendants' request for an extension of time in this case to respond to the Complaint by Oct. 22. If you are opposed, we will note that for the record.

Best,
Anna

---

From: Debitus Processus <iustusprocessus@outlook.com>
Sent: Thursday, September 11, 2025 12:58:31 PM

**To:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Subject:** [EXTERNAL] Re: Cohan v. United States Trustee Program

Ms. Walker,

Thanks for your response. I am attempting to work with the opposition in good faith. Prior to me confirming my position, in regards to the bankruptcy matter and Mr. Bomkamp's recusal, what is your clients' position?

John

**From:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Sent:** Thursday, September 11, 2025 12:54 PM
**To:** Debitus Processus <iustusprocessus@outlook.com>
**Subject:** RE: Cohan v. United States Trustee Program

Hi Mr. Cohan,

No, we will not agree to opening discovery in this case in exchange for your consent to our motion to seek a thirty-day extension of time to respond to the Complaint in this case. We will simply file a motion with the Court, instead, seeking a thirty-day extension of time and note that you are opposed to the motion. Please clarify that this is the position I should include for you in the motion to extend.

Thank you for your understanding and clarification.

Best,
Anna

Anna D. Walker
Assistant United States Attorney
Civil Division
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
Phone: (202) 252-2544
anna.walker@usdoj.gov

**From:** Debitus Processus <iustusprocessus@outlook.com>
**Sent:** Thursday, September 11, 2025 12:46 PM
**To:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Subject:** [EXTERNAL] Re: Cohan v. United States Trustee Program

Dear Ms. Walker,

Thanks for your reply, I appreciate your assistance. I am willing to stipulate a 30-day extension provided that we also agree to open the discovery process at this time. Specifically, I would like to begin serving interrogatories, requests for production, and requests for admission so that the matter can move forward efficiently and on a fair timeline.

I also want to note for the record that Mr. Bomkamp is still overseeing a corporate bankruptcy case of mine. This situation is absolutely untenable and needs to be rectified immediately, as his continued involvement increases liability for him personally and further complicates these proceedings. This would be a great beginning to moving towards a mutual resolution.

Please let me know if you think your client would be agreeable to this approach. If so, I will prepare a stipulation reflecting both the extension, the commencement of discovery and

"*without admitting fault,*" a notification of Mr. Bomkamp's intended immediate voluntary recusal from the underlying bankruptcy matter [as it is only proper].

I am available for a call this afternoon between 2 and 4 Eastern today or same time tomorrow if you would like some time to speak with your clients.


Respectfully,


John Michael Cohan

---

**From:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Sent:** Thursday, September 11, 2025 10:39 AM
**To:** Debitus Processus <iustusprocessus@outlook.com>
**Subject:** RE: Cohan v. United States Trustee Program

Hello Mr. Cohan,

I'm happy to have an introductory meet and confer with you. I do not have any settlement authority, but if you wish to convey a demand, I will convey it to my clients. We believe a short extension to October 22, 2025, is reasonable. I'm happy to discuss this later today or tomorrow, please let me know what time works best for you for a quick call.

Best,
Anna

Anna D. Walker
Assistant United States Attorney
Civil Division
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
Phone:  (202) 252-2544
anna.walker@usdoj.gov

**From:** Debitus Processus <iustusprocessus@outlook.com>
**Sent:** Wednesday, September 10, 2025 6:00 PM
**To:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Subject:** [EXTERNAL] Re: Cohan v. United States Trustee Program

Ms. Walker,

I acknowledge receipt of your request for a 30-day extension to respond to the Complaint. According to my calendar, the date the response is due is the 23rd. While I am prepared to proceed on the existing schedule, I may consider a short extension only if it does not delay the proceedings or prejudice my ability to move forward. As you are aware, the actions of the Defendant have already caused significant disruption and harm to me personally, and any further delay exacerbates that impact.

I am also happy to jump on a conference call with you to discuss a potential settlement at your earliest convenience. If not a settlement discussion, at least a short meet and greet to get acquainted. I think with a little bit of ingenuity and good faith from all parties, we could arrive at a solution where we and the U.S. Government can win as there are many underlying and moving pieces related to this matter. I don't expect a gold medal, but I do expect common sense, lawfulness, civility, and good faith resolutions.

Please advise promptly as to how much time you will actually require and whether you are willing to meet for a short conference, so that we can ensure the matter proceeds efficiently.

John Michael Cohan

Get Outlook for iOS

---

**From:** Walker, Anna (USADC) <Anna.Walker@usdoj.gov>
**Sent:** Wednesday, September 10, 2025 5:26:19 PM
**To:** Iustusprocessus@outlook.Com <Iustusprocessus@outlook.Com>
**Subject:** Cohan v. United States Trustee Program

Mr. Cohan,

Good afternoon. I was recently assigned this case and am reaching out to confer on a motion for leave to allow Defendants time until October 22, 2025, to respond to the Complaint. The timing for the named Defendants to respond to the Complaint is unclear but it appears that Defendants' answer may be due September 22, 2025. Defendants are therefore requesting a thirty-day extension of time to respond to the Complaint.

Please let me know your position as to this request at your earliest convenience.

