UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

FILED INTAKE USBC
JUN 1 '26 PM2:06

## VERIFIED RESPONSE/OBJECTION TO CLAIM #5 OF CHARLES BLAKE STRINGER AND NUTRA-ACRES, LLC

John Michael Cohan, equity shareholder of the Debtor, interested party, and protected person, hereby responds to and objects to Claim #5 (the "Claim") filed by Charles Blake Stringer and Nutra-Acres, LLC (collectively, "Stringer"). In support thereof, Mr. Cohan states as follows:

## I. INTRODUCTION AND INCORPORATION BY REFERENCE

1. Mr. Cohan incorporates by reference the arguments set forth in his Motion for Reconsideration of Order Allowing Claim #4 (Belle Maison Realty, LLC) as if fully set forth herein. Those arguments apply equally to Claim #5 because:

  · The contracts at issue contain the same "100% non-refundable" and "not a guarantee of funding" language (see Bankr. Doc. 513).

  · The Trustee similarly objected to the inflated portion of the claim recently.

  · Nutra-Acres LLC worked directly with third-party reseller, McMann Commercial Lending LLC

2. Mr. Cohan further objects to Claim #5 on the specific grounds set forth below:

## II. SPECIFIC OBJECTIONS TO CLAIM #5

### A. The Contract Expressly Bars Any Refund

3. As with Claim #4, the agreements underlying Claim #5 (attached to Doc. 513) expressly state that payments made by Stringer were non-refundable and did not guarantee funding:

### Due Diligence Agreement

· <u>Wiring Instructions</u>: "*This fee for Due Diligence is 100% **non-refundable**.*"

· <u>Section 2</u>: "2. Payment…As a material inducement to Company to commence the Services, the Borrower shall pay Company a non-accountable and non-refundable fee of Twenty-Five Thousand Dollars ($25,000), payable prior to commencement of the Services. Payment of the diligence fee is not a guarantee that Company will offer funding to Borrower, or that any offer will be on terms and conditions acceptable to Borrower.… This interest of this Bridge Loan is 100% nonrefundable."

### Bridge Loan Agreement

· <u>Section 2.03(b)</u>: "(b) Payment of Interest. Pre-paid interest on the outstanding principal amount of the Loan shall be paid in kind and capitalized on this Business Day and shall be paid in cash in full upon acceptance of this agreement. Borrower understands that this payment is fully non-refundable."

4. Stringer's own Response to the Trustee's Objection (Doc. 581) does not dispute that the prepaid interest and fees were contractually non-refundable. Stringer admits: 'The Creditors agree that the sum of $400,000 was paid to the Debtor by the Creditors [as] prepaid interest and fees.' Doc. 581 ¶ 6. Under the Bridge Loan Agreement § 2.03(b), that payment is 'fully non-refundable.' Stringer has therefore conceded the dispositive fact.

5. Under the plain language of the contracts, Stringer is entitled to $0 from the estate. The Trustee's concession of $400,000 has no basis in the written agreements.

B. Stringer Is Not Entitled to Consequential or Speculative Damages

6. Stringer claims "actual damages and consequential damages totaling in excess of $14,000,000" based on the Debtor's alleged failure to fund a $24,000,000 line of credit.

7. The contracts expressly state that payment of fees does not guarantee funding. Any reliance on funding was therefore unreasonable as a matter of law.

8. Consequential damages for failure to fund a loan are not recoverable where the contract expressly disclaims any guarantee of funding. Stringer's claimed damages are speculative, unsupported by any documentary evidence of actual loss, and constitute an impermissible attempt to recover "lost opportunity" damages.

C. Stringer Engaged in Tortious Conduct Against the Debtor and Its Representatives

9. Mr. Stringer, a former representative of the Debtor, engaged in a pattern of tortious conduct including:

· Civil conspiracy to defraud and harm the Debtor and its equity holders;

· Defamation and false light; and

· Other tortious acts directed at the Debtor, its former representatives and their former corporations

10. Default judgments have been entered against other individuals and alleged creditors (Kristen Stegent of Rolling by the Dozen LLC and Kim Nash of A Complete Home Inspection LLC) for similar conduct, please see Miami-Dade Case No.: 2024-008427-CA-01. Mr. Stringer was a ringleader of the same conspiracy.

