UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

FILED INTAKE USBC
JUN 22 '26 PM3:33

## VERIFIED MOTION TO MODIFY OR RESCIND ORDER TO SHOW CAUSE (DOC. 347) AND FOR FINAL RULING ON SHOW CAUSE HEARING

John Michael Cohan, an equity shareholder of the debtor, party in interest, and a protected person, hereby moves to modify or rescind the Order to Show Cause (Doc. 347) and for a final ruling on the show cause hearing. In support thereof, Mr. Cohan states as follows:

## I. BACKGROUND

1. On March 27, 2025, the Court entered an Order to Show Cause (Doc. 347) that restricted the undersigned's right to file pro se pleadings.

2. On June 24, 2025, a show cause hearing was "held." The Court continued the hearing "until further order of the Court." (Doc. 378).

3. As of the date of this motion, the show cause hearing has never been concluded. No final ruling has been entered. No finding has been made that the undersigned violated any rule.

4. Despite the lack of a final ruling, the Court has repeatedly applied the show cause order to strike the undersigned's filings, including but not limited to:

· Order Striking Objection to Claim 5 (Doc. 603)

· Order Striking Motion for Reconsideration of Claim 4 (Doc. 601)

· Order Striking Objection to Amended Claim 4 (Doc. 602)

5. The Court has stricken the undersigned's filings repeatedly based on the *pending*, unresolved show cause order (Doc. 347). These include, but are not limited to: Doc. 442 (striking Doc. 441, Protective Notice of Appeal); Doc. 447 (striking Doc. 438, Motion for Reconsideration); Doc. 457 (striking Doc. 440, Objection to Trustee's Motion to Compromise Claims); Doc. 458 (striking Doc. 451, Motion to Correct the Record and for Relief from Order Granting Motion for Contempt); Doc. 506 (striking Doc. 501, Emergency Motion to Vacate Conversion Order for Fraud on the Court); Doc. 530 (striking Doc. 507, Motion to Disqualify U.S. Trustee and Debtor's Counsel); Doc. 531 (striking Doc. 508, Motion to Disqualify Trustee, Trustee's Counsel, U.S. Trustee, and Debtor's Counsel); Doc. 532 (striking Doc. 509, Motion for Removal of Trustee and Disqualification of His Counsel); Doc. 536 (striking Doc. 529, Motion for Judicial Notice and Application of Full Faith and Credit); Doc. 601 (striking Doc. 589, Objection to Amended Claim Four); Doc. 603 (striking Doc. 593, Motion for Reconsideration of Order Allowing Claim Four); Doc. 604 (striking Doc. 594, Objection to Claim Five).

6. The undersigned seeks relief from the show cause order, an actual hearing on the record with briefs submitted by all interested parties, and a final ruling on the show cause hearing.

## II. LEGAL STANDARD

7. The show cause order is interlocutory, not final, because the hearing was continued and no final ruling has been entered. Interlocutory orders are subject to revision at any time before entry of final judgment. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); see also Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054.

8. A court has inherent authority to modify or rescind its own interlocutory orders. This Court may therefore modify or rescind the show cause order at any time before a final ruling is entered.

9. Filing restrictions must be narrowly tailored and based on a record showing abusive conduct. *In re Crayton*, 192 B.R. 970, 973 (B.A.P. 9th Cir. 1996); *In re Gellington*, 465 B.R. 841, 846 (Bankr. E.D. Ark. 2012); see also *Procup v. Strickland*, 792 F.2d 1069, 1071-73 (11th Cir. 1986) (en banc); *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387-89 (11th Cir. 1993). A pro se litigant should not be barred from filing absent a pattern of abusive conduct.

III. ARGUMENT

A. The Show Cause Order Is Not Final — The Court May Modify or Rescind It

10. The show cause hearing was continued "until further order of the Court." (Doc. 378). No further order has been entered. The matter remains pending.

11. Because no final ruling has been made, the show cause order remains interlocutory. This Court has the inherent authority to modify or rescind its own interlocutory orders at any time.

12. The undersigned respectfully requests that the Court either:

· (a) Rescind the show cause order entirely; or

· (b) Modify the show cause order to permit the undersigned to file pleadings; or

· (c) Finally rule on the show cause after a hearing.

