FILED INTAKE USBC
JUL 6 '26 PM 2:40

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24bk00496BAJ
Chapter 7

## VERIFIED OBJECTIONS TO CLAIMS

Movant, John Michael Cohan, a protected person, a party in interest and equity shareholder of the debtor, specially appearing pro se, solely for his personal interests, hereby objects to certain claims previously filed and asserts additional objections to certain claims against the bankruptcy estate of Genie Investments NV Inc. The Movant previously raised these objections, which were initially denied without prejudice to permit Chapter 7 Trustee review. The Movant now renews these objections pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3007.

## I. BACKGROUND

1. This matter arises from the Chapter 7 bankruptcy case of Genie Investments NV Inc. (the "Debtor").

2. The Movant previously raised timely objections to the validity and enforceability of numerous claims filed against the Debtor's estate.

3. The Court initially denied these objections without prejudice, allowing the Chapter 7 Trustee an opportunity to review the claims.

4. The Movant now renews these objections pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3007 and includes additional objections to claims.

## II. OBJECTIONS TO SPECIFIC CLAIMS

5. The Movant objects to Claims 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 22, 23, 24, 28, 29, 35, 36, 37, 38, 39, 42, 43, 49, 50, 51, 52, 55, 57, 58, 59, 64, 68, and 71 and seeks their disallowance as set forth below.

Claim 3 – TnC NOLA Holdings

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). The claimant knowingly filed a fraudulent wire recall in an attempt to recover funds by circumventing the binding contract and agreed-upon dispute resolution process, triggering pending arbitration.

Relief Requested: The claim should be disallowed.

Claim 4 – Belle Maison Realty

Grounds for Objection: Movant incorporates all arguments in respective filings to this claim. The amended claim inflates the debt from $70,000.00 to $3,000,000.00 based on unsupported allegations of fraud and misrepresentation. The documentation originally submitted only supports the $70,000.00 amount. The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement and self-declaration under oath in this Court of their expertise in contracts, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). The claimant engaged in misconduct that rises to the level of reputational and procedural abuse.

Specifically, the claimant sent multiple emails to external parties referring to the Debtor and to Debtor's former representatives, including the Debtor's previously existing or prospective customers, and encouraged those parties to submit false or misleading reports to the Federal Bureau of Investigations (FBI). These actions violated the spirit and, arguably, the letter of non-disparagement, confidentiality, and indemnification provisions while the Bankruptcy Stay was in place prior to the Chapter 7 conversion. The claim should therefore be disallowed in full under 11 U.S.C. § 502(b)(1), as it is not enforceable against the Debtor under applicable law. Movant reserves the right to raise other claims/defenses that arise, including but not limited to defamation, false light and civil conspiracy.

Relief Requested: The claim should be disallowed.

Claim 5 – Nutra Acres

Grounds for Objection: Movant incorporates all arguments in respective filings to this claim. Claimant originally provided $385,000.00 to the Debtor, but now claims $14,247,750.00 for "failure to provide loan under contract," without basis or contractual proof. The excessive claim lacks documentation and contradicts the terms in the original loan agreement. The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the

agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). This creditor engaged in a coordinated online campaign to defame and disparage the Debtor, Debtor's former representatives, and their affiliated dissolved entities. This conduct violated binding confidentiality, indemnification, and non-disparagement clauses within the same agreements and contributed to reputational and economic damage before, during and after the Bankruptcy Stay was in place. Claimant went as far as creating a website, www.victimsbelocscam.com, which was taken down by the internet hosting agent for violations of their policies and procedures. This creditor knowingly filed a fraudulent wire recall in an attempt to fraudulently recover funds by circumventing the binding contract and agreed-upon dispute resolution process. This improper and unauthorized action directly resulted in the closure of the Debtor's longest-standing operating bank account. The claim is not only legally barred but rooted in bad faith and actionable harm, further justifying disallowance. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). Movant

reserves the right to raise other claims/defenses that arise, including but not limited to defamation, false light and civil conspiracy.

Relief Requested: The claim should be disallowed.

