FILED INTAKE USBC
AUG 18 '26 AM9:53

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

**VERIFIED REPLY TO UNITED STATES TRUSTEE'S RESPONSE TO MOTION TO MODIFY OR RESCIND ORDER TO SHOW CAUSE (BANKR. DOC. 648)**

COMES NOW John Michael Cohan, protected person, *pro se*, and hereby files this Reply to the United States Trustee's Response (Bankr. Doc. 648) responding to the undersigned's Verified Motion to Modify or Rescind Order to Show Cause (Bankr. Doc. 617). The undersigned was never served with this pleading. It was filed the day before a relevant hearing in a separate division.

I. LACK OF SERVICE — THE UNDERSIGNED WAS NEVER SERVED

1-A. The Certificate of Service in Bankr. Doc. 648 states that the undersigned was served via CM/ECF as a *pro se* party receiving electronic notice. Unless electronic service was authorized by applicable rule, court order, or consent, service through CM/ECF may not establish proper service on a *pro se* party who was not registered for electronic notice. Fed. R. Civ. P. 5(b)(2)(E) Fed. R. Bankr. P. 9036. Due process requires notice reasonably calculated, under the circumstances, to apprise an

interested party of the proceeding and afford an opportunity to present objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)

1-B. The undersigned has previously objected to the Chapter 7 Trustee's filing of two (2) unauthorized replies in violation of the Court's briefing order (Bankr. Doc. 361) serving only to confuse, delay, and burden the process. See *United States v. Flynn*, 411 F. Supp. 3d 15, 34 (D.D.C. 2019). That objection remains unaddressed and is just one of the many procedural irregularities documented in this matter. The U.S. Trustee's filing of Bankr. Doc. 648 the day before the Fort Myers hearing—without proper service—is part of this same pattern: filing pleadings outside the established procedural framework to prejudice the undersigned and shield the Trustees from scrutiny. This coordinated conduct—the Chapter 7 Trustee filing two (2) unauthorized replies outside the Court's orders and most recently the U.S. Trustee filing a response without service—demonstrates a systemic disregard for the Court's rules and the undersigned's due process rights.

2. This is demonstrably false. The undersigned does *not* have electronic filing privileges in this case. The undersigned's name is not listed on the Certificate of Service. The United States government has the undersigned address on file on paperwork from various court houses, without the undersigned ever providing it to them, have made it into the undersigned's mailbox. The United States government has also sent agents to the undersigned's house unannounced on June 17, 2025. The

undersigned does not understand nor does he attempt to try to understand the United States Government's frivolous position in this particular instance considering the circumstances. Additionally, please see *Cohan v. Bomkamp et al*, 1:25-02009's docket, incorporated by reference, the District Court redacted the undersigned's address from the docket without requesting a sealed address because the Court allegedly recognized the seriousness of the matter.

3. Besides, the undersigned has repeatedly requested service by email. Raye Elliott has been serving the undersigned by email (Bankr. Docs. 348, 595, 596).

Bankruptcy Document 348 reads as follows:

"CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the (i) Notice of Evidentiary Hearing (Doc. 345) and (ii) Notice of Evidentiary Hearing (Doc. 346) were served via CM/ECF after the docketing to all creditors and parties-in-interest who have consented to receiving electronic notifications in this case, and on March 27, 2025, by electronic mail to the following who consented in writing to receive service of pleadings at the email address listed below:

John Michael Cohan
iustusprocessus@outlook.com...

Dated: March 27, 2025

AKERMAN LLP
By: /s/ Raye C. Elliott
Raye C. Elliott, Esq.
Florida Bar Number: 018732
Email: raye.elliott@akerman.com
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Phone: (813) 223-7333
Fax: (813) 223-2837
Attorneys for Aaron R. Cohen, Chapter 7 Trustee"

The United States Trustee, along with any alleged creditor, should be capable of doing the same. Instead, they used the undersigned's alleged withholding of his address (for the safety of his minor daughter and himself) as if it were some sort of civil breach, but it was more likely used as an excuse to prejudice the undersigned without providing him proper service.

4. The undersigned was not served with Bankr. Doc. 648. It was filed the day before the hearing in the Fort Myers Division 2:26-mp-00001 and fifty (50) days after the original motion (Bankr. Doc. 617) was filed on or around June 22, 2026. The Court should therefore determine whether Bankr. Doc. 648 was served in accordance with Fed. R. Bankr. P. 9014(b) and Fed. R. Bankr. P. 7004 and whether the timing of service provided a meaningful opportunity to respond. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

5. The undersigned has never been granted electronic filing privileges in this case. The Court should know this. The Trustee seems to know this. The United States Trustee should know this.

6. The undersigned has been filing without an address because his address was sealed by two (2) other judges in this same district, one civil state judge and one civil federal as he has an active restraining order (New Jersey Camden County Superior Court, FV-04002494-22, and Jacksonville Sheriff's Order of Protection Affidavit executed by Jacksonville Police Officer Maurice Green #73983 and the

undersigned, *attached* and incorporated by reference) with an active warrant pending per a criminal Florida state judge for an alleged violation of that restraining order during the April 17, 2024 §341 meeting allegedly facilitated by the United States Trustee after witnessed and sworn to in-person notice of the active order. The undersigned has been filing with an email address — which is faster than mail service — yet that email address is seemingly consistently ignored. The undersigned fears for his life and his minor child's life from his abuser and now the United States Trustee Program. A qualifying protection order is generally entitled to full faith and credit in other jurisdictions. 18 U.S.C. § 2265(a).

7. And to make matter far worse, the undersigned was railroaded — not intentionally by the Honorable Judge Rivera, but by the United States Trustees' alleged false certificate of service. The Honorable Judge Rivera asked a question based on a filing he presumably assumed had been properly served. The undersigned had no idea what the Honorable Judge Rivera was referring to because he had never seen Bankr. Doc. 648 prior to the hearing. The undersigned had never been served with it. The certificate of service appears inconsistent with the undersigned's assertion that he was not registered for electronic notice and did not receive Bankr. Doc. 648. The Court should determine whether electronic service was authorized under Fed. R. Civ. P. 5(b)(2)(E) or Fed. R. Bankr. P. 9036 and whether the alleged service satisfied due process. See *Mullane v. Central Hanover*

*Bank & Trust Co.*, 339 U.S. 306, 314 (1950) — even though the undersigned has never had electronic filing privileges in this case and the undersigned's name, or email address (iustusprocessus@outlook.com) was not listed on the certificate. In other words, a response that specifically involved the undersigned was filed without service, one (1) day before a hearing in a separate division. The court record of the Honorable Judge Rivera August 12, 2026 hearing will confirm that the undersigned had no knowledge of Bankr. Doc. 648 until it was mentioned during that hearing. That is not a failure of the Honorable Judge Rivera. That is an alleged failure of the United States Trustee. The alleged procedural gamesmanship continues…

8. Again, the undersigned never received Bankr. Doc. 648. The undersigned learned of its existence during the August 12, 2026 hearing. Fair and impartial? Hardly. The "watchdog"? Maybe in some other case, but not in this one. The undersigned is a protected person with an active restraining order. Immediately after the April 9-10 trial (Before the April 17, 2024 §341 meeting), the undersigned explicitly told the United States Trustee not to let the abuser speak or participate. Despite this, the United States Trustee permitted the abuser to speak for approximately five (5) minutes. The undersigned invoked his rights and stated that he "would have a lawsuit if this were allowed to continue." The United States Trustee respondsed, "Alright alright alright" and ended the call moments later.

[When Mr. Bomkamp repeats "Alight alright alright", this is where the undersigned contends that the spoliation occurred as multiple voices were all cut off at the same exact moment.] And now the United States Trustee is now demanding the undersigned's address—while refusing to properly serve the undersigned by email, which the undersigned has repeatedly requested and the Chapter 7 Trustee has acknowledged. The undersigned fears for his and his minor child's safety. The undersigned is not required to provide his address to a party that facilitated the violation of a restraining order, altering the audio to cover it up, especially when that same party is demanding it while refusing to serve the undersigned by the email address already on the record while labeling the undersigned with words like "vexatious" and "frivolous" without any evidentiary support and doing so the day before an extra-judicial hearing. See 18 U.S.C. § 2265(a); Fed. R. Civ. P. 5(b)(2)(E); Fed. R. Bankr. P. 9036.

I. THEY HAVE NO STANDING ARGUMENT — THE NUMBERS ARE FABRICATED

9. The United States Trustee claims the undersigned lacks standing based on equity interest because there is no surplus.

10-A. That argument is based on fabricated numbers, i.e. Claim 5-3 is a ~$14+ million claim for a $385,000 payment; Claim 4 is a $3 million claim for a $70,000

payment. These are not real numbers according to the governing agreements (Please see Bankr. Doc. 513, incorporated by reference).

10-B. The Trustees' fabricated numbers are part of a broader pattern. The genesis of this case's fraud narrative was built on misrepresenting the Examiner's speculative report—which used the word "potential" multiple times in two (2) key paragraphs (Bankr. Doc. 146, Lines 233-234)—as a finding of actual fraud. This was contradicted by the sworn declaration of a former FINRA enforcement attorney (Bankr. Doc. 34 at 100-104), who concluded the U.S. Trustee had "invented" fraud findings. This fabricated narrative, coupled with the systematic suppression of evidence—including the removal of the police report (Bankr. Docs. 406, 470) and the alteration of the §341 meeting audio (Bankr. Doc. 501, Ex. 1)—directly undermines the U.S. Trustee's claim that there is no surplus for the undersigned. They are pretending the evidence and governing agreements do not exist to manufacture a lack of standing.

11. If all the double counting is removed from McMann customers or by McMann's claim (#64), the claims come down to approximately $17 million. After the objection process, based on Mr. Hughes' personally bankruptcy (Central District of Illinois, 25-70566, incorporated by reference) many claimants have engaged in what constituted as an unauthorized practice of law or they simply did not respond, thus, the objection to their claim was allowed, or soon will be. The

undersigned expects this to be the case in this corporate bankruptcy as well, which will significantly reduce the claims allowed, if any.

12. Additionally, Trustee admits $1,771,555.74 in the ZOOMERAL judgment. But the undersigned has documented and informed the Chapter 7 Trustee ~$1.9 million in earned income by ZOOMERAL. The math is clear: ~$1.9 million minus ~$1.7 million equals a surplus of ~$.2 million or ~$200,000. This is basic arithmetic paired with the governing agreements (Please see Bankr. Docs. 513; & 646 for samples of the governing agreements).

13. Many agreements are non-refundable. If the non-refundable claims are disallowed, the total viable claims come down to approximately $9 million.

14. The undersigned, on behalf of the Debtor, walked into this case with a $15 million settlement agreement with Velanos Principal Capital, which resulted in a $20 million judgment due to the express language in that settlement agreement. The undersigned also came to the table pursuing Scott Oh and Warren Law Group for their legal malpractice, which resulted in a contingent $435,000 settlement offer based on a "non-appealable order" agreed to by the Chapter 7 Trustee. There is $4 million in loans — or ~$1.8 million that the Trustee admits. Either way, with the double counting eliminated, a potential reasonable surplus exists despite any

potential failure to collect by the Chapter 7 Trustee. The Chapter 7 Trustee or any "Trustee" cannot manufacture a claim amount to block the undersigned's standing.

15. The United States Trustee and the Chapter 7 Trustee seem to be pretending the agreements do not exist. The governing agreements do not support the "customer funds" narrative — no "trust" language, no "escrow", no "deposits".

16. The undersigned has standing as a 50% equity shareholder, a protected person with an active restraining order that was allegedly violated during these proceedings, and a person not named but obviously referred to as a "principal of the Debtor" in the frivolous Stringer adversary proceeding (2:26-ap-00063, incorporated by reference), which was voluntarily withdrawn one (1) day before, August 17, 2026, the Claim #5's hearing date, August 18, 2026.

III. THE "VEXATIOUS" NARRATIVE IS FALSE

17. At the time of the Order to Show Cause (Bankr. Doc. 347), there were exactly eight (8) filings between two (2) people over seven and one half (7.5) months — one (1) filing every fifty-six (56) days on average, hardly a "flurry of filings." The United States Trustee and Chapter 7 Trustee both call the undersigned's filings (Bankr. Docs. 617, 622), filings that any party has the right to file, the "Vexatious Litigant Motion," which is in and of itself vexatious as their filings are not based in any law or supportable facts other than the number of filings being made.

18. The Chapter 7 Trustee first counted one hundred twenty-two ("122") (Bankr. Doc. 624) filings then one hundred twelve ("112") (Bankr. Doc. 645) — but that includes responses to the Chapter 7 Trustee's own motions. The Trustee is counting the undersigned's responses to their own conduct as if the undersigned initiated it. It also seemingly includes filings that were court-ordered (Bankr. Doc. 317). The Court should therefore consider the nature, purpose, and disposition of each filing—not merely the aggregate number of docket entries—before imposing any filing restriction. See *Procup v. Strickland*, 792 F.2d 1069, 1074–75 (11th Cir. 1986) (*en banc*).

19. They call me “vexatious.” “Frivolous.” “A conspiracy theorist.” Labels. Just labels. "Vexatious" means without merit. But the undersigned has a police report. A warrant. A flatline in the waveform of the audio of the April 17, 2024 §341 meeting. A sworn declaration from a former Financial Industry Regulatory Authority (FINRA) (which operates under the supervision of the Security Exchange Commission (SEC) whose primary role is investor protection and market integrity through rulemaking, enforcement, examinations, and dispute resolution) enforcement attorney, who routinely investigated fraud (Bankr. Doc. 34 at pg. 100-104), whose legal conclusion after the examiner report (Bankr. Doc. 146) surfaced was that the 'United States Trustee fabricated allegations nowhere in the report or in the record' (paraphrased, (1:25-cv-02009, ECF No. 29, Ex. II,

incorporated by reference)). "Frivolous" means legally baseless. But the undersigned cites agreement provisions, case law, and the multiple court records. "Conspiracy theory" implies no evidence. But the undersigned has dates, docket entries, timeline, and in one instance, three (3) jurisdictions moving against the undersigned all within a forty-eight (48) hour period. That's not a conspiracy theory. That's an alleged documented pattern. And the timeline, or at least part of the timeline, is on the public record (Eastern District of Louisiana, 2:23-cv-07288, Doc. 46, incorporated by reference). Furthermore, as stated earlier, the undersigned contends that the "flurry of filings" (Bankr. Doc. 347) was never real and that it is an alleged narrative to justify the alleged suppression of the undersigned's rights in this case.

## IV. THE DECEMBER 16, 2025 — THE SMOKING GUN NOT TO BE IGNORED

20. On December 16, 2025, the undersigned's Emergency Motion to Vacate Conversion for Fraud on the Court (Bankr. Doc. 501) was struck (Bankr. Doc. 506) moments before the hearing. The undersigned walked into the hearing with no live motion expecting to raise the issue.

21. In response to the procedural gamesmanship, allegedly being played by the Trustees and this Court, the undersigned filed disqualification motions (Bankr.

