ORDERED.

**Dated: September 25, 2026**

Luis E. Rivera II
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In Re:

Verified Motion for Recusal and Disqualification of Judge Jason A. Burgess Pursuant to 28 U.S.C. § 455(a), ________________________________/

Misc. Pro. No. 2:26-mp-00001-FMR

**MEMORANDUM OPINION AND ORDER DENYING VERIFIED MOTION FOR RECUSAL AND DISQUALIFICATION OF JUDGE JASON A. BURGESS PURSUANT TO 28 U.S.C. § 455(a)**

Before the Court is the *Verified Motion for Recusal and Disqualification of Judge Jason A. Burgess Pursuant to 28 U.S.C. § 455(a)* ("**Disqualification Motion**")[1] filed by John Micheal Cohan ("**Mr. Cohan**").

[1] MP Doc. No. 1. References to documents entered in this miscellaneous proceeding shall be referred to as "MP Doc. No. __." References to documents entered in the bankruptcy case of *In re Genie Investments NV Inc.*, Case No. 3:24-bk-00496-BAJ, shall be referred to as "Doc. No. __."

Mr. Cohan and Intervenor David Hughes ("**Mr. Hughes**")[2] seek to disqualify the Honorable Jason A. Burgess, United States Bankruptcy Judge ("**Judge Burgess**"), from further proceedings in *In re Genie Investments NV Inc.,* Case No. 3:24-bk-00496-BAJ (the "**Main Case**"), and in all related adversary proceedings.[3] They contend that Judge Burgess's rulings on their papers in the Main Case reveal "a pattern of judicial conduct that would cause a reasonable observer to question the Court's impartiality."[4] They also assert that the alleged appearance of impropriety is heightened because Akerman LLP ("**Akerman**"), counsel to the Chapter 7 Trustee, has employed Judge Burgess's former law clerk.[5] The United States Trustee and Aaron R. Cohen, the Chapter 7 Trustee, oppose the motion.[6]

Given the seriousness of Mr. Cohan's allegations, Judge Burgess referred the Disqualification Motion—and all directly related issues—to this Court for

---

[2] The Court grants *David Hughes' Motion to Intervene & Brief for a Limited Purpose, to Participate in the Recusal Proceeding, and for Immediate Limited Discovery* (MP Doc. No. 38). The Court permitted Mr. Hughes to intervene in this contested matter because he has a claim that shares a common question of law or fact with Mr. Cohan's claims. *See* Fed. R. Civ. P. 24(b)(1)(B) (a court may permit an interested party to intervene where he "has a claim or defense that shares with the main action a common question of law or fact").

[3] MP Doc. No. 1 ¶ 74; MP Doc. No. 38 at 1.

[4] *Id.* ¶ 1.

[5] *Id.* ¶ 71 (asserting "[t]he appearance of impropriety is compounded by the fact that the Trustee's counsel, Akerman LLP has now employed Judge Burgess's former law clerk").

[6] *See generally Response to Verified Motion for Recusal and Disqualification of Judge Jason A. Burgess Pursuant to 28 U.S.C. § 455(a)* (MP Doc. No. 18), *Response to Brief in Support of Motion to Disqualify Judge Burgess* (MP Doc. No. 44), and *Response to John Michael Cohan's Supplemental Briefing in Support of Motion for Recusal* (MP Doc. No. 45).

adjudication.[7]

The Court held a hearing on the Disqualification Motion on August 12, 2026.[8] At its conclusion, the Court authorized Mr. Cohan and Mr. Hughes to file supporting briefs, and invited responses from other interested parties.[9] The Court then took the matter under advisement.[10]

For the reasons that follow, the Court concludes Mr. Cohan and Mr. Hughes lack Article III standing to seek Judge Burgess's recusal. And even if they had standing, recusal would not be warranted: the Disqualification Motion identifies only adverse rulings and routine case-management decisions, not an extrajudicial source of bias or the deep-seated favoritism or antagonism

