FILED via mail
JACKSONVILLE, FLORIDA
OCT 05 2026
CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:
GENIE INVESTMENTS NV, INC.,
Debtor.

Case No. 3:24-bk-00496-BAJ
Chapter 7

# DAVID HUGHES'S NOTICE OF CONSISTENT POSITION AND CONDITIONAL CUSTOMER RESTITUTION PROPOSAL

David Hughes, appearing pro se and as an interested party, submits this Notice to clarify his consistent position regarding Genie's customers, the contractual treatment of their payments, and the recovery available for their benefit. This Notice supplements, but does not replace or waive, his pending motion under Fed. R. Civ. P. 60(d)(3).

## I. "DOLLAR IN, DOLLAR OUT"

David Hughes's position has always been straightforward, as he has testified to: if a customer paid one dollar, Genie wants that customer to receive one dollar back. The difficulty is that available funds, at this time, may be insufficient to provide a complete recovery to every customer.

The funds ultimately available may change substantially depending on the Court's ruling on the pending Rule 60(d)(3) motion. Mr. Hughes passionately maintains that the conversion was wrongfully obtained through fraud on the court, deprived Genie's management of control, and caused expenses that were unnecessary or avoidable. He does not ask the Court to decide those issues through this Notice.

## II. CONTRACTUAL BASIS FOR TIERED CUSTOMER TREATMENT

The controlling BELOC Agreement specifically addresses the circumstances presented here. Section 13.7(c) provides that the lender is not liable for a failure or delay in funding advances caused by events beyond its control, including a wholesale lender's failure or delay. It requires prompt notice, diligent efforts to end the delay and minimize its effects, and resumption of performance as soon as

reasonably practicable. It also tolls applicable cure periods during the force-majeure event.

Section 13.7(c), read with the Agreement's ICA provisions, supports treating valid ICA-related refund claims as the first contractual category for consideration. It recognizes that an ICA transaction may involve delayed funding and a contractual process governing the resulting cure, performance, and refund consequences. It does not mean that every ICA payment is automatically refundable; the governing agreement, payment records, and applicable conditions must still be established. Immediately below is section 13.7 of the BELOC agreement.

(c) Notwithstanding anything to the contrary in the subpart (a) above or anywhere else in this Agreement or the other LOC Documents, Lender shall not be liable or responsible to the Borrower, nor be deemed to have defaulted under or breached this Agreement, for any failure or delay in funding Advances pursuant to this Agreement, when and to the extent such failure or delay is caused by or results from acts beyond Lender's control, including, without limitation, the following force majeure events ("Force Majeure Event(s)"): (i) acts of God; (ii) flood, fire, earthquake, explosion or prolonged break-down of transport, telecommunication or electric current; (iii) war (whether declared or not), armed conflict or the serious threat of the same (including but not limited to hostile attack, blockade, military embargo), hostilities, invasion, act of a foreign enemy, extensive military mobilization; civil war, riot, rebellion, revolution, military or usurped power, insurrection, civil commotion or disorder, mob violence, act of civil disobedience; act of terrorism, sabotage or piracy; (iv) plague, epidemic, pandemic, outbreaks of infectious disease or any other public health crisis, including quarantine, or other restrictions; (v) act of authority whether lawful or unlawful, compliance with any law or governmental order, rule, regulation or direction, curfew restriction, expropriation, compulsory acquisition, seizure of works, requisition, nationalization; (vi) embargoes or blockades in effect on or after the date of this Agreement; (vii) national or regional emergency; (viii) strikes, labor stoppages or slowdowns or other industrial disturbances; (ix) failure or delay of Lender's wholesale lender from performing. Lender shall give prompt notice of the Force Majeure Event to the Borrower, stating the period of time the occurrence is expected to continue. Lender shall use diligent efforts to end the failure or delay and ensure the effects of such Force Majeure Event are minimized. Lender shall resume the performance of its obligations as soon as reasonably practicable after the removal of the cause. The cure periods provided for in subpart (a) above shall be tolled during the pendency of a Force Majeure Event.

Genie's management did not merely make "best efforts." Management pursued all available and practicable efforts to limit customer losses, recover funds, resolve

disputes, and preserve value. During the Chapter 11 proceedings, management also testified and volunteered to continue working without compensation while writing checks and addressing customer obligations. That conduct is consistent with Genie's central objective: maximizing customer recovery. This is the exact reason Genie management voluntarily filed for Chapter 11.

## III. PROPOSED PRIORITY OF RECOVERY

Subject to the Court's orders, claim allowance, available funds, and proven offsets, Mr. Hughes respectfully asks the Court to consider this framework:

1. First tier—ICA customers. Valid contractual refunds owed to ICA customers should receive first consideration.
2. Second tier—other customers. Remaining funds should be considered for customers whose agreements describe payments as nonrefundable, particularly where evidence indicates that the underlying transactions were affected by fraud, misconduct, or third-party conduct involving Velanos or McMann Commercial Lending.
3. Offsets and disputed amounts. Any distribution should account for prior payments, duplicate claims, customer conduct, credits, and legally established offsets or defenses.

This proposal does not concede that every customer has an allowed claim or that every payment is refundable. It asks the Court to preserve a fair recovery mechanism if funds are insufficient for complete reimbursement.

## IV. VELANOS RECOVERY AND THE CHALLENGED CONVERSION

Before conversion, Genie's management worked to resolve the Velanos matter for the benefit of Genie's customers and obtained a fully executed settlement agreement providing for approximately $20 million. After conversion, the Chapter 7 Trustee contacted Adam Walker, Esq., and the same economic $20 million settlement was presented to and approved by the Court. The only change was the allowance by Velanos of the Chapter 7 Trustee.

Mr. Hughes maintains that the Velanos recovery should be directed to customer restitution to the maximum extent legally permitted. The Court should also

consider whether post-conversion expenses were necessary, reasonable, beneficial to the estate, or caused by the challenged conversion.

## V. CONCLUSION

The proposed approach is consistent with Genie's pre-conversion position: customers come first. They were the reason Genie voluntarily entered bankruptcy, and the BELOC structure was designed to address precisely the type of funding disruption and customer-loss scenario presented here.

Accordingly, Mr. Hughes respectfully requests that the Court consider ICA customers first, preserve appropriate consideration for nonrefundable customers affected by alleged fraud or misconduct, and direct every legally available dollar toward customer recovery.

Respectfully submitted,

/s/ David Hughes
David Hughes, pro se
82 Plantation Pointe Road, No. 281
Fairhope, Alabama 36532
Telephone: 217-416-5059
(217) 416-5059
davidchoatehughes@gmail.com

Dated: September 23rd, 2026

## CERTIFICATE OF SERVICE

I certify that on September 23rd, 2026, I served a true and correct copy of this Notice on all parties entitled to service through the Court's CM/ECF system and by any additional method required by the applicable rules or Court order.

/s/ David Hughes
David Hughes

d Hughes
Plantation Pointe Rd.
hope, AL 36532




US Bankruptcy Court
Jacksonville Division Bryan Simpson
United States Courthouse
300 North Hogan Street Suite 3-150
Jacksonville, FL 32202