**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FILED MAIL USBC
JAX, FL OCT6'26

**In re:**
**GENIE INVESTMENTS NV, INC.,**
Debtor.

Case No. 3:24-bk-00496-BAJ
Chapter 7

**DAVID HUGHES' EMERGENCY MOTION TO CONVERT THE NOVEMBER 9, 2026 RULE 60(d)(3) HEARING TO AN EVIDENTIARY HEARING, AUTHORIZE EXPEDITED LIMITED DISCOVERY, PERMIT WITNESS TESTIMONY, AND DEFER MATTERS MATERIALLY DEPENDENT ON THE CHALLENGED RECORD**

David Hughes, appearing pro se and as an interested party, respectfully moves for an order converting the November 9, 2026, non-evidentiary hearing on his motion under Rule 60(d)(3), Doc. 651, to an evidentiary hearing; authorizing expedited, narrowly tailored discovery; permitting testimony from identified witnesses; allowing supplementation of the witness and exhibit lists; and deferring matters materially dependent upon the challenged conversion record. In support, Mr. Hughes states:

## I. RELIEF REQUESTED

1. The Court presently has scheduled a non-evidentiary hearing on November 9, 2026, at noon, concerning Mr. Hughes's motion for relief from the August 12, 2024, conversion order based on alleged fraud on the court.
2. Mr. Hughes respectfully requests that the Court:

a. convert the November 9 hearing into an evidentiary hearing;

b. permit Mr. Hughes to introduce authenticated documentary evidence and present witness testimony;

c. authorize one expedited round of targeted interrogatories and requests for production;

d. authorize limited oral examinations or depositions of material witnesses;

e. permit Mr. Hughes to call Adam B. Walker as a principal witness concerning his opposition memorandum, declaration, investigation, and analysis;

f. permit testimony from the United States Trustee or a designated representative; Aaron R. Cohen, Chapter 7 Trustee; Raye Curry Elliott, counsel for the Chapter 7 Trustee; Maria Yip, former Examiner; Hal Levenberg, the Examiner's assistant; Ryan Davis, counsel approved by the Court in connection with the Examiner; counsel for the creditor committee; Bryan K. Mickler, former debtor's counsel; one additional expert witness; and finally a few customers.

g. permit Mr. Hughes to supplement his witness and exhibit lists after discovery;

h. permit a focused motion in limine after discovery and before the evidentiary hearing;

i. defer proceedings materially dependent upon the challenged conversion record until the Rule 60(d)(3) issue is adjudicated; and

j. permit remote participation for discovery conferences, status conferences, and other proceedings for which remote appearance is appropriate. Require in-person attendance at the evidentiary hearing for parties and material witnesses who reside in Florida, while permitting remote testimony or participation for those residing outside Florida, subject to the Court's direction and any necessary safeguards.

Mr. Hughes does not request an indefinite stay of the bankruptcy case. He requests a limited case-management order allowing the Court first to determine whether the integrity of the conversion record was materially compromised.

## II. EXISTING HEARING SCHEDULE

4. The Court has ordered the following November 9 schedule:

a. 10:00 a.m.—trial on John Michael Cohan's motion concerning the show-cause proceedings;

b. 10:00 a.m.—trial on the Trustee's motion for preliminary and permanent injunction;

c. 12:00 p.m.—hearing on the Amended Verified Omnibus Objection to Claims filed by Mr. Cohan; and

d. 12:00 p.m.—hearing on Mr. Hughes's Rule 60(d)(3) motion, presently designated non-evidentiary.

5. Mr. Hughes recognizes that these matters have been ordered and does not ask the Court to reconsider the schedule merely because it is inconvenient. He requests a limited sequencing and evidentiary order because his motion presents a threshold challenge to the reliability and integrity of the record underlying the August 12, 2024, conversion order.

6. Mr. Hughes is not asking the Court to decide Mr. Cohan's standing issues or claim objections through this motion. The requested relief concerns only the procedure necessary to adjudicate Mr. Hughes's Rule 60(d)(3) motion fairly.

