UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

FILED INTAKE USBC
OCT 20 '26 PM3:49

**JOHN MICHAEL COHAN'S VERIFIED MOTION FOR CONTINUANCE**

COMES NOW John Michael Cohan, protected person under Marsy's Law and the First Amendment of the United States Constitution, pro se, and respectfully moves this Court for a continuance of (a) the trial set for November 9, 2026 (Bankr. Docs. 671-1, 672), (b) the deadline for the undersigned's second round of discovery, and (c) the deadline for service of the subpoenas that are the subject of the undersigned's pending motion for service by the U.S. Marshals. The undersigned does not *seek* to continue the order to show cause, the fraud on the court hearing if it is not an evidentiary hearing (which the undersigned believes there should be as you can't have clear and convincing evidence without evidence being presented) or the amended omnibus objections. Those matters may proceed on their current schedule. The undersigned requests that the deadline for service of the Marshal subpoenas be set after the Court rules on the pending Marshal motion.

## I. THE UST'S REQUEST FOR AN EXTENSION

1. The United States Trustee ("UST"), represented by Scott E. Bomkamp, has requested an extension of time to conduct its own discovery and to respond to the undersigned's discovery requests. A true and correct copy of the UST's request is apart of Bankr. Doc. 785, incorporated by reference.

2. The UST has represented that it requires additional time to complete its investigation and to respond to the undersigned's discovery requests.

## II. THE SIXTY (60) DAYS REQUIRED FOR THE UST'S OTHER DISCOVERY DOCUMENTS

3. The UST has indicated that it requires approximately sixty (60) days to produce its other discovery documents, including but not limited to documents related to the §341 meeting audio, the police report, the Walker Legal Analysis, and communications with the Chapter 7 Trustee and counsel. **By default, the sixty (60) days fall outside the trial timeline.**

4. The undersigned requires this sixty (60) day period to review the UST's production and to incorporate it into the second round of discovery.

## III. THE SECOND ROUND OF DISCOVERY

5. Contemporaneously herewith, the undersigned has filed a Motion for Leave to Conduct a Second Round of Discovery, narrowly tailored to each individual interested party.

6. The second round of discovery is necessary to obtain specific documents and information from each party, including:

    - The exact nature and amount of each party's claim;
    - The specific refundability terms of each agreement;
    - Whether each party received notice of the Debtor's mitigation efforts;
    - Whether each party participated in any coordinated effort to publish negative statements;
    - Whether each party filed a false FBI report or false police report;
    - Whether each party's claim duplicates McMann's Claim No. 64;
    - The exact amount each party paid to the Debtor, McMann Commercial Lending or some other company.

7. The undersigned requires approximately sixty (60) days to serve, receive, and review the responses to the second round of discovery.

## IV. THE SUBPOENAS TO BE SERVED BY THE U.S. MARSHALS REQUIRE A RULING ON THE PENDING MARSHAL MOTION

8. The undersigned has filed a motion requesting that the U.S. Marshals serve subpoenas for the production of documents on the non-parties. That motion is *pending* (Bankr. Doc. 771). Until the Court rules on it, the Marshal subpoenas *cannot* be served.

9. Once the Court rules on the Marshal motion, the U.S. Marshals will require additional time to serve the subpoenas, and the non-parties will require time to respond.

10. The undersigned requests that the deadline for service of the Marshal subpoenas be set after the Court rules on the pending Marshal motion, and that the deadline be at least sixty (60) days from the date of that ruling. The trial set for November 9, 2026 should *not* proceed until those responses are produced.

## V. GOOD CAUSE EXISTS FOR A CONTINUANCE

11. Good cause exists for a continuance because:

- The UST has requested an extension and requires sixty (60) days to produce its other discovery documents;

- The undersigned requires sixty (60) days to serve, receive, and review the second round of discovery;
- The Marshal subpoenas *cannot* be served until the Court rules on the *pending* Marshal motion, and the U.S. Marshals and the non-parties will require additional time after that ruling to serve and respond;
- A continuance will promote judicial efficiency and avoid piecemeal litigation;
- A continuance will *not* prejudice any party, as all parties will have adequate time to respond, if they choose to do so.

12. The undersigned respectfully requests that this Court continue (a) the trials set for November 9, 2026, (b) the deadline for the second round of discovery, and (c) the deadline for service of the Marshal subpoenas, for a period of at least sixty (60) days, or such other time as the Court deems just and proper. As to the Marshal subpoenas, the undersigned requests that the deadline be set after the Court rules on the *pending* Marshal motion. The undersigned does *not* request a continuance of any other deadline or hearing.

WHEREFORE, the undersigned respectfully requests that this Court:

i. Continue the trial set for November 9, 2026 (Bankr. Docs. 671-1, 672) for a period of at least sixty (60) days;

ii. Continue the deadline for the undersigned's second round of discovery to a date certain;

iii. Set the deadline for the U.S. Marshals to serve the subpoenas to a date certain after the Court rules on the pending Marshal motion, and in any event no earlier than sixty (60) days after that ruling; and

iv. Extend the deadline for the UST to produce its other discovery documents (Interrogatories, Request for Production) to a certain date.

The undersigned does *not* seek to continue the order to show cause, the fraud on the court hearing if it is not an evidentiary hearing, or the amended omnibus objections, as of this date, not one party has been responded to Bankr. Doc. 644 despite the Court's explicit order (Bankr. Doc. 711) to do so. Those matters may proceed on their current schedule and may render the trials on standing and the preliminary and permanent injunction moot.

VERIFICATION

I, John Michael Cohan, declare under penalty of perjury under the laws of the United States and the State of Florida that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 10-20-2026

**Respectfully submitted in good faith,**

**John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103**
iustusprocessus@outlook.com

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the foregoing document and/or its attachments by the CM/ECF system, U.S. Mail and/or email.

