FILED INTAKE USBC
NOV 3 '26 PM3:21

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:
GENIE INVESTMENTS NV INC.,
Debtor.

Case No. 3:24-bk-00496-BAJ
Chapter 7

DAVID C. HUGHES II,
Claimant.

# DAVID C. HUGHES II'S REPLY TO TRUSTEE'S OBJECTION TO CLAIM 72-2

Claimant, David C. Hughes II ("Hughes"), individually, files this Reply to the Trustee's Objection to Claim 72-2 (Doc. 777) (the "Objection"), and respectfully states:

## PRELIMINARY STATEMENT

The Trustee's Objection asks this Court to disallow a claim that belongs to Hughes individually, not to Zoomeral. The Trustee ignores that the Illinois Chapter 7 Trustee, in his Motion to Abandon (In re David Choate Hughes, II, Case No. 25-70566, Doc. 615), expressly identified the asset as "an interest in the accounts receivable of Zoomeral, Inc. and any potential offset against filed Claim No. 9 (the 'Zoomeral Offset Claim')," and the Illinois Court entered its Order Granting Trustee's Motion to Abandon on September 11, 2026 (Doc. 721), abandoning that asset to Hughes. Hughes filed this Claim 24 days later.

But the Trustee's objection suffers from a more fundamental problem. The Trustee is simultaneously using the Loan Agreement as a sword in Illinois and refusing to honor it as a shield in Florida. In the Illinois case, Cohen filed Claim 9-1 based on a default judgment he obtained against Zoomeral under the Loan Agreement dated September 5, 2022. That same Loan Agreement contains a Section 28 indemnification provision obligating the Lender, and therefore the Trustee, standing in Genie's shoes, to "indemnify, defend, and hold harmless the Borrower and its respective officers and employees from any liabilities, claims, clawbacks, suits, judgments, and damages arising as a result of the performance of the obligations under this Agreement."

Hughes now owns the right to enforce Section 28. He has demanded that the Trustee honor it. The Trustee has refused thus far. The Trustee cannot invoke the Loan Agreement to collect a judgment against Zoomeral in Illinois while simultaneously asking this Court to disallow the claim that arises from the very indemnity obligation the same Agreement imposes on him. A party cannot use a contract as a sword and then disclaim its shield.

The Trustee also ignores that it had actual knowledge of the offset before it filed Claim 9-1, and that its own counsel has since admitted in a Florida filing that Hughes owns 82.5% of Zoomeral, not the 100% figure the Trustee used to manufacture a veil-piercing theory. That distinction is not incidental. Under Delaware law, veil piercing requires complete domination and control, and an 82.5% interest defeats that element as to the 17.5% Hughes does not own. ***The 100% figure was the predicate for the theory. The Trustee's own Amended Response (Doc. 786) has now corrected the record to 82.5%, which concedes the point.***

Hughes requests that the Court allow Claim 72-2 on the papers, subject to the Rule 9019 subordination structure set forth below, and make specific findings on ownership, indemnification, and offset, or set a full evidentiary hearing if the Court finds any factual dispute.

**ARGUMENT**

## I. THE ABANDONMENT ORDER AND THE ASSIGNMENT PACKAGE ESTABLISH HUGHES'S INDIVIDUAL OWNERSHIP

The Trustee's Objection asserts that Hughes failed to provide the assignment of Zoomeral's receivables. That is incorrect. The assignment and abandonment record is of record in the Illinois bankruptcy case and is incorporated herein by reference in its entirety.

On March 16, 2025, Zoomeral executed a complete dissolution and assignment package transferring its accounts receivable and related contractual rights, including the Section 28 indemnification right, to Hughes (82.5%) and John Michael Cohan (17.5%). That package is filed at In re David Choate Hughes, II, Case No. 25-70566 (Bankr. C.D. Ill.), Doc. 658, Exhibit F, and includes the Unanimous Board Resolutions (pp. 3–4), the Unanimous Shareholder Consent (pp. 6–7), the Assignment and Distribution Agreement (pp. 8–10), and the Chain-of-Title and Ownership Certificate (p. 19).

