**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FILED INTAKE USBC
NOV 6 '26 PM3:36

**In re:**
**GENIE INVESTMENTS NV, INC.,**
**Debtor.**

**Case No. 3:24-bk-00496-BAJ**
**Chapter 7**

## DAVID C. HUGHES II'S REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR RELIEF FROM ORDER CONVERTING CASE TO CHAPTER 7

David C. Hughes II ("Mr. Hughes"), appearing pro se, files this Reply to the United States Trustee's Objection (the "Objection") to his Motion under Rule 60(d)(3) (Doc. 651).

## I. MR. HUGHES HAS STANDING ON TWO INDEPENDENT GROUNDS.

The UST argues that Mr. Hughes is an "out-of-the-money equity holder" and relies on Judge Rivera's ruling regarding Mr. Cohan. That argument misapprehends the injury on both of its independent grounds.

### A. The Conversion Order Is the But-For Cause of a $1.77 Million Personal Claim Against Him.

Mr. Hughes is not here as an equity holder complaining about case administration. He is here because the Conversion Order set in motion a chain of events that ends with a $1,771,555.74 personal claim against him in the Central District of Illinois (Case No. 25-70566, Proof of Claim No. 9-1).

The chain is direct and traceable:

- **But for** the conversion from Chapter 11 to Chapter 7, there would have been no Chapter 7 Trustee in Florida.
- **But for** the Chapter 7 Trustee, there would have been no adversary proceeding against Zoomeral, Inc. (Adv. Pro. No. 3:25-ap-00011-BAJ).

- **But for** that adversary proceeding, there would be no default judgment against Zoomeral.
- **But for** that default judgment, there would be no Claim No. 9-1 filed against Mr. Hughes personally in Illinois.

The UST's own Objection concedes that the claim arises from the judgment obtained by the Chapter 7 Trustee. The UST cannot simultaneously argue that the Conversion Order is unreviewable and that its downstream consequences are beyond this Court's reach.

**B. The Illinois Bankruptcy Court Has Abandoned the Zoomeral Offset Claim to Mr. Hughes, Creating a Direct Pecuniary Interest and Exposing a Contradiction in the Trustee's Positions.**

Independently, Mr. Hughes holds a direct pecuniary interest in the assets underlying Claim No. 9-1 by order of the United States Bankruptcy Court for the Central District of Illinois.

On September 11, 2026, Judge Mary P. Gorman entered an Order Granting Trustee's Motion to Abandon Certain Property of the Bankruptcy Estate, pursuant to 11 U.S.C. § 554 (Case No. 25-70566, Doc. 721, incorporated herein by reference in its entirety). That Order provides, in relevant part:

"IT IS FURTHER ORDERED that Trustee Robert E. Eggmann is authorized to abandon the bankruptcy estate's interest in certain property defined in the Motion, pursuant to 11 U.S.C. § 554, including the following: ... **c. an interest in the accounts receivable of Zoemeral, Inc. and any potential offset against filed Claim No. 9 (the 'Zoemeral Offset Claim')**" (Doc. 721 at 1-2.)

The Order further provides:

"IT IS FURTHER ORDERED that grounds exist to abandon any and all such property for the reason that it is of inconsequential value and benefit to the bankruptcy estate and any attempts to collect the same would impose an undue burden upon Trustee and the estate." (Doc. 721 at 2.)

Judge Gorman abandoned the Zoomeral Offset Claim, the exact defense to Claim No. 9, to Mr. Hughes. Because the estate no longer holds that asset, Mr. Hughes now holds it personally. That is a direct, concrete, pecuniary interest in the

outcome of Claim No. 9-1, and it is a second, independent basis for standing. This Court need not reach the equity-holder question at all.

It also exposes a material contradiction. In Illinois, the Trustee told Judge Gorman that the Zoomeral Offset Claim was of "inconsequential value" and that collecting it would impose an "undue burden." In Florida, the UST and the Trustee are now treating the same underlying claim as a valid multi-million-dollar obligation that must be settled and allowed. Both positions cannot be true. That contradiction is precisely the kind of record-level inconsistency that Rule 60(d)(3) exists to address, and it is why an evidentiary hearing is necessary.

**The transfer theory behind Claim 9-1 rests on the same unweighed record.**

The same record problem infects the transfer theory that produced Claim No. 9-1. Mr. Walker's Opposition expressly stated that the affiliate transfers, including the transfers to Zoomeral, occurred "pursuant to loan agreements executed in September 2022," before Genie entered the Velanos joint venture, before Genie had ever failed to issue a properly requested refund, and before any putative creditor had sued Genie or threatened suit. (Walker Opp. at 8, incorporated herein by reference.) Mr. Walker further stated that Genie loaned money to Zoomeral "so that it could hire developers to improve the software platform, establish a relationship with one or more payment processors, and create a marketing campaign to attract more potential borrowers," and that "Genie reasonably expected its loan to Zoomeral to result in more business for Genie." (*Id.* at 9-10.)

