FILED INTAKE USBC
NOV 9 '26 AM8:33

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re: GENIE INVESTMENTS NV, INC., Debtor.

Case No. 3:24-bk-00496-BAJ
Chapter 7

# DAVID C. HUGHES II'S AMENDED REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR RELIEF FROM ORDER CONVERTING CASE TO CHAPTER 7

David C. Hughes II ("Mr. Hughes"), appearing pro se, files this Amended Reply to the United States Trustee's Objection (the "Objection") to his Motion under Rule 60(d)(3) (Doc. 651). This Amended Reply supersedes the Reply filed on November 6, 2026, and corrects citation references. The original Reply was prepared and delivered under the time constraints shown in Exhibit A.

## I. MR. HUGHES HAS STANDING ON TWO INDEPENDENT GROUNDS.

### A. The Conversion Order Is the But-For Cause of a $1.77 Million Personal Claim Against Him.

Mr. Hughes is here because the Conversion Order set in motion a chain of events that ends with a $1,771,555.74 personal claim against him in the Central District of Illinois (Case No. 25-70566, Proof of Claim No. 9-1).

The chain is direct and traceable: But for the conversion from Chapter 11 to Chapter 7, there would have been no Chapter 7 Trustee in Florida. But for the Chapter 7 Trustee, there would have been no adversary proceeding against Zoemeral, Inc. (Adv. Pro. No. 3:25-ap-00011-BAJ). But for that adversary proceeding, there would be no default judgment against Zoemeral. But for that default judgment, there would be no Claim No. 9-1 filed against Mr. Hughes personally in Illinois.

The UST's own Objection concedes that the claim arises from the judgment obtained by the Chapter 7 Trustee.

**B. The Illinois Bankruptcy Court Has Abandoned the Zoemeral Offset Claim to Mr. Hughes.**

Independently, Mr. Hughes holds a direct pecuniary interest in the assets underlying Claim No. 9-1 by order of the United States Bankruptcy Court for the Central District of Illinois and by valid assignment.

On September 11, 2026, Judge Mary P. Gorman entered an Order Granting Trustee's Motion to Abandon Certain Property of the Bankruptcy Estate, pursuant to 11 U.S.C. § 554 (Case No. 25-70566, Doc. 721).

The Order provides, in relevant part:

"IT IS FURTHER ORDERED that Trustee Robert E. Eggmann is authorized to abandon the bankruptcy estate's interest in certain property defined in the Motion, pursuant to 11 U.S.C. § 554, including the following: ... c. an interest in the accounts receivable of Zoemeral, Inc. and any potential offset against filed Claim No. 9 (the 'Zoemeral Offset Claim')" (Doc. 721 at 1-2.)

The Order further provides:

"IT IS FURTHER ORDERED that grounds exist to abandon any and all such property for the reason that it is of inconsequential value and benefit to the bankruptcy estate and any attempts to collect the same would impose an undue burden upon Trustee and the estate." (Doc. 721 at 2.)

The abandonment was predicated on a valid assignment that had already transferred the Zoemeral receivables and related rights to Mr. Hughes. That assignment is filed of record in the Illinois bankruptcy case at Doc. 658-1 (and specifically Doc. 658, Exhibit F). The Assignment and Distribution Agreement dated March 16, 2025 (Doc. 658-1 at pp. 8-10), expressly assigns to Mr. Hughes and John Michael Cohan all of Zoemeral's right, title, and interest in its accounts receivable. It further assigns "all assignable rights to: ... Assert offsets; ... Obtain reimbursement; ... Receive indemnification; [and] Assert defenses and counterclaims." (Doc. 658-1 at p. 8.) The ownership allocation is David Hughes: 82.5%; John Michael Cohan: 17.5%. (Doc. 658-1 at p. 9.)

Because the estate no longer holds that asset, and because Mr. Hughes holds the assignment of the receivables and the right to assert offsets and receive

indemnification, Mr. Hughes now holds it personally. That is a direct, concrete, pecuniary interest in the outcome of Claim No. 9-1, and it is a second, independent basis for standing.

It also exposes a material contradiction. In Illinois, the Trustee told Judge Gorman that the Zoemeral Offset Claim was of "inconsequential value" and that collecting it would impose an "undue burden." In Florida, the UST and the Trustee are now treating the same underlying claim as a valid multi-million-dollar obligation that must be settled and allowed. Both positions cannot be true.

## II. THE CONVERSION RULING RELIED ON THE EXAMINER'S REPORT, WHICH FABRICATED A LEGAL PREMISE THAT DIRECTLY CONTRADICTS GENIE'S CONTROLLING CONTRACTS.

The UST argues that Mr. Hughes is seeking an impermissible "second bite at the apple." That argument fails because the first bite was limited to oral argument on briefs and the Examiner's Report. The actual contracts were never weighed.

