UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

Case No.: 3:24-bk-00496-BAJ

GENIE INVESTMENTS NV INC.,

Chapter 7

Debtor.
_________________________________/

**DECLARATION OF CHARLES BLAKE STRINGER IN SUPPORT OF CREDITORS' RESPONSE TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT REGARDING TRUSTEE'S OBJECTION TO CLAIM 5-3 OF CHARLES BLAKE STRINGER/NUTRA-ACRES, LLC**

CHARLES BLAKE STRINGER submits the following declaration in support of his Response to the Trustee's Motion for Summary Judgment Regarding the Trustee's Objection to Claim 5-3, and says:

## A. Background

A.1 My name is CHARLES BLAKE STRINGER, and I am over the age of 18 years old. I am the sole member of Nutra-Acres LLC (Texas) and the owner of 100% of Stringer Farms Inc. I made the decisions to enter into and to pay for the transactions described below.

A.2 I operate farm and ranch land in Texas and sought to refinance existing bank debt through the Business Expansion Line of Credit ("BELOC") program.

A.3 I was introduced to McMann Commercial Lending LLC ("McMann") and its loan officer, Michael Lanza, in October 2022.

## B. What McMann represented to me about Genie, prior to payment

B.1 Mr. Lanza repeatedly described Genie to me as McMann's "sister company," and the word "affiliate" was also used. He said these things over and over, in nearly the same words each time.

B.2 Mr. Lanza told me I had to form a new special-purpose company to borrow through. I formed Nutra-Acres LLC for that purpose.

B.3 A McMann "Proposed Timeline" sent to me in December , 2022 stated funding would come in "14-75 days." (Ex. A; Trustee Ex. 30, Doc. 759 Decl. Ex. D.)

**C. The documents and the money**

C.1 A Due Diligence Fee Agreement dated January 18, 2023 is between Nutra-Acres LLC and "Genie Investments," P.O. Box 5886, Wilmington, Delaware. Genie's wiring instructions of the same date send the fee to Chase account 852288502, account title "Genie Investments NV." The agreement states that Genie "intends to offer a Bridge Loan to Borrower to cover the Interest Credit Account amount." (Due Diligence Fee Agreement, wiring page Ex. B.)

C.2 On February 6, 2023 I wired $40,000 to that account with "Due Diligence" in the memo. (Ex. C; Doc. 50 at 2.)

C.3 The Bridge Loan Agreement, Security Agreement, Promissory Note, Perfection Certificate and Intercreditor Agreement are dated February 7, 2023. Each names Genie Investments as Lender, Secured Party or‘LOC Lender.’ The Intercreditor Agreement recites that ‘the LOC Lender has approved the Debtor for a Line of Credit in the amount of $24,000,000.’ It provides that it ‘may be terminated by the parties only upon full payment to LOC Lender’ (§ 9.1) and sends notices to the LOCLender, ‘Genie Investments,’ PO Box 5886, Wilmington, Delaware (§12). (Exs. D, D-2.)

C.4 On February 13, 2023 Nutra-Acres wired $115,000 to the same Chase account. (Ex. E; Doc. 50 at 6.)

C.5 On February 22, 2023 a McMann letter signed by Rene Jamulitrat confirmed it had received the ICA payment and said it "starts the clock for closing in 14-75 days." (Exs. F, F-2.)

C.6 The BELOC Agreement for Nutra-Acres is dated March 9, 2023. It names McMann as Lender. Its wiring instructions send the $360,000 ICA to Chase account 852288502, titled 'Genie Investments NV.' (BELOC wiring page; Doc. 46-7, U.S. Trustee Ex. 36; Ex. P.)

C.7 On March 15, 2023 Mr. Lanza emailed me that "we need to get the 245K, the remainder of your prepaid interest for the Bridge Loan, funded prior to your first tranche being issued." He wrote that he had "been able to get you in line for funding approximately 3-4 weeks ago based on the promise of the $245K being wired in before your first Tranche which we expect in 3-4 weeks or possibly less," and that if "the Bridge is paid off prior to the 90 days you will be refunded any unearned interest." He also wrote that he was "glad I was able to help your contact from Zion's bank to understand where we stand with your funding." Mr. Lanza had been on Zoom calls with my bankers and their attorneys. He told me, in substance, that McMann could keep Genie fully engaged so my funding date would not be pushed back by an error in calculating the prepaid interest required under the contract, and that McMann had enough excess funds at the time to make sure my date did not slip. (Ex. G.)

C.8 On March 17, 2023 Mr. Lanza emailed me again about a problem extracting my signed loan documents from DocuSign. I had told him I believed I might have signed "EXHIBIT G," which he described as having "only one purpose," to "begin the process cancel and unwind the transaction." He wrote that it would not be valid unless notarized, that he as loan officer would have been contacted and "I have had no such inquiry," and "Rest assured you loan is still in the QUE to fund and hopefully it will be sooner rather than later." (Ex. H.)

C.9 On March 22, 2023, seven days after the March 15 email, Stringer Farms Inc. wired the $245,000 (Genie's books, Doc. 50, show the deposit on 3/22/2023). In all, $400,000 went to the Genie Investments NV account in three wires. (Ex. H-2; Doc. 50 at 4.)

C.10 I was never given an ICA account statement or access to the Zoomeral platform, although I asked several times.

**D. What Genie said and did**

D.1 Letters on Warren Law Group letterhead dated March 31 and April 21, 2023 blamed the delay on HSBC compliance. I received them from Mr. Lanza of McMann a few days after each letter's date. He was trying to explain what was actually going on, and I was begging for some confirmation that there was real money out there. They came to me from McMann, not from Genie or Warren Law Group directly. I called Warren Law Group and HSBC to ask whether the funds had been deposited. Each time I called, Scott Oh of Warren Law Group told me the funds were accounted for and that they were working on compliance to get releases out to individuals. (Ex. I.)

D.2 By early May 2023 my first tranche had not funded and my banks were pressing me. McMann told me it was working to line up an additional bridge loan with real money behind it, to keep my banks calm and keep the non-funding from escalating. On May 4, 2023 Walter Trock of McMann sent me a status letter saying McMann had a '$5,000,000 Bridge loan in underwriting,' with 'a current verbal approval on the table,' that could 'fund and transfer funds within the next 3 to 7 Business Banking days,' and that first-tranche funding was expected 'sometime between May 15th and the 20th.' As first sent, the letter was typed with the date October 12, 2022. I emailed McMann at 5:18 p.m. the same day pointing out the wrong date and an error in the wording and McMann sent a corrected letter dated May 4, 2023. (Ex. Q.)

D.3 On May 15, 2023 I spoke with David Hughes. He said: "I'm an owner in Genie" and discussed my bridge loan and the delay as ordinary matters. I told him I had a contract with Genie and he asked me for a copy. He did not say the loan had expired.

D.4 The same day, May 15, 2023, at 7:51 p.m., I spoke with Mr. Lanza. He told me that arrangements had been made so that no extra interest would need to be paid to keep my line of credit loan active, and that bridge loans were being extended "without any cost." He also said it was their fault that the loan had not been provided, due to compliance issues and other factors.

D.5 On May 18, 2023 Mr. Lanza told me loan amounts could be increased and restructured on request. I asked for that in writing and never received it.

D.6 A response signed by Mr. Hughes dated May 31, 2023, addressed to "Mr. Prostok & Other Parties Concerned," states that my company "did engage into a bridge loan and did in fact receive a bridge loan from Genie Investments" and that it "has expired because an extension was not requested." The response was sent back to my attorney in Fort Worth, Texas, Jeff Prostok, and his office forwarded it to me. No written notice of expiration was sent to me before this letter. (Ex. J.)

D.7 A McMann form letter dated June 8, 2023 to "BELOC Approved Loan Applicants" repeated the delay language. A McMann attorney letter dated June 23, 2023 terminated the BELOC (U.S. Trustee Exhibit 40, Doc. 46-10). (Ex. K.)

