UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

Case No.: 3:24-bk-00496-BAJ

GENIE INVESTMENTS NV INC.,

Chapter 7

Debtor.
_________________________________/

**RESPONSE TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING TRUSTEE'S OBJECTION TO CLAIM 5-3 OF CHARLES BLAKE STRINGER/NUTRA-ACRES, LLC**

Creditors CHARLES BLAKE STRINGER and NUTRA-ACRES, LLC ("Creditors"), by and through the undersigned counsel, file this, their Response to the Trustee's Motion for Summary Judgment on the Trustee's Objection to Claim 5-3 of the Creditors ("the Claim") and, under Rule 56, made applicable by Bankruptcy Rules 7056 and 9014, cross-move for partial summary judgment on the limited issues set out below, as follows:

## Summary of Argument

The Claim is predicated on a collection of three (3) documents, to be referred to herein as "the Loan Documents," consisting of : (a) Bridge Loan Agreement, dated February 7, 2023, Business Expansion Line of Credit, dated March 9, 2023 ("Line of Credit"); (b) Intercreditor Agreement, dated February 7, 2023 ("Intercreditor Agreement"); and Business Expansion Line of Credit Agreement, dated March 9, 2023 ("BELOC"). The Intercreditor Agreement provides that Genie Investments, as "the LOC Lender" approved a line of credit by the Debtor for benefit of the Creditors in the sum of $24,000,000 ("Line of Credit amount"). The Debtor failed to fund the Line of Credit amount, resulting in damages to the Creditors, who had reasonably relied on

the promises and terms of the Intercreditor Agreement, to their detriment.

In its Motion for Summary Judgment, the Trustee argues that the Debtor is not liable for damages resulting in damages to the Creditors for failure to fund the Line of Credit amount, despite the existence of the Intercreditor Agreement and its promised $24,000,000 Line of Credit amount, but rather, McMann Commercial Lending ("McMann") is the liable party. In reply, the Creditors dispute the Trustee's contentions and stand by the terms of the Loan Documents. Alternatively, the Creditors argue that they detrimentally relied on the many representations of McMann that it served as agent for the Debtor for purposes of inducing the Creditors to agree to the terms of the Loan Documents. In view of the factual dispute between the Creditors and the Trustee as to the Debtor's liability under the Loan Documents, Summary Judgment is not appropriate, and the matter should proceed to trial on the contested factual and legal issues.

The Trustee's Motion is silent on three independent grounds on which the Claim stands even if the Court were to accept the Trustee's reading of the Intercreditor Agreement: (1) McMann acted as the Debtor's agent; (2) the Debtor ratified the transaction by accepting and keeping the Creditors' $400,000; and (3) the Creditors' funds were held for the Creditors' benefit and could not be kept by the Debtor when the loan was never funded. Each presents a genuine dispute of material fact, and the Trustee's own statements and exhibits supply much of the support.

**<u>Material Facts in Dispute</u>**

It is without dispute that the Creditors entered into the agreements evidenced by the Loan Documents. On its terms, the Intercreditor Agreement provided for a $24,000,000 Line of Credit to be provided the Creditors by the Debtor. Despite the terms of the Intercreditor Agreement to the contrary, the Trustee contends that McMann is the lender. Consequently, a material issue of

fact exists as to whether the Debtor or McMann is in fact the lender and thus responsible for damages incurred by the Creditors.

Moreover, the Creditors contend that at all times material, McMann acted as agent for the Debtor in securing the binding commitment of the Creditors to the Loan Documents. The Creditors reasonably relied on the representations of McMann and on the representations of the Debtor in formulating their decision to enter into the Loan Agreements. Consequently, a material issue of fact exists ats to whether McMann is in fact the agent for the Debtor for purposes of the Loan Documents.

The Trustee admits that the Creditors paid the Debtor $400,000 in three wires (Mot. at 5, ¶9); that the Bridge Loan Agreement *"provides for the Debtor to make a $2.4 million loan to Nutra-Acres"* (Mot. at 3, ¶4); that the Intercreditor Agreement is *"between the Debtor and Nutra-Acres which states that the Debtor is providing the bridge loan to fund the interest credit account"* (Mot. at 3, ¶6); that the Bridge Loan Agreement is *"the operative loan document to which Creditors were a party"* (Mot. at 12); and that Mr. Stringer's *"dealings for the $24 million loan, and even the Bridge Loan, were with McMann – the Debtor."* (Mot. at 4, ¶7). The Trustee *"did not, and does not, object to the Claim in the reduced amount of $400,000."* (Mot. at 5, ¶9). As the movant, the Trustee bears the burden of showing that no genuine dispute of material fact exists, and the Claim is prima facie valid unless rebutted by evidence of equal probative value (Mot. at 6–7).