Best,
Anna

Anna D. Walker
Assistant United States Attorney
Civil Division
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
Phone:  (202) 252-2544
anna.walker@usdoj.gov

# EXHIBIT BB



**8:44**

US Bankruptcy Court
Middle District of Florida

message   call   video   mail

November 5, 2025

10:35 AM  **Missed Call**

 Contact Photo & Poster

phone

(904) 301-6490

Notes

    

Favorites   Recents   Contacts   Keypad   Voicemail

167

11:00    ..ll 5G<sub>C</sub> 🔋 )

 Voicemail

**US Bankruptcy Court Middle District of Florida**

phone

November 5, 2025 at 10:36 AM

0:01                                   −0:24

            

Transcription

"Hi, this is Seth calling from United States bankruptcy court. This message is for John Michael or for David. It is imperative that I speak with John Michael today. If you could give me a call back at 904-301-6491 that number again, 904-301-6491 thank you...."

Was this transcription useful or not useful?

 Favorites    Recents    Contacts    Keypad    Voicemail

# EXHIBIT CC

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7



### NOTICE TO CORRECT OVERSIGHT ERROR IN PRIOR FILING PROVES ILLOGICAL SEQUENCE OF EXHIBITS

Interested Party, John Michael Cohan, hereby files this Notice to correct the record regarding the filing previously submitted as Docket No. 470, titled "Notice of Missing Exhibit from Docket Record."

1. Upon review, the Interested Party acknowledges a clerical error in his prior filing, Docket No. 428, "Notice of Lack of Response / Notice of Unopposed Motion." The Interested Party incorrectly stated that Docket No. 428 incorporated the missing Exhibit C. In fact, Docket No. 428 was filed without its own exhibits, relying solely on the incorporation by reference to Docket No. 406. This was an oversight by the filer.

2. However, this acknowledgment in no way rectifies or diminishes the primary violation which prompted the filing of Doc. 470. The central and undisputed fact remains that Exhibit C (Doc. 406-3), the Jacksonville Sheriff's Office (JSO) Incident Report No. 2025-0471040, was removed from the docket of its original filing, Docket No. 406, without any court order, notice, or explanation.

3. The Interested Party discovered this removal of Doc. 406-3 on November 4, 2025, and promptly filed Doc. 470. The gravity of a material exhibit being secretly purged from a court docket remains undiminished. Such an act, regardless of the reason, severely compromises the integrity of the record and the adversarial process. The effectiveness of Docket No. 428, which incorporated Docket No. 406 by reference, was fundamentally undermined by this prior removal. This Notice is submitted to ensure absolute accuracy of the record. Indeed, this oversight inadvertently underscores the gravity of the underlying violation: the Interested Party, relying in good faith on the integrity of the docket, unknowingly referenced and preserved a version of the record from which a critical exhibit had been secretly altered. This is proven by the docket's own logical sequence, where Docket No. 406 now shows a gap in its exhibit numbering (as 406-1, 406-2, 406-4, 406-5 and 406-6 are present and 406-3 is missing as if it did not exist) and Docket No. 428, which relied upon it, contains pages 1 through 27 in their logical sequential order, conspicuously missing the exhibit that was purged from the foundational filing. The substantive allegation that Exhibit C (Doc. 406-3) was improperly removed from the docket, forming the basis of the November 4, 2025 filing, stands unchanged and uncontroverted. The JSO report has been attached once more for completeness of the record along with PACER's Doc. 406 Exhibit List with today's date written for clarity of the record of today (11-5-25) demonstrating the clear omission of Exhibit C (406-3), the JSO report.

Dated: 11-05-2025

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103

iustusprocessus@outlook.com

### Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system.

To avoid further discrepancies and ambiguity,
this document has a total of nine (9) pages.

8:04

CM    ECF    Query    Reports ⌄    Utilities ⌄    Help    Log Out

**Document Selection Menu**

Multiple Documents

Select the document(s) you wish to view.

| Part | Description | Pages | Size |
|------|-------------|-------|------|
| 1 | Main Document | 5 pages | 199.05 KB |
| 2 | A | 13 pages | 490.26 KB |
| 3 | B | 2 pages | 40.59 KB |
| 4 | D | 2 pages | 77.51 KB |
| 5 | E | 4 pages | 132.40 KB |
| | | 26 Pages | 939.81 KB |

11-5-25

ecf.flmb.uscourts.gov

# EXHIBIT C

### *Your Case Information*

| | |
|---|---|
| **Law Enforcement Agency:** | Jacksonville Sheriff's Office (JSO) |
| **Emergency:** | 9-1-1 *(TTY Services Available)* |
| **JSO's Non-Emergency:** | (904) 630-0500 |
| **JSO's Victim Advocates:** | (904) 630-1764 |
| **JSO's General Information:** | (904) 630-7600 |

**Case Number:** _2⁵_ - _471040_ 🖊 _471178_

**Date of Report:** _08/16_ , 20_25_

**Incident Type:** _Written Threats to Kill_
_Violation of Injunction_

**Officer's Name / I.D. Number:** _P.T. Burke #81350_

## VINE Pin Number: _____

Victim Information & Notification Everyday (VINE) - www.vinelink.com
*VINE provides custody status and criminal case information.*
*Registration is required for this service*
Toll-Free VINE Line:                    1-877-VINE-4-FL / 1-877-846-3435
                                                  TTY: 1-866-847-1298

*[handwritten]* Sgt Yarbour 1 pm "we will apply for a warrant to be issued."