11. Under the doctrine of unclean hands, a claimant who has engaged in fraud, conspiracy, or other inequitable conduct against the estate or its representatives should not be permitted to recover from the estate. Stringer's claim should be disallowed in its entirety.

D. Double Counting and Related Claims

12. To the extent any portion of Stringer's claim overlaps with claims filed by other creditors, such as McMann Commercial Lending LLC (Claim #64), the claim is subject to reduction or disallowance to prevent double recovery.

13. To the best of the undersigned's knowledge, Stringer has not identified with specificity which portions of his claim are for non-refundable fees versus alleged consequential damages. The burden is on the claimant to prove the validity and amount of his claim.

14. It was established at trial and during the September 2024 341 meeting that Stringer came from a third-party reseller, McMann Commercial Lending LLC (Claim #64) ("McMann"). Stringer, like Belle Maison Realty LLC (Claim #4), was not a direct client.

15. McMann already has a claim (Claim #64) on the record that it is actively using as an asset (Bankr. Docs. 558, 559). There cannot be double counting. There cannot be double claims. Either Stringer has a claim or McMann has a claim. It cannot be both.

E. Stringer's Pending Adversary Proceeding Does Not Salvage His Claim

16. The undersigned takes a definitive position: The Debtor was **not** a Ponzi scheme. Stringer's adversary proceeding (Adv. Pro. 3:26-ap-00063) is legally flawed and factually unsupported. However, even if Stringer were to obtain a default judgment declaring the Debtor operated a Ponzi scheme, that judgment would have no effect on the legal deficiencies of Claim #5 for the following reasons.

17. First, the Debtor actually made loans to its customers. This is not a Ponzi scheme. A Ponzi scheme requires that money from new investors is used to pay returns to old investors, with no legitimate underlying business. That did not happen here. The Debtor operated a lending business. It executed loan agreements. It disbursed funds to borrowers. It had refundable and non-refundable payment categories, clearly disclosed in every contract. Stringer was in the non-refundable category. The contract expressly stated: "This fee is 100% non-refundable" and "Payment of the diligence fee is not a guarantee that Company will offer funding." There was no promise of a return. There was no "money in, money out" cycle. There was a loan that did not fund. That is a failed contract, not a Ponzi scheme.

18. Second, Stringer was not even dealing directly with the Debtor. Stringer worked through McMann Commercial Lending LLC, a third-party reseller. Whatever McMann may have told Stringer, the Debtor did not authorize. The Debtor cannot be held liable for alleged misrepresentations made by an independent third-party reseller. Stringer's remedy, if any, is against McMann—not the Debtor, and certainly not the equity holders of the Debtor. Stringer admitted on the witness stand that he did not even know who "Genie was" before he engaged. That alone defeats any claim of reliance on representations by the Debtor.

19. Third, Stringer's own conduct violated the agreement and disproves any claim of victimhood. A genuine victim does not: (a) admit under oath they did not know who they were dealing with; (b) create websites to engage in defamation, false light, and civil conspiracy against the very people they claim defrauded them; (c) sit silently while co-conspirators (Stegent, Nash) had default judgments entered against them for the same conduct Stringer engaged in. Stringer is not a victim. He is an active participant in a campaign to extract money from the Debtor through inflated claims, a defamation campaign and litigation tactics. The doctrine of unclean hands bars

him from recovering anything. (For further clarification, please see the undersigned's VERIFIED NOTICE OF NON-PARTY STATUS AND OBJECTION TO ANY DEFAULT JUDGMENT PURPORTING TO BIND NON-PARTY PRINCIPALS AND STATEMENT REGARDING THE PONZI SCHEME ALLEGATION in Adv. Pro. No.: 3:26-AP-00063-BAJ, Doc. 8 and its exhibits, filed contemporaneously in support of this response/objection on June 1, 2026. The undersigned incorporates the arguments of that filing herein.)