B. The Undersigned's Filings Are Not Frivolous — They Are Substantive and Verified

13. The undersigned is an equity holder. He owns or owned 50% of the Debtor. That gives him standing under 11 U.S.C. § 1109(b). The statute does not say "equity security holders may appear and be heard only if there is a surplus." No conditions. No qualifications.

14. The undersigned's Objection to Claim 5 (Doc. 594) cited the express language of Section 13.7(c)(ix) of the BELOC Agreement, which states that the Debtor is not liable when the wholesale lender fails. The contract speaks for itself. The Trustee has never addressed this contractual provision because he cannot.

15. The undersigned's Motion for Reconsideration of Claim 4 (Doc. 593) raised due process arguments, including lack of notice of the settlement and disparate treatment under Local Rule 1074-1. The undersigned received no notice of the settlement before the order was entered. Local Rule 1074-1 was applied to the undersigned but not to Ms. Lea Muse of Belle Maison (an LLC appearing pro se by and through its principal).

16. The undersigned's Motion for Wrongful Conversion (Doc. 501), Motion to Remove/Recuse (Docs. 507, 508, 509, 513), Motion for Reconsideration (Doc. 438), and Motion for Judicial Notice (Docs. 406, 428, 470, 477, 490) that was altered all had merit and were well grounded in law.

17. These are not frivolous filings. They are serious legal arguments supported by the record. The show cause order — which was entered before these filings were made — should not be used to strike meritorious pleadings.

18. The governing contracts speak for themselves. The Due Diligence Agreement states: "This fee for Due Diligence is 100% non-refundable" and "Payment of the diligence fee is not a

guarantee that Company will offer funding to Borrower." Section 13.7(c)(ix) of the BELOC

Agreement further provides: "Lender shall not be liable or responsible to the Borrower ... for any

failure or delay in funding Advances ... caused by ... failure of the Lender's wholesale lender

from performing." The Trustee has never addressed this express contract language because he

cannot. The undersigned's filings citing these provisions are substantive, not frivolous.

C. The Trustee and this Court Have Selectively Enforced Local Rule 1074-1 — Disparate
Treatment

19. The Trustee and this Court have selectively enforced Local Rule 1074-1. Belle Maison

Realty, LLC — a limited liability company — appeared pro se by and through its principal in

this case. The Trustee did not move to strike its filings. The Court did not strike its filings. The

Trustee instead entered into an agreed order with Belle Maison (Doc. 583).

20. The same rule has been applied against the undersigned in the adversary proceeding. The

Trustee cannot have it both ways. The Trustee and the Court cannot invoke Local Rule 1074-1 to

strike the undersigned's filings while simultaneously entering into agreed orders with other LLCs

appearing pro se. This disparate treatment violates the undersigned's right to equal treatment and

due process under the rules, fifth, sixth and fourteenth amendments of the United States

Constitution.

D. The Trustee's Motion to Strike Was Filed in Bad Faith — He Cannot Defend Against the
Merits

21. The Trustee does not challenge the substance of the undersigned's arguments. He does not

address the contract's "100% non-refundable" language. He does not explain why Belle Maison

was allowed to appear pro se while the undersigned is struck. He does not defend his own failure to investigate.

22. The Trustee cannot defend against the actual arguments the undersigned is making. He cannot get around the contract's text or rewrite the agreement to avoid its plain effect. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007) (in bankruptcy, claims are determined under applicable nonbankruptcy law unless the Code provides otherwise); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) (courts must give effect to all contract terms and avoid interpretations that render provisions meaningless); *In re Stratford of Tex., Inc.*, 635 F.2d 365 (5th Cir. 1981) (applying ordinary contract principles in bankruptcy and using extrinsic evidence only if the language is ambiguous). He likewise cannot explain away the disparate treatment shown in the record.

23. The Trustee's motion to strike (Doc. 599) was filed in bad faith. If the Trustee could beat the undersigned on the merits, he would. He would file a response to the undersigned's Objection to Claim 5. He would defend the "100% non-refundable" contract language. He has done none of these things. Instead, he attacks procedure. He argues standing. He moves to strike. He tries to silence rather than answer. The Court then strikes the filings before a scheduled hearing, and then the Trustee files a withdrawal (Doc. 606).