Claim 6 – Acres & Royalty

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 7 – Rolling By The Dozen RV Park

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). This claim should also be denied due to claimant's refusal to pay their portion of arbitration fees as required under the binding arbitration clause, forcing the Debtor to cover double fees and undermining the enforceability of the arbitration process. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983); In re Elec. Mach. Enters., Inc., 479 F.3d 791 (11th Cir. 2007). Additionally, this creditor knowingly filed a fraudulent wire recall in an attempt to fraudulently recover funds by circumventing the

binding contract and agreed-upon dispute resolution process, directly resulting in the closure of the Debtor's longest-standing operating bank account. The creditor also engaged in a coordinated online campaign to defame and disparage the Debtor, Debtor's former representatives, and their affiliated dissolved entities, violating binding confidentiality, indemnification, and non-disparagement clauses. Movant reserves the right to raise other claims/defenses that arise, including but not limited to defamation, false light and civil conspiracy.

Relief Requested: The claim should be disallowed.

Claim 8 – BAYI Capital Management

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and

the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 10 – Global Verse Holdings

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 11 – A Complete Home Inspection

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). This claim should also be denied due to claimant's refusal to pay their portion of arbitration fees as required under the binding arbitration clause, forcing the Debtor to cover double fees and undermining the enforceability of the arbitration process. See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *In re Elec. Mach. Enters., Inc.*, 479 F.3d 791 (11th Cir. 2007). Additionally, this creditor knowingly filed a fraudulent wire recall in an attempt to fraudulently recover funds by circumventing the

binding contract and agreed-upon dispute resolution process, directly resulting in the closure of the Debtor's longest-standing operating bank account. The creditor also engaged in a coordinated online campaign to defame and disparage the Debtor, Debtor's former representatives, and their affiliated dissolved entities, violating binding confidentiality, indemnification, and non-disparagement clauses. Movant reserves the right to raise other claims/defenses that arise, including but not limited to defamation, false light and civil conspiracy.

Relief Requested: The claim should be disallowed.

Claim 12 – Sun Coast Entertainment Live

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and

the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). The creditor engaged in a defamatory act in violation of binding confidentiality, indemnification, and non-disparagement clauses within the same agreements, contributing to reputational and economic damage to the Debtor, Debtor's former representatives, and their affiliated dissolved entities. Movant reserves the right to raise other claims/defenses that arise, including but not limited to defamation, false light and civil conspiracy.

Relief Requested: The claim should be disallowed.

Claim 13 – Meetopolis

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and

the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R.

Bankr. P. 3001(f). The Movant has reason to believe that this creditor created a

fake alias named "Christine Ellsworth" and coordinated with other creditors to

post false statements about the Debtor and its former representatives. Movant

reserves the right to raise other claims/defenses that arise, including but not

limited to defamation, false light and civil conspiracy.

Relief Requested: The claim should be disallowed.

Claim 14 – Heliosun LLC DBA Odin

Grounds for Objection: The Movant asserts that this claim is not enforceable

under applicable law because it arises from a non-refundable fee agreement. The

Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly

states in Article 2, Section 2.03(b) that the payment made by the Borrower is

"fully non-refundable." The creditor, with full understanding of these terms,

executed the agreement, accepted funds accordingly, and knowingly waived any

right to request a refund. Despite the clear language of the agreement, the

claimant now seeks a refund in violation of the express contractual terms.

Additionally, the creditor failed to fulfill their contractual obligations to extend

the loan term, which was a precondition to asserting any right to reimbursement.

The Lender complied in full with the Bridge Loan Agreement, and no default or

breach was committed by the Debtor. As such, the claim should be disallowed in

its entirety under the doctrine of express waiver and estoppel. The Due Diligence

Fee Agreement explicitly states that the payment is "100% non-refundable," and

the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R.

Bankr. P. 3001(f). This claim also improperly includes $5,000 in software fees paid to ZOOMERAL Inc., a separate legal, now dissolved entity. These fees were explicitly non-refundable and outside the scope of any refundable obligation. To the extent the claim seeks reimbursement of those fees, it is disallowed under 11 U.S.C. § 502(b)(1). The claimant improperly listed themselves as a Priority claim, despite not being a secured party.

Relief Requested: The claim should be disallowed.

Claim 15 – Faith Investors Services

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R.

Bankr. P. 3001(f). This claim also improperly includes $5,000 in software fees paid to ZOOMERAL Inc., a separate legal, now dissolved entity. These fees were explicitly non-refundable and outside the scope of any refundable obligation. To the extent the claim seeks reimbursement of those fees, it is disallowed under 11 U.S.C. § 502(b)(1).