Docs. 507, 508, 509) immediately before that same hearing — naming Scott Bomkamp, Raye Elliott, Bryan Mickler and Aaron Cohen as material witnesses to the Judge Jason Calhoun to the alleged *pre*-petition ex parte meeting admitted to this Court by Mr. Mitchell Mims in writing (Bankr. Doc. 342 at 3, incorporated by reference) in regards to a case in Alabama that was pending at the time (2:25-cv-00742, incorporated by reference) and is now currently on appeal (26-10943-F, incorporated by reference).

22. At that December 16, 2025 hearing, Judge Burgess said: "We're only going to talk about what's on the record today" (paraphrased). The Court allegedly preemptively refused to hear the disqualification motions. The undersigned accepted that decision as part of the pattern he is alleging, said "Okay" in response and left after the hearing concluded.

23. That very same day — December 16, 2025 — the Magistrate Judge in the Middle District of Alabama issued her Report and Recommendation to dismiss the Calhoun case (2:25-cv-00742, Doc. 69, incorporated by reference). The undersigned contends that was so this Court could strike the filings (Bankr. Docs. 530, 531, 532) without addressing the merits, once again, as the Alabama case had been closed on the Magistrate's recommendations by the District Judge.

24. Two (2) jurisdictions. One (1) day. Another coordinated instance. No phone call or email necessary. Just procedural gamesmanship across the 11th Circuit, two (2) states away. The United States Trustee did not include this case in Bankr. Doc. 648 like the Chapter 7 Trustee did (3:25-cv-01398, Doc. 28 and 2:26-mp-00001, Doc. 19, incorporated by reference), because they don't seem to be able to defend against the underlying [completely ignored] allegations of an admitted *pre*-petition ex parte meeting.

V. THE OTHER CASES ALL STEM FROM THIS ONE

25. The United States Trustee cites the undersigned's filings in other jurisdictions as evidence of "vexatiousness".

26. Yet, all of those filings stem from or are related to this case. The police reports, the two documents removed from the docket and one clean copy (with redactions of private information) (*attached*, for the record once again) that were allegedly removed twice (Bankr. Docs. 406-3, 470-1). The spliced audio (*attached*, for the record once again). The retaliatory bar order (Bankr. Docs. 470, 471, incorporated by reference). The alleged ex parte contact, the one admitted by Mr. Mims (Bankr. Doc. 342 at pg. 3, incorporated by reference) and a voicemail transcript (*attached*, for the record once again) from the Jacksonville Court Clerk, stating it was 'imperative' that the undersigned calls the Court back on the same day the alleged

retaliatory bar order was issued, for which the undersigned declined to engage due to his belief the phone call was simply made to intimidate the undersigned. The strike orders (Bankr. Docs. 240, 442, 446, 447, 457, 458, 506, 530, 531, 532. 536, 602, 603, 631, incorporated by reference), all from this case. All alleged misconduct and procedural manipulation by licensed professionals, including but not limited to attorneys, trustees, clerks and judges, across at least four (4) federal jurisdictions, incorporated by reference. This response from the trustees should be no surprise to this Court or any reasonable person that understands the dynamic the bar association creates when one of their own is under the microscope despite the law forbidding it.

27. The undersigned has only "expanded to" the DC Circuit jurisdictions because one, he believed that he could not get a fair hearing in this district, two, it's a separate personal claim, not a corporate one and three, it's within his rights to petition the government and to be free from any alleged retaliatory acts, including but not limited to, the ones stated herein and Bankr. Doc. 648. Considering the United States Trustee Program's headquarters are based in DC the undersigned believes that he lawfully filed there.

28. It is the undersigned's opinion, upon information, including but not limited to the related court records (incorporated by reference), that the D.C. Circuit is one of the only courts completely moving in a lawful direction without any undue delay.

The Honorable Judge Moss granted IFP in twenty-four (24) hours (1:25-cv-02009, July 17, 2026 Minute Order regarding ECF No. 77, (incorporated by reference)) indicating the undersigned's claims have arguable merit while this Court repeatedly strikes the undersigned's filings in an alleged act of suppression. The Honorable Judge Moss also took judicial notice of the police report (1:25-cv-02009, Order ECF No. 73 at pgs. 8-9, incorporated by reference) unlike this Court in an additional act of alleged suppression by removing it from the record. The DC proceeding is currently on appeal (26-5269, incorporated by reference).

29. This is also important because at the Honorable Judge Rivera August 12, 2026 hearing, Mr. Scott Bomkamp — the United States Trustee — claimed he "did not know anything about a police report". But the Honorable Judge Moss took judicial notice of that same police report in *Cohan v. Bomkamp*, Case No. 1:25-cv-02009-RDM (D.D.C.), ECF No. 73 at pgs. 8-9, incorporated by reference). The United States Trustee cannot claim ignorance of a document that another federal judge has already acknowledged on the record. Mr. Bomkamp is either allegedly intentionally misstating the record, allegedly attempting to mislead the Honorable Judge Rivera as he has allegedly misled this Court, is allegedly willfully blind or an alleged combination thereof to protect himself personally from scrutiny for acts he himself allegedly committed. In any way, shape or form, that is evidence of the alleged bad faith and misconduct.

30. Again, this is not "vexatiousness" or "frivolousness". This is a documented pattern of alleged suppression for which this Court has seemingly endorsed. The undersigned disputes that the record supports a finding of vexatious conduct. If the Court considers restricting future filings, it should identify the specific conduct warranting relief, provide notice and an opportunity to be heard, and impose only a narrowly tailored restriction. See *Procup v. Strickland*, 792 F.2d 1069, 1074–75 (11th Cir. 1986) (*en banc*).

## VI. THE RETALIATION TIMING

31. Bankr. Doc. 648 was filed on August 11, 2026 — the day before the hearing in the Fort Myers Division (2:26-mp-00001, incorporated by reference).

32. The undersigned was not served with this pleading. It was filed to allegedly to prejudice the undersigned and allegedly mislead the Honorable Judge Rivera before the hearing in the Fort Myers Division.

33. At that August 12, 2026 hearing, the Honorable Judge Rivera noted on the record that the transfer of the underlying motion to that proceeding was not the normal course of procedure. This only underscores the prejudice caused by the undersigned being unprepared to respond to Bankr. Doc. 648, as he was forced to respond to arguments on the spot without having been served or having the ability to review the government's position in advance.

34. The undersigned understands that this Court ordered that all filings related to the Bankr. Doc. 622 motion should be filed in the miscellaneous proceeding in Fort Myers (Misc. Doc. 2). The undersigned has complied with that order and has not raised the substance of the Bankr. Doc. 622 in this filing. However, both the Chapter 7 Trustee has improperly referenced that motion in their filings—the Chapter 7 Trustee in the miscellaneous proceeding (2:26-mp-00001, Doc. 19) by repeatedly referring to the undersigned's Bankr. Doc. 622 as a "Vexatious Litigant Motion," and the United States Trustee in this main case (Bankr. Doc. 648) by echoing that same exact label to describe the undersigned's other filing, Bankr. Doc. 617. The Chapter 7 Trustee injected the "vexatious" label into the Fort Myers proceeding. The United States Trustee then brought that same label into this main case. This is the Trustees' doing, not the undersigned's. The undersigned must defend against any and all false accusations in the court record where they are raised or risk any objection or claim being waived. The undersigned is simply responding to the filings that the Trustees have placed before this Court and another.

35. During the alleged extra-judicial hearing (August 12, 2026, 2:26-mp-00001)., the Honorable Judge Rivera asked the undersigned about requiring counsel by the request through injunction by the United States Trustee Program. The undersigned had no prior knowledge of any such inclination. The undersigned had never been

told about it as the undersigned had never received Bankr. Doc. 648. The undersigned only learned of the United States Trustee's filing when the Honorable Judge Rivera mentioned it during the hearing and after independently reviewing this Court's docket. Again, the Fort Myers division court record (incorporated by reference) will confirm this.

VII. NO ATTORNEY WILL TAKE THIS CASE

36. The undersigned and/or Mr. Hughes has called around for attorneys. No attorney wants to touch this case, and the undersigned does not blame them. Before the undersigned even spoke to the United States Trustee at the April 17, 2024 §341 meeting, the United States Trustee had already filed a motion to convert the case to Chapter 7 without ever reviewing—or even requesting—the governing agreements. When asked about it, Bryan Mickler—Debtor's counsel—simply shrugged his shoulders. That alone demonstrates the alleged bad faith and coordinated effort that existed before the undersigned ever had an opportunity to participate

37. A crime potentially happened during the §341 meeting. The United States Trustee allegedly spliced the audio to remove the undersigned's invocation of rights and to mislead this Court. The police report was allegedly removed twice (Bankr. Docs. 406-3 and 470-1) without motion, notice or order in an effort to what the undersigned believes was to mislead the appellate court, by who, specifically,

the undersigned does not know, who was either instructed by the Court to do so, or acted alone. According to the Florida State Attorney's office, a Florida state criminal judge found probable cause of the alleged crime committed during the §341 meeting.

37. Raye Elliott, a licensed Florida attorney and officer of this Court, provided the undersigned copies of the original filings containing the police reports filed as Bankr. Docs. 406-1 and 470-1. She therefore knew that those documents had been filed. The docket conclusively shows that the documents were subsequently removed from the record without a motion, notice, or order authorizing their removal. Despite that knowledge, Ms. Elliott did not bring the discrepancy to the Court's attention or report it to an appropriate authority. The Court should determine whether the unexplained removal impaired the integrity of the record or the Court's adjudicatory function. See *In re Michelson*, 141 B.R. 715, 728–29 (Bankr. E.D. Cal. 1992) (discussing an attorney's duty of candor to the court and conduct that may constitute fraud on the court when it impairs the court's impartial adjudicatory function). To the extent the evidence establishes that another lawyer knowingly engaged in misconduct raising a substantial question regarding that lawyer's honesty, trustworthiness, or fitness, reporting may also be required under Fla. Bar R. 4-8.3(a).

38. No attorney, thus far, is willing to take this case because it is ugly. Because the United States Trustee is allegedly involved in covering up a crime and because no one wants the alleged retaliation the undersigned and Mr. Hughes are currently experiencing, if they one day file bankruptcy. Based on the current record, that fear is legitimate.

39. The undersigned cannot get an attorney, nor can he afford one, nor is he required to by law. And now the United States Trustee and the Chapter 7 Trustee both seemingly and conveniently want to restrict the undersigned's rights after a recusal motion (Bankr. Doc. 622) was filed. That is not justice. That's not even the appearance of justice. To the extent sanctions or restrictions are requested, the applicable standard and procedure must be identified. Bankruptcy Rule 9011 applies to representations made in pleadings, motions, and other papers and contains specific procedural requirements. Fed. R. Bankr. P. 9011(b)–(c) The injunction request is meant to silence the undersigned, not to get him heard.

40. The undersigned and Mr. David Hughes filed a motion (Bankr. Docs. 334, 335, incorporated by reference) to resign as debtor representatives to distance ourselves from the liability that the Trustees were bringing upon themselves through their own alleged misconduct. That resignation was not a relinquishment of their rights as fifty percent (50%) equity shareholders, protected persons, or parties in interest (Bankr. Docs. 334, 335, specifically Section II, incorporated by reference). It was

simply a decision to remove themselves from a representative role — not to waive their standing to object to claims, challenge misconduct, or participate in proceedings that affect their personal interests or the administration of the estate. The Court's order (Bankr. Doc. 380, incorporated by reference) granting resignation did not strip them of their rights or remove their access to courts to redress grievances. They simply wanted to distance themselves from what the Trustees were and are allegedly doing.

## VIII. THE AGREEMENTS SUPPORT THE UNDERSIGNED

41. The governing agreements do not support the "customer funds" narrative allegedly fabricated by officers of this court. There is no trust language. No escrow. No deposits (Please see Bankr. Docs. 513; 646 for samples of the governing agreements).

42. Many agreements are non-refundable. The United States Trustee and the Chapter 7 Trustee seem to be pretending the governing agreements do not exist and this Court seems to be on board with this. Additionally, the governing provisions in the Business Expansion Line of Credit Agreements, specifically 13.7(c)(ix), required the Debtor to conduct reasonable diligent efforts to end or minimize the force majeure event allegedly caused by Velanos Principal Capital's fraud and Scott Oh's legal malpractice. Demand letters, arbitrations, lawsuits and filing

Chapter 11 were all reasonable diligent efforts to accomplish the Debtor's responsibilities under the agreements with its customers. Completely destroying a company is not a reasonable diligent effort. This provision was placed in the agreement for this exact type of instance, so that the company would survive.

43. The undersigned is not responsible for any of the alleged misconduct of Velanos Principal Capital, McMann Commerical Lending (McMann), claimants with overinflated claims, the Trustees, this Court, another Court or anyone else. Their alleged misconduct does not equate to the undersigned's rights, to standing or any other rights being stripped, when there is a reasonable possibility of surplus, and especially as an alleged victim of a crime during these proceedings.

## IX. STANDING — THE TRUSTEES HAVE NOT SUED THE UNDERSIGNED

44. The undersigned invites anyone to come sue him personally. The undersigned still contends he has done nothing wrong. Any party related to this matter can sue and serve the undersigned by the email address provided (Bankr. Docs. 348, 595, 596), as they have done (please see Circuit Court of Chilton County Alabama, 14-CV-2025-900132.00, incorporated by reference) placed in every filing, as personal service requirements have been upheld for the United States Trustee (please see October 17, 2025 Minute Order, 1:25-cv-02009, incorporated by reference), but not upheld for the undersigned, even as a non-party (Eastern District of Louisiana,

2:23-cv-07288, incorporated by reference). Once again, this is to protect his minor daughter first and foremost, from any party that is actively violating or facilitating a restraining order, for my protection, and for her protection. This is what restraining orders are for, to protect individuals from people who abuse them, harass them or seek to hurt them, as documented in the police report that has been allegedly removed from this matter on more than one occasion.

45. Additionally, Mr. Hughes is currently in a personal Chapter 7 bankruptcy case in the Central District of Illinois (Case No. 25-70566, incorporated by reference). The Florida Chapter 7 Trustee filed a claim in that case based on a corporate judgment against ZOOMERAL — not a personal judgment against Mr. Hughes. That claim has since been objected to by the Illinois Chapter 7 Trustee in that case. Many of the alleged creditors in this matter have moved their way to that matter, as documented in the undersigned's objections (Bankr. Doc. 644) and the Honorable Judge Gorman, in the Central District of Illinois, required the non-individual parties to hire counsel, and subsequently has disallowed or will disallow the claims and responses made due to unauthorized practice of law or a non-response to the Illinois Chapter 7 Trustee. In this matter, only the undersigned's and Mr. Hughes' filings have been subject to this requirement, while other non-individual claimants represent their corporations in violation of Local Rule 1074-1 and allowing at Agreed orders (Bankr. Doc. 583) to be entered with unrepresented non-individuals,

despite the Local Rule 1074-1 being imposed on the undersigned. The Illinois' Federal Bankruptcy's Court's alleged conduct versus this Florida Bankruptcy Court's alleged conduct speak volumes. Please see contemporaneously filed notice (NOTICE OF ORDERS IN RELAVENT PERSONAL BANKRUPTCY (CENTRAL DISTRICT OF ILLINOIS, 25-70566) OF DAVID C. HUGHES II, 50% EQUITY OWNER OF THE CORPORATE DEBTOR (GENIE INVESTMENTS NV INC., incorporated by reference which demonstrates the aforementioned double-counting and overinflated claims by McMann and McMann's customer's claims).