---

[7] *Order: 1) Providing for Judge Rivera to Preside Over a Contested Matter, 2) Directing Clerk to Open a Miscellaneous Proceeding for this Matter, and 3) Directing All Future Filings related to that Matter be Filed in the New Proceeding for this Case* (MP Doc. No. 2).
[8] *Hearing Proceeding Memo* (MP Doc. No. 23).
[9] *Scheduling Order* (MP Doc. No. 25). On August 19, 2026, Mr. Cohan mailed his *Supplemental Brief in Support of Motion for Recusal* (MP Doc. No. 33), and Mr. Hughes mailed his *Motion to Intervene & Brief for a Limited Purpose, to Participate in the Recusal Proceeding, and for Immediate, Limited Discovery* (MP Doc. No. 38).

On August 31, 2026, the United States Trustee filed a response to Mr. Cohan's supplemental brief (MP Doc. No. 44), and the Chapter 7 Trustee filed a separate response (MP Doc. No. 45). That same day, Mr. Cohan submitted the following unauthorized supplemental filings, which the Court has nevertheless considered:

- *Notice of Filing in Related Bankruptcy Case and Request for Judicial Notice* (MP Doc. No. 46);
- *Notice of Supplemental Authority in Support of Recusal Motion, Misc. Doc 1, 31, 32 and in Support of Response to Trustee's Motion for Protective Order Filed Contemporaneously Herewith* (MP Doc. No. 47);
- *Amended Notice of Supplemental Briefing in Support of Motion for Recusal* (MP Doc. No. 56); and
- *Amended Notice of Supplemental Authority in Support of Recusal Motion, Misc. Doc. 1,31,32 and in Support of Response to Trustee's Motion for Protective Order, filed Contemporaneously Herewith* (MP Doc. No. 57).

[10] MP Doc. No. 25.

required to establish disqualifying partiality. This memorandum opinion constitutes the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052, as made applicable to this contested matter by Rule 9014.

## I. Background[11]

Mr. Hughes, Mr. Cohan, and Caleb Davis founded Genie Investments NV, Inc. ("**Debtor**").[12] Before bankruptcy, the Debtor operated as a "financial small business lending firm,"[13] offering prospective borrowers low interest, nonrecourse loans known as Business Expansion Lines of Credit.[14]

The Debtor later alleged that Josh Wearmouth and Velanos Principal Capital, Inc. defrauded it of a $9 million investment in Velanos.[15] After customers sued the Debtor and its brokers to recover prepaid fees,[16] the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code[17] on February 21, 2024.[18] Under the Court's blind-draw assignment system, the Clerk randomly assigned the case to Judge Burgess.[19]

---

[11] These facts and background are undisputed and drawn from the record.
[12] *Chapter 11 Case Management Summary*, at 1 (Doc. No. 44).
[13] *Id.*
[14] *Examiner's Report* at 7 (Doc. No. 146).
[15] Doc. No. 44, 1-2.
[16] *Id.*
[17] 11 U.S.C. § 101 - 1532 (the "**Bankruptcy Code**" or the "**Code**"). Unless otherwise indicated, all statutory references are to the Bankruptcy Code.
[18] Doc. No. 1.
[19] *See* M.D. Fla. L. R. 1073-1 (requiring the Clerk to "assign cases to an individual judge using a blind draw system to ensure the random assignment of cases").

Early in the case, the United States Trustee moved to appoint a chapter 11 trustee, alleging—based on interviews with eighteen small-business owners—that the Debtor had orchestrated a fraudulent loan scheme.[20] Following a two-day trial, Judge Burgess granted the motion in part and denied it in part.[21] Rather than appoint a trustee, he directed the appointment of an examiner under § 1104(c) to investigate the alleged fraud.[22]

After investigating the Debtor's financial affairs, the examiner concluded that appointing an independent fiduciary was necessary and would best serve creditors' interests.[23] Against that backdrop, and at the United States Trustee's request,[24] the Court converted the case to chapter 7 on August 9, 2024.[25] The United States Trustee then appointed Aaron R. Cohen as interim trustee of the Debtor's estate, and he later became the permanent Chapter 7 Trustee by operation of 11 U.S.C. § 702(d).[26]