## III. THE CONVERSION ORDER AND THE RECORD AT ISSUE

7. On August 9, 2024, the Court entered an order granting the United States Trustee's second motion to appoint a Chapter 11 trustee, dismiss the case, or convert it to Chapter 7, directing conversion, and imposing related asset-preservation relief.
8. The order states that the Court ruled after the August 8 hearing and directed conversion based on reasons stated in open court.
9. Mr. Hughes contends that the conversion proceedings were tainted by a pervasive pattern of incomplete, materially misleading, contractually unsupported, and mutually inconsistent factual assertions, many of which were contradicted by the documentary and testimonial record.
10. The disputed record includes, among other things:

a. the United States Trustee's first conversion-related motion and the arguments presented at the first hearing;

b. the United States Trustee's second motion, Doc. 154;

c. the Examiner's report;

d. the BELOC Agreement;

e. the Bridge Loan Agreement;

f. the Due Diligence Agreement;

g. 341-meetings testimony and transcripts;

h. testimony and exhibits from the conversion hearings;

i. communications concerning the source and ownership of funds transferred to Velanos;

j. communications concerning the treatment of Interest Credit Account payments;

k. Adam Walker's opposition memorandum and declaration; and

l. communications exchanged among the United States Trustee, Examiner, Examiner's personnel, debtor's counsel, and other participants.

m. the recorded customer-risk-management call involving John Michael Cohan and Daniel Knutsen, together with any verified transcript, authentication declaration, and related customer-risk-management script.

11. The Court cannot fairly determine whether the conversion record was materially affected by fraud on the court without permitting the parties to compare the statements and representations relied upon by the Court with the controlling contracts and the complete documentary and testimonial record.

## IV. ADAM WALKER'S EVIDENCE IS CENTRAL

12. Adam B. Walker is an attorney licensed in Missouri and formerly worked for more than twelve years as an enforcement lawyer for FINRA, where he investigated fraudulent and potentially fraudulent investment activity.

13. Walker's declaration states that he investigated the Velanos transaction, reviewed the Joint Venture Agreement and amendments, communicated with prior counsel, and concluded that Genie had a colorable claim concerning the prior counsel's failure to identify material risks.

14. Walker's opposition memorandum directly challenged the United States Trustee's characterization of the Examiner's report. It states:

"But nowhere in the 51-page Report is there any finding or conclusion that Genie engaged in fraud. The UST simply invented this 'confirmation' and attributed it to its hand-selected Examiner."

15. Walker further stated:

"The UST's insistence that the Report 'confirms' key allegations from its initial motion . . . reveals its willingness to mischaracterize and embellish the Report's contents to suit its purposes."

16. Walker also wrote:

"The 'express purpose' alleged by the UST as direct evidence of fraud is itself a fraud, fabricated by the UST and unsupported by any evidence in the Report or elsewhere in the record of this case."

17. Regarding the alleged "customer funds" theory, Walker stated:

"The BELOC Agreement, which both the Examiner and the UST ignore, makes clear that ICA Payments received by Genie were not required to be held in trust and therefore did not constitute 'customer funds.'"

18. Walker's memorandum further explains that the BELOC Agreement required the Lender to create an Interest Credit Account on its books and records, credit the ICA payment, apply the credit to interest, and refund amounts only when specified contractual conditions were satisfied.

19. Walker also identified Section 13.7(c)'s tolling provision concerning a wholesale lender's failure to perform. His analysis is that this provision is inconsistent with the theory that ICA payments were required to remain untouched in trust accounts.

20. Walker's evidence is material to:

a. what the Examiner's report actually found;

b. whether the United States Trustee accurately characterized that report;

c. whether the BELOC Agreement was considered;

d. whether the "customer funds" theory was consistent with the contract;

e. whether the report omitted material evidence;

f. whether the Court received a materially incomplete or distorted presentation; and

g. whether the challenged matters could have affected the conversion ruling.

21. Mr. Hughes therefore requests permission to call Walker as a witness and to examine him concerning:

a. his qualifications and investigation;

b. his review of the Examiner's report;

c. his analysis of the BELOC Agreement and related agreements;

d. his communications with Genie and prior counsel;

e. the factual basis for his opposition memorandum and declaration;

f. the documents he reviewed or requested; and

g. the material omissions, inconsistencies, or mischaracterizations identified in his written submissions.