Debtor
Genie Investments NV Inc.
represented by Bryan K. Mickler
Mickler & Mickler
5452 Arlington Expressway
Jacksonville, FL 32211
904-725-0822
Email: court@planlaw.com

U.S. Trustee
represented by Scott E. Bomkamp
DOJ-Ust
United States Trustee
400 W. Washington St., Ste 1100
Orlando, FL 32801
407-648-6069
Email: scott.e.bomkamp@usdoj.gov

Chapter 7 Trustee
Aaron R. Cohen
represented by Raye Curry Elliott
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
(813) 223-7333
Email: raye.elliott@akerman.com

David C. Hughes II
davidchoatehughes@gmail.com

FILED INTAKE USBC
OCT 20 '26 PM3:49

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

# JOHN MICHAEL COHAN'S VERIFIED REPLY TO TRUSTEE'S RESPONSE IN OPPOSITION TO AMENDED VERIFIED OBJECTION TO CLAIMS (BANKR. DOC. 787), REQUEST FOR EVIDENCE TO BE PRODUCED AT TRIAL, AND NOTICE OF UNOPPOSED CLAIMS

COMES NOW John Michael Cohan, individually, interested party, 50% equity holder of the Debtor, pro se, protected person under Marsy's Law and the First Amendment of the United States Constitution, and respectfully files this Reply to the Trustee's Response in Opposition to Amended Verified Objection to Claims (Bankr. Doc. 787). The undersigned files this Reply to address the factual and legal assertions raised in the Trustee's Response, and request that the Court consider it in determining the Objection.

Standing turns on whether a surplus is demonstrable, not on cash currently in the estate. The $20 million Velanos judgment is an estate *asset*, and the Trustee *cannot* enforce it in California while valuing it at zero here. Section 13.7 bears on whether the claims are allowable, but it matters because the "no surplus" finding rests on a claims pool the record shows to be inflated. The Court should require the Trustee

to prove his collectability and claims-pool representations, because the record he relies on has documented gaps—the removed police report (Doc. 781-8), the audio discontinuity (Doc. 781-6), and the absent confirmation(s) of fraud (Doc. 781-9).

I. PRELIMINARY STATEMENT

1. The Trustee's Response is a circular argument. It says "There will be no surplus. Because there will be no surplus, Cohan has no pecuniary stake in whether any given claim is allowed or disallowed, and therefore no standing to object." (Bankr. Doc. 787 ¶ 3). It says "Because there will be no surplus in this case and Cohan cannot prove otherwise, Cohan has no standing to object to claims (Bankr. Doc. 787, Section I). But it does *not* put on evidence that a surplus does *not* exist. It offers predictions about collectability and calls them findings. That is *not* how standing is decided. The Trustee hopes if they repeat it enough, somehow that will change the reality. This isn't a fiction book or a fairy-tale, this is Federal Bankruptcy Court, the underlying agreements control.

2. The Trustee's Response also ignores the most important fact in this case: no claimant responded to the Objections. No claimant, besides Claims 5, 42 & 43 retained counsel, and out of those three (3) only one party's counsel made an appearance (Bankr. Doc. 495). No claimant filed a response to Bankr. Doc. 644 per the Court's order at Bankr. Doc. 711, an objection, or a motion for extension of

time. Under Federal Rule of Bankruptcy Procedure 3007 and Rule 9014, the Objections were served with negative notice. The claimants did *not* respond. The corporate claimants *cannot* appear without counsel. *Rowland v. California Men's Colony*, 506 U.S. 194 (1993); Local Rule 1074-1.

3. The Trustee's Response asks the Court to overrule the Objections without reaching the merits. But the Court *cannot* decide standing without looking at what the Objections would do to the claims pool. The claims pool is *massively* inflated. The Objections would reduce it. If the claims are disallowed, the surplus exists. If the surplus exists, standing exists. The Trustee *cannot* have it both ways.

II. THE TRUSTEE'S OWN FILINGS ESTABLISH THAT THE SURPLUS QUESTION IS A FACTUAL DISPUTE, NOT A LEGAL IMPOSSIBILITY

4. The Trustee's Response states that claims currently total $36,351,218.89 after the reduction of Claim 4 (Bankr. Doc. 787 at ¶6). It states that if his *pending* objections to Claims 5, 64, and 72 are sustained, claims will be reduced to $18,355,432.41 (Bankr. Doc. 787 at ¶7). It then states that claims will "total in excess of $18 million" by the conclusion of the case (Bankr. Doc. 787 at ¶7).

5. The Trustee's claim total has moved from $39.28 million to $36.35 million to $18.36 million to "in excess of $18 million" in a single filing. In Bankr. Doc. 599, the Trustee quoted ~$22 million. In 2:26-mp-00001, Misc. Doc. 45 at pg. 4, the

Trustee quoted $13-14 million. That is obviously not a fixed number. That is a moving target and the Trustee doesn't seem to be able to pick a number. And it doesn't account for the "non-refundable" language in the bridge loan or the due diligence agreements (Bankr. Docs. 781-4, 781-5). Nor does it account for Sections 13 or 14 in the BELOC agreements (Bankr. Doc. 781-3).

6. As stated in ¶ 5, the Trustee's asset valuation is a moving target. He states that the estate held $1,578,710.86 as of March 31, 2026 (Bankr. Doc. 787 at ¶8). He states that the $435,000 Warren Law settlement has *not* been received because of the undersigned's appeal. (*Id.*) He states that he has filed a proof of claim in David Hughes' bankruptcy case but "currently does not know how much that distribution will be." (*Id.*) He states that the $20 million Velanos judgment is "very likely uncollectible." (Bankr. Doc. 787 at ¶10). He states that the $4 million in loan receivables are "mostly unenforceable" and "likely uncollectible." (Bankr. Doc. 787 at ¶13). He states that the ZOOMERAL, Capitulum, Genie II, Better Methods, and Genie's Angels judgments "have also proven to be uncollectible" (Bankr. Doc. 787 at ¶14).