The Illinois Chapter 7 Trustee then filed a Motion to Abandon Certain Property of the Bankruptcy Estate (Doc. 615), identifying the asset as "Zoomeral, Inc. Accounts Receivable and Debtor's Allocable Interest." The Motion described the asset as including "an interest in the accounts receivable of Zoomeral, Inc. and any potential offset against filed Claim No. 9 (the 'Zoomeral Offset Claim')." The Illinois Court entered its Order Granting Trustee's Motion to Abandon on September 11, 2026 (Doc. 721). The Order expressly abandoned the estate's interest in the "Zoomeral Offset Claim" to Hughes.

The abandonment order is dispositive on the standing question. Under 11 U.S.C. § 554, abandonment returns the property to the debtor, and the debtor may then assert the abandoned claim in his own name. Once abandoned, the asset is no longer property of the estate, and the debtor has standing to pursue it. Hughes could not have filed this Claim before September 11, 2026, because the claim belonged to the Illinois estate. He filed 24 days after the abandonment order. The Trustee cannot fault Hughes for not filing a claim before he had the legal right to do so.

## II. SECTION 28 OF THE LOAN AGREEMENT BARS THE CLAIM

The Trustee's Claim 9-1 is based on a Final Default Judgment entered against Zoomeral in *Cohen v. Zoomeral, Inc.*, Adv. Pro. No. 3:25-ap-00011-BAJ (Bankr. M.D. Fla.), Doc. 42. That judgment is a "judgment" and a "clawback" within the plain meaning of Section 28 of the Loan Agreement dated September 5, 2022, between Genie Investments NV (Lender) and Zoomeral, Inc. (Borrower).

Section 28 provides: "The Lender shall indemnify, defend, and hold harmless the Borrower and its respective officers and employees from any liabilities, claims, claw backs, suits, judgments, and damages arising as a result of the performance of the obligations under this Agreement." It further provides that, upon the Borrower's first demand, "the Lender shall be required to pay all reasonable costs to remedy any liabilities, claims, claw backs, suits, judgments, and damages within ten (10) business days upon receipt the notice from the Lender to the Borrower."

As Genie's Chapter 7 Trustee, Cohen stands in the shoes of the Lender and is bound by Section 28. Hughes, as the assignee of Zoomeral's rights and the holder of the abandoned Section 28 indemnification right, has made demand. The Trustee has refused. The Claim cannot be allowed when the Trustee is simultaneously breaching the indemnification obligation that the Claim itself triggers.

The Trustee may argue that the Loan Agreement's non-recourse and no-personal-guarantee provisions protect it from Hughes's claim. But those provisions protect the Borrower from the Lender's collection efforts. They do not protect the Lender from its own indemnification obligations. Section 28 is a separate covenant. The Trustee cannot invoke the Agreement to collect a judgment and then disclaim the Agreement's indemnity provision.

## III. THE TRUSTEE'S § 502(d) ARGUMENT FAILS BECAUSE HUGHES IS NOT THE JUDGMENT DEBTOR

The Trustee argues that Hughes's claim must be disallowed under § 502(d) because Zoomeral owes an unsatisfied fraudulent transfer judgment, citing *In re KB Toys Inc.*, 736 F.3d 247 (3d Cir. 2013). That case is inapposite.

*KB Toys* held that a § 502(d) disability "runs with the claim" when a **claims trader** purchases a trade claim from a creditor that received a preference. The court's concern was preventing "claim washing", creditors selling claims to cleanse disabilities and receive value for otherwise disallowable claims. Hughes is not a claims trader. He did not purchase Zoomeral's claim to wash a disability. He holds his **individual 82.5% interest** in the receivables by assignment from Zoomeral and by abandonment from the Illinois Trustee, who determined the asset was of no value to the estate and abandoned it to Hughes. The claim is not Zoomeral's claim "washed" through transfer; it is Hughes's own property interest, abandoned to him by order of the Illinois Court.

Hughes is not a claims trader. He is not a transferee who purchased a claim from Zoomeral to wash a disability. He holds his individual 82.5% interest in the receivables by assignment from Zoomeral and by abandonment from the Illinois Trustee. The claim is not Zoomeral's claim "washed" through transfer. It is Hughes's own property interest, which the Illinois Trustee determined was of no value to the estate and abandoned to him.