That is a good-faith business explanation for the very transfers the UST later characterized as fraudulent. The UST's conversion motion did not weigh it. The Court never made a finding on it. The default judgment against Zoomeral was entered on a complaint that never named Mr. Hughes and never adjudicated this explanation. The personal claim against Mr. Hughes in Illinois therefore rests on a finding that was never made against him.

## II. THE CONVERSION HEARING WAS ORAL ARGUMENT ONLY. NO EVIDENCE WAS WEIGHED. HAZEL-ATLAS REQUIRES THAT IT BE.

The UST argues that Mr. Hughes is seeking an impermissible "second bite at the apple." This argument fails on its own terms.

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and its Eleventh Circuit progeny, *Travelers Indemnity Co. v. Gore*, 761 F.2d 1549 (11th Cir. 1985), define fraud on the court as conduct that "does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." 761 F.2d at 1552-53.

Every element of that standard is present here.

**First, the conduct was directed at the Court.** The UST presented the Examiner's Report as "confirming" fraud when the Report contains no such finding. That representation was made to the Court, in Court, for the purpose of obtaining a ruling. (Motion, Doc. 651, at 14-15.)

**Second, the conduct was perpetrated by officers of the Court.** The UST is an officer of the Court. The Examiner was appointed by the Court. The representations at issue came from both. (*Id.* at 18-19.)

**Third, the judicial machinery could not perform its impartial task, because the conversion hearing was oral argument only.** The UST's Objection confirms the procedural posture: the conversion motion was resolved on "written responses" and the parties "argued the motion on the merits" at the August 8, 2024, hearing. (Objection at 5, ¶ 11.) The UST does not identify a single witness who testified, a single exhibit that was admitted, or a single evidentiary finding the Court made on the contract question. The August 8, 2024, transcript will confirm this, which is precisely why Mr. Hughes has requested it. (Motion, Doc. 651, ¶ 6.)

**Fourth, the standard of proof is clear and convincing evidence, and that standard requires weighing.** The Court cannot determine whether the UST's representations were materially false without comparing them to the documents the UST had in its possession: the BELOC Agreement, the Loan Agreement with its force majeure clause within section 13.7 of the BELOC agreement, the written clarification Genie sent to the Examiner before the Report issued, and the August 8, 2024, transcript. A non-evidentiary hearing based on attorney argument cannot perform that comparison. That is the entire point of Rule 60(d)(3), and it is the entire point of Mr. Hughes's Motion.

**The contract analysis was on file before conversion.**

The documentary record confirms that the controlling contract language was on file before conversion. Adam B. Walker, Genie's counsel at the time, submitted a Declaration on March 14, 2024 (incorporated herein by reference in its entirety). In it, Mr. Walker explained that Genie retained a licensed attorney, Scott Oh of the Warren Law Group, before entering the Velanos transaction, and that Genie relied on that attorney's advice. (Walker Decl. ¶¶ 5-6, 17.) Mr. Walker further stated: "Whatever one might say with the benefit of hindsight, the proper lens for evaluating Genie's competence to manage its affairs requires consideration of its entire operating history and the fact that it sought, paid for, and relied on the assistance of legal counsel." (*Id.* ¶ 17.)

Mr. Walker also filed a written Opposition to the UST's Second Motion to Convert (incorporated herein by reference in its entirety). In that Opposition, he set out the contract analysis of the BELOC Agreement, section by section. He explained that the BELOC Agreement required Genie only to create an Interest Credit Account "on the books and records of the Lender," credit the ICA Payment, use it to satisfy interest, and refund the ICA Payment only "if and when specified preconditions are satisfied." (Walker Opp. at 4.) He explained that Section 13.7(c) tolls the refund period "during the pendency of a Force Majeure event", and defines as one such event "the failure of the Lender's wholesale lender from performing [sic] under the terms of the agreement between the Lender and the wholesale lender." (*Id.*) Mr. Walker explained the legal consequence in one sentence: **"If the BELOC Agreement required the Lender to hold ICA Payments in trust, then there would be no need to protect the Lender against a wholesale lender's failure to perform. But the BELOC Agreements clearly anticipated a situation where the Lender's ability to refund ICA Payments depends on a wholesale lender performing its contractual obligations to the Lender. Otherwise, the tolling provision in section 13.7(c) would be superfluous."** (*Id.*)

That analysis was in the record before the conversion ruling. The UST's Objection does not dispute that. The UST's Objection does not point to any place where the Court weighed it. The UST's Objection does not identify any witness who was called to testify about it or any exhibit that was admitted to explain it. It simply asserts that the merits "have already been heavily litigated" (Objection at 5, ¶ 11) — without identifying a single evidentiary finding on the contract interpretation that the conversion turned on.

The UST's Objection asks this Court to decide a fraud-on-the-court motion on the same kind of record, attorney argument, that produced the alleged fraud in the first place. *Hazel-Atlas* forecloses that result.