A movant seeking relief under Rule 60(d)(3) must prove fraud on the court by clear and convincing evidence. The standard is demanding: fraud on the court is limited to that species of fraud which defiles the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.

The UST's Objection confirms the procedural posture of the conversion: the motion was resolved on "written responses" and the parties "argued the motion on the merits" at the August 8, 2024, hearing. (Objection at 5, ¶ 11). The Court's ruling was based on the Examiner's Report and the parties' briefs.

However, the record proves that Genie relied on counsel and that its conduct was contractually protected. First, Adam B. Walker, Genie's former counsel, filed a sworn Declaration on March 14, 2024 (Doc. 34, pp. 100-104). In it, Mr. Walker stated under penalty of perjury that Genie retained a licensed attorney from a well-regarded law firm before entering the Velanos transaction. (Doc. 34, p. 104, ¶ 17).

Second, after the conversion, when prior counsel refused to file the necessary rebuttal, Mr. Hughes and Mr. Cohan personally filed the written Opposition to the UST's Second Motion to Convert (Doc. 781-9), which Mr. Walker wrote and

provided to Mickler, Hughes, and Cohan, well before the conversion hearing, to ensure the contract analysis was placed in the record. That Opposition set out the section-by-section analysis of the BELOC Agreement.

Specifically, Section 13.7(c) of the BELOC Agreement (attached as Exhibit 2 to Doc. 34, at pp. 58-59) provides that the Lender shall not be deemed in default for any failure to fund caused by a Force Majeure Event. The contract explicitly defines one such event as "(ix) failure of the Lender's wholesale lender from preforming [sic] under the terms of the agreement between the Lender and the wholesale lender." (Doc. 34, p. 58). As the Opposition argued, "If the BELOC Agreement required the Lender to hold ICA Payments in trust, then there would be no need to protect the Lender against a wholesale lender's failure to perform." (Doc. 781-9 at 4).

The UST presented the Examiner's Report to the Court as "confirming" fraud, but the Report ignored this dispositive contract language. Because the conversion hearing was conducted on written responses and oral argument, the Court never took evidence to resolve this direct conflict between the Examiner's Report and the actual contracts.

This is precisely why an evidentiary hearing is required now under Rule 9014(d). The Court must weigh the contracts against the representations the UST made about them. The UST's Objection does not dispute that this contract language exists. It does not point to any place where the Court weighed it. It simply asserts that the merits "have already been heavily litigated" (Objection at 5, ¶ 11). But "heavily litigated" cannot mean "fairly tested" when the Examiner's Report and the UST's claims were never compared against the controlling contracts that were already on the docket.

Simply stated, the controlling contracts, Walker's opposition report, and his testimony would have categorically proven the Examiner's Report fatally flawed. As Mr. Walker stated in that opposition, the UST's presentation was not just wrong, it was fraudulent:

"The 'express purpose' alleged by the UST as direct evidence of fraud is itself a fraud, fabricated by the UST and unsupported by any evidence in the Report or

elsewhere in the record of this case. ... The UST simply invented this 'confirmation' and attributed it to its hand-selected Examiner." (Doc. 781-9 at 3).

That is the fraud on the court in and of itself. The Court cannot determine whether the UST fabricated this confirmation of fraud without an evidentiary hearing to weigh Walker's evidence against the UST's claims.

Under Rule 9014(d), this Court has the discretion to require live testimony to resolve a disputed material fact. The disputed fact here is whether the contract language was ever weighed by this Court before it adopted the Examiner's Report. It is a disputed material fact about the integrity of the record itself.

**III. RULE 9014(d) AND 11 U.S.C. § 105(a) PROVIDE THE AUTHORITY TO HOLD AN EVIDENTIARY HEARING, AND THE DISPUTED FACTS REQUIRE IT HERE.**

The credibility of the UST's representations is the central disputed fact here. The UST told this Court that the Examiner's Report "confirmed" fraud. Mr. Hughes alleges this is false. In the written Opposition (Doc. 781-9) that Mr. Hughes and Mr. Cohan were forced to file themselves, Adam Walker stated exactly what the fraud was:

"The 'express purpose' alleged by the UST as direct evidence of fraud is itself a fraud, fabricated by the UST and unsupported by any evidence in the Report or elsewhere in the record of this case." (Doc. 781-9 at 3).

Mr. Walker further stated: "The UST simply invented this 'confirmation' and attributed it to its hand-selected Examiner." (Doc. 781-9 at 3).

A non-evidentiary hearing based on attorney argument cannot resolve this dispute. The Court cannot determine whether the UST fabricated the "confirmation" of fraud without an evidentiary hearing to weigh the UST's representations against the actual documents.