D.8 On July 11, 2023 I was in a group iMessage thread with David Hughes and Walter Trock. At 5:45 a.m. I sent them a link to victimsbelocscam.com. At 6:52 a.m. I wrote that I wanted to "extend another olive branch" and was "open to discuss and negotiate or mitigate anything on the table." Mr. Hughes texted me to call. At 7:15 a.m. Mr. Trock wrote "Today at 11AM is the plan." At 11:11 a.m. I wrote "It's 11:10 Walter," and Mr. Hughes answered "Mr. Stringer, Walt

was referring to a call time with just me." Later that morning (the last text at 11:59 a.m.) Mr. Hughes wrote: "A few of our affiliates have forwarded messages of you reaching out to them"; "Our attorney will be in touch with yours"; "We are moving forward with suits. One from Genie Investments and another from Zoomeral"; and "if you truly want any form of reduction then stopped your confidentiality and other clear breaches and draw down then I will calmly discuss resolution." He ended with "Zoomeral and Genie will file suit." At 3:26 p.m. I sent both men a letter, addressed to "both David Hughes and Walter Trock and their respective companies," asking for proof of the money and where it was held. (Ex. L.)

D.9 Genie's lawyers wrote to me on August 10, 2023 (Spiegel & Utrera, P.A.), demanding that I remove a website and pay $25,000. The letter refers to "our Client's affiliates" and describes the person in the image I was accused of posting as "an independent contractor acting as wholesaler for our Client." It also says that my March 22, 2023 wire of $245,000 was "in violation of the executed bridge loan agreement (attached herein as Exhibit C)" and calls the account "our Client's bank account." (Ex. M.)

D.10 On the afternoon of November 7, 2023 attorney Jason Houda of the same firm (AmeriLawyer.com) emailed me, copying Michael Faragalla and Giovani Garcia. He wrote that "Genie Investments has retained my firm to pursue numerous claims in commercial arbitration against you," and attached "the filed arbitration demand, the contract you and your company executed with Genie Investments," the cease and desist letter, and a complaint. He said Genie authorized a settlement (removal of publications and payment of attorneys fees, by installment) and that under "the arbitration agreement your company executed with Genie Investments," arbitration would be held in New Castle County, Delaware, with the prevailing party paying attorney fees. He demanded my written response by November 10, 2023. (Ex. N.)

D.11 The attached complaint, dated November 7, 2023, AAA Case No. 01-23-0005-0330, signed by Michael Faragalla for Genie, is captioned "Genie Investments v. Nutra-Acres LLC & Charles Stringer." It alleges that Genie is the party "who the Defendant(s) contracted to obtain a Business Line of Credit Loan" (¶1), that "Defendants contacted Genie to obtain a Business Line of Credit Loan" (¶9), that Genie offered and I accepted a due diligence fee agreement on or about January 18, 2023 (¶10), and that I "attempted to fraudulently convert funds from Genie" (¶11). The complaint incorporates the August 10 letter by reference (¶14). It never mentions a bridge loan, an expiration, McMann, or any dollar amount for a loan, fee, payment or damages. (Ex. O.)

D.12 The Houda email came about five months after Mr. Hughes's May 31, 2023 letter (D.6) said the loan had "expired." Mr. Houda's email says nothing about any expiration. Genie, through its lawyers, was enforcing the contract against me, including the arbitration clause and the attorney fee provision. Genie cannot say there was no contract with me, or that McMann was a separate business with no connection to Genie, while using that same contract to demand money, a retraction and arbitration.

D.13 On February 28, 2024 I signed an affidavit that was provided to the Examiner. In it I said that borrowers believed the ICA was a "trust account set up for the pre-payment of interest on the total of the bridge loan." The Examiner quotes that statement (Doc. 146 ¶82). The same part of the report quotes a February 8, 2023 email from Walter Trock of McMann to McMann borrowers saying "the ICA is pre paid interest account that belongs to you that is used to pay the monthly interest due on the loan until the ICA account is exhausted" (¶81).

**E. What I understood and relied on**

E.1. I paid the $400,000 because I was told that McMann and Genie had the capability and the funds to make the loan. It was consistently represented to me that Genie was McMann's sister company, and the word "affiliate" was also used.

E.2 I had several term sheets to choose from. I chose to go forward with McMann and Genie for this line of credit because of the representations made to me, the advertising, and the economic value of the program.

E.3 My state of mind throughout was that I was dealing with people who could perform. From everything I was told, I believed the loan would work out, even while I was given excuses for delay. I was repeatedly given representations that they could still perform and would have no problem getting it done. Both Michael Lanza and Walter Trock told me, in these words, that it was a matter of when, not if. I was told I was approved. I put up the consideration on time. I received letters from McMann, and then letters from Genie's attorney (Warren Law Group) stating that funds related to my loan product existed and were being held up by bank compliance issues. I kept asking for proof I could hand to my bankers, and I was told something would be provided, but it never was. I was strung along for months.

E.4 Neither Genie nor McMann ever told me that McMann lacked authority to act for Genie, or told me to stop paying into the Genie account.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 10th day of November, 2026

Charles Blake Stringer

CHARLES BLAKE STRINGER

.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic means this 10th day of November, 2026 to all parties in interest.

*/s/ Scott W. Spradley*
SCOTT W. SPRADLEY

# EXHIBIT A

Declaration ¶ B.4

McMann "Proposed Timeline," Dec. 3, 2022

McMANN Commercial Lending ● 205 N Michigan Ave ● Chicago IL 60601
312-224-8559 Fax 312-871-3344

November 9, 2026

Proposed Timeline:

1. **Once Approved you will receive an activation link per SEC Guidelines where you go online an activate your account by uploading your application and business plan to avoid solicitation and verify, we did not change any info to get you approved.**
2. **Once Activated you will receive the Retention Agreement to retain McMann to secure the Bridge loan. Once executed and the Bridge loan fee of XXK is paid for the XXXM Bridge we move forward.**
3. **within 48-72 hours you will receive the Terms Sheet, Data Management Agreement and the Bridge Loan agreement. Once executed you return all three agreements.**
4. **Within 48-72 hours you receive your loan agreement for review by you and your lawyer. Once executed you return and wire in your prepaid interest for the 90-day Bridge loan. The rate on that is 5% per month.**
5. **Once the loan agreement executed and the prepaid interest is received the bridge lender will deposit the XXXM into the ICA Account.**
6. **At this point you are closed, and the clock starts ticking on the wait until your funding is received. This as stated can be 14-75 days for the first Tranche of 20%. Once this deposit is made the clock starts ticking on the second tranche which again could be 14-75 days for the remaining 80%.**

**Any questions give me a call.**

# EXHIBIT B

Declaration ¶ C.1

Due Diligence Fee Agreement (Nutra-Acres / Genie Investments), Jan. 18, 2023

GENIE INVESTMENTS

*Believe in your Dreams*

January 18, 2023

**Wiring Instructions**

As per your Due Diligence Fee Agreement, the Borrower must wire the necessary amount to:

**Bank Name & Address**:
Chase Bank
1515 Atlantic Boulevard
Jacksonville, Florida 32207

**Account Mailing Address:**
401 Ryland Street Suite 200-A
Reno, Nevada 89502 8

**Routing Number:** 021000021

**Credit Account Number:** 852288502

**Account Title:** Genie Investments NV

*This fee for Due Diligence is 100% **non-refundable**.*

*****When sending the wire, please write "Due Diligence" in the Memo*****



Initials: CBS

## DUE DILIGENCE FEE AGREEMENT

This Due Diligence Fee Agreement (this "**Agreement**"), dated as of January 18, 2023 (the "**Effective Date**"), is entered into between Nutra-Acres LLC, having an address at 130 North Dumas Avenue, Dumas, Texas 79029 ("**Borrower**"), and Genie Investments, having an address at P.O. Box 5886, Wilmington, Delaware 19808 ("**Company**"), and together with the Borrower, the "Parties," and each, a "Party").

WHEREAS, Borrower desires to compensate **Company** for its costs to conduct certain due diligence services ("Services") upon the terms and conditions hereinafter set forth, and **Company** is willing to perform such Services.

In consideration of the mutual covenants and agreements hereinafter set forth, the Parties agree as follows:

1. **Performance of Services**

Upon request of Company, Company agrees to the Services in connection with Borrower applying for funding.