**<u>Responses to Trustee's Arguments</u>**

1. **<u>There is privity between the Creditors and the Debtor</u>**. The Trustee argues that the Debtor and the Creditors are not in privity of contract concerning the Loan Documents. To the contrary, the Loan Documents expressly provide that the Debtor and the Creditors are parties to

the Intercreditor Agreement, which itself required the Debtor to open a $24,000,000 Line of Credit for the benefit of the Creditors. Evidence and testimony, including the exhibits attached to the Declaration of Charles Blake Stringer in support of this Response, will be introduced as evidence for the proposition that the Debtor and the Creditors are in privity concerning the Loan Documents and the obligations raised therein.

2. **Creditors do not claim to be third party beneficiaries.** The Trustee contends that the Creditors are not third party beneficiaries of the McMann BELOC agreement. This argument misses the mark because the Creditors do not claim to be third party beneficiaries regarding the BELOC. The Creditors, rather, point to the Intercreditor Agreement as the source of Debtor liability for the subject claim, as the Creditors are named parties to that agreement.

3. **Trustee's detrimental reliance theory is misplaced.** The Trustee states that the Creditors cannot allege that they reasonably relied on the Debtor to fund the $24,000,000 loan. The Trustee's premise for this argument is flawed as it is based on the mistaken presumption that the Debtor is not a party to the document giving rise to the claim of the Creditors' claim. To the contrary and as evidenced by actual Loan Documents, the Debtor and the Creditors are the named parties to the Intercreditor Agreement. Consequently, the Creditors are not seeking remedies inconsistent with that agreement. The Trustee's argument is without merit.

4. **Trustee's Statute of Frauds theory is inapplicable.** The Trustee states that the Creditors are seeking a remedy not based on a written instrument, and thus their remedy is barred by the Statute of Frauds. This argument is also flawed. Specifically, the Debtor seeks damages flowing from the actual Intercreditor Agreement itself, and is not predicating recovery on oral promises outside of the written agreement. Consequently, the Trustee's argument on this point is without merit.

5. **<u>The Debtor is bound by the acts of its agent, McMann.</u>** Agency is a question of fact, and the Trustee's own words support it. He says Mr. Stringer's *"dealings for the $24 million loan, and even the Bridge Loan, were with McMann – the Debtor"* (Mot. at 4, ¶7) and that *"all correspondence regarding the BELOC loan and the bridge loan was with McMann."* (Mot. at 12). The Debtor's Due Diligence Fee wiring page sends the fee to its Chase account, and McMann's BELOC wiring page sends the $360,000 ICA to the same account, titled "Genie Investments NV." (Decl. ¶¶C.1, C.6; Doc. 759 at 22, 142). The Debtor paid McMann $86,000 in commissions (Doc. 50), McMann told clients to wire Genie, and the Debtor scheduled McMann's customers as its creditors. (Doc. 146 at 14–15, ¶¶36, 40–42). The Debtor's own lawyers described someone in the dispute as "an independent contractor acting as wholesaler for our Client." (Decl. ¶D.9, Ex. M). Mr. Stringer was told repeatedly that Genie was McMann's "sister company" and was never told McMann lacked authority to act for Genie. (Decl. ¶¶B.1, E.4). **Viewed in the Creditors' favor, these facts show at least a genuine dispute about McMann's actual or apparent authority.**

6. **<u>The Debtor ratified the transaction.</u>** The Debtor received and kept $400,000 of the Creditors' money, and the Trustee *"did not, and does not, object"* to a claim in that amount. (Mot. at 5, ¶9). On May 31, 2023 the Debtor's CEO wrote that the Creditors "did in fact receive a bridge loan from Genie Investments" and that "there is nothing vague about our agreement. It stands alone and is very clear." (Decl. ¶D.6, Ex. J). After McMann terminated the BELOC on June 23, 2023 (U.S. Trustee Ex. 40), the Debtor did not return the money. Its lawyers called the account "our Client's bank account," cited "the executed bridge loan agreement," and demanded arbitration under "the arbitration agreement your company executed with Genie Investments." (Decl. ¶¶D.9–D.11, Exs. M–O). The Trustee now says the Debtor was a stranger to the contract:

*"a contract to which it was not a party."* (Mot. at 12). **The Debtor's own CEO and lawyers claimed that contract as the Debtor's, and a principal that accepts and keeps the benefit of its agent's transaction, then enforces it, ratifies it.**