### *Local Resources*

*[handwritten marginal notes along left edge, illegible]*

**Certified Rape Crisis Center: The Women's Center of Jacksonville**
**(Rape Recovery Team)**
thewcj.org  |  5644 Colcord Avenue,  Jacksonville, FL 32211
Phone: (904) 722-3000  | 24-Hour Rape Crisis Hotline:  (904) 721-7273

**Domestic Violence Center: Hubbard House**
hubbardhouse.org  |  24-Hour hotline:  (904) 354-3114 or
1-800-500-1119  |  TTY: (904) 354-3958

**First Coast Crime Stoppers:** 1-866-845-TIPS (8477)
                              *More resources available on pages 16-18.*

3



**Jacksonville Sheriff's Office
Incident (Offense)**

**Sheriff T.K. Waters**

**2025-0471040**

## Route To
*Groups:*
*People:*

## Incident Information

**Incident Location**
**1425 CHAFFEE RD S**
**JACKSONVILLE, FL 32221**
*Sub-sector:* **T2**  *TAZ:* **544**
*Location Type:* **ONLINE**
*Primary Weapon Used:* **THREAT / INTIMIDATION**
*School Name:*
*Incident Occurred:* **Outside Location**

*Day/Date/Time Reported:* **Saturday, 08/16/2025 09:19**
*Day/Date/Time Incident From:* **Friday, 08/15/2025 17:28**  *To:*  **Friday, 08/15/2025 17:28**
*Is this a Corrections Information Report?:* **NO**

*School Number:*
*Incident Occurred In the Parking Lot at this Location?:* **NO**

**Miscellaneous**
*Drug Activity:*  **NOT APPLICABLE**    *Drug Type:*  **NOT APPLICABLE**

*MCI Case:*  **YES**    *Follow-up By:* **Patrol**
*Was Hate Crime Involved?:* **NO**    *Dating Violence Involved?:* **NO**    *Is Offense(s) Related to Domestic Violence?:* **NO**
*If not Domestic Violence, Is It Domestic Related?:* **NO**    *Any Children under 18 Involved as a Victim?:* **NO**

*# of Offenses:* **1**
*# of Victims:* **1**
*# of Suspects:* **1**

**NIBIN Leads**

**Associated CCR Numbers**

## Offense(s)

**#1**  *Statute #:*  **741.31(4)(A)**    *Degree:*  **M1**  *UCR Code:*  **9000**  *Attempt Code:*  **Committed**
**VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE**
*Criminal Activity Type:*

## Victim #1 - COHAN, JOHN MICHAEL
*Did victim invoke right to prevent the disclosure of personal info (Marsy's Law)?:* **NO**

**Demographics**
*Race:* **WHITE**    *Sex:* **MALE**    *Date of Birth:* **07/05/1989**
*Ethnicity:* **NOT OF HISPANIC ORIGIN**
*Primary Language:* **English**  *Secondary Language:* **NOT APPLICABLE**
*Age:* **36**    *Height (inches):* **5'10"**    *Weight (lbs):* **170**
*Hair Style:* **NAPPY / UNKEMPT**    *Hair Color:* **BROWN**    *Hair Length:* **LONG**
*Build:* **THIN**    *Eye Color:* **BLUE**    *Facial Hair:* **BEARD**
*Complexion:* **PALE**  *Voice:* **NORMAL**
*Clothing/Description:*

**Contact Information**
*Home Phone #:*    *Bus. Phone #:*    *Ext.:*    *Alt. Phone #:*
*Cell Phone #:*  **(516) 547-2810**    *Cell Phone Provider:*
*Email Address:*

**Primary Identification**
*Type of ID Given:*  **DRIVERS LICENSE**    *ID:*  **C500**~~████~~    *Issuing State:*  **FLORIDA**

**Home Address**    **Mailing Address**    **Alternate Address**
~~████████████~~
**JACKSONVILLE, FL** ~~████~~
*Sub-sector:* **T4**  *TAZ:* **456**

**Employment/School**
*Employer:*    **UK**    *Occupation:*  **UK**
*School Last Attended:*

**Alternate Contact Information**
*Home Phone #:*    *Bus. Phone #:*    *Ext.:*
*Cell Phone #:*    *Cell Phone Provider:*
*Email Address:*

**Other Information**
*Residence Type:*  **CITY**    *Residence Status:*  **RESIDENT**

## Incident (Offense)   2025-0471040 (Continued)

Drugs Involved?: **NO**          Alcohol Involved?: **NO**          Computer Involved?: **NO**   Mode of Travel: **FOOT**
Victim Type: **ADULT**   Injury Extent: **NONE**   Injury Type: **NOT APPLICABLE**
Hospital Victim Taken To:  **NOT APPLICABLE**   Sexual Battery Type:

**Life Saving Measures**
Used?: **NO**      Type:                              Narcan Administered By:                          Narcan Outcome:

**Weapon(s) Involved**
   Weapon(s):  **THREAT / INTIMIDATION**
**Victim Relationship to Offender(s):**
   Relationship:  **CHILD IN COMMON**   To:  **Suspect (01) - FREEDOM, PEACE M**
**Related Offenses**
   <unset>

---

## Suspect #1 - FREEDOM, PEACE M

**Demographics**
   Race: **BLACK**               Sex: **FEMALE**          Date of Birth: **01/15/1993**
   Ethnicity: **UNKNOWN**
   Primary Language: **English**   Secondary Language: **NOT APPLICABLE**
   Age: **32**                   Height (inches): **5'05" to 5'06"**        Weight (lbs): **130 to 140**
   Hair Style:                   Hair Color: **BLACK**              Hair Length:
   Build:                        Eye Color: **BROWN**              Facial Hair:
   Complexion: **DARK**   Voice: **UNKNOWN**
   Clothing/Description:  **UK**
   Place of Birth:  **UNKNOWN, UNKNOWN**
   Nicknames:
   Aliases:  **PEACE EKUTA**

**Distinguishing Marks (Scars, Marks, and Tattoos)**


**Contact Information**
   Home Phone #:                 Bus. Phone #:                    Ext.:                     Alt. Phone #:
   Cell Phone #:    **UK**        Cell Phone Provider:
   Email Address:
**Primary Identification**
   Type of ID Given:  **DRIVERS LICENSE**          ID:  **204█████**              Issuing State:  **DELAWARE**
**Home Address**                 **Mailing Address**                       **Alternate Address**


**Employment/School**
   Employer:     **UK**                          Occupation:  **UK**
   School Last Attended:
**CEW (Conducted Electric Weapon)**
   ECD Usage:
   RTR Written Related to This Incident?: **NO**      RTR Incident Year:              RTR Incident #:
**Other Information**
   Drugs Involved?: **UNKNOWN**   Alcohol Involved?: **UNKNOWN**   Computer Involved?: **UNKNOWN**
   Mode of Travel: **UNKNOWN**   Juvenile?: **UNKNOWN**   Confessed?: **NO**
   Arrested?: **At Large**   Were Miranda Rights Given?: **NO**   Jail # Type: **NA**   Jail Booking #:
**Related Offenses**
   <unset>
**Life Saving Measures**
   Used?: **NO**      Type:              Narcan Administered By:              Narcan Outcome:

---

## Property #1 - Documents/ Personal or Business

   Quantity: **1**        Status: **NONE**
   Turned in at:  **NOT APPLICABLE**
   Manufacturer:                                   Model:
   Serial Number:                                  Color:
   Description:  **Copies of screenshots, injunction, and miscellaneous documents**
   Related Charge: **#01: 741.31(4)(A) - VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE**
   Value Stolen or Damaged:          Value Recovered:          Victim/Complaint Signed Signature Card:  **N/A**
   Was Property Recovered From Vehicle?: **NO**   Vehicle Property Recovered From:
**Property Owner:**

### JACKSONVILLE SHERIFF'S OFFICE
   Bus. Contact Name:  **P.T. BURKE ( #81350 )**   Bus. Contact Phone #:  **(904) 630-0500**   Ext.:

---

## Incident (Offense)   2025-0471040 (Continued)

**Received From:**
Victim (01) - COHAN, JOHN MICHAEL

### Additional Information

On 08/16/2025 at 0954, I responded to the Chaffee Public Library (1425 Chaffee Rd S) in reference to written threats to kill (CCR #25-471040) and a violation of injunction (this CCR). Upon arrival, I made contact with the victim, Mr. Cohan.

Note: Cohan and the suspect (Peace Freedom) were in an intimate relationship for 10 years and share a child (⬛⬛⬛⬛⬛⬛) together. Cohan has a foreign (New Jersey) injunction (#FV-04-002494-22), which has been entered into Florida (#16-2025-AO-156901-FXXX-MA).

Cohan advised that on 04/09/2024 and 04/17/2024, Freedom telephonically (voice only) called in to his company's Federal Bankruptcy 341 hearing, knowing the injunction has been active since 03/03/2022. Cohan stated Freedom was not invited to the hearing, nor was she a part of the company. However, the hearing details were publicly available and the Federal Trustee (Mr. Bonkamp) allowed Freedom to remain in the hearing and to speak during the hearing and ask questions. According to Cohan, Bonkamp was notified of the active injunction and still allowed Freedom to remain. Cohan stated Freedom never identified herself by her real name and he did not see her, but due to their long shared history he recognized her voice immediately.

When speaking to Sgt. P. Yarber #5134, Cohan advised during the bankruptcy hearings Freedom spoke directly to him.

Cohan also provided a typed "Affidavit to Witness Statement" from a Mr. Hughes, who corroborates his account of the violation of injunction during the bankruptcy hearings.

Cohan further advised that between 05/2025-06/29/2025, Freedom "poked" him on Pi KSY cryptocurrency app, which sends him notifications to "keep mining" for cryptocurrency. The app allows users in the same crypto mining circle to send fellow miners reminders to continue mining, but no actual talking/ typing occurs. Cohan advised he was unable to remove Freedom from his group and he did not leave the group because he would lose all of his money/ crypto if he did.