20. Fourth, a default judgment generally has no issue-preclusive effect as to matters that were not actually litigated. See *In re Bush*, 62 F.3d 1319, 1323–24 (11th Cir. 1995) (applying federal collateral estoppel principles and holding that issue preclusion requires that the identical issue have been actually litigated and necessary to the prior judgment); *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993). A default judgment entered against the Debtor does not, by itself, bind the undersigned in a separate proceeding unless the elements of res judicata or issue preclusion are otherwise satisfied. See *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1336–37 (11th Cir. 2017).

21. Fifth, the undersigned does not consent to any judgment that purports to bind his reputation or personal interests. This objection is filed to ensure the record reflects that the undersigned denies the Debtor was a Ponzi scheme and does not accept any finding that would prejudice his interests as an equity shareholder.

22. Stringer is entitled to pursue his adversary proceeding. But that proceeding does not—and cannot—cure the fatal defect in Claim #5: the contracts expressly state that all fees are "100% non-refundable" and that payment "is not a guarantee of funding." Under that plain language, Stringer is entitled to nothing from the estate. The adversary proceeding is a distraction from that dispositive fact.

## III. RESERVATION OF RIGHTS

23. Mr. Cohan reserves the right to object to Claim #5 on any additional grounds revealed through discovery, further review of the claim, any amended proof of claim, or further proceedings in this case.

24. Mr. Cohan also expressly reserves the right to object to any and all other claims filed in this case.

25. Mr. Cohan demands service of any objection and any related notices, motions, pleadings, or proposed orders in accordance with the Federal Rules of Bankruptcy Procedure, including Fed. R. Bankr. P. 3007(a), Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004, and Fed. R. Bankr. P. 2002(a)(1), Fed. R. Bankr. P. 2002(g), as applicable, and any controlling local rules and orders of this Court.

## IV. REQUEST FOR RELIEF

>>Sustain this Objection to Claim #5;

>>Disallow Claim #5 in its entirety based on the plain language of the contracts;

>>In the alternative, set an evidentiary hearing to determine whether the governing contracts bar any recovery;

>> Pursuant to Fed. R. Bankr. P. 9011 and 11 U.S.C. § 105(a), the Court should sanction Scott W. Spradley, Esq. for signing and filing the Response to Trustee's Objection (Doc. 581) and the Adversary Complaint (Adv. Pro. No. 3:26-ap-00063), because those papers assert positions that are objectively unreasonable in light of the plain contractual language providing that the subject payments were "100% non-refundable" and "not a guarantee of funding," and because the papers were filed without a reasonable prefiling inquiry.

Pursuant to Bankruptcy Rule 9011 and 11 U.S.C. § 105(a), impose sanctions, including but not limited to a personal Bar Order for the Middle District of Florida against Scott W. Spradley, Esq. (Florida Bar No. 782467) for signing and filing the Response to Trustee's Objection (Doc. 581) and the Adversary Complaint (Adv. Pro. 3:26-ap-00063), which are not well grounded in fact, not warranted by existing law, and interposed for an improper purpose, in that:

a. The governing contracts expressly state the fees are "100% non-refundable" and "not a guarantee of funding" — rendering the claim legally frivolous;

b. No reasonable inquiry under Rule 9011 could have supported a $14 million claim where the contract says the opposite; and

c. Mr. Spradley, a licensed Florida attorney since 1988 with decades of bankruptcy and creditor representation experience should have known better;

>>Additionally, impose sanctions against Charles Blake Stringer (pro se) for filing Proof of Claim #5, which is patently frivolous on its face given the "100% non-refundable" contract language;

>>Refer Scott W. Spradley, Esq. to The Florida Bar for disciplinary investigation under Bar Rules 4-3.1 and 4-8.4(d) for his role in filing and maintaining a frivolous response and adversary complaint directly contradicted by the plain language of the governing contracts or such other disciplinary rules as the Bar deems applicable.;

>>Require clarification as to which entity — Nutra-Acres LLC or McMann Commercial Lending LLC — holds the purported asset;

>>Strike the portions of Stringer's claim based on tortious conduct under the doctrine of unclean hands; and

>>Grant such other relief as the Court deems just and proper.

VERIFICATION

27. I, John Michael Cohan, declare under penalty of perjury that the facts stated in the foregoing Response/Objection are true and correct.

Dated: 06-01-2026

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103

iustusprocessus@outlook.com

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system.