E. The Trustee Has a Pattern of Refusing to Investigate

24. The Trustee admitted under oath that he did not review bank records before filing fraudulent transfer claims, relying on third parties instead. He has failed to investigate attorneys (Doc. 597). He has similarly failed to review the force majeure provisions in Section 13.7(c)(ix). He has

refused to investigate the allegations regarding the 341 meeting audio (Doc. 590). This pattern is not diligence. It is avoidance.

F. The Trustee Cannot Use the Undersigned's Right to Appeal as a Weapon

25. The Trustee obtained a bar order that removed the undersigned's personal claims against Warren Law Group. The undersigned appealed that bar order. The Trustee then blamed the undersigned's appeal for delaying the Warren Law settlement (Doc. 599).

26. The Trustee cannot have it both ways. He obtained the bar order. He cannot blame the undersigned for appealing it. The right to appeal is a fundamental constitutional right. It is not a forfeiture of standing. It is not a waiver of any other right. The Trustee cannot say: "You appealed, therefore you lose your right to be heard in this case." That is retaliation, not law.

G. The Undersigned Is Entitled to a Final Ruling on the Show Cause

27. The undersigned acknowledges that the Order Granting Trustee's Motion to Enforce Automatic Stay (Doc. 432) is on appeal. That order is separate and distinct from the Order to Show Cause (Doc. 347). The show cause order has never been finally ruled on. The show cause hearing was held on June 24, 2025, and continued 'until further order of the Court' (Doc. 378). No final ruling has ever been entered on the show cause order. No finding has ever been made that the undersigned violated any rule. The restriction on the undersigned's filing rights remains in place based on a pending, unresolved order. That is the issue raised in this motion.

28. The show cause hearing was held on June 24, 2025 — nearly one (1) year ago. It was continued "until further order." The undersigned has not received a final ruling.

29. The undersigned respectfully requests that the Court either:

· (a) Conclude the show cause hearing and enter a final ruling; or

· (b) Rescind the show cause order as *moot* given the lack of a final ruling.

· (c) In the alternative, require interested parties to submit briefs and hold a hearing where parties are meaningfully heard.

H. The Show Cause Hearing Was Never Concluded — No Final Ruling Exists

30. On June 24, 2025, the Court did not hold a show cause hearing. The Court simply explained why the order was entered on the record. The Court stated that the Order to Show Cause (Doc. 347) was entered because there were "so many voluminous filings, it was impossible to see what was really important." (June 24, 2025 Trial Audio). The Court did not find that the undersigned had engaged in any bad faith or frivolous conduct. The undersigned was not instructed to brief the court, and the undersigned was not afforded an opportunity to be heard. The Court later wrote that the order (Doc. 347) was "held and continued until further order of the Court." (Doc. 378). As of the date of this motion, the hearing has never been reconvened. No final ruling has been entered. The show cause order remains interlocutory and pending.

31. Critically, the Court further stated at the same hearing that it had "read through every single document" filed in this case. (June 24, 2025 Trial Audio). The original administrative rationale for the Order to Show Cause — that the volume of filings made it "impossible to see what was really important" — has been mooted by the Court's own statement that it has now reviewed all

documents. Despite this, the Court continues to apply the pending, unresolved show cause order to strike the undersigned's meritorious filings. This is an abuse of discretion.

32. The Court's orders striking the undersigned's filings (including but not limited to Docs. 601, 602, 603) rely on the show cause order as the basis for striking. But the show cause order is not final. The undersigned has never been found to have violated any rule. The Court struck meritorious, verified filings based on a pending, unresolved show cause order. That was premature. The June 24, 2025 hearing itself proves that no final ruling on the show cause order has been made. At the conclusion of the hearing, the Court ordered simultaneous 15-page post-trial memoranda and stated: "I'm going to take all the things that I haven't ruled on already under advisement." (June 24, 2025 Trial Audio). The Court treated the matter as pending and under advisement — not as finally resolved. No final ruling has ever been entered. No finding has ever been made that the undersigned violated any rule. The orders striking the undersigned's filings (including but not limited to Docs. 601, 602, 603) were entered while this matter was still pending before the Court. That was premature and an abuse of discretion.