Relief Requested: The claim should be disallowed.

Claim 16 – MIMS-IPR

Grounds for Objection: The Movant asserts that this claim is not enforceable against the Debtor because it arises from a separate transaction with a different legal entity, Genie Investments LLC, not the Debtor, Genie Investments NV Inc. The claimant was a borrower in a loan transaction with Genie Investments LLC and subsequently defaulted on that loan. There is no legal or contractual basis for asserting a claim against Genie Investments NV Inc., which was not a party to the agreement. See *In re Lakeside Cmty. Hosp., Inc.*, 151 B.R. 887, 889 (Bankr. M.D. Fla. 1993). This claim was withdrawn by authorized parties of MIMS-IPR.

Relief Requested: The claim should be disallowed.

Claim 17 – Solace Realty Concepts

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms,

executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). This claim also improperly includes $5,000 in software fees paid to ZOOMERAL Inc., a separate legal, now dissolved entity. These fees were explicitly non-refundable and outside the scope of any refundable obligation. To the extent the claim seeks reimbursement of those fees, it is disallowed under 11 U.S.C. § 502(b)(1).

Relief Requested: The claim should be disallowed.

Claim 18 – Legacy Land Developers

Grounds for Objection: The Movant asserts that this claim is not enforceable against the Debtor because Genie Investments NV Inc. never received funds or transacted with the claimant. The relationship appears to be exclusively between the claimant and a third-party white labeler, McMann. Absent evidence of a contractual or financial relationship between this claimant and the Debtor, the claim must be disallowed. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 22 – Foster Group

Grounds for Objection: The proof of claim includes $202,900.00, including amounts wired to McMann, not the Debtor. Only $30,000.00 was wired to the Debtor. The rest of the funds were retained by McMann and never turned over to Genie Investments NV, Inc. Therefore, the claim should be reduced accordingly, if applicable. The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). A claim must reflect actual liability of the Debtor; unsupported components must be disallowed.

Relief Requested: The claim should be disallowed.

Claim 23 – Uncle Willie Green Wings

Grounds for Objection: The Movant asserts that this claim is not enforceable because the claimant received a loan from the Debtor and subsequently defaulted. The loan proceeds received by the claimant exceed any payments made back to the Debtor, and there is no basis for seeking a refund or further distribution. Attempting to recover additional funds under these circumstances is impermissible. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 24 – Latent Lending

Grounds for Objection: The creditor claims $1.8MM, but owes the Debtor $600,000.00 on a defaulted loan. Setoff rights are recognized under 11 U.S.C. § 553(a). Any claim amount that fails to account for this obligation is inaccurate and overstated. The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term,

which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel.

Relief Requested: The claim should be disallowed.

Claim 28 – Bild Credit LLC

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 29 – Autonomous Drone Solutions d/b/a Calaway Solutions

Grounds for Objection: The Movant asserts that the amount claimed is grossly inflated and not supported by the documentation. A claim for $2,500,000.00 appears inconsistent with a payment of $100,000.00 toward a $667,000.00 loan. There is no basis for the excess amount, and no documentation supports the $2.5MM figure. Under 11 U.S.C. § 502(b)(1), claims must be grounded in enforceable obligations, which this claim is not. See Fed. R. Bankr. P. 3001(f). The Movant also notes the creditor's abusive behavior toward Debtor's counsel, which has been noted on the record.

Relief Requested: The claim should be disallowed.

Claim 35 – Springer Farms Landholdings

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement.

The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 36 – Darnell Development

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and

the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 37 – Business Live Global USA

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). This claim also improperly includes $5,000 in software fees paid to ZOOMERAL Inc., a separate legal, now dissolved entity. These fees were explicitly non-refundable and outside the scope of any refundable obligation. To

the extent the claim seeks reimbursement of those fees, it is disallowed under 11 U.S.C. § 502(b)(1).

Relief Requested: The claim should be disallowed.