46. The fact that "Region 21" (Florida) may not be the same Region as "Region 10" (Illinois) does not condone or excuse the alleged misconduct by the United States Trustee Program, United States Trustee Scott Bomkamp, the Chapter 7 Trustee Aaron Cohen, Debtor's counsel Bryan Mickler, who has seemingly abandoned this case entirely, and/or this Court. The United States Trustee is a federal program. Coordination — or the lack thereof — should not justify the alleged false certificates of service, fabricated numbers, or retaliatory filings.

47. The undersigned notes that Bankr. Doc. 648 was signed by United State Trustee Scott Bomkamp, but the substance of the filing appears to have been written and submitted by someone else — identified as 'Guy A. Van Baalen, Acting United

States Trustee for Region 21' — with Bomkamp's signature appended immediately before filing.

48. This raises the following question: who is the actual attorney responsible for this filing? Is there another attorney involved in drafting or reviewing it? If so, where is the notice of appearance from that attorney per the rules? It appears not to exist anywhere in the record.

49. The United States Trustee criticizes the undersigned's address and noticing requirements, yet the United States itself — through the Assistant United States Attorney's office — has seemingly violated the noticing requirements and rules of service in this matter, as also documented in Bomkamp's personal case as a defendant at 1:25-cv-02009, ECF No. 71, ¶ 39, incorporated by reference, adding to the procedural gamesmanship that allegedly plagues this case and others.

50. This raises another question, does the United States Trustee Program, United States Trustee Scott Bomkamp, the Chapter 7 Trustee Aaron Cohen, Debtor's counsel Bryan Mickler, and/or this Court want to see or does not care if the undersigned or his minor daughter hurt by the undersigned's abuser? This is one of the reasons why the undersigned noticed the United States Marshall's (Bankr. Doc. 497) on or around Thanksgiving 2025, the second federal holiday this Court, whether by judicial, clerical or administrative means, filed or distributed orders by

this Court, (please see Bankr. Doc. 498) that paints a false light over the undersigned. To any reasonable layperson reading the court record and reviewing the alleged misconduct, that would appear to be the case.

51. The United States Trustee cannot demand strict compliance from a *pro se* litigant while the government itself fails to comply with the most basic procedural obligations itself — filing proper attorney notices of appearance and certifying service as this Court directed the undersigned to amend his objections (Bankr. Doc. 631, incorporated by reference). The same procedural requirements apply to all parties, but the Court should resolve the service issue under the specific rules governing the filing at issue rather than through generalized allegations of misconduct. See Fed. R. Bankr. P. 9014(b); Fed. R. Civ. P. 5(b)(2)(E). The undersigned complied with that directive in Bankr. Doc. 644, incorporated by reference, which corrected the undersigned's originally filed—but subsequently stricken (Bankr. Doc. 631)—objections to the motion (Bankr. Doc. 620, incorporated by reference)

SECTION XII: THE "PONZI SCHEME" NARRATIVE — PLANTED EVIDENCE, INFLAMMATORY RHETORIC, AND INFLATED CLAIMS

52. The U.S. Trustee and Chapter 7 Trustee have repeatedly invoked inflammatory and prejudicial language—including references to "Bernie Madoff," "Ponzi

scheme," "customer funds," and "RICO"—throughout these proceedings. These terms are not mere rhetorical flourish; they are calculated poison-pill litigation tactics designed to create confusion among federal and state agencies, manufacture prejudicial bias, and inflict irreparable reputational harm upon the undersigned and Mr. Hughes.

53. The "customer funds" narrative is the foundation of the manufactured Ponzi scheme allegation. The U.S. Trustee and Chapter 7 Trustee [with assistance from a Certified Public Accountant appearing to opine on contract law] have repeatedly asserted that the Debtor misappropriated "customer funds" as if this were an established fact. Yet the governing agreements—which the Trustees have ignored—contain no trust language, no escrow provisions, and no deposit designations. The agreements explicitly reference third-party capital providers and wholesale lenders (Section 7.1). The "customer funds" narrative is a legal fiction invented to justify the conversion of this case and the subsequent harassment of the undersigned.

54. The term "Ponzi scheme" has been used repeatedly by the Trustees and various alleged creditors in two (2) bankruptcy proceeding despite the complete absence of any pleading, evidence, or judicial finding supporting such a characterization. A Ponzi scheme requires, inter alia, a fraudulent investment scheme where returns are paid to earlier investors using funds from later investors. See *SEC v. SG Ltd.*, 265

F.3d 42, 55 (1st Cir. 2001). There has been no such allegation, let alone proof. The use of this term is intentional inflammatory rhetoric designed to prejudice the undersigned and evade the requirement to plead fraud with particularity under Fed. R. Civ. P. 9(b).

55. The "RICO" references are equally baseless. The Trustee has never pleaded a RICO cause of action, nor has he alleged the predicate acts required to sustain such a claim. Under 18 U.S.C. § 1962, a RICO claim requires a pattern of racketeering activity—at least two (2) predicate acts within ten (10) years. No such acts have been alleged, let alone proven. The inclusion of "RICO" in the Chapter 7 Trustee's filings is not a legal argument—it is an intimidation tactic. When counsel resorts to name-calling instead of evidence, it is often a clear sign that the case lacks substance.

56. The Chapter 7 Trustee's own testimony confirms that he was not even aware of the "RICO" references in his filings (Bankr. Docs. 353, 360, 390, incorporated by reference). At the June 24, 2025 evidentiary hearing, the Trustee testified that he did not know about the "RICO" references (Bankr. Doc. 389, Tr. Pg. 46, Lines 6-16).:

The Trustee admitted under oath that he was unaware of the 'RICO' references in his own filings (Bankr. Doc. 389 at Tr. 46:6-20). When asked about the 'RICO' reference in his second reply (Bankr. Doc. 360), the Trustee testified: 'I don't know without it in front of me' and 'I don't remember ever been any allegations of RICO'

(Bankr. Doc. 389 at Tr. 46:16-20). The Trustee further admitted that 'We did cite the Bernie Madoff case' (Bankr. Doc. 389 at Tr. 46:20).

57. This admission is damning: the Chapter 7 Trustee signed and filed pleadings containing inflammatory language he did not even read or understand. This violates Fed. R. Bankr. P. 9011(b)(1), which requires that pleadings not be presented for an improper purpose, such as to harass or cause unnecessary delay. It also appears to violate Model Rule of Professional Conduct 3.3(a)(1), which prohibits attorneys from making false statements of fact or law to a tribunal.

58. The "Bernie Madoff" citation (Bankr. Docs. 353, 360, 390) comparison is the most egregious example of this inflammatory rhetoric. Bernie Madoff orchestrated the largest Ponzi scheme in history, defrauding thousands of investors of billions of dollars. Comparing the undersigned—a victim of a prime-banking scheme who has documented his efforts to recover funds and fulfill contractual obligations—to Bernie Madoff is not just false; it is malicious. It is designed to associate the undersigned with one (1) of the most reviled figures in financial history, ensuring that no court, agency, or potential business partner will take him seriously. This is reputational assassination through litigation.

59. The Trustees' use of this inflammatory language constitutes a violation of the duty of candor to the tribunal under Model Rule 3.3(a)(1). Attorneys are officers of the court, not propagandists. They are not permitted to use the court's docket as a

vehicle for character assassination. The repeated invocation of "Ponzi," "Madoff," and "RICO" without any legal basis is an abuse of the judicial process that warrants sanctions under 11 U.S.C. § 105(a), Fed. R. Bankr. P. 9011, and this Court's inherent equitable powers. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (courts may sanction conduct that abuses the judicial process).

60. The "customer funds" narrative—the bedrock of the manufactured Ponzi scheme—is directly contradicted by the evidence. As documented in the Post-Trial Brief, the record reflects 44 customer loans totaling over $4,000,000, more than $10,000,000 in refunds issued, $3,600,000 in affiliate loans, and a $9,000,000 loss reported to the IRS. These are not the hallmarks of a fraud—they are the documented outcomes of a failed business that took extraordinary steps to fulfill its obligations under the agreements. The Trustees cannot manufacture a Ponzi scheme out of a business failure, no matter how many times they invoke the names of actual fraudsters.

61. This pattern of inflammatory rhetoric is not an isolated incident. It is part of a coordinated strategy of procedural manipulation and reputational destruction that includes: (1) the removal of the police report from the docket without motion or order (Bankr. Docs. 406-3, 470-1); (2) the alleged splicing of the §341 meeting audio (Bankr. Doc. 501, Ex. 1); (3) the retaliatory bar order entered the day after

the undersigned refiled the police report (Docs. 470, 471); and (4) the 14+ striking orders that prevented the undersigned from presenting evidence of this misconduct.

62. The Trustees' manufactured narrative is further exposed by the inflated and fabricated claims that form the basis of their standing argument. Claim 5-3 is a ~$14+ million claim for a $385,000 payment. Claim 4 is a $3 million claim for a $70,000 payment. These are not real numbers according to the governing agreements. The Trustee acknowledges that the $14 million claim from Stringer (for $385,000) is misrepresented but states he will "address later" (Bankr. Doc. 504). Debtor's counsel agreed the Stringer claim "is a fraud" (Doc. 513). Yet the Chapter 7 Trustee continues to recuse from challenging it. This is not diligent administration—this is willful blindness to inflated claims designed to manufacture a no-surplus narrative and strip the undersigned of standing.

63. Once again, the Chapter 7 Trustee admits $1,771,555.74 in the ZOOMERAL judgment. But the undersigned has documented ~$1.9 million in earned income by ZOOMERAL. The math is clear: ~$1.9 million minus ~$1.7 million equals a surplus of ~$.2 million or ~$200,000. Many agreements are non-refundable. If the non-refundable claims are disallowed and the double counting is eliminated, the total viable claims come down to approximately $9 million—far below the potential recoveries. The undersigned, on behalf of the Debtor, walked into this case with a $15 million settlement agreement with Velanos Principal Capital,

which resulted in a $20 million judgment. The undersigned also came to the table pursuing Scott Oh and Warren Law Group for their legal malpractice, which resulted in a contingent $435,000 settlement offer. There is $4 million in loans—or ~$1.8 million that the Trustee admits. Either way, with the double counting eliminated, a potential reasonable surplus exists despite any potential failure to collect by the Chapter 7 Trustee. The Chapter 7 Trustee or any "Trustee" cannot manufacture a claim amount to block the undersigned's standing.

64. The undersigned incorporates by reference Section XII of the Post-Trial Brief (Bankr. Doc. 390, incorporated by reference, which documents the judicial admissions and omissions that compound this misconduct. Specifically:

(Item 5) The mischaracterization of the examiner report which had no findings of fraud. Doc. 146. This violates Model Rule 3.3(a)(1).

(Item 6) The inflammatory and baseless use of "Bernie Madoff" and "RICO" comparisons. The Trustee was not aware of the "RICO" references at trial according to his testimony (Bankr. Docs. 353 & 360). This violates Rule 9011(b)(1).

(Item 8) Contradictory statements regarding receipt of the undersigned's 27-page response. This undermines the credibility of the Trustee's basis for bringing the action.

(Item 16) 44 loans to customers are non-existent on the initial Interim Report regarding estate collections despite UCC1 liens and Genie Investments NV Inc.'s attorney attested history of closing loans. (Bankr. Docs. 287 & 354). This violates 11 U.S.C. § 704(a)(4).

65. The undersigned is not Bernie Madoff. He is not a Ponzi schemer. (3:26-ap-00063, Doc. 21, voluntary dismissal) He is not a RICO violator. He is a victim of a prime-banking scheme perpetrated by Velanos Principal Capital and legal malpractice by Warren Law Group and Scott Oh (3:25-cv-00164). He has documented his efforts to recover funds, fulfill obligations under the agreement, and protect the interests of the Debtor and its viable creditors. The Trustees' and alleged creditors' use of inflammatory rhetoric to destroy his reputation and silence his claims is an abuse of the judicial process that must be stopped. This Court has a duty to ensure that its proceedings are not used as a vehicle for character assassination. The undersigned respectfully requests that the Court exercise its inherent authority to correct this abuse.

## X. CONCLUSION

66. The United States Trustee's Response (Bankr. Doc. 648) is allegedly a retaliatory filing made the day before a hearing in a separate division to prejudice the undersigned. It was allegedly never served on the undersigned. Its arguments

are based on alleged fabricated numbers, alleged ignored record evidence, and a demonstrably false "vexatious" narrative because they do not seem to have any real defense, instead relying on the United States Federal District and Bankruptcy Courts to do their bidding. The United States Trustee, the "watchdog" that is tasked to make sure the administration of the estate is fair, has seemingly lost its mind, and that is solely due to their own alleged misconduct, not the undersigned's conduct, no matter how many alleged misstatements they make. The undersigned is not going to back down from any alleged abuse of process from any party or non-party. The undersigned contends that the United States Trustee, court-appointees and its subordinates, through counsel, seemingly think it's okay to allegedly manufacture the alleged 'Ponzi' scheme narrative, but it's also apparently "vexatious" to report an alleged crime and to bring it to the Court's attention. The Court should immediately correct course, end the procedural gameplay the undersigned has repeatedly identified, recognize the governing agreements, *and* rule on the merits.