Soon after conversion to chapter 7, Mr. Cohan and Mr. Hughes began filing motions against the Chapter 7 Trustee, Akerman, and the United States

[20] *See generally* Doc. No. 20.
[21] Doc. No. 60.
[22] *Id.* ¶ 2-3.
[23] *See generally* Doc. No. 146.
[24] *United States Trustee's Second Motion to Appoint Chapter 11 Trustee, Dismiss Case, or Convert to Chapter 7* (Doc. No. 154).
[25] *Order (I) Granting United States Trustee's Second Motion to Appoint Chapter 11 Trustee, Dismiss Case, or Convert to Chapter 7; (II) Directing Clerk to Convert Case to Chapter 7; and (III) Ordering Related Relief* (Doc. No. 203).
[26] Doc. No. 207.

Trustee.[27] Those motions alleged retaliation, abuse of process, and breaches of fiduciary duty.[28] From the conversion through March 27, 2025, they collectively filed more than 28 papers in the Main Case.[29]

The volume of these filings, and the judicial resources required to address them, prompted the Court to enter an *Order to Show Cause* on March 27, 2025.[30] The Order directed Mr. Cohan and Mr. Hughes to appear and show cause why the Court should permit them to continue filing *pro se* pleadings in the Main Case.[31] After receiving rulings with which they disagreed, they directed their allegations at Judge Burgess, asserting that his "pattern of conduct and [ ] recent orders . . . demonstrate[d] a clear effort to conceal fraud and obstruct justice by suppressing meritorious motions and evidence."[32]

---

[27] *See, e.g.*, *Combined Motion for Sanction and Protective Order Against Chapter Trustee for Retaliatory Conduct, Abuse of Process, and Breach of Fiduciary Duty* (Doc. No. 274); *Motion to Compel Disclosure of Trustee Communications and Administrative Decisions* (Doc. No. 277); *Motion For Sanctions Against Chapter 7 Trustee, Akerman LLP, Aaron Cohen, and Ray Elliott for Bad Faith Litigation, Abuse of Process, Suppression of Exculpatory Evidence, Retaliation, and Breach of Fiduciary Duty* (Doc. No. 322); *Motion For Sanctions for Violation of the Automatic Stay under 11 U.S.C. Sec. 362(k). and Bad Faith Litigation Against Raye C. Elliott & Akerman LLP* (Doc. No. 325).

[28] *Id.*

[29] As of August 7, 2026, Mr. Cohan and Mr. Hughes had filed 88 pleadings and 9 notices of appeal of various orders entered by the Court in the Main Case. MP Doc. No. 18 ¶ 6. As of the same date, Mr. Cohan and Mr. Hughes had also filed 30 papers and 6 notices of appeal in one of the relayed adversary proceedings. *Id.*

[30] *Order to Show Cause* (Doc. No. 347).

[31] *Id.* at 3.

[32] *Objection to Judicial Conduct and Suppression of Evidence* (Doc. No. 426). *See generally Notice of Retaliatory Action and Procedural Irregularity* (Doc. No. 476); *Notice of Systemic Docket Tampering, Ex Parte Communication, and Compromise of Judicial Integrity* (Doc.

Now, in the Disqualification Motion, Mr. Cohan advances two grounds for Judge Burgess's disqualification under 28 U.S.C. § 455. First, he argues that Judge Burgess's failure to rule on the *Motion to Modify or Rescind Order to Show Cause*[33] reflects "a pattern of judicial conduct that would cause a reasonable observer to question the Court's impartiality."[34] In his view:

> A judge cannot preside over a case where he has systematically suppressed a litigant's access to the courts, retaliated against the litigant for reporting a crime, selectively enforced procedural rules, and presided over a docket from which evidence of a verified crime was removed without any motion, hearing, or court order. Recusal is required.[35]

Second, Mr. Cohan contends that an appearance of impropriety arises from Judge Burgess's former law clerk, Taylor King ("**Mr. King**"), joining Akerman in May 2026.[36]