## V. MATERIAL FACTUAL DISPUTES REQUIRE AN EVIDENTIARY HEARING

22. The motion presents disputed issues of fact, including:

a. what the United States Trustee represented to the Court;

b. what the Examiner actually concluded;

c. what documents the Examiner reviewed, requested, received, or omitted;

d. whether the Examiner analyzed the controlling contracts;

e. how the "customer funds" theory originated and developed;

f. whether the BELOC Agreement required ICA payments to be held in trust;

g. whether the Bridge Loan Agreement and Due Diligence Agreement supported or contradicted the asserted theory;

h. whether the $9 million transferred to Velanos consisted of Genie-owned funds;

i. whether Genie relied on legal advice from Scott Oh and Warren Law Group;

j. whether the conversion record accurately described the chronology of the Velanos transactions;

k. whether material contrary evidence was presented to the Court;

l. whether Adam Walker's opposition memorandum and declaration were adequately presented; and

m. whether Mr. Mickler advised the Debtor of the right to request an evidentiary conversion hearing.

23. These issues cannot fairly be resolved solely through counsel's argument at a non-evidentiary hearing. They require authenticated documents, testimony, examination, and an opportunity to compare competing factual accounts.

24. The Court's own scheduling orders demonstrate that, when a matter is designated for trial, the Court requires witness lists, exhibits, discovery completion, authenticity objections, and other procedures designed to permit orderly presentation of evidence.

25. The same safeguards are necessary here because the Rule 60(d)(3) motion expressly challenges the integrity of a prior adjudicative record and requests an evidentiary hearing.

## VI. PROPOSED WITNESSES

26. Mr. Hughes presently expects to call the following witnesses, subject to the Court's rulings concerning relevance, privilege, personal knowledge, availability, and subpoena requirements:

**A. Adam B. Walker**

27. Walker would testify concerning his investigation, opposition memorandum, declaration, review of the Examiner's report, analysis of the BELOC Agreement, and the factual bases for his conclusions.

**B. United States Trustee or Designated Representative**

28. The United States Trustee or a designated representative would be examined concerning:

a. the first and second conversion motions;

b. documents and testimony relied upon;

c. the origin and development of the "customer funds" theory;

d. communications with the Examiner;

e. the basis for asserting that the Examiner's report confirmed fraud; and

f. the presentation of allegedly material facts to the Court.

**C. Aaron R. Cohen**

29. Chapter 7 Trustee Aaron R. Cohen would be examined concerning his reliance upon the conversion record, the subsequent use of the Examiner's report, and the factual materials relied upon in later estate proceedings.

**D. Raye Curry Elliott**

30. Raye Curry Elliott, counsel for the Chapter 7 Trustee, would be examined concerning the preparation of Trustee filings, communications regarding the contracts and Examiner's report, and the factual basis for representations made in subsequent proceedings.

**E. Maria Yip**

31. Former Examiner Maria Yip would be examined concerning:

a. her investigative methodology;

b. documents reviewed and not reviewed;

c. treatment of the BELOC, Bridge Loan, and Due Diligence Agreements;

d. repeated requests for information concerning "customer funds";

e. the source of statements contained in the report;

f. the distinction between contract interpretation and factual investigation; and

g. the meaning and limits of the report's conclusions.

**F. Hal Levenberg**

32. Hal Levenberg would be examined concerning his role in the Examiner's investigation, communications with Genie, requests for information, and the chronology and substance of the evidence supplied to the Examiner.

33. The communications reflect that Levenberg repeatedly requested information concerning the source of the $9 million transferred to Velanos and the source of loan funds. The communications also reflect Genie's responses that the funds were owned by Genie and derived from income, including ICA payments, bridge-loan interest, and due-diligence payments.

**G. Ryan Davis**

34. Ryan Davis, counsel approved by the Court in connection with the Examiner, would be examined concerning his role in the investigation, communications regarding evidence and the report, his statements during the conversion hearing, and the preparation or review of materials, subject to privilege and other applicable limitations.

**H. Counsel for the Creditor Committee**

35. Counsel for the creditor committee would be examined, to the extent relevant and permissible, concerning documents and representations presented to or relied upon by the committee in connection with conversion and the alleged fraud theories.

**I. Bryan K. Mickler**

36. Bryan K. Mickler, former counsel for the Debtor, would be examined concerning:

a. his engagement and representation;

b. communications concerning material matters;

c. whether the Debtor was advised that it could request an evidentiary conversion hearing;

d. whether Adam Walker's memorandum and declaration were presented to the Court;

e. whether Walker was considered as a witness;

f. the decision to proceed primarily through oral argument;

g. communications concerning the Examiner's report and the "customer funds" theory;

h. evidence he chose to submit and evidence that was never presented in any manner; and

i. advice concerning conversion, personal exposure, reconsideration, and appellate relief.