7. Every one of those statements is a prediction. None of them is a finding. The Trustee has *not* moved to abandon the Velanos judgment. Debtor was in the business of making loans (Bankr. Doc. 781-2) and no amount of semantics changes that. He has *not* moved to abandon the receivables. He has *not* put on evidence that

any asset is worth zero. He has offered his opinion. He also ignored the *irrevocable* power of attorney provisions in the agreements (BELOC Agreement, Section 13.2, Bankr. 781-3) that upon default makes the Debtor their the defaulted borrower's "lawful attorney-in-fact, with full power of substitution" which is "exercisable by the Lender (the Debtor) at any time and without any request" and "empowers" the Debtor to pay, settle or compromise all bills and claims, prosecute and defend all actions or proceedings, and do and take any and every act which the Borrower might do on its behalf, including exercising all of the Borrower's rights and remedies under the agreements.

8. A standing determination *cannot* rest on the Trustee's opinion about collectability. It must rest on the record and the contracts. The record includes the Velanos judgment, which the Trustee is actively enforcing in the Central District of California. It includes the Warren Law settlement, which is *pending* on appeal and could result in more for the estate, or less. It includes a Hughes bankruptcy claim, which the Trustee filed and expects to collect. It includes the $4.5 million in non-insider receivables identified at ¶228 of the Examiner's Report (Bankr. Doc. 146). Those are assets of the estate until the Trustee abandons them or the Court authorizes their compromise.

## III. THE TRUSTEE CANNOT DEFEAT STANDING WITH HIS OWN PENDING OBJECTIONS

9. The Trustee's own objections reduce the claims pool. He seeks to reduce Claim 5-3 by $13,847,750 (Bankr. Doc. 759). He seeks to reduce Claim 64-2 by $3,972,311.48 (Bankr. Doc. 772). He has already obtained a consensual reduction of Claim 4 to $70,000 (Bankr. Doc. 583), but that is also on appeal as corporations *cannot* litigate *pro se* (Local 1074-1; 3:25-ap-00011, Adv. Docs. 5, 6).

10. If those objections are sustained, the claims pool drops below $18.36 million. If the unopposed claims are disallowed, the claims pool drops further. If the plain "non-refundable" contractual language is enforced, the surplus grows. The surplus exists if the claims pool falls below the asset total. The Trustee's own motions are reducing the claims pool. He *cannot* use his own pending objections as evidence that no surplus exists.

11. The Court *cannot* decide standing on a snapshot of the claims register while the Trustee's own objections are *pending*. The surplus question is determined by the claims as they will be allowed, *not* as they are currently filed.

## IV. THE TRUSTEE'S "UNCOLLECTIBLE" ARGUMENT IS A PREDICTION, NOT A FINDING

12. The Trustee says the Velanos judgment is "very likely uncollectible" (Bankr.

Doc. 787 at ¶10). But he has *not* moved to abandon it. He is actively enforcing it in the Central District of California (Case No. 8:25-cv-01740-TJH-DFM). He vacated the judgment debtor examination of Joshua Wearmouth "without prejudice to the Judgment Creditor's right to reapply for a new judgment debtor examination once the whereabouts of Joshua Wearmouth have been established." (*Id.*, Doc. 6). This could be today, tomorrow, a week from now, a year, or longer, but it can't be never. A judgment that remains on the books, that the Trustee is still enforcing, and that he has *never* abandoned, is an asset of the estate. That's a $20 million asset from a settlement agreed to and drafted by two attorneys and amended by the Trustee himself, *not* a "manufactured" surplus. ~20 – ~18 = ~+2. That's *not* speculation, that's the record.

13. The Trustee says the loan receivables are "mostly unenforceable" (Bankr. Doc. 787 at ¶13). But he has filed adversary complaints against some of the borrowers. He has obtained default judgments. He has reached some settlements. He says the majority of the demand letters and complaints were "ignored and not responded to." That is *not* a finding that the assets are worth zero. That is a finding that the borrowers did *not* respond. The Trustee has *not* put on evidence of what the receivables or what the "collateral" each borrower pledged are potentially worth. He has *not* provided a valuation, an appraisal, or a single collection report for any specific borrower. He has *not* identified which borrowers hold the 'collateral' or

what that collateral actually consists of. If the Trustee can do post-judgement discovery on the affiliate companies (3:25-ap-00011, Adv. Doc. 46), the Trustee can do post-judgement discovery on the borrowers that defaulted as well to find out how much in assets are actually available.

14. The Trustee says the ZOOMERAL, Capitulum, Genie II, Better Methods, and Genie's Angels judgments are "uncollectible" (Bankr. Doc. 787 at ¶14). But he has *not* moved to abandon those judgments either. He has *not* put on evidence of what collection efforts he made. He has offered his opinion. Whether his opinions become true or they do not, it seems as if the Trustee is attempting to administer the estate *without* administering the estate (Bankr. Doc. 650).