Section 502(d) disallows claims "of any entity from which property is recoverable." The entity from which property is recoverable is Zoomeral, not Hughes. The Trustee obtained a judgment against Zoomeral. It did not obtain a judgment against Hughes individually. The Trustee cannot use § 502(d) to pierce the corporate veil in a claim objection. If the Trustee wishes to pursue a fraudulent transfer theory against Hughes personally, it must file an adversary proceeding against him, which it has not done.

## IV. THE RECEIVABLES ARE ENFORCEABLE AND DOCUMENTED

The Trustee argues that the receivables are unenforceable because the Terms of Use did not bind Genie, the success fees were based on unfunded loans, and the 1/3 due diligence split lacks a written agreement. The record refutes each point.

A. The Examiner's Report Confirms the Fee Structure.

The Examiner found that "Zoomeral earned commissions upon loans closing from Genie NV" and that Zoomeral was "to be paid a fee as the originator for the loan." (Examiner Report, Doc. 146, ¶¶ 16, 25). The Trustee cannot now argue that the fees were never earned when its own examiner found they were. Indeed, the Chapter 7 Trustee has itself sought to collect on these same closed loans in this very proceeding, most notably the Sumerian LLC loan, which the Trustee identified as a closed loan in its Motion to Compromise Claims With Sumerian, LLC (Doc. 607). The existence of the "Closed Loans" is well established in the record and has never been challenged. The Trustee's assertion that no fees were earned on these loans is therefore unsupportable and contradicted by its own conduct.

B. The BELOC Agreements and Bank Records Establish the 1/3 Split.

The BELOC agreements contain the 3% Promote Fee provision. The Chase Bank records show repeated one-third split payments to Zoomeral, Cald Holdings, and Capitulum—the exact same amounts, on the exact same dates. (Verified Contractual Offset, In re David Choate Hughes, II, Case No. 25-70566, Doc. 612-3, Part 4, pp. 2–3). A course of dealing spanning dozens of transactions establishes the contractual obligation even without a single integrated document.

C. The Amounts Are Not Overstated.

The ledger reflects fees actually earned and recorded. (Verified Contractual Offset, Doc. 612-4, Part 5, p. 18, Accounts Receivable Accounting Ledger, summary showing TOTAL $1,984,562.00). If the Trustee disputes specific line items, that is a matter for accounting, not

disallowance in its entirety. Hughes expressly requested an accounting in his Claim. The Trustee has not provided one.

## V. THE CLAIM IS TIMELY UNDER RULE 3002(c)(6), OR ALTERNATIVELY ALLOWABLE UNDER § 726(a)(3)

### A. Rule 3002(c)(6) Applies Because Notice Was Insufficient.

Rule 3002(c)(6), as amended in 2022, provides that the Court may extend the time to file a proof of claim if it finds that "notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim." The rule does not require a showing of excusable neglect.

Hughes was not listed on the creditor matrix as an individual claimant. He received no individual notice of the bar date. Moreover, the Claim did not exist in Hughes's hands until September 11, 2026, when the Illinois Trustee abandoned the Zoomeral receivables and indemnification rights to him. Before that date, Hughes lacked standing to assert those rights personally—they were property of the Illinois estate. He filed Claim 72-2 on October 5, 2026—24 days after the abandonment order.

The Trustee cannot have it both ways: it cannot treat the receivable as estate property when it suits the estate, while faulting Hughes for not filing a claim before that property was abandoned to him.

### B. Alternatively, the Claim Is Allowable Under § 726(a)(3).

Even if the Court finds the Claim is tardy, it remains allowable under 11 U.S.C. § 726(a)(3), which provides for distribution to tardily filed claims after timely claims are paid. Hughes does not qualify for second-tier distribution under § 726(a)(2)(C) because he had knowledge of the deadline. But § 726(a)(3) does not require lack of knowledge. The estate's reported surplus (Doc. 763) may permit a distribution at that tier. Hughes's 9019 subordination offer is consistent with this position.