## III. THE TRIAL TRANSCRIPT AND THE CONTRACTS SHOW GENIE'S CONDUCT WAS CONTRACTUALLY PROTECTED, NOT FRAUDULENT.

The UST argues that Mr. Hughes failed to present evidence during the conversion proceedings. That is false, and the record proves it.

At the April 10, 2024, trial (Doc. 80, incorporated herein by reference), Mr. Hughes testified that Genie's business model depended on a wholesale lender (Velanos). When asked why Genie continued operating after Velanos failed to fund, Mr. Hughes explained that the loan agreements contained force majeure and wholesale-lender clauses. (Doc. 80 at 45-46, incorporated herein.) Mr. Hughes further testified that the funds Genie held were held under those contractual terms, not misappropriated. (*Id.* at 66-68.)

The MIMS-IPR Loan Agreement (incorporated herein by reference) confirms it. **Section 13.7(d)** provides that the Lender (Genie) "shall not be liable or responsible to the Borrower, nor be deemed to have defaulted... for any failure or delay in funding... caused by... (ix) failure of the Lender's wholesale lender from performing under the terms of the agreement between the Lender and the wholesale lender."

That clause is standard in Genie's contracts. It means Genie's failure to fund, the very conduct the UST characterized as "gross mismanagement", was expressly authorized by the contracts whenever the upstream lender failed. The Court was given a narrative that Genie was misusing "customer funds." The contracts show Genie was holding funds under a bargained-for force majeure provision while it pursued its upstream lender.

**This was not a new argument; it was on file before conversion.**

This was not a new argument Mr. Hughes invented after the fact. It was set out in writing, before the conversion ruling, by Genie's own counsel. Mr. Walker's Opposition to the Second Motion to Convert stated directly that "the BELOC Agreement, which both the Examiner and the UST ignore, makes clear that ICA

Payments received by Genie were not required to be held in trust and therefore did not constitute 'customer funds.'" (Walker Opp. at 1.) He further stated that the Report's conclusion that ICA Payments remained "customer funds" was based on "the opinions of interested parties" that were "insufficient, standing alone, to override the unambiguous language of a written contract." (*Id.* at 2.)

The UST's Objection does not argue that Mr. Walker's Opposition misread the contract. It does not argue that the Court rejected that contract analysis on the merits. It cannot, because the conversion ruling was made after oral argument on briefs, and the record does not reflect any evidentiary finding resolving the contract question. The Court was told, in writing, that the BELOC Agreement did not create a trust. The Examiner and the UST argued the opposite. No evidence was taken to resolve the dispute. That is the definition of a record that was never weighed.

The UST had those contracts. The UST did not present that clause to the Court. The Court never weighed it. That is a material omission, and it goes to the heart of the conversion ruling.

**IV. THE HARM IS ONGOING AND THE VICTIMS ARE PAYING FOR IT.**

The UST argues that Mr. Hughes's Motion is a delay tactic. The record shows otherwise.

Lea Muse and more than sixty joining individuals have filed a Joint Joinder in the adversary proceeding (Adv. Doc. 158, incorporated herein by reference) seeking sanctions of $10,000 per day against the Former Owners for non-compliance with discovery orders, and seeking a verified accounting of what was produced, what remains concealed, and what the estate has spent obtaining substitute records.

Whatever the merits of that filing, it demonstrates the real-world consequence of an unexamined conversion record: the creditors are now paying a second time, in legal fees and estate expenses, to reconstruct records that should have been produced years ago. The estate is spending money on discovery disputes and sanctions motions because the underlying record was never corrected.

Mr. Hughes is not asking for delay. He is asking this Court to look at the contracts and the trial transcript that were before the Court in 2024, and to weigh them against what the UST told the Court they said.

## CONCLUSION

Mr. Hughes has standing on two independent grounds: (1) the Conversion Order is the but-for cause of a $1.77 million personal claim against him, and (2) the Illinois Bankruptcy Court has already abandoned the Zoomeral Offset Claim, the defense to that very claim, to him by order (Doc. 721). He is not asking this Court to re-weigh the merits. He is asking the Court to weigh the evidence for the first time, because the conversion hearing was oral argument only, and *Hazel-Atlas* requires that fraud on the court be tested against the documents, not against opposing counsel's characterization of them.

WHEREFORE, Mr. Hughes respectfully requests that the Court overrule the UST's Objection, find that he has standing, and grant an evidentiary hearing on the Motion (Doc. 651).

Respectfully submitted,

**/s/ David C. Hughes II**
David C. Hughes II
82 Plantation Pointe Road, No. 281
Fairhope, Alabama 36532
Email: davidchoatehughes@gmail.com
*Pro Se Movant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, I served a true and correct copy of the foregoing document via the Court's CM/ECF system and by email upon:

Scott E. Bomkamp, Trial Attorney
United States Trustee
scott.e.bomkamp@usdoj.gov

Raye Curry Elliott, Esq.
Akerman LLP
raye.elliott@akerman.com

John Michael Cohan
iustusprocessus@outlook.com

**/s/ David C. Hughes II**
David C. Hughes II