Under 11 U.S.C. § 105(a), this Court has authority to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, and may act *sua sponte* to take any action necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. That statutory authority empowers this Court to preserve the integrity of

its own record by ordering an evidentiary hearing before ruling on the Rule 60(d)(3) motion.

Mr. Hughes is asking for an evidentiary hearing on the narrow question of whether the representations made to this Court during the conversion proceedings were materially false when compared to the documents the UST had in its possession.

## IV. THE CONTRACTS PROVE THE FRAUD ON THE COURT WHICH LED TO A WRONGFUL CONVERSION, AND WHICH DIRECTLY INJURES MR. HUGHES PERSONALLY.

The UST argues that Mr. Hughes lacks standing because he is merely an "out-of-the-money equity holder." That argument ignores the direct personal injury caused by the fraud. If the conversion was procured by omitting the controlling contracts, then the resulting $1.77 million claim against Mr. Hughes (Claim No. 9-1) is the direct, traceable consequence of that fraud.

At the April 10, 2024, trial (Doc. 80), Mr. Hughes testified that Genie's business model depended on a wholesale lender (Velanos). When asked why Genie continued operating after Velanos failed to fund, Mr. Hughes explained that the loan agreements contained force majeure and wholesale-lender clauses. (Doc. 80 at 45-46.) Mr. Hughes further testified that the funds Genie held were held under those contractual terms, not misappropriated. (Doc. 80 at 66-68.)

As detailed in Section II above, Section 13.7(c) of the BELOC Agreement expressly provides that the Lender (Genie) shall not be liable or responsible to the Borrower, nor be deemed to have defaulted under or breached the Agreement, for any failure or delay in funding Advances when and to the extent such failure or delay is caused by or results from acts beyond Lender's control, including the failure of the Lender's wholesale lender from preforming [sic] under the terms of the agreement between the Lender and the wholesale lender. (Doc. 34, p. 58).

The UST's Objection admits exactly how the conversion happened. On Page 2, Paragraph 3, the UST states: "The First Trustee Motion resulted in the appointment of an examiner who filed her report with the Court... Based on the contents of the examiner's report, the United States Trustee filed a Second Motion to Appoint Chapter 11 Trustee, Dismiss Case, or Convert Case to Chapter 7." (Objection at 2, ¶ 3).

The UST relied entirely on the contents of the Examiner's Report to seek conversion. However, neither the Examiner's Report nor the UST's Objection addresses the dispositive force majeure clause quoted above. The UST had the contracts. The UST did not present this clause to the Court. The Court never weighed it. That is a material omission.

Because of this omission, the Court converted the case to Chapter 7. That conversion created the Chapter 7 Trustee. The Chapter 7 Trustee filed Claim No. 9-1 against Mr. Hughes personally for $1,771,555.74. Therefore, the fraud is not a generalized grievance about case administration; it is the direct cause of a personal, multi-million-dollar liability against Mr. Hughes. That is a concrete, pecuniary injury sufficient to confer standing to bring this Rule 60(d)(3) motion.

## V. THE OMITTED EVIDENCE ESTABLISHES FRAUD ON THE COURT.

Mr. Hughes is asking this Court to weigh the material evidence that was omitted from the conversion record. The UST achieved conversion by presenting a narrative that was directly contradicted by the documents.

First, the record contains no evidence that Genie sent money to Velanos after Velanos defaulted. Yet at the August 8, 2024, conversion hearing, Examiner Maria Yip stated repeatedly that Genie continued sending funds to Velanos after default. That assertion is provably inaccurate when compared to the contracts and bank records already on the docket. The UST's conversion narrative relied on this false premise, that Genie continued funding a failed venture. But the contemporaneous bank records and the Examiner's own Report show only pre-default transfers and post-default customer receipts. Conflating funds received by Genie with funds sent by Genie to Velanos is a material misrepresentation that goes to the heart of the alleged "gross mismanagement."

Second, the Court never heard Adam Walker's testimony or saw his evidence because prior counsel silenced it. Mr. Walker, a 12-year former FINRA enforcement attorney, determined that the SBLC trading was a third-party fraud perpetrated on Genie, not by Genie, and that the UST's conversion motion was itself a fraud built on a flawed report. His sworn Declaration (Doc. 34, pp. 100-104) establishes that Genie retained licensed counsel at Warren Law Group

specifically to vet the Velanos transaction before investing, and that Genie reasonably relied on that counsel's assurances before contributing capital. Separately, Genie also received legal guidance and due diligence from Gowling WLG before the second and third $3 million contributions were sent to Velanos.