2. **Payment**

As a material inducement to Company to commence the Services, the Borrower shall pay Company a non-accountable and non-refundable fee of Forty Thousand Dollars ($40,000), payable prior to commencement of the Services.

Payment of the diligence fee is not a guarantee that Company will offer funding to Borrower, or that any offer will be on terms and conditions acceptable to Borrower. Assuming sufficiency of the diligence materials provided by Borrower, Company intends to offer a Bridge Loan to Borrower to cover the Interest Credit Account amount. The maximum cost of this Bridge Loan will be Fifteen Thousand dollars per One Hundred Thousand dollars needed ($15,000/$100,000) or Fifteen percent (15%) of the Interest Credit Account. The interest of this Bridge Loan is 100% non-refundable.

3. **Term and Termination**
   a. Terms
      This Agreement shall commence as of the Effective Date and shall continue thereafter until the completion of the Services, unless sooner terminated pursuant to this section.

   b. Termination
      Company may terminate this Agreement, upon the occurrence of any of the following events:

      a. Borrower fails, in the absence of a bona fide dispute with respect to such payment, to make payment for Services on its due date, provided however, that Borrower may cure such breach by making



Initials: CBS

payment within 5 days of Borrower's receipt of notice that it failed to make such payment when due;

b. Borrower requests that Company violate any applicable law or the rules of any regulatory body having jurisdiction and Borrower does not promptly revoke such request upon Company's refusal to comply;

c. Borrower requests that Company take any action which would result in the commission of a fraud upon any person or party and Borrower does not promptly revoke such request upon Company's refusal to comply; or

d. Borrower requests that Company take any action that, upon the advice of counsel to Company, could subject Company to liability or material damages in a civil litigation and Borrower does not promptly revoke such request upon Company's refusal to comply).

**4. Borrower Representations**

a. Reliance

Borrower acknowledges and agrees that all materials and information Borrower provided to Company is accurate and complete, and that Company will, without independent verification, rely on it for the purpose of potentially providing funding. Company shall not assume any responsibility or have any liability for such materials or information. Borrower represents that Borrower has the right to supply such information to Company and that the supply of such information by Borrower and its use by Company for the purposes of the provision of the Services will not infringe any rights held by any third party, involve the unauthorized use of confidential information belonging to a third party or result in the breach by Borrower or Company of any law, regulation, fiduciary duty, intellectual property right or agreement.

b. Litigation

Borrower (i) is not subject to any outstanding injunction, judgment, order, decree, ruling, or charge or (ii) is not a party or is not threatened to be made a party to any action, suit, proceeding, hearing, or investigation of, in, or before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator, in each case that could be reasonably expected to result in a material adverse change in the business, financial condition, operations, results of operations, or future prospects of Borrower.



Initials: CBS

**5. Indemnification**

Borrower shall indemnify Company against any cost, loss, expense or liability which may be suffered or incurred by Company in the proper performance of its obligations under this Agreement including, without limitation, arising from any misrepresentation, misconduct, negligence or dishonesty on the part of any third party, except to the extent that the cost, loss, expense or liability is due to the breach of this Agreement, violation of law, negligence, willful
misconduct, fraud or dishonesty on the part of Company or to the extent that such liability cannot lawfully be excluded or limited.

6. **Independent Contractor**

Company's status shall be that of an independent contractor, and not that of an agent or employee of Borrower. Company shall not hold itself out as an employee or agent of Borrower except as contemplated by any other ancillary agreement.

**7. Arbitration**

Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in New Castle County, Delaware, before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures or by ADR Services pursuant to its Arbitration Rules, at the election of the party initiating the arbitration. The Party initiating a demand for Arbitration shall serve notice of such demand pursuant to the notice requirements set forth in Section 9 herein. Within three (3) banking-business days of service of any demand for arbitration, the Parties to the dispute shall work cooperatively to mutually select an agreeable arbitrator. If the Parties to the dispute are unable to reach agreement on an arbitrator, then the arbitration shall be selected pursuant to the JAMS or ADR Services arbitration selection protocol. Each side shall be entitled to propound one (1) set of requests for production of documents. The requests in each set shall not number more than twenty-five (25) and shall be limited to documents relevant to the issues to being arbitrated. Each side shall further be entitled to notice and take no more than three (3) depositions, which shall last no more than three (3) hours per deponent, including reasonable breaks and objections. No other discovery shall be permitted, except upon a showing of good cause to the arbitrator. Any disputes regarding discovery shall be submitted to and decided by the arbitrator. The prevailing party shall be entitled to an award of its reasonable costs and expenses, including but not limited to, attorneys 'fees, in addition to any other available remedies. Any award rendered therein shall be final and binding on each and all of the parties thereto and their personal representatives, and judgment may be entered thereon in any court of competent jurisdiction. This clause shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. Any action or proceeding brought to interpret or enforce this agreement to arbitrate shall be governed by the laws of the State of Delaware. This agreement to arbitrate is intended by the Parties to constitute a waiver of any right to trial by jury, or the right to proceed in any state or federal court for resolution of any dispute arising in relation to the enforcement or interpretation of this Agreement, or this agreement to arbitrate.



Initials: CBS

**8. Confidentiality**

During the term of this Agreement, the Parties may communicate to each other certain confidential information to enable Company to perform the Services hereunder, or Company may develop confidential information for Borrower. Each Party agrees (i) to treat, and to cause its employees, agents, subcontractors and representatives, if any, to treat as secret and confidential, all such information, and (ii) except as necessary in the performance of the Services, not to disclose any such confidential information or make available any reports, recommendations or conclusions which Company may make for Borrower to any person, firm or corporation without first obtaining Company's written approval. The foregoing shall not prohibit or restrict any party from disclosing any information: (a) the disclosure of which is necessary to comply with any applicable laws, including, without limitation, federal or state securities laws, or any exchange listing or similar rules and regulations; (b) the disclosure of which is ordered pursuant to a subpoena or other order from a court or governmental body of competent jurisdiction; (c) such information is now, or hereafter is made, generally available to the public other than by disclosure in violation of this Agreement; (d) such information was disclosed to the disclosing Party by a third party that the disclosing Party, in good faith, believes was not bound by an obligation of confidentiality; or (vi) the Parties hereto consent to the form and content of any such disclosure. If any Party learns that disclosure of such information is sought in or by a court or governmental body of competent jurisdiction or through other means, such Party shall (1) give prompt notice to the other Party prior to making such disclosure and allow such other Party, at its expense, to undertake appropriate action to prevent disclosure of, or to obtain a protective order for, such information, (2) reasonably cooperate with such other Party in its efforts to prevent, or obtain a protective order for, such disclosure, and (3) disclose the minimum amount of information required to be disclosed.

**9. Notices**

All notices given under this Agreement, unless otherwise specified herein, must be in writing and will be effectively served by: (i) submission through the zoomeral.com portal using the Borrower's ZOOMERAL account and (ii) upon delivery or, if sent certified mail, upon the first to occur of receipt by the addressee or the expiration of ninety six (96) hours after deposit in first class certified United States mail, postage prepaid, return receipt requested, or two business days if sent by pre-paid nationally recognized overnight courier service, sent to the Party at its address set forth below, or such other address as a Party may designate from time to time by written notice given pursuant to this paragraph:

To Borrower: Nutra-Acres LLC
Attention: Charles Stringer
130 North Dumas Avenue
Dumas, Texas 79029

To Company: Genie Investments
P.O. Box 5886
Wilmington, Delaware 19808



Initials: CBS

**10. Assignment**

Borrower may not assign, subcontract or delegate all of any part of its rights or obligations hereunder without Company's prior written approval (which may be withheld or delayed in Company's sole discretion).

**11. Binding Effect**

Subject to the provisions of section 10 above, the terms of this Agreement will bind and benefit the successors and assigns of the Parties.

**12. Waiver**

No delay or omission on the part of any party hereto in exercising any right hereunder shall operate as a waiver of such right or any other right under this Agreement.

**13. Headings**

The several headings to articles, sections and subsections herein are inserted for convenience only and shall be ignored in interpreting the provisions of this Agreement.

**14. Schedules, Attachments and Exhibits**

All schedules, attachments and exhibits, if any, referred to in or attached to this Agreement are and shall be deemed to be an integral part of this Agreement as if fully set forth herein.