7. **<u>The Creditors' funds were held for their benefit.</u>** The Trustee quotes the Bridge Loan Agreement: *"the Lender shall hold . . . in Lender's account on behalf of the Borrower."* (§2.02(a); Mot. at 3, ¶4; Mot. at 12). The Intercreditor Agreement provides that the ICA is "maintained by the LOC Lender for the benefit of Debtor" (Recital B; in that agreement, "Debtor" is Nutra-Acres, LLC) and that the LOC Lender "shall not transfer, assign, withdraw, or otherwise disburse" ICA funds until its obligations are satisfied (§4.1). The Trustee says the proceeds *"were never to be disbursed to Creditors – instead the proceeds were to be held in an account noted on the books and records of McMann."* (Mot. at 13). The Examiner reports McMann telling borrowers that "the ICA is pre paid interest account that belongs to you." (Doc. 146 at 22, ¶81). **Money held for another, and never disbursed, is not the holder's to keep when the loan is never funded.**

8. **<u>The Debtor cannot call the money non-refundable and also have refunded it.</u>** The Bridge Loan Agreement says prepaid interest is "fully non-refundable" (§2.03(b)). But the BELOC makes the ICA payment non-refundable only after the first Advance (§3.6) and gives a right to a full refund (§13.7(a)), and the wiring instructions say that if the line is not funded in the time frame, "the Company's funds will be returned in full less the wiring fee of seventy-five dollars." (Doc. 759 at 22). The Debtor's own books show eleven "Termination Refunds" in 2023 totaling $8,522,232 (Doc. 50), and the Debtor told the Examiner it "always refunded" on request until August 2023 (Doc. 146, ¶77). **Money that is refunded on request is not earned, and money that is not earned is held for the person who paid it.**

9. **<u>"Held on the books" assumes principal that never existed.</u>** The Trustee says the bridge proceeds were *"carried on the books of McMann"* (Mot. at 4, ¶6) and *"held in an account noted on the books and records of McMann"* (Mot. at 13). A balance can be held only if something funded it. The Trustee identifies no capital provider or other source for the $2,400,000 bridge or the $24,000,000 line, and the Examiner found that the lender-clients never funded. (Doc. 146 at 10, ¶19; at 53, ¶235). The only money that actually came in was the Creditors' $400,000. (Mot. at 5, ¶9). **So whatever was "held on the books" was the Creditors' money, and money held for another is restricted.**

10. **<u>The Motion does not address fraudulent inducement or unjust enrichment.</u>** The Addendum to Amended Proof of Claim 5-3 asserts fraudulent inducement and, in the alternative, unjust enrichment. Those grounds do not depend on privity of contract or on a signed credit agreement, and the Motion does not seek judgment on them.

**<u>Cross-Motion for Partial Summary Judgment</u>**

In the interest of efficiency, and because the Trustee's Motion has placed these issues before the Court, the Creditors also move under Rule 56(a), made applicable by Bankruptcy Rules 7056 and 9014, for partial summary judgment on the three issues below. Each issue is separate, and each rests on the Trustee's own admissions and exhibits. If the Court finds a genuine dispute on any one of them, the Creditors ask that the cross-motion be denied only as to that issue, so that the others are decided now and the rest proceeds to trial on February 4, 2027. If the Court does not reach the cross-motion, or finds it premature, the Creditors ask that it be reserved or carried to trial, not denied on the merits, without prejudice to raising each issue at trial.

**Statement of facts not genuinely in dispute (Rule 56(c)(1)).**

CM.1 The Creditors paid $400,000 to the Debtor in three wires: $40,000 (February 6, 2023), $115,000 (February 13, 2023) and $245,000 (March 22, 2023), and the Trustee does not object to the Claim in that amount. (Mot. at 1, 5, ¶9, 16).

CM.2 The Trustee says the Intercreditor Agreement is *"between the Debtor and Nutra-Acres"* and *"states that the Debtor is providing the bridge loan."* (Mot. at 3, ¶6). The Bridge Loan Agreement *"provides for the Debtor to make a $2.4 million loan to Nutra-Acres."* (Mot. at 3, ¶4).

CM.3 Under §2.02(a) the Debtor "shall hold" the funds "on behalf of the Borrower" (Mot. at 3, ¶4; at 12), and the Intercreditor Agreement says the ICA is maintained "for the benefit of Debtor" (in that agreement, Nutra-Acres) and may not be disbursed until the LOC Lender's obligations are satisfied. (Claim 5-3 at 102–108, Recital B, §4.1).