It should be noted, Freedom's current location and contact information is unknown. Freedom's last police contact was in 2024 in Virginia, and her most recent driver's license is out of Delaware.

Because Cohan can reasonably identify Freedom's voice due to their history, Probable Cause exists to seek an arrest warrant for Freedom for violating the injunction.

The copies of the provided documents (property 1) were placed in the property room.

Case not cleared. Pending SAO disposition.

### Additional Question(s)

**Body Worn Camera Footage**

| | | |
|---|---|---|
| 01 | Is there Body Worn Camera (BWC) footage for incident?: | YES |

**Risk Protection Order**

| | | |
|---|---|---|
| 01 | Subject poses a significant danger of causing personal injury to himself/herself or others: | NO |
| 02 | Subject owns, has care, custody or control of, or has the ability to purchase, possess, or receive firearm(s) and/or ammunition: | |
| 03 | Subject was involved in a recent act or threat of violence against himself/herself or others, whether or not such violence involved a firearm: | |
| 04 | Subject has made a threat of violence in the past 12 months against himself/herself or others: | |
| 05 | Subject is seriously mentally ill or has recurring mental health issues: | |
| 06 | Subject was a respondent of, or violated, a previous/existing injunction related to domestic, dating, sexual, or repeat violence and/or stalking: | |
| 07 | The subject has previously been issued an RPO: | |
| 08 | Subject has previously violated the provisions of an RPO: | |
| 09 | Subject has been convicted of, had adjudication withheld on, or pled nolo contendere to, a crime constituting domestic violence in any state: | |
| 10 | Subject has used, or threatened to use, against himself/herself or others, any weapons or physical force: | |
| 11 | Subject has unlawfully or recklessly used, displayed, or brandished a firearm: | |
| 12 | Subject has stalked another person: | |
| 13 | Subject has been arrested for, convicted of, had adjudication withheld, or pled nolo contendere to a crime or threat of violence in any other state: | |
| 14 | Is evidence to demonstrate the abuse of controlled substances or alcohol by the subject: | |
| 15 | Is evidence to demonstrate the subject has recently acquired firearm(s) or ammunition: | |
| 16 | Is there any other relevant information provided by a family/household member concerning the subject. (If yes, place information into the narrative): | |

**Investigative Resource Use**

## Incident (Offense)   2025-0471040 (Continued)

| 1 | Use of LPR assisted in investigation?: | NO |
|---|---|---|
| 2 | Use of NIBN assisted in investigation?: | NO |
| 3 | Use of RTCC assisted in investigation?: | NO |

### Misc Information

*Clearance Status:* **CASE NOT CLEARED**   *Clearance Code:* **NOT APPLICABLE**   *Date Case Was Cleared:*

*Case Not Cleared Type:* **PENDING STATE ATTORNEY'S OFFICE DISP?**   *Number of Cases Cleared:*

*Is there additional information included on a continuation report?:* **NO**   *Are there other Pertinent Reports?:* **NO**

*Did this incident qualify as a "Cargo Theft"?:*

*Is this a "TeleServ" report?:* **NO**   *Was victim provided options to obtain rights card?:*

*Option provided to victim?:*

*In your opinion is there significant reason to believe that the crime can be solved by a patrol follow-up investigation?:*

*Neighborhood Canvass Conducted?:*

**Case Card Information Left with:  Person**
   Victim (01) - COHAN, JOHN MICHAEL

**Handouts**
   *#1:*   **Case Information Card**

**Bias Motivation(s)**

### Investigation Time #1

*Hour(s):* **03**       *Minute(s):* **00**       *Cost Amount:* **$144.72**

### Signature

**Signature(s)**

| | | |
|---|---|---|
| *Reporting Officer #1:* **P.T. BURKE ( #81350 )** | *Division:* **PATROL** | *Section/Unit:* **ZONE 5** |
| *Reporting Officer #2:* **N/A** | *Division:* | *Section/Unit:* |
| *Report submitted on:* **08/16/2025 11:59** | | |
| *Report Reviewer:* **P.G. YARBER II ( #5134 )** | *Status:* **Approved** | |
| *Report approved on:* **08/16/2025 17:11** | | |



179

JACKSONVILLE RPDC 320

5 NOV 2025  PM 1  L

John Michael Cohen
General Delivery #6693
5955 Ulmerton Blvd
Jacksonville, Florida 32236

US Bankruptcy Court
300 N Hogan Street 3-150
Jacksonville Florida 32202

22202-426775

# EXHIBIT DD

🖼️ Outlook

**RE: Request for Cooperation: Clarification Regarding Filed Documents [Case No.: 3:24-bk-00496-BAJ & 3:25-ap-00011-BAJ]**

**From** raye.elliott@akerman.com <raye.elliott@akerman.com>
**Date** Mon 11/10/2025 12:03 PM
**To** iustusprocessus@outlook.com <iustusprocessus@outlook.com>

📎 4 attachments (7 MB)
[406] Motion for Judicial Notice of Bankruptcy Court Fraud, Judicial Notice of _FINRA_ Report and Notice of Defaults Filed.pdf; [428] Notice of Lack of Response_Notice of Unopposed Motion.pdf; [470] Notice of Missing Exhibit From Docket Record.pdf; Responses to Interrogatories and Request for Production in Aid of Execution by Insider Companies.pdf;

Mr. Cohan,

Attached are documents 406, 428, and 470 as I received them through the CM/ECF filing system. Document 139 was too large to attach to an email so it is available for download at the link below. Also attached are the discovery responses as I received them from you and Mr. Hughes.