I. The Trustee's Contradictory Position on Standing Undermines His Own Arguments

33. In the Stringer adversary proceeding (Adv. Pro. 3:26-ap-00063), the Trustee filed a Motion to Dismiss (Doc. 10) arguing that Stringer lacks standing to seek a declaratory judgment that the Debtor operated a Ponzi scheme. The Trustee argues that such claims "belong to the bankruptcy estate and may only be asserted by the Trustee."

34. Yet in this case, the Trustee argues that the undersigned — a 50% equity holder — lacks standing to object to claims. The Trustee cannot have it both ways. If Stringer (a creditor) lacks standing to bring an estate-wide claim, then certainly the undersigned (an equity holder with a

direct financial interest in any surplus) has standing to object to claims that affect his potential surplus.

35. The Trustee's contradictory position on standing is further evidence of bad faith and procedural gamesmanship. He invokes standing when it suits him and ignores it when it does not.

J. The Contempt Order (Adv. Pro. Doc. 107) Purports to Bind Non-Party Former Owners Without Jurisdiction

36. On August 27, 2025, the Court entered an Order Granting Plaintiff's Motion for an Order to Show Cause Why the Judgment Debtor Should Not Be Held in Contempt (Adv. Pro. 3:25-ap-00011, Doc. 107). That order purports to prohibit "Defendants and the Former Owners" — including the undersigned — from filing any pleadings.

37. The undersigned was not a defendant in that adversary proceeding. The undersigned was never served. The court had no personal jurisdiction over the undersigned.

38. The contempt finding was based on the failure of corporate Defendants (Zoomeral, Inc., Capitulum, LLC, et al.) to respond to discovery. Those entities had no money to hire counsel (*Id.* at Doc. 20). The undersigned was not the Defendant. The undersigned could not compel those entities to respond.

39. Despite the lack of jurisdiction, the contempt order prohibits the undersigned from filing any pleadings. It states: "Any future pleadings of the Defendants or Former Owners will be stricken if filed in violation of this Order." (Adv. Pro. Doc. 107, ¶ 4).

40. The Trustee never moved to hold the *undersigned* in contempt. The Trustee never served the undersigned with any discovery requests directed to him personally. The Trustee's counsel has emails from David Hughes asking if the Trustee needed anything else — and the Trustee's counsel never responded with any substantive requests. The Trustee cannot claim the undersigned willfully violated an order when the Trustee never told the undersigned what was required.

41. A court cannot punish a non-party for the acts of a party. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969); see also *Taylor v. Sturgell*, 553 U.S. 880, 884-85 (2008) (nonparty generally not bound by judgment).

42. The contempt order is void as to the undersigned for lack of personal jurisdiction. The undersigned is not bound by it. To the extent the Court intends to enforce it against the undersigned, the undersigned requests that this provision be vacated as void.

K. The Contempt Order's Restriction on the Undersigned Was Never Discussed at the Hearing — It Was Added After the Fact

43. On August 25, 2025, the Court held a hearing on the Trustee's Motion for Contempt (Adv. Pro. 3:25-ap-00011, Doc. 74). The undersigned attended that hearing.

44. During the hearing, the Court did not state that it intended to prohibit the undersigned personally from filing pleadings. The Court did not ask the undersigned to show cause why his personal filing rights should not be restricted. The Court did not give the undersigned any notice that his personal filing rights were at stake.

45. The Court's written order (Adv. Pro. Doc. 107) was entered two (2) days later, on August 27, 2025. For the first time, the order stated: "Any future pleadings of the Defendants or Former Owners will be stricken if filed in violation of this Order." (¶ 4).

46. The undersigned was never given notice that his personal filing rights were at risk. The undersigned was never given an opportunity to be heard on whether his personal filing rights should be restricted. The Court imposed a sanction on a non-party *without* notice, *without* a hearing, and *without* any finding that the undersigned personally violated any order.

47. This is a violation of due process. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972); see also *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

48. The portion of the contempt order purporting to restrict the undersigned's filing rights is void for lack of due process. The undersigned requests that this provision be vacated.