Claim 38 – Log Cabin Building

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 39 – West Palm Holdings

Grounds for Objection: The Movant asserts that this claim is not enforceable because the claimant received a loan from the Debtor and subsequently defaulted. The loan proceeds received by the claimant exceed any payments made back to the Debtor, and there is no basis for seeking a refund or further distribution. Attempting to recover additional funds under these circumstances is impermissible. See *In re First NLC Fin. Servs.*, LLC, 396 B.R. 562, 571 (Bankr. S.D. Fla. 2008). This claim also improperly includes $5,000 in software fees paid to ZOOMERAL Inc., a separate legal, now dissolved entity. These fees were explicitly non-refundable and outside the scope of any refundable obligation. To the extent the claim seeks reimbursement of those fees, it is disallowed under 11 U.S.C. § 502(b)(1).

Relief Requested: The claim should be disallowed.

Claim 42 – North Haven Lodging Partners

Grounds for Objection: The Movant asserts that this claim is not enforceable because it arises from a pending federal lawsuit filed against the Debtor (Case No. 1:2023-cv-16264). The Movant is informed and believes this litigation was commenced in violation of a binding arbitration clause. The claim appears to seek unsubstantiated damages and legal fees. A claim for such damages may not be allowable under bankruptcy law. The claimant initiated a federal lawsuit against the Debtor after refusing to honor an agreement requiring arbitration and disregarding efforts made in good faith to resolve the matter through proper

dispute resolution channels. The claimant baselessly alleged fraud without evidentiary support and engaged in threatening and harassing email communications. These actions forced the Debtor to incur thousands of dollars in unnecessary legal defense costs and contributed directly to the filing of this bankruptcy case. Such behavior violates the implied covenant of good faith and fair dealing and renders the claim unenforceable. See 11 U.S.C. § 502(b)(1); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *In re Elec. Mach. Enters., Inc.*, 479 F.3d 791 (11th Cir. 2007).

Relief Requested: The claim should be disallowed.

Claim 43 – Wallingford Lodging Partners

Grounds for Objection: The Movant asserts that this claim is not enforceable because it arises from a pending federal lawsuit filed against the Debtor (Case No. 1:2023-cv-16264). The Movant is informed and believes this litigation was commenced in violation of a binding arbitration clause. The claim appears to seek unsubstantiated damages and legal fees. A claim for such damages may not be allowable under bankruptcy law. The claimant initiated a federal lawsuit against the Debtor after refusing to honor an agreement requiring arbitration and disregarding efforts made in good faith to resolve the matter through proper dispute resolution channels. The claimant baselessly alleged fraud without evidentiary support and engaged in threatening and harassing email communications. These actions forced the Debtor to incur thousands of dollars in unnecessary legal defense costs and contributed directly to the filing of this bankruptcy case. Such behavior violates the implied covenant of good faith and

fair dealing and renders the claim unenforceable. See 11 U.S.C. § 502(b)(1);

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *In re*

*Elec. Mach. Enters., Inc.*, 479 F.3d 791 (11th Cir. 2007).

Relief Requested: The claim should be disallowed.

Claim 49 – N2N Group

Grounds for Objection: The Movant asserts that this claim must be disallowed as

unenforceable because the Debtor has no record of any relationship or transaction

with this individual or entity. Claimant's connection, if any, appears to originate

through third-party relationships (e.g., McMann), which cannot form the basis for

a valid claim against the Debtor without supporting evidence. See 11 U.S.C. §

502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 50 – WAI Holdings

Grounds for Objection: The Movant asserts that this claim must be disallowed due

to lack of privity and proof of any transaction between Claimant and the Debtor.

There is no record of any funds received by the Debtor from WAI Holdings. The

alleged claim appears to relate to another third-party relationship (McMann). See

11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claims 51 & 68 – Archer Capital Investments

>Grounds for Objection: These claims appear to be duplicative and the amounts listed are inaccurate. The only valid agreement with this claimant was a refundable Business Line of Credit Expansion Agreement in the amount of $200,000. To the extent the claim exceeds that amount, it is disallowed under 11 U.S.C. § 502(b)(1) and Fed. R. Bankr. P. 3007. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3007.

>Relief Requested: The claim should be reduced to $200,000.00 or disallowed in full if duplicative.