XI. DEMAND FOR RELIEF

The undersigned incorporates the entire court record, including but not limited to this Court's record, all related proceedings and any and all unrelated proceedings, both state and federal, and demands that the Court:

i. Strike Bankr. Doc. 648 as filed in bad faith, improper purpose, namely to harass, cause unnecessary delay, cause prejudice, needlessly increase the cost of litigation, is not warranted by existing law or a non-frivolous argument, as it is legally insufficient, factually unsupported, untimely filed under Applicable Court Rule or Deadline for the Middle District of Florida, is based on self-serving statements, conclusory allegations, without substantiation and/or in retaliation for, including, but not limited to, the reasons set forth herein, and state the specific reason(s) in the order;

ii. Deny the United States Trustee's request to restrict the undersigned's rights for, including, but not limited to, the reasons set forth herein and state the specific reason(s) in the order;

iii. Note on the record that the undersigned was not served with Bankr. Doc. 648 for, including, but not limited to, the reasons set forth herein;

iv. To protect the undersigned's rights as a protected person and a victim of an alleged crime, the undersigned demands that this Court enter a Protective Order, a preliminary and/or permanent injunction (a) prohibiting the United States Trustee Program and its subordinates, including but not limited to Scott E. Bomkamp, Guy A. Van Baalen, and their respective offices, from filing any further pleadings, motions, or responses directed at the

undersigned without first obtaining leave of Court, and (b) requiring that any such filing be accompanied by a verified certification from an Assistant United States Attorney that the filing is made in good faith, is not retaliatory, and that the undersigned has been properly served in compliance with the Federal Rules of Civil Procedure, including, but not limited to, the reasons set forth herein. Any requested filing restriction should be narrowly tailored to the specific conduct found abusive and should preserve access to the courts. See *Procup v. Strickland*, 792 F.2d 1069, 1074–75 (11th Cir. 1986) (*en banc*). The undersigned also demands that this Court enter an order prohibiting the United States Trustee Program from engaging in any further procedural gamesmanship designed to prejudice the undersigned or Mr. David Hughes before this Court or any other court, division, district and/or circuit for, including, but not limited to, the reasons set forth herein;

v. The undersigned demands that the Court take judicial notice of the following:

a. The "customer funds" narrative is unsupported by any trust language, escrow provision, or deposit designation in the governing agreements;

b. The "Ponzi scheme" and "Bernie Madoff" references are unsupported by any pleading, evidence, or judicial finding;

c. The "RICO" references are unsupported by any pleaded cause of action or predicate acts;

d. The Chapter 7 Trustee admitted under oath that he was unaware of the "RICO" references in his own filings (Audio 2, 22:18-23:10);

e. The inflated claims—including Claim 5-3 (~$14M for $385K) and Claim 4 ($3M for $70K)—are not supported by the governing agreements and have been acknowledged as fraudulent by Debtor's counsel (Doc. 513);

f. A surplus of approximately $200,000 exists between ZOOMERAL and the Debtor based on the undersigned's documented evidence.

vi. The undersigned further requests that the Court:

a. Strike any and all pleadings or proceedings containing unsupported "Ponzi scheme," "Bernie Madoff," and "RICO" references;

b. Require the Trustees to show cause why they should not be sanctioned under Rule 9011 and § 105(a) for filing pleadings containing inflammatory rhetoric without legal basis;

c. Order the Trustees to refrain from using such language in any future filings absent a formal pleading and evidentiary support;

d. Issue a finding that the "customer funds" narrative is unsupported by the governing agreements and the evidentiary record;

e. Issue a finding that a reasonable possibility of surplus exists based on the documented recoveries and the disallowance of inflated claims.

vii. In the alternative, conduct a trial on the merits regarding the issues before this Court, which include, but are not limited to, the undersigned's standing, the modification or rescission of Bankr. Doc. 347, the undersigned's amended objections (Bankr. Doc. 644), and the Trustees' alleged misconduct.

viii. In the further alternative, the undersigned respectfully requests that this Court stay all proceedings in this main case pending the resolution of the related miscellaneous proceeding (2:26-mp-00001), as the Honorable Judge Rivera acknowledged during the August 12, 2026 hearing that such a request could be made to this Court, for, including but not limited to, the reasons set forth herein.

VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing reply, its attachments, and the facts alleged therein are true and correct to the best of my knowledge, information, and belief.

Dated: 08-18-2026

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the foregoing document and/or its attachments by the CM/ECF system, U.S. Mail and/or email.

Debtor
Genie Investments NV Inc.
represented by Bryan K. Mickler
Mickler & Mickler
5452 Arlington Expressway
Jacksonville, FL 32211
904-725-0822
Email: court@planlaw.com

U.S. Trustee
represented by Scott E. Bomkamp
DOJ-Ust
United States Trustee
400 W. Washington St., Ste 1100
Orlando, FL 32801
407-648-6069
Email: scott.e.bomkamp@usdoj.gov

Chapter 7 Trustee
Aaron R. Cohen
represented by Raye Curry Elliott
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Email: raye.elliott@akerman.com

David C. Hughes II
davidchoatehughes@gmail.com

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

**ADDENDUM TO VERIFIED REPLY**

Case No. 3:24-bk-00496-BAJ (Main Case)

COMES NOW John Michael Cohan, protected person, pro se, and hereby files this Addendum to the Verified Reply to United States Trustee's Response (Bankr. Doc. 648) to Bankr. Doc. 617. This Addendum consolidates the documented pattern of misconduct, procedural irregularities, and evidentiary suppression that permeates this case. For the sake of this Court's time and paper, not every instance has been included in this addendum.

## I. THE KING CONFLICT

1. Bankr. Doc. 613 reveals that Judge Burgess' former law clerk, Taylor J. King, now works for Akerman LLP — the firm representing the Chapter 7 Trustee.
2. Under 28 U.S.C. § 455(a), the mere appearance of impropriety is sufficient for recusal. Judge Burgess did not rule on his own recusal; he transferred it to a different division while staying on the main case.

## II. INFLAMMATORY RHETORIC — "PONZI," "MADOFF," "RICO"

3. The Trustees repeatedly invoke "Bernie Madoff," "Ponzi scheme," "customer funds," and "RICO" without any pleading, evidence, or judicial finding.
4. The "customer funds" narrative is unsupported by the governing agreements (no trust language, no escrow, no deposits). The agreements explicitly reference third-party capital providers (Section 7.1).
5. The Trustee admitted he was unaware of the "RICO" references in his own filings (Bankr. Doc. 389 at 46:16-20), violating Fed. R. Bankr. P. 9011(b)(1).

## III. EXAMINER'S REPORT MISCHARACTERIZED

6. The Examiner's Report (Bankr. Doc. 146) contains no findings of fraud — only speculative language using "potential" four times (¶ 233).
7. The sworn declaration of former FINRA enforcement attorney Adam Walker (Bankr. Doc. 34 at 100-104) concluded the U.S. Trustee "invented" fraud findings.
8. The Report states that "the ultimate source of the funds transferred to Velanos was funds that customers paid to Genie NV" (¶ 67) and that the $9,000,000 "came from the customer's ICA and Bridge Interest deposits" (¶ 78). The Examiner, without a law license, concluded this "demonstrates gross mismanagement of the customer's funds" (¶¶ 83, 237). Notably, the

Report contains no finding of fraud — only speculative language about "potential" transfers (¶¶ 233, 234).

## IV. FRAUDULENT TRANSFER CLAIMS FILED WITHOUT COMPLETE REVIEW

9. The Trustee admitted under oath he filed fraudulent transfer claims without reviewing all bank records (Bankr. Doc. 389, Audio 2, 12:40, 15:17), violating Fed. R. Bankr. P. 9011(b)(3). See *In re Vaughan Co.*, 498 B.R. 297, 312 (Bankr. D.N.M. 2013).

## V. TWO (2) UNAUTHORIZED REPLIES

10. The Trustee filed two (2) unauthorized replies (Bankr. Docs. 357, 360) in violation of the Court's briefing order. See *United States v. Flynn*, 411 F. Supp. 3d 15, 34 (D.D.C. 2019); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

## VI. RETALIATORY TIMELINE

11. January 22, 2025 (1:05 PM): Undersigned asserted personal claims. Within hours: cease-and-desist email. Within days: personal/corporate demand letters + Chase Bank subpoena (Bankr. Doc. 273). Within 10 days: adversary complaint filed. The Trustee admitted the sequence was triggered by the undersigned's assertion of rights (Bankr. Doc. 389, Audio 1, 32:30-37:00).

## VII. STAY MISUSE

12. The Trustee applied the stay indiscriminately to block personal claims while denying standing. The stay is a "shield, not a sword." *In re Albion Disposal, Inc.*, 210 B.R. 394, 405 (W.D.N.Y. 1997).

## VIII. DERIVATIVE STANDING MISREPRESENTATION

13. The Trustee admitted he was not pursuing derivative claims (Bankr. Doc. 389, Audio 1, 45:45) and gave no answer when asked who represents the undersigned's personal interests. Personal reputational harm is a direct, non-derivative claim. *Tooley v. Donaldson, Lufkin & Jenrette*, 845 A.2d 1031 (Del. 2004).

## IX. INFLATED AND FABRICATED CLAIMS

14. Claim 5-3 (Stringer): ~$14M claim for $385K — Trustee admits misrepresentation (Bankr. Doc. 504); Debtor's counsel verbally agreed "is a fraud" (Bankr. Doc. 513). Claim 4 (Belle Maison): ~$3M claim for $70K — unsupported.

15. Trustee admits $1,771,555.74 in ZOOMERAL judgment (Bankr. Doc. 541, ¶ 4). Undersigned documented ~$1.9M = surplus of ~$200,000. If inflated claims are disallowed, viable claims are ~$9M — far below potential recoveries.

16. The undersigned's personal defamation claims against Kristen Stegent and Kim Nash are documented in a separate state court action filed by Zoomeral, Inc. (Case No. 2024-008427-CA-01, Miami-Dade County, Florida, incorporated by reference), where defaults were entered against Rolling by the Dozen, A Complete Home Inspection, Kristen Stegent and Kim Nash on August 8, 2024 for failure to serve or file any paper as required by law. The complaint alleges that Stegent and Nash engaged in a coordinated online defamation campaign against Zoomeral and its managers, including filing false FBI reports, making fraudulent wire transfer recall attempts, and publishing defamatory statements alleging criminal behavior. These claims are personal to the undersigned and are separate and apart from any corporate claims of the Debtor and are added to establish a deep-seated root of the entire campaign against the Debtor, the undersigned and his affiliates.

## X. POLICE REPORT REMOVED TWICE

17. Police report (JSO# 2025-0471040) filed as Bankr. Docs. 406-3 and 470-1, removed both times without motion, notice, or order. Judge Moss took judicial notice of same report in *Cohan v. Bomkamp*, 1:25-cv-02009-RDM (D.D.C.), ECF No. 73 at pgs. 8–9. Despite the record, Scott Bomkamp on August 12, 2026 stated he did not know anything about a police report (paraphrased, 2:26-mp-00001).

## XI. §341 AUDIO ALLEGEDLY SPLICED

18. Audio shows flatline consistent with tampering (Bankr. Doc. 501, Ex. 1). Florida state criminal judge found probable cause for crime during §341 meeting.

## XII. 14+ STRIKING ORDERS

19. Bankr. Docs. 355-356, 506, 530-532, 529, 536, 602, 603, 631 — all struck [and counting] without addressing merits.

## XIII. DECEMBER 16, 2025 — THE SMOKING GUN

20. Motion to Vacate Conversion (Bankr. Doc. 501) struck moments before hearing (Bankr. Doc. 506). Disqualification motions (Bankr. Docs. 507-509) filed naming Bomkamp, Elliott, Mickler, Cohen. Judge Burgess preemptively refused to hear them. Same day: Alabama Magistrate dismissed Calhoun case (2:25-cv-00742, R&R, Doc. 69).

## XIV. RETALIATORY BAR ORDER AND EX PARTE CONTACT

21. November 4, 2025: Police report refiled (Bankr. Doc. 470). November 5, 2025: Retaliatory bar order entered (Bankr. Docs. 471, 476) — no hearing, no notice, no motion. Same day: court staff contacted undersigned stating it was "imperative" to call back.

22. June 24, 2025: Court preemptively shielded Trustee from answering "Where's the fraud?" (Bankr. Doc. 389 at 65:21–66:2).

## XV. AGREEMENTS SUPPORT THE UNDERSIGNED

23. No trust language, no escrow, no deposits in governing agreements. 44 loans totaling $4M+; $10M+ in refunds issued; $3.6M in affiliate loans; $9M IRS loss — documented business failure, not fraud. (Please see Bankr. Docs. 513, 646 for samples of the governing agreements).

## XVI. LACK OF SERVICE — Bankr. Doc. 648

24. Bankr. Doc. 648 filed August 11, 2026 — day before Fort Myers recusal extra-judicial proceeding — without proper service. Certificate falsely claims CM/ECF service; undersigned has no electronic filing privileges. *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950).

## XVII. PATTERN OF BIAS — APPEARANCE OF IMPROPRIETY

25. Under 28 U.S.C. § 455(a), recusal is required where impartiality might reasonably be questioned. The record shows: judge's former clerk now works for Trustee's firm; judge refused to rule on own recusal; 14+ filings struck without merits; retaliatory bar order; evidence of spoliation refused; Trustee shielded from answering "Where's the fraud?" The Jacksonville Division Court order (Bankr. Doc. 628; Misc. Doc. 2) itself appears to fail to

identify authority overcoming the normal procedure under § 455 and Rule 5004. Police reports missing (Bankr. Docs. 406-3, 470-1)

## XVIII. REQUESTED RELIEF

26. The undersigned requests the Court:

a. Strike Bankr. Doc. 648 as filed in bad faith and without proper service;

b. Note on the record that the undersigned was not served with Bankr. Doc. 648;

c. Grant the Motion for Recusal (Bankr. Doc. 622) or allow discovery;

d. Strike all pleadings containing unsupported "Ponzi," "Madoff," and "RICO" references;

e. Require Trustees to show cause why they should not be sanctioned under Rule 9011 and § 105(a);

f. Require Chapter 7 Trustee to challenge inflated claims (Claim 5-3 and Claim 4) or show cause;

g. Issue finding that reasonable possibility of surplus exists;

h. Stay all proceedings pending resolution of recusal motion and miscellaneous proceeding (2:26-mp-00001);

i. Grant such other relief as the Court deems just.

VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing supplement, any attachments, addendum and the facts alleged therein are true and correct to the best of my knowledge, information, and belief.

UNDERSIGNED'S ADDRESS

Plaintiff will provide his address in camera if the Court so orders.