The Chapter 7 Trustee and the United States Trustee oppose the Disqualification Motion.[37] They contend Mr. Cohan and Mr. Hughes lack standing to seek Judge Burgess's recusal and, in any event, that the motion rests solely on adverse rulings and routine docket administration, which, as a matter of law, do not give rise to a reasonable question about judicial

---

No. 477); and *Notice of Thanksgiving Administrative Filing Irregularity in Poor Attempt to Rebut Judicially-Verified 341 Meeting Criminal Act* (Doc. No. 498).
[33] Doc. No. 347.
[34] MP Doc. No. 1 ¶ 1.
[35] *Id.* ¶ 2.
[36] *Id.* ¶ 71.
[37] *See generally* MP Doc. Nos. 18, 44 & 45.

impartiality.[38] Relying on *Liteky v. United States*,[39] they argue that judicial rulings, case-management decisions, and ordinary courtroom administration support recusal only when they reveal deep-seated favoritism or antagonism that would make fair judgment impossible—ordinarily based on an extrajudicial source.[40]

The Trustee and the United States Trustee also contend that Judge Burgess reasonably and thoughtfully addressed the burdens created by Mr. Cohan's and Mr. Hughes's extensive filings.[41] As to the argument based on Mr. King's employment with Akerman, the Chapter 7 Trustee responds that Mr. King has been properly screened in compliance with Rule 4-1.12 of the Rules Regulating The Florida Bar.[42] The Trustee further argues that, even if they had not complied, any resulting disqualification would apply to Akerman—not Judge Burgess.[43]

**II. Legal Standard for Disqualification**

Under 28 U.S.C. § 455(a), a judge must disqualify himself from any proceeding in which his "impartiality might reasonably be questioned."[44] Section 455 thus requires recusal when the circumstances create an

[38] MP Doc. No. 18, at 6.
[39] *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).
[40] *Id.* at 5.
[41] MP Doc. No. 44. ¶ 9-11.
[42] MP Doc. No. 45, at 1-2.
[43] *Id.*
[44] 28 U.S.C. § 455(a).

appearance of impropriety or when one of the specific grounds in § 455(b) establishes actual partiality.[45] The statute protects public confidence in the judiciary by avoiding even the appearance of impropriety.[46]

The governing question is whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."[47] The inquiry is objective and fact-specific; § 455 does not require recusal based on conjecture, suspicion, or "unsupported, irrational or highly tenuous speculation."[48] Nor does a party's request for disqualification, standing alone, require the judge to recuse.[49]

Ordinarily, disqualifying bias must be personal and stem from an extrajudicial source.[50] Thus, adverse rulings, case-management decisions, and views formed during the proceedings generally do not warrant recusal under

---

[45] *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (describing § 455's "two primary reasons for recusal").
[46] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988) ("The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.").
[47] *Patti*, 337 F.3d at 1322.
[48] *United States v. Cerceda*, 188 F.3d 1291, 1292 (11th Cir. 1999).
[49] *Johnson v. Stein Mart, Inc.*, No. 306-CV-341-J-34TEM, 2009 WL 1424214, at *1 (M.D. Fla. May 20, 2009) ("[A] presiding judge is strongly encouraged not to recuse or disqualify himself at the mere request of a party.").
[50] *See Loranger v. Stierheim*, 10 F.3d 776, 780 (11th Cir. 1994) ("For a bias to be personal, and therefore disqualifying, it must stem from an extra-judicial source.") (cleaned up); *Liteky*, 510 U.S. at 541 (The Supreme Court requires that a judge "cannot possibly show reliance upon an extrajudicial source").