37. Mr. Hughes recognizes that testimony from attorneys and representatives may implicate attorney-client privilege, work-product protection, confidentiality, or other objections. He requests that such objections be resolved through ordinary evidentiary and discovery procedures rather than by denying an evidentiary hearing in advance.

**K. Daniel Knutson**

38. Daniel Knutsen is a material witness concerning whether Genie maintained and followed ordinary customer-risk-management and disclosure practices, which directly bears on any allegation of negligence or gross mismanagement. The Court previously denied a motion in limine concerning customer witnesses associated with McMann Commercial Lending, and the United States Trustee's initial questioning of Mr. Hughes, including whether he had brought "happy customers", underscored the apparent importance of customer testimony. Mr. Knutsen's testimony, together with the recorded customer-risk-management call, may provide firsthand evidence regarding the transaction's disclosures, risks, non-guaranteed closing date, payment terms, and customer understanding. This evidence should have been presented for the Court's consideration, but Mr. Mickler did not advise Mr. Hughes that he could request an evidentiary hearing, despite the engagement permitting group discussion of material developments. Accordingly, Mr. Knutsen should be permitted to testify so the Court can evaluate the complete record rather than allegations presented without the benefit of available customer evidence.

## VII. REQUESTED DISCOVERY

39. Mr. Hughes requests one expedited, narrowly tailored round of discovery limited to the alleged fraud on the court and the integrity of the conversion record.

40. The requested document discovery should include:

a. all 341-meeting transcripts, recordings, exhibits, and official summaries concerning Genie;

b. transcripts, recordings, exhibits, and official summaries of the first conversion hearing. Permitting Mr. Hughes to introduce the recorded customer-risk-management call, a verified transcript if available, the related script, and competent authentication evidence, subject to the Court's rulings concerning relevance, foundation, hearsay, completeness, and weight;

c. transcripts, recordings, exhibits, and official summaries of the second conversion hearing;

d. the first and second United States Trustee conversion motions, amendments, exhibits, responses, and supporting materials;

e. the complete Examiner's report and all exhibits;

f. nonprivileged Examiner workpapers, interview memoranda, document requests, production logs, and communications concerning the investigation;

g. communications concerning "customer funds," ICA payments, ICA reserves, and ICA deposits;

h. the complete BELOC Agreement and related loan documents;

i. the Bridge Loan Agreement and Due Diligence Agreement;

j. communications concerning the interpretation or treatment of those agreements;

k. communications concerning the source and ownership of the $9 million transferred to Velanos;

l. communications concerning the $499,975 payment from Velanos;

m. communications concerning the over $9,000,000 payment from Velanos on two separate occassions;

n. communications concerning Adam Walker's opposition memorandum and declaration;

o. documents showing whether Walker's submissions were received, reviewed, filed, or presented to the Court;

p. communications concerning the preparation or correction of the Examiner's report;

q. documents relied upon for the assertion that the Examiner's report confirmed fraud;

r. Bryan Mickler's engagement agreement and nonprivileged communications concerning conversion procedure; and

s. documents cited, relied upon, or omitted from the two conversion motions and the Examiner's report.

t. recordings, transcripts, scripts, and related records concerning customer-risk-management calls;

u. documents identifying customers who participated in those calls and persons responsible for conducting, recording, preserving, or reviewing them;

v. customer agreements, communications, payment records, refund records, and records concerning Interest Credit Account payments relevant to the disputed customer-funds theory; and

w. documents concerning the alleged absence or existence of customer disclosures, risk acknowledgments, cooling-off procedures, and representations concerning guaranteed loan closings.

41. Mr. Hughes further requests authorization to serve one set of focused interrogatories concerning:

a. the identity of persons with knowledge of the disputed representations;

b. the source of factual assertions in the conversion motions and Examiner's report;

c. documents reviewed or relied upon;

d. the origin and development of the "customer funds" theory;

e. whether Walker's submissions were received and considered; and

f. the factual basis for statements that the Examiner's report confirmed fraud.

42. Mr. Hughes requests authorization for limited oral examinations or depositions, not exceeding three hours per witness absent further order, directed only to authentication, chronology, material omissions, disputed representations, and the basis for the challenged record.