15. The Examiner's Report identifies approximately $4.5 million in *non*-insider loan receivables with balloon payments totaling ~$4,600,100 (Bankr. Doc. 146 at ¶¶228–229). The Trustee says the amount advanced was "far less than $4 million" but does *not* say what the number is. The Trustee's counsel now doubts the Examiner Report he "solely relied" (Bankr. Doc. 389) on when pursuing the affiliated entities Cohan previously owned, the same report many of the borrowers have wrongfully used to support a fabricated 'ponzi' scheme narrative (Bankr. Doc. 781-10; CDIL, 25-70566, *In re David Hughes*, Claim Responses). The Trustee says the loan documents are "mostly unenforceable" because the Debtor failed to retain original promissory notes *without* attempting to enforce them. There are other ways

to enforce loans without the promissory note, including: (1) Florida's statutory lost-note procedure under Fla. Stat. § 673.3091; (2) enforcement of the underlying loan agreements and debt through wire records and account statements; (3) enforcement via the irrevocable power of attorney provisions in Section 13.2 of the BELOC Agreement; (4) foreclosure on the pledged collateral under the security agreements; (5) post-judgment discovery and collection on the existing default judgments; and (6) filing proofs of claim in any borrower bankruptcies. The Trustee has *not* attempted *any* of these methods before declaring the assets worthless. But he has filed adversary complaints and obtained default judgments. If the documents were unenforceable, the judgments would *not* have issued. The Trustee's own conduct contradicts his own characterization and his own litigation strategy from the start, as the Trustee was "always" going to sue the undersigned's entities (Bankr. Doc. 389), despite the underlying contracts providing protection against his actions.

V. THE TRUSTEE'S CIRCULARITY

16. The Trustee says there is no surplus because the estate is insolvent. He says the estate is insolvent partly because the undersigned's appeals are holding up the $435,000 Warren Law settlement (Bankr. Doc. 787 at ¶8).

17. That is circular. The undersigned appealed the Warren Law settlement because the order approving it improperly extinguished his personal claims against Warren

Law and Scott Oh. Under *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), the Bankruptcy Code does *not* authorize non-consensual third-party releases. The order exceeded the Court's jurisdiction. The undersigned exercised his appellate rights to challenge that order. It is the District Court that took over nine (9) months to rule on the denial of the undersigned's *in forma pauperis* motion (3:25-cv-01398) and it is the Bankruptcy Court that is withholding the transcripts for the subsequent appeal (Bankr. Docs. 681, 714, 735, 784). The undersigned has been hitting most of his deadlines, and if one was missed, it was corrected promptly. The undersigned has asked for expedited rulings. It is *not* the undersigned who is manufacturing a surplus, it is the Trustee attempting to manufacture a non-surplus. The undersigned is *not* delaying the proper administration of the estate, the Trustees are. That's the reality, based in fact and on the records. In the best interest of the estate, and the viable creditors, if any, the Court should *not* let him.

18. The Trustee *cannot* count the $435,000 settlement as zero while the reason it is *not* in the estate is an appeal of an order that improperly extinguished the undersigned's personal claims. If the appeal succeeds, the settlement may be paid, and the estate's assets increase. If the appeal fails, the estate receives the settlement anyway. Either way, the $435,000 is a potential asset of the estate.

## VI. THE "PERSON AGGRIEVED" DOCTRINE IS NOT THE CLAIM-OBJECTION STANDARD

19. The Trustee cites *In re Universal Towers Constr., Inc.*, 641 B.R. 691 (M.D. Fla. 2022), for the proposition that shareholders may *not* appeal a bankruptcy court decision where they assert only a derivative interest (Bankr. Doc. 787 at ¶15).

20. That case addresses appellate standing As under the "person aggrieved" doctrine. It does *not* address claim-objection standing under 11 U.S.C. § 502(a). The standing to object to a claim is governed by the "party in interest" standard and the pecuniary-interest test. It is *not* governed by the appellate "person aggrieved" doctrine.

21. The Trustee has blended the two (2). He has taken an appellate standing case and applied it to a claim-objection standing question. That is error, or it was intentional. Either way, the Trustee *cannot* manufacture a non-surplus. The Trustee must administer the estate properly, otherwise it could result in the breach of his fiduciary duty to the estate.

## VII. THE TRUSTEE'S OWN FILINGS ESTABLISH THAT THE SURPLUS QUESTION CANNOT BE RESOLVED ON THIS RECORD

22. The Trustee's Response does *not* cite a single evidentiary exhibit. It does *not* attach bank records, appraisals, contracts or collection reports. It does *not* rebut any

part of Bankr. Doc. 781. Instead, the Trustee offers predictions and calls them findings.

23. The surplus question turns on facts: what are the estate's assets worth? What are the allowed claims? What are the administrative expenses? Those are factual questions. They *cannot* be resolved on a response to overrule the Objection *without* an evidentiary record, which includes Bankr. Docs. 781, 781-1 through 781-24 and the claims register and the underlying agreements attached to each alleged claim, when this Court compared the Debtor's financial records, which included a breakdown of each type of agreement, the Court stated it was "impeccable" (Bankr. Doc. 80). Each agreement is nearly identical to the next in substance and in form (Bankr. Docs. 781-3, 781-4, 781-5 and the claims register).

24. The undersigned requested an evidentiary hearing or trial on the surplus question; that's what November 9, 2026 is for. At that trial, when and if it takes place, the Trustee should be required to put on evidence of what each asset is worth, what collection efforts were made, and why the Velanos judgment, the receivables, the contracts for each outstanding claim and the Hughes bankruptcy claim should be valued at zero. The undersigned should be permitted to cross-examine and to present his own evidence.

## VIII. THE CLAIMS ARE UNOPPOSED

25. Again, The Trustee's Response ignores the most important fact in this case: no claimant responded to the undersigned's Objections despite this Court ordering them to do so (Bankr. Docs. 644, 711).

26. The Objections were served on the claimants in accordance with Federal Rule of Bankruptcy Procedure 3007 and Rule 9014. The response deadline was October 19, 2026. No claimant filed a response. No claimant filed an objection. No claimant filed a motion for extension of time.

27. The only claimant that filed anything was Charles Blake Stringer/Nutra-Acres LLC, and what it filed was an Addendum (Bankr. Doc. 786), *not* a response. The Addendum abandons the original claim theories, and it asserts new theories that were *not* in Claim 5-3 or its amendment as filed. It should *not* be treated as a response under Rule 3007.