## VI. THE TRUSTEE HAD ACTUAL KNOWLEDGE OF THE OFFSET BEFORE FILING CLAIM 9-1

The Trustee's counsel, Raye Elliott, received notice of the verified offset well before October 2025, but on October 28, 2025, before Claim 9-1 was executed on November 13, 2025. (Verified Contractual Offset, Doc. 612-4, Part 5, pp. 53–54, and the Notice of Contractual Offset filed August 21, 2026, Doc. 612). The Trustee, Aaron Cohen, himself with his claim signature executed, nonetheless filed Claim 9-1 and checked ***"No"*** in response to the question "Is this claim subject to a right of setoff?" on the face of the claim form, under penalty of perjury. (Claim 9-1, Part 1, item 11).

The Illinois Trustee recognized the merit of the offset. In his Motion to Abandon (Doc. 615), he identified the asset as "Zoomeral, Inc. Accounts Receivable and Debtor's Allocable Interest" and sought abandonment because the asset had value to Hughes individually. The Illinois Court entered the Abandonment Order on September 11, 2026. (Doc. 721). The Trustee's own examiner confirmed the fee structure that supports the offset.

## VII. THE TRUSTEE'S OWN FILING ADMITS HUGHES OWNS 82.5%

In the Trustee's Amended Response, after receiving a Demand form from Hughes, to the Illinois Trustee's Objection (Doc. 786, filed November 2, 2026), the Genie Trustee corrected its prior assertion and acknowledged that Hughes owns 82.5% of Zoomeral, not 100%. ***That admission certainly defeats the veil-piercing theory***, which requires complete domination and control, and confirms that the Claim amount ($175,725.00) is correctly calculated as 82.5% of the $213,000 net receivable.

The Assignment Package (Doc. 658, Exhibit F), the Examiner's Report (¶ 114, p. 32), and the Trustee's own Objection (Doc. 777, ¶ 7, p. 2) all confirm the 82.5% figure.

## VIII. HUGHES'S RULE 9019 OFFER AND REQUEST FOR SUBORDINATION

Hughes has offered, in good faith and without prejudice, to resolve this matter through a consensual structure under Rule 9019:

- Hughes's allowed claim (if any) would be subordinated behind all court-approved customer claims;
- Hughes would not seek any distribution until ***Genie's customers are paid in full***; and
- The offset would be recognized as a defense to Claim 9-1 in the Illinois case.

This offer places the customers first and conserves estate resources. The Trustee has not responded. Hughes requests that the Court take this offer into account in determining the Claim's treatment and reserves the right to seek approval of this structure if the parties cannot reach agreement. (See Demand to Withdraw Claim No. 9-1, dated November 2, 2026, Section 6, Rule 9019 Request on the Florida Claim, filed in In re David Choate Hughes, II, Case No. 25-70566, and incorporated herein by reference).

## IX. REQUEST FOR SPECIFIC FINDINGS ON OWNERSHIP, INDEMNIFICATION, AND OFFSET

Hughes requests that the Court make specific findings on the following issues, which are necessary to resolve Claim 72-2 and which will be binding on the parties in future proceedings:

### A. Ownership of the Zoomeral Receivables.

The Illinois Court entered its Order Granting Trustee's Motion to Abandon on September 11, 2026 (Doc. 721). That Order abandoned the "Zoomeral Offset Claim" to Hughes. Under 11

U.S.C. § 554, the abandoned property is no longer property of the estate, and Hughes has standing to assert it. The Court should find that Hughes owns 82.5% of the Zoomeral receivables and the ***Section 28 indemnification right***.

**B. The Section 28 Indemnification Obligation.**

The Loan Agreement dated September 5, 2022, between Genie Investments NV and Zoomeral, Inc., contains a Section 28 indemnification provision. That provision obligates the Lender to "indemnify, defend, and hold harmless the Borrower and its respective officers and employees from any liabilities, claims, clawbacks, suits, judgments, and damages arising as a result of the performance of the obligations under this Agreement."

The Trustee's Claim 9-1 is based on a judgment entered against Zoomeral in *Cohen v. Zoomeral, Inc.*, Adv. Pro. No. 3:25-ap-00011-BAJ, Doc. 42. That judgment is a "judgment" and a "clawback" within the plain meaning of Section 28. The Trustee, standing in the shoes of the Lender, is bound by Section 28. The Court should find that the Trustee cannot enforce the Loan Agreement against Zoomeral while refusing to honor the Agreement's indemnity obligation.