This reliance on two separate law firms is fatal to a finding of "gross mismanagement," yet it was never weighed by the Court. This is not because Mr. Hughes failed to raise it. It is because prior counsel, Bryan Mickler, agreed to resolve the conversion on oral argument alone without Mr. Hughes's or Mr. Cohan's consent or knowledge. Mr. Mickler never called Mr. Walker to testify, and never even asked him to. The written opposition Mr. Walker drafted was filed only after Mr. Hughes and Mr. Cohan filed it because Mickler never would, and only after the conversion had already occurred. Mr. Walker identified the fraud and called out the flawed Report in the first place, but his memorandum, his testimony, and the testimony of Mr. Hughes and Mr. Cohan were all silenced by prior counsel's unilateral decision to proceed on oral argument. That is precisely the evidence the Court must now hear.

Third, the controlling BELOC Agreement was ignored. As detailed in Section II above, Section 13.7(c) of the BELOC Agreement expressly excuses Genie's failure to fund when the upstream wholesale lender (Velanos) fails. The Examiner and the UST treated the ICA payments as "customer funds" held in trust, without addressing the contract that proved otherwise.

This is why an evidentiary hearing is required under Rule 9014(d). The UST's objection argues that these issues were "heavily litigated," but the August 8, 2024, hearing was oral argument on a report, not an evidentiary hearing where these documents were weighed. The Court cannot determine whether the UST's representations were materially false without comparing them to the omitted evidence.

## CONCLUSION

Mr. Hughes has standing on two independent grounds: (1) the Conversion Order is the but-for cause of a $1.77 million personal claim against him, and (2) the Illinois Bankruptcy Court has already abandoned the Zoemeral Offset Claim to him by

order (Doc. 721), and he holds the assignment of the receivables and indemnification rights (Doc. 658-1).

He is not asking this Court to re-weigh the merits. He is asking the Court to weigh the evidence for the first time. Rule 9014(d) authorizes testimony where credibility and disputed material facts require it. 11 U.S.C. § 105(a) authorizes the Court to preserve the integrity of its own record. The omitted evidence, Walker's testimony, the reliance on counsel, the post-default banking records, and the BELOC contract, establishes by clear and convincing evidence that the judicial machinery was deprived of the truth.

WHEREFORE, Mr. Hughes respectfully requests that the Court overrule the UST's Objection, find that he has standing, and grant an evidentiary hearing and discovery on the Motion (Doc. 651).

Respectfully submitted,

/s/ David C. Hughes II
David C. Hughes II
82 Plantation Pointe Road, No. 281
Fairhope, Alabama 36532
Email: davidchoatehughes@gmail.com
Pro Se Movant

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2026, I served a true and correct copy of the foregoing document via the Court's CM/ECF system and by email dated 11/8/2026 upon:

Scott E. Bomkamp, Trial Attorney
United States Trustee
scott.e.bomkamp@usdoj.gov

Raye Curry Elliott, Esq.
Akerman LLP
raye.elliott@akerman.com

John Michael Cohan
iustusprocessus@outlook.com

/s/ David C. Hughes II
David C. Hughes II

**EXHIBIT A**

**Email from Scott E. Bomkamp, U.S. Trustee, serving the Objection and November 6, 2026, leaving insufficient time to verify citations before the original Reply had to be physically delivered to the courthouse.**

Gmail

David Choate <davidchoatehughes@gmail.com>

## Service Copies Attached

1 message

**Bomkamp, Scott E. (USTP)** <Scott.E.Bomkamp@usdoj.gov> Fri, Nov 6, 2026 at 12:28 PM
To: "iustusprocessus@outlook.com" <iustusprocessus@outlook.com>, "davidchoatehughes@gmail.com" <davidchoatehughes@gmail.com>
Cc: "raye.elliott@akerman.com" <raye.elliott@akerman.com>

**3 attachments**

**Objection to 60(d)(3) motion-Genie Investments.pdf**
208K

**Response to Show Cause Order.pdf**
149K

**Exhibit A Cohan Hughes Inaccurately Cited Cases-Bankr..pdf**
245K

Gmail David Choate <davidchoatehughes@gmail.com>

## New Reply

1 message

**David Choate** <davidchoatehughes@gmail.com> Fri, Nov 6, 2026 at 1:45 PM
To: Debitus Processus <iustusprocessus@outlook.com>

Thank you, and respectfully,

David Choate Hughes II

82 Plantation Pointe Road, No. 281
Fairhope, Alabama 36532
Telephone: 217-416-5059
Email: davidchoatehughes@gmail.com

CONFIDENTIALITY NOTICE: This email and any attachments are intended solely for the named recipient and may contain confidential or legally protected information. The recipient may not copy, forward, disclose, or use them for any purpose unrelated to the matter addressed without my prior written consent. If you received this email in error, please notify me immediately, delete it and all attachments, and do not retain, disclose, or use any portion of it. No representation is made that this communication is secure or privileged, and nothing herein creates an agreement to indemnify any recipient or other person.
217.416.5059

---

**DAVID C. HUGHES II'S REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR RELIEF FROM ORDER CONVERTING CASE TO CHAPTER 7 FINAL.docx**
24K