**15. Amendments**

This Agreement may not be modified or amended except by written agreement signed by Borrower and Company.

**16. No Third-Party Rights**

This Agreement is made entirely for the benefit of Borrower, Company, and their successors in interest (including any participants). No third person shall have any rights hereunder.

**17. Force Majeure**

No liability shall result from the delay or nonperformance of Services caused by circumstances beyond the control of Company, including without limitation Act of God, fire, flood, snowstorm, pandemic, war, acts of terrorism, government action, riot, civil disturbance, accident, inability to obtain labor, material, or equipment ("Force Majeure"). During periods of Force Majeure, Services so affected by such Force Majeure may be eliminated without liability, but this Agreement shall remain otherwise unaffected. Timely notice of Force Majeure and its expected duration shall be given by the affected party to the other, and the party whose performance is affected by a Force Majeure event will use commercially reasonable efforts to avoid, remove or minimize the impact of such event on the performance of its obligations at the required level at the earliest possible date.

**18. Applicable Law**

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware and the United States.



Initials: CBS ________

**19. Severability**

The invalidity or unenforceability of any one or more of the provisions of this Agreement will in no way affect any other provision.

**20. Counterparts**

This Agreement may be signed in two or more counterparts, each of which shall be treated as an original but which, when taken together, shall constitute one and the same instrument. A signed facsimile or electronic copy of this Agreement shall constitute an original for all purposes.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the date first above written.

Nutra-Acres LLC

Charles Stringer

Genie Investments

Genie Investments



Initials: CBS

# Exhibit A

As agreed to in the Due Diligence Fee Agreement, Borrower agrees to provide the Company with all of the following (mark any not applicable as "N/A"):

1. Income Statement (past five years or less starting with company establishment)
2. Balance Sheets (past five years or less starting with company establishment)
3. Cash Flow Statements (past five years or less starting with company establishment)
4. Tax Returns (past five years or less starting with company establishment)
5. Net Worth Statement/s for All Equity Owners That Have A 5% Or Higher Ownership Stake
6. Business Plan Including A 2 Year Forecast/Proforma & Management Bios
7. Previous 3 Month's Business Bank Statements for All Business Bank Accounts
8. Post-Closing Balance Sheet Assuming Term Sheet Terms/Rates
9. All UCC Lien Filings & Current List of All Material Creditors
10. Articles of Incorporation and Corporate Bylaws/Operating Agreement
11. Capitalization Table of All Outstanding Stock Shares, Stock Warrants, & Stock Options
12. Documentation Related to All Registered Intellectual Property (Patents and Trademarks)

All these exhibits have been previously provided to McMahon commercial lending.

CBS



Initials: CBS

# EXHIBIT C

## Declaration ¶ C.2

Wire, $40,000, Feb. 6, 2023, Charles B Stringer to
Genie Investments NV (Chase 852288502)

Already of record: Genie Investments NV Transactions, Doc. 50, p. 2 (also p. 16). Fedwire credit via Amarillo National Bank, B/O Charles B Stringer, Due Diligence Fee.

# EXHIBIT D

## Declaration ¶ C.3

Bridge Loan Agreement, Security Agreement, Promissory Note, Perfection Certificate and Intercreditor Agreement, Feb. 7, 2023

Pages omitted for length. The full document is already in counsel's file and, per the declarant, in the record from the Trustee's own filings. Full copy available on request.

# EXHIBIT D-2

## Declaration ¶ C.3

### McMann Term Sheet, Feb. 7, 2023

Pages omitted for length. The full document is already in counsel's file and, per the declarant, in the record from the Trustee's own filings. Full copy available on request.

# EXHIBIT E

Declaration ¶ C.4

Wire, $115,000, Feb. 13, 2023, Nutra-Acres LLC to Genie Investments NV

Already of record: Doc. 50, p. 6 (also p. 15). Fedwire credit via Amarillo National Bank, B/O Nutra-Acres LLC.

# EXHIBIT F

Declaration ¶ C.5

McMann letter (R. Jamulitrat), Feb. 22, 2023

McMANN Commercial Lending

To: Charles Blake Stringer/DBA: Nutra Acres LLC

From: Rene Jamulitrat/McMann Commercial Lending

Subject: Nutra Acres LLC

Date: 02/22/2023

Dear Mr. Stringer,

This letter is to provide confirmation of receipt for the pre-paid interest of $360,000.00 for Nutra Acres LLC on 02/13/2023 and starts the clock for closing in 14-75 days. The ICA was funded based on payment of prepaid interest for the Bridge with Nutra Acres LLC file.

Finally, this letter provides verification that all loan documentation has been received and no other documents or signatures are needed at this time. Also, prior to funding, we will confirm banking information and corporate information.

Thank you,

Rene Jamulitrat

rJamulitrat@mcmanncommerciallending.com

318-834-3383

# EXHIBIT F-2

Declaration ¶ C.5

McMann Loan Approval Letter (W. Trock), Feb. 24, 2023

McMANN Commercial Lending • 205 N Michigan Ave • Chicago IL 60601
312-224-8559 Fax 224-328-6440

Friday, February 24, 2023

Charles Blake Stringer
Nutra - Acres LLC
130 North Dumas Avenue
Dumas, Texas 79029

Dear Mr. Stringer

Commercial Line of Credit Loan Approval

Loan Amount: $24,000,000.00
Loan Term: 10 Years
Interest Rate: 4.5% Fixed I/O
Points: 4.0%
Success Fee: 1%
Delivery: Tranche Schedule
Sponsors: Charles Blake Stringer

We are pleased to inform you that McMann Commercial Lending ("Underwriters") has reviewed your commercial Line of Credit loan application and has determined that your loan application has been approved.

This approval is subject to the funding schedule of Loan Agreement signed by the sponsor. As of 2/13/23, we are in receipt of your pre-paid interest of $360K. Funding date expected no later than 05/08/2023.

All conditions are subject to the final approval of banking information and corporate information.

Walt Trock
Senior Partner
McMann Commercial Lending
walt.trock@mcmanncommerciallending.com
800-616-7276

# EXHIBIT P

## Declaration ¶ C.6

McMann Commercial Lending BELOC Agreement package, Mar. 9, 2023

Pages omitted for length. The full document is already in counsel's file and, per the declarant, in the record from the Trustee's own filings. Full copy available on request.

# EXHIBIT G

Declaration ¶ C.7

Email, Michael Lanza to Blake Stringer, Mar. 15, 2023
(screenshot; native copy to follow)

8:51

# Follow up. Inbox

Micha... Mar 15, 2023

to me

I was glad I was able to help your contact from Zion's bank to understand where we stand with your funding. I just wanted to reiterate we need to get the 245K, the remainder of your prepaid interest for the Bridge Loan,  funded prior to your first tranche being issued. I was able to get you in line for funding approximately 3-4 weeks ago based on the promise of the $245K being wired in before your first Tranche which we expect in 3-4 weeks or possibly less.

Rep... For...

# EXHIBIT H

Declaration ¶ C.8

Email, Michael Lanza to Blake Stringer, Mar. 17, 2023
(text; screenshot with header to follow)

## 3-17-23 Email from MICHAEL LANZA

At McMann Commercial Lending.

We are all aware that because of the issues with extracting your signed final loan documents from DOCUSIGN and your lender(s) request for signed documents we had you sign and return to us. I know there was a rush to get this accomplished quickly in order to satisfy your lender(s) request because of the delay of producing the documents based on the DOCUSIGN issue you believe that you may have signed EXHIBIT G. This exhibit has only one purpose and that is to begin the process cancel and unwind the transaction. If that is the document, you signed first of all it would not be valid unless notarized and even if it is notarized this would only start the process. After the process was initiated I as the loan officer would be contacted to be advised and confirm whether or not that was your intent. Unless I verify that is your intent, which I have had no such inquiry and not verified this to be your intent. The next step in the process would be to issue you an on line Termination link and you would have to go through the process of completing/submitting that link. Obviously, you can get to that last step because no one ever contacted me. Rest assured you loan is still in the QUE to fund and hopefully it will be sooner rather than later. If you need any further explanation or clarification, please let me know.