CM.4 The Trustee says the proceeds were *"held in an account noted on the books and records of McMann"* (Mot. at 13) and identifies no source of principal for what he says was held.

CM.5 The Trustee says Mr. Stringer's *"dealings for the $24 million loan, and even the Bridge Loan, were with McMann – the Debtor,"* and *"all correspondence regarding the BELOC loan and the bridge loan was with McMann."* (Mot. at 4, ¶7; at 12).

CM.6 All payments went to the Debtor's Chase account titled "Genie Investments NV" (Decl. ¶¶C.1, C.6; Doc. 50 at 2, 4, 6). The Debtor's CEO acknowledged the bridge loan on May 31, 2023, and its lawyers later enforced the agreements, including by arbitration demand. (Decl. ¶¶D.6, D.9–D.11).

CM.7 The $24,000,000 Line of Credit was never funded and no principal was advanced to the Creditors. The Trustee says the bridge loan *"was never going to be actually disbursed"* (Mot. at 4, ¶6) and refers to *"McMann's failure to fund the BELOC loan."* (Mot. at 12; Doc. 146 at 10, ¶19).

CM.8 The Debtor refunded eleven borrowers $8,522,232 as "Termination Refunds" in 2023 and told the Examiner it "always refunded" on request until August 2023. (Doc. 50; Doc. 146, ¶77).

**Request 1: Restricted funds.** The funds the Creditors paid, including the ICA deposit, were held for the Creditors' benefit under §2.02(a) and §4.1 and were restricted funds, not earned income of the Debtor. See paragraphs 7 through 9 above. The Trustee does not dispute the contract language; he relies on it. **This follows from the documents and the Trustee's own statements and does not depend on any disputed fact.**

**Request 2: Ratification.** The Debtor accepted and kept the Creditors' $400,000 and enforced the same agreements (CM.1, CM.6). See paragraph 6 above. **A principal that knowingly accepts and retains the benefit of a transaction ratifies it, and the Trustee, standing in the Debtor's shoes, cannot treat the money as received but the transaction as unauthorized.**

**Request 3: Agency.** McMann acted as the Debtor's agent, or with its apparent authority, in procuring the Creditors' agreement to the Loan Documents. See paragraph 5 above. **The Trustee himself describes the Creditors' dealings as "with McMann – the Debtor" (CM.5).**

## Conclusion

The Trustee's Motion for Summary Judgment should be denied. There exist material facts in dispute, namely, whether the Debtor is a contractual party to certain of the Loan

Documents, and whether McMann served as the Debtor's agent for purposes of formation and execution of the Loan Documents. For these reasons, the Trustee's Motion for Summary Judgment should be denied.

WHEREFORE, the Creditors respectfully request that the Court (a) deny the Trustee's Motion for Summary Judgment in its entirety; (b) grant the Creditors' Cross-Motion for Partial Summary Judgment and determine that (i) the funds the Creditors paid, including the ICA deposit, were restricted funds held for the Creditors' benefit and were not earned income of the Debtor, (ii) the Debtor ratified the Loan Documents by accepting and retaining those funds and enforcing the same agreements, and (iii) McMann acted as the Debtor's agent, or with its apparent authority, in procuring the Creditors' agreement to the Loan Documents; (c) as to any issue on which the Court finds a genuine dispute, deny the Cross-Motion only as to that issue, enter an order stating the facts that are not genuinely in dispute, including CM.1 through CM.5, and set that issue for trial on February 4, 2027; (d) if the Court does not reach the Cross-Motion, or finds it premature, reserve or carry it to trial without ruling on its merits and without prejudice to the Creditors raising each issue at trial; (e) set fraudulent inducement, unjust enrichment, the amount of damages and all remaining issues for trial on February 4, 2027; (f) in the further alternative, defer or deny to permit discovery on McMann's agency and its relationship with the Debtor; and (g) grant such other relief as is just. The Creditors expressly preserve each ground raised in this Response and Cross-Motion for trial and for any appeal.

*/s/ Scott W. Spradley*
SCOTT W. SPRADLEY
Florida Bar No. 782467
Law Offices of Scott W. Spradley, P.A.
104 S. 4th Street
P.O. Box 1

Flagler Beach, FL 32136
Tel: 386/693-4935
scott@flaglerbeachlaw.com
Attorneys for Blake Stringer & Nutra-Acres, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic means this 10th day of November, 2026 to all parties in interest.

*/s/ Scott W. Spradley*
SCOTT W. SPRADLEY