Click the following link to download your file(s).

## Click to Retrieve File(s)

[139] Response to Judgment Debtors to Chapter 7 Trustee's Notice with Respect to Order to Show Cause.pdf

If the above link is not clickable, copy and paste the following URL into your browser.

https://www.sendthisfile.com/nf6pvNTqL2psrmNZeHqnBMpi

Note: These files will expire in 14 days from the time this email was generated.

**Raye Elliott**
Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5013 | T: 813 223 7333 | F: 813 223 2837
raye.elliott@akerman.com

vCard | Profile

# akerman

700+ Lawyers
25 Offices
akerman.com

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete

it. Thank you.

**From:** Debitus Processus <iustusprocessus@outlook.com>
**Sent:** Monday, November 10, 2025 10:54 AM
**To:** Elliott, Raye (Ptnr-Tpa) <raye.elliott@akerman.com>
**Subject:** Request for Cooperation: Clarification Regarding Filed Documents [Case No.: 3:24-bk-00496-BAJ & 3:25-ap-00011-BAJ]

[External to Akerman]

I'm Ms. Elliott,

I am writing to request your assistance in clarifying serious and *recurring* discrepancies in the official court records that impact the integrity of these proceedings.

It has come to my attention that certain documents filed with the court appear in the public docket in an altered state, missing key exhibits that were part of the original filings. These missing exhibits are material to the multiple pending matters.

Specifically, I am referring to:
· Bankruptcy Case (3:24-bk-00496-BAJ): Document 406 and Document 428.
· Adversary Proceeding (3:25-ap-00011-BAJ): Document 139 and a copy of the interrogatory responses we sent to you directly.
· Bankruptcy Case (3:24-bk-00496-BAJ): Document 470, which was recently filed to formally notice the Court of these omissions.

To ensure the accuracy of the record for all parties and the court, I am requesting that you provide me with the complete, original versions of these documents (406, 428, 470, 139, & our responses to the interrogatories we sent directly to you by email) as you received them through the PACER system through the service of process agreement we have in place.

Your cooperation will help ensure the Court has a complete record as these matters proceed.

Thank you for your prompt attention to this important matter.

John

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

### MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS

Appellant, John Michael Cohan, *pro se*, respectfully moves this Court for leave to appeal *in forma pauperis* from the Order Granting Motion to Approve Compromise or Settlement (Document 471), entered in the underlying bankruptcy proceeding on November 5, 2025. In support of this Motion, Appellant states as follows:

1. I am the Appellant in this action and seek to appeal to this Court.

2. I am unable to pay the $298 filing fee for this appeal, or to give security for it. My financial situation is as follows:
   a. Income: I am currently unemployed. My sole source of income is government assistance in the form of SNAP benefits, which is currently suspended due to the government shutdown. I have no regular income.
   b. Cash & Liquid Assets: The total of all cash and funds in my possession is $357.04, held across several accounts as detailed in the attached affidavit and exhibits. This amount is necessary for my and my dependent's basic subsistence.
   c. Dependents: I have sole legal and physical custody of my four-year-old daughter and am her only provider.
   d. Monthly Expenses: My essential monthly living expenses for myself and my daughter exceed $2,500, far surpassing my $0 income and negligible liquid assets.
   e. Real Property & Other Assets: I have no assets that provide equity or liquid funds. My residence is in foreclosure, and any potential interest in a real estate portfolio is the subject of litigation and is completely inaccessible.

3. I believe I am entitled to redress and that this appeal is taken in good faith, challenging fundamental due process violations and the bankruptcy court's abuse of discretion.

4. Appellant's indigent status has been formally conceded by the United States government in a separate sealed federal proceeding. This Court can and should adopt this factual concession for the purpose of this motion.

WHEREFORE, Appellant, John Michael Cohan, respectfully requests that this Court grant him leave to prosecute his appeal *in forma pauperis*.

Dated: 11-12-2025

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103

iustusprocessus@outlook.com

### Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system.

## AFFIDAVIT IN SUPPORT OF MOTION TO PROCEED IN FORMA PAUPERIS

FLORIDA STATE
DUVAL COUNTY

John Michael Cohan, being first duly sworn, upon oath, deposes and states:

1. I am the Appellant in the above-entitled case. I have read the foregoing Motion and affirm that the facts stated therein regarding my financial circumstances are true and correct to the best of my knowledge, information, and belief.

2. The attached screenshots from my banking and benefits applications, dated November 2025, accurately reflect my available financial resources. In addition to SNAP benefits, I receive irregular, nominal income from plasma donation, which is used for basic subsistence. This is not stable employment.

3. Real Property: I am on the title of my domicile. For safety reasons related to an active protective order, which this Honorable Court is aware of, I omit the specific address. The property is in active foreclosure proceedings. I hold no equitable or beneficial interest in it and derive no income or accessible equity from it.