L. The Accusation of "Abuse of Process" Is Projection — The Trustee and U.S. Trustee Are the Ones Abusing the Process

49. The Court's Order to Show Cause (Doc. 347) suggests that the undersigned's filings constitute an "abuse of process" or are otherwise making it "extremely difficult for the Case to be efficiently administered." The record proves otherwise. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991) (inherent power to address bad-faith conduct); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-76 (2007) (bankruptcy courts may act against abusive litigation conduct).

50. The Trustee admitted he did not review bank records before filing fraudulent transfer claims. At the June 24, 2025 trial, the Trustee testified under oath that he relied on third parties instead of conducting his own investigation (Doc. 389 at 39:19-25, 40:4-8, 41:19-23, 58:14-17). iling lawsuits without reviewing the underlying evidence is an abuse of process. *Chambers*. The undersigned has never done that.

51. The Trustee refused to investigate the United States Trustee's conduct. When asked whether the Trustee had investigated the U.S. Trustee's misconduct, Trustee's counsel responded: "The Trustee does not believe that the United States Trustee engaged in any misconduct in this case. Therefore there is no investigation" (Doc. 590). Reaching a conclusion without an investigation is not diligence. It is willful ignorance. That is an abuse of the Trustee's fiduciary duties. *In re United Healthcare Sys., Inc.*, 200 F.3d 170, 175-76 (3d Cir. 1999); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985).

52. The Trustee refused to subpoena Michael Connor's IOLTA account records. The Trustee admitted he did not obtain these records. The IOLTA records are a primary source of truth regarding the flow of funds. ... Refusing to look at evidence while pursuing claims against the estate, its principals or its affiliates is an abuse of process. *Chambers*. The undersigned has never done that.

53. The Trustee filed a motion to strike (Doc. 599) without conferring as required by Local Rule 3.01(g). The Trustee then withdrew the motion the next day after the Court struck the undersigned's filings on other grounds (Doc. 606). Filing procedurally defective motions and then withdrawing them to avoid an adverse ruling is an abuse of process. Fed. R. Bankr. P. 9011(b); *Chambers*. The undersigned has never done that.

54. The United States Trustee filed a motion to appoint a trustee (Doc. 20) alleging that Genie "simply stole" customer money. Adam Walker, a 12-year former FINRA enforcement attorney, concluded that the UST's allegation was "itself a fraud, fabricated by the UST and unsupported by any evidence in the [Examiner] Report or elsewhere in the record of this case". Filing false allegations with the court is an abuse of process. *Chambers.* The undersigned has never done that.

55. The United States Trustee has been accused of tampering with the §341 meeting audio. The undersigned filed evidence of a flatline in the audio indicating spoliation (Doc. 501). The UST refused to investigate. The Trustee refused to investigate. The Court has not addressed the allegation, instead it struck the filing. Tampering with evidence is an abuse of process. *Flury v. DaimlerChrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). The undersigned has never done that.

56. The Trustee obtained a bar order (Doc. 471) extinguishing the undersigned's personal claims the day after the undersigned *re*filed a police report documenting a crime (Doc. 470). Using court processes to retaliate against a witness who reports a crime is an abuse of process. *Chambers.* The undersigned has never done that.

57. The Trustee has filed status reports in the District Court (Case No. 3:25-cv-00164) claiming "no developments" while material events occurred — including a $3 million claim settling for $70,000 on a non-refundable contract. Filing false status reports with the court is an abuse of process. *Chambers.* The undersigned has never done that.

58. The undersigned has filed verified pleadings, cited specific contract language (Section 13.7(c)(ix)), quoted statutes (11 U.S.C. § 1109(b)), and documented evidence (the Walker

Declaration, the police report, the audio flatline). The undersigned has never filed a pleading without providing or reviewing the underlying evidence. The undersigned has never filed a procedurally defective motion and then withdrawn it to avoid an adverse ruling. The undersigned has never refused to investigate. The undersigned has never tampered with evidence. The undersigned has never filed false status reports.

59. If there is an "abuse of process" in this case, it is not coming from the undersigned, nor David Hughes. The undersigned respectfully requests that the Court compare the conduct of the Trustee and the U.S. Trustee — documented in the record — with the conduct of the undersigned. The record protects itself.