Claim 52 – Seiler Tucker

>Grounds for Objection: The Movant asserts that this claim must be disallowed as unenforceable and duplicative. Despite repeated good faith efforts by the Debtor to invite this creditor to join the creditor list and assert claims directly against the Debtor—where funds were actually received—the Claimant refused and instead pursued litigation against a legally separate entity (Case No. 2:2023-c-07288). Claimant obtained a default judgment in that separate matter solely because the Debtor lacked the financial ability to retain counsel, not due to merit. Now, the same Claimant is appearing in the bankruptcy case of the actual recipient of the funds, attempting to assert recovery again. This constitutes improper claim splitting and could result in double recovery, which is barred under established principles of equity and due process. Further, the Claimant's inconsistent conduct—rejecting standing when invited, then asserting it opportunistically—

undermines the credibility of the claim. The default judgment against a third party cannot serve as prima facie evidence against the Debtor, who was not a party to that proceeding. See *Heiser v. Woodruff*, 327 U.S. 726 (1946); *FDIC v. Daily*, 973 F.2d 1525, 1529 (10th Cir. 1992).

Relief Requested: The claim should be disallowed.

Claim 55 – Onsite Lifecare

Grounds for Objection: The Movant asserts that the only valid agreement with this claimant was a refundable Business Line of Credit Expansion Agreement in the amount of $97,500. To the extent the claim exceeds that amount, it is disallowed under 11 U.S.C. § 502(b)(1) and Fed. R. Bankr. P. 3007. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3007. The claim is also barred because the Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be reduced to $97,500.00 or disallowed in full.

Claim 57 – Ameiva

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any

right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement. The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 58 – Limitless Investments Group

Grounds for Objection: The Movant asserts that this claim must be disallowed under 11 U.S.C. § 502(b)(1) as there is no record of any relationship between this entity and the Debtor, and the claim is wholly unsupported. No transaction, payment, or communication has been identified, and the Debtor has never interacted with this individual or entity. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be disallowed.

Claim 59 – H&M Essential Services

Grounds for Objection: The Business Expansion Line of Credit Agreement permits a refund of capital contributed, but this claim improperly includes $5,000

in software fees paid to ZOOMERAL Inc., a separate legal, now dissolved entity. These fees were explicitly non-refundable and outside the scope of any refundable obligation. To the extent the claim seeks reimbursement of those fees, it is disallowed under 11 U.S.C. § 502(b)(1). See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f).

Relief Requested: The claim should be reduced by $5,000.00.

Claim 64 – McMann Commercial Lending

Grounds for Objection: The Movant asserts that this claim must be disallowed under 11 U.S.C. § 502(b)(1) because it is duplicative of, and seeks recovery for, the same alleged losses asserted by McMann's underlying customers. McMann Commercial Lending was a third-party white-labeler and reseller, not a direct customer of the Debtor. McMann facilitated relationships between its customers and the Debtor, receiving referrals and fees, while the Debtor provided wholesale lending services. McMann is not entitled to recover any amount from the Debtor, and allowing McMann to recover while its customers also pursue claims would constitute impermissible double recovery or double counting against the estate. Bankr. Doc. 558 and Bankr. Doc. 559 further establish that McMann has been actively transferring its claim (Claim 64) to third parties, including to Wallingford Lodging Partners LLC (Claim 43) and North Haven Lodging Partners LLC (Claim 42), as documented in Bankr. Doc. 558 and Bankr. Doc. 559. McMann is treating the claim around like an asset and has already sold or transferred it to at least one of its underlying customers. This creates an even more egregious double-counting scenario: McMann's customers (Wallingford and North Haven)

are now in possession of McMann's claim against the estate, while also pursuing their own direct claims. Under Fed. R. Bankr. P. 3001(f), any prima facie validity is rebutted by the evidence showing that McMann was not the direct contracting party and that the claim duplicates losses already asserted by its underlying customers. Either McMann's claim is valid, or its customers' claims are valid—it cannot be both. To the extent McMann seeks reimbursement or contribution for customer losses rather than its own direct, enforceable claim, the claim is also subject to disallowance under 11 U.S.C. § 502(e)(1)(B) if the statutory requirements are met.

Relief Requested: The claim should be disallowed in its entirety. In the alternative, the Court should require McMann to prove that its claim is not duplicative of claims asserted by its underlying customers and that no double recovery will result.