Dated: 08-18-2026

Respectfully submitted in good faith,

**John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103**
iustusprocessus@outlook.com

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC., Case No.: 3:24-bk-00496-BAJ

Debtor. Chapter 7

______________________________________/

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copies of the (i) Notice of Evidentiary Hearing (Doc. 345) and (ii) Notice of Evidentiary Hearing (Doc. 346) were served via CM/ECF after the docketing to all creditors and parties-in-interest who have consented to receiving electronic notifications in this case, and on March 27, 2025, by electronic mail to the following who consented in writing to receive service of pleadings at the email address listed below:

John Michael Cohan
iustusprocessus@outlook.com

David Hughes
iustusprocessus@outlook.com

Dated: March 27, 2025

AKERMAN LLP

By: */s/ Raye C. Elliott*
Raye C. Elliott, Esq.
Florida Bar Number: 018732
Email: raye.elliott@akerman.com
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Phone: (813) 223-7333
Fax: (813) 223-2837

Attorneys for Aaron R. Cohen, Chapter 7 Trustee

**State of New Jersey**

# Prevention of Domestic Violence Act

CAMDEN County, Superior Court, Chancery Division, Family Part

☑ **Final Restraining Order (FRO)** ☐ **Amended Final Restraining Order**

| Docket Number | Plaintiff's Date of Birth | Defendant's Sex | Defendant's Race |
|---|---|---|---|
| FV-04-002494-22 | 07/05/1989 | F | BLACK |

| In the Matter of Plaintiff | Defendant's Social Security Number | Date of Birth | Height | Weight |
|---|---|---|---|---|
| COHAN JOHN M | XXX-XX-3105 | 01/15/1993 | 5 07 | 120 |

| Defendant | Eye Color | Hair Color |
|---|---|---|
| FREEDOM PEACE M | BROWN | BROWN |

| Home Phone Number | Work Phone Number | Distinguishing Features (Scars, Facial Hair, Etc.) |
|---|---|---|
| ********** | ********** | |

| Home Address | Driver's License Number |
|---|---|
| *** CONFIDENTIAL *** | E49656206151934 |

| Work Address | State | Driver's License Expiration Date |
|---|---|---|
| *** CONFIDENTIAL *** | | |

The Court having considered plaintiff's Complaint dated 02/10/2022 seeking an ORDER under the Prevention of Domestic Violence Act, having established jurisdiction over the subject matter and the parties pursuant to *N.J.S.A.* 2C:25-17 et seq., and having found that defendant has committed an act of domestic violence, and all other statutory requirements having been satisfied:

It is on this 03 day of March 2022, ORDERED that:

**Sought Granted** **Part I - Relief**

**DEFENDANT:**

1. ☑ ☑ You are prohibited against future acts of domestic violence.
2. ☑ ☑ You are barred from the following locations:
   ☑ **Residence(s) of Plaintiff** ☑ **Place(s) of employment of Plaintiff**
   ☐ Other

3. You are prohibited from having **any** oral, written, personal, electronic, or other form of contact or communication with:
   ☑ ☑ Plaintiff
   ☐ ☐ Other(s) (List names & relationship to Plaintiff):

4. You are prohibited from making or causing anyone else to make harassing communications to:
   ☑ ☑ Plaintiff
   ☐ ☐ Other(s) (Same as above or list names & relationship to Plaintiff):

5. You are prohibited from stalking, following, or threatening to harm, to stalk or to follow:
   ☑ ☑ Plaintiff
   ☐ ☐ Other(s) (Same as above or list names & relationship to Plaintiff):

6. You must pay emergent monetary relief (describe amount and method):
   ☐ ☐ Plaintiff: $ ______ Effective: ______
   ☐ ☐ Dependents: $ ______ Effective: ______
7. ☐ ☐ Other appropriate relief:
   Defendant (including substance abuse, mental health or other evaluations and subsequent treatment):

8. ☑ ☑ Psychiatric evaluation:
   DEF MUST COMPLETE PSYCHIATRIC EVALUATION AND DCP&P EVALUATION BEFORE APPLYING FOR UNSUPERVISED PT
9. ☐ ☐ Intake monitoring of conditions and restraints (specify):

**NOTICE TO DEFENDANT:** A violation of any of the provisions listed in this order may constitute either civil or criminal contempt pursuant to *N.J.S.A.* 2C:25-30 and may result in your arrest, prosecution, and possible incarceration, as well as an imposition of a fine or jail sentence. **Only a court can modify any of the terms or conditions of this court order.**

**Prevention of Domestic Violence Act** Page 2 of 4

☑ **Final Restraining Order (FRO)** ☐ **Amended Final Restraining Order** **FV-04-002494-22**

**Sought Granted** **Part I - Relief** continued

**DEFENDANT:**

10. ☑ ☑ **PROHIBITIONS AGAINST POSSESSION OF WEAPONS:** You are prohibited from possessing **any and all fire-arms or other weapons** and must immediately surrender these firearms, weapons, permits to carry, applications to purchase firearms and firearms purchaser ID card to the officer serving this court Order. Failure to do so can result in your arrest and incarceration.

Other Weapon(s) (describe) NONE PERMITTED

**PLAINTIFF:**

11. ☑ ☑ You are granted exclusive possession of (residence or alternate housing, list address only if specifically known to defendant):

111 RICH AVE, BERLIN NJ 08009

12. ☑ ☑ Plaintiff is granted temporary custody of (specify name(s)):
A[redacted] F[redacted]PURSUANT TO FD-04-180-22

13. ☐ ☐ Other appropriate relief:
Plaintiff (describe)

Child(ren) (describe)

**LAW ENFORCEMENT OFFICER**

You are to accompany to scene, residence, shared place of business, other (indicate address, time, duration & purpose):

☐ ☐ Plaintiff:

☐ ☐ Defendant:

**WARRANT TO SEARCH FOR AND TO SEIZE WEAPONS FOR SAFEKEEPING**

☐ **To any law enforcement officer having jurisdiction** - this Order shall serve as a warrant to search for and seize any issued permit to carry a firearm, application to purchase a firearm and firearms purchaser identification card issued to the defendant and the following firearm(s) or weapon(s).

1. **You are hereby commanded to** search the premises for the above described weapons and/or permits to carry a firearm, application to purchase a firearm and firearms purchaser ID card and to serve a copy of this Order upon the person at the premises or location described as:

2. **You are hereby ordered** in the event you seize any of the above described weapons, to give a receipt for the property so seized to the person from whom they were taken or in whose possession they were found, or in the absence of such person to have a copy of this Order together with such receipt in or upon the said structure from which the property was taken.

3. **You are** to execute this Order immediately or as soon thereafter as is practicable.
☐ Anytime ☐ Other: ______________________

4. **You are further ordered,** after the execution of this Order, to promptly provide the Court with a written inventory of the property seized per this Order.

**NOTICE TO DEFENDANT:** A violation of any of the provisions listed in this order may constitute either civil or criminal contempt pursuant to *N.J.S.A.* 2C:25-30 and may result in your arrest, prosecution, and possible incarceration, as well as an imposition of a fine or jail sentence. **Only a court can modify any of the terms or conditions of this court order.**

**Prevention of Domestic Violence Act** Page 3 of 4

☑ **Final Restraining Order (FRO)** ☐ **Amended Final Restraining Order** **FV-04-002494-22**

| Sought | Granted | Part II - Relief |
|---|---|---|
| | | **DEFENDANT:** |
| 1. ☐ | ☐ | You acknowledge parentage of: |
| 2. ☐ | ☐ | You must submit to genetic testing: |
| 3. ☐ | ☐ | No parenting time (visitation) until further order; |
| 4. ☐ | ☐ | Parenting time (visitation) pursuant to (prior FV, FM, or FD Order) # — is suspended, a hearing is scheduled for: |
| 5. ☑ | ☑ | Parenting time (visitation) is ordered as follows: (specifiy drop-off and pick-up times and locations, participation of or supervision by designated third party): PURSUANT TO FD-04-180-22, DEF SHALL ENJOY SUPERVISED PARENTING TIME BY DEF'S FATHER, JETHRO EKUTA; PARENTING TIME TO BE ARRANGED BETWEEN PLA AND DEF'S FATHER |
| 6. ☐ | ☐ | Risk assessment ordered (specify by whom): Return Date: |
| 7. ☐ | ☐ | You must provide compensation as follows: (Appropriate notices have been attached as part of this Order): |
| ☐ | ☐ | Emergent support - Plaintiff: $ |
| ☐ | ☐ | Emergent support - Dependent(s): $ |
| | ☐ | Interim support - Plaintiff: $ |
| | ☐ | Interim support - Dependent(s): $ |
| ☐ | ☐ | Ongoing Plaintiff support: $ Effective: |
| | | Paid via income withholding through the: Probation Div. |
| ☐ | ☐ | Other: |
| ☐ | ☐ | Ongoing child support: $ Effective: |
| | | Paid via income withholding through the: Probation Div. |
| ☐ | ☐ | Other: |
| 8. ☐ | ☐ | Medical coverage for plaintiff: |
| 9. ☐ | ☐ | Medical coverage for dependent(s): |
| 10. ☐ | ☐ | Compensatory damages to plaintiff: $ |
| 11. ☐ | ☐ | Punitive damages (describe): $ |
| 12. ☐ | ☐ | You must pay compensation to (specify third party and/or VCCO, and describe): |
| 13. ☐ | ☐ | You must participate in a batterers' intervention program (specify): |
| 14. ☐ | ☐ | You must make ☐ rent ☐ mortgage payments (specify amount(s) due date(s) and payment manner): |
| 15. ☐ | ☐ | Defendant is granted temporary possession of the following personal property (describe): |
| 16. ☐ | ☐ | Defendant is granted temporary custody of (specify name(s)): |

☑ **You must submit to fingerprinting and other identification procedures as required by law pursuant to *N.J.S.A.* 53:1-15.**

☐ You must pay a civil penalty of $ ______ ($50.00 to $500.00 per *N.J.S.A.* 2C:25-29) to: ______ within ____ days. You will be charged a $2.00 transaction fee for each payment or partial payment that you make.

☑ Waived due to extreme financial hardship because: PER JUDGE'S ORDER

| Sought | Granted | |
|---|---|---|
| | | **PLAINTIFF:** |
| 17. ☐ | ☐ | Plaintiff is granted temporary possession of the following personal property (describe): |

**NOTICE TO DEFENDANT:** A violation of any of the provisions listed in this order may constitute either civil or criminal contempt pursuant to *N.J.S.A.* 2C:25-30 and may result in your arrest, prosecution, and possible incarceration, as well as an imposition of a fine or jail sentence. **Only a court can modify any of the terms or conditions of this court order.**

☑ Final Restraining Order (FRO) ☐ Amended Final Restraining Order FV-04-002494-22

**Comments:**
THE DEFENDANT WAS PRESENT AT THE TIME THE FRO/AFRO WAS ISSUED ON 03/03/2022

**Addendum:**

This Order is to become effective immediately and shall remain in effect until further Order of the Superior Court, Chancery Division, Family Part.

03/03/2022 10:26 AM
Date

s/ LINDA W. EYNON
Honorable

## All Law Enforcement Officers Will Serve and Fully Enforce This Order.
## The Plaintiff Shall Not Be Arrested for a Violation of This Restraining Order.

- **This Final Restraining Order Was Issued After Defendant Was Provided with Notice and the Opportunity to Be Heard and Should Be Given Full Faith and Credit Pursuant to the Violence Against Women Act of 1991, Sec. 40221, Codified at 18 U.S.C.A. S2265(A) and S2266.**
- **If Ordered, Sufficient Grounds Have Been Found By This Court for the Search and Seizure of Firearms and Other Weapons as Indicated in This Court Order.**
- **Defendant Shall Not Be Permitted to Possess any Weapon, ID Card or Purchase Permit While This Order Is in Effect, or for Two Years, Whichever Is Greater.**

### Notice to Plaintiff and Defendant

**IMPORTANT:** The parties cannot themselves change the terms of this Order on their own. This Order may only be changed or dismissed by the Family Court. The named defendant **cannot** have any contact with the plaintiff without permission of the court. If you wish to change the terms of this Order and/or you resume living together, you **must** appear before this court for a rehearing.

### Notice to Defendant

A violation of any of the provisions listed in this Order or a failure to comply with the directive to surrender all weapons, firearm permits, application or identification cards may constitute criminal contempt pursuant to *N.J.S.A.* 2C:29-9(b), and may also constitute violations of other state and federal laws which can result in your arrest and/or criminal prosecution. This may result in a jail sentence.

### Return of Service

☑ Plaintiff was given a copy of the Order by:

| Print Name | Time and Date | Signature / Badge Number / Department |
|---|---|---|
| SERVED IN COURT B.SMITH | 10:28 AM 03/03/2022 | CAMDEN COUNTY FAMILY COURT |

☑ I hereby certify that I served the within Order by delivering a copy to the defendant personally:

| Print Name | Time and Date | Signature / Badge Number / Department |
|---|---|---|
| SERVED IN COURT B.SMITH | 10:26 AM 03/03/2022 | CAMDEN COUNTY FAMILY COURT |

☐ I hereby certify that I served the within Order by use of substituted service as follows:

Print Name / Time and Date / Signature / Badge Number / Department

☐ Defendant could not be served (explain):

Print Name / Time and Date / Signature / Badge Number / Department

**The Courthouse is accessible to those with disabilities. Please notify the Court if you require assistance.**

Distribution: Family Part, Plaintiff, Defendant, Sheriff, Other

P-0851
Rev. 02/2022

**Foreign Order of Protection Affidavit**

Jacksonville Sheriff's Office

**IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA**

Petitioner
John Michael Cohen

vs.

Respondent
Peace Ayelo Etuta

**Foreign Order of Protection Affidavit**

Pursuant to 741.315, Florida Statutes, [Name of affiant] personally appeared and being duly sworn states the following:

1. My name is John Michael Cohan. I am of sound mind and over the age of eighteen.
2. Further, I am a protected person who has presented a certified copy of a foreign order of protection to the Office of the Sheriff and requests that the same be registered in the injunction registry. The foreign order of protection is from the State of New Jersey, in the court ________, with case number V-04-002494-22 FD-04-180-22. The foreign order is currently in effect as written and has not been superseded by any other order.
3. The foreign order of protection was issued on 3-3-22.
4. To the best of my knowledge (choose one):

______ respondent was served with the order of protection because I was present at time of service;

______ respondent told me that he or she was served;

______ another named person told me respondent was served; or,

______ respondent told me that he or she knows of the content of the order and date of the return hearing.

I hereby certify under penalty of perjury, that I have read the foregoing and that the statements and facts in this order are true and correct to the best of my knowledge and belief.

5-29-25
Date

UCC 1-308, 1-1? 12 USC 411 without prejudice
Signature

Affiant (print name) John Michael Cohen
Agency: Jacksonville Sheriff's Office

Sworn to and signed before me this 29 day of May, 2025 by the aforementioned Affiant [___] who is personally known to me or [X] who has produced John M. Cohan as identification.

Signature: M. Greene #73983 [__] Judge or [X] Police Officer or [__] Notary

Maurice Greene (Printed Name)

## ***Your Case Information***

**Law Enforcement Agency:** Jacksonville Sheriff's Office (JSO)
**Emergency:** 9-1-1 *(TTY Services Available)*
**JSO's Non-Emergency:** (904) 630-0500
**JSO's Victim Advocates:** (904) 630-1764
**JSO's General Information:** (904) 630-7600

**Case Number:** 25-471040 & 471179

**Date of Report:** 08/16, 2025

**Incident Type:** Written Threats to Kill
Violation of Injunction

**Officer's Name / I.D. Number:** P.T. Burke #81350

**VINE Pin Number:** ____________

Victim Information & Notification Everyday (VINE) – www.vinelink.com
*VINE provides custody status and criminal case information.*
*Registration is required for this service*
Toll-Free VINE Line: 1-877-VINE-4-FL / 1-877-846-3435
TTY: 1-866-847-1298

Sgt Yarbor 1:00 pm "we will apply for a warrant to be issued."

"was not aware that she spoke to me directly at the 341 MEETING."