§ 455(a).[51] The exception to this rule is narrow: when no extrajudicial source exists, recusal is warranted only if the judge's words or conduct reveal such deep-seated favoritism or antagonism that fair judgment is impossible.[52]

*United States v. Torkington*[53] illustrates the exceptional circumstances necessary to establish disqualifying partiality without an extrajudicial source.[54] There, after an earlier remand, the trial judge converted a defense motion for mistrial into a motion for judgment of acquittal and dismissed the prosecution at the outset of trial.[55] The judge also repeatedly disparaged the prosecution, calling it "silly," a waste of taxpayer funds, and a Rolex "vendetta" against the defendant.[56] The combination of this extraordinary ruling and those disparaging remarks created the appearance of partiality requiring reassignment.[57]

---

[51] *See Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001) ("Precedent clearly holds that adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt.").

[52] *See Liteky*, 510 U.S. at 555 (noting judicial rulings "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required").

[53] *United States v. Torkington*, 874 F.2d 1441 (11th Cir. 1989).

[54] *Id.* at 1447.

[55] *Id.*

[56] *Id.*

[57] *See id.* ("We conclude both that the trial judge has demonstrated great difficulty in putting aside his prior conclusions about the merits of this prosecution and that reassignment is necessary to preserve the appearance of impartiality.").

By contrast, unfavorable rulings alone do not establish disqualifying bias.[58] Even rulings denying counsel or dismissing claims, though adverse to a party, do not by themselves cause a reasonable observer cause to question the Court's impartiality.[59] Nor may recusal rest on bare accusation alone. Even when properly pleaded facts are accepted as true, they must persuade a reasonable person that bias exists.[60] "[C]onjecture and speculation," without competent factual support, do not justify disqualification.[61]

## III. Analysis

### A. Mr. Cohan Lacks Standing

Before reaching the merits, the Court must determine whether the movants have standing.[62] Standing must be present "at every stage of litigation."[63]

To establish Article III standing, a movant must show "(1) an actual (or

---

[58] *Byrne*, 261 F.3d at 1103 ("[A]dverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt.").
[59] *See United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004) ("Berger's recusal argument has no merit under § 455(a) because Berger's only evidence of bias is the district court's adverse ruling denying him counsel, which is insufficient to form a basis for recusal.").
[60] *See Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000) ("To warrant recusal . . ., the moving party must allege facts that would convince a reasonable person that bias actually exists.).
[61] *Cerceda,* 188 F.3d at 1293.
[62] *See United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (noting standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims"); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims.").
[63] *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1233 (11th Cir. 2020) ("To have a case or controversy, a litigant must establish that he has standing, which must exist 'throughout all stages of litigation, including on appeal.").

imminent), concrete, and particularized injury in fact (2) that is fairly traceable to the defendant's challenged action and (3) that is likely to be redressable by a favorable decision."[64]

Section 1109(b) permits a party in interest, including an equity security holder, to raise issues and be heard in a chapter 11 case.[65] But that statutory right does not exist in chapter 7.[66] And, in any event, it does not itself establish Article III standing.[67] Even in bankruptcy, the movant must still show a concrete and particularized injury—typically a direct pecuniary interest in the outcome—that is fairly traceable to the challenged conduct and likely to be redressed by the requested relief.[68]

Here, Mr. Cohan and Mr. Hughes lack standing to seek Judge Burgess's recusal. As equity security holders, Mr. Cohan and Mr. Hughes have no pecuniary interest in the estate because there is no reasonable prospect of a

---

[64] *In re Breland*, 989 F.3d 919, 922 (11th Cir. 2021).
[65] *See* 11 U.S.C. § 1109(b) ("A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter").
[66] *See generally* 11 U.S.C. § 701-784.
[67] *See Westwood Cmty. Two Ass'n v. Barbee (In re Westwood Cmty. Two Ass'n, Inc.)*, 293 F.3d 1332, 1336 (11th Cir. 2002) ("[M]ere participation in a hearing on the approval of a settlement or compromise in an adversary proceeding does not constitute *de facto* intervention: The fact that the appellants were given an opportunity to be heard in the bankruptcy court does not provide a basis for standing on appeal.").
[68] *Id.* at 2 ("White-Lett's argument that § 504 created a cause of action does not call into question the district court's determination that she had no redressable injury. And we conclude, for the reasons set forth in the district court's decision, that White-Lett did not have an injury that would be redressed by a favorable decision regarding the validity of RRA's claim. Accordingly, we affirm.").

surplus distribution after creditors are paid.[69] Nor does the Disqualification Motion identify a concrete injury to any personal right arising from Judge Burgess's challenged conduct; its generalized due-process assertions are not enough.[70]

The claimed injury is also not redressable. Recusal will not restore Mr. Cohan or Mr. Hughes to their former positions with the Debtor or otherwise alter their right to a distribution from the estate.[71] They therefore lack Article III standing to pursue disqualification.