43. Mr. Hughes is willing to comply with an expedited schedule:

a. discovery electronically served within seven days after entry of the Court's order;

b. responses within fourteen days;

c. depositions completed within twenty-one days;

d. witness and exhibit supplements within twenty-eight days; and

e. a focused motion in limine filed promptly after discovery and at least seven days before the evidentiary hearing.

44. This request is materially narrower than general merits discovery. It is limited to determining what evidence was presented, what evidence was omitted, what representations were made, and whether the Court's conversion decision was materially affected.

## VIII. THE COURT'S AUTHORITY TO CONTROL THE SEQUENCE OF PROCEEDINGS

45. The Court has authority to issue orders necessary or appropriate to carry out the Bankruptcy Code and to prevent abuse of process. 11 U.S.C. § 105(a)

46. The Supreme Court has recognized the federal courts' inherent authority to manage proceedings and protect the integrity of the judicial process. Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991)

47. Mr. Hughes does not contend that Section 105(a) authorizes the Court to override an express statutory command. He requests a procedural sequencing order designed to permit the Court to determine whether its own proceedings were materially affected by fraud before adjudicating matters that may depend upon the challenged record.

48. Mr. Hughes therefore requests that the Court:

a. hear the Rule 60(d)(3) matter as an evidentiary matter;

b. permit presentation of the evidence necessary to adjudicate the motion;

c. defer only those proceedings materially dependent upon the challenged record; and

d. avoid inconsistent adjudications and unnecessary expenditure of judicial and estate resources.

49. This request does not seek to decide Mr. Cohan's standing or claim objections through Mr. Hughes's motion. It seeks only to preserve the Court's ability to determine whether the adjudicative process itself was materially compromised.

## IX. LEGAL STANDARD AND NEED FOR EVIDENCE

50. Rule 60(d)(3) preserves the Court's authority to set aside a judgment or order for fraud on the court. Fed. R. Civ. P. 60(d)(3) Rule 60 applies in bankruptcy proceedings through Fed. R. Bankr. P. 9024.

51. Fraud on the court is distinct from ordinary disagreement concerning the weight of evidence. The issue is whether intentional conduct directed at the judicial process materially impaired the Court's ability to adjudicate the matter fairly.

52. The Court must therefore determine, based on evidence:

a. what was presented to the Court;

b. what was omitted or mischaracterized;

c. who made or adopted the challenged representations;

d. whether the representations were materially false or misleading;

e. whether the conduct was knowing or intentional;

f. whether the conduct was directed toward influencing the adjudication;

g. whether the Court relied upon the challenged material; and

h. whether binary clear and convincing evidence establishes fraud on the court.

53. Motive, opportunity, knowledge, intent, concealment, premeditation, and the use of a particular factual theory may be relevant circumstantial evidence. They are not substitutes for proof of material misconduct directed at the judicial process.

54. The relevant proof must be evaluated by comparing the alleged representations with the controlling agreements, complete transcripts, documentary evidence, and witness testimony.

55. The contractual documents are particularly important because Walker's memorandum contends that the BELOC Agreement did not require ICA payments to be held in trust. The Court should not resolve that dispute without permitting the parties to introduce the agreement and address its text.

## X. THE REQUESTED RELIEF IS NECESSARY TO A FAIR ADJUDICATION

56. The present designation of the Rule 60(d)(3) hearing as non-evidentiary creates a substantial risk that the Court will be asked to decide disputed factual issues through attorney argument alone.

57. That procedure would prevent Mr. Hughes from adequately presenting evidence concerning the Examiner's methodology, the United States Trustee's representations, the controlling agreements, 341 testimony, conversion-hearing testimony, and the alleged omission or distortion of material facts.

58. The first conversion proceedings involved substantial testimony and documentary evidence. The later conversion hearing resulted in the August 9 order directing conversion and related relief. It would be fundamentally unfair to determine whether that adjudicative process was materially corrupted without reviewing the evidence on which the Court relied and comparing it with the evidence that was allegedly omitted or mischaracterized.

59. Mr. Hughes has identified the witnesses he expects to call, the subjects of their testimony, the documents sought, and the proposed limits on discovery. The request is therefore sufficiently definite to permit orderly case management.

## XI. PRESERVATION OF RECONSIDERATION AND APPELLATE RIGHTS

60. Mr. Hughes respectfully requests that the Court grant an evidentiary hearing and limited discovery. If the Court denies that relief, Mr. Hughes requests a written ruling identifying the legal and factual basis for denying an evidentiary process despite the disputed material facts and identified witnesses.