28. The corporate claimants did *not* retain counsel. As the undersigned now fully well-knows (3:25-ap-00011, Docs. 5, 6), under *Rowland v. California Men's Colony*, 506 U.S. 194 (1993), and Local Rule 1074-1, they *cannot* appear or be heard. Their claims are subject to disallowance. Any other treatment to any other party would clearly be disparate treatment (3:25-cv-00001, Adv. Docs. 5, 6).

29. This Court has previously stated on the record — and the undersigned paraphrases — that if someone files an accusation, they have to defend it. The claimants did *not* defend. The claims *should* be disallowed.

30. The undersigned has contemporaneously filed a Motion for Order Sustaining Objections to Claims and Disallowing Claims. That request is now *pending.*

IX. THE ILLINOIS COMPARISON

31. In the related Chapter 7 case of David Choate Hughes II (Bankr. C.D. Ill. No. 25-70566), the Illinois Chapter 7 Trustee addressed 100% of the claims. In this case, the Trustee has addressed 3% (Bankr. Doc. 650).

32. The same agreements. The same creditors. The same "non-refundable" language. The difference is *not* the law. The difference is that the Illinois trustee is doing his job and the Florida Trustee is not.

33. If the Trustee had objected to the inflated claims when they were filed, the claims pool would have shrunk two (2) years ago. The surplus would have been established and the undersigned would *not* be filing this Reply.

X. SECTION 13.7 GUARANTEES THE SURPLUS

34. Section 13.7(c)(ix) of the BELOC Agreements (Bankr. Doc. 781-3) excuses the Lender from liability for any failure or delay in funding caused by "failure of the Lender's wholesale lender from performing under the terms of the agreement

between the Lender and the wholesale lender." The wholesale lender in this case was Velanos Principal Capital, Inc.

35. The Debtor complied with Section 13.7(c) by giving notice to the borrowers (Bankr. Doc. 781-14) and using reasonably diligent efforts to minimize the effects of the force majeure event (Bankr. Doc. 781-14). It pursued arbitration and litigation against Velanos (Bankr. Doc. 781-14). It reached a settlement. The settlement produced the $20 million judgment, which the Trustee adopted, slightly amended and agreed to.

36. The force majeure event has been minimized to the best of the Debtor's ability. Therefore the viable claimants, if any, are entitled to only the amount that was collected, and a surplus exists. The claims that seek refunds of "non-refundable" fees are barred by the plain language of the agreements. If those claims are disallowed, the surplus exists.

XI. MARSY'S LAW

37. The undersigned is a protected person under an active restraining order. He is a victim of a crime that allegedly occurred during the § 341 meeting. The Jacksonville Sheriff's Office investigated. Judge Charbula signed a warrant on November 10, 2025. Florida State Assistant Attorney Justin Asbrand confirmed the warrant is active, and so did a police report (JSO#: 2025-0471040-04, pg. 1 of 2;

See Bankr. Doc. 781-7). Again, this is real life, *not* a fairy tale, whether this Court "errs" and/or fails to take judicial notice of what happened or not. Cohan is a victim of a crime that occurred during the §341 meetings, yes, 'meetings' with an 's', as documented in Doc. 781-7, and that fact bears on the integrity of the record

XII. FRAUD ON THE COURT

38. The undersigned has placed on the docket evidence that the § 341 audio was allegedly altered, that the police report was allegedly removed from the docket twice without motion, notice, order, or hearing, and that the U.S. Trustee's fraud theory was allegedly fabricated. Please see Exhibits 6, 7, 8, 9 of Bankr. Doc. 781, 781-6, 781-7, 781-8, 781-9. If true, a claim against the United States Trustee is a tremendous asset that is collectible for the estate, yet it's being ignored, or at least, its not being investigated (Bankr. Docs. 590, 781-6, 781-7, 781-8, 781-9).

39. The undersigned has filed a timely Motion for Fraud on the Court and Wrongful Conversion (Bankr. Doc. 501). That motion was struck (Bankr. Doc. 506). The undersigned directed Debtor's counsel to file a motion for reconsideration and a notice of appeal. Counsel declined. Please see Exhibit 18 of Bankr. Doc. 781, 781-18.

40. The alleged fraud(s) on the court, including evidence tampering, is relevant to the standing analysis because it affects the integrity of the record on which the

claims pool and the asset valuations rest. If the record is compromised, the surplus analysis is unreliable. The integrity and the accuracy of the record is a prerequisite to any standing determination. The Court *cannot* decide standing on a compromised record.

XIII. REQUESTED RELIEF

WHEREFORE, the undersigned respectfully requests that the Court:

i. Deny the Trustee's request to overrule the Objections on standing grounds without an evidentiary hearing;

ii. At the trial on the surplus question, require the Trustee to put on evidence of the value of each estate asset and the amount of each allowed claim;

iii. Find that the claims are *unopposed* and that the corporate claimants *cannot* appear without counsel;

iv. *Sustain* the Objections (Bankr. Docs. 644, 711) and *disallow* the claims for which *no response* was filed;

v. Find that the surplus question *cannot* be resolved on the current record and that the undersigned has standing to object to claims; and

vi. Take judicial notice of the record, its transcripts in both Jacksonville and Fort Myers, of the police reports *and* order the production of the outstanding

transcripts, so the appeal (3:26-cv-02394-WWB) can be underway and that the trials can be heard on a complete and accurate record. [1]

VERIFICATION

I, John Michael Cohan, declare under penalty of perjury under the laws of the United States and the State of Florida that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 10-20-2026