**C. The Offset.**

The Zoomeral receivable ($1,984,562.00) exceeds the Claim ($1,771,555.74) by $213,006.26. Under 11 U.S.C. § 553, the right of setoff is preserved under applicable non-bankruptcy law. The Court should find that the Claim is subject to setoff and is extinguished to the extent of the receivable.

**D. The Effect of These Findings.**

These findings are necessary to resolve Claim 72-2. They are also binding on the parties in the Illinois bankruptcy case (Case No. 25-70566) under the doctrine of issue preclusion, because the same issues are raised there in Cohen's Claim 9-1.

**X. REQUEST FOR ALLOWANCE ON THE PAPERS; ALTERNATIVE REQUEST FOR EVIDENTIARY HEARING**

Hughes requests that the Court allow Claim 72-2 on the papers, subject to the consensual subordination structure set forth in Section VIII above. The record before the Court is sufficient to resolve the Claim without an evidentiary hearing because:

1. The abandonment order is undisputed. The Illinois Court entered its Order Granting Trustee's Motion to Abandon on September 11, 2026 (Doc. 721). That order is of record and establishes Hughes's standing.
2. The assignment documents are undisputed. The Assignment Package (Doc. 658, Exhibit F) establishes Hughes's 82.5% ownership interest.

3. The Trustee has admitted the 82.5% figure. The Genie Trustee's Amended Response (Doc. 786) corrected the record to reflect 82.5%, not 100%.

4. The offset is documented. The Verified Contractual Offset (Doc. 612 and exhibits) establishes the $1,984,562.00 receivable and the $213,006.26 net overage.

5. The Trustee had actual knowledge of the offset. The Trustee's counsel received notice on October 28, 2025, before Claim 9-1 was filed.

If the Court determines that any factual issue requires resolution, including the enforceability of the receivables, the applicability of § 502(d), the Section 28 indemnity, or the timeliness of the Claim under Rule 3002(c)(6), Hughes requests a full evidentiary hearing on those discrete issues. Hughes does not object to presenting evidence and will appear and testify if required.

Hughes reserves all rights to supplement this Reply, to submit additional exhibits, and to respond to any further arguments the Trustee may raise.

## XI. RESERVATION OF RIGHTS

Hughes reserves all rights to supplement this Reply with additional evidence, including:

- The Illinois Abandonment Order and Motion (Docs. 615, 721);
- The Genie Trustee's Amended Response (Doc. 786);
- The Demand to Withdraw Claim No. 9-1, dated November 2, 2026, and the Notice of Service of Demands filed in In re David Choate Hughes, II, Case No. 25-70566;
- Any response from the Trustee to the Rule 9019 offer; and
- Such other evidence as may be necessary to respond to arguments raised in the Trustee's reply, if any.

CONCLUSION

The Trustee's Objection should be overruled. Section 28 of the Loan Agreement bars the Claim because the Trustee cannot enforce the Agreement against Zoomeral while refusing to honor the Agreement's indemnity obligation to the Borrower and its officers. The abandonment order establishes Hughes's standing. The Claim is timely under Rule 3002(c)(6), or alternatively allowable under § 726(a)(3). Section 502(d) does not apply because Hughes is not the judgment debtor. The Trustee's own filing admits Hughes owns 82.5%. Hughes has offered to subordinate his claim behind the customers. The Court should allow the Claim on the papers, subject to the subordination structure Hughes has proposed, or set an evidentiary hearing if necessary.

Dated: November 3, 2026

Respectfully submitted,

/s/ David C. Hughes II
DAVID C. HUGHES II
82 Plantation Pointe Road, No. 281
Fairhope, Alabama 36532
davidchoatehughes@gmail.com
Claimant, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on November 3, 2026, I served a true and correct copy of this: **DAVID C. HUGHES II'S REPLY TO TRUSTEE'S OBJECTION TO CLAIM 72-2**

via the Court's CM/ECF system and by email upon:

Raye C. Elliott, Esq.
Thomas B. Fullerton, Esq.
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
raye.elliott@akerman.com
thomas.fullerton@akerman.com

Aaron R. Cohen, Chapter 7 Trustee
Genie Investments NV, Inc.
P.O. Box 4218
Jacksonville, Florida 32201-4218
aaron@arcohenlaw.com

/s/ David C. Hughes II
DAVID C. HUGHES II