Michael J. Lanza
Direct 321-295-4808
Office 800-616-7276
Senior Commercial Loan Officer
McMannCommercialLending.com
Appointment Calendar

*Text of the email as saved by Charles Blake Stringer. Screenshot of the original email with header to follow.*

# EXHIBIT I

Declaration ¶ D.1

Warren Law Group letters to Genie borrowers, Mar. 31 (2 pp.) and Apr. 21, 2023 (photographs of the letters as received); Lanza transmittals to follow

WLG WARREN LAW GROUP

519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
DIRECT (773) 931-6630 •
scott@warren.law

March 31, 2023

Genie Investments
c/o: Borrowers
dhughes@genieinvestments.com

*Re:* ***Update***

Dear Borrower:

On behalf of Genie Investments ("Genie"), this letter provides the latest update with respect to the anticipated funding of your loan product.

I have been communicating with Genie's wholesale private equity affiliate and their attorney regarding the current status of the funding issues related to your loan product. I was advised that the delays are due to certain compliance and other restrictions within the sole discretion and control of HSBC Bank- London, and beyond the control of Genie's wholesale affiliate. To this end, it is my understanding that Genie's wholesale affiliate has engaged key banking officers at the highest levels at HSBC, including a very influential board member, who have been cooperatively working with the wholesale affiliate to resolve these issues in expedient fashion. Although Genie's wholesale affiliate is confident that this delay will be resolved shortly, they are not yet able to provide an estimated time frame with reasonable assurance. However, we were promised an estimated time frame as soon as practicable. Finally, Genie's wholesale affiliate advised that it is simultaneously pursuing an alternative solution through other banking channels to satisfy said liquidity requirements by which they anticipate they would begin accepting funding requests as early as the week of April 3rd.

As Genie's counsel, I will continue to communicate with the wholesale affiliate to keep abreast of the situation and will provide timely updates as required. Thank you.

WLG WARREN LAW GROUP

519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
DIRECT (773) 931-6630 •
scott@warren.law

Kind regards,

Scott J. Oh, Esq.
Attorney for Genie Investments

WLG WARREN LAW GROUP

519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
DIRECT (773) 931-6630 •
scott@warren.law

April 21, 2023

(Deleted) Investments
c/o: Borrowers

**Re:** ***Update 4.21.2023***

Dear Borrower:

On behalf of Investments (" "), this letter provides the latest update with respect to the anticipated funding of your loan product.

This update is based upon my most recent conversation with wholesale affiliate regarding the current status of the funding issues related to your loan product. I was advised that with the assistance of the high level bank officer, there has been solid progress with the compliance department at Deleted Bank – London to unrestrict the funds that are related to your loan product. While I understand that you desire a definitive time frame for funding, I cannot provide an estimated frame with positive assurance so I will refrain from doing so. Nonetheless, we are confident that material progress has been made and we are closer to a final resolution.

As counsel, please be assured that our firm will remain vigilant in monitoring the situation until full release and funding. I will continue to provide timely updates as required. Thank you.

Kind regards,

Scott J. Oh, Esq.
Attorney for Investments

# EXHIBIT H-2

## Declaration ¶ C.9

Wire, $245,000, Mar. 22, 2023, Stringer Farms Inc. to Genie Investments NV

Already of record: Doc. 50, p. 4 (also p. 15). Stringer Farms Inc. deposit of $245,000 on 03/22/2023.

# EXHIBIT J

## Declaration ¶ D.5

Response, David C. Hughes II to Mr. Prostok, May 31, 2023 (text; original and Prostok forwarding message to follow)

## 5-31-23 Response from DAVID C. HUGHES II (Genie Investments / Zoomeral)

*This email was in response to my demand letter from Jeff Prostok, my attorney. It was received a few days after, on 5-31-23.*

Dear Mr. Prostok & Other Parties Concerned,

Your client did engage into a bridge loan and did in fact receive a bridge loan from Genie Investments. Time has gone by and, as you are aware, and your bridge loan has expired because an extension was not requested. If this has changed, please let us know, if an extension is requested, I will review it first before accepting/approving it. Respectfully I will say, Genie Investments will not be responding to any further correspondence via email/phone/text etc.… I am providing this response, one time, out of courtesy. Finally, there is nothing vague about our agreement. It stands alone and is very clear.

For any further matter, please use the mailing address exclusively that I provided to your client. I will not accept, nor will I respond to any further email attempts. If there is anything further, then Genie Investments will receive it and hand off to appropriate counsel. We have four different firms that handle different matters.

Thank You & Respectfully,

David C. Hughes II
Chief Executive Officer
david@zoomeral.com | www.zoomeral.com

*Text of the response as saved by Charles Blake Stringer. Screenshot or copy of the original with header, and Mr. Prostok's forwarding message, to follow.*

# EXHIBIT K

Declaration ¶ D.6

McMann form letter to BELOC Approved Loan Applicants, June 8, 2023, and McMann attorney letter terminating BELOC, June 23, 2023 (U.S. Trustee Ex. 40, Doc. 46-10)

McMANN Commercial Lending • 205 N Michigan Ave • Chicago IL 60601
312-224-8559 Fax 224-328-6440

June 8, 2023

To: BELOC Approved Loan Applicants
Re: Disbursement amounts and dates for the lst Tranche

Dear Messer's:

McMann Commercial Lending LLC ("McMann") has been in communication with its wholesale Private lenders. McMann is pleased to inform you that these investors have advised McMann that it intends to provide McMann with funds before the end of this month (June 2023), as delays on the investors end have purportedly been resolved. McMann thanks you for your patience.

Nevertheless, if you feel that you must exercise your option to terminate your BELOC agreement and obtain a refund of your Interest Credit Account payments, please complete, notarize, and submit the Termination form attached to your BELOC agreement and submit the request to McMann. The refund will then be promptly processed. To be clear, while these investors have advised McMann that funds will arrive before the end of June, this is not a guarantee of funding from McMann.

McMann will provide another update once the private investors provide McMann with additional information as to funding amounts and dates. McMann understands that you may desire more specific information; however, no more detail can be provided at this time. McMann has no option but to provide these private investors with the necessary time to perform. Again, McMann appreciates your patience and understanding in this matter.

# <u>EXHIBIT COVER SHEET</u>

**<u>Exhibit</u>**

Party Submitting: **Mary Ida Townson, U.S. Trustee for Region 21**

Admitted: **YES or NO (circle one)** **<u>40</u>**

Chapter 11 Debtor: **Genie Investments NV, Inc.**

Case No. **3:24−bk−00496−BAJ**

Nature of Hearing: **Trial on**

**U.S. Trustee's Motion to Appoint Chapter 11 Trustee, or, in the Alternative, Appoint Examiner, Dismiss Case, or Convert Case to Chapter 7 (Doc. No. 20)**

**Debtor's Response Thereto (Doc. No. 34)**

**U.S. Trustee's Reply (Doc. No. 38)**

Trial Date: **April 9, 2024, at 9:00 a.m.**

**United States Bankruptcy Court**
**Middle District of Florida**

**Dated:______________________________, 2024.**

**By: _________________________, Deputy Clerk**

SWK
ATTORNEYS AT LAW

500 SKOKIE BLVD., SUITE 600
NORTHBROOK, ILLINOIS 60062
(224) 260-3090

DANIEL S. KLAPMAN
(224) 260-3087
dklapman@swkattorneys.com

June 23, 2023

**VIA EMAIL AND CERTIFIED MAIL**
Attn: Charles Stringer, Managing Member
Nutra-Acres, LLC
130 North Dumas Avenue
Dumas, Texas 79029
Cbs.llc2019@gmail.com

Re: Termination of Business Expansion Line of Credit Agreement between McMann Commercial Lending LLC and Nutra-Acres LLC

Dear Mr. Springer:

Please be advised that this firm represents McMann Commercial Lending LLC ("McMann") concerning the above referenced Business Expansion Line of Credit Agreement ("BELOC") entered into by McMann as lender and Nutra-Acres LLC ("Nutra Acres" or "Borrower") on March 9, 2023. You are hereby notified that McMann has terminated the BELOC pursuant to its terms.