4. Dependents: I have sole legal and physical custody of my four-year-old daughter. I am her only provider, and all my limited income and resources are used for our basic subsistence, including her food, clothing, and shelter.

5. Monthly Expenses: My essential monthly living expenses for myself and my daughter, including housing, utilities, food, and other basic necessities, exceed $2,500. This objectively demonstrates that my necessary costs of living far surpass my $0 income and negligible liquid assets, making it impossible to pay a $605 court fee. A detailed breakdown is withheld for personal security reasons, given the nature of this case.

6. Other Assets: I have a potential legal interest in a real estate portfolio located in Alabama that is the subject of pending litigation. However, the opposing party controls the properties, collects all rent, and a cloud on the title makes any sale or refinance impossible. This entity provides me with no income, no accessible funds, and has no liquid value to me.

7. Safety Concern: I omit the specific property address and any associated case details due to an active protective order issued for my safety.

_____

JOHN MICHAEL COHAN

Subscribed and sworn to before me this 6th day of November, 2025.
Notary Public
Florida State
Duval County

AMBROSIA BLACKETOR
Notary Public · State of Florida
Commission # HH 274394
My Comm. Expires Jun 9, 2026

11/6/25

5:47     ⊚Propel

# Welcome back, John Michael 

 **EBT** ›
Just now



## $420.71
Food stamps

## $123.32
Cash

Last transaction: 4 days ago     <u>View</u>

## Latest news     See all

⊚ UPDATED: 11/3

**Government shutdown update**
A court ordered the government to issue partial November payments for most SNAP recipients. It's unclear when payments will arrive or how much you'll receive—both depend on your state and household.

## Savings & assistance





**Find local food banks**

 Home     Health     News     Offers     More



5:50

Good morning, **John**

Deposit    Zelle®    Bill Pay

## Accounts

Open an account ⊕

**Banking**
2 accounts                      **$138.76** ⌃

**TD SIMPLE SAVINGS**
x4980                           **$72.46** ›

**TD SIMPLE SAVINGS**
x3705                           **$66.30** ›

## Just for you



**Prequalified for credit card offers?**              E
It's quick and easy to check online, and    ›        It
there's no impact to your credit


Accounts


Pay & Transfer


Products


Menu

12:09

 **Banking**

# $24.28

Total available balance ⓘ

| | |
|---|---|
| **Checking** 0.50% APY | $24.28 |
| **Savings** 1.00% APY | $0.00 |

Transfer  Deposit  Pay  Zelle®

## Crypto's coming back— find out how you could get a Bitcoin. Terms apply.

Join the waitlist



 Home    **Banking**    Credit card    Invest    Loans



2:05

Good Afternoon,

# John!

JC

## My Appointments

## My Balances



### Debit Card Balance

$26.64



### My BioLife Rewards

6,850

### My Patient Impact

ⓘ

### My Lifetime Plasma Donations:

29

### PI Patients Treated:

58

 Home

 Promotions

 Donate

 Rewards

 More

6:17

# Good Morning, John

 4 of 10

## Set up myWisely account

Get started!

>

### Wisely Pay - 0985

• • •

 $39.99

**Available Balance**

**Card Status: activated**
Your card is ready to use!

**Add Money**

10.23 Enrolled successfully! Account created.

<u>View card order status</u>

Add your card to your digital wallet

 Add to Wallet

### Recent Transactions

| 11.04 | SHELL SERVICE STATION JACKS... | - $25.01 |
| 10.27 | Deposit from First Coast Workfor... | + $65.00 |

<u>View more transactions</u>

 Home

 Move Money

 Savings

 Perks

5:52

< Hide Details 

## Rewards Checking

# $4.05

**AVAILABLE BALANCE**

Current Balance **$4.05**

Account Number
**\*\*\*\*\*30801**

Nickname
**Rewards Checking**

Available Balance
**$4.05**

Current Balance
**$4.05**

Premium OD Limit
**0.0**

ACCESS CENTRAL MAIL CENTER
P.O. BOX 1770
OCALA FL 34478

**Notice of Case Action**
State of Florida Department
of Children and Families



August 25, 2025                    Case: 1766250416                    Phone: (904) 485-9633

1307

JOHN M COHAN

Dear John M Cohan

The following is information about your eligibility.

## Food Assistance

Your application for Food Assistance dated August 07, 2025 is **approved**. You are eligible for the months listed below:

| Name | Aug, 2025 | Sep, 2025 | Oct, 2025 Thru January 31, 2026 |
|---|---|---|---|
| John Cohan | Eligible | Eligible | Eligible |
| A█████ | Eligible | Eligible | Eligible |
| Benefit Amount | | | |

Before your eligibility ends, we will send you a letter telling you what to do to keep getting Food Assistance. To keep your Food Assistance from ending, you will need to complete a review by January 31, 2026. You can use the web site at www.myflorida.com/accessflorida to do this on My ACCESS Account.