M. The Court Cannot Compel Discovery from the Undersigned Without First Addressing the UST's Spoliation of Evidence — and the Fifth Amendment Invocation Was Justified

60. The undersigned invoked his Fifth Amendment privilege against self-incrimination in response to discovery requests in the adversary proceeding (Adv. Pro. 3:25-ap-00011). The undersigned did so because the United States Trustee's office — the same office that was demanding documents — has allegedly tampered with evidence in this case.

61. The undersigned has filed evidence that the April 17, 2024 §341 meeting audio was tampered with — specifically, that a flatline in the audio indicates spoliation of evidence (Bankr. Doc. 501). The UST, in this court, has never denied this allegation. The UST has never investigated. The UST has never produced the original, unaltered audio for forensic examination.

62. The undersigned cannot be compelled to provide documents to parties or their subordinates who have already tampered with evidence in this case. The Fifth Amendment privilege exists precisely to protect individuals from being forced to cooperate with their own potential

prosecution — especially when the prosecuting authority has a documented pattern of evidence tampering.

63. Before the Court can compel the undersigned to produce documents or answer questions, the Court must first address the documented spoliation of evidence by the United States Trustee's office. If the UST tampered with evidence, then any discovery sought by the Trustee — who has refused to investigate the UST's conduct — is tainted and the undersigned has been systematically blocked from being meaningfully heard.

64. The Court has not drawn any adverse inference against the undersigned for invoking the Fifth Amendment. The Court has not held the undersigned in contempt. The contempt order (Adv. Pro. Doc. 107) was directed at corporate Defendants, not at the undersigned personally. To the extent the Court intends to impose sanctions on the undersigned for invoking the Fifth Amendment, the undersigned requests an evidentiary hearing at which the spoliation of evidence by the UST can be fully litigated. See *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (adverse inferences may be drawn in civil cases, but context matters); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (sanctions implicate due process); *In re Mroz*, 65 F.3d 1567, 1575-76 (11th Cir. 1995) (sanctions require notice and an opportunity to be heard).

65. The undersigned's invocation of the Fifth Amendment was not an abuse of process. It was a constitutional right exercised in response to documented spoliation of evidence by the United States Trustee's office by and through its employee Scott Bomkamp. The undersigned requests that the Court address the spoliation issue before taking any adverse action against the undersigned for invoking the Fifth Amendment.

IV. THE TRUSTEE'S FILE-AND-WITHDRAW TACTIC — FURTHER EVIDENCE OF BAD FAITH

66. The Trustee filed his Motion to Strike (Doc. 599) on June 8, 2026. The undersigned prepared a 93-paragraph verified response addressing every argument raised in the Motion.

67. Before the undersigned could file his response, the Court orders the striking of the undersigned's filings and the Trustee subsequently withdrew the Motion on June 9, 2026 (Doc. 606).

68. The Trustee's "file and withdraw" tactic is not a good-faith litigation strategy. It is procedural gamesmanship. The Trustee filed a defective motion, then withdrew it before the undersigned could respond — likely to avoid an adverse filing on the record.

69. This Court has the inherent authority to sanction bad-faith litigation conduct. The Trustee's pattern of filing procedurally defective motions, then withdrawing them when faced with a verified response, is precisely the kind of conduct that warrants a finding of bad faith.

V. CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Mr. Cohan respectfully requests that the Court:

· Vacate or Rescind the Order to Show Cause (Doc. 347) in its entirety;

· In the alternative, modify the Order to Show Cause to permit the undersigned to file pleadings;

· In the alternative, finally rule on the show cause after a hearing or trial, either sustaining or overruling the order;

· Order full briefing by all interested parties;

· Find that the Trustee's motion to strike was filed in bad faith and for an improper purpose;

· Find that the Trustee has selectively enforced Local Rule 1074-1, resulting in disparate treatment;

· Order that the undersigned's filings including but not limited to Docs. 438, 501, 507, 508, 509, 513, 593, 594 be reinstated or allowed to proceed (Please see paragraph 5 of this motion); and

· Grant such other relief as the Court deems just and proper.

VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing motion, and the facts alleged therein are true and correct.

Dated: 06-22-2026

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system.