Claim 71 – 20 Twenty Development

Grounds for Objection: The Movant asserts that this claim is not enforceable under applicable law because it arises from a non-refundable fee agreement. The Intercreditor Agreement (Exhibit C of all Bridge Loan Agreements) explicitly states in Article 2, Section 2.03(b) that the payment made by the Borrower is "fully non-refundable." The creditor, with full understanding of these terms, executed the agreement, accepted funds accordingly, and knowingly waived any right to request a refund. Despite the clear language of the agreement, the claimant now seeks a refund in violation of the express contractual terms. Additionally, the creditor failed to fulfill their contractual obligations to extend the loan term, which was a precondition to asserting any right to reimbursement.

The Lender complied in full with the Bridge Loan Agreement, and no default or breach was committed by the Debtor. As such, the claim should be disallowed in its entirety under the doctrine of express waiver and estoppel. The Due Diligence Fee Agreement explicitly states that the payment is "100% non-refundable," and the claimant acknowledged this in writing. See 11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3001(f). Additionally, this claim should be disallowed as untimely. The creditor failed to update its mailing address with the Debtor prior to the commencement of the bankruptcy case. The Debtor properly listed the creditor and served notice to the address on file. Any failure to receive notice was due to the creditor's own inaction, not the fault of the Debtor. Courts routinely hold that a creditor's neglect to update its address does not constitute excusable neglect. See *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380 (1993); 11 U.S.C. § 502(b)(9).

Relief Requested: The claim should be disallowed.

## III. LEGAL BASIS FOR OBJECTIONS

6. A proof of claim filed under 11 U.S.C. § 501 is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f).] A properly executed and filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f).]

7. The Bankruptcy Code expressly requires disallowance of a claim to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).] State law generally determines whether the asserted obligation is

enforceable, unless a specific Bankruptcy Code provision provides otherwise. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007).]

8. The Supreme Court has long recognized that bankruptcy courts have broad equitable power to examine claims asserted against the estate and to disallow claims that lack lawful existence. *Pepper v. Litton*, 308 U.S. 295, 305 (1939).] The Eleventh Circuit likewise recognizes that the bankruptcy court must look to the substance of the asserted obligation and may disallow claims not enforceable under applicable law. *In re Optical Techs., Inc.*, 425 F.3d 1294 (11th Cir. 2005).]

9. Once an objecting party produces evidence sufficient to rebut the prima facie validity of the proof of claim, the burden shifts back to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 696 (11th Cir. 2005); *In re All-Am. of Ashburn, Inc.*, 835 F.2d 1545, 1548 (11th Cir. 1988).

10. A proof of claim unsupported by adequate documentation, or one that is facially inconsistent with the operative agreement or other record evidence, may be disallowed or reduced. Fed. R. Bankr. P. 3001(c); *In re Taylor*, 363 B.R. 303, 312 (Bankr. M.D. Fla. 2007).

11. To the extent any claim seeks amounts already included in, duplicative of, or inconsistent with claims asserted by other creditors or affiliates for the same alleged loss, the Court should disallow the duplicative portion to prevent double recovery against the estate. *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689 (11th Cir. 2005); *In re Motors Liquidation Co.*, Claim Nos. 28026, 18838 (Bankr. S.D.N.Y. 2010).

12. Equity holders are "parties in interest" with standing to object to claims because allowance of claims directly affects the size of the estate, the distribution waterfall, and the holder's residual recovery. 11 U.S.C. § 1109(b); *In re Bay Circle Props., LLC*, 955 F.3d 874 (11th Cir. 2020).

13. In a chapter 7 case, an equity holder has standing to object where there is a reasonable

possibility of a surplus or where the objected-to claim may affect the holder's residual economic interest; a party in interest need not be a creditor to object. 11 U.S.C. § 502(a); 11 U.S.C. § 1109(b); *In re Globe Mfg. Corp.*, 567 F.3d 1291 (11th Cir. 2009).

14. The Debtor's objection is therefore proper because the objecting party is a party in interest with a direct pecuniary stake in the allowance of the challenged claims, and each challenged claim must independently satisfy the requirements of enforceability, amount, and documentation under the Bankruptcy Code and applicable non-bankruptcy law.

## IV. ADDITIONAL OBJECTION REGARDING REPRESENTATION OF NON-INDIVIDUAL CLAIMANTS

15. The Movant further objects to the claims identified below on the ground that they are filed by claimants that are not natural persons—including corporations, limited liability companies, partnerships, and trusts—yet are not represented by licensed counsel authorized to practice before this Court.