## ***Local Resources***

**Certified Rape Crisis Center: The Women's Center of Jacksonville**
*(Rape Recovery Team)*
thewcj.org | 5644 Colcord Avenue, Jacksonville, FL 32211
Phone: (904) 722-3000 | 24-Hour Rape Crisis Hotline: (904) 721-7273

**Domestic Violence Center: Hubbard House**
hubbardhouse.org | 24-Hour hotline: (904) 354-3114 or
1-800-500-1119 | *TTY: (904) 354-3958*

**First Coast Crime Stoppers:** 1-866-845-TIPS (8477)

*More resources available on pages 16-18.*

**Jacksonville Sheriff's Office**
**Incident (Offense)**
**2025-0471040**

**Sheriff T.K. Waters**

## Route To

*Groups:*
*People:*

## Incident Information

**Incident Location**

**1425 CHAFFEE RD S**
**JACKSONVILLE, FL 32221**
*Sub-sector:* **T2** *TAZ:* **544**
*Location Type:* **ONLINE**
*Primary Weapon Used:* **THREAT / INTIMIDATION**
*School Name:* *School Number:*
*Incident Occurred:* **Outside Location** *Incident Occurred In the Parking Lot at this Location?:* **NO**

*Day/Date/Time Reported:* **Saturday, 08/16/2025 09:19**
*Day/Date/Time Incident From:* **Friday, 08/15/2025 17:28** *To:* **Friday, 08/15/2025 17:28**
*Is this a Corrections Information Report?:* **NO**

**Miscellaneous**

*Drug Activity:* **NOT APPLICABLE** *Drug Type:* **NOT APPLICABLE**
*MCI Case:* **YES** *Follow-up By:* **Patrol**
*Was Hate Crime Involved?:* **NO** *Dating Violence Involved?:* **NO** *Is Offense(s) Related to Domestic Violence?:* **NO**
*If not Domestic Violence, Is it Domestic Related?:* **NO** *Any Children under 18 Involved as a Victim?:* **NO**

*# of Offenses:* **1**
*# of Victims:* **1**
*# of Suspects:* **1**

**NIBIN Leads**

**Associated CCR Numbers**

## Offense(s)

**#1** *Statute #:* **741.31(4)(A)** *Degree:* **M1** *UCR Code:* **9000** *Attempt Code:* **Committed**
**VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE**
*Criminal Activity Type:*

## Victim #1 - COHAN, JOHN MICHAEL

*Did victim invoke right to prevent the disclosure of personal info (Marsy's Law)?:* **NO**

**Demographics**

*Race:* **WHITE** *Sex:* **MALE** *Date of Birth:* **07/05/1989**
*Ethnicity:* **NOT OF HISPANIC ORIGIN**
*Primary Language:* **English** *Secondary Language:* **NOT APPLICABLE**
*Age:* **36** *Height (inches):* **5'10"** *Weight (lbs):* **170**
*Hair Style:* **NAPPY / UNKEMPT** *Hair Color:* **BROWN** *Hair Length:* **LONG**
*Build:* **THIN** *Eye Color:* **BLUE** *Facial Hair:* **BEARD**
*Complexion:* **PALE** *Voice:* **NORMAL**
*Clothing/Description:*

**Contact Information**

*Home Phone #:* *Bus. Phone #:* *Ext.:* *Alt. Phone #:*
*Cell Phone #:* **(516) 547-2810** *Cell Phone Provider:*
*Email Address:*

**Primary Identification**

*Type of ID Given:* **DRIVERS LICENSE** *ID:* **C500**[redacted] *Issuing State:* **FLORIDA**

**Home Address** **Mailing Address** **Alternate Address**

[redacted]
**JACKSONVILLE, FL** [redacted]
*Sub-sector:* **T4** *TAZ:* **456**

**Employment/School**

*Employer:* **UK** *Occupation:* **UK**
*School Last Attended:*

**Alternate Contact Information**

*Home Phone #:* *Bus. Phone #:* *Ext.:*
*Cell Phone #:* *Cell Phone Provider:*
*Email Address:*

**Other Information**

*Residence Type:* **CITY** *Residence Status:* **RESIDENT**

## Incident (Offense) 2025-0471040 (Continued)

*Drugs Involved?:* NO *Alcohol Involved?:* NO *Computer Involved?:* NO *Mode of Travel:* FOOT
*Victim Type:* ADULT *Injury Extent:* NONE *Injury Type:* NOT APPLICABLE
*Hospital Victim Taken To:* NOT APPLICABLE *Sexual Battery Type:*

**Life Saving Measures**
*Used?:* NO *Type:* *Narcan Administered By:* *Narcan Outcome:*

**Weapon(s) Involved**
*Weapon(s):* THREAT / INTIMIDATION

**Victim Relationship to Offender(s):**
*Relationship:* CHILD IN COMMON *To:* Suspect (01) - FREEDOM, PEACE M

**Related Offenses**
<unset>

## *Suspect #1 - FREEDOM, PEACE M*

**Demographics**
*Race:* BLACK *Sex:* FEMALE *Date of Birth:* 01/15/1993
*Ethnicity:* UNKNOWN
*Primary Language:* English *Secondary Language:* NOT APPLICABLE
*Age:* 32 *Height (inches):* 5'05" to 5'06" *Weight (lbs):* 130 to 140
*Hair Style:* *Hair Color:* BLACK *Hair Length:*
*Build:* *Eye Color:* BROWN *Facial Hair:*
*Complexion:* DARK *Voice:* UNKNOWN
*Clothing/Description:* UK
*Place of Birth:* UNKNOWN, UNKNOWN
*Nicknames:*
*Aliases:* PEACE EKUTA

**Distinguishing Marks (Scars, Marks, and Tattoos)**

**Contact Information**
*Home Phone #:* *Bus. Phone #:* *Ext.:* *Alt. Phone #:*
*Cell Phone #:* UK *Cell Phone Provider:*
*Email Address:*

**Primary Identification**
*Type of ID Given:* DRIVERS LICENSE *ID:* 204[redacted] *Issuing State:* DELAWARE

**Home Address** **Mailing Address** **Alternate Address**

**Employment/School**
*Employer:* UK *Occupation:* UK
*School Last Attended:*

**CEW (Conducted Electric Weapon)**
*ECD Usage:*
*RTR Written Related to This Incident?:* NO *RTR Incident Year:* *RTR Incident #:*

**Other Information**
*Drugs Involved?:* UNKNOWN *Alcohol Involved?:* UNKNOWN *Computer Involved?:* UNKNOWN
*Mode of Travel:* UNKNOWN *Juvenile?:* UNKNOWN *Confessed?:* NO
*Arrested?:* At Large *Were Miranda Rights Given?:* NO *Jail # Type:* NA *Jail Booking #:*

**Related Offenses**
<unset>

**Life Saving Measures**
*Used?:* NO *Type:* *Narcan Administered By:* *Narcan Outcome:*

## *Property #1 - Documents/ Personal or Business*

*Quantity:* 1 *Status:* NONE
*Turned In at:* NOT APPLICABLE
*Manufacturer:* *Model:*
*Serial Number:* *Color:*
*Description:* Copies of screenshots, injunction, and miscellaneous documents
*Related Charge:* #01: 741.31(4)(A) - VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE
*Value Stolen or Damaged:* *Value Recovered:* *Victim/Complaint Signed Signature Card:* N/A
*Was Property Recovered From Vehicle?:* NO *Vehicle Property Recovered From:*

**Property Owner:**

*JACKSONVILLE SHERIFF'S OFFICE*
*Bus. Contact Name:* P.T. BURKE (#81350) *Bus. Contact Phone #:* (904) 630-0500 *Ext.:*

## Incident (Offense) 2025-0471040 (Continued)

**Received From:**
Victim (01) - COHAN, JOHN MICHAEL

### *Additional Information*

**On 08/16/2025 at 0954, I responded to the Chaffee Public Library (1425 Chaffee Rd S) in reference to written threats to kill (CCR #25-471040) and a violation of injunction (this CCR). Upon arrival, I made contact with the victim, Mr. Cohan.**

**Note: Cohan and the suspect (Peace Freedom) were in an intimate relationship for 10 years and share a child [redacted] together. Cohan has a foreign (New Jersey) injunction (#FV-04-002494-22), which has been entered into Florida (#16-2025-AO-156901-FXXX-MA).**

**Cohan advised that on 04/09/2024 and 04/17/2024, Freedom telephonically (voice only) called in to his company's Federal Bankruptcy 341 hearing, knowing the injunction has been active since 03/03/2022. Cohan stated Freedom was not invited to the hearing, nor was she a part of the company. However, the hearing details were publicly available and the Federal Trustee (Mr. Bonkamp) allowed Freedom to remain in the hearing and to speak during the hearing and ask questions. According to Cohan, Bonkamp was notified of the active injunction and still allowed Freedom to remain. Cohan stated Freedom never identified herself by her real name and he did not see her, but due to their long shared history he recognized her voice immediately.**

**When speaking to Sgt. P. Yarber #5134, Cohan advised during the bankruptcy hearings Freedom spoke directly to him.**

**Cohan also provided a typed "Affidavit to Witness Statement" from a Mr. Hughes, who corroborates his account of the violation of injunction during the bankruptcy hearings.**

**Cohan further advised that between 05/2025-06/29/2025, Freedom "poked" him on Pi KSY cryptocurrency app, which sends him notifications to "keep mining" for cryptocurrency. The app allows users in the same crypto mining circle to send fellow miners reminders to continue mining, but no actual talking/ typing occurs. Cohan advised he was unable to remove Freedom from his group and he did not leave the group because he would lose all of his money/ crypto if he did.**

**It should be noted, Freedom's current location and contact information is unknown. Freedom's last police contact was in 2024 in Virginia, and her most recent driver's license is out of Delaware.**

**Because Cohan can reasonably identify Freedom's voice due to their history, Probable Cause exists to seek an arrest warrant for Freedom for violating the injunction.**

**The copies of the provided documents (property 1) were placed in the property room.**

**Case not cleared. Pending SAO disposition.**

### *Additional Question(s)*

**Body Worn Camera Footage**

| | | |
|---|---|---|
| 01 | *Is there Body Worn Camera (BWC) footage for incident?:* | YES |

**Risk Protection Order**

| | | |
|---|---|---|
| 01 | *Subject poses a significant danger of causing personal injury to himself/herself or others:* | NO |
| 02 | *Subject owns, has care, custody or control of, or has the ability to purchase, possess, or receive firearm(s) and/or ammunition:* | |
| 03 | *Subject was involved in a recent act or threat of violence against himself/herself or others, whether or not such violence involved a firearm:* | |
| 04 | *Subject has made a threat of violence in the past 12 months against himself/herself or others:* | |
| 05 | *Subject is seriously mentally ill or has recurring mental health issues:* | |
| 06 | *Subject was a respondent of, or violated, a previous/existing injunction related to domestic, dating, sexual, or repeat violence and/or stalking:* | |
| 07 | *The subject has previously been issued an RPO:* | |
| 08 | *Subject has previously violated the provisions of an RPO:* | |
| 09 | *Subject has been convicted of, had adjudication withheld on, or pled nolo contendere to, a crime constituting domestic violence in any state:* | |
| 10 | *Subject has used, or threatened to use, against himself/herself or others, any weapons or physical force:* | |
| 11 | *Subject has unlawfully or recklessly used, displayed, or brandished a firearm:* | |
| 12 | *Subject has stalked another person:* | |
| 13 | *Subject has been arrested for, convicted of, had adjudication withheld, or pled nolo contendere to a crime or threat of violence in any other state:* | |
| 14 | *Is evidence to demonstrate the abuse of controlled substances or alcohol by the subject:* | |
| 15 | *Is evidence to demonstrate the subject has recently acquired firearm(s) or ammunition:* | |
| 16 | *Is there any other relevant information provided by a family/household member concerning the subject. (If yes, place information into the narrative):* | |

**Investigative Resource Use**

## Incident (Offense) 2025-0471040 (Continued)

| | | |
|---|---|---|
| 1 | *Use of LPR assisted in investigation?:* | NO |
| 2 | *Use of NIBN assisted in investigation?:* | NO |
| 3 | *Use of RTCC assisted in investigation?:* | NO |

### *Misc Information*

*Clearance Status:* **CASE NOT CLEARED** *Clearance Code:* **NOT APPLICABLE** *Date Case Was Cleared:*
*Case Not Cleared Type:* **PENDING STATE ATTORNEY'S OFFICE DISP?** *Number of Cases Cleared:*
*Is there additional information included on a continuation report?:* **NO** *Are there other Pertinent Reports?:* **NO**
*Did this incident qualify as a "Cargo Theft"?:*
*Is this a "TeleServ" report?:* **NO** *Was victim provided options to obtain rights card?:*
*Option provided to victim?:*
*In your opinion is there significant reason to believe that the crime can be solved by a patrol follow-up investigation?:*
*Neighborhood Canvass Conducted?:*

**Case Card Information Left with: Person**

Victim (01) - COHAN, JOHN MICHAEL

**Handouts**

***#1:*** **Case Information Card**

**Bias Motivation(s)**

### *Investigation Time #1*

*Hour(s):* **03** *Minute(s):* **00** *Cost Amount:* **$144.72**

### *Signature*

**Signature(s)**

*Reporting Officer #1:* **P.T. BURKE ( #81350 )** *Division:* **PATROL** *Section/Unit:* **ZONE 5**
*Reporting Officer #2:* **N/A** *Division:* *Section/Unit:*
*Report submitted on:* **08/16/2025 11:59**
*Report Reviewer:* **P.G. YARBER II ( #5134 )** *Status:* **Approved**
*Report approved on:* **08/16/2025 17:11**

**Jacksonville Sheriff's Office**
**Incident (Offense)**
**2025-0471040**

**Sheriff T.K. Waters**

## *Route To*

*Groups:*
*People:*

## *Incident Information*

**Incident Location**
**1425 CHAFFEE RD S**
**JACKSONVILLE, FL 32221**
*Sub-sector:* T2 *TAZ:* 544
*Location Type:* ONLINE
*Primary Weapon Used:* THREAT / INTIMIDATION
*School Name:* *School Number:*
*Incident Occurred:* Outside Location *Incident Occurred in the Parking Lot at this Location?:* NO

*Day/Date/Time Reported:* Saturday, 08/16/2025 09:19
*Day/Date/Time Incident From:* Friday, 08/15/2025 17:28 *To:* Friday, 08/15/2025 17:28
*Is this a Corrections Information Report?:* NO

**Miscellaneous**
*Drug Activity:* NOT APPLICABLE *Drug Type:* NOT APPLICABLE
*MCI Case:* YES *Follow-up By:* Patrol
*Was Hate Crime Involved?:* NO *Dating Violence Involved?:* NO *Is Offense(s) Related to Domestic Violence?:* NO
*If not Domestic Violence, Is it Domestic Related?:* NO *Any Children under 18 Involved as a Victim?:* NO

*# of Offenses:* 1
*# of Victims:* 1
*# of Suspects:* 1

**NIBIN Leads**

**Associated CCR Numbers**

## *Offense(s)*

#1 *Statute #:* 741.31(4)(A) *Degree:* M1 *UCR Code:* 9000 *Attempt Code:* Committed
VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE
*Criminal Activity Type:*

## *Victim #1 - COHAN, JOHN MICHAEL*

*Did victim invoke right to prevent the disclosure of personal info (Marsy's Law)?:* NO

**Demographics**
*Race:* WHITE *Sex:* MALE *Date of Birth:* 07/05/1989
*Ethnicity:* NOT OF HISPANIC ORIGIN
*Primary Language:* English *Secondary Language:* NOT APPLICABLE
*Age:* 36 *Height (inches):* 5'10" *Weight (lbs):* 170
*Hair Style:* NAPPY / UNKEMPT *Hair Color:* BROWN *Hair Length:* LONG
*Build:* THIN *Eye Color:* BLUE *Facial Hair:* BEARD
*Complexion:* PALE *Voice:* NORMAL
*Clothing/Description:*

**Contact Information**
*Home Phone #:* *Bus. Phone #:* *Ext.:* *Alt. Phone #:*
*Cell Phone #:* (516) 547-2810 *Cell Phone Provider:*
*Email Address:*

**Primary Identification**
*Type of ID Given:* DRIVERS LICENSE *ID:* C500[redacted] *Issuing State:* FLORIDA

**Home Address** **Mailing Address** **Alternate Address**
[redacted]
JACKSONVILLE, FL [redacted]
*Sub-sector:* T4 *TAZ:* 456