Finally, although Judge Burgess permitted Mr. Cohan and Mr. Hughes to be heard in the main proceeding, that opportunity did not confer Article III standing.[72] Without a concrete, redressable injury, Mr. Cohan and Mr. Hughes lack standing to seek recusal.

---

[69] *United States v. Day*, 215 F. App'x 975, 976 (11th Cir. 2007) ("Because there was no pending action before the district court in which Day's rights were at issue, Day did not have standing to seek recusal."). Here, Schedule E/F – signed by Mr. Cohan under penalty of perjury – admits roughly $10.7 million in unsecured claims. Doc. No. 39, at 16-41. And as of the filing of the Disqualification Motion, over $39 million in claims have been filed in the Main Case. *See generally* Claims Register. Yet, as of March 31, 2026, the Chapter 7 Trustee has recovered a mere $1,581,689.05 for the payment of claims in the case. *Interim Report for Period Ending March 31, 2026* (Doc. No. 573). Under these circumstances, the Court concludes there is no reasonable prospect of a surplus distribution after creditors are paid.
[70] *See generally* MP Doc. No. 1.
[71] *See Day*, 215 F. App'x at 976 ("Because there was no pending action before the district court in which Day's rights were at issue, Day did not have standing to seek recusal."); *see also In re White-Lett*, No. 24-13053, 2025 WL 2528783, at *2 (11th Cir. Sept. 3, 2025) (an injury must be "redressable").
[72] *See supra* note 67.

### B. Even if Mr. Cohan and Mr. Hughes had Standing, Recusal is Still Unwarranted

Even if Mr. Cohan and Mr. Hughes had standing to seek Judge Burgess's recusal in the Main Case – which they do not – the Disqualification Motion and the hearing proffers would not warrant recusal. Their claim rests on actions Judge Burgess allegedly took, or declined to take, while presiding over the Main Case.[73] They point principally to: the absence of a final ruling on the *Order to Show Cause*;[74] the purported "Retaliatory Bar Order" entered in connection with approval of a compromise among the Chapter 7 Trustee, Christopher D. Warren, P.C., Warren Law Group, PLLC, and Scott Oh;[75] the striking of papers filed in violation of the *Order to Show Cause*;[76] and the grant of the Trustee's contempt motion against Mr. Cohan and Mr. Hughes in a related adversary proceeding.[77]

At the hearing, Mr. Cohan and Mr. Hughes focused principally on Judge Burgess's decisions to strike Mr. Cohan's filings, which they contend denied him an opportunity to be heard.[78] Mr. Cohan and Mr. Hughes also challenged Akerman's ethical screen for Mr. King and speculated that off-the-

[73] MP Doc. No. 1 ¶¶ 13 – 27, 43 - 59.
[74] *Id.* ¶ 13-19.
[75] *Id.* ¶ 20-24.
[76] *Id.* ¶ 25-27.
[77] *Id.* ¶ 46 -52. The remaining allegations concern the conduct of others involved in the Main Case —including the United States Trustee, the Chapter 7 Trustee, and Akerman—not conduct by Judge Burgess. *Id.* ¶ 28- 42.
[78] MP Doc. No. 23. (Mr. Cohan: "My claims were extinguished by Burgess, and I was silenced by Burgess, strike after strike after strike, after strike, by Burgess").

record communications may have occurred.[79] But the record does not support either contention.