61. Mr. Hughes reserves all rights to seek reconsideration and appellate review of any order, denying a meaningful opportunity to present material evidence concerning alleged fraud on the court. He makes that reservation to preserve his rights, not to threaten the Court or delay the proceedings.

## XII. REQUEST FOR RELIEF

WHEREFORE, David Hughes respectfully requests that the Court enter an order:

A. converting the November 9, 2026, hearing on Doc. 651 from non-evidentiary to evidentiary;

B. permitting Mr. Hughes to introduce the Walker opposition memorandum, Walker declaration, Examiner materials, conversion motions, transcripts, BELOC Agreement, Bridge Loan Agreement, Due Diligence Agreement, correspondence, and other authenticated evidence;

C. permitting testimony from Adam B. Walker and the other identified witnesses, subject to relevance, privilege, personal knowledge, and subpoena requirements;

D. authorizing one expedited round of limited interrogatories and requests for production;

E. authorizing limited oral examinations or depositions directed to authentication, chronology, material omissions, disputed representations, and the basis for the challenged record;

F. requiring production of the identified 341-meeting and hearing transcripts, recordings, exhibits, and official summaries;

G. permitting Mr. Hughes to supplement his witness and exhibit lists after discovery;

H. permitting a focused motion in limine after discovery and before the evidentiary hearing;

I. establishing an expedited schedule for discovery, witness disclosures, exhibit exchange, and the evidentiary hearing;

J. permitting remote participation for discovery conferences, status conferences, and other matters for which remote appearance is appropriate;

K. requiring in-person attendance at the evidentiary hearing by the parties and material witnesses unless the Court determines that remote testimony is appropriate especially considering out-of-state witnesses such as Adam Walker, Esquire, and others;

L. deferring all other proceedings materially dependent upon the challenged conversion record until the Rule 60(d)(3) issue is adjudicated;

M. alternatively, if the Court declines to convert the hearing, setting a separate evidentiary hearing and authorizing the requested limited discovery beforehand;

N. directing the parties to respond to Mr. Hughes's pending and amended fraud-on-the-court motions before the evidentiary hearing; and

O. granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 21st day of September 2026.

/s/ David Hughes
David Hughes, pro se
3309 Robbins Road, PMB 160
Springfield, Illinois 62704
Telephone: 217-416-5059
Email: davidchoatehughes@gmail.com

## Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the foregoing document and/or its attachments by the CM/ECF system, U.S. Mail and/or email.

Chapter 7 Trustee
Aaron R. Cohen .
represented by Raye Curry Elliott
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
(813) 223-7333
Email: court@planlaw.com

U.S. Trustee
represented by Scott E. Bomkamp
DOJ-Ust
United States Trustee
400 W. Washington St.
Orlando, FL 32801
407-648-6069
Email: scott.e.bomkamp@usdoj.gov

John Michael Cohan
Email: iustusprocessus@outlook.com

Respectfully submitted,

/s/ David C. Hughes II
David C. Hughes II, pro se
3309 Robbins Road, PMB 160
Springfield, Illinois 62711
(217) 416-5059
davidchoatehughes@gmail.com

Dated: September 21st, 2026

**UNITED STATES BANKRUPTCY COURT**

**MIDDLE DISTRICT OF FLORIDA**

**JACKSONVILLE DIVISION**

**In re:**

**GENIE INVESTMENTS NV INC.,**

Debtor.

Case No. 3:24-bk-00496-BAJ

Chapter 7

**DAVID HUGHES' MOTION FOR AUTHORIZATION TO FILE ELECTRONICALLY AND RECEIVE ELECTRONIC NOTICE AS A PRO SE PARTY**

David Hughes, appearing pro se and as an interested party, respectfully moves for an order authorizing him to file documents through the Court's CM/ECF system and to receive electronic notice and service in this case. In support, Mr. Hughes states:

## I. Relevant Facts

1. Mr. Hughes is an interested party in this bankruptcy case and has filed, or intends to file, motions concerning the November 9, 2026, proceedings.