**Respectfully submitted in good faith,**

**John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103**
iustusprocessus@outlook.com

[1] The evidence at Bankr. Doc. 781-1 through 781-24, and more specifically 781-6, 781-7, 781-8, 781-9, 781-10, 781-15, and 781-22, bears on the integrity of the record on which the Trustee's "no surplus" representation rests. That is why Cohan asks the Court to require the Trustee to prove his collectability and claims-pool representations rather than accept them as findings.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **JOHN MICHAEL COHAN'S VERIFIED REPLY TO TRUSTEE'S RESPONSE IN OPPOSITION TO AMENDED VERIFIED OBJECTION TO CLAIMS (BANKR. DOC. 787), REQUEST FOR EVIDENCE TO BE PRODUCED AT TRIAL, AND NOTICE OF UNOPPOSED CLAIMS** has been duly served by the CM/ECF system, U.S. Mail and/or email on this 20th day of October, 2026, upon the following parties:

ALL CLAIMANTS (65+ parties): See attached Alphabetized Service List (incorporated herein)

INTERESTED PARTIES:

Aaron R. Cohen, Chapter 7 Trustee — P.O. Box 4218, Jacksonville, FL 32201-4218
Raye Curry Elliott, Attorney for Trustee — Akerman LLP, 401 East Jackson Street, Suite 1700, Tampa, FL 33602; raye.elliott@akerman.com
Bryan K. Mickler, Debtor's Counsel — Mickler & Mickler, 5452 Arlington Expressway, Jacksonville, FL 32211; court@planlaw.com
Scott W. Spradley, Attorney for Creditor Stringer/Nutra-Acres — Law Offices of Scott W. Spradley, P.A., 301 S. Central Avenue, P.O. Box 1, Flagler Beach, FL 32136; scott@flaglerbeachlaw.com

## ALPHABETICAL SERVICE LIST

Name; Claim No.; Address; Email Address

[1] A Complete Home Inspection LLC; 11; 110 Velsco Lane, Port Sulphur, LA 70083; kipnash7@gmail.com
[2] Acres & Royalty LLC; 6; P.O. Box 1087, Ruston, LA 71273-1087; gcbuxton@acresandroyalty.com
[3] Alere LLC; 47; 1530 E. Williams Field Rd 201, Gilbert, AZ 85295; mendredy@aleregroup.com
[4] ALV Capital LLC; 31; c/o Strauss Law Group PLLC, 264 S River Rd, Box 552, Bedford, NH 03110; Michael@strauss.law
[5] Ameiva; 57; 282 East 300 South, Smithfield, UT 84335-1636; brian.bevan.13@gmail.com
[6] AMRODDO HOLDINGS, LLC; 27; 625 Woodmont Ave, Berkeley, CA 94708; owners@amroddo.net
[7] Another Chance Group Home Inc; 19; 54 N Vista Ave, Casa Grande, AZ 85122; skylarwhitfield@yahoo.com
[8] Anvil Construction Inc.; 65; 470 N. Main Street, Brigham City, UT 84302; randy.deem@anvilcabinets.com
[9] Archer Capital Investments LLC; 68; 1448 W. Salmon Caddis Dr., Bluffdale, UT 84065; MFThompson@gmail.com
[10] Autonomous Drone Solutions; 29; 2121 Brittmoore 2200, Houston, TX 77043; calaway@gmx.com
[11] BAYI Capital Management; 8; 148 Undercliff Ave, Ste 9, Edgewater, NJ 07020; tadebayo@bayicapital.com
[12] Belle Maison Realty, LLC; 4; 1133 E 83rd St 171, Chicago, IL 60619; lea.bellerealty@gmail.com
[13] Bild Credit LLC; 28; 30 N Gould Street 30212, Sheridan, WY 82801; dayton@bildcredit.com
[14] Braces at Brick, PA; 70; 900 Cedar Bridge Ave Ste B15, Brick, NJ 08723; dryoung@shoresleep.com
[15] Brooklyn Heights; 40; 307 N Lincoln St, Tallulah, LA 71282-307; shameikaamin80@gmail.com