More specifically, at a minimum, as Nutra-Acres' managing member, you have repeatedly breached Section 14.5 of the BELOC, including in writing to various third parties, including but in no way limited to your email of June 8, 2023. These breaches constitute an event of default, giving McMann the right to terminate all obligations under the BELOC. Additional breaches and defaults by Nutra-Acres exist, and McMann reserves all rights concerning those breaches, including but not limited to potential failures to meet Borrower obligations under BELOC sections 7.2, 7.3, 8.1, 8.6, 8.7, and others. These breaches provide McMann remedies under Section 13.1, including the termination of all obligations to make advances to Nutra-Acres as borrowers.

Were Borrowers' breaches not sufficient to constitute a basis for termination, your continued harassment of McMann and Mr. Walter Trock, including but not limited to blocking his calendar with threatening messages, as well as your sending Mr. Trock a photo of his residence, have rendered McMann unwilling to deliver funds to Nutra-Acres as specified in to Section 13.7(b) of the BELOC.

Be advised that your obligations under Section 14.5 survive termination of the BELOC and McMann reserves all rights to pursue all available remedies for any past, continuing, and future breaches. Your continued harassment of McMann, and Walter Trock in particular, will not be tolerated. Govern yourself accordingly.

Sincerely,

Daniel S. Klapman

cc: Walter Trock
Robert Strauss

# EXHIBIT L

Declaration ¶ D.7

Group iMessage thread, David Hughes, Walter Trock and Blake Stringer, July 11, 2023 (outline and screen-recording stills)

## Group iMessage, July 11, 2023: David Hughes, Walter Trock and Blake Stringer

**Background, in my words (Charles Blake Stringer).** By July 11, 2023, David Hughes (Genie Investments and Zoomeral) and Walter Trock (McMann) had spent the prior two to three months scrambling to find money for my loan. As I understood it, neither of them had the funds to provide the bridge loan that would have let me pay down my bank and avoid foreclosure and bankruptcy. I had been pressing them to perform under the loan agreement, after the statements they had made to my bankers. That is why the two men were dealing with me together in this thread, and why Mr. Hughes answered for Genie and Zoomeral.

*Outline of the thread, in order, taken from the screen recording of my phone. Time stamps are as shown on the phone. The still images of the thread follow. Quotation marks show text as it appears on the screen; ellipses mark omitted text.*

| Time | From | Message |
|---|---|---|
| 5:45 AM | Blake | Posts the link to "Victims Discussion," victimsbelocscam.com, to David Hughes and Walter Trock. |
| 6:52 AM | Blake | "Just want to extend another olive branch to you guys, if you would like to have a conversation about the future I'm open to discuss and negotiate or mitigate anything on the table at this point. Just let me know, I'm all for saving a little time and money." |
| 6:57 AM | David Hughes | "Just tried calling you Blake. Text me when your able to take a call." |
| 7:02 AM | Blake | "I don't see that I missed a call. Likely I was on another call.... Been a busy morning." |
| 7:05 AM | David Hughes | "Just tried you again. So, why don't you text me when your ready to pick up" |
| 7:15 AM | Walter Trock | "Today at 11AM is the plan" |
| 7:26 AM | Blake | "On call with David" |
| 11:11 AM | Blake | "It's 11:10 Walter" |
| 11:39 AM | David Hughes | "Mr. Stringer, Walt was referring to a call time with just me." |

| | | |
|---|---|---|
| 11:49 AM | Blake | "OK, I will be sending you guys out a message here before the end of the day." |
| 11:59 AM | David Hughes | "Do not bother messaging me again Mr. Stringer. Our attorney will be in touch. A few of our affiliates have forwarded messages of you reaching out to them. ... Our attorney will be in touch with yours. I want no more communications with you at this juncture. We are moving forward with suits. One from Genie Investments and another from Zoomeral. ... My final word, if you truly want any form of reduction then stopped your confidentiality and other clear breaches and draw down then I will calmly discuss resolution. ... Zoomeral and Genie will file suit. ... Your move sir" |
| 3:26 PM | Blake | Letter "to address both David Hughes and Walter Trock and their respective companies," asking for proof of the funding relationship between McMann Commercial Lending and Genie Investments, proof that the prepaid interest wired to Genie Investments NV was held, and proof of a contractual agreement with all parties. |







Selected stills from screen recording of group iMessage, July 11, 2023. Full recording available.







Selected stills from screen recording of group iMessage, July 11, 2023. Full recording available.







Selected stills from screen recording of group iMessage, July 11, 2023. Full recording available.







Selected stills from screen recording of group iMessage, July 11, 2023. Full recording available.







Selected stills from screen recording of group iMessage, July 11, 2023. Full recording available.







Selected stills from screen recording of group iMessage, July 11, 2023. Full recording available.

# EXHIBIT M

Declaration ¶ D.8

Spiegel & Utrera cease-and-desist letter, Aug. 10, 2023

# Spiegel & Utrera, P.A.

**Counselors & Attorneys at Law**

SANDY A. ADELSTEIN[9]
JOEL BECK[8]
B. MARTIN DRUYAN[5]
ALEJANDRO ECHEVERRIA[2]
MICHAEL S. FARAGALLA[6]
MATTHEW FORNARO[11]
MICHAEL P. OKAYO[7]
COURTNEY RIORDAN[10]
LUIS RUIZ[12]
LAWRENCE J. SPIEGEL[1]
MARY C. SPIEGEL[2]
NICOLAS W. SPIGNER[3]
NATALIA UTRERA[2]
MICHAEL WELCHKO[6]

SENIOR PARALEGALS
GRACIELA BATTAGLIA
CLAUDIA FERNANDEZ

| | |
|---|---|
| PRESIDENT: | LAWRENCE J. SPIEGEL |
| SENIOR VICE PRESIDENT: | NATALIA UTRERA |
| EXECUTIVE VICE PRESIDENT: | MARY C. SPIEGEL |
| VICE PRESIDENT OF OPERATIONS: | HORACIO MONTEIRO |
| VICE PRESIDENT OF MARKETING: | ALEJANDRO ECHEVERRIA |
| VICE PRESIDENT OF LITIGATION: | MICHAEL S. FARAGALLA |
| REGIONAL VICE PRESIDENT: | MICHAEL WELCHKO |
| SECRETARY: | NATALIA UTRERA |
| TREASURER: | NATALIA UTRERA |

**Offices located in:**
**Chicago**
**Dover, DE**
**Las Vegas**
**Los Angeles**
**Miami**
**New York City**
**Northern New Jersey**

**9 East Loockerman Street**
**Suite 202**
**Dover, DE 19901**
**Telephone (302) 744-9800**
**Facsimile (302) 674-2100**

[2] Licensed in Florida
[7] Licensed in California and New York
[6] Licensed in Illinois and Florida
[3] Licensed in California, Arizona and New York
[12] Licensed Cuba
[10] Licensed Delaware
[8] Licensed in Nevada
[9] Licensed in New Jersey
[4] Licensed in California
[5] Licensed in Florida and New York
[11] Licensed in Florida and District of Columbia
[1] Licensed in Florida and Registered as a Foreign Lawyer in England and Wales


August 10, 2023

**SENT VIA USPS CERTIFIED MAIL & EMAIL**
Attn: Charles Stringer
NUTRA-ACRES, LLC
130 North Dumas Avenue
Dumas, Texas 79029
Email: cbsllc2019@gmail.com

**Re: Defamatory and Libelous Remarks and References Regarding ZOOMERAL, INC & GENIE INVESTMENTS NV**

To whom it may concern/ NUTRA-ACRES, LLC:

Please, be advised that Spiegel & Utrera, P.A., (hereinafter referred to as "Firm") has been engaged by GENIE INVESTMENTS NV, a Nevada Corporation, and ZOOMERAL, INC., a Delaware Corporation (hereinafter "Our Client" and/or "Our Clients") regarding (i) the defamatory, disparaging and libelous statements via phone, SMS text message, and on-line postings made by you, NUTRA-ACRES, LLC and/or Charles Stringer individually (collectively hereinafter, "You" or "Your"), intended to cause damage to our Client, our Client's affiliates, and our Client's reputation, (ii) Your breach of ZOOMERAL's Terms and Conditions amounting to a material breach of contract (attached herein as ***Exhibit A*** and referred to herein as the "Agreement") and (ii) the commission and/or attempted commission of wire fraud.