AE01    FORM : CF-ES 103 03 2009

**Medicaid**

Your Medicaid has been reviewed and the members listed below are eligible for continued coverage.

| Name | Status |
|------|--------|
| John Cohan | Eligible |
| A███████ | Eligible |

Certain food assistance recipients, known as Able-Bodied Adults Without Dependents (ABAWDs) and Mandatory Work Participants will have to meet work requirements to be eligible to receive food assistance benefits. An ABAWD (age 18 through 54) or Mandatory Work Participant (age 18 through 59) is an adult without a dependent; physically and mentally able to work; not living and eating with a child under age 18; not pregnant; and not exempt from food assistance general employment program work requirements. **If you are identified as an ABAWD or Mandatory Work Participant, you will be referred to participate in the SNAP Employment and Training program, operated by local workforce development board (LWDB) also known as CareerSource. To find your local LWDB or to learn more about services offered, please visit: https://lcd.floridajobs.org/** .

**Effective Dates:**

- **September 1, 2023,** individuals up to age 50 will be subject to Able-Bodied Adult Without Dependents (ABAWD) work rules.

- **October 1, 2023,** individuals up to age 52 will be subject to Able-Bodied Adult Without Dependents (ABAWD) work rules and individuals up to age 59 will be subject to Mandatory Work Participant Rules.

- **October 1, 2024,** individuals up to age 54 will be subject to Able-Bodied Adult Without Dependents (ABAWD) work rules.

If you are identified as an ABAWD and fail to comply with work requirements, or do not have good reason not to participate, a sanction will be imposed that stops or reduces food assistance benefits. If your case is closed, you can reapply if you are exempt from work requirements, have good reason to not participate, or are working or volunteering 20 hours per week, averaged 80 hours per month.

If you are identified as Mandatory Work Participant and fail to comply with work requirements, or do not have good reason not to participate, a sanction will be imposed that stops or reduces food assistance benefits. If your case is closed, you can reapply if you are exempt from work requirements, have good reason to not participate, or are working or volunteering 30 hours per week, averaged 120 hours per month, or earning $870.00 or more a month.

If this is the first time you have been approved for food or cash benefits, your EBT Card will be mailed to you. If you received benefits before and had a card but have lost or misplaced it, please call EBT Customer Service at 888-356-3281 to ask for a replacement card.

Go to www.myflorida.com/accessflorida and update your MyACCESS account. You will need your case number, 1766250416, to validate your account. Once you have validated your account you will be able to see the status of your benefits, view notices, renew benefits, request additional benefits, report changes, and upload documents.

For more information about available employment and training opportunities in your area, please visit: www.employflorida.com.

**Notice of Case Action**
State of Florida Department
of Children and Families

ACCESS CENTRAL MAIL CENTER
P.O. BOX 1770
OCALA FL 34478

September 15, 2025                    Case: 1766250416                    Phone:  (904) 485-9633

1632

JOHN M COHAN

Dear John M Cohan

The following is information about your eligibility.

---

**Cash Assistance**

Your application for Cash Assistance dated August 07, 2025 is **approved**.  You are eligible for the months listed below:

| Name | Sep, 2025 | Oct, 2025 Ongoing |
|------|-----------|-------------------|
| John Cohan | Eligible | Eligible |
| A | Eligible | Eligible |

AE01    FORM : CF-ES 103 03 2009

**Food Assistance**

We have reviewed your eligibility and found that your Food Assistance benefits will stay the same.

| Name | Status |
|------|--------|
| John Cohan | Eligible |
| A███████ | Eligible |

For Food Assistance benefits, you must report certain changes during your certification period when your household's monthly gross income is more than your income limit of $2,292.00. If you or a household member receives lottery or gambling winnings, you must report when the gross (before taxes or other amounts are withheld) amount is $4,250.00 or more, if won in a single game. If you are an ABAWD, you must also report if your work hours drop below 80 hours/month. You must report changes within 10 days following the end of the month the change happens.

If you fail to report changes as required, or if the information you provide is not correct, you may have to repay any benefits you receive for which you were not eligible and you may be prosecuted for fraud. You must report other changes and your household's situation at the time of the next recertification. If you have access to a computer, you may report your changes online at the ACCESS Florida website www.myflorida.com/accessflorida. You may also report changes by calling the ACCESS Florida Customer Call Center toll free at 1-850-300-4323, or by mail to the return address at the top of this notice. .

For all programs, you must report when your address changes.

**Medicaid**

Your Medicaid has been reviewed and the members listed below are eligible for continued coverage.

| Name | Status |
|------|--------|
| John Cohan | Eligible |
| A███████ | Eligible |

**Did you know you now have an on-line account with us?**  Go to www.myflorida.com/accessflorida.  **You will need your case number, 1766250416, to activate your My ACCESS Account. Then you can get into your account with a user name and password of your choice.**

You must report changes in your household circumstances no later than 10 days after the change occurs

If this is the first time you have been approved for food or cash benefits, your EBT Card will be mailed to you.  If you received benefits before and had a card but have lost or misplaced it, please call EBT Customer Service at 888-356-3281 to ask for a replacement card.

Certain food assistance recipients, known as Able-Bodied Adults Without Dependents (ABAWDs) and Mandatory Work Participants will have to meet work requirements to be eligible to receive food assistance benefits. An AEAWD (age 18 through 54) or Mandatory Work Participant (age 18 through 59) is an adult without a dependent; physically and mentally able to work, not living and eating with a child under age 18; not pregnant; and not exempt from food assistance general employment program work requirements. **If you are identified as an ABAWD or Mandatory Work**