A. Local Rule 1074-1 Requires Attorney Representation

16. Under Middle District of Florida Local Rule 1074-1(B), "[a]ny corporation which maintains an action in this Court under any chapter of the Bankruptcy Code or appears before the Court in any manner must be represented at all times by counsel". This rule applies to "any entity other than an individual, including but not limited to a corporation, limited liability company, partnership, or trust".

17. The requirement serves to protect the integrity of judicial proceedings, as "a non-lawyer layperson may not engage in the unauthorized practice of law by representing another

person in court pro se". This rule has been consistently enforced across federal courts, with the Tenth Circuit holding that "a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se".

B. Unequal Application of Local Rule 1074-1 and the "Ponzi Scheme" Narrative

18. To date, this Court and the Chapter 7 Trustee have required compliance with Local Rule 1074-1 only as to the equity holders of the Debtor and its affiliates, while permitting numerous non-individual claimants to assert claims against the estate without the required licensed counsel. These claimants have not formally appeared before the Court through counsel; however, many have filed motions and responses pro se, and several have entered into agreed orders with the Trustee off the record, without any judicial adjudication of the merits of their claims. The Movant has not received notice of these settlements or the agreed orders that have resulted from them in violation of the Bankruptcy Rules. Meanwhile, the Movant's pro se filings have been struck for failure to comply with the Local Rule, while the same rule has not been applied uniformly to non-individual claimants. This selective application of Local Rule 1074-1 is inequitable and prejudicial to the Movant and the estate.

19. The disparate treatment appears rooted in a false narrative. The Trustee admitted to citing the "Bernie Madoff case" against the undersigned without any factual finding of fraud (Doc. 389 at 46:14-20). This comparison is a stark mischaracterization of the Debtor's operations and is being used to justify prejudicial procedural actions. The facts demonstrate the Debtor is the antithesis of Madoff.

a. Madoff reported false profits to investors for decades while never making an

investment, generating fictitious 1% monthly gains on fake statements. In stark contrast, the Debtor provided services to its borrowers by making actual loans, not every borrower was satisfied, but the Debtor operated within the bounds of its contracts. The Debtor expressly informed borrowers in writing whether their payment was refundable or non-refundable and included a force majeure provision in the contract for any capital provider's failure.

b. Madoff was the ponzi scheme who didn't register with the SEC to avoid public reporting obligations. The undersigned was investigated by various authorities; no charges have been filed, and the Debtor proactively discovered and reported a ponzi scheme and the actions of Scott Oh through counsel to the proper authorities. The Debtor then filed bankruptcy to maximize creditor return of capital while reporting all loans on its schedules. Madoff went to prison for 150 years. The contrast is unmistakable.

20. The selective enforcement of Local Rule 1074-1, motivated by this baseless comparison, prejudices the estate and the Movant. The Court cannot use a procedural rule to punish an individual while allowing unrepresented claimants, who are engaging in tortious conduct and pursuing inflated claims, to benefit from the estate. This is inequitable and contrary to the fundamental principles of due process.

## C. Stringer's own filings confirm Movant's standing.

21. On June 24, 2026, in Adversary Proceeding No. 3:26-ap-00063-BAJ, Plaintiffs Charles Blake Stringer and Nutra-Acres, LLC filed a Response to the Trustee's Motion to Dismiss (Doc. 13). In that filing, Stringer explicitly admitted that a Ponzi scheme declaration "may be useful to Plaintiffs should they bring personalized claims in this or in any forum against the Debtor or its principals or its associates, whomever they may be." This is a

written admission that Stringer intends to use this litigation against the principals of the Debtor — including John Michael Cohan. Stringer cannot have it both ways. He cannot threaten to sue Mr. Cohan personally while simultaneously Mr. Cohan has no right to object to claims that would fund that very litigation. The Trustee cannot claim Mr. Cohan lacks standing while Stringer openly targets him. This confirms Mr. Cohan is a party in interest with a direct personal stake in the allowance of these claims, and the Court cannot adjudicate Stringer's requested relief — or the claims that would underwrite it — without affording Mr. Cohan due process.