**Employment/School**
*Employer:* UK *Occupation:* UK
*School Last Attended:*

**Alternate Contact Information**
*Home Phone #:* *Bus. Phone #:* *Ext.:*
*Cell Phone #:* *Cell Phone Provider:*
*Email Address:*

**Other Information**
*Residence Type:* CITY *Residence Status:* RESIDENT

## Incident (Offense) 2025-0471040 (Continued)

*Drugs Involved?:* NO *Alcohol Involved?:* NO *Computer Involved?:* NO *Mode of Travel:* FOOT
*Victim Type:* ADULT *Injury Extent:* NONE *Injury Type:* NOT APPLICABLE
*Hospital Victim Taken To:* NOT APPLICABLE *Sexual Battery Type:*

**Life Saving Measures**
*Used?:* NO *Type:* *Narcan Administered By:* *Narcan Outcome:*

**Weapon(s) Involved**
*Weapon(s):* THREAT / INTIMIDATION

**Victim Relationship to Offender(s):**
*Relationship:* CHILD IN COMMON *To:* Suspect (01) - FREEDOM, PEACE M

**Related Offenses**
<unset>

---

### *Suspect #1 - FREEDOM, PEACE M*

**Demographics**
*Race:* BLACK *Sex:* FEMALE *Date of Birth:* 01/15/1993
*Ethnicity:* UNKNOWN
*Primary Language:* English *Secondary Language:* NOT APPLICABLE
*Age:* 32 *Height (inches):* 5'05" to 5'06" *Weight (lbs):* 130 to 140
*Hair Style:* *Hair Color:* BLACK *Hair Length:*
*Build:* *Eye Color:* BROWN *Facial Hair:*
*Complexion:* DARK *Voice:* UNKNOWN
*Clothing/Description:* UK
*Place of Birth:* UNKNOWN, UNKNOWN
*Nicknames:*
*Aliases:* PEACE EKUTA

**Distinguishing Marks (Scars, Marks, and Tattoos)**

**Contact Information**
*Home Phone #:* *Bus. Phone #:* *Ext.:* *Alt. Phone #:*
*Cell Phone #:* UK *Cell Phone Provider:*
*Email Address:*

**Primary Identification**
*Type of ID Given:* DRIVERS LICENSE *ID:* 20[redacted] *Issuing State:* DELAWARE

**Home Address** **Mailing Address** **Alternate Address**

**Employment/School**
*Employer:* UK *Occupation:* UK
*School Last Attended:*

**CEW (Conducted Electric Weapon)**
*ECD Usage:*
*RTR Written Related to This Incident?:* NO *RTR Incident Year:* *RTR Incident #:*

**Other Information**
*Drugs Involved?:* UNKNOWN *Alcohol Involved?:* UNKNOWN *Computer Involved?:* UNKNOWN
*Mode of Travel:* UNKNOWN *Juvenile?:* UNKNOWN *Confessed?:* NO
*Arrested?:* At Large *Were Miranda Rights Given?:* NO *Jail # Type:* NA *Jail Booking #:*

**Related Offenses**
<unset>

**Life Saving Measures**
*Used?:* NO *Type:* *Narcan Administered By:* *Narcan Outcome:*

---

### *Property #1 - Documents/ Personal or Business*

*Quantity:* 1 *Status:* NONE
*Turned in at:* NOT APPLICABLE
*Manufacturer:* *Model:*
*Serial Number:* *Color:*
*Description:* Copies of screenshots, injunction, and miscellaneous documents
*Related Charge:* #01: 741.31(4)(A) - VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE
*Value Stolen or Damaged:* *Value Recovered:* *Victim/Complaint Signed Signature Card:* N/A
*Was Property Recovered From Vehicle?:* NO *Vehicle Property Recovered From:*

**Property Owner:**

***JACKSONVILLE SHERIFF'S OFFICE***
*Bus. Contact Name:* P.T. BURKE (#81350) *Bus. Contact Phone #:* (904) 630-0500 *Ext.:*

## Incident (Offense) 2025-0471040 (Continued)

**Received From:**
Victim (01) - COHAN, JOHN MICHAEL

### *Additional Information*

**On 08/16/2025 at 0954, I responded to the Chaffee Public Library (1425 Chaffee Rd S) in reference to written threats to kill (CCR #25-471040) and a violation of injunction (this CCR). Upon arrival, I made contact with the victim, Mr. Cohan.**

**Note: Cohan and the suspect (Peace Freedom) were in an intimate relationship for 10 years and share a child [redacted] together. Cohan has a foreign (New Jersey) injunction (#FV-04-002494-22), which has been entered into Florida (#16-2025-AO-156901-FXXX-MA).**

**Cohan advised that on 04/09/2024 and 04/17/2024, Freedom telephonically (voice only) called in to his company's Federal Bankruptcy 341 hearing, knowing the injunction has been active since 03/03/2022. Cohan stated Freedom was not invited to the hearing, nor was she a part of the company. However, the hearing details were publicly available and the Federal Trustee (Mr. Bonkamp) allowed Freedom to remain in the hearing and to speak during the hearing and ask questions. According to Cohan, Bonkamp was notified of the active injunction and still allowed Freedom to remain. Cohan stated Freedom never identified herself by her real name and he did not see her, but due to their long shared history he recognized her voice immediately.**

**When speaking to Sgt. P. Yarber #5134, Cohan advised during the bankruptcy hearings Freedom spoke directly to him.**

**Cohan also provided a typed "Affidavit to Witness Statement" from a Mr. Hughes, who corroborates his account of the violation of injunction during the bankruptcy hearings.**

**Cohan further advised that between 05/2025-06/29/2025, Freedom "poked" him on PI KSY cryptocurrency app, which sends him notifications to "keep mining" for cryptocurrency. The app allows users in the same crypto mining circle to send fellow miners reminders to continue mining, but no actual talking/ typing occurs. Cohan advised he was unable to remove Freedom from his group and he did not leave the group because he would lose all of his money/ crypto if he did.**

**It should be noted, Freedom's current location and contact information is unknown. Freedom's last police contact was in 2024 in Virginia, and her most recent driver's license is out of Delaware.**

**Because Cohan can reasonably identify Freedom's voice due to their history, Probable Cause exists to seek an arrest warrant for Freedom for violating the injunction.**

**The copies of the provided documents (property 1) were placed in the property room.**

**Case not cleared. Pending SAO disposition.**

### *Additional Question(s)*

**Body Worn Camera Footage**

| | | |
|---|---|---|
| 01 | *Is there Body Worn Camera (BWC) footage for incident?:* | YES |

**Risk Protection Order**

| | | |
|---|---|---|
| 01 | *Subject poses a significant danger of causing personal injury to himself/herself or others:* | NO |
| 02 | *Subject owns, has care, custody or control of, or has the ability to purchase, possess, or receive firearm(s) and/or ammunition:* | |
| 03 | *Subject was involved in a recent act or threat of violence against himself/herself or others, whether or not such violence involved a firearm:* | |
| 04 | *Subject has made a threat of violence in the past 12 months against himself/herself or others:* | |
| 05 | *Subject is seriously mentally ill or has recurring mental health issues:* | |
| 06 | *Subject was a respondent of, or violated, a previous/existing injunction related to domestic, dating, sexual, or repeat violence and/or stalking:* | |
| 07 | *The subject has previously been issued an RPO:* | |
| 08 | *Subject has previously violated the provisions of an RPO:* | |
| 09 | *Subject has been convicted of, had adjudication withheld on, or pled nolo contendere to, a crime constituting domestic violence in any state:* | |
| 10 | *Subject has used, or threatened to use, against himself/herself or others, any weapons or physical force:* | |
| 11 | *Subject has unlawfully or recklessly used, displayed, or brandished a firearm:* | |
| 12 | *Subject has stalked another person:* | |
| 13 | *Subject has been arrested for, convicted of, had adjudication withheld, or pled nolo contendere to a crime or threat of violence in any other state:* | |
| 14 | *Is evidence to demonstrate the abuse of controlled substances or alcohol by the subject:* | |
| 15 | *Is evidence to demonstrate the subject has recently acquired firearm(s) or ammunition:* | |
| 16 | *Is there any other relevant information provided by a family/household member concerning the subject. (If yes, place information into the narrative):* | |

**Investigative Resource Use**

## Incident (Offense) 2025-0471040 (Continued)

| | | |
|---|---|---|
| 1 | *Use of LPR assisted in investigation?:* | NO |
| 2 | *Use of NIBN assisted in investigation?:* | NO |
| 3 | *Use of RTCC assisted in investigation?:* | NO |

### *Misc Information*

*Clearance Status:* **CASE NOT CLEARED** *Clearance Code:* **NOT APPLICABLE** *Date Case Was Cleared:*
*Case Not Cleared Type:* **PENDING STATE ATTORNEY'S OFFICE DISP?** *Number of Cases Cleared:*
*Is there additional information included on a continuation report?:* **NO** *Are there other Pertinent Reports?:* **NO**
*Did this incident qualify as a "Cargo Theft"?:*
*Is this a "TeleServ" report?:* **NO** *Was victim provided options to obtain rights card?:*
*Option provided to victim?:*
*In your opinion is there significant reason to believe that the crime can be solved by a patrol follow-up investigation?:*
*Neighborhood Canvass Conducted?:*

**Case Card Information Left with: Person**

Victim (01) - COHAN, JOHN MICHAEL

**Handouts**

***#1:*** **Case Information Card**

**Bias Motivation(s)**

### *Investigation Time #1*

*Hour(s):* **03** *Minute(s):* **00** *Cost Amount:* **$144.72**

### *Signature*

**Signature(s)**

*Reporting Officer #1:* **P.T. BURKE ( #81350 )** *Division:* **PATROL** *Section/Unit:* **ZONE 5**
*Reporting Officer #2:* **N/A** *Division:* *Section/Unit:*
*Report submitted on:* **08/16/2025 11:59**
*Report Reviewer:* **P.G. YARBER II ( #5134 )** *Status:* **Approved**
*Report approved on:* **08/16/2025 17:11**

**Jacksonville Sheriff's Office**
**Incident (Offense)**
**2025-0471040**

**Sheriff T.K. Waters**

## Route To

*Groups:*
*People:*

## Incident Information

**Incident Location**

1425 CHAFFEE RD S
JACKSONVILLE, FL 32221
*Sub-sector:* T2 *TAZ:* 544
*Location Type:* ONLINE
*Primary Weapon Used:* THREAT / INTIMIDATION
*School Name:*

*Day/Date/Time Reported:* Saturday, 08/16/2025 09:19
*Day/Date/Time Incident From:* Friday, 08/15/2025 17:28 *To:* Friday, 08/15/2025 17:28
*Is this a Corrections Information Report?:* NO

*School Number:*

*Incident Occurred:* Outside Location *Incident Occurred In the Parking Lot at this Location?:* NO

**Miscellaneous**

*Drug Activity:* NOT APPLICABLE *Drug Type:* NOT APPLICABLE

*# of Offenses:* 1
*# of Victims:* 1
*# of Suspects:* 1

*MCI Case:* YES *Follow-up By:* Patrol
*Was Hate Crime Involved?:* NO *Dating Violence Involved?:* NO *Is Offense(s) Related to Domestic Violence?:* NO
*If not Domestic Violence, Is it Domestic Related?:* NO *Any Children under 18 Involved as a Victim?:* NO

**NIBIN Leads**

**Associated CCR Numbers**

## Offense(s)

**#1** *Statute #:* 741.31(4)(A) *Degree:* M1 *UCR Code:* 9000 *Attempt Code:* Committed
VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE
*Criminal Activity Type:*

## Victim #1 - COHAN, JOHN MICHAEL

*Did victim invoke right to prevent the disclosure of personal info (Marsy's Law)?:* NO

**Demographics**

*Race:* WHITE *Sex:* MALE *Date of Birth:* 07/05/1989
*Ethnicity:* NOT OF HISPANIC ORIGIN
*Primary Language:* English *Secondary Language:* NOT APPLICABLE
*Age:* 36 *Height (inches):* 5'10" *Weight (lbs):* 170
*Hair Style:* NAPPY / UNKEMPT *Hair Color:* BROWN *Hair Length:* LONG
*Build:* THIN *Eye Color:* BLUE *Facial Hair:* BEARD
*Complexion:* PALE *Voice:* NORMAL
*Clothing/Description:*

**Contact Information**

*Home Phone #:* *Bus. Phone #:* *Ext.:* *Alt. Phone #:*
*Cell Phone #:* (516) 547-2810 *Cell Phone Provider:*
*Email Address:*

**Primary Identification**

*Type of ID Given:* DRIVERS LICENSE *ID:* C500[redacted] *Issuing State:* FLORIDA

**Home Address**

[redacted]
JACKSONVILLE, FL [redacted]
*Sub-sector:* T4 *TAZ:* 456

**Mailing Address**

**Alternate Address**

**Employment/School**

*Employer:* UK *Occupation:* UK
*School Last Attended:*

**Alternate Contact Information**

*Home Phone #:* *Bus. Phone #:* *Ext.:*
*Cell Phone #:* *Cell Phone Provider:*
*Email Address:*

**Other Information**

*Residence Type:* CITY *Residence Status:* RESIDENT

## Incident (Offense) 2025-0471040 (Continued)

*Drugs Involved?:* NO *Alcohol Involved?:* NO *Computer Involved?:* NO *Mode of Travel:* FOOT
*Victim Type:* ADULT *Injury Extent:* NONE *Injury Type:* NOT APPLICABLE
*Hospital Victim Taken To:* NOT APPLICABLE *Sexual Battery Type:*

**Life Saving Measures**
*Used?:* NO *Type:* *Narcan Administered By:* *Narcan Outcome:*

**Weapon(s) Involved**
*Weapon(s):* THREAT / INTIMIDATION

**Victim Relationship to Offender(s):**
*Relationship:* CHILD IN COMMON *To:* Suspect (01) - FREEDOM, PEACE M

**Related Offenses**
<unset>

---

### *Suspect #1 - FREEDOM, PEACE M*

**Demographics**
*Race:* BLACK *Sex:* FEMALE *Date of Birth:* 01/15/1993
*Ethnicity:* UNKNOWN
*Primary Language:* English *Secondary Language:* NOT APPLICABLE
*Age:* 32 *Height (inches):* 5'05" to 5'06" *Weight (lbs):* 130 to 140
*Hair Style:* *Hair Color:* BLACK *Hair Length:*
*Build:* *Eye Color:* BROWN *Facial Hair:*
*Complexion:* DARK *Voice:* UNKNOWN
*Clothing/Description:* UK
*Place of Birth:* UNKNOWN, UNKNOWN
*Nicknames:*
*Aliases:* PEACE EKUTA

**Distinguishing Marks (Scars, Marks, and Tattoos)**

**Contact Information**
*Home Phone #:* *Bus. Phone #:* *Ext.:* *Alt. Phone #:*
*Cell Phone #:* UK *Cell Phone Provider:*
*Email Address:*