The asserted bias arises entirely from Judge Burgess's conduct in presiding over the Main Case: his case-management decisions, conduct at hearings, and rulings adverse to Mr. Cohan and Mr. Hughes. The Motion identifies no personal or extrajudicial source of bias. It does not allege that Judge Burgess acted because of a personal, familial, professional, or financial relationship; that a personal contact participated in the Main Case; or that Judge Burgess engaged in *ex parte* communications or private discussions concerning issues before him.[80] Nor does the Motion identify any statement by Judge Burgess evidencing favoritism toward one party or antagonism toward another.[81]

At most, Mr. Cohan and Mr. Hughes challenge Judge Burgess's administration of the Main Case and rulings with which they disagree. Those are ordinary judicial acts, not evidence of disqualifying bias.[82] The Court's

---

[79] *Id.* (Mr. Cohan: "I would agree that it is usually routine and that they do have the procedures in place in order to prevent that, but that is for on the record activity. We don't know what's going to happen off the record. We don't know what Mr. King has told Akerman. We don't know what Mr. King knows personally from this case. We have no idea")

[80] *See generally* MP Doc. No. 1.

[81] *See United States v. Kelly*, 888 F.2d 732, 738 (11th Cir. 1989) (Extra judicial sources includes public or private conversations between the judge and personal contacts, that put the judge in an "awkward position"); *Torkington,* 874 F.2d at 1447 ("Rather, we respond to the appearance of a lack of neutrality and act to preserve in the public mind the image of absolute impartiality and fairness of the judiciary.").

[82] *Byrne*, 261 F.3d at 1103; *Hoffman v. Jimenez*, No. 2:25-CV-00131-KCD-DNF, 2026 WL 139259, at *1 (M.D. Fla. Jan. 20, 2026) ("Administrative decisions, like managing the docket

decisions to strike noncompliant filings and to enter rulings adverse to Mr. Cohan and Mr. Hughes may be subject to review through appropriate procedures, but they do not, without more, establish a basis for recusal.[83] The record likewise does not show that Judge Burgess distorted a party's filing to dispose of a claim at the first opportunity or otherwise deprived a litigant of a meaningful opportunity to be heard.[84]

The allegation concerning Mr. King fares no better. Mr. King served as Judge Burgess's law clerk from May 2022 through May 2026, after which he joined Akerman, counsel to the Chapter 7 Trustee. [85] Although Mr. Cohan and Mr. Hughes acknowledge that Mr. King attempted to "self-cure [the] potential conflict of interest," they contend that his employment at Akerman creates an appearance of impropriety because of unspecified off-the-record communications.[86] Speculation about communications that might have

---

or determining who may access the electronic filing system, are standard exercises of judicial discretion, not evidence of prejudice.") (*citing In re Walker*, 532 F.3d 1304, 1311 (11th Cir. 2008)).

[83] *Hoffman*, 2026 WL 139259, at *1 ("Administrative decisions, like managing the docket or determining who may access the electronic filing system, are standard exercises of judicial discretion, not evidence of prejudice.") (*citing In re Walker*, 532 F.3d 1304, 1311 (11th Cir. 2008)).

[84] *Compare* Doc. No. 347 ("The Court's handling of this Case clearly reflects that the Court has taken great strides to liberally construe the pleadings filed by the Interested Parties' *pro se* filings. However, the Interested Parties are still bound to follow the rules of procedure and evidence."), *with Torkington,* 874 F.2d at 1447.

[85] MP Doc. No. 1 ¶ 71.

[86] *Id.*

occurred, however, is not evidence that any such communication occurred or that it concerned this case.

The undisputed record establishes that Akerman timely screened Mr. King from the Main Case.[87] Akerman notified the Court and interested parties of the screen, [88] and represented that Mr. King was not staffed on the matter, had no access to Akerman's electronic case files, and had no involvement in the Main Case.[89] Mr. Cohan and Mr. Hughes identified no specific improper communication, conversation, or act by Mr. King—either in the Motion or at the hearing. [90]

Moreover, a law clerk's views ordinarily are not attributed to the judge.[91] When a clerk has a potential conflict or is aware of a disqualifying

---

[87] *See Notice of Ethical Screening Pursuant to Florida Bar Rule of Professional Conduct 4-1.12* ¶ 3 (Doc. No. 613) ("Akerman has implemented a timely and effective ethical screen to prohibit Mr. King from any participation in this matter.").