2. The Court has scheduled a 10:00 a.m. trial on motions concerning show-cause proceedings and injunctive relief.

3. The Court has also scheduled a noon hearing on the Amended Verified Omnibus Objection to Claims.

4. The Court has scheduled a noon non-evidentiary hearing on Mr. Hughes'smotion under Rule 60(d)(3) for relief from the August 12, 2024 conversion order based on alleged fraud on the court, including requests for an evidentiary hearing, discovery, and related relief.

5. Mr. Hughes is presently out of town and has access to PACER for viewing docket materials, but he does not presently have CM/ECF privileges to file documents or receive electronic notices through the Court's filing system.

6. Without electronic filing and notice access, Mr. Hughes must rely on slower filing and service methods despite multiple time-sensitive proceedings, pending motions, discovery-related issues, and court-imposed deadlines.

7. Electronic access would improve filing efficiency, reduce delay, facilitate timely service, and assist the Court and parties in maintaining an accurate and current record.

## II. Authority

8. Fed. R. Bankr. P. 5005(a)(3)(B) provides that an unrepresented individual may file electronically only if permitted by court order or local rule.

9. Fed. R. Bankr. P. 5005(a)(3)(D) provides that an electronically filed paper is a written paper for purposes of the Bankruptcy Rules and applicable statutes.

10. Fed. R. Bankr. P. 9036 permits electronic notice and service through the Court's electronic filing system for registered users and by other electronic means when the recipient has consented in writing.

11. Mr. Hughes respectfully requests authorization under these rules and agrees to comply with all applicable Court procedures, technical requirements, filing conventions, signature requirements, service obligations, and limitations imposed on pro se CM/ECF users.

**III. Requested Relief**

12. Mr. Hughes requests an order:

a. authorizing him to register as a pro se CM/ECF filer in this case;

b. authorizing him to file motions, responses, objections, notices, proposed orders, exhibits, and other permitted documents electronically;

c. authorizing him to receive electronic notices of electronic filing and other notices or service through CM/ECF;

d. directing the Clerk's Office to provide the necessary registration instructions, forms, training, or activation procedures;

e. permitting electronic service at the following email address:

davidchoatehughes@gmail.com;

f. recognizing that Mr. Hughes consents to electronic service at that address to the extent permitted by the Bankruptcy Rules and Court procedures;

g. permitting Mr. Hughes to continue receiving paper notices or service when required by rule, order, or the Court's procedures; and

h. granting such other relief as the Court deems just and proper.

13. Mr. Hughes understands that CM/ECF access does not itself authorize remote attendance at any hearing. He will separately comply with the Court's procedures governing attendance by Zoom or other remote means.

14. Mr. Hughes further understands that electronic filing does not eliminate any obligation to serve parties, protect confidential information, redact documents, comply with page or exhibit requirements, or obtain permission before filing sealed materials.

15. Mr. Hughes submits that prompt authorization is appropriate because the November 9 proceedings involve multiple hearings and trials, including a trial at 10:00 a.m., a noon claim-objection hearing, and the noon Rule 60(d)(3) hearing.

WHEREFORE, David Hughes respectfully requests that the Court enter an order authorizing him to file electronically through CM/ECF and receive electronic notice and service in this case, subject to the Court's procedures and any conditions the Court deems appropriate.

Respectfully submitted this 21st day of September, 2026.

/s/ David Hughes

David Hughes, pro se

3309 Robbins Road, PMB 160

Springfield, Illinois 62704

Telephone: 217-416-5059

Email: davidchoatehughes@gmail.com

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the foregoing document and/or its attachments by the CM/ECF system, U.S. Mail and/or email.

Chapter 7 Trustee
Aaron R. Cohen .
represented by Raye Curry Elliott
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
(813) 223-7333
Email: court@planlaw.com

U.S. Trustee
represented by Scott E. Bomkamp
DOJ-Ust
United States Trustee
400 W. Washington St.
Orlando, FL 32801
407-648-6069
Email: scott.e.bomkamp@usdoj.gov

John Michael Cohan
Email: iustusprocessus@outlook.com

Respectfully submitted,

(AKA) David C. Hughes II
/s/ David C. Hughes II
David C. Hughes II, pro se
3309 Robbins Road, PMB 160
Springfield, Illinois 62711
(217) 416-5059
davidchoatehughes@gmail.com

Dated: September 21st, 2026

David Hughes
82 Plantation Pointe Rd. #281
Fairhope, AL 36532

United States Bankruptcy
300 North Hogan Str
Jacksonville, Florida