[16] Bull & Bear Properties LLC; 30, 66; 1140 E 87th St, Chicago, IL 60619; chanelleprogers@gmail.com
[17] Business Live Global USA LLC; 37; 4538 Walnut Ridge Circle, McDonald, PA 15057; bizliveusa@gmail.com
[18] Cobb Utilities Inc.; 46; 191 Honey Suckle Circle, Ranger, GA 30734; cobbutilitiesinc@gmail.com
[19] Cool Beanz, LLC; 25; 143 West Fulton St, Sanford, FL 32771-143; mike@coolbeanzllc.com
[20] Dajo Properties LLC; 63; 1136 Chestnut Tree Rd, Honeybrook, PA 19344; dajoprop@gmail.com
[21] Darnell Development; 36; 1118 N Chinowth, Visalia, CA 93291-2814; darnelldev01@protonmail.com
[22] Faith Investors Services LLC; 15; 1522 4th Ave, Asbury Park, NJ 07712; lourndystlouis@gmail.com
[23] Foster Group LLC; 22; 2539 N 300 E, Lehi, UT 84043; Fostergroupllc.net@gmail.com
[24] Global Verse Holdings LLC; 10; 1709 Vintage Lane, Wylie, TX 75098; globalverseholdingsllc@gmail.com
[25] H&M Essential Services LLC; 59; 15714 Torry Pines Rd., Houston, TX 77062-4512; michaelcalvitto1@gmail.com
[26] Heliosun LLC DBA Odin; 14; 1600 S Litchfield Rd 230A, Goodyear, AZ 85338; wlindsay@odin.energy
[27] Hospitality Growth Capital LLC; 32; c/o Strauss Law Group PLLC, 264 S River Rd, Box 552, Bedford, NH 03110; Michael@strauss.law
[28] Knut LLC; 26, 60; 697 N 740 E, Lehi, UT 84043; dpknutsen@gmail.com
[29] Latent Lending, LLC; 24; 302 N. Abajo Peak Way, UT 84032; mark@latentwealthgroup.com
[30] Legacy Land Developers LLC; 18; 1651 W 100th St, Chicago, IL 60643; legacylandllc@att.net
[31] Limitless Investment Group LLC; 58; 3855 S 500 West Unit B, Salt Lake City, UT 84115; joe.darger3@gmail.com
[32] Log Cabin Building LLC; 38; 289 Parker Drive, Pittsburgh, PA 15216; iblack@ikbrealestate.com
[33] McMann Commercial Lending LLC; 64; 500 N Michigan Ave Ste 600, Chicago, IL 60611; walt.trock@gmail.com
[34] Meetopolis LLC; 13; 6501 E. Greenway Parkway #103-218, Scottsdale, AZ 85254; meetopolis1@protonmail.com
[35] Michael Thompson; 51; 1448 W Salmon Caddis Dr, Bluffdale, UT 85065; MFThompson@gmail.com
[36] MIMS-IPR, LLC; 16; 1627 7th St S, Clanton, AL 35045; mimsipr@hotmail.com
[37] Moser Holdings, LLC; 69; 537 S. 150 E., Smithfield, UT 84335; luvtofish3@yahoo.com
[38] N2N Group, Inc; 49; 5 Webb Hill Road, Great Neck, NY 11020; michellechennyc@gmail.com
[39] NCR Digital Corp; 54; 237 Floyd Road, Shirley, NY 11967; dolfyn103@gmail.com
[40] New Mount Olive Church; 44; 2905 Macfarlane Crescent, Flossmoor, IL 60422-2905; fernlew@comcast.net
[41] North Haven Lodging Partners LLC; 42; c/o Foley & Lardner LLP, 11988 El Camino Real, Ste 400, San Diego, CA 92130; bmorris@foley.com
[42] Nortical Capital Inc; 21; 921 E. Parker St, Ste 1, Lakeland, FL 33801; norticalcapital@gmail.com
[43] Nutre Leasing LLC; 33; c/o Strauss Law Group PLLC, 264 S River Rd, Box 552, Bedford, NH 03110; Michael@strauss.law
[44] Onsite Lifecare Inc; 55; 23 Dora lane, Holmdel, NJ 07733; info@onsitelifecare.com
[45] Relco Industries LLC; 45; 75 Lambert Avenue, Clifton, NJ 07013;

richard.ellison@relcoindustries.com
[46] Rolling By The Dozen RV Park LLC; 7; 40 Country Road 267, Somerville, TX 77879; kristinstegent@hotmail.com
[47] Rowehl & Russo Properties LLC; 53; 237 Floyd Road, Shirley, NY 11967; rowehl1@gmx.com
[48] S&L Zeppetelli DBA SLZ Waste Inc; 9; 191 Moonachie Road, Moonachie, NJ 07074; nick@slzwaste.com
[49] Seiler Tucker Inc; 52; 400 Poydras Ste 1460, New Orleans, LA 70130; michelle@seilertucker.com
[50] Solace Realty Concepts LLC; 17; 112 Lehigh Ave, Newark, NJ 07112; solacerealty2020@gmail.com
[51] Solar Capital Funding LLC; 34; c/o Strauss Law Group PLLC, 264 S River Rd, Box 552, Bedford, NH 03110; Michael@strauss.law
[52] Springer Farms Landholdings, LLC; 35; 325 N 1200 E, American Fork, UT 84003-325; tnokes@discoverealty.com
[53] Sun Coast Entertainment Live LLC; 12; 6960 Brescia Way, Orlando, FL 32819; nicholas@sensobeachclub.com
[54] Sunlight Storage LLC; 67; 3344 Bear Canyon Ln, Cedar Hills, UT 84062; dougelo7@gmail.com
[55] The Farming Co Pty Ltd; 20, 48; 86 Lakeside Drive, Helena Valley, WA 6056, Australia; melprinsloo@protonmail.com
[56] The Generations Group; 1; 14312 Zion Gate Xing, Conroe, TX 77384-2516; info@thegenerationsgroup.net
[57] TnC NOLA Holdings LLC; 3; 1461 Annunciation St B, New Orleans, LA 70130; chris@revolutionmep.com
[58] Uncle Willie Green Wings; 23; 141 Lehigh Ave, Newark, NJ 07112; walter.green@unclewillieswings.com
[59] WAI Holdings, LLC; 50; 1275 S Lucerne Blvd, Los Angeles, CA 90019; johnny@waibarmaui.com
[60] Wallingford Lodging Partners LLC; 43; c/o Foley & Lardner LLP, 11988 El Camino Real, Ste 400, San Diego, CA 92130; bmorris@foley.com
[61] West Palm Holdings Inc.; 39; 2705 Via Vistosa, San Clemente, CA 92672; scott.a.mednick@gmail.com
[62] Zelco Properties LLC; 41; 108 Patriot Dr Ste A, Middletown, DE 19709; zelco@gmx.com
[63] 20Twenty Development LLC; 71; 494 N Emery Ave, Orem, UT 84057; bryan@newdevelopmentconsulting.com

## SUMMARY OF EVIDENCE IN SUPPORT OF COHAN'S STANDING (BANKR. DOC. 781, 781-1 through 781-24)
## (Attached to Cohan's Reply to Trustee's Response, Bankr. Doc. 787)

Cohan submits this Summary so the Court can locate the relevant facts within the exhibits filed at Bankr. Doc. 781-1 through 781-24.

**I. The Estate Has Assets Approaching $22 Million.**

- **Velanos Judgment:** $20,000,000 plus 9% interest, entered March 4, 2025. **Bankr. Doc. 781-13, 781-22.**
- **Cash on hand:** $1,566,544.77. **Bankr. Doc. 781-22** (Trustee's Form 2).
- **Warren Law settlement:** $435,000, approved by order. **Bankr. Doc. 781-13, 781-22.**
- The Trustee has stated the viable claims pool is $13–14 million (*Misc. Doc. 45*).