You are hereby directed to:

> **CEASE AND DESIST ALL DEFAMATORY, DISPARAGING AND LIBELOUS STATEMENTS ON ANY AND ALL ONLINE POSTING MADE OR DIRECTED BY YOU ABOUT OUR CLIENT AND OUR CLIENT'S AFFILIATES INCLUDING ZOOMERAL, INC. AND/OR GENIE INVESTMENTS NV. FURTHER, DEMAND IS HEREBY MADE YOU SPECIFICALLY DELETE THE WEBSITE YOU CREATED (AKA (https://www.victimsbelocscam.com/) AS IT IS IN CLEAR VIOLATION OF ZOOMERAL'S TERMS AND CONDITIONS WHICH YOU AGREED TO. YOU MUST ALSO CEASE AND DESIST FROM FILING AGENCY REPORTS SUCH AS WITH THE SECURITIES AND EXCHANGE COMISSION.**

Under Delaware law, the elements of defamation are: (1) Defendant made a defamatory statement; (2) concerning Plaintiff; (3) the statement was published; and (4) a third party would understand the character of the communication as defamatory. *Cousins v. Goodier*, C. A. S20C-11-036 CAK, 5-6 (Del. Super. Ct. Jul. 30, 2021). In Delaware, defamation per se includes disparaging statements intended to hurt a person in his or her trade or business. Here, your publishing on the internet, clearly intended to injure and defame our Client, has caused exorbitant damages to our Client and his business.

You should understand that making such defamatory statements through online platforms is actionable under the existing laws of the State of Delaware and that the damages to our Client's business and the reputation of our Client's affiliates is significant and includes both general and special damages related to presumed injuries to reputation as well as pecuniary loss resulting from the effects of your defamatory comments. Here, your defamatory acts were widespread. Among other breaches, you (i) created a website: **https://www.victimsbelocscam.com/** dedicated exclusively to the spreading of false and defamatory information meant to damage our Client's reputation and business, (ii) you created and submitted false reports to at least three (3) agencies, namely the Securities and Exchange Commission, and (iii) you generated and disseminated a graphic image (or Meme) of an independent contractor acting as wholesaler for our Client with a Hitler moustache (the aforementioned shall be collectively referred to herein as the "Defamatory Acts"). You should also know that a person who is found to have knowingly and willfully submitted false, fictitious, and/or fraudulent statements to the Securities and Exchange Commission may be subject to criminal sanctions under federal law. Our Client received clear evidence of a submitted report to the SEC by You and against our Client.

Further, such actions are in clear violation of ZOOMERAL's Terms and Conditions, which you agreed to as evidenced by ***Exhibit A***. In other words, you are also in breach of your Agreement. Be advised, a breach of contract in Delaware occurs when one party to the contract fails to fulfill a legal duty the contract created. Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages. *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005). In this case, You have clearly breached Your Agreement with Our client and Our client has suffered significant damages. Every contract in Delaware contains an implied covenant which imposes on the parties to the contract a duty of good faith and fair dealing, and that the parties will not seek in bad faith to injure or unfairly frustrate the rights of the other party to receive the benefits of said agreement. You have clearly acted in bad faith here by (i) attempting to withdraw **TWO HUNDRED FORTY-FIVE THOUSAND DOLLARS AND 00/100 CENTS**

from Chase Bank on March 22, 2023 (proof of which is attached herein as ***Exhibit B***) and (ii) carrying out the Defamatory Acts outlined above. Damages recoverable by a party injured by a breach of contract are those which would naturally result from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was made. You knew or should have known that Your actions would cause harm to our Client and based on your actions, this appears to have been Your sole purpose.

Additionally, the actions taken by You when you attempted to withdraw unauthorized funds from our Client's bank account amount to wire fraud which is a federal crime. In general terms, the elements of wire fraud are: (1) the defendant was part of a scheme to defraud another person, such as by obtaining money or something else of value through false pretenses; (2) the defendant acted knowingly or with intent to defraud; (3) the defendant made false representations that were material to the scheme to defraud; and (4) the defendant transmitted a material misrepresentation by wire, radio, or television communications in interstate or foreign commerce. 18 U.S.C. § 1343. Your attempt to electronically wire **TWO HUNDRED FORTY-FIVE THOUSAND DOLLARS AND 00/100 CENTS** from Chase Bank on March 22, 2023 in violation of the executed bridge loan agreement (attached herein as ***Exhibit C***) squarely meets the criteria for wire fraud. In this case, your actions would be punishable by up to 20 years in federal prison if You were found guilty. Our Client reserves the right to contact the authorities and report your illegal behavior.

Therefore, **FINAL DEMAND** is hereby made that you remove https://www.victimsbelocscam.com/. Further, **DEMAND** is hereby made that you (A) provide us with prompt written assurance that any Agreements between You and ZOOMERAL and/or GENIE INVESTMENTS are terminated, and (B) remit payment in the amount of $25,000.00 consisting attorney's fees and damages as amounted to this day to:

Attn: GENIE INVESTMENTS NV
C/O SPIEGEL & UTRERA.P.A.
1840 Coral Way, 4th Floor
Miami, FL 33145

If you do not comply with this demand immediately, our Client is entitled to seek monetary damages and equitable relief for your defamation, attempted wire fraud, and breach of contract. In the event you fail to meet this demand, please be advised that our Client has asked us to communicate to you that it will pursue all available legal remedies, including seeking monetary damages, injunctive relief, and an order that you pay court costs and attorney's fees. Your liability and exposure under such legal action could be considerable.

Accordingly, please sign and return the attached Defamation Settlement Agreement immediately to:

**SPIEGEL & UTRERA P.A**
1840 Coral Way, 4th Floor
Miami, FL 33145

Your failure to return above-mentioned Defamation Settlement Agreement and to make immediate arrangements to cease and desist from the aforementioned activity will be considered

as a complete denial and a refusal to resolve this matter amicably will leave our Client with no choice but to protect their legal rights under the law.

**PLEASE GOVERN YOURSELF ACCORDING.**

Sincerely,

*/s/ Courtney Riordan*

For The Firm

**Defamation Settlement Agreement**

I, Charles Stringer, agree to immediately cease and desist any defamation of GENIE INVESTMENTS NV and its affiliates, including ZOOMERAL, INC., in any medium, online, published, or in person, and further agree to remove all online posts I in part authored in any way related to GENIE INVESTMENTS NV and its affiliates, in exchange for GENIE INVESTMENTS NV, releasing any and all claims against me for defamation. In the event I breach this Agreement, GENIE INVESTMENTS NV and its affiliates, including ZOOMERAL, INC., shall be free to pursue all rights that GENIE INVESTMENTS NV and its affiliates have as of the date of this Agreement as if this Agreement had never been signed.

Signed:

By:______________________________
Charles Stringer

Dated: The ____ day of ______________, 20____.

# EXHIBIT N

Declaration ¶ D.9

Email, Jason Houda to Blake Stringer, Nov. 7, 2023, 3:48 p.m. (screenshot and text of email)

4:39 5G+ 76

Jason...

Nov 7, 2023

to cbs...

From Jason Houda attorneyhouda@amerilawyer.com

To cbsllc2019@gmail.com

Cc Michael Faragalla attorneyfaragalla@amerilawyer.com

Giovani Garcia litassistant@amer-ilawyer.com

Date Nov 7, 2023 at 3:48 PM

R...

F...

## Nov. 7, 2023 Email from JASON HOUDA, Esq. (Genie Investments' counsel)

On Tue, Nov 7, 2023 at 3:22 PM Jason Houda <attorneyhouda@amerilawyer.com> wrote:

Dear Mr. Stringer,

Genie Investments has retained my firm to pursue numerous claims in commercial arbitration against you. My firm has previously sent you a cease and desist letter, and you failed to comply with our demands. I've attached the filed arbitration demand, the contract you and your company executed with Genie Investments, the cease and desist my firm sent you, and a complaint with the claims we will be pursuing against you.

Genie Investments has authorized settlement of this matter now for:

- The removal and destruction of all defamatory and libelous publications made, and
- Payment of attorneys fees accrued

Genie Investments has also authorized this settlement to be made by an installment plan.

You may have been corresponding with Ms. Shilo Bentacourt, a pre-litigation attorney at our firm. Because this matter has been filed and is now being litigated, it has moved to our litigation department. Accordingly, you are to direct all communications to Mr. Michael Faragalla and myself. Per the arbitration agreement your company executed with Genie Investments, arbitration is set to take place in New Castle County, DE, with the prevailing party to pay attorney fees. Please let us know how you would like to proceed in writing by 11-10-2023.

Best regards,

Jason Houda, Esq.
Phone: (800) 603-3900
Fax: (800) 520-7800

*Text of the email as saved by Charles Blake Stringer.*

# EXHIBIT O

Declaration ¶ D.10

AAA arbitration complaint, Nov. 7, 2023, No. 01-23-0005-0330

**AAA ARBITRATION:**
**COUNTY OF NEW CASTLE, DELAWARE**
**------------------------------------------------------------------X**

**Case No.: 01-23-0005-0330**

**GENIE INVESTMENTS**

***Plaintiff,***

**COMPLAINT**

**-against-**

**NUTRA-ACRES LLC, &**
**CHARLES STRINGER**

***Defendant(s)***
**------------------------------------------------------------------X**

**Plaintiff GENIE INVESTMENTS** ("Genie" or "Plaintiff") by and through their attorneys, SPIEGEL & UTRERA, P.A., P.C., complaining of Defendants, **NUTRA-ACRES LLC**, a Texas limited liability corporation ("Nutra"), doing business in Texas, **AND CHARLES STRINGER,** an individual ("Stringer"), all doing business in Texas, respectfully shows to this Court and alleges:

**<u>THE PARTIES</u>**

**<u>On all dates hereinafter:</u>**

1. Genie, a Nevada corporation, who the Defendant(s) contracted to obtain a Business Line of Credit Loan, and is the party initiating these proceedings.

2. Upon information and belief, Nutra is a Texas registered or unregistered foreign business corporation which at all relevant times had its principal place of business

3. Stringer is a natural person residing at 130 North Dumas Avenue, Dumas, TX 79029, who was and remains the Founder of Nutra-Acres LLC.

**<u>ARBITRATION AGREEMENT</u>**

4. The parties are bound by a valid and enforceable arbitration agreement, which requires the resolution of disputes through arbitration, as evidenced by the attached cease and desist letter and due diligence agreement.

**NATURE OF THE DISPUTE**

5. A dispute has arisen between the parties related to the due diligence agreement as outlined in the cease-and-desist letter dated August 10, 2023, which lays out defamation, libel, attempted wire fraud, and breach of contract.

**RELIEF SOUGHT**

6. The Plaintiff seeks the following relief:

a. Damages in an amount to be determined at arbitration,

b. Injunctive relief,

c. Removal of the website https://www.victimsbelocscam.com/,

d. Attorney's fees,

e. Interest, and

f. Other relief determined to be appropriate by the arbitrator.

**SUBMISSION TO ARBITRATION**

7. The Plaintiff hereby requests that the AAA conduct commercial arbitration proceedings to resolve the dispute as outlined in this Complaint.

**JURISDICTION**

8. The arbitration jurisdiction has been established by the arbitration agreement, and the parties have agreed to submit the dispute for resolution to the AAA.

**FACTUAL BACKGROUND**

9. Defendants contacted Genie to obtain a Business Line of Credit Loan (BLCL).

10. Genie offered a due diligence fee agreement to Defendants, and Defendants accepted and executed said agreement on or about 1-18-2023.

11. Defendant then breached the agreement and attempted to fraudulently convert funds from Genie.

12. Defendant then proceeded to make false statements about Genie, attempting to harm Genie's business and preventing Genie from obtaining new clients and customers.

**CAUSES OF ACTION**

13. Plaintiffs assert and reallege all preceding paragraphs.

14. Plaintiffs incorporate by reference the included cease and desist demand.

15. Defendants are on notice that Plaintiffs intend to assert the following at arbitration:

a. Breach of Contract,
b. Breach of the duty of good faith and fair dealing,
c. Wire Fraud,
d. Mail Fraud,
e. Libel,
f. Slander,
g. Defamation,
h. Disparagement,
i. Breach of Confidentiality,
j. Harassment,
k. Conversion,
l. Unjust enrichment,

m. Tort per Se,

n. Tortious interference with a contact,

o. False light, and

p. Public disclosure of private facts

16. Plaintiffs reserve the right to amend this complaint and pursue further causes of action at arbitration.

**WHEREFORE**, the Plaintiff respectfully requests that the Arbitrator issue Judgment against Defendant(s) in a sum to be later determined at Arbitration, together with the costs, disbursements, special damages, general damages, reasonable attorneys' fees, prejudgment and post-judgment interest, and such other and further relief as may be just, proper, and equitable. Plaintiff reserves the right to amend this complaint later at arbitration.

Dated: November 7, 2023

Miami, Florida

Respectfully submitted,

**Spiegel & Utrera, P.A.**
*Attorneys for Plaintiff*
*Genie Investments*

By: */Michael Faragalla/*
Michael Faragalla, Esq.
*Vice President of Litigation*
1840 Coral Way
Miami, FL 33145
Tel: (214) 263-3393
Email:
Attornyfaragalla@amerilawyer.com
*Attorneys for Plaintiff*
*GENIE INVESTMENTS*

# EXHIBIT O-2

Declaration ¶ D.10

AAA Demand for Arbitration form

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

# COMMERCIAL ARBITRATION RULES DEMAND FOR ARBITRATION

*For Consumer or Employment cases, please visit **www.adr.org** for appropriate forms.*

| | | | | | |
|---|---|---|---|---|---|
| You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement. | | | | | |
| Name of Respondent: Nutra-Acres LLC | | | Name of Representative (if known): Charles Stringer | | |
| Address: PO BOX 1090 | | | Name of Firm (if applicable): | | |
| | | | Representative's Address: 130 North Dumas Avenue | | |
| City: DUMAS | State: TX | Zip Code: 79029 | City: Dumas | State: TX | Zip Code: 79029 |
| Phone No.: | Fax No.: | | Phone No.: | Fax No.: | |
| Email Address: | | | Email Address: cbsllc2019@gmail.com | | |
| The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. | | | | | |
| Brief Description of the Dispute: 1) Breach of contract for BLCL 2) Defamation/libel/slander/disparagement 3) Wire fraud 4) Confidentiality 5) Harassment | | | | | |
| Dollar Amount of Claim: $ 245,000.00 | | | Other Relief Sought: ☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs ☐ Punitive/ Exemplary ☑ Other injunctive relief | | |
| Amount enclosed: $ 3500 | | | In accordance with Fee Schedule: ☐ Flexible Fee Schedule ☑ Standard Fee Schedule | | |
| Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute: Experience with Business Line of Credit Loans (BLCL), experience with defamation and privacy law, and experience with wire fraud law. | | | | | |
| Hearing locale: New Castle County, Delaware | | | (check one) ☐ Requested by Claimant ☑ Locale provision included in the contract | | |
| Estimated time needed for hearings overall: 8 hours or days | | | Type of Business: Claimant: Investment Firm<br>Respondent: Startup | | |
| Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? No | | | | | |
| Signature (may be signed by a representative): /Michael Faragalla/ | | | Date: 11-6-2023 | | |
| Name of Claimant: Genie Investments | | | Name of Representative: Michael Faragalla | | |
| Address (to be used in connection with this case): 401 Ryland St. STE 200-A | | | Name of Firm (if applicable): Spiegel & Utrera, P.A. | | |
| | | | Representative's Address: 9 E Loockerman St STE 202 | | |
| City: Reno | State: NV | Zip Code: 89502 | City: Dover | State: DE | Zip Code: 19901 |
| Phone No.: | Fax No.: | | Phone No.: 6308850060 | Fax No.: | |
| Email Address: attorneyriordan@amerilawyer.com | | | Email Address: Attornyfaragalla@amerilawyer.com | | |
| To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent. | | | | | |

***Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.***