22. Stringer's position is particularly untenable given his own conduct. Stringer now seeks to recover funds that are expressly non-refundable under the written agreements he knowingly executed. He "bets the farm" on a litigation strategy premised on allegations of fraud—a theory this Court has yet to find any factual basis for—while simultaneously leveraging other lenders' capital without informing the Debtor of the true nature or source of those funds. Stringer cannot now claim victimhood from the very contractual terms he voluntarily accepted and the very funding structure he actively participated in. His selective memory of the agreements and his attempt to retroactively recharacterize a failed business gamble as a "Ponzi scheme" does not transform a claim [in extreme excess] of a non-refundable fee into a recoverable loss. To allow Stringer to profit from his own speculative bet—while denying Mr. Cohan, who has no such contractual waiver, the right to be heard—would be fundamentally inequitable and would reward bad faith conduct under the rules. The Court has authority under 11 U.S.C. § 105(a) to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code and to prevent abuse of process. See *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-13 (1995)

(recognizing the bankruptcy court's authority to enter an injunction affecting proceedings related to the bankruptcy case). That authority, however, does not permit the Court to contravene specific provisions of the Code. See *Law v. Siegel*, 571 U.S. 415, 421-22 (2014).] Accordingly, § 105(a) is properly invoked here only to the extent it is consistent with the Code and the relief sought does not override any specific statutory limitation.

## V. PROCEDUAL STATEMENT REGARDING EXHIBITS AND SUPPORTING EVIDENCE AND LEGAL NOTE REGARDING LACK OF NOTICE AND RIGHT TO APPEAL

23. The Movant has included references to certain facts and documents in the objections above. The Movant is prepared to provide all evidentiary materials, including copies of agreements, correspondence, bank records, and court documents, at the hearing on these objections, should the Court determine one is necessary. The Movant has not attached these exhibits at this time to avoid any burden on the Clerk of Court and to streamline the initial review of the objections. The Movant will provide all supporting documentation to the Court, the Trustee, and any affected parties in compliance with the Court's scheduling and discovery orders. The Movant understands that he bears the initial burden of producing some evidence to rebut the prima facie validity of a claim. See *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 702 (11th Cir. 2005); Fed. R. Bankr. P. 3001(f). This evidence will be presented at the appropriate time.

24. The Movant has not received notice of any settlements or agreed orders entered into between the Chapter 7 Trustee and non-individual claimants. The Movant is a party in interest and equity shareholder of the Debtor and is entitled to notice of any settlements affecting the estate. Fed. R. Bankr. P. 2002(a)(3) requires that notice be given to all

creditors and parties in interest of a hearing on approval of a compromise or settlement, unless the Court for cause shown directs otherwise.

25. An agreed order entered without proper notice to a party in interest may be void under Fed. R. Civ. P. 60(b)(4), made applicable by Fed. R. Bankr. P. 9024, for violation of the due process clause of the Fifth Amendment. The Supreme Court has held that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). A judgment or order entered without constitutionally adequate notice may be void. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

26. The Movant reserves the right to challenge any order entered without proper notice to him. A motion under Fed. R. Civ. P. 60(b)(4) and Fed. R. Bankr. P. 9024 must be brought within a reasonable time, but the reasonable-time inquiry is measured in light of when the movant learned of the order and whether the movant acted diligently thereafter. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010); Fed. R. Civ. P. 60(c)(1). The Movant states that any such challenge would be timely if brought within a reasonable time after actual notice of the order.

27. The Movant therefore reserves all rights to challenge any agreed orders, settlements, or compromises entered without proper notice to him, including the right to file a motion under Fed. R. Civ. P. 60(b)(4) and Fed. R. Bankr. P. 9024 within a reasonable time after learning of such orders.

## VI. REQUEST FOR RELIEF

WHEREFORE, the Movant, John Michael Cohan, a protected person, a party in interest and equity shareholder of the debtor, specially appearing pro se, solely for his personal interests, respectfully requests that this Court:

    i. Sustain the objections and disallow the claims listed above to the extent they are unenforceable or unsupported under 11 U.S.C. § 502(b).

    ii. Schedule a hearing to resolve factual disputes relating to these claims, if necessary.

    iii. Grant such other and further relief as the Court deems just and proper.

## VII. VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing objections, and the facts alleged therein are true and correct to the best of my knowledge, information, and belief.

Dated: 07-06-2026

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system, U.S. mail and/or email.