**Primary Identification**
*Type of ID Given:* DRIVERS LICENSE *ID:* 204[redacted] *Issuing State:* DELAWARE

**Home Address** **Mailing Address** **Alternate Address**

**Employment/School**
*Employer:* UK *Occupation:* UK
*School Last Attended:*

**CEW (Conducted Electric Weapon)**
*ECD Usage:*
*RTR Written Related to This Incident?:* NO *RTR Incident Year:* *RTR Incident #:*

**Other Information**
*Drugs Involved?:* UNKNOWN *Alcohol Involved?:* UNKNOWN *Computer Involved?:* UNKNOWN
*Mode of Travel:* UNKNOWN *Juvenile?:* UNKNOWN *Confessed?:* NO
*Arrested?:* At Large *Were Miranda Rights Given?:* NO *Jail # Type:* NA *Jail Booking #:*

**Related Offenses**
<unset>

**Life Saving Measures**
*Used?:* NO *Type:* *Narcan Administered By:* *Narcan Outcome:*

---

### *Property #1 - Documents/ Personal or Business*

*Quantity:* 1 *Status:* NONE
*Turned in at:* NOT APPLICABLE
*Manufacturer:* *Model:*
*Serial Number:* *Color:*
*Description:* Copies of screenshots, injunction, and miscellaneous documents
*Related Charge:* #01: 741.31(4)(A) - VIOLATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE
*Value Stolen or Damaged:* *Value Recovered:* *Victim/Complaint Signed Signature Card:* N/A
*Was Property Recovered From Vehicle?:* NO *Vehicle Property Recovered From:*

**Property Owner:**

### *JACKSONVILLE SHERIFF'S OFFICE*

*Bus. Contact Name:* P.T. BURKE ( #81350 ) *Bus. Contact Phone #:* (904) 630-0500 *Ext.:*

## Incident (Offense) 2025-0471040 (Continued)

**Received From:**

Victim (01) - COHAN, JOHN MICHAEL

### *Additional Information*

**On 08/16/2025 at 0954, I responded to the Chaffee Public Library (1425 Chaffee Rd S) in reference to written threats to kill (CCR #25-471040) and a violation of injunction (this CCR). Upon arrival, I made contact with the victim, Mr. Cohan.**

**Note: Cohan and the suspect (Peace Freedom) were in an intimate relationship for 10 years and share a child [redacted] together. Cohan has a foreign (New Jersey) injunction (#FV-04-002494-22), which has been entered into Florida (#16-2025-AO-156901-FXXX-MA).**

**Cohan advised that on 04/09/2024 and 04/17/2024, Freedom telephonically (voice only) called in to his company's Federal Bankruptcy 341 hearing, knowing the injunction has been active since 03/03/2022. Cohan stated Freedom was not invited to the hearing, nor was she a part of the company. However, the hearing details were publicly available and the Federal Trustee (Mr. Bonkamp) allowed Freedom to remain in the hearing and to speak during the hearing and ask questions. According to Cohan, Bonkamp was notified of the active injunction and still allowed Freedom to remain. Cohan stated Freedom never identified herself by her real name and he did not see her, but due to their long shared history he recognized her voice immediately.**

**When speaking to Sgt. P. Yarber #5134, Cohan advised during the bankruptcy hearings Freedom spoke directly to him.**

**Cohan also provided a typed "Affidavit to Witness Statement" from a Mr. Hughes, who corroborates his account of the violation of injunction during the bankruptcy hearings.**

**Cohan further advised that between 05/2025-06/29/2025, Freedom "poked" him on Pi KSY cryptocurrency app, which sends him notifications to "keep mining" for cryptocurrency. The app allows users in the same crypto mining circle to send fellow miners reminders to continue mining, but no actual talking/ typing occurs. Cohan advised he was unable to remove Freedom from his group and he did not leave the group because he would lose all of his money/ crypto if he did.**

**It should be noted, Freedom's current location and contact information is unknown. Freedom's last police contact was in 2024 in Virginia, and her most recent driver's license is out of Delaware.**

**Because Cohan can reasonably identify Freedom's voice due to their history, Probable Cause exists to seek an arrest warrant for Freedom for violating the injunction.**

**The copies of the provided documents (property 1) were placed in the property room.**

**Case not cleared. Pending SAO disposition.**

### *Additional Question(s)*

**Body Worn Camera Footage**

01 *Is there Body Worn Camera (BWC) footage for incident?:* **YES**

**Risk Protection Order**

01 *Subject poses a significant danger of causing personal injury to himself/herself or others:* **NO**

02 *Subject owns, has care, custody or control of, or has the ability to purchase, possess, or receive firearm(s) and/or ammunition:*

03 *Subject was involved in a recent act or threat of violence against himself/herself or others, whether or not such violence involved a firearm:*

04 *Subject has made a threat of violence in the past 12 months against himself/herself or others:*

05 *Subject is seriously mentally ill or has recurring mental health issues:*

06 *Subject was a respondent of, or violated, a previous/existing injunction related to domestic, dating, sexual, or repeat violence and/or stalking:*

07 *The subject has previously been issued an RPO:*

08 *Subject has previously violated the provisions of an RPO:*

09 *Subject has been convicted of, had adjudication withheld on, or pled nolo contendere to, a crime constituting domestic violence in any state:*

10 *Subject has used, or threatened to use, against himself/herself or others, any weapons or physical force:*

11 *Subject has unlawfully or recklessly used, displayed, or brandished a firearm:*

12 *Subject has stalked another person:*

13 *Subject has been arrested for, convicted of, had adjudication withheld, or pled nolo contendere to a crime or threat of violence in any other state:*

14 *Is evidence to demonstrate the abuse of controlled substances or alcohol by the subject:*

15 *Is evidence to demonstrate the subject has recently acquired firearm(s) or ammunition:*

16 *Is there any other relevant information provided by a family/household member concerning the subject. (If yes, place information into the narrative):*

**Investigative Resource Use**

## Incident (Offense) 2025-0471040 (Continued)

| | | |
|---|---|---|
| 1 | *Use of LPR assisted in investigation?:* | NO |
| 2 | *Use of NIBN assisted in investigation?:* | NO |
| 3 | *Use of RTCC assisted in investigation?:* | NO |

### *Misc Information*

*Clearance Status:* **CASE NOT CLEARED** *Clearance Code:* **NOT APPLICABLE** *Date Case Was Cleared:*
*Case Not Cleared Type:* **PENDING STATE ATTORNEY'S OFFICE DISP?** *Number of Cases Cleared:*
*Is there additional information included on a continuation report?:* **NO** *Are there other Pertinent Reports?:* **NO**
*Did this incident qualify as a "Cargo Theft"?:*
*Is this a "TeleServ" report?:* **NO** *Was victim provided options to obtain rights card?:*
*Option provided to victim?:*
*In your opinion is there significant reason to believe that the crime can be solved by a patrol follow-up investigation?:*
*Neighborhood Canvass Conducted?:*

**Case Card Information Left with:** **Person**

Victim (01) - COHAN, JOHN MICHAEL

**Handouts**

*#1:* **Case Information Card**

**Bias Motivation(s)**

### *Investigation Time #1*

*Hour(s):* **03** *Minute(s):* **00** *Cost Amount:* **$144.72**

### *Signature*

**Signature(s)**

*Reporting Officer #1:* **P.T. BURKE ( #81350 )** *Division:* **PATROL** *Section/Unit:* **ZONE 5**
*Reporting Officer #2:* **N/A** *Division:* *Section/Unit:*
*Report submitted on:* **08/16/2025 11:59**
*Report Reviewer:* **P.G. YARBER II ( #5134 )** *Status:* **Approved**
*Report approved on:* **08/16/2025 17:11**

**iustusprocessus@outlook.com**

**From:** Asbrand, Justin <JAsbrand@coj.net>
**Sent:** Wednesday, November 19, 2025 1:44 PM
**To:** Debitus Processus
**Subject:** RE: Following Up >> Warrant Status - JSO Report 25-471040

Good afternoon,

I just wanted to let you know that Judge Charbula signed the warrant on 11/10/25 and that it is active right now.

Thanks

**Justin Asbrand**
Assistant State Attorney
**State Attorney's Office, 4th Circuit**
311 W. Monroe St. – Jacksonville, FL 32202
O: (904) 255-2782
PURSUE JUSTICE ALWAYS

**From:** Debitus Processus <iustusprocessus@outlook.com>
**Sent:** Monday, November 17, 2025 12:08 PM
**To:** Asbrand, Justin <JAsbrand@coj.net>
**Subject:** RE: Following Up >> Warrant Status - JSO Report 25-471040

EXTERNAL EMAIL: This email originated from a non-COJ email address. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Mr. Asbrand,

Understood. I will await your confirmation regarding the system. Also, if it's any help to law enforcement, the last known jurisdiction she was in is Philadelphia, Pennsylvania. (See attached)

Thank you.

John Michael Cohan

**From:** Asbrand, Justin <JAsbrand@coj.net>
**Sent:** Monday, November 17, 2025 11:31 AM
**To:** Debitus Processus <iustusprocessus@outlook.com>
**Subject:** RE: Following Up >> Warrant Status - JSO Report 25-471040

Good morning,

**ORDERED.**

**Dated: November 04, 2025**

Jason A. Burgess
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC., Case No.: 3:24-bk-00496-BAJ

Debtor. Chapter 7

______________________________/

**ORDER GRANTING TRUSTEE'S MOTION TO (I) COMPROMISE CLAIMS WITH CHRISTOPHER D. WARREN, P.C., WARREN LAW GROUP, PLLC, AND SCOTT OH AND (II) ENJOIN CERTAIN CLAIMS**

THIS CASE came before the Court upon the Motion (the "Motion") (Doc. 435)[1] of Aaron R. Cohen, as Chapter 7 Trustee for the bankruptcy estate of Debtor, Genie Investments NV Inc., to (I) Approve Compromise with Christopher D. Warren, P.C., Warren Law Group, PLLC, and Scott Oh, and (II) Enjoin Certain Claims. John Michael Cohan and David Hughes filed an Objection to the Motion (Doc. 440) which was stricken by the Court in an Order dated October 28, 2025 (Doc. 457). No valid responses having been timely filed after proper notice to interested parties pursuant to Local Bankruptcy Rule 2002-4 on October 9, 2025, it is

**ORDERED**:

1. The Motion is granted.

[1] Defined terms from the Motion are incorporated by reference herein.

2. The Compromise is approved and is fully enforceable in all respects.

3. The Court finds that a bar order is a mandatory condition of the Compromise and that, without the bar order, the Compromise will not be consummated and that entry of a bar order is necessary and appropriate in order to achieve the payment to the bankruptcy estate contemplated by the Compromise, and that its entry is an appropriate exercise of the Court's sound discretion to facilitate settlements and promote the consensual resolution of disputes.

4. **Therefore, the right to pursue any claims held by the Debtor against Christopher D. Warren, P.C., Warren Law Group, PLLC, and Scott Oh (as well as any purported successors in interest) are solely owned by the bankruptcy estate and all non-debtor parties are enjoined from asserting a claim against Christopher D. Warren, P.C., Warren Law Group, PLLC, and Scott Oh arising out of or related to their representation of the Debtor, included, but not limited to, the District Court Action.**

5. The trial on the Motion scheduled for December 2, 2025, at 1:30 p.m. is CANCELED.

Attorney Raye C. Elliott is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

8:44

Edit

US Bankruptcy Court
Middle District of Florida

message call video mail

November 5, 2025

10:35 AM **Missed Call**

Contact Photo & Poster

phone
(904) 301-6490

Notes

Favorites Recents Contacts Keypad Voicemail

11:00 5G

< Voicemail

**US Bankruptcy Court Middle District of Florida**

phone

November 5, 2025 at 10:36 AM

0:01 −0:24

Transcription

"Hi, this is Seth calling from United States bankruptcy court. This message is for John Michael or for David. It is imperative that I speak with John Michael today. If you could give me a call back at 904-301-6491 that number again, 904-301-6491 thank you...."

Was this transcription useful or not useful?

Favorites Recents Contacts Keypad Voicemail 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:
GENIE INVESTMENTS NV INC.,

Debtor.
______________________________/

Case No.: 3:24-bk-00496-BAJ

Chapter 7

CHARLES BLAKE STRINGER and
NUTRA-ACRES, LLC

Plaintiffs

vs.

GENIE INVESTMENTS NV INC.

Defendant
______________________________/

Adv. Pro. No.: 3:26-ap-00063-BAJ

**NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

Plaintiffs, CHARLES BLAKE STRINGER and NUTRA-ACRES, LLC ("Plaintiffs"), by and through their undersigned counsel, file this, their *Notice of Voluntary Dismissal Without Prejudice* of this Adversary Proceeding.

Respectfully submitted this 17th day of August, 2026.

*/s/ Scott W. Spradley*
SCOTT W. SPRADLEY
Florida Bar No. 782467
Law Offices of Scott W. Spradley, P.A.
301 S. Central Avenue
P.O. Box 1
Flagler Beach, FL 32136
Tel: 386/693-4935
Fax: 386/693-4937
scott@flaglerbeachlaw.com
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic means this 17th day of August, 2026 to all parties in interest.

*/s/ Scott W. Spradley*
SCOTT W. SPRADLEY

# AFFIDAVIT OF WITNESS – PROOF OF SERVICE TO U.S. TRUSTEE

**TO WHOM IT MAY CONCERN:**

I, **David C. Hughes**, declare under penalty of perjury as follows:

On **April 9, 2024**, at the **Jacksonville federal courthouse**, I personally witnessed my business partner, **John M. Cohan**, showed a copy of his **Order of Protection** to **Mr. Bomkamp**, the United States Trustee assigned to our bankruptcy matter. The Order of Protection involved Mr. Cohan's former partner, **Peace**, whom he had previously identified to Mr. Bomkamp during an earlier proceeding as a party who should not be permitted access to future calls or meetings.

Mr. Cohan clearly instructed Mr. Bomkamp to ensure that Peace would not be present on any future conference calls or 341 proceedings due to legitimate safety concerns for himself and his daughter.

However, during a subsequent 341 meeting held on or about **April 17, 2024**, I personally heard that John, was very upset that Peace was again present on the call, and Mr. Cohan once more brought this to Mr. Bomkamp's attention. Despite prior notice, her presence didn't appear to be restricted by Mr. Bomkamp.

There is no question in my mind that Mr. Cohan acted responsibly and in good faith, and that he has legitimate fears for the safety of *himself and his child. It is deeply concerning* and perplexing that Mr. Bomkamp failed to ensure that a person subject to a valid court-issued protective order was not excluded from subsequent proceedings.

I swear that the above statements are true and accurate to the best of my knowledge and belief, under penalty of perjury under the laws of the United States and the State of Florida.

Respectfully submitted,

[signature]

**David C. Hughes**
2812 Pat Tillman Drive
Springfield, IL 62711
Email: davidchoatehughes@gmail.com

Dated: 5/9/2025


File
Edit
Effects
View
Help
40:55:385
42:45:449
40:57:577
S
Selection:
40:51
40:52
40:53
40:54
40:55
40:56
40:57
40:58
40:59
41:00
[R]
-Inf
-70
-68
-66
-64
-62
-60
-58
-56
-54
-52
-50
-48
-46
-44
-42
-40
-38
-36
-34
-32
-30
-28