[88] *See generally* Doc. No. 613.

[89] *See* MP Doc. No. 23 (Ms. Ray: "Law firms routinely hire law clerks from judges and there is a procedure to screen those clerks away from any cases they worked on. My firm has done that in this case. I don't have any contact with Mr. King in this case. Our files are all digital and there is actually a wall put up where he can't even access the digital files in this case"). *See also* Doc. No. 613 ¶ 3-4 (describing screening procedures and confirming "Mr. King will have no involvement whatsoever" in the Main Case).

[90] *See* MP Doc. No. 1, at p. 16, ¶71 ("The issue is the appearance created by the structure of the representation . . . The undersigned fears what may occur or has occurred 'off-the-record'. The appearance of impropriety is unavoidable."); MP Doc. No. 23 (Mr. Cohan: "I would agree that it is usually routine and that they do have the procedures in place in order to prevent that, but that is for on the record activity. We don't know what's going to happen off the record. We don't know what Mr. King has told Akerman. We don't know what Mr. King knows personally from this case. We have no idea").

[91] *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1525 (11th Cir. 1988) (citing *In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 968 (5th Cir. 1980)) ("[T]he views of [a] judge's law clerk cannot be attributed to that judge.").

circumstance, the appropriate remedy is ordinarily to disqualify the clerk, not the judge.[92] An ethical concern may arise if a former law clerk worked on a particular matter, learned the judge's confidential views about that matter, and then represents a party in the same matter.[93] That is not this case. The record contains no evidence that Mr. King participated in the Main Case after joining Akerman, received confidential information bearing on the matters before Judge Burgess, or engaged in any improper communication.[94] His former clerkship and subsequent employment at Akerman therefore do not create a reasonable basis to question Judge Burgess's impartiality.

## IV. Conclusion

Mr. Cohan and Mr. Hughes lack Article III standing to seek Judge Burgess's recusal because, as equity security holders with no reasonable prospect of a surplus distribution, they have neither a concrete, redressable injury nor a pecuniary interest in the estate. Their asserted interest in an opportunity to be heard in the Main Case does not alter that conclusion.

Even if they had standing, recusal is unwarranted. The Disqualification Motion identifies adverse rulings and routine case-management decisions, not

---

[92] *See Parker*, 855 F.2d at 1525 ("[W]hen a judge's law clerk has a possible conflict of interest or knows of other disqualifying factors it is the clerk, not the judge, who must be disqualified." (internal citations omitted)).
[93] *Brown v. Brock*, 169 F. App'x 579, 583 (11th Cir. 2006) ("[A]n ethical danger exists only if the law clerk knows the judge's thoughts about a specific matter and the law clerk subsequently represents one of the parties to the matter before the judge.").
[94] *See supra* note 80.

an extrajudicial source of bias, deep-seated favoritism or antagonism, or evidence that Mr. King participated in the Main Case after joining Akerman despite the firm's undisputed ethical screen. The Disqualification Motion will therefore be denied.

Accordingly, it is

**ORDERED:**

1. The *Motion for Recusal and Disqualification of Judge Jason A. Burgess Pursuant to 28 U.S.C. § 455(a)* (MP Doc. No. 1) is **DENIED**.

2. *David Hughes' Motion to Intervene & Brief for a Limited Purpose, to Participate in the Recusal Proceeding, and for Immediate, Limited Discovery* is **GRANTED** to the extent that Mr. Hughes was permitted to intervene and participate in this Miscellaneous Proceeding.

3. All other pending motions are **DENIED AS MOOT**.

4. The Clerk is **DIRECTED** to enter a copy of this order on the docket in the case of *In re Genie Investments NV Inc.*, Case No. 3:24-bk-00496-BAJ, and close this miscellaneous proceeding.

The Clerk's office is directed to serve a copy of this order on interested parties via CM/ECF.