**II. The Claims Register Contains Claims Amended by Thousands of Percent.**

- Claim #5: $400,000 → $14,247,750.
- Claim #4: $70,000 → $3,000,000.
- Claim #29: $2,500,000 filed for a $100,050 payment.
- **Bankr. Doc. 781-22.** The Trustee has separately conceded $3,972,311.48 of Claim #64 is duplicative. **Bankr. Doc. 781-19.**

**III. The Claimants Filed and Then Withdrew a Ponzi Allegation.**

- Stringer and Nutra-Acres filed a Ponzi-scheme adversary complaint on April 29, 2026 and voluntarily dismissed it on August 17, 2026 with no ruling on the merits.
- A related defamation action in Miami-Dade resulted in defaults against two claimants.
- **Bankr. Doc. 781-10.**

**IV. The Contracts State the Fees Are Non-Refundable.**

- Due diligence fees: "non-accountable and non-refundable." Services were provided. **Bankr. Doc. 781-4.**
- Bridge interest: "fully non-refundable." The Bridge Loans were provided. **Bankr. Docs. 51, 51-1 through 51-8, 79, 80, 781-19. Also please see contemporaneously filed "VERIFIED RESPONSE AND PARTIAL OBJECTION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON TRUSTEE'S OBJECTION TO CLAIM 5-3 OF CHARLES BLAKE STRINGER/NUTRA-ACRES LLC"**
- LOC, Promote, and ICA fees: "nonrefundable" and "fully earned." **Bankr. Doc. 781-19.**

- A recorded borrower call disclosed the same terms. **Bankr. Doc. 781-17.**

**V. Section 13.7 Excuses the Lender for the Wholesale Lender's Failure.**

- The clause is in both the Genie and McMann agreements. **Bankr. Doc. 781-3, 781-19.**
- The Debtor sent borrower update letters and pursued arbitration against Velanos. **Bankr. Doc. 781-14** showing the Debtor is ***not*** in breach.
- The Debtor did not learn of the Velanos failure until the Nordic Trust wire failed in June 2023. **Bankr. Doc. 781-15.**

**VI. The Debtor Relied on Counsel and Was Defrauded by Velanos.**

- Scott Oh advised that Velanos was legitimate and collateralized. **Bankr. Doc. 781-15.**
- The Debtor received $19.8 million in proof-of-funds screenshots and a wire trace that Oh confirmed was legitimate. **Bankr. Doc. 781-15.**
- The Debtor was auditing McMann's accounts in July and August 2023. **Bankr. Doc. 781-19.**

**VII. The Record Has Documented Gaps.**

- **Audio:** A forensic waveform analysis shows a flatline discontinuity in the April 17, 2024 §341 audio. **Bankr. Doc. 781-6.**
- **Docket:** The JSO police report was removed from the docket twice without court order; the docket skips entries 406-3 and 470-1. **Bankr. Doc. 781-8.**
- **Doc. 781-7:** Composite (50 pages) containing the New Jersey Final Restraining Order (March 3, 2022) and its Florida registration, Sworn affidavit of an eye-witness to notice to the UST, the JSO Incident Report No. 2025-0471040 (-01, -02, -03, -04) finding probable cause, the Florida arrest warrant (November 10, 2025), the §341 chain-of-custody record, the D.D.C. opinion taking judicial notice of the JSO report (Doc. 73), and the M.D. Fla. order in 3:25-cv-00643-WWB-PDB (Doc. 14).
- **Confirmation of fraud:** A former FINRA enforcement attorney states the U.S. Trustee's "confirmation of fraud" does not appear in the Examiner's Report, and that Debtor's counsel declined to raise it. **Bankr. Doc. 781-9, 781-21.**
- **Judicial notice:** The D.D.C. took judicial notice of the JSO police report. **Bankr. Doc. 781-16.**

**VIII. Six Courts Have Found Cohan Indigent.**

- D.D.C.; Bankr. M.D. Fla.; Bankr. M.D. Fla. (Fort Myers); two Florida circuit court certificates; Alabama Supreme Court. **Bankr. Doc. 781-23.**

**IX. Remaining Exhibits.**

- **781-1, 781-2:** Custodian declaration and corporate good-standing attestation.
- **781-3, 781-4, 781-5:** Compilations of the BELOC, due diligence, and bridge loan portfolios.
- **781-11, 781-12:** Trial scheduling order; recusal denial; no-surplus finding; omnibus objection; Illinois parallel-case orders.
- **781-18:** Pre-drafted appeal; counsel's refusal to provide appellate services.
- **781-20:** Third-party SBLC fraud filings; ZOOMERAL fee terms.
- **781-24:** The United States Constitution.

**X. Conclusion.**

The record shows ~$22 million in assets against the Trustee's own $13–14 million claims figure (2:26-mp-00001, Misc. Doc. 45). The contracts state the fees are "*non-refundable*". Section 13.7 excuses the Lender for the wholesale lender's failure and shows the Debtor is not in breach. Six (6) courts have found Cohan indigent.

The record also shows what has happened to the evidence: the JSO police report was removed from the docket twice without motion, notice, order, or hearing (Bankr. Doc. 781-8); the §341 audio carries a flatline discontinuity (Bankr. Doc. 781-6); the "confirmation of fraud" attributed to the Examiner appears nowhere in her Report (Bankr. Docs. 146, 781-9, 781-21); and when Cohan sought notice of these matters and production of the outstanding transcripts, the relief was denied and the filings struck.

On the assets and the Trustee's own claims figure, the surplus is *demonstrable*, and Cohan has a direct, adverse, and pecuniary interest in it. Cohan objects to a standing determination made on a record from which the evidence of that interest has been removed, and asks that the Court either determine standing on the complete record or state